ACCEPTED
15-25-00123-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 7:25 PM
CHRISTOPHER A. PRINE
CLERK

## NO. 15-25-00123-CV

In the Fifteenth Court of Appeals

Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 7:25:45 PM
CHRISTOPHER A. PRINE
Clerk

**WHITTNEY FORD,**

APPELLANT**,**

v.

**THE UNIVERSITY OF TEXAS AT AUSTIN** AND **JIM DAVIS,** IN HIS OFFICIAL CAPACITY AS **PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN,**

APPELLEES**.**

---

Interlocutory Appeal from the 261st Judicial District Court,

Travis County, Texas

Trial Court Cause No. D-1-GN-24-002171

The Honorable Maria Cantu Hexsel, Judge Presiding

---

### WHITTNEY FORD'S AMENDED BRIEF

---

WHITTNEY FORD
PRO SE
4151 WELLBORN ROAD, APT#1101A
BRYAN, TEXAS 77801
(979) 264 – 4944
WJACKSONFORD@GMAIL.COM

**ORAL ARGUMENT REQUESTED**

# IDENTITIES OF PARTIES AND COUNSEL

The following is a list of the parties to the trial court's interlocutory order and the names and addresses of trial counsel:

| | |
|---|---|
| Appellant: | Whittney Ford, Pro Se<br>4151 Wellborn Road, Apt#1101A<br>Bryan, Texas 77801<br>Cellular Phone: (979) 264-4944<br>wjacksonford@gmail.com |
| Appellees: | The University of Texas at Austin<br>The President of The University of<br>Texas at Austin |
| Appellees' trial counsel: | Rachel L. Behrendt<br>Texas Bar No. 24130871<br>Assistant Attorney General<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Telephone: (512) 475-4112<br>Facsimile: (512) 320-0667<br>Rachel.Behrendt@oag.texas.gov<br><br>Zachary Rhines<br>Texas Bar No. 24116957<br>Special Counsel<br>Special Litigation Division<br>Office of the Texas Attorney General<br>P.O. Box 12548 (MC 009)<br>Austin, Texas 78711-2548<br>Telephone: (512) 696-8186<br>Facsimile: (512) 457-4410<br>Zachary.Rhines@oag.texas.gov |

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ........................................................ i

TABLE OF CONTENTS ................................................................................. ii

INDEX OF AUTHORITIES ........................................................................... iv

Abbreviations and Record References ................................................................ 1

STATEMENT OF THE CASE ............................................................................ 2

Statement Regarding Oral Argument ................................................................ 4

Issues Presented .............................................................................................. 4

Statement Of Facts ......................................................................................... 7

SUMMARY OF ARGUMENT ......................................................................... 14

ARGUMENT ................................................................................................. 16

    I.    Standard of Review. ............................................................................... 16

    II.    The trial court erred as a matter of law granting The University of Texas at Austin's plea to the jurisdiction because the University never identified an exemption to disclosure concerning information request R005536-120223, and The University omitted necessary language, in its final brief to the Attorney General, to disobey the limit imposed by Tex Gov't Code 552.104(a) ............... 18

    a.    Because the University omitted necessary language in its final brief to the Office of attorney general, the University failed to 'state' an exception as required by Tex. Gov't Code § 552.301(e)(1)(A) and thus refused to request an attorney general's decision as provided by Subchapter G of the TPIA, activating the waiver of sovereign immunity under Tex. Gov't Code § 552.321(a). .......... 18

    b.    Conclusory assertions that a particular exception applies to R005536-120223 does not suffice. ....................................................................... 20

c.  The University of Texas at Austin never identified an exemption to the information at issue and subsequently never requested an attorney general's decision. ..................................................................................................21

d.  The University supplied inadmissible hearsay, which the trial court must have relied on to erroneously grant the University's plea to the jurisdiction. .....22

e.  Because there is no affirmative negation of jurisdiction, the trial court erred in granting the University's plea..............................................................23

f.  Because the information at issue does not sustain Tex. Gov't Code § 552.104(a), the University was never entitled to judgment as a matter of law, and the trial court did not apply the law correctly when it granted the plea to the jurisdiction and motion for summary judgment. ...............................................24

g.  When governmental bodies such as The University of Texas at Austin ignore its duty to utilize all the express language of the Texas Public Information Act, denying requestors' entitlement to complete information about the University, subject matter jurisdiction is anointed on Travis County District Courts. ...........25

III.  The trial court erred as a matter of law granting the motion for summary judgment in favor of The University of Texas at Austin because the University failed procedural prerequisites. ........................................................................27

h.  Neither The University nor its President provided proper notice for its no-evidence motion for summary judgment............................................................27

IV.  I pled a viable mandamus action against The University of Texas at Austin based on the plain language of Tex. Gov't Code Section 552.321(a). ..................29

V.  I pled a viable ultra vires action against the President of The University of Texas at Austin alleging he has a duty to make the information at issue available for inspection, and he failed that duty, violating my entitlement to access to complete information about The University of Texas at Austin and the actions of its President..................................................................................................31

VI.  The Declaration of Chandrasekhar Ramalinga Bhat is utterly incompetent corresponding with the rash lies Rachel Behrendt submitted at the July 15, 2025, hearing. .....................................................................................................36

VII. The final brief by University System is fraudulent. ......................................37

VIII.    The trial court synchronized her own abuses of discretion with the lies of Rachel Behrendt and the University to unlawfully grant the plea to the jurisdiction and motion for summary judgment. ...................................................38

IX.  The only demonstration by the University were lies told at the plea hearing, and acceptance of the lies by the trial court judge who reinforced the University's lies with some of her own. ...................................................43

CONCLUSION AND PRAYER ...................................................44

CERTIFICATE OF COMPLIANCE ...................................................45

CERTIFICATE OF SERVICE ...................................................45

# INDEX OF AUTHORITIES

**Texas Cases**

*Boone R. Enters. v. Fox. TV Stations Inc.*, 189 S.W.3d 795 ...................................................19

*Chambers-Liberty Counties Navigation Dist. v. State*, 575 S.W.3d 339, 62 Tex. Sup. J. 969 (Tex. 2019)...................................................23

*City of Georgetown v. Putnam* 646 S.W.3d 61 ...................................................17

*Empower Texans, Inc. v. Dallas Cnty.*, 648 S.W.3d 664, No. 05-20-00546-CV (Tex.—App. Dallas July 15, 2022, pet. denied.)...................................................27

*Hall v. McRaven*, 508 S.W.3d 232(Tex. 2017) ...................................................33

*Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54,...................................................33

*Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 2016 WL 1312910 ...................................................24

iv

*In re Nationwide*, 494 S.W.3d at 712 ...................................................................19

Jaster v. Comet II Constr., Inc., 438 S.W.3d 556 (Tex. 2014) ................................20

*Jimmie Luecke Child. P'ship Ltd. v. Droemer*, 2022 WL 243162 ...........................31

King v. Paxton 576 S.W.3d 881 ..............................................................................20

*Leander Indep. Sch. Dist. v. Office of the AG for Tex.* No. 03-18-00243-CV, 2018
WL 6581523 ....................................................................................................17

Northsky, LLC v. Rummans, WL 1757925, (Tex. App.— Dallas [5th Dist.] June
25, 2025).........................................................................................................30

*Qatar Found v. Zachor Legal Inst.*, 627 S.W.3d 674 (Tex. App.—Austin [3rd Dist.]
April 15, 2021, pet denied.).......................................................................... 18, 33

*Redus v. JP Morgan Chase Bank, N.A.*, 698 S.W. 3d 46 (Tex. App. —Houston
[14th Dist.] July 23, 2024).................................................................................18

State v. Three Thousand, Seven Hundred Seventy-Four Dollars & Twenty-Eight
Cents U.S. Currency ($3,774.28), 713 S.W.3d 381.............................................20

*Suarez v. City of Texas City*, 465 S.W.3d 623, 632(Tex. 2015) ..............................19

*Tex. Dept of parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004).................19

*Tex. DMV v. Bustillos*, 630 S.W.3d 316 (Tex. App. —El Paso, January 25, 2021, no
pet.) ...............................................................................................................17

*Town of Shady Shores v. Swanson*, 590 S.W.3d 544 (Tex. 2019) ................. 8, 19, 28

*Van Boven v. Freshour*, 659 S.W.3d 396, (Tex. 2022).............................................34

**Constitutional Provisions**

Tex. Const. art. VII, § 10.................................................................................11

**Cases**

*Tex. DMV v. Bustillos* 630 S.W.3d 316 ........................................................18

Tex. R. Evid. R 201(b)(2) ............................................................................8, 9

Texas Rules of Evidence R 106 .......................................................................9

**Rules**

Tex. R. Civ. P. 193.7...................................................................... 8, 9, 12, 13

Tex. R. Evid. R 201(d) .....................................................................................8

Tex. R. Evid. R 902(5) ..................................................................................8, 9

Texas Rules of Civil Procedure 166a(c) ...................................................... 16, 28

Texas Rules of Civil Procedure 193.7................................................................14

**Texas Statutes**

Tex Gov't Code 552.104(a) ............................................................................19

Tex. Civ. P. & Rem. Code § 51.014(a)(8)...................................................17

Tex. Educ. Code §§ 65.02(a)(2).....................................................................11

Tex. Gov.t Code § 552.002 .............................................................................11

Tex. Gov't Code § 552.001(a) ............................................................... 20, 26

Tex. Gov't Code § 552.104(a) ......................................................... 25, 29, 39

Tex. Gov't Code § 552.201(a) ............................................................... 31, 32

Tex. Gov't Code § 552.301(e)(1)(A) ..................................................... 19, 27

Tex. Gov't Code § 552.321(a) ............................................................... passim

Tex. Gov't Code 552.203(1) .......................................................................35

Tex. Gov't Code 552.204 ...........................................................................32

Tex. Gov't Code. 552.224 ...........................................................................35

# ABBREVIATIONS AND RECORD REFERENCES

**Parties:**

"University", "University of Texas", "U.T. Austin" refers to The University of Texas at Austin, one of the Defendants in the trial court, an appellee here.

"President", "Jim Davis" refers to the President of The University of Texas at Austin, one of the Defendants in the trial court, an appellee here.

"I", "me", "myself", "my" refers to Whittney Ford, Plaintiff in the trial court, and Appellant here.

**Record References:**

References to the Clerk's Record are abbreviated by "CR", followed by the page number(s). For example, "CR 83" refers to the clerks record at page 83.

References to the Supplemental Clerk's Record are abbreviated as "SuppCR", followed by the page number(s). For example, "SuppCR 190" refers to the Supplemental Clerk's Record at page 190.

References to the Reporters Record are abbreviated by "RR", followed by the page number(s). For example, "RR 10" refers to the Reporter's Record at page 10.

**Miscellaneous**:

"TPIA", "the Act", refers to the Texas Public Information Act, Texas Government Code Chapter 552.

## STATEMENT OF THE CASE

I Whittney Ford, a born and raised Texas resident, and requestor of Texas Public Information, filed an original petition on **April 5, 2024**, naming **four** defendants including Ken Paxton and the Office of the Attorney General as well as Jay Hartzell (then President of The University of Texas), and The University of Texas at Austin and complaining of 6 governmental entities for failing their respective duties under the Texas Public Information Act in regard to my **December 2, 2023**, public information request to U.T. Austin. SuppCR 5-14. The University has identified my request as R005536-120223. SuppCR 753-762. I seek a writ of mandamus to compel U.T. Austin to disclose all information responsive to R005536-120223. I still request initial disclosures that were due to me May 31, 2024. I also seek a declaration that the opinion generated by the Attorney General cannot reasonably be relied on given the overwhelming facts of the case.

On October 28, 2024, the President filed a plea to the jurisdiction largely challenging the sufficiency of my pleadings and based his request around sovereign immunity. SuppCR 228-252. On November 25, 2024, I opposed the plea. CR 9-60. Currently, I request this court to reverse and remand as to my ultra vires claims against the President of The University, in the interest of justice, so that I may plead an amended ultra vires suit against the President.

Whittney Ford's Amended Brief

Also on October 28, 2024, The University of Texas at Austin filed a combined plea to the jurisdiction and a traditional motion for summary judgment largely based on sovereign immunity in which the University mostly challenged the sufficiency of my pleadings. SuppCR 121-227. On November 25, 2024, I opposed the University's plea to the jurisdiction and motion for summary judgment. CR 61- 119. I also filed a motion to compel in direct attack of the University's jurisdictional evidence as significant portion was brand new to me. CR 3-8.

Also on November 25, 2024, I filed a Second Amended Original Petition attaching around 15 exhibits. CR 120- 239

On April 24, 2025, The University of Texas at Austin and its President combined their original October 28, 2024, pleas and motions into one, where is incorporated the same points, and same exhibits. SuppCR 474-576. The lead attorney for U.T. Austin, still being on vacation, other attorneys produced the documents and signed them. That same April 24, 2025, The University of Texas at Austin and its President filed a 2nd Amended plea to the jurisdiction and motion for summary judgment. SuppCR 577-679.

On July 17, 2025, The 261st Judicial District, Travis County, without publishing any reasoning, granted the 2nd amended plea to jurisdiction and motion for summary

judgment dismissing with prejudice my claims against the University of Texas at Austin and its President. SuppCR 773. This interlocutory appeal follows.

## STATEMENT REGARDING ORAL ARGUMENT

I, Whittney Ford, request oral argument be granted so that I may emphasize the core issues; namely I presented several genuine issues of material fact on whether the University of Texas at Austin applied any exemption allowing exclusion from mandatory disclosure the information responsive to my Texas Public Information request, and to answer any questions the Court may have in support of reversing the order below.

## ISSUES PRESENTED

1. Did I plead a viable ultra vires action against the President of the University of Texas at Austin when I alleged the President failed ministerial duties imposed under the Texas Public Information Act, and requested a declaration of those failures?

2. Did I plead a viable mandamus action against The University of Texas at Austin under Section 552.321 of the Texas Government Code by alleging U.T. Austin did not state any exceptions found in the TPIA, nor did it submit any comments concerning any exception to disclosure subsequent to my information request?

3. Did I plead a viable mandamus action against The University of Texas at Austin under Section 552.321 of the Texas Government Code by alleging U.T. Austin

continues to withhold after 400+ days public information responsive to my December 2, 2023, information request?

4. Did I affirmatively demonstrate the trial court's jurisdiction and establish a waiver to sovereign immunity for The University of Texas at Austin when the University denies access to information responsive to my information request without requesting an attorney general's decision as outlined in Subchapter G of the Act?

5. Did the trial court err as a matter of law granting the plea to the jurisdiction to the President of The University of Texas at Austin?

6. Did the trial court err as a matter of law granting the plea to the jurisdiction of The University of Texas at Austin?

7. Did the trial court err as a matter of law granting summary judgment in favor of The University of Texas at Austin?

8. Is it reversible error for the trial court to refuse to judicially notice an undeniable fact the reason being of this case?

To The Honorable Fifteenth Court of Appeals:

The University of Texas at Austin and its President never identified an exemption to mandatory disclosure under the Texas Public Information Act concurrent with its election to withhold information responsive to my December 2, 2023, Texas Public Information Request. The University of Texas System fabricated

Whittney Ford's Amended Brief

a single statement omitting several fact elements to deceive that it was satisfying the requirements of the TPIA. The University of Texas at Austin never submitted an attorney general's request for ruling as guided by Subchapter G of the Texas Public Information Act. The University of Texas at Austin to this day still withholds the information responsive to my request. Texas Rules of Civil Procedure, Texas Rules of Evidence, and Appellate Standards of Review require this Court to reverse and remand this case to the trial court so that a jury may determine the fact questions and render a verdict on those questions as I requested. I did plead a viable controversy under the Texas Public Information Act, which does waive sovereign immunity when governmental bodies like The University of Texas at Austin withhold public information, or when they do not request an attorney general's decision as outlined by Subchapter G of the Act. The Texas Public Information Act statutorily confers standing with more than one provision and does allow private rights of action under Section 552.321. I also raised a genuine issue of material fact which precludes the awarding of summary judgment in favor of The University of Texas at Austin. Travis County Trial Courts ignored the policy of Texas and erred as a matter of law in granting the plea to the jurisdiction and motion for summary judgment. I, Whittney Ford, Appellant respectfully show the following.

# STATEMENT OF FACTS

I Whittney Ford request this Court to take judicial notice of the following facts as they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned (Tex. R. Evid. R 201(b)(2)), and all are authenticated pursuant to Tex. R. Civ. P. 193.7, and further self-authenticated by Tex. R. Evid. R 902(5). Judicial notice of adjudicative facts may be taken at any stage of proceedings. Tex. R. Evid. R 201(d). The following is more than a scintilla, as required by *Town of Shady Shores v. Swanson*, 590 S.W.3d 544 (Tex. 2019).

A. On **December 2, 2023**, I, Whittney Ford, requested Texas Public Information from **The University of Texas at Austin**, identified by the University as **R005536-120223**. SuppCR 753-762, RR 38. My original request includes [1] The Application to the 2022 UTC Competition, mandated under Bipartisan Infrastructure Law, for the Center for Understanding Future Travel Behavior and Demand, [2] The Letter of Intent for 2022 UTC Competition by the University of Texas at Austin, [3] The Negotiated overhead and fringe benefit rates concerning the Center for Understanding Future Travel Behavior and Demand, [4] The University Transportation Centers Program Umbrella Grant Agreement for a National UTC, between US DOT OST and University of Texas Austin, and [5] Any and all materials concerning the Center for Understanding Future Travel Behavior and Demand and University

Whittney Ford's Amended Brief

Transportation Centers. RR 39. **Currently The University of Texas at Austin is withholding items [1-3, 5]**.

Item [4] is self-authenticating pursuant to Tex. R. Evid. 902(5) and Texas R. Civ. P. 193.7 as The University of Texas stipulated it did release this information, RR 14 , which was already released elsewhere, which is immediately evident. SuppCR 182. All kinds of facts are reported within, which are accurately and readily determined from a source whose accuracy cannot be reasonably questioned. Tex. R. Evid. R 201(b)(2). Starting on SuppCR 182, the cover page of the **Notice of Funding Opportunity** identifies the particular program relevant to this suit with **Opportunity No. UTCOPENCOMP2022**, it also lists an email address to find itself as **https://www.transportation.gov/content/university-transportation-centers**. This email address is necessarily a related writing susceptible to Texas Rules of Evidence. The contents at that URL location are necessarily related writings susceptible to Texas Rules of Evidence R 106. Opportunity No. UTCOPENCOMP2022 is eligible to "**non-profit institutions of higher education**." SuppCR 185. Through the Notice of Funding Opportunity, the US Department of Transportation [sought] grant applications from non-profit institutions higher education. SuppCR 185. "UTCs shall support surface transportation through the following US DOT research priorities (49 U.S.C §

Whittney Ford's Amended Brief

6503(c)(1) as amended by the IIJA, Sec. 25014)". "As part of preparing their applications, applicants should familiarize themselves with US DOT's current strategic planning and innovation efforts: … Strategic Plan development is available at **https://www.transportation.gov/utc/current-competition** " SuppCR 188-189. "New grants will be managed as a separate entity from any previous grant(s)." SuppCR 190. "**Only U.S. non-profit institutions of higher education** as defined under 20 U.S.C. § 1001(a) **are eligible to apply** [to UTCOPENCOMP2022]." SuppCR 193. "This Notice of Funding Opportunity requires that each applicant submit a Letter of Intent which OST-R requests be received by … **July 1, 2022**…" SuppCR 195-196. "Application must be submitted … no later than … **August 25, 2022**." Applications must consist of 1. "A cover sheet", 2. "A two-page research abstract", 3. "A written response to the evaluation criteria ….", 4. "appendices", and so on. SuppCR 197. "Hard copies of the application must be received by OST-R no later than … **August 30, 2022**…" "**Information submitted** in the application **may be subject to the Freedom of Information Act (FOIA).**" Supp 197. "Written Response … **35 page limit**…" SuppCR 199. "**Center Budget Plan**" "Provide a completed overall Center Budget Plan …" SuppCR 212. " … provide a legible cpy of your institution's most recent negotiated overhead rates and fringe benefits rates…" SuppCR 213. OTHER INFORMATION "Aside from

Whittney Ford's Amended Brief

the current competition referenced in this Notice of Funding Opportunity, **no information is available** at this time about the possibility of, or timeline **for, any future UTC Program competition**." SuppCR 220 and CR 41.

Information Responsive to R005536-120223 is by definition public information.

B. **The Application for the Center for Understanding Future Travel Behavior and Demand by The University of Texas at Austin is by definition public information** as U.T. Austin satisfies 20 U.S.C. § 1001(a) by way of Tex. Const. art. VII, § 10 and Tex. Educ. Code §§ 65.02(a)(2) and 67.02, and was thereby eligible to submit the application, and did write, produce, assemble and maintain the application by University employees for the University, for which the University owns the application, has a right of access to the application and spends money for the purpose of maintaining the application as it not only had to electronically submit the application but it also had to produce hard copies and transmit those as well. Tex. Gov.t Code § 552.002 and SuppCR 215. The same is true for items [2] and [3] above. There does not exist any other competition relevant to UTCOPENCOMP2022 and relevant to **R005536-120223**.

C. The particular competition, the selection process, ended and is closed for **UTCOPENCOMP2022**. **transportation.gov/utc/current-competition**

Whittney Ford's Amended Brief

reports there is "**No UTC Program Competition is Anticipated At This Time.**" This was true on **11/18/2024** when I took a screenshot of the web location. CR 41. No relevant competition was anticipated concerning the information at issue on February 14, 2024, almost a full month before the office of attorney general released (OR2024-007930), **March 11, 2024**, no competition was anticipated on **April 5, 2024**, date I originally filed suit, no competition is anticipated now on review of this appeal. Therefore, UTCOPENCOMP2022 and any application towards it is public information and Texas Public Information not exempted from mandatory disclosure. This is public information and not reasonably questionable. I demand this Court to take judicial notice of these facts. Texas Rules of Civil Procedure 193.7 allow this Court to take as authentic SCR and Texas Rules of Evidence 106 allows this court to look into any other related writing associated with the already authenticated writing.

**The University of Texas at Austin Never Identified an Exemption for information responsive toward R005536-120223**.

D. The University of Texas at Austin Never Identified an Exemption to Mandatory Disclosure under the TPIA for its Application to the completed grant competition. This is not only public information but self-authenticating

pursuant to Texas Rules of Civil Procedure 193.7 and this court may judicially notice the fact that The University of Texas never identified an exemption as evidence in its summary judgment evidence exhibit A concerning request **R005536-120223**.

E.  It has now been more the **400 days** since requesting the public information.

F.  The University of Texas Board of Regents Rules have the same weight as law.

G.  The University of Texas System office did not state an exemption to mandatory disclosure in its final brief to the Attorney General. The University of Texas System fabricated an exception by omitting necessary fact elements from an actual exception. The Systems fabricated string of text contains 55 total words or 66 total words depending on where you start the count. This is not only public information but self-authenticating by Texas Rule of Civil Procedure 193.7 and this court may judicially notice the fact that the word "ongoing" is omitted and the word "demonstrates" is omitted.

H.  The University of Texas System office relied on a competition The University of Texas was not and is not eligible for with its reference to https://www.transportation.gov/rural/grant-toolkit/university-transportation-center-utc-program-2022-2026-grants. This Court may take judicial notice and I demand it take judicial notice of this public website and that this link is toward a program that was limited to the states of Colorado, Montana, North

Dakota, South Dakota, Utah, or Wyoming. The University of Texas was not eligible for this program and therefore this link was not eligible to be referenced to withhold information concerning **R005536-120223**. The University of Texas System did not reference any other URL. This information is not only public information but self-authenticating by Texas Rules of Civil Procedure 193.7, Texas Rules of Evidence XX and this court may judicially notice the fact that The University of Texas System reference a program it was not eligible for.

I. The University of Texas at Austin cannot intend to apply for a competition it is not eligible for now or in the future. This is a fact.

J. https://www.transportation.gov/rural/grant-toolkit/university-transportation-center-utc-program-2022-2026-grants , is not a relevant writing to UTCOPENCOMP2022, this link is for Grant ID: REGION8UTCCOMPREOPEN whose eligibility excludes Texas allowing only Colorado, Montana, North Dakota, South Dakota, Utah, or Wyoming. CR 43-44, nor does this link ever appear in the Notice of Funding for UTCOPENCOMP2022. The link is only relevant to this suit because The University of Texas System relies on it in its final brief to the Attorney General.

## SUMMARY OF ARGUMENT

The disposition of the trial court is utterly antagonistic of the facts and void of proper application of Texas jurisprudence concerning Texas Public Information controversy. Participation in the 2022 University Transportation Centers program, administered by the United States Department of Transportation as established by the Bipartisan Infrastructure Law, requires Institutes of Higher Education in the United States to produce public information. The University of Texas at Austin initiated its participation in the UTC program by producing an application for the Center for Understanding Future Travel Behavior and Demand. The application is necessarily public information and Texas Public Information as defined by the Texas Public Information Act. I requested this application and other materials associated with the Center, in R005536-120223, which are all public information for which The University of Texas at Austin never identified an exception to mandatory disclosure. The University cannot rely on the improper decision generated by the Attorney General to continue withholding the application. The University did not meet its burden for summary judgment as it did not demonstrate no genuine issue of material fact exists corresponding to the jurisdictional inquiries of whether it "stated" an exception, whether it submitted comments concerning any exception, and whether it is withholding public information. The answer to the first 2 is no, the answer to the third is yes, leaving the waiver of sovereign immunity intact. The President failed

Whittney Ford's Amended Brief

his duty to make public information available and to afford all reasonable comfort and facility for the exercise of entitlement to the information. The trial court erred by not taking judicial notice the University is withholding the application, and that there is no anticipation of future competition amongst UTCOPENCOMP2022 and prejudicially rendered a decision in favor of the University. The trial court erred by granting the plea to the jurisdiction. The trial court erred by granting summary judgment in favor of the University.

Here, strict application of the facts, toward a strict construal of the Act, require disclosure of information responsive to R005536-120223, and the University and its President fails its own University Policies, fails the duties outlined by the attorney general's public information handbook, fails the duties outlined by the Texas Public Information Act, fails its burden of pleading, fails Texas Rules of Evidence, and fails the burden of Texas Rules of Civil Procedure 166a(c). Subsequently the trial court erred as a matter of law granting the plea to the jurisdiction and motion for summary judgment and I request this court to reverse and remand to allow a jury to hear this case.

# ARGUMENT

## I. Standard of Review.

The granting of a plea to the jurisdiction by a governmental body such as The University of Texas at Austin is an appealable interlocutory order under Tex. Civ. P. & Rem. Code § 51.014(8). Review of a plea to the jurisdiction mirrors that of a summary judgment and requires this Court to take as true all evidence favorable to the non-movant. See *Tex. DMV v. Bustillos*, 630 S.W.3d 316 (Tex. App. —El Paso, January 25, 2021, no pet.). At the pleading stage, if the pleadings do not allege facts sufficient to affirmatively demonstrate jurisdiction, but the pleading defects are curable by amendment, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *City of Georgetown v. Putnam* 646 S.W.3d 61. An appellate court's review of a trial court's decision mirrors that of an appellate court's review of summary judgment which reviews de no, accepting as true all evidence favorable to the non-movant, and indulging every reasonable inference and resolving any doubts in the non-movant's favor. Id.

When as here the trial court's order does not specifically state the grounds for granting summary judgment, appeals courts must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Leander Indep. Sch. Dist. v. Office of the AG for Tex.* No. 03-18-00243-CV, 2018 WL 6581523. When as here the trial court's order does not specifically state the

Whittney Ford's Amended Brief

grounds for granting judgment, appeals courts must affirm the judgment if " any of the theories presented to the trial court and preserved for appellate review are meritorious ", *Redus v. JP Morgan Chase Bank, N.A.*, 698 S.W. 3d 46 (Tex. App. — Houston [14th Dist.] July 23, 2024) citing *Provident Life & Acc. Ins. Co. v. Knot*, 128 S.W.3d 211, 216 (Tex. 2003).

Sovereign immunity protects the State of Texas and its agencies from suit and liability. The Legislature may waive immunity by statute, but it must do so by clear and unambiguous language. *Qatar Found v. Zachor Legal Inst.*, 627 S.W.3d 674, 2021 Tex. App. LEXIS 2817 (Tex. App.—Austin [3rd Dist.] April 15, 2021, pet denied.)

"Sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued, unless the state consents to suit. Subject matter jurisdiction is essential to a court's power to decide a case. The absence of subject matter jurisdiction may be raised by a plea to the jurisdiction, or by other procedural vehicles such as a motion for summary judgment. Accordingly, an agency of the state may properly assert immunity from suit by means of a plea to the jurisdiction" *Tex. DMV v. Bustillos* 630 S.W.3d 316.

A plaintiff bears the burden of establishing a waiver of sovereign immunity in suits against the government. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550

Whittney Ford's Amended Brief

(Tex. 2019). Appellate courts are not required to solely examine the pleadings but may consider evidence and must do so when necessary to resolve jurisdictional issue raised. *Rivera v. San Antonia Water Sys.*, 2023 Tex. App. LEXIS 3508 citing *Town of Shady Shores v. Swanson*, 590 S.W.3d 544 (Tex. 2019).

"When a trial court does not state the grounds upon which it granted the summary judgment, the nonmovant must show on appeal that each independent ground alleged in the motion is insufficient to support the judgment." *Boone R. Enters. v. Fox. TV Stations Inc.*, 189 S.W.3d 795, 2005 Tex. App. LEXIS 686 at *2. "Similarly, a trial court abuses its discretion when it fails to analyze or apply the law correctly." *In re Nationwide*, 494 S.W.3d at 712. This court reviews the disposition of a jurisdictional plea de novo. *Suarez v. City of Texas City*, 465 S.W.3d 623, 632(Tex. 2015); *Tex. Dept of parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

**II.    The trial court erred as a matter of law granting The University of Texas at Austin's plea to the jurisdiction because the University never identified an exemption to disclosure concerning information request R005536-120223, and The University omitted necessary language, in its final brief to the Attorney General, to disobey the limit imposed by Tex Gov't Code 552.104(a).**

a. Because the University omitted necessary language in its final brief to the Office of attorney general, the University failed to 'state' an exception as required by Tex. Gov't Code § 552.301(e)(1)(A) and thus refused to request an attorney general's decision as provided by Subchapter G of the TPIA, activating the waiver of sovereign immunity under Tex. Gov't Code § 552.321(a).

The policy of the State of Texas is that "each person is entitled, unless otherwise expressly provided by law, at all times complete information about the

Whittney Ford's Amended Brief

affairs of government …" Tex. Gov't Code § 552.001(a). The University fails this express language by omitting necessary language from its final brief. CR 65, SuppCR 597. Accurate summaries are not "stated" exceptions and insufficient substitutes for exceptions. Since this court must " never rewrite the statute under the guise of interpreting it", King v. Paxton 576 S.W.3d 881, and "must enforce the statute as written and refrain from rewriting text lawmakers use", Jaster v. Comet II Constr., Inc., 438 S.W.3d 556, 562 (Tex. 2014) (quoting Entergy Gulf States, Inc., 282 S.W.3d at 443), this court must interpret an inequivalent string of text than what was used in the final brief of the University (SuppCR 619). As did the attorney general in (OR2024-007930). Since this court must, under de novo review, the University never stated an exception in its final brief and waived its immunity pursuant to Tex. Gov't Code § 552.321(a). At the very least, I introduced a material fact question which escapes a Rule 166a(c) standard, which should have been the standard mirrored below for the plea to the jurisdiction. "A party properly places summary judgment proof before the trial court by requesting judicial notice of evidence already in the record or by incorporating evidence in the party's motion." State v. Three Thousand, Seven Hundred Seventy-Four Dollars & Twenty-Eight Cents U.S. Currency ($3,774.28), 713 S.W.3d 381, 2025 Tex. LEXIS 401, at *11, (citing Steinkamp v. Caremark, 3 S.W.3d 191, 194 (Tex. App.—El Paso 1999, pet. denied)) The University, below, never provides an explanation as to why it did not

Whittney Ford's Amended Brief

include necessary fact elements in its final brief to the attorney general. I also point out that the University supported its irrelevant comments in its final brief by referencing the URL https://www.transportation.gov/rural/grant-toolkit/university-transportation-center-utc-program-2022-2026-grants . SuppCR 620. This URL is toward a competition not relevant to R005536-120223 (the URL never appears in the Notice of Funding for UTCOPENCOMP2022), nor was the University eligible to participate in that competition, thus the final brief is fraudulent, and the University never established its entitlement to summary judgment, leaving the waiver under Tex. Gov't Code § 552.321(a) intact. Reverse and remand the order below.

b. Conclusory assertions that a particular exception applies to R005536-120223 does not suffice.

The attorney general's public information handbook, located at the following URL: https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/open-government/publicinfo_hb.pdf , (TAB D), on page 43, details as part of the duties of a governmental body, when seeking a decision about information disclosure, governmental bodies must establish that a particular exception from the TPIA applies to particular information to defeat the presumption that all categories of information in the possession custody or control of a governmental body is public information and publicly accessible during business hours. Examining the record here, the University offered nothing more than conclusory assertions, nor did The University explain any exhibit under any detail at the July 15, 2025, hearing. The

Whittney Ford's Amended Brief

University, therefore, did not meet its summary judgment burden, and my only burden is to produce a material fact issue, and the 261st District Court erred as a matter of law granting the 2nd amended plea to the jurisdiction and motion for summary judgment for U.T. Austin. The University never identified an exemption to disclosure concerning information request R005536-120223, nor does any information responsive to R005536-120223 satisfy any exemption under the TPIA. I respectfully demand this Court to reverse the order and remand the case back to the trial courts.

c. The University of Texas at Austin never identified an exemption to the information at issue and subsequently never requested an attorney general's decision.

Contrary to the statement of facts in the plea to the jurisdiction, SuppCR 578, ¶ I, is its own exhibit. Exhibit A, SuppCR 606, which is not admissible because if fails Texas Best Evidence rule, includes a blank exemption portion, with drop down arrow obscured from view and various other information whitewashed. With this portion blank, there is no way of knowing whether the University of Texas at Austin requested a decision or not. University of Texas System Policy 139, CR 89-92, details member institutions' officer for public information or designee should send to the Office of General Counsel "c) a list of all possible exceptions the institution believes may apply."  With the exemptions portion blank in its own exhibit, we cannot know if the University followed its own policy. The exemptions portion of the University's exhibit A is the most relevant to this suit, and the University never

Whittney Ford's Amended Brief

provided an explanation of why they submitted it blank and obscured. "if the evidence creates a fact issue, the trial court cannot grant the plea to the jurisdiction." *Chambers-Liberty Counties Navigation Dist. v. State*, 575 S.W.3d 339, 62 Tex. Sup. J. 969 (Tex. 2019). Therefore, Travis County District Courts retain jurisdiction over this suit. Accordingly, this Court should reverse and remand, because the trial court allowed inadmissible evidence which created its own fact question, precluding the granting of a plea to the jurisdiction, and leaving the waiver under Tex. Gov't Code § 552.321(a) intact. The University cannot rebut this as explained next.

d. The University supplied inadmissible hearsay, which the trial court must have relied on to erroneously grant the University's plea to the jurisdiction.

The final brief (SuppCR 618-621), **authored by The University of Texas System** is inadmissible hearsay because [1] The University of Texas System authored it, [2] it does not contain an exception found in the Texas Public Information Act, and [3] it relies on a program the University was not eligible for and not relevant to R005536-120223**.** None of the submitted comments demonstrated any harm to the University, and none of the comments concerned a particular ongoing competition. None of the comments demonstrated a particular future competition. The final brief failed its duty outlined by https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/open-government/publicinfo_hb.pdf page 43 and is inadmissible. The URL relied on by the University https://www.transportation.gov/rural/grant-toolkit/university-

transition-center-utc-program-2022-2026-grants , last accessed by me August 25, 2025, 11:33 AM, declares a program that was only eligible to Colorado, Montana, North Dakota, South Dakota, Utah, or Wyoming. This is public information whose accuracy cannot be questioned.  The trial court's reliance on this inadmissible evidence likely caused it to erroneously grant the plea to the jurisdiction. Because my claims were dismissed with prejudice, abrogating my entitlement to complete information about The University, the trial court erred as a matter of law and this court should reverse and remand.

e. Because there is no affirmative negation of jurisdiction, the trial court erred in granting the University's plea.

The Supreme Court opines *in Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 59 Tex. Sup. J. 512, 2016 WL 1312910, citing, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004), that "pleadings must affirmatively negate jurisdiction for a trial court to grant a plea to the jurisdiction." At the hearing on the plea which occurred in the 53rd District Court, Travis County on July 15, 2025, I specifically asked the court to deny the plea to the jurisdiction based on the University agreeing that Section 552.321 of the Government Code allows requestors like me to file suit against it in Travis County when requestors believe the University is improperly withholding public information. I also requested the trial court to take judicial notice that the University was withholding information for which the trial court responded " No…." RR 49.

Whittney Ford's Amended Brief

Before that, I asked the trial court to take judicial notice of https://www.transportation.gov/utc/current-competiton , for which the trial court responded " I don't believe I need to …" and before that " I don't know …" RR 43. A response of "I do not know" cannot get any further from an affirmation. Under the trial court's own confusion, absent any reasoning in the trial court's subsequent order, the trial court impermissibly granted the plea, trespassing my entitlement to complete information about the University.

    f.   Because the information at issue does not sustain Tex. Gov't Code § 552.104(a), the University was never entitled to judgment as a matter of law, and the trial court did not apply the law correctly when it granted the plea to the jurisdiction and motion for summary judgment.

It is true that the Application to the 2022 UTC Competition, mandated under Bipartisan Infrastructure Law, for the Center for Understanding Future Travel Behavior and Demand, and information responsive to request R005536-120223, concerns UTCOPENCOMP2022, whose selection process ended in 2023, where no competition is anticipated at this time, and no information is available about the possibility of, or timeline for, any future UTC Program competition. SuppCR 220 and https://www.transportation.gov/utc/current-competition. Thus, the exception to information disclosure relied on by attorney general opinion (OR2024-007930) never applied and the University was never entitled to judgment as a matter of law, and I never had a duty to respond to the plea to the jurisdiction and motion for

Whittney Ford's Amended Brief

summary judgment by The University of Texas. Tex. R. Civ. P. 166a(c). I demand this Court to reverse and remand.

g.  When governmental bodies such as The University of Texas at Austin ignore its duty to utilize all the express language of the Texas Public Information Act, denying requestors' entitlement to complete information about the University, subject matter jurisdiction is anointed on Travis County District Courts.

The University of Texas System Policy UTS 134 announces a duty for financial officers and employees of U.T. System in that they shall "file complete, accurate, timely, and understandable disclosure statements as required by applicable laws, rules, or policies." CR 17. UTS 134 also declares a duty to "act in good faith, responsibly, and with due care, competence, and diligence, without misrepresenting material facts or allowing one's independence of judgment to be subordinated." CR 17. "comply with applicable federal or State laws and local ordinances…" The President along with Audra Gonzalez Welter, Assistant General Counsel, with The University of Texas System failed these duties by fabricating a deceitful set of text which eliminated necessary fact elements such as "ongoing" and "demonstrate" from the exception relied on in (OR2024-007930). By omitting these words from the final brief to the Office of Attorney General, the President has misrepresented the express language of the TPIA in violation of UTS 134 and in violation of the Policy of Texas in that each person is entitled to complete information unless expressly by law. Tex. Gov't. Code 552.001. Tex. R. Evid. R 107 allows review of these missing fact elements. De novo review requires it. This court reviews the

Whittney Ford's Amended Brief

disposition of a jurisdictional plea de novo. Suarez v. City of Texas City, 465 S.W.3d 623, 632(Tex. 2015); *Tex. Dept of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "Courts must not interpret a statute in a manner that renders any part meaningless." *Empower Texans, Inc. v. Dallas Cnty.*, 648 S.W.3d 664, No. 05-20-00546-CV (Tex.—App. Dallas July 15, 2022, pet. denied.) Accordingly, this court must interpret a set of text inequivalent to the set the University and its President used through Audra Gonzalez Welter's final brief, as did the attorney general in (OR2024-007930). And since this court must, The University of Texas at Austin never "stated" an exception found within the Texas Public Information Act, and the trial court erred as a matter of law in granting the plea to the jurisdiction. By not "stating" an exception in its final brief, The University of Texas did not, and refuses to request an attorney general's decision as provided by Tex. Gov't Code § 552.301(b), (e)(1)(A). Trial courts retain jurisdiction over information access controversies when the University of Texas does not state exceptions in final brief requests to the attorney general office. Nevertheless, I have proven the information responsive to **R005536-120223,** is public information and the University of Texas continues to withhold it. Trial courts in Texas retain jurisdiction over suits complaining of governmental bodies refusal to supply public information, and Travis County District Courts retain jurisdiction over this suit because the University

Whittney Ford's Amended Brief

refuses to supply information responsive to **R005536-120223**, by way of Tex. Gov't Code § 552.321(a) refuses element.

## III. The trial court erred as a matter of law granting the motion for summary judgment in favor of The University of Texas at Austin because the University failed procedural prerequisites.

h. Neither The University nor its President provided proper notice for its no-evidence motion for summary judgment.

Apparently, the Texas Supreme Court in *Town of Shady Shores v. Swanson*, 590 S.W.3d 544 eliminated the traditional summary judgment motion as a conduit for governmental jurisdiction attacks on the evidence. *Town of Shady Shores v. Swanson at **13,* "we see no reason to allow jurisdictional challenges via traditional motions for summary judgment but to foreclose such challenges via no-evidence motions." Therefore, The University of Texas at Austin must, after adequate time for discovery, specifically identify and "**state the elements as to which there is no evidence**." Tex. R. Civ. P. 166a(i). Examining the reporters record from below, neither The University of Texas at Austin nor its President attempted to admit any exhibit or attempt to discuss any exhibit beyond a conclusory statement that the exhibit exists. See the reporter's record in general. The trial court stated that "nothing the [University of Texas] says is evidence". See RR. And the motion does not state any elements for which there is no evidence, which is perquisite to granting a no evidence motion for summary judgment. See Tex. R. Civ. P. 166a(i). Either way, I did attempt to discuss evidence I had just received on July 14, 2025, less than a full

Whittney Ford's Amended Brief

24 hours before the hearing on the plea. The evidence clearly shows that the University never identified any exemption, and moreover there is no current competition nor one anticipated to satisfy the referenced exception to disclosure they claim to be beneficiary of. The University never met this burden and cannot meet this burden as the facts asserted here and taken as true as this court does in its review, show there is evidence that [1] The University of Texas at Austin is withholding public information and [2] The University of Texas at Austin refused to request an attorney general's decision as outlined by Subchapter G of the TPIA. The University of Texas at Austin never stated the elements for which there is no evidence and notice of a no evidence motion for summary judgment never appears in the Travis County District Court's Docket. There was not adequate time for discovery. After October 28, 2024, when the University filed its original plea to the jurisdiction and motion for summary judgment, I repeatedly requested Travis County District Courts for an order compelling discovery of simply jurisdictional evidence, which is also public information. For whatever reason, Travis County District Courts repeatedly refused me discovery, even those initial disclosures which I still request. Nevertheless, it is true the particular competition ended and there is no anticipation for its recurrence. It is true, information responsive to R005536-120223 is public information not exempted from mandatory disclosure by Tex. Gov't Code § 552.104(a).

Whittney Ford's Amended Brief

### a. Is it Reversible Error For Trial Court To Refuse To Judicially Notice an Undeniable Fact?

I requested the trial court to at least acknowledge and judicially notice that the University of Texas at Austin was withholding information responsive to my information request. It has been over a year, and 3 motions for summary judgment filed, and zero motions for baseless claims. I am entitled to at least notice that the University is withholding information. The trial court refused. This result could come from nothing but the shrewdest of prejudice. A trial court's decision to exclude evidence is reviewed for abuse of discretion. Northsky, LLC v. Rummans, WL 1757925, (Tex. App.— Dallas [5th Dist.] June 25, 2025) No. 05-24-00561-CV.

## IV. I pled a viable mandamus action against The University of Texas at Austin based on the plain language of Tex. Gov't Code Section 552.321(a).

Texas Government Code Section 552.321(a) statutorily confers standing on myself and waives sovereign immunity of The University of Texas at Austin, because U.T. Austin as a governmental body under Texas Government Code Chapter 552 has refused to request an Attorney Generals decision as provided by Subchapter G of Chapter 552, after I requested information from the University on December 2, 2023. Requestors like me are allowed to file suit for writs of mandamus, compelling the disclosure of information, in the district court for the county in which the errant governmental body's main offices are located. For this case, I filed suit in Travis County District Courts on April 5, 2024, requesting the court to compel disclosure

Whittney Ford's Amended Brief

of the information at issue from the University of Texas. SuppCR 5-14. See Tex. Gov't Code Section 552.321(a), (b).

Below, the University never argued I did not have standing under Section 552.321 but challenged the evidence regarding if it met the perquisite for an immunity waiver by not requesting an attorney general's decision. The University below misrepresents my argument claiming that I erred technically by invoking the section .321 waiver against the President and not against the University as a body whole. Even that argument is garbage because the governmental body must act through some individual, and the TPIA makes it clear that that individual is the chief administrative officer, which happens to be the President of the University. See Tex. Gov't Code § 552.201(a). Thus, my only burden below was to show a genuine material fact issue exists. "Summary judgment is proper if there is no genuine, material fact issue and the movant is entitled to judgment as a matter of law*." Jimmie Luecke Child. P'ship Ltd. v. Droemer*, NO. 03-20-00096-CV, 2022 WL 243162. The plea to the jurisdiction and motion for summary judgment exhibit A presents its own fact question as to when the University identified and exemption and when did it transfer this exemption to System Offices in order to request an attorney general's opinion? The truth is, the University never identified an exemption and is committing fraud as defined by University System Policy.

Whittney Ford's Amended Brief

**V.** **I pled a viable ultra vires action against the President of The University of Texas at Austin alleging he has a duty to make the information at issue available for inspection, and he failed that duty, violating my entitlement to access to complete information about The University of Texas at Austin and the actions of its President.**

a. The President has a duty to file complete, accurate, and understandable disclosure statements as required by the Texas Public Information Act, that he failed, thus performing ultra vires.

The President of the University of Texas at Austin, as a financial officer by way of Rule 10501(2.3) of Rules and Regulations of the Board of Regents, CR 32, and University of Texas System Policy UTS 134, CR 17 has a duty to "file complete, accurate, timely, and understandable disclosure statements as required by applicable laws, rules, or policies." Being the officer for public information for the University of Texas at Austin, by way of Tex. Gov't Code 552.201, the President has a duty to file complete, accurate briefs to the attorney general concerning information requests to the University of Texas at Austin. The President relying on the inaccurate final brief submitted by Audra Gonzalez Welter which omits express language from an exception, fails to file a complete reiteration of an exception, nor does it reference competition the University of Texas is eligible for. The President has a duty to comply with applicable federal or State law and certainly for the release of public information under Tex. Gov't Code 552.204. This court taking as true all evidence in favor of me the non-movant has already determined the application I seek is public information and should have been released more than 400 days ago. The President

Whittney Ford's Amended Brief

is violating his duties and not complying with UTS 134 or of the Texas Government Code 552.001-136 generally, violating my entitlement to complete information about the University of Texas at Austin in a controversy which Travis County District Court do maintain jurisdiction. I request this court to reverse and remand.

It is settled law in Texas that trial courts may review administrative action only if a statute provides a right to judicial review, or the action adversely affects a vested property right or otherwise violates a constitutional right. See *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, Tex. Sup. J. 938, WL 1975025 (Tex. 2018). To state an ultra vires claim the plaintiff must allege and prove that the named official acted without legal authority or failed to perform a ministerial act. See *Hall v. McRaven*, 508 S.W.3d 232, 258 (Tex. 2017). The intent of the entire Texas Public Information Act is to provide review capabilities to the public and to other governmental entities, of government activity. Texas jurisprudence has respected the Act's intent to review administrative decision governing distribution of information by even allowing a foreign entity to file suit against the Texas Attorney General requesting the judiciary to opine that certain activity between Qatar and Texas A&M University was confidential and not public information to be disclosed. See *Qatar Found. v. Zachor Legal Inst.*, 627 S.W.3d 674 (Tex. App. —Austin [3rd Dist.] April 15, 2021). The Act further provides judicial review for private citizens when chief administrators such as the Attorney General misapply the act such as in *Tex. State.*

Whittney Ford's Amended Brief

*Bd. Veterinary. Med. Examiners v. Gigglemen*, 408 S.W. 3d 396. See 552.3215.552.321,. Here, the President of The University of Texas at Austin cannot hide behind the specter of the entire governmental body as the Texas Public Information Act names him specifically responsible for making public information available to the public. As here, when the President does not make public information available, he has adversely affected my property right, which is the entitlement of access to Texas Public Information during normal business hours of the University of Texas at Austin. In *Van Boven v. Freshour*, 659 S.W.3d 396, 65 Tex. Sup. J. 1301, (Tex. 2022) the Texas Supreme court examined its decision in *Hall v. McRaven* to determine if officials of the Texas Medical Board acted ultra vires against a physician concerning reports to state and national databases concerning unproven complaints against the physician. I request this court of a similar analysis regarding the President of the University of Texas's refusal to distribute information, and more specifically his refusal to make the information at issue publicly available as acting ultra vires and contrary to the duties imposed to him by the Texas Public Information Act. In *Tex. Comptroller of Pub. Accounts. v. AG of Texas*, 354 S.W.3d 336, 54 Tex. Sup. J. 245 (Tex. 2010), a case that began in trial court, the Supreme Court negated the opinion of then Texas Attorney General Greg Abbot and declared birth dates of governmental employees are exempt from mandatory disclosure.

Whittney Ford's Amended Brief

The Code Construction Act applied to the language of several provisions of the Texas Public Information Act announces several duties specific to the President of the University not shared with the rest of the University. The President as the public information officer for the University has a duty to make public information available for public inspection and copying, Tex. Gov't Code 552.203(1) " each officer of public information … shall : (1) make public information available for public inspection and copying." On December 4, 2023, when the University of Texas acknowledged receipt of my Texas Public Information request, then President Jay Hartzell had a duty to disclose all the requested information. Current interim President Jim Davis has a duty to disclose the requested information under Tex. Gov't Code 552.203(1). As explained above, the information is public beyond dispute. And as we can see from their own exhibits, the University of Texas at Austin never identified any exemption to mandatory disclosure. UT. System never articulated any exemption found in the Act in its 15 day brief. Having responsibility for the University of Texas at Austin 552.201 and .204, its President had a duty to file with the trial court for in camera inspection of the information at issue, 552.3221. The statute itself establishes its reasonableness, and the President has no discretion to determine it unreasonable, and therefore within the 400+ days this suit has been existing it is reasonable for in camera inspection, Tex. Gov't Code. 552.224 "shall give to a requestor all reasonable comfort and facility for the full exercise of the right

granted by [The Texas Public Information Act]" After I repeatedly request for in camera inspection, then President Jay Hartzell and now Interim President Jim Davis have duties to give me that in camera inspection which they continue to deny. Under the Act, they have no discretion in denying me the reasonableness of the statute, which makes my suit against the President an ultra vires claim. For this I request this Court to reverse and remand and mandate an in camera inspection for the information at issue as well as all the other targeted discovery that I have requested.

The President failed in his duty of uniform treatment without regard to the position or occupation of the requestor, which is also violation of his duty of all facility for the full exercise of the right granted by [The Texas Public Information Act]. See Tex. Gov't Code Section 552.223 and .224. Basic to this duty is a precise transfer of all the language of exceptions the President wishes to apply to information requests. For my request this did not happen. I subsequently requested evidence to ensure uniform treatment of the particular 552.104(a) exception, but the President and University continue to deny me discovery on this issue with several withholding statements and objections that don't apply. This evidence is jurisdictional and to the merits of the mandamus action and should be discovered.

Whittney Ford's Amended Brief

**VI.** **The Declaration of Chandrasekhar Ramalinga Bhat is utterly incompetent corresponding with the rash lies Rachel Behrendt submitted at the July 15, 2025, hearing.**

Objections to conclusory affidavits may be raised for the first time on appeal. *Jimmie Luecke Child. P'ship v. Droemer*, 2022 Tex. App. LEXIS 605, 2022 WL 243162. Firstly, Dr. Bhat is not general counsel and does not have the duty or authority to provide legal advice to or for the University as a faculty member. His copied and pasted legal conclusions are therefore incompetent. Dr. Bhat's input in this suit does not appear until over a year after I filed suit against the University and, the detailed final brief sent January 3, 2024, could not have been a product resulting from his consultation. Dr. Bhat used words including "proprietary" and "confidential" to describe information responsive to R005536-120223. The words "proprietary" and "confidential" never appear in the final brief to the attorney general. Dr. Bhat used words including "sensitive" to describe information responsive to R005536-120223. The word "sensitive" never appears in the final brief to the attorney general. If Dr. Bhat was consulted, U.T. System Office of General Counsel must have agreed his analysis incompetent, as general counsel did not use his analysis in their final brief to the attorney general. The declaration is incompetent; the word "proprietary" appears four times in the TPIA and never to protect ideas of institutes of higher education, the word "sensitive" appears 12 times, three fourths of which deal with crime scenes, 2 with peace officers and 1 with computer security and never to protect ideas of institutes of higher education.

Whittney Ford's Amended Brief

"Confidential" appears throughout the TPIA, but never to protect ideas of institutes of higher education, and "confidential" never appears in the final brief to the attorney general. The declaration of Dr. Bhat is incompetent and a lie. The 2022 University Transportation Centers program, administered by the United States Department of Transportation as established by the Bipartisan Infrastructure Law, is not a marketplace, and nothing was bought and sold amongst competitors. Furthermore, the details of research ideas and performed research must be disclosed as researchers must publish their work along with system models and the data input to those models, and Dr. Bhat has been doing that. Release of research details does not diminish the capacity or prestige of the University but reinforces its very existence. Therefore, the University does not demonstrate that release of research details will harm its interests. The declaration of Dr. Bhat is utterly incompetent and conclusory and inadmissible under rules of evidence. I object to any reliance on it in this lawsuit, and request it be stricken and completely obfuscated in this appellate record.

## VII. The final brief by University System is fraudulent.

The University's handbook of operating procedures 3-1021, CR 19-25, defines fraud as intentional deception that violates law or the public trust for personal benefit of others, including the University and its colleges, schools or units. 3-1021 identifies examples of fraud in a non-exclusive list to include unauthorized use of records, falsification of reports to management or external agencies, pursuit of a

Whittney Ford's Amended Brief

benefit in violation of other policies, willful violation of laws, regulations, or contractual obligations when conducting University business. When the University submitted its final brief to the attorney general, it omitted necessary fact elements such as "demonstration of harm" and "ongoing" from Tex. Gov't Code § 552.104(a) to deceive to the external agency (Office of Attorney General), that it actually identified an exemption that applied to information responsive to R005536-120223. The University performed this omission as a willful disregard of statutory text to deny my entitlement to information responsive to R005536-120223. The University committed fraud. On October 28, 2024, and April 24, 2025, the University filed a plea to the jurisdiction and motion for summary judgment exhibit A, RR 12, SuppCR 606, which obscured from view the most relevant portions of information in this suit. The exemption portion is blank, the drop down arrow is blank, which is a falsification of reports to the district court in pursuit of illegally denying my entitlement to information responsive to R005536-120223, and a willful violation of Texas Best Evidence rule. The University is committing fraud.

## VIII. The trial court synchronized her own abuses of discretion with the lies of Rachel Behrendt and the University to unlawfully grant the plea to the jurisdiction and motion for summary judgment.

"It is not the role of the trial court, at summary judgment, to evaluate the credibility of the affiants, or the weight of the summary judgment evidence, but only to determine whether a disputed fact issues exists which should be resolved by the

Whittney Ford's Amended Brief

trier of fact." *Poppingfun, Inc. v. Integracion de Marcas, S.A. de C.V.*, No. 13-19-00143-CV, 2021 Tex. App. LEXIS 663, 2021 WL 317648. At the July 15, 2025, plea hearing, I attempt to get adjudicative facts judicially noticed for which The Honorable Maria Cantu Hexsel assumes a hostile attitude. On page 40 of reporter's record, I request judicial notice of a closure date that still exists on a related writing at the URL that the University uses in its final brief. The closure date was August 15, 2023, months before I requested public information and more months before I filed suit. But this date concerned a program that the University was not eligible for, that the University fraudulently used in its final brief. The judge turns around and asks if there is an objection to the URL which there could not be. The University through Rachel Behrendt lies and says, "your honor, we are not sure if they're accurate or not." The lies of Rachel Behrendt is a false statement of fact, because as advocate and witness, the attorney general had even more advance notice of the URL and the dates than I did, and the source of the date and URL, is that of which cannot be accurately or reasonably questioned. It is a .gov address for which only the U.S. Government has custody and control, for which the University used in its final brief to the attorney general on January 3, 2024. Moreover, the answer questioning the accuracy, and not of relevance, cannot be a demonstration that no genuine issue of material fact exists. The University fails the Rule 166a(c) burden for summary judgment. With Rachel Behrendt's response of "we are not sure", my burden was

Whittney Ford's Amended Brief

complete, and the trial court should have denied the plea and motion for summary judgment for both the University and its President. Examining the reporters record you find The Honorable Maria Cantu Hexsel having a hard time to judicially notice a second URL after she just noticed the irrelevant URL used by the University in its final brief. RR 48. Harmonizing her own prejudice with the poppycock told by Rachel Behrendt, Judge Hexsel declares "I don't believe I need to take judicial notice of because that's your statement that that's…" Judge Hexsel refuses to take judicial notice of the only URL relevant to this lawsuit and refuses to judicially notice the fact that there is only 1 U.S. Department of Transportation with sole custody and control of www.transportation.gov web domain. This is a fact involving TCP/IP. Judge Hexsel understood I was reading from my Second Amended Petition paragraph 28. RR 40. Paragraph 28 of my petition contains 2 URLs, one is relevant to the information at issue, and one is not. The first one I asked Judge Hexsel to judicially notice, she never did, she only noticed there was a closure date, what date, I cannot be certain because she never produced any reasoning. This first URL, https://www.transportation.gov/rural/grant-toolkit/university-transportation-center-utcprogram-2022-2026-grants ,is cited by the University in its final brief and is toward a program Texas was not eligible for. The second URL, https://www.transportation.gov/utc/current-competiton , does appear in the Notice of Funding in item[4], and is relevant to the information at issue and contains the

statement "No UTC program competition is anticipated at this time". This fact completes the jurisdictional question under Tex. Gov't Code § 552.104(a), because the merits and jurisdictional questions intertwine. Judge Hexsel refused to notice these facts because Judge Hexsel is intent on maintaining her own prejudice and reinforcing the University's fraud. Texas rules of evidence Rule 201(d) makes it mandatory for Judge Hexsel to judicially notice facts when given sufficient information. The sufficiency of the URLs are in the .gov domain name, only the United States government controls .gov domain name on the world wide web. Judge Hexsel did not possess the discretion not to judicially notice the facts as I pled them July 15, 2025, in her courtroom. Judge Hexsel clearly abused her discretion and unlawfully granted the pleas to the jurisdiction for the University and its President and unlawfully granted the motion for summary judgment for the University. In the resolution of fact issues, when it is shown that the court could have reasonably reached only one decision, and refused, it is shown that the trial court clearly abused its discretion. *In re ExxonMobil Corp.*, 97 S.W.3d 353, 2003 Tex. App. LEXIS 981. Judge Hexsel then decides to distract me from discussing the facts with a question about whether I filed a written response to the plea to the jurisdiction and the summary judgment. RR 44. The third court of appeals in Austin has opined that a plaintiff, like me below, may stand on pleadings in the face of a plea to the jurisdiction, unless and until a court determines the plea is meritorious. *Zumwalt v.*

Whittney Ford's Amended Brief

*City of San Antonio*, 2012 Tex. App. LEXIS 4003, 2012 WL 1810962. I never had a duty to respond to the plea as none of the points submitted merited dismissal whatsoever. The University is committing fraud by its own definition. "A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles." *In re Starr Indem. & Liab. Co.*, 2024 Tex. App. LEXIS 6012. Judge Hexsel, intent on maintaining her own prejudice, was unreasonable questioning whether I filed a response, when I had been objecting to the University even before the court went on record that July 15, 2025, morning. Plus, Rule 166a(c) allows other such responses. My allegations were not my descriptions, I merely repeated in the court room what the United States Department of Transportation had already produced. I produce public information for which the judge refused to judicially notice. Her refusal and confusion could only be the result of pure prejudice; she didn't care what the facts were or are. Moreover, when I ask her to take judicial notice that the University is withholding public information, RR 49, Judge Hexsel responds with "No, I'm not taking …." Central to the question of subject matter jurisdiction under Tex. Gov't Code § 552.321(a) is whether the governmental body, here U.T. Austin, is withholding information. The University acknowledges that it is withholding information, RR 10, 26-27, and therefore Judge Hexsel already has the necessary information to judicially notice that the University is withholding information

Whittney Ford's Amended Brief

responsive to R005536-120223, and therefore on request must judicially notice the fact. She did not, because then the burden would shift back to the University, to prove that an exception applies to the information, and knowing no exception applies, she chose to grant the plea and motion for summary judgment facilitating the fraud by the University. She abused her discretion, and I demand reversal and remand of this case.

**IX.     The only demonstration by the University were lies told at the plea hearing, and acceptance of the lies by the trial court judge who reinforced the University's lies with some of her own.**

At the July 15, 2025, hearing in the 53rd District Court, right off the bat, the trial court and the University had a scheme in place to deny me opportunity in the trial court. The University sent an email stating that there was a hearing scheduled for not only the University but for the other set of defendants in D-1-GN-24-002171. Once I requested from the judge what was on the docket for the day, co-counsel for the University, Zachary Rhines, began a cutting signal with his hand, left and right, adjacent his neck area, to the judge, to call something off. The University did not schedule enough time for me to go over all the facts, nor did the University intend to go over most of the relevant facts and did not.

Whittney Ford's Amended Brief

## CONCLUSION AND PRAYER

This is an accounting of how several governmental bodies have colluded to disregard the policy of Texas in that public servants are not the masters of Texas Public Information. In this controversy I have shown that 5 separable governmental entities refused to apply facts to law under the Texas Public Information Act (TPIA) toward my December 2, 2023, Texas Public Information request, to The University of Texas at Austin, allowing continued illegal withholding of Texas Public Information. I Whittney Ford, submit this brief requesting this Court to reverse the order below and remand this case back to the trial courts. Alternatively, I request this Court to modify the order below to dismiss without prejudice to file again. The University of Texas never established an entitlement to summary judgment after I pled a valid waiver of sovereign immunity. Texas Rules of Evidence and appellate standard of review invokes mandatory duty to reverse the order below.

Respectfully submitted,

Dated: August 25, 2025,

By: /s/ Whittney Ford

WHITTNEY FORD
PRO SE
4151 WELLBORNROAD, APT#1101A
BRYAN, TEXAS 77801
(979) 264 – 4944
WJACKSONFORD@GMAIL.COM

Whittney Ford's Amended Brief

# CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this long brief contains 11,924 words, including the portions of the brief exempted by Rule 9.4(i)(1). 14 point font, in Microsoft Word.

/s/ Whittney Ford
Whittney Ford

# CERTIFICATE OF SERVICE

In accordance with Rule 21 of Texas Rules of Civil Procedure, I Whittney Ford certify that a copy of this Motion To Obfuscate was served on The University of Texas at Austin and its President through their counsel, via email, via EFILETEXAS.GOV, on August 25, 2025, at the email addresses below:

Rachel L. Behrendt
Texas Bar No. 24130871
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4112
Facsimile: (512) 320-0667
Rachel.Behrendt@oag.texas.gov

Zachary Rhines
Texas Bar No. 24116957
Special Counsel
Special Litigation Division
Office of the Texas Attorney General
P.O. Box 12548 (MC 009)
Austin, Texas 78711-2548
Telephone: (512) 696-8186
Facsimile: (512) 457-4410
Zachary.Rhines@oag.texas.gov

*Attorneys For U.T. Austin and*
*Its President*

/s/ Whittney Ford

Whittney Ford

## NO. 15-25-00123-CV

In the Fifteenth Court of Appeals

Austin, Texas

**WHITTNEY FORD,**

APPELLANT**,**

v.

**THE UNIVERSITY OF TEXAS AT AUSTIN AND JIM DAVIS,** IN HIS OFFICIAL CAPACITY AS **PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN,**

APPELLEES**.**

Interlocutory Appeal from the 261st Judicial District Court,

Travis County, Texas

Trial Court Cause No. D-1-GN-24-002171

The Honorable Maria Cantu Hexsel, Judge Presiding

### WHITTNEY FORD'S APPENDIX

WHITTNEY FORD
PRO SE
4151 WELLBORN ROAD, APT#1101A
BRYAN, TEXAS 77801
(979) 264 – 4944
WJACKSONFORD@GMAIL.COM

# APPELLANT'S APPENDIX

JULY  17, 2025 ORDER

Tex. Gov't Code 552.001

Tex. Gov't Code 552.002

Tex. Gov't Code 552.022

Tex. Gov't Code 552.104

Tex. Gov't Code 552.201

Tex. Gov't Code 552.203

Tex. Gov't Code 552.204

Tex. Gov't Code 552.223

Tex. Gov't Code 552.224

Tex. Gov't Code 552.301

Tex. Gov't Code 552.302

Tex. Gov't Code 552.321

Tex. Gov't Code 552.326

NOTICE OF FUNDING OPPORTUNITY

2024 Texas Public Information Handbook

CAUSE NO. D-1-GN-24-002171

| | | |
|---|---|---|
| WHITTNEY FORD, | § | IN THE DISTRICT COURT |
| *Plaintiff*, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| KEN PAXTON, JAY HARTZELL, | § | |
| THE TEXAS OFFICE OF ATTORNEY | § | |
| GENERAL, and THE UNIVERSITY | § | |
| OF TEXAS AT AUSTIN, | § | |
| *Defendants*. | § | 261ST JUDICIAL DISTRICT |

## ORDER GRANTING UT DEFENDANTS' SECOND AMENDED PLEA TO THE JURISDICTION AND MOTION FOR SUMMARY JUDGMENT

The Court has considered the First Amended Plea to the Jurisdiction and Motion for Summary Judgment filed by Defendants Jim Davis, in his official capacity as Interim President of the University of Texas at Austin, and the University of Texas at Austin ("UT Defendants"). The Court, having considered the pleadings and arguments of the parties, has determined that UT Defendants' Second Amended Plea to the Jurisdiction and Motion for Summary Judgment should be, and is, **GRANTED**.

**IT IS THEREFORE ORDERED** that UT Defendants' Second Amended Plea to the Jurisdiction and Motion for Summary Judgment is **GRANTED**, and that Plaintiff Whittney Ford's claims against Defendants Jim Davis, in his official capacity as Interim President of the University of Texas at Austin, and the University of Texas at Austin are **DISMISSED** with prejudice.

SIGNED on July 17, 2025.

_____
JUDGE PRESIDING



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261133758**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.001

| About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2020 LexisNexis

## 2023 Tex. Gov't Code § 552.001

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter A General Provisions*

## Sec. 552.001. Policy; Construction.

**(a)** Under the fundamental philosophy of the American constitutional form of representative government that adheres to the principle that government is the servant and not the master of the people, it is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. The provisions of this chapter shall be liberally construed to implement this policy.

**(b)** This chapter shall be liberally construed in favor of granting a request for information.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.

**End of Document**



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261133841**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
| --- | --- |
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.002

## *2023 Tex. Gov't Code § 552.002*

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter A General Provisions*

## Sec. 552.002. Definition of Public Information; Media Containing Public Information.

**(a)** In this chapter, "public information" means information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business:

  **(1)** by a governmental body;

  **(2)** for a governmental body and the governmental body:

    **(A)** owns the information;

    **(B)** has a right of access to the information; or

    **(C)** spends or contributes public money for the purpose of writing, producing, collecting, assembling, or maintaining the information; or

  **(3)** by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body.

**(a-1)** Information is in connection with the transaction of official business if the information is created by, transmitted to, received by, or maintained by an officer or employee of the governmental body in the officer's or employee's official capacity, or a person or entity performing official business or a governmental function on behalf of a governmental body, and pertains to official business of the governmental body.

**(a-2)** The definition of "public information" provided by Subsection (a) applies to and includes any electronic communication created, transmitted, received, or maintained on any device if the communication is in connection with the transaction of official business.

**(b)** The media on which public information is recorded include:

  **(1)** paper;

  **(2)** film;

  **(3)** a magnetic, optical, solid state, or other device that can store an electronic signal;

  **(4)** tape;

  **(5)** Mylar; and

  **(6)** any physical material on which information may be recorded, including linen, silk, and vellum.

**(c)** The general forms in which the media containing public information exist include a book, paper, letter, document, e-mail, Internet posting, text message, instant message, other electronic communication, printout, photograph, film, tape, microfiche, microfilm, photostat, sound recording, map, and drawing and a voice, data, or video representation held in computer memory.

**(d)** "Protected health information" as defined by *Section 181.006, Health and Safety Code*, is not public information and is not subject to disclosure under this chapter.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1995, 74th Leg., ch. 1035 (H.B. 1718), § 2*, effective September 1, 1995; am. *Acts 2013, 83rd Leg., ch. 1204 (S.B. 1368), § 1*, effective September 1, 2013; *Acts 2019, 86th Leg., ch. 1340 (S.B. 944), § 1*, effective September 1, 2019.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261134020**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.022



## 2023 Tex. Gov't Code § 552.022

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter B Right of Access to Public Information*

## Sec. 552.022. Categories of Public Information; Examples.

**(a)** Without limiting the amount or kind of information that is public information under this chapter, the following categories of information are public information and not excepted from required disclosure unless made confidential under this chapter or other law:

**(1)** a completed report, audit, evaluation, or investigation made of, for, or by a governmental body, except as provided by Section 552.108;

**(2)** the name, sex, ethnicity, salary, title, and dates of employment of each employee and officer of a governmental body;

**(3)** information in an account, voucher, or contract relating to the receipt or expenditure of public or other funds by a governmental body;

**(4)** the name of each official and the final record of voting on all proceedings in a governmental body;

**(5)** all working papers, research material, and information used to estimate the need for or expenditure of public funds or taxes by a governmental body, on completion of the estimate;

**(6)** the name, place of business, and the name of the municipality to which local sales and use taxes are credited, if any, for the named person, of a person reporting or paying sales and use taxes under Chapter 151, Tax Code;

**(7)** a description of an agency's central and field organizations, including:

**(A)** the established places at which the public may obtain information, submit information or requests, or obtain decisions;

**(B)** the employees from whom the public may obtain information, submit information or requests, or obtain decisions;

**(C)** in the case of a uniformed service, the members from whom the public may obtain information, submit information or requests, or obtain decisions; and

**(D)** the methods by which the public may obtain information, submit information or requests, or obtain decisions;

**(8)** a statement of the general course and method by which an agency's functions are channeled and determined, including the nature and requirements of all formal and informal policies and procedures;

**(9)** a rule of procedure, a description of forms available or the places at which forms may be obtained, and instructions relating to the scope and content of all papers, reports, or examinations;

**(10)** a substantive rule of general applicability adopted or issued by an agency as authorized by law, and a statement of general policy or interpretation of general applicability formulated and adopted by an agency;

**(11)** each amendment, revision, or repeal of information described by Subdivisions (7)—(10);

**(12)** final opinions, including concurring and dissenting opinions, and orders issued in the adjudication of cases;

**(13)** a policy statement or interpretation that has been adopted or issued by an agency;

**(14)** administrative staff manuals and instructions to staff that affect a member of the public;

**(15)** information regarded as open to the public under an agency's policies;

**(16)** information that is in a bill for attorney's fees and that is not privileged under the attorney-client privilege;

**(17)** information that is also contained in a public court record; and

**(18)** a settlement agreement to which a governmental body is a party.

**(b)** A court in this state may not order a governmental body or an officer for public information to withhold from public inspection any category of public information described by Subsection (a) or to not produce the category of public information for inspection or duplication, unless the category of information is confidential under this chapter or other law.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1995, 74th Leg., ch. 1035 (H.B. 1718), § 3*, effective September 1, 1995; am. *Acts 1999, 76th Leg., ch. 1319 (S.B. 1851), § 5*, effective September 1, 1999; am. *Acts 2011, 82nd Leg., ch. 1229 (S.B. 602), § 2*, effective September 1, 2011.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.



**User Name: =**

**Date and Time: = 2025-01-12**

**Job Number: = 242534990**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** dyn

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.101



## *2023 Tex. Gov't Code § 552.101*

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter C Information Excepted From Required Disclosure*

## Sec. 552.101. Exception: Confidential Information.

Information is excepted from the requirements of Section 552.021 if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.

**End of Document**



**User Name: =**

**Date and Time: = 2025-01-12**

**Job Number: = 242534851**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** dyn

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.103

## 2023 Tex. Gov't Code § 552.103

2023 Texas Code Archive

**Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter C Information Excepted From Required Disclosure**

## Sec. 552.103. Exception: Litigation or Settlement Negotiations Involving the State or a Political Subdivision.

**(a)** Information is excepted from the requirements of Section 552.021 if it is information relating to litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party or to which an officer or employee of the state or a political subdivision, as a consequence of the person's office or employment, is or may be a party.

**(b)** For purposes of this section, the state or a political subdivision is considered to be a party to litigation of a criminal nature until the applicable statute of limitations has expired or until the defendant has exhausted all appellate and postconviction remedies in state and federal court.

**(c)** Information relating to litigation involving a governmental body or an officer or employee of a governmental body is excepted from disclosure under Subsection (a) only if the litigation is pending or reasonably anticipated on the date that the requestor applies to the officer for public information for access to or duplication of the information.

**(d)** The exception to disclosure provided by this section does not apply to information requested under this chapter if:

**(1)** the information relates to a general, primary, or special election, as those terms are defined by *Section 1.005, Election Code*;

**(2)** the information is in the possession of a governmental body that administers elections described by Subdivision (1); and

**(3)** the governmental body described by Subdivision (2) is not a governmental body described by Section 552.003(1)(A)(i).

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1999, 76th Leg., ch. 1319 (S.B. 1851), § 6*, effective September 1, 1999; *Acts 2023, 88th Leg., ch. 847 (H.B. 3033), § 3*, effective September 1, 2023.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261134112**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources: custom: custom |

1. 2023 Tex. Gov't Code § 552.104

## *2023 Tex. Gov't Code § 552.104*

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter C Information Excepted From Required Disclosure*

# Sec. 552.104. Exception: Information Related to Competition or Bidding.

**(a)** Information is excepted from the requirements of Section 552.021 if a governmental body demonstrates that release of the information would harm its interests by providing an advantage to a competitor or bidder in a particular ongoing competitive situation or in a particular competitive situation where the governmental body establishes the situation at issue is set to reoccur or there is a specific and demonstrable intent to enter into the competitive situation again in the future.

**(b)** Except as provided by Subsection (c), the requirement of Section 552.022 that a category of information listed under Section 552.022(a) is public information and not excepted from required disclosure under this chapter unless expressly confidential under law does not apply to information that is excepted from required disclosure under this section.

**(c)** Subsection (b) does not apply to information described by Section 552.022(a) relating to the receipt or expenditure of public or other funds by a governmental body for a parade, concert, or other entertainment event paid for in whole or part with public funds. A person, including a governmental body, may not include a provision in a contract related to an event described by this subsection that prohibits or would otherwise prevent the disclosure of information described by this subsection. A contract provision that violates this subsection is void.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 2001, 77th Leg., ch. 1272 (S.B. 1458), § 7.01*, effective June 15, 2001; *Acts 2019, 86th Leg., ch. 45 (H.B. 81), § 1*, effective May 17, 2019; *Acts 2019, 86th Leg., ch. 1216 (S.B. 943), § 3*, effective January 1, 2020.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 Matthew Bender & Company, Inc.

a member of the LexisNexis Group. All rights reserved.

**End of Document**



**User Name: =**

**Date and Time: = 2025-01-12**

**Job Number: = 242534888**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** dyn

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.110

## *2023 Tex. Gov't Code § 552.110*

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter C Information Excepted From Required Disclosure*

## Sec. 552.110. Exception: Confidentiality of Trade Secrets; Confidentiality of Certain Commercial or Financial Information.

**(a)** In this section, "trade secret" means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or however stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

   **(1)** the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

   **(2)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

**(b)** Except as provided by Section 552.0222, information is excepted from the requirements of Section 552.021 if it is demonstrated based on specific factual evidence that the information is a trade secret.

**(c)** Except as provided by Section 552.0222, commercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained is excepted from the requirements of Section 552.021.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1999, 76th Leg., ch. 1319 (S.B. 1851), § 7*, effective September 1, 1999; am. *Acts 2011, 82nd Leg., ch. 1229 (S.B. 602), § 5*, effective September 1, 2011; *Acts 2019, 86th Leg., ch. 1216 (S.B. 943), § 4*, effective January 1, 2020.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 Matthew Bender & Company, Inc.

a member of the LexisNexis Group. All rights reserved.

**End of Document**



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261134221**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.201

## *2023 Tex. Gov't Code § 552.201*

2023 Texas Code Archive

***Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter D Officer for Public Information***

## Sec. 552.201. Identity of Officer for Public Information.

**(a)** The chief administrative officer of a governmental body is the officer for public information, except as provided by Subsection (b).

**(b)** Each elected county officer is the officer for public information and the custodian, as defined by *Section 201.003, Local Government Code*, of the information created or received by that county officer's office.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1995, 74th Leg., ch. 1035 (H.B. 1718), § 14*, effective September 1, 1995.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 Matthew Bender & Company, Inc.

a member of the LexisNexis Group. All rights reserved.

**End of Document**



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261134285**

# Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.203



## 2023 Tex. Gov't Code § 552.203

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter D Officer for Public Information*

## Sec. 552.203. General Duties of Officer for Public Information.

Each officer for public information, subject to penalties provided in this chapter, shall:

**(1)** make public information available for public inspection and copying;

**(2)** carefully protect public information from deterioration, alteration, mutilation, loss, or unlawful removal;

**(3)** repair, renovate, or rebind public information as necessary to maintain it properly; and

**(4)** make reasonable efforts to obtain public information from a temporary custodian if:

**(A)** the information has been requested from the governmental body;

**(B)** the officer for public information is aware of facts sufficient to warrant a reasonable belief that the temporary custodian has possession, custody, or control of the information;

**(C)** the officer for public information is unable to comply with the duties imposed by this chapter without obtaining the information from the temporary custodian; and

**(D)** the temporary custodian has not provided the information to the officer for public information or the officer's agent.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1995, 74th Leg., ch. 1035 (H.B. 1718), § 14*, effective September 1, 1995; *Acts 2019, 86th Leg., ch. 1340 (S.B. 944), § 5*, effective September 1, 2019.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 Matthew Bender & Company, Inc.

a member of the LexisNexis Group. All rights reserved.

**End of Document**



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261134327**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.204

## *2023 Tex. Gov't Code § 552.204*

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter D Officer for Public Information*

## Sec. 552.204. Scope of Responsibility of Officer for Public Information.

An officer for public information is responsible for the release of public information as required by this chapter. The officer is not responsible for:

**(1)** the use made of the information by the requestor; or

**(2)** the release of information after it is removed from a record as a result of an update, a correction, or a change of status of the person to whom the information pertains.

## History

Enacted by *Acts 1995, 74th Leg., ch. 1035 (H.B. 1718), § 14*, effective September 1, 1995.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 Matthew Bender & Company, Inc.

a member of the LexisNexis Group. All rights reserved.

**End of Document**



**User Name:** =

**Date and Time:** = 2025-08-25

**Job Number:** = 261134484

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
| --- | --- |
| statutesarchive | Sources: custom: custom |

1. 2023 Tex. Gov't Code § 552.223

## *2023 Tex. Gov't Code § 552.223*

2023 Texas Code Archive

***Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter E Procedures Related to Access***

## Sec. 552.223. Uniform Treatment of Requests for Information.

The officer for public information or the officer's agent shall treat all requests for information uniformly without regard to the position or occupation of the requestor, the person on whose behalf the request is made, or the status of the individual as a member of the media.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1995, 74th Leg., ch. 1035 (H.B. 1718), § 15*, effective September 1, 1995.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 Matthew Bender & Company, Inc.

a member of the LexisNexis Group. All rights reserved.

**End of Document**



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261134534**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
| --- | --- |
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.224

## *2023 Tex. Gov't Code § 552.224*

2023 Texas Code Archive

***Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter E Procedures Related to Access***

# Sec. 552.224. Comfort and Facility.

The officer for public information or the officer's agent shall give to a requestor all reasonable comfort and facility for the full exercise of the right granted by this chapter.

# History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1995, 74th Leg., ch. 1035 (H.B. 1718), § 15*, effective September 1, 1995.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 Matthew Bender & Company, Inc.

a member of the LexisNexis Group. All rights reserved.

**End of Document**



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261134613**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
| --- | --- |
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.301

## 2023 Tex. Gov't Code § 552.301

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter G Attorney General Decisions*

## Sec. 552.301. Request for Attorney General Decision.

**(a)** A governmental body that receives a written request for information that it wishes to withhold from public disclosure and that it considers to be within one of the exceptions under Subchapter C must ask for a decision from the attorney general about whether the information is within that exception if there has not been a previous determination about whether the information falls within one of the exceptions.

**(a-1)** For the purposes of this subchapter, if a governmental body receives a written request by United States mail and cannot adequately establish the actual date on which the governmental body received the request, the written request is considered to have been received by the governmental body on the third business day after the date of the postmark on a properly addressed request.

**(b)** The governmental body must ask for the attorney general's decision and state the exceptions that apply within a reasonable time but not later than the 10th business day after the date of receiving the written request.

**(c)** [Repealed.]

**(d)** A governmental body that requests an attorney general decision under Subsection (a) must provide to the requestor within a reasonable time but not later than the 10th business day after the date of receiving the requestor's written request:

> **(1)** a written statement that the governmental body wishes to withhold the requested information and has asked for a decision from the attorney general about whether the information is within an exception to public disclosure; and

> **(2)** a copy of the governmental body's written communication to the attorney general asking for the decision or, if the governmental body's written communication to the attorney general discloses the requested information, a redacted copy of that written communication.

**(e)** A governmental body that requests an attorney general decision under Subsection (a) must within a reasonable time but not later than the 15th business day after the date of receiving the written request:

> **(1)** submit to the attorney general:

>> **(A)** written comments stating the reasons why the stated exceptions apply that would allow the information to be withheld;

>> **(B)** a copy of the written request for information;

>> **(C)** a signed statement as to the date on which the written request for information was received by the governmental body or evidence sufficient to establish that date; and

>> **(D)** a copy of the specific information requested, or submit representative samples of the information if a voluminous amount of information was requested; and

**(2)** label that copy of the specific information, or of the representative samples, to indicate which exceptions apply to which parts of the copy.

**(e-1)**A governmental body that submits written comments to the attorney general under Subsection (e)(1)(A) shall send a copy of those comments to the person who requested the information from the governmental body not later than the 15th business day after the date of receiving the written request. If the written comments disclose or contain the substance of the information requested, the copy of the comments provided to the person must be a redacted copy.

**(f)** A governmental body must release the requested information and is prohibited from asking for a decision from the attorney general about whether information requested under this chapter is within an exception under Subchapter C if:

**(1)** the governmental body has previously requested and received a determination from the attorney general concerning the precise information at issue in a pending request; and

**(2)** the attorney general or a court determined that the information is public information under this chapter that is not excepted by Subchapter C.

**(g)** A governmental body may ask for another decision from the attorney general concerning the precise information that was at issue in a prior decision made by the attorney general under this subchapter if:

**(1)** a suit challenging the prior decision was timely filed against the attorney general in accordance with this chapter concerning the precise information at issue;

**(2)** the attorney general determines that the requestor has voluntarily withdrawn the request for the information in writing or has abandoned the request; and

**(3)** the parties agree to dismiss the lawsuit.

# History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1995, 74th Leg., ch. 1035 (H.B. 1718), § 18*, effective September 1, 1995; am. *Acts 1997, 75th Leg., ch. 1231 (H.B. 951), § 5*, effective September 1, 1997; am. *Acts 1999, 76th Leg., ch. 1319 (S.B. 1851), § 20*, effective September 1, 1999; am. *Acts 2005, 79th Leg., ch. 329 (S.B. 727), § 10*, effective September 1, 2005; am. *Acts 2007, 80th Leg., ch. 474 (H.B. 2248), § 1*, effective September 1, 2007; am. *Acts 2009, 81st Leg., ch. 1377 (S.B. 1182), § 8*, effective September 1, 2009; am. *Acts 2011, 82nd Leg., ch. 1229 (S.B. 602), § 39*, effective September 1, 2011; *Acts 2019, 86th Leg., ch. 1340 (S.B. 944), § 7*, effective September 1, 2019.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.



**User Name:** =

**Date and Time:** = 2025-08-25

**Job Number:** = 261134695

**Documents (1)**

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
| --- | --- |
| statutesarchive | Sources: custom: custom |

1. 2023 Tex. Gov't Code § 552.302

## *2023 Tex. Gov't Code § 552.302*

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter G Attorney General Decisions*

## Sec. 552.302. Failure to Make Timely Request for Attorney General Decision; Presumption That Information Is Public.

If a governmental body does not request an attorney general decision as provided by Section 552.301 and provide the requestor with the information required by Sections 552.301(d) and (e-1), the information requested in writing is presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1999, 76th Leg., ch. 1319 (S.B. 1851), § 21*, effective September 1, 1999; am. *Acts 2005, 79th Leg., ch. 329 (S.B. 727), § 11*, effective September 1, 2005.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261134744**

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.321

# *2023 Tex. Gov't Code § 552.321*

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter H Civil Enforcement*

## Sec. 552.321. Suit for Writ of Mandamus.

**(a)** A requestor or the attorney general may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to request an attorney general's decision as provided by Subchapter G or refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure under Subchapter C.

**(b)** A suit filed by a requestor under this section must be filed in a district court for the county in which the main offices of the governmental body are located. A suit filed by the attorney general under this section must be filed in a district court of Travis County, except that a suit against a municipality with a population of 100,000 or less must be filed in a district court for the county in which the main offices of the municipality are located.

**(c)** A requestor may file suit for a writ of mandamus compelling a governmental body or an entity to comply with the requirements of Subchapter J.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993; am. *Acts 1995, 74th Leg., ch. 1035 (H.B. 1718), § 24*, effective September 1, 1995; am. *Acts 1999, 76th Leg., ch. 1319 (S.B. 1851), § 27*, effective September 1, 1999; *Acts 2019, 86th Leg., ch. 1216 (S.B. 943), § 8*, effective January 1, 2020.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.

**End of Document**



**User Name:** =

**Date and Time:** = 2025-01-12

**Job Number:** = 242535018

## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** dyn

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |

1. 2023 Tex. Gov't Code § 552.322



## *2023 Tex. Gov't Code § 552.322*

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter H Civil Enforcement*

## Sec. 552.322. Discovery of Information Under Protective Order Pending Final Determination.

In a suit filed under this chapter, the court may order that the information at issue may be discovered only under a protective order until a final determination is made.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 Matthew Bender & Company, Inc.

a member of the LexisNexis Group. All rights reserved.

**End of Document**



**User Name: =**

**Date and Time: = 2025-08-25**

**Job Number: = 261134796**


## Documents (1)

**Client/Matter:** -None-

**Search Terms:**

**Search Type:** NaturalAnd

| Content Type | Narrowed by |
|---|---|
| statutesarchive | Sources:  custom: custom |


1. 2023 Tex. Gov't Code § 552.326

## *2023 Tex. Gov't Code § 552.326*

2023 Texas Code Archive

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics > Subtitle A Open Government > Chapter 552 Public Information > Subchapter H Civil Enforcement*

## Sec. 552.326. Failure to Raise Exceptions Before Attorney General.

**(a)** Except as provided by Subsection (b), the only exceptions to required disclosure within Subchapter C that a governmental body may raise in a suit filed under this chapter are exceptions that the governmental body properly raised before the attorney general in connection with its request for a decision regarding the matter under Subchapter G.

**(b)** Subsection (a) does not prohibit a governmental body from raising an exception:

    **(1)** based on a requirement of federal law; or

    **(2)** involving the property or privacy interests of another person.

## History

Enacted by *Acts 1999, 76th Leg., ch. 1319 (S.B. 1851), § 31*, effective September 1, 1999.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 Matthew Bender & Company, Inc.

a member of the LexisNexis Group. All rights reserved.

**End of Document**

# UNIVERSITY TRANSPORTATION CENTERS PROGRAM

# *FY 2022 NOTICE OF FUNDING OPPORTUNITY*

Opening Date: May 25, 2022
Requested Date for Letter of Intent:  July 1, 2022
Required Application Due: August 25, 2022

**www.grants.gov Opportunity No. UTCOPENCOMP2022**

**Assistance Listing (CFDA) 20.701**

**Office of the Assistant Secretary for Research and Technology**
**U.S. Department of Transportation**
**Washington, D.C. 20590-0001**

https://www.transportation.gov/content/university-transportation-centers

## TABLE OF CONTENTS

SECTION A     PROGRAM DESCRIPTION ................................................................. 4

    A.1  Introduction ........................................................................................................ 4
    A.2  UTC Program Purpose and Center Objectives ................................................. 5
    A.3  UTC Program History ....................................................................................... 5
    A.4  Relationship to Other US DOT Efforts ............................................................. 7

SECTION B     FEDERAL AWARD INFORMATION .................................................. 9

    B.1  Number of Awards ............................................................................................. 9
    B.2  Types of Centers ............................................................................................... 11
    B.2.1     National Centers ......................................................................................... 11
    B.2.2     Regional Centers ......................................................................................... 11
    B.2.3     Tier 1 Centers .............................................................................................. 12

SECTION C     ELIGIBILITY INFORMATION ........................................................... 12

    C.1  Eligible Applicants ........................................................................................... 12
    C.2  Cost Sharing or Matching Funds ..................................................................... 13
    C.3  Multiple Applications ....................................................................................... 14

SECTION D     APPLICATION AND SUBMISSION INFORMATION ...................... 14

    D.1  Address to Request Application Package ......................................................... 14
    D.2  Content and Form of Application Submission .................................................. 14
    D.2.1     Letters of Intent .......................................................................................... 14
    D.2.2     Applications ................................................................................................. 15
    D.2.2.1     Cover Sheet ............................................................................................. 16
    D.2.2.2     Research Abstract .................................................................................... 17
    D.2.2.3     Written Response ..................................................................................... 18
    D.2.2.3.1     Response to Evaluation Criteria ........................................................ 18
    D.2.2.3.2     Center Director and Key Personnel ................................................... 29
    D.2.2.4     Required Appendices ............................................................................... 30
    D.2.2.5     Standard Forms SF-424 and SF-424B .................................................... 32
    D.2.2.6     Confirmation of Negotiated Overhead and Fringe Benefit Rates ........... 32
    D.3  System for Award Management (SAM) ........................................................... 32
    D.4  Submission Dates and Times ........................................................................... 32
    D.4.1     Letters of Intent .......................................................................................... 32
    D.4.2     Applications ................................................................................................. 33
    D.5  Funding Restrictions ........................................................................................ 33
    D.6  Other Submission Requirements ...................................................................... 34

SECTION E     APPLICATION REVIEW INFORMATION ........................................ 34

    E.1  Criteria .............................................................................................................. 34
    E.2  Review and Selection Process .......................................................................... 35

SECTION F    FEDERAL AWARD ADMINISTRATION INFORMATION ......................... 37
    F.1  Federal Award Notices ......................................................................................... 37
    F.2  Administrative and National Policy Requirements....................................................... 37
    F.3  Reporting............................................................................................................. 38
SECTION G    FEDERAL AWARDING AGENCY CONTACT ............................................ 38
SECTION H    OTHER INFORMATION................................................................................. 39
ATTACHMENT A ...................................................................................................................... 40

## SECTION A             PROGRAM DESCRIPTION

### A.1             Introduction

The Infrastructure Investment and Jobs Act (IIJA; P. L. 117-58, November 15, 2021) (commonly known as the "Bipartisan Infrastructure Law," or "BIL") authorizes the Secretary of Transportation to make grants to eligible non-profit institutions of higher education[1] to establish and operate University Transportation Centers (UTCs or Centers).  Non-profit institutions of higher education may include qualifying two-year institutions (20 U.S.C. § 1001(a))[2].  The Office of the Assistant Secretary for Research and Technology (OST-R) of the U.S. Department of Transportation (US DOT or DOT) will manage the UTC Program **(Assistance Listing, formerly Catalog of Federal Domestic Assistance number, 20.701).**

Through this Notice of Funding Opportunity, the US DOT seeks competitive grant applications for National UTCs, Regional UTCs, and Tier 1 UTCs as set forth in the IIJA (detailed descriptions of the three types of UTCs are provided in **SECTION B FEDERAL AWARD INFORMATION**).  UTCs will be selected by the Secretary, in consultation with the heads of the operating administrations of the US DOT, as appropriate (49 U.S.C. § 5505(b)(4)(B) as amended by the IIJA, Sec. 25017).

UTCs shall support surface transportation through the following US DOT statutory research priorities (49 U.S.C. § 6503(c)(1) as amended by the IIJA, Sec. 25014):

    **A.  Improving Mobility of People and Goods;**

    **B.  Reducing Congestion;**

    **C.  Promoting Safety;**

    **D.  Improving the Durability and Extending the Life of Transportation Infrastructure;**

    **E.  Preserving the Environment;**

    **F.  Preserving the Existing Transportation System; and**

    **G.  Reducing Transportation Cybersecurity Risks.**

A UTC and its consortium members must be established and located physically in the United States or its territories or on Tribal lands.  It must be a consortium of two or more nonprofit

---

1 The *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Grants*, Title 2 of the Code of Federal Regulations, Part 200 defines "institution of higher education" as that term is established in 20 U.S.C. § 1001(a).
2 Qualifying two-year institutions may include junior or community colleges if they meet the requirements of 20 U.S.C. § 1001(a).

institutions of higher education.  Each Center is required to obtain matching funds from non-Federal sources.  National and Regional UTCs must obtain matching funds in an amount equal to the US DOT award amount.  The match for Tier 1 UTCs is 50 percent of the US DOT award amount.  The US DOT grant funds may be expended up to November 30, 2028, and Centers will have until that date to meet the full match requirement by obtaining and expending those funds.

Specific instructions on how to apply for UTC grant funding under this Notice of Funding Opportunity are provided in **SECTION D APPLICATION AND SUBMISSION INFORMATION**.

## A.2          UTC Program Purpose and Center Objectives

As stated in 49 U.S.C. § 5505, the purpose of the UTC Program is for eligible nonprofit institutions of higher education to establish and operate University Transportation Centers.

The objectives of each of these Centers are to:

- Advance transportation expertise and technology in the varied disciplines that comprise the field of transportation through education, research, and technology transfer activities;
- Provide for a critical multimodal transportation knowledge base outside of the US DOT; and
- Address critical workforce needs and educate the next generation of transportation leaders with respect to the statutory research priorities.

Although every Center has the same broad objectives, the US DOT encourages diversity among the program participants and in the approaches individual Centers take to achieve the program objectives.  The US DOT encourages unique approaches to research, education, workforce development and technology transfer, building on or reflecting institutional expertise, facilities, and partnerships.  In order to achieve its transformative vision of a fully connected, integrated, accessible, and interoperative multimodal system of systems that is centered on the seamless movement of people and goods, the US DOT desires UTCs to engage in breakthrough, advanced, and transformative research, education and workforce development, and technology transfer activities that cut across disciplines and span multiple modes of transportation.  UTCs have an important role to play in helping to transform the Nation's surface transportation system to achieve this vision, inclusive of rail, maritime, highway, pipelines, transit, and any surface links to aviation.

## A.3          UTC Program History

The history of the UTC Program begins with its initial authorization in the Surface Transportation and Uniform Relocation Assistance Act of 1987.  After a nationwide competition, in 1988 the US DOT awarded grants to create a UTC in each of the ten standard Federal regions.  The primary purpose of the program at that time was conducting research.

The Intermodal Surface Transportation Equity Act (ISTEA) of 1991 reauthorized the UTC Program through Fiscal Year 1997 and expanded its mission to include education and technology transfer, as well as research. In addition to the ten Regional Centers, ISTEA created three "national" Centers and six University Research Institutes at universities that were named in the Act. The program expansion led the US DOT to adopt a strategic planning approach to program management based on a unified mission and goal set for all 13 Centers and six Institutes.

In 1998, the Transportation Equity Act for the 21st Century (TEA-21) reauthorized the UTC Program for an additional six years and increased the total number of Centers to 33. In addition to the ten Regional Centers, which were selected competitively in 1999, TEA-21 created 23 other Centers at institutions named in the Act. TEA-21 established education as one of the primary objectives of a UTC and institutionalized the use of strategic planning in UTC grant management.

The Safe, Accountable, Flexible, Efficient, Transportation Equity Act: A Legacy for Users (SAFETEA-LU), enacted in 2005, provided the most significant expansion of the UTC program to date. SAFETEA-LU increased the number of UTCs from the 33 established in TEA-21 to 60, including the ten Regional UTCs plus a new group of ten competitive centers called Tier 1 Centers; the other 40 UTCs were located at institutions named in the Act. Annual authorized funding for the UTC program also increased from $32.5 million in TEA-21 to $85.9 million in SAFETEA-LU.

The Surface Transportation Extension Act of 2010, sec. 411(e)(3), gave the US DOT the discretion to redistribute funds allocated to specified research projects and programs designated in SAFETEA-LU. The Fiscal Year 2011 funds were made available through full and open competition following the framework of the competitive UTC programs under SAFETEA-LU sections 5506(e) and (f). Grants of approximately $3.5 million each were awarded to ten Tier 1 UTCs, two Tier 1 Transit-Focused UTCs, and ten Regional UTCs. Fiscal Year 2012 funds were added to these grants following additional extension legislation.

In 2012, the Moving Ahead for Progress in the 21st Century Act (MAP-21) continued the UTC program, authorizing the competitive selection of 35 UTCs to receive a total of $72.5 million in funding for each of Fiscal Years 2013 to 2014, with continued funding from extension acts through Fiscal Year 2015. Following a competition in 2013, grants of approximately $3 million each were awarded to five National UTCs, $2.75 million each to ten Regional UTCs, and $1.5 million each to twenty Tier 1 UTCs.

The Fixing America's Surface Transportation (FAST) Act was enacted in December 2015, establishing the UTC Program similarly to MAP-21 with 35 UTCs to receive funding from Fiscal Years 2016 to 2020. The FAST Act was later extended through Fiscal Year 2021. Authorized funding increased incrementally from $72.5 million per year to $77.5 million per year. Congress provided one-time funding and authorizations for additional grants in 2018 for two additional National UTCs (total authorization $15 million) and in 2020 for additional Tier 1 UTCs (total authorization $5 million). These grants were competed and awarded in 2019 and

2020 respectively, and they operate similarly to the FAST Act-authorized UTCs except for a shorter period of performance and smaller award amounts.

The Infrastructure Investment and Jobs Act (IIJA) was enacted in November 2021, establishing the UTC Program as it is described throughout this Notice of Funding Opportunity.  The IIJA's reauthorization of the UTC Program both sustains existing and establishes new and vital initiatives in transformational research, education and workforce development, and technology transfer that benefit the U.S. traveling public, freight movement, and the safety and efficiency of the U.S. transportation system, while addressing concerns of climate change and environmental impacts caused by and affecting transportation systems and vulnerable communities, and issues of transportation accessibility and equity.

The most significant changes in the UTC Program between the IIJA and the previous FAST Act are:

- a seventh research priority, Reducing Transportation Cybersecurity Risks, is added (see **Section A.1 Introduction** above);
- all new candidate topic areas under each of the seven research priorities (see **Section D.2.2.3.1.A Criterion One: Research Activities and Capability** below);
- award amounts are expected to be higher throughout the life of the grants (see **Section B FEDERAL AWARD INFORMATION** below); and
- an institution of higher education may receive only one grant as the lead of a consortium (see **Section C.3 Multiple Applications** below).

Additional information about the UTC Program is available on the UTC Program website (https://www.transportation.gov/content/university-transportation-centers).

## A.4         Relationship to Other US DOT Efforts

The US DOT continues to build on existing efforts to apply research awards and resources in an effective manner, in order to support the DOT mission, "To deliver the world's leading transportation system, serving the American people and economy through the safe, efficient, sustainable, and equitable movement of people and goods."  As part of preparing their applications, applicants should familiarize themselves with US DOT's current strategic planning and innovation efforts:

- US DOT has developed a new *FY 2022-2026 DOT Strategic Plan*.  This plan is available on the US DOT website at https://www.transportation.gov/dot-strategic-plan.  Note the Key Performance Indicators under the Transformation strategic goal on page 33 as items especially relevant to UTC Program grants.  As noted in **D.2.2. Applications** below, applicants will need to identify which strategic goals and objectives under this plan the proposed UTC supports.
- US DOT is developing a new *Research, Development and Technology (RD&T) Strategic Plan for Fiscal Years 2022-2026* (as required by the IIJA, Sec. 25014)*,* which aligns with the *DOT Strategic Plan* and with the revised goals of the IIJA.  Information about *RD&T*

*Strategic Plan* development is available at https://www.transportation.gov/utc/current-competition.

- As a step toward a long-term goal of reaching zero roadway fatalities, US DOT developed its *National Roadway Safety Strategy* outlining a comprehensive approach to significantly reducing serious roadway injuries and deaths.  The strategy is on the US DOT website at https://www.transportation.gov/NRSS.

- US DOT recently released its new *US Department of Transportation Equity Action Plan* that highlights work the Department will undertake to expand access and opportunity to all communities while focusing on underserved, overburdened, and disadvantaged communities.  The plan is on the US DOT website at https://www.transportation.gov/priorities/equity/actionplan.

- In addition, the Department of Transportation stresses the critical importance of innovation, a concept that is recognized to be a key component of the work done by the nation's colleges and universities.  Information about US DOT's emphasis on innovation is available on the US DOT website at https://www.transportation.gov/innovation, along with a set of US DOT Innovation Principles (https://www.transportation.gov/priorities/innovation/us-dot-innovation-principles) developed to guide the Department's approach toward this desired innovation.

Programs managed by the US DOT and other Federal agencies are charged with supporting and complying with Presidential Executive Orders and Memoranda.  US DOT has specific interest in providing research, education, and technology transfer opportunities for historically underserved communities, including those served by minority institutions.  US DOT is also interested in accelerating research and technology transfer that addresses transportation's critical role in climate change and sustainability.  Of particular interest for the university community, US DOT is committed to the principles of scientific integrity in research.  Applicants should familiarize themselves with the following Executive Orders and Memorandum that will be relevant to applications submitted under any of the seven statutory research priority areas, toward advancing US DOT goals:

- ➤ Advancing Racial Equity and Support for Underserved Communities Through the Federal Government (https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/executive-order-advancing-racial-equity-and-support-for-underserved-communities-through-the-federal-government/)

- ➤ Tackling the Climate Crisis at Home and Abroad (https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/27/executive-order-on-tackling-the-climate-crisis-at-home-and-abroad/)

- ➤ Memorandum on Restoring Trust in Government Through Scientific Integrity and Evidence-Based Policymaking (https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/27/memorandum-on-restoring-trust-in-government-through-scientific-integrity-and-evidence-based-policymaking/)

Federal agencies including US DOT are each required to develop a Strategic Plan at the beginning of a new Presidential administration, establishing the agency's overarching goals and

identifying objectives to reach those goals, as well as key performance indicators to measure results.  US DOT is required to track and report its progress through the key performance indicators toward achieving the goals.  Because activities conducted by UTCs will contribute toward these goals, objectives, and indicators, elements of US DOT's Strategic Plan (https://www.transportation.gov/dot-strategic-plan) are incorporated throughout this Notice of Funding Opportunity.

## SECTION B          FEDERAL AWARD INFORMATION

The US DOT will operate the UTC Program based on the principles of full and open competition.  Awards will be in the form of grants to successful applicants.  The funding and authorization available to OST-R for this Notice of Funding Opportunity at this time are solely from Federal Fiscal Year 2022 funds.

The Infrastructure Investment and Jobs Act (IIJA, sec. 11101(c)(1)(E)) authorizes $80 million for Federal Fiscal Year 2022 (FY 2022), $80.5 million for Fiscal Year 2023 (FY 2023), $81 million for Fiscal Year 2024 (FY 2024), $81.5 million for Fiscal Year 2025 (FY 2025), and $82 million for Fiscal Year 2026 (FY 2026) for 35 competitive grants to UTCs.  In addition, the IIJA (Division J, Title VIII) provides $19.0 million per fiscal year "to remain available until expended for amounts made available for each of fiscal years 2022 through 2026…to carry out the University Transportation Centers Program."

Authorized FY 2022 through FY 2026 funds are subject to appropriations and to an annual obligation limitation, and 49 U.S.C. § 5505(d)(3) allows US DOT to expend not more than 1.5 percent of the funding amounts made available for the UTC Program to carry out coordination, evaluation, and oversight activities for the program, the combination of which may reduce grant award amounts. The amount of budget authority available in a given year may be, and has been in recent years, less than the amount authorized for that fiscal year, resulting in reductions of award amounts.  As of the release date of this Notice of Funding Opportunity, US DOT anticipates being able to award in FY 2022 the full amounts shown for that year in **Section B.1 Number of Awards** below.

Current UTC Program grant recipients are eligible to apply for, and to receive if selected, grant funding through this competition.  If a current UTC Program grant recipient is selected to be a new UTC under this Notice of Funding Opportunity, the new grant will be managed as a separate entity from any previous grant(s).

Funds made available under this Notice of Funding Opportunity may be expended from an anticipated start date of November 15, 2022 through November 30, 2028.

## B.1          Number of Awards

Three types of Centers will be selected under this Notice of Funding Opportunity:

- Five National UTCs;
- Ten Regional UTCs, one of which will be a Center focusing its efforts in the field of comprehensive transportation safety, congestion, connected vehicles, connected infrastructure, and autonomous vehicles, including the cybersecurity implications of technologies relating to connected vehicles, connected infrastructure, and autonomous vehicles; and
- 20 Tier 1 UTCs.

The expected fiscal year funding amounts for each type of Center, based on the authorized amount of funding before any of the reductions noted in **SECTION B FEDERAL AWARD INFORMATION** above and assuming selection of 20 Tier 1 UTCs, are up to the following amounts:

| | | |
|---|---|---|
| Nationals | $4,000,000 each X 5 | $20,000,000 |
| Regionals | $3,000,000 each X 10 | $30,000,000 |
| Tier 1s | $2,000,000 each X 20 | $40,000,000 |
| | **TOTAL FY22** | **$90,000,000** |

| | | |
|---|---|---|
| Nationals | $4,000,000 each X 5 | $20,000,000 |
| Regionals | $3,000,000 each X 10 | $30,000,000 |
| Tier 1s | $2,000,000 each X 20 | $40,000,000 |
| | **TOTAL FY23** | **$90,000,000** |

| | | |
|---|---|---|
| Nationals | $4,000,000 each X 5 | $20,000,000 |
| Regionals | $3,000,000 each X 10 | $30,000,000 |
| Tier 1s | $2,000,000 each X 20 | $40,000,000 |
| | **TOTAL FY24** | **$90,000,000** |

| | | |
|---|---|---|
| Nationals | $4,000,000 each X 5 | $20,000,000 |
| Regionals | $3,000,000 each X 10 | $30,000,000 |
| Tier 1s | $2,000,000 each X 20 | $40,000,000 |
| | **TOTAL FY25** | **$90,000,000** |

| | | |
|---|---|---|
| Nationals | $4,000,000 each X 5 | $20,000,000 |
| Regionals | $3,000,000 each X 10 | $30,000,000 |
| Tier 1s | $2,000,000 each X 20 | $40,000,000 |
| | **TOTAL FY26** | **$90,000,000** |

Through this Notice of Funding Opportunity, the US DOT is competing UTC grants in fixed amounts within the ranges enabled by 49 U.S.C. § 5505(c) for each type of UTC (National, Regional and Tier 1) in order that applicants for each type of grant may be evaluated fairly against a fixed level of effort.

**B.2** **Types of Centers**

**B.2.1** **National Centers**

The five National Centers must focus their efforts on national transportation issues as identified by one of the statutory research priority areas (49 U.S.C. § 6503(c)(1) as amended by IIJA sec. 25014):  Improving Mobility of People and Goods; Reducing Congestion, Promoting Safety; Improving the Durability and Extending the Life of Transportation Infrastructure; Preserving the Environment; Preserving the Existing Transportation System; and Reducing Transportation Cybersecurity Risks.  Although there are seven research priority areas, only five National Centers may be funded; selection within the seven research priority areas will be determined by the relative merits of applications received and in order to achieve a balanced portfolio across all selected Centers as discussed in **SECTION E APPLICATION REVIEW INFORMATION** below.

**SECTION D APPLICATION AND SUBMISSION INFORMATION** provides additional information on non-exclusive candidate topic areas categorized under each research priority area.

National Centers may be based in any region and may include consortium members that are not in the same Federal region as the lead institution.

**B.2.2** **Regional Centers**

The ten Regional Centers must focus their efforts on national transportation issues as identified by one or more of the seven statutory research priority areas: Improving Mobility of People and Goods; Reducing Congestion; Promoting Safety; Improving the Durability and Extending the Life of Transportation Infrastructure; Preserving the Environment; Preserving the Existing Transportation System; and Reducing Transportation Cybersecurity Risks.  **SECTION D APPLICATION AND SUBMISSION INFORMATION** provides additional information on non-exclusive candidate topic areas categorized under each research priority area.

The IIJA (sec. 25017, amending 49 U.S.C. § 5505(c)(3)(E)) also requires that one of the ten Regional UTC awards be given to a Center focusing its efforts in the field of comprehensive transportation safety, congestion, connected vehicles, connected infrastructure, and autonomous vehicles, including the cybersecurity implications of technologies relating to connected vehicles, connected infrastructure, and autonomous vehicles.  Other than this specific focus area, this UTC will perform the other functions of a Regional Center.

The ten Regional Centers are to be located one in each of the ten standard Federal regions listed in Table 1 below.  They are distinct from the National and Tier 1 Centers in that they must also address what the Regional UTC identifies as regional needs.  While a National or Tier 1 Center may be based in any region and may form a consortium with universities that are not located in its region, a Regional Center, including all consortium members, must be located within the Federal region to be served.  Each Regional Center must serve as a focal

point within its respective region to help coordinate UTC transportation research and education programs with regional needs and initiatives. At a minimum, a Regional Center should work with the other UTCs in its region to maximize the effectiveness of the region's collective services and programs.

**Table 1. Standard Federal Regions**

| Standard Federal Regions | |
|---|---|
| Region 1 | Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont |
| Region 2 | New Jersey, New York, Puerto Rico, U.S. Virgin Islands |
| Region 3 | Delaware, District of Columbia, Maryland, Pennsylvania, Virginia, West Virginia |
| Region 4 | Alabama, Florida, Georgia, Kentucky, Mississippi, North Carolina, South Carolina, Tennessee |
| Region 5 | Illinois, Indiana, Michigan, Minnesota, Ohio, Wisconsin |
| Region 6 | Arkansas, Louisiana, New Mexico, Oklahoma, Texas |
| Region 7 | Iowa, Kansas, Missouri, Nebraska |
| Region 8 | Colorado, Montana, North Dakota, South Dakota, Utah, Wyoming |
| Region 9 | Arizona, California, Guam, Hawaii, Nevada |
| Region 10 | Alaska, Idaho, Oregon, Washington |

**B.2.3      Tier 1 Centers**

The twenty Tier 1 Centers must focus their efforts on national transportation issues as identified by one of the seven statutory research priority areas: Improving Mobility of People and Goods; Reducing Congestion; Promoting Safety; Improving the Durability and Extending the Life of Transportation Infrastructure; Preserving the Environment; Preserving the Existing Transportation System; and Reducing Transportation Cybersecurity Risks. **SECTION D APPLICATION AND SUBMISSION INFORMATION** provides additional information on non-exclusive candidate topic areas categorized under each research priority area.

Tier 1 Centers may be based in any region and may include consortium members that are not in the same Federal region as the grantee university.

**SECTION C      ELIGIBILITY INFORMATION**

**C.1      Eligible Applicants**

Only U.S. non-profit institutions of higher education as defined under 20 U.S.C. § 1001(a) are eligible to apply. Non-profit institutions of higher education may include qualifying two-year institutions that meet the requirements of 20 U.S.C. § 1001(a). *Any application submitted by or including in its consortium an entity other than a U.S. non-profit institution of higher education will not be considered for selection*.

As noted in **SECTION B FEDERAL AWARD INFORMATION**, current UTC Program grant

recipients are eligible to apply for grant funding. If a current UTC Program grant recipient is selected to be a new UTC under this Notice of Funding Opportunity, the new grant will be managed as a separate entity from any previous grant(s).

Under 49 U.S.C. § 5505(b)(1), a UTC must be a consortium of two or more non-profit institutions of higher education led by one lead institution, all located in the United States or its territories or on Tribal lands. Typically, a consortium is a meaningful arrangement with all members involved in planning the overall direction of the Center's activities and participating in most aspects of the Center; the consortium is a long-term relationship lasting the full life of the grant. *Any application submitted by a sole non-profit institution of higher education that is not part of a consortium will not be considered for selection*.

Universities may collaborate with State, Tribal, and local Departments of Transportation and Departments of Public Works, metropolitan and regional planning organizations, the private sector, the philanthropic sector, and non-profit organizations; however, organizations that are not defined as U.S. non-profit institutions of higher education will not be considered members of the consortium. Organizations that are not members of a consortium may collaborate with a Center on a particular project or provide a service that assists in accomplishing that Center's activities.

The grantee/recipient institution will be the direct and primary recipient of the US DOT funds and must perform a substantive role in carrying out Center activities; it may not serve solely or primarily as a conduit for awards to another party. Under this Notice of Funding Opportunity, there is no minimum requirement for concentration of funding at the grantee institution or for consortium institutions.

## C.2     Cost Sharing or Matching Funds

Total funding for a Center's operation must include the US DOT funding plus non-Federal matching funds. The matching funds may include Federal funds provided to a recipient under 23 U.S.C. § 504(b) or 505 (local technical assistance and State planning and research programs managed by the Federal Highway Administration). No other sources of Federal funds, including from non-US DOT Departments and Agencies, may be counted toward the match requirement.

The non-Federal matching funds may be cash or in-kind, must be used to accomplish program objectives and the purpose of the grant, and must be fully documented in the Center's records. Grantees will have the length of the grant period to obtain and to spend the full amount of required matching funds. Any restrictions under the grant or in Federal grant regulations 2 CFR Part 200 on allowability of costs apply to matching funds as well as the Federal funds.

National and Regional UTCs must obtain matching funds in an amount equal to the US DOT grant award amount. The match for Tier 1 UTCs must be 50 percent of the US DOT grant award amount.

Letters of commitment are neither required nor permitted in the application for space reasons. Instead, applicants wishing to identify such commitments should note in the text of the application if you have received such commitments, keeping any letters of commitment on file for audit purposes. If copies of such letters are included, they will count toward the application's page limit.

## C.3 Multiple Applications

Institutions may apply for multiple grants by submitting separate applications for each, and they may choose to submit separate applications for grants under more than one type of UTC category (National, Regional or Tier 1). However, 49 U.S.C. § 5505(b)(2) (as amended by IIJA, Sec. 25017) restricts the number of UTC grants that an institution may receive through this competition as a lead institution of a consortium to **one UTC grant** (*previously a lead institution could receive one grant under each type of center, but now only one UTC grant in total may be received*). In this competition, there are no restrictions on the numbers or types of UTCs of which an institution may be a non-lead consortium member; an institution could be selected as the lead on one UTC and as a non-lead consortium member on another selected UTC.

## SECTION D        APPLICATION AND SUBMISSION INFORMATION

### D.1        Address to Request Application Package

Applicants may view this Notice of Funding Opportunity and other supporting materials on www.grants.gov (the Federal electronic grant identification and application system) and the UTC Program website, https://www.transportation.gov/content/university-transportation-centers. For www.grants.gov, applicants should log onto that system and then search for Assistance Listing (Catalog of Federal Domestic Assistance number) 20.701 or **Opportunity No. UTCOPENCOMP2022** in order to find this Notice of Funding Opportunity. Although this Notice will be available for viewing on the UTC Program website, applications themselves must be submitted through Grants.gov.

This Notice of Funding Opportunity and previous UTC grant terms and conditions (including reporting requirements) that are similar to those that will be in effect for the upcoming grants may also be found on the UTC Program website, https://www.transportation.gov/content/university-transportation-centers. OST-R will post final versions of the terms and conditions for the new UTC Program grants on that website as soon as they are available.

### D.2        Content and Form of Application Submission

### D.2.1        Letters of Intent

This Notice of Funding Opportunity requires that each applicant submit a Letter of Intent which

OST-R requests be received by **5:00 PM EDT, FRIDAY, JULY 1, 2022** (late submission of a Letter of Intent will be accepted if received before the deadline for applications); *any application not preceded by a Letter of Intent submitted in the manner described here will be rejected*. The Letter of Intent must be submitted to OST-R as a PDF attachment in an e-mail, sent to UTCgrants@dot.gov.

The Letter of Intent must identify the following items:

1. the non-profit institution of higher education that will submit the application as the lead of the consortium;

2. the type of UTC for which you are applying as shown in **Section B.2 Types of Centers** above: (1) National Center; (2) Regional Center; or (3) Tier 1 Center;

    o if you are applying as a Regional Center, please indicate the Federal region in which you are located (as shown on Table 1 previously in this document)

3. the statutory research priority area (see **Section B.2 Types of Centers** above) that will be your primary focus; and

4. contact information for a person at your institution that the US DOT may e-mail or call with questions about the Letter of Intent.

Letters of Intent are required so that the US DOT review panels, comprised of relevant subject matter experts, may be organized in advance of receipt of final applications.

After submitting a Letter of Intent, you may change the type of Center being applied for and describe the change in the final application. However, you may not change the statutory research priority area identified in the Letter of Intent as your primary focus.

If you are intending to apply for more than one UTC grant, either within a category of Centers or across categories of Centers, you must submit a separate Letter of Intent (and a separate application) for each grant. An institution applying for more than one grant may not submit preferences as to which grant it would prefer to receive; the US DOT will make the selections.

## D.2.2     Applications

If you are eligible to receive an award under this Notice of Funding Opportunity, your (non-profit institution of higher education's) authorized representative must submit the application through www.grants.gov; any application submitted other than through www.grants.gov *will not be considered for funding*. You will want to ensure well in advance that your institution is registered with www.grants.gov, as registration is not instantaneous. Eligible entities must have or must secure a Unique Entity Identifier (UEI, formerly DUNS number) for the purposes of formal application; a university's sponsored-programs or research office typically is the entity within a university that submits applications and so should be able to assist with this. The

Unique Entity Identifier is a unique, 12-character alphanumeric value that identifies your organization. Each applicant's Unique Entity Identifier will be maintained as part of the applicant's profile. This number can be obtained through the Federal government's System for Award Management or SAM.gov system https://sam.gov/content/home.

You are responsible for the accuracy and validity of all the administrative, fiscal, and technical information in your application. The application must consist of:

> Your UTC application must be submitted to www.grants.gov no later than **11:59 PM EDT, THURSDAY, AUGUST 25, 2022**. www.grants.gov will provide you with an acknowledgement of your submission.
>
> Hard copies of the application (see **Section D.6 Other Submission Requirements**) must be received by OST-R no later than **5:00 PM EDT, TUESDAY, AUGUST 30, 2022** (*note that this is later than the www.grants.gov deadline*).

1. A cover sheet;
2. A two-page research abstract;
3. A written response to the evaluation criteria, and identification of the proposed Center Director and key staff (this portion of the application must not exceed 35 pages);
4. Required appendices (minority institution enrollment, CVs, and budget plans);
5. Standard Forms SF-424 "Application for Federal Assistance" and SF-424B "Assurances – Non-Construction Programs;" and
6. A copy of each of your consortium institutions' most recent negotiated overhead and fringe benefit rates.

> ►►► **PLEASE ENSURE THAT YOUR APPLICATION DOES NOT CONTAIN ANY PERSONALLY IDENTIFIABLE INFORMATION** ◄◄◄
> (such as Social Security numbers, birth dates, home addresses, etc.)
> Information submitted in the application may be subject to the
> Freedom of Information Act (FOIA).

### D.2.2.1 Cover Sheet

The cover sheet of the application must include the following information:

1. The name of the proposed UTC, and names and locations (city, State, and zip code) of the lead/grantee institution and the other members of the Center's consortium. In order for OST-R to comply with Federal agency reporting requirements, state whether any of the participating non-profit institutions of higher education is a Minority Institution as that term is defined in **Section D.2.2.4.1 Enrollment Information for Any Minority Institution(s)**.
2. The type of UTC for which you are applying for grant funding: (1) National Center; (2)

Regional Center; or (3) Tier 1 Center.  You may choose to be considered for more than one type of Center, but <u>a separate and unique application must be submitted for each grant for which your institution is applying.</u>

- If you are applying as a Regional Center, please indicate the Federal region in which you are located (as shown on Table 1 previously in this document).

3. The statutory research priority area (49 U.S.C. § 6503(c)(1) as amended by IIJA sec. 25014) that is your primary focus:
   A. Improving Mobility of People and Goods;
   B. Reducing Congestion;
   C. Promoting Safety;
   D. Improving the Durability and Extending the Life of Transportation Infrastructure;
   E. Preserving the Environment;
   F. Preserving the Existing Transportation System; or
   G. Reducing Transportation Cybersecurity Risks.

   While your planned activities may span more than one priority area, <u>you must select one priority area as your key focus</u>.

4. The *DOT Strategic Plan* strategic goals ([https://www.transportation.gov/dot-strategic-plan](https://www.transportation.gov/dot-strategic-plan)) that your proposed UTC supports:
   1. Safety;
   2. Economic Strength and Global Competitiveness;
   3. Equity;
   4. Climate and Sustainability;
   5. Transformation; and
   6. Organizational Excellence.

   <u>Select a primary strategic goal and at least one secondary strategic goal</u>.

Prepare the cover sheet as an 8.5x11 standard-size page using Arial 12 font with one-inch margins.  Color may be used if desired.  The cover sheet does not count toward the 35-page limit that applies to the Written Response section described below.

### D.2.2.2      Research Abstract

The research abstract must not be more than two pages in length.  It should contain high-level descriptions of the following:

- The research topics on which the proposed UTC intends to focus;

- The motivations for pursuing the research;
- How the topics align with your chosen statutory research priority area and, if applicable, the non-exclusive candidate topic areas that fall within the selected priority area;
- How the topics align with your identified DOT Strategic Goals; and
- The transformational impacts that the proposed research is expected to have on the transportation system and its users.

Prepare the research abstract as no more than two 8.5x11 standard-size pages using Arial 12 font with one-inch margins. The research abstract does not count toward the Written Response's 35-page limit.

### D.2.2.3       Written Response

| |
|---|
| **Page Limits and Formatting:**<br>This section of your application must not exceed a total length of thirty-five (35) 8.5x11 standard-size pages, single-spaced, Arial 12 font\*, with one-inch margins. _Any application that exceeds the page limit or that uses other than the specified spacing, font, or margins will be rejected._ Color may be used if desired.<br><br>A table of contents is not required; if you choose to include one, it will count toward the 35-page limit.<br><br>The cover sheet, abstract, and required appendices do not count toward the 35-page limit.<br><br>There are specific page limits for the required appendices, which are stated in **Section D.2.2.4 Required Appendices** below.<br><br>\*Arial 12 should be used throughout the document, except for headers/footers and tables/figures within which the font size may be no smaller than 9. Arial Black is acceptable, but Arial Narrow is not. Any size/type of font may be used in the appendices.<br><br>**NOTE:** _Do not include any hyperlinks to external websites that provide supplemental content to the information contained in the application, as reviewers will be instructed not to view them._ |

This **Written Response** section must address the following:

1. Response to Evaluation Criteria
2. Center Director and Key Personnel.

### D.2.2.3.1       Response to Evaluation Criteria

The UTC Program's authorizing legislation (49 U.S.C. § 5505(b)(4)) specifies general selection criteria to be used in this competition. These statutory criteria are included in this Notice of Funding Opportunity as **Criteria One through Five**, described below. In addition, the US DOT currently requires all Notices of Funding Opportunity to reflect in selection criteria the Presidential Executive Orders cited in **Section A.4 Relationship to Other US DOT Efforts** above; responsiveness to these Executive Orders will be assessed through the applicant's responses to **Criteria One and Three**, described below. **SECTION E APPLICATION REVIEW INFORMATION** describes how these selection criteria will be used in the selection process. The selecting official will also be looking for applications that support the US DOT *FY 2022-2026 Strategic Plan*, which will be assessed through the applicant's responses to **Criteria One through Four**.

The application submitted in response to this Notice of Funding Opportunity will serve as the Strategic Plan for any Center that is selected to receive funding. All the items listed below must be addressed clearly and completely.

If you are applying for a Regional UTC, you must discuss throughout your application how your Center will address regional issues. The discussion must include the following:

- How your Regional Center will serve as a focal point within your region to help coordinate your UTC's transportation research, education, workforce development, and technology transfer programs with regional partners and initiatives.

- How your Regional Center will work with other UTC grant recipients that are located in the region to maximize the effectiveness of those UTCs' collective services and programs.

- Your institution's relevant experience, if any, in leading regional efforts.

- Your ideas for how the Center can use regional efforts to further UTC program objectives.

If you are applying for a National or Tier 1 UTC, there is no expectation of addressing issues on a regional basis. However, you are free to do so if that is in keeping with your vision for your proposed center.

**All applicants must respond to the following evaluation criteria, in the order specified below. Insufficient information to allow reviewers to assess any criterion will negatively impact the application's rating.**

**D.2.2.3.1.A          Criterion One:  Research Activities and Capability**

In this section, describe the key breakthrough, advanced, and transformative research activities that you will undertake, and demonstrate your capability and experience to carry out these activities and achieve the objectives of the UTC Program and the vision of a system of systems, which is defined in the forthcoming US DOT *Research, Development and Technology Strategic*

*Plan for Fiscal Years 2022-2026*; information about that plan's development is available at
https://www.transportation.gov/utc/current-competition.  You must provide sufficient detail in
this Written Response to enable the reviewers to understand what you intend to accomplish with
your Center; to see how you plan to select, brief OST-R staff about, and carry out the research
projects financed with your grant; and to evaluate the feasibility of your proposed approach as
well as your capability to achieve the proposed outcomes within the grant's designated time
frame.

The 35-page limit for the Written Response means that you likely will not want to include fully
detailed, methodological descriptions of your proposed research projects in the application.
OST-R encourages applicants to include relatively high-level overviews of research projects that
include enough detail to make clear a project's significance to US DOT's transformative vision
for transportation, noting in particular the research project's intended outcomes and desired
impacts.

   i.    Proposed Research Activities

49 U.S.C. § 6503(c)(1), as amended by IIJA sec. 25014, specifies seven research priorities that
UTCs selected through this competition must address:  Mobility of People and Goods; Reducing
Congestion; Promoting Safety; Improving the Durability and Extending the Life of
Transportation Infrastructure; Preserving the Environment; Preserving the Existing
Transportation System; and Reducing Transportation Cybersecurity Risks.

The IIJA charges the Secretary of Transportation with establishing non-exclusive candidate topic
areas within these research priorities.  OST-R worked with the US DOT operating
administrations to develop the candidate topic areas listed below.  Per 49 U.S.C. § 6503(c)(2),
research activities may include fundamental research pertaining to the applied physical and
natural sciences; applied science and research; technology development research; and social
science research.

Although applicants are encouraged to consider these topic areas, the **US DOT is looking for,
and encouraging applicants to propose, new breakthrough ideas, innovations, and
transformative research topics that will make significant contributions toward
transforming the transportation system into a seamless, connected, and adaptable system
of systems that serves the American people and economy through the safe, efficient,
sustainable, and equitable movement of people and goods.**

US DOT has identified key challenges and candidate technologies and tools, listed below, for
potential research considerations for each of the seven statutory research priorities.  Some of
these are discussed in the forthcoming US DOT *Research, Development and Technology
Strategic Plan for Fiscal Years 2022-2026* noted above.  Challenges are presented by each
research priority area, along with candidate technologies and tools for use among the seven
priority areas:

**<u>Challenges</u>:**

1. **Improving Mobility of People and Goods:**
   - Freight – logistics, planning, data, workforce, and execution
   - Transportation Equity – assessment, investment. enhancement, and coordination
   - Multimodal System Planning – seamless system design, planning and execution
   - Mobility Innovation – innovative personal mobility services and technologies
   - Network Accessibility – mapping and mobility services
   - Automated and Connected Vehicles – simulation, testing, systems design
   - Positioning, Navigation and Timing and other communication technologies – systems integration, testing and reliability
   - Rural Transportation Infrastructure – safety, efficiency, reliability and resiliency

2. **Reducing Congestion:**
   - Demand Management – incentive-based roadway pricing, land use, curb management, mode shift, transportation network gap analysis
   - Delivery – first/last mile delivery data, infrastructure, technology, and operations
   - Operations – transportation system management and operations

3. **Promoting Safety:**
   - Vulnerable Users – design, data, interventions, usability
   - Infrastructure – condition assessment and monitoring, planning and design
   - Safety Culture and Behavior – unsafe/distracted driving identification and mitigation, efficacy of traffic-safety enforcement
   - Human-Machine Interactions – human factors of transportation technology and design
   - Hazardous Material Safety – safety of hazardous materials transportation, impact on communities
   - Vehicle and Workforce Safety – safety of drivers, passengers, road users, transportation workers and first responders
   - Automated and Connected Vehicles – simulation, testing, systems design
   - Positioning, Navigation and Timing and other communication technologies – systems integration, testing and reliability
   - Rural Transportation Safety – planning, design, and data

4. **Improving the Durability and Extending the Life of Transportation Infrastructure:**
   - Durability – inspection, maintenance, preservation, sustainability, longevity, and health monitoring
   - Construction – materials and structures, construction methods and management
   - Finance – innovative revenue and finance

5. **Preserving the Environment:**
   - Noise and Air Quality – measurement and mitigation

- Electrification – transportation operations, infrastructure facilities and other support systems
- Alternative Fuels – energy innovation in high-emissions sectors
- Environmental Analysis and Mitigation – measuring, modeling, and mitigating pollution and preserving ecosystems
- Environmental Justice – assessment and mitigation of harmful environmental effects on vulnerable communities
- Mode Shift – systems design and user experience to reduce environmental impact of transportation
- Resiliency and Climate Adaptation

6. **Preserving the Existing Transportation System:**
   - Asset Management – techniques and cost-effective inspection, preservation, and maintenance practices, vulnerability assessment and risk modeling
   - Resilience – resilient, adaptive, and dynamic systems

7. **Reducing Transportation Cybersecurity Risks:**
   - Supply Chain – coordination, testing, mitigation
   - Positioning, Navigation and Timing and other communication technologies – systems integration, testing and reliability
   - Testing – tools, distributed environments and systems
   - Automated and Connected Vehicles – simulation, testing, systems design
   - Internet of Things – security and monitoring

**Candidate Technologies/Tools for Consideration:**
- Knowledge Networks/Knowledge Graphs
- Vehicle-to-Infrastructure, Vehicle-to-Pedestrian, Vehicle-to-Everything
- Cooperative Driving Automation
- Positioning, Navigation and Timing
- Simulation
- Secure Data Sharing Techniques
- Spectrum Utilization
- Advanced Engineering Materials
- Autonomous Systems
- Robotics
- Blockchain Technologies
- Artificial Intelligence and Machine Learning
- Networked Sensors and Sensing
- Quantum Information Technologies
- Electrification
- Communications and Networks Technologies
- Financial Technologies

- Human Machines Interface Technologies
- Modeling
- Differential Privacy
- Computer Vision
- Renewable Energy Generation, Storage and Distribution
- Energy Storage and Charging
- Additive Manufacturing
- Community Engagement

- Describe your Center's proposed research topic(s) and corresponding relationship to the one of the seven statutory research priority areas (Improving Mobility of People and Goods; Reducing Congestion; Promoting Safety; Improving the Durability and Extending the Life of Transportation Infrastructure; Preserving the Environment; Preserving the Existing Transportation System; or Reducing Transportation Cybersecurity Risks) that you previously identified as your primary focus area. You are encouraged to select from the list of non-exclusive research topic area(s) or introduce your innovative approach to provide more depth to your research focus.

  The US DOT welcomes focused Centers that will make dramatic impacts on one or a few closely related topics and is not necessarily looking for Centers trying to demonstrate the ability to span a large number of research topics.

- Discuss how your Center's proposed research topic(s) advance the *US DOT Strategic Plan* Goals (https://www.transportation.gov/dot-strategic-plan) that you identified above (**D.2.2.1 Cover Sheet**) as being supported by your application.
- Within those Strategic Goals, note which of the Key Performance Indicators listed in the *US DOT Strategic Plan* for those goals you expect your UTC to advance.
- Describe how the involvement of any Minority Institution(s) in your UTC's consortium will contribute particular assets to the research activities of your UTC and/or assist in further developing the conduct of research at the Minority Institution(s).
- Discuss the degree to which your proposed research activities are multimodal (either across modes or involving modes other than highway) and multidisciplinary in scope, and how such an emphasis impacts the quality of the research.
- Describe your commitment to, and your proposed implementation of, peer review principles and other research "best practices" in the selection and management of your research projects.
- Provide three to five relevant performance metrics that you will use to assess your performance in meeting research goals.
  - In addition, state how you will obtain and maintain the information included in those metrics.

ii. Capability and Experience

- Describe the research resources already available to conduct breakthrough, advanced, and transformative research, including those at consortium universities.  Among others, these resources may include the following, if relevant to the transportation research to be conducted:
  o Dedicated laboratory space;
  o Specialized computer or other technical equipment; and
  o University support personnel with particular knowledge of transportation research needs such as a librarian, IT/data specialist, or machinist.
- Describe any research resources you anticipate obtaining in order to perform your proposed research activities.
- Provide details on whether your proposed research activities are a continuation of existing research projects and programs within your university and among members of the consortium, or are intended to provide opportunities to create and establish new research projects and programs.
- Describe your ability to address the specific topic areas you described above as proposed research activities.  Please include:
  o Examples of significant impacts of past research on the transportation enterprise, including a description of products or patents, or a change in practice, or instances of research results informing policy decisions.
  o Examples of research included in peer-reviewed journals, publications, and conferences.
  o Qualifications of faculty expected to be involved in your proposed research activities.

### D.2.2.3.1.B          Criterion Two:  Leadership

In this section, you must describe your plans for providing and creating leadership to solve immediate and long-range national and/or regional transportation problems and advancing transportation expertise and breakthrough technology.  You should provide examples of:

- Your high standing within the national and international arenas of transportation research as evidenced by activities such as publications, committee work, participation in professional transportation organizations and conferences (e.g., presentations, steering committees, session chairs, etc.), awards, and other indicators of leadership excellence.
- Your experience in contributing to the solution of regional and/or national transportation problems.
- Demonstrated leadership in the development and delivery of programs.  This includes innovative transportation education, workforce development, technology transfer, and research activities.
- Your plans for the development of future leaders (young faculty and graduate students) including those at any Minority Institution(s) in your UTC's consortium.
- Your expectation for your UTC's contribution in the area of leadership toward the *US DOT Strategic Plan* Goals (https://www.transportation.gov/dot-strategic-plan) and their Key Performance Indicators.

- Three to five relevant performance metrics that you will use to measure your Center's leadership, and how you will obtain and maintain the information to track these outcomes.

**D.2.2.3.1.C          Criterion Three:  Education and Workforce Development**

Education and workforce development efforts should result in the development of a transportation workforce that is prepared to plan, design, deploy, operate, and maintain the complex transportation systems of the future.  As part of these efforts, applications must demonstrate a Center's commitment to broadening participation and attracting new entrants to the transportation field in order to enhance diversity and inclusion.  Diversity for this Notice of Funding Opportunity is considered to be the inclusion of the many communities, identities, races, ethnicities, backgrounds, abilities, cultures, and beliefs of the American people, including underserved communities, and any other attributes your Center identifies as needing to be addressed.

In describing your Center's planned education and workforce development activities, you must provide the following information:

- Describe any accredited degree-granting programs with transportation components and/or specializations that will be part of this grant, and provide the number of degrees conferred annually during the past five years (associate, undergraduate, masters, and Ph.D.) across all proposed consortium members, as well as the number of full-time faculty and graduate assistantships in each consortium program.  Describe how the grant will be used to support, increase and improve these academic programs.  Discuss what you propose to do to facilitate the connections between your students and transportation industry employers.
- Describe any transportation non-degree programs, including credit awarded for on-the-job training, that will be supported by the grant.  Include in your description a narrative on how the grant will support, increase, or improve non-degree transportation education programs.
- Describe how the involvement of any Minority Institution(s) in your UTC's consortium will contribute particular assets to the education/workforce activities of your UTC and/or assist in furthering the conduct of education and workforce development at the Minority Institution(s).
- Describe development and deployment of any new certification program(s) to support implementation of new and emerging technologies in communications, infrastructure development, operations, and maintenance.
- If your application supports the **Promoting Safety** research priority area, the US DOT has identified a need for a transportation automation workforce certification/credentialing program.  If creating such a certification program is an activity you propose to conduct through your UTC, then describe how you will go about designing, gaining the necessary approval for, and implementing the program.

- If your application supports the **Reducing Transportation Cybersecurity Risks** research priority area, the US DOT has identified a need for the following:
    - Creation of Offensive Security Certified Professional Certification Program or Registered Apprenticeship for Transportation Professionals:
        - Establish training curriculum for transportation cyber professionals with skills in cyber ethical hacking;
        - Program emphasis on cybersecurity for connected and automated transportation systems and architectures;
        - Program with tiered levels of certification and credentialing applicable to trade schools, community college, undergraduate and graduate level courses or part of a registered apprenticeship program;
        - Development of online Learning Management System delivery for cyber training, certification, and credentialing.

    If creating such a certification program is an activity you propose to conduct through your UTC, then describe how you will go about designing, gaining the necessary approval for, and implementing the program.
- Discuss how you will work to identify and then address equity and barriers to opportunity within the proposed programs of your consortium members.
- Describe the number and types of educational seminars, workshops and/or training courses you will offer with support from the grant and the target audience(s) for those seminars, workshops and/or training courses. Include in your description a narrative on how the grant will support, increase or improve these offerings.
- Describe the outreach and educational activities you propose to undertake with support from the grant to attract new entrants into the transportation field. Discuss any specific plans to reach out to primary and secondary school students and connect your activities with the career technical education system in your State or geographic proximity. Discuss any plans to connect with registered apprenticeship programs in order to offer students more educational and career pathways. Discuss any activities to foster and sustain the interest of primary and/or secondary students in transportation careers beyond the initial exposure. Include in your narrative the target groups by age, grade, ethnicity/race, and/or gender characteristics. Provide details on the annual numbers of students to be involved in the proposed programs, what will be done to promote outreach and educational efforts, and how successes will be documented and shared.
- Describe planned outreach or workforce development activities designed to:
    - increase interest in STEM (science, technology, engineering, and mathematics) disciplines and/or raise awareness of transportation careers among diverse and underrepresented groups;
    - recruit/retain diverse faculty;
    - raise public awareness of transportation's impacts on a diverse population.
- Describe additional education and workforce development programs and activities that are not listed above. Be sure to include in the narrative a description of program purpose, target audience(s), and numbers of events and participants.
- Describe how your UTC's education and workforce development activities will address

the Challenges listed in **Section D.2.2.3.1.A Criterion One:  Research Activities and Capability**.

- Describe how your UTC will contribute in the areas of education and workforce development toward the *US DOT Strategic Plan* Goals (https://www.transportation.gov/dot-strategic-plan) and their Key Performance Indicators.
- Provide three to five relevant performance metrics that you will use to measure the effectiveness of degree granting programs, other educational efforts, outreach, workforce development, and other educational and workforce activities, and describe how you will obtain and maintain the information to populate these metrics.

### D.2.2.3.1.D                 Criterion Four:  Technology Transfer and Collaboration

UTC programs must include an ongoing program of technology transfer to make research results available to potential users in a form that can be implemented, utilized, commercialized or otherwise applied, and Centers are expected to form substantive and effective collaborative relationships with other academic and/or research institutions, commercial or non-profit entities, and State/local/Tribal governments in order to achieve their objectives.

As noted in **Section D.2.2.4.3 Center Budget Plan**, through this Notice of Funding Opportunity US DOT is requiring that UTCs devote a certain level of funding toward technology transfer and commercialization, with each UTC required to spend at least 5% of its total (Federal and non-Federal) budget on such activities.  The costs of the activities you describe and mechanisms you discuss in this section would count toward that requirement.

In this section, you must describe the technology transfer and collaboration activities you will undertake to ensure the successful transfer of information and technology results to those who can use them, especially current transportation practitioners, with the ultimate goal of putting your research widely into effective practice. You must also provide examples of your prior experience in outreach, dissemination, technology transfer, deployment, and commercialization related to transportation research and education.

- Describe your planned activities and prior experience in technology transfer activities, such as:
  - What activities you propose to build the technology transfer capacity of your consortium, faculty, staff, and students.
  - For your consortium, describe how the participating universities will draw upon diverse types and/or sizes of institutions, including Minority Institutions; how the members will work together within the proposed consortium, including roles and responsibilities of lead and other organizations; what each university brings to the proposed consortium to support transformation technology transfer and commercialization; and how the presence of multiple parties and funding sources will enhance your ability to reach your goals.

- o The composition, or proposed composition, of any existing or planned advisory committee for the Center.
- o Partnerships across sectors, with private enterprise, philanthropic entities, non-profit entities, the US DOT, state, Tribal, and local governments (such as State DOTs, Metropolitan Planning Organizations, other public-sector organizations), related state or local agencies (such as state environment agency, local workforce board), and technical/practitioner organizations (such as the American Association of State Highway and Transportation Officials, the American Public Transportation Association, the American Road and Transportation Builders Association, the Institute of Transportation Engineers, the Conference of Minority Transportation Officials, and the Transportation Research Board among others) to move transformative research and technology results into practice;
- o Technical assistance to stakeholders in implementing and deploying research results;
- o Use of technology transfer mechanisms, such as licensing, patents, field testing and demonstration, commercialization (provide examples), standardization, improvements in practitioner guides, cooperative research and/or user agreements, domestic manufacturing of Federally funded inventions, or the creation of new business entities;
- o Use of peer-reviewed journals or academic publications to showcase research results;
- o Information exchanges, including new or social media campaigns and activities; and
- o Academic and continuing education programs targeted toward transportation professionals, such as Statewide or region-wide continuing education courses and/or distance learning, seminars, webinars, and workshops related to transportation.
- Discuss how projects and programs may benefit people in rural and Tribal communities, including specific opportunities to improve mobility and foster a local economy.
- Describe how your UTC will contribute in the areas of transformational research and collaboration toward meeting the *US DOT Strategic Plan* Goals (https://www.transportation.gov/dot-strategic-plan) and their Key Performance Indicators.
- Provide three to five relevant performance metrics that you will use to measure the effectiveness of outreach efforts, as well as the progress in widely implementing research results. Include information on how you will obtain and maintain the information to track these outcomes.

### D.2.2.3.1.E        Criterion Five:  Program Efficacy

In this section, you must describe your program management approach and procedures, and how you will implement planned activities and produce results in an effective and cost-efficient manner. This must include the following:

- A description of the availability of institutional resources to carry out planned activities, including the institutional resources available from all members of your consortium. Institutional resources encompass such things as research and training facilities, human resources, physical facilities, and institutional support capabilities. Discuss the collective

resources of your consortium that will be available to your Center.

> **NOTE:** If there is any pre-existing center of transportation studies or research at the institutions that make up your Center's consortium, describe how the UTC's activities and accomplishments will relate to, and be distinguishable from, those of the existing center(s).

- A discussion of past experience by any of the institutions in your consortium in leading a UTC Program grant, or if none then similar experience on another grant under which the institution conducted activities as a center or institute rather than for a single research project. Please address such managerial issues as:
    - o Whether the institution leading the grant conducted grant activities on time and on budget;
    - o Whether the institution leading the grant complied with reporting requirements;
    - o Whether there were any negative audit findings at the institution related to the grant;
    - o Whether the grant met any requirement to provide matching funds.
- Plans for overall management and oversight of fiscal and technical activities, including methods for ensuring cost efficiency, demonstrating the ability to implement the program in a cost-efficient manner.
- Procedures for tracking and coordinating research efforts.

### D.2.2.3.2    Center Director and Key Personnel

In this section, name the individual who will lead the UTC as Center Director, and the key staff members who will support the Center Director in accomplishing the grant's goals. For purposes of management and oversight, OST-R requires that a single Center Director be identified who is affiliated with the grantee institution, and not with any of the sub-grant consortium-member institutions.

The Center Director is the person responsible for ensuring compliance with all UTC Program requirements. This role is particularly important in multiparty consortia involving distant partners. The Center Director is expected to represent the Center and/or the UTC Program at external meetings and is required to participate in up to two annual meetings with the directors of all UTCs convened by the US DOT, and to conduct up to two annual briefings for OST-R staff about that Center's research. No minimum percentage of the Center Director's time is required on the grant, but meaningful direct personal involvement by the Center Director in the UTC is expected.

- Describe how your Center Director plans to effectively direct and oversee the Center's funds, personnel, and programs.

- State the titles and describe the duties and responsibilities of any other key personnel that are considered to be critical for Center activities.

- Briefly discuss the qualifications of the Center Director and key personnel. (**NOTE:** The curriculum vitae (CV) for the Center Director and key personnel are to be included in the appendices.  See further instructions in **Section D.2.2.4** below.)

### D.2.2.4          Required Appendices

The following appendices are required:

1. Enrollment Information for any Minority Institution(s)
2. Curriculum Vitae for Center Director and Key Personnel
3. Center Budget Plan

The required appendices do not count toward the 35-page limit.

**NOTE:**  OST -R asks that applicants only include the three Required Appendices described above.  Reviewers will be instructed neither to read nor to reflect in evaluations any additional appendices that an applicant may include in an application.

### D.2.2.4.1          Enrollment Information for Any Minority Institution(s)

Minority institutions are encouraged to apply for UTC grants.  49 U.S.C. § 5505(c)(4)(C) states: "In awarding grants under this section, consideration shall be given to minority institutions, as defined by section 365 of the Higher Education Act of 1965 (20 U.S.C. § 1067k), or consortia that include such institutions that have demonstrated an ability in transportation-related research."  Section 365 of the Higher Education Act of 1965 (20 U.S.C. § 1067k) defines a minority institution as an institution of higher education whose enrollment of a single minority or a combination of minorities exceeds 50 percent of the total enrollment – **this is the sole definition that must be used to identify an institution as a minority institution under this Notice of Funding Opportunity**.  49 U.S.C. § 5505(c)(4)(C) directs the US DOT to give consideration to minority institutions; it does not require a UTC to include a minority institution in the consortium.

20 U.S.C. § 1067k defines the term "minority" to mean:  "*American Indian, Alaskan Native, Black (not of Hispanic origin), Hispanic (including persons of Mexican, Puerto Rican, Cuban, and Central or South American origin), Pacific Islander or other ethnic group underrepresented in science and engineering*."

If your proposed UTC consortium includes any minority institution(s) according to the 20 U.S.C. § 1067k definition of a minority institution that the UTC Program's authorizing statute requires be used for this competition, then for each such institution please provide enrollment numbers, from the most recent semester/term where numbers are available, that show the institution meets the definition stated here.

NOTE:  Any format is acceptable for the information in this appendix.

Applications submitted by or including a minority institution will be identified as such to the reviewers, to the recommendation team, and to the selecting official (the Secretary of Transportation) as part of the review and selection process described in **SECTION E APPLICATION REVIEW INFORMATION** below.  The presence of a minority institution meaningfully involved in a proposed UTC will be reflected in the reviewers' ratings and will be considered by the recommendation team and the selecting official along with other aspects of the desired balanced portfolio for selected UTCs described in **SECTION E APPLICATION REVIEW INFORMATION** below.

**D.2.2.4.2      Curricula Vitae for Center Director and Key Personnel**

Each Curriculum Vitae should be prepared to focus on the most relevant qualifications and is limited to two pages per individual.  Include CVs only for those individuals noted previously in response to **Section D.2.2.3.2** of this Notice of Funding Opportunity as being key members of the UTC's personnel.  *Do not include Personally Identifiable Information (PII) such as Social Security numbers, birth dates, or home addresses*.

Please include on the curriculum vitae of the proposed Center Director an e-mail address and telephone number suitable for OST-R's official use in communications related to your application.

**D.2.2.4.3      Center Budget Plan**

Provide a completed overall Center Budget Plan (see **Attachment A** to this Notice of Funding Opportunity) for the first year of the grant, including required matching funds, for your UTC.  As of the release date of this Notice of Funding Opportunity, OST-R anticipates awarding the full Fiscal Year 2022 award amounts shown in **Section B FEDERAL AWARD INFORMATION**, so your budget should reflect the full, authorized FY2022 amount for the type of UTC for which you are applying ($4.0M for National, $3.0M for Regional, and $2.0M for Tier 1) and should cover the initial year of the grant (11/15/2022 to 11/14/2023).  If there is any reduction in funding, grantees who are selected to receive grants through this Notice of Funding Opportunity will be asked to submit a revised budget reflecting that amount.

In addition to the overall Center Budget Plan, provide individual budget plans for each consortium member and the lead institution.  Amounts shown for each budget category in these individual budget plans must roll up to the amount shown for that budget category on the overall Center Budget Plan.

You may provide the budget plan in any format you choose, but it must use only the budget categories specified in **Attachment A** to this Notice of Funding Opportunity.  As noted in **Section D.2.2.3.1.D Criterion Four: Technology Transfer and Collaboration** above, under the UTC grants to be awarded through this Notice of Funding Opportunity, each UTC is required to spend at least 5% of its total (Federal and non-Federal) budget for technology transfer and commercialization activities such as those you described in your application.  For purposes of

tracking compliance with this requirement, you should include all technology transfer and commercialization costs in that category on your Budget Plans, even if some costs (such as, for example, associated supplies or travel) could have been presented in another category.

UTCs selected to receive grants under this Notice of Funding Opportunity may (subject to availability of funds, the UTC Program's continued statutory authority, and the grantee's compliance with grant terms and conditions) receive four additional increments of funding toward the grant. This additional funding is expected to be awarded annually in approximately August, and OST-R will request a new budget from the UTC for review and approval in advance of making that additional award. As with the first funding increment, grantees will have through November 30, 2028 to expend the additional funds.

### D.2.2.5 Standard Forms SF-424 and SF-424B

Prepare and submit Standard Forms SF-424 and SF-424B.

### D.2.2.6 Confirmation of Negotiated Overhead and Fringe Benefit Rates

As a separate document from the Written Response, provide a legible copy of your institution's most recent negotiated overhead rates and fringe benefits rates, including the name and telephone number of the Federal audit agency representative. Obtain and provide the same evidence from each of the intended consortium institutions.

### D.3 System for Award Management (SAM)

Each applicant is required to:
- Be registered in the System for Award Management (SAM, http://www.sam.gov) before submitting your application; and
- Continue to maintain an active SAM registration with current information at all times during which you have an active Federal award or application or plan under consideration by a Federal awarding agency.

Applicants that have Federal contracts, grants, and cooperative agreement awards with a cumulative total value greater than $10,000,000 must provide information to SAM about certain civil, criminal, and administrative proceedings that reached final disposition within the most recent five-year period, that were connected with the award or performance of a Federal award.

### D.4 Submission Dates and Times

### D.4.1 Letters of Intent

Letters of Intent should be submitted by **5:00 PM EDT, FRIDAY, JULY 1, 2022** (late Letters will be accepted if submitted before the deadline for applications). A Letter of Intent must be submitted to OST-R as a PDF attachment in an e-mail, sent to UTCgrants@dot.gov.

**D.4.2** **Applications**

Your UTC application must be submitted to www.grants.gov no later than **11:59 PM EDT, THURSDAY, AUGUST 25, 2022**. www.grants.gov will provide you with an acknowledgement of your submission.

Hard copies of the application must be received by OST-R no later than **5:00 PM EDT, TUESDAY, AUGUST 30, 2022** (*note that this is later than the www.grants.gov deadline*). Please refer to **Section D.6 Other Submission Requirements** for details on hard copy submittals.

Your application will be considered complete as initially received by OST-R; if you need to make changes after submission but before the due date, you will need to withdraw and resubmit your application in whole. Any materials submitted after the due date will not be incorporated into the review process unless OST-R specifically requests such material to complete the review of your application.

**D.5** **Funding Restrictions**

The grant funds intended for award under this Notice of Funding Opportunity do not apply to, and may not be used for, construction activities or projects.

Use of grant funds, including funds and in-kind contributions provided by the UTC consortium universities and any external partners as the grant's required matching funds, for the purchase of equipment with a unit value of $5,000 or more, or for foreign travel, will require advance approval from OST-R after a grant has been awarded, before such expenses may be incurred.

Pre-award costs, incurred from the date the US DOT announces the identities of the selected awardees, are those incurred directly pursuant to the applicant's proposed budget and in anticipation of the Federal award where such costs are necessary for the efficient and timely performance of the scope of work. Such costs are incurred at the recipient's own risk; after award of the grant, the recipient may request in writing from OST-R approval of costs that would have been allowable, if incurred after the date of the Federal award.

Please visit the "Tools for Grantees" tab on the UTC Program website at https://www.transportation.gov/utc/tools-grantees to view *General Provisions of Grants for University Transportation Centers* and *Deliverables and Reporting Requirements for University Transportation Centers* in effect for the most recent round of UTC grants. These documents are similar to what requirements are expected to be for the upcoming UTC grant awards being competed now, and they include information regarding certain cost items and the post-award requirements and deliverables pertaining to the grant. OST-R will post final versions of the terms and conditions for the new grants to be selected under this Notice of Funding Opportunity as soon as they are available.

**D.6**          **Other Submission Requirements**

In addition to submitting your application electronically through www.grants.gov, you must also submit to the UTC Program office hard copies of the following documents:

- One copy of the Cover sheet, Abstract, and Written Response with all three of the required appendices;
- One copy each of Standard Forms SF-424 and SF-424B (these need not bear original signatures which typically are executed through www.grants.gov); and
- One copy of the negotiated overhead and fringe benefits rates for each member of the consortium.

OST-R asks applicants to use temporary binding that allows easily for photocopying (binder clips, rubber bands, etc.).

These hard copies must contain identical information to what you submitted through www.grants.gov.  The hard copies must be received by OST-R no later than **5:00 PM EDT on TUESDAY, AUGUST 30, 2022** (*note that this is later than the www.grants.gov deadline*).  OST-R recommends that you use a delivery or courier service that allows you to track and document delivery and receipt.  An application will not be rejected if the hard copies are not received by the deadline, but failure to meet the deadline will be noted as part of the assessment of your application.

Please address your hard copy submittal as follows, using all of the information shown:

> Amy Stearns
> US DOT/OST-R/mail code RDT-10
> Work Station E33-472
> 1200 New Jersey Avenue, SE
> Washington, DC  20590-0001

Contact telephone number only for use in submitting hard copies:  (202) 366-4957.

---

**►►► PLEASE ENSURE THAT YOUR APPLICATION DOES NOT CONTAIN ANY PERSONALLY IDENTIFIABLE INFORMATION ◄◄◄**
(such as Social Security numbers, birth dates, home addresses, etc.)
Information submitted in the application may be subject to the
Freedom of Information Act (FOIA).

---

**SECTION E**          **APPLICATION REVIEW INFORMATION**

**E.1**          **Criteria**

This Notice of Funding Opportunity structures the application so that applicants directly address each of the selection criteria individually. **SECTION D APPLICATION AND SUBMISSION INFORMATION** above states the criteria and provides instructions for responding to them.

The Secretary of Transportation will select five applicants to receive National UTC grants, ten applicants to receive regional UTC grants, and twenty applicants to receive Tier 1 UTC grants. The selections made by the Secretary are final.

The US DOT seeks to select a balanced portfolio across all selected Centers that as a group support the seven statutory research priority areas, include different types and/or sizes of universities including whether the lead or any consortium member is a minority institution (see **Section D.2.2.3.1.C** above), provide geographic diversity, and are collectively multimodal in focus.

- **For National Centers:** The US DOT intends to fund five National Centers. The awards may be made in any combination of the seven statutory research priority areas stated in **Section B.2 Types of Centers** above. The Secretary reserves the right to make multiple awards in some research priority areas and to refrain from making an award in one or more of the other areas, subject to the relative merits of the applications submitted for funding.
- **For Regional Centers:** The US DOT intends to fund ten Regional Centers – one within each region. However, if no meritorious applications are received for one or more regions, a new competition will be held for those regions in order to ensure the selection of a qualified Center.
- **For Tier 1 Centers:** The US DOT intends to fund twenty Tier 1 Centers, made in any combination of the seven statutory research priority areas subject to the relative merits of the applications submitted for funding.

## E.2        Review and Selection Process

### E.2.1        Compliance Review

After the closing date, OST-R staff will conduct an initial review of applications to identify any that are incomplete, non-responsive to this Notice of Funding Opportunity, or ineligible to receive a UTC grant. *Any such application will be rejected and the applicant notified*.

### E.2.2        Merit Review

OST-R will utilize knowledgeable and experienced subject matter experts drawn from the U.S. transportation research community and the US DOT to evaluate all complete and responsive applications. Submitted applications will be sorted according to the statutory research priority areas. The applications will be provided to review panels consisting of the appropriate subject matter experts.

Reviewers will base their evaluations of National, Regional, and Tier 1 Centers on the criteria identified in **Section D.2.2.3.1 Response to Evaluation Criteria** of this Notice of Funding Opportunity.  The review panels will rate each application as Highly Recommended, Recommended, or Not Recommended for funding.  In accordance with the US DOT's best-practice guidance for grant competitions, numerical values such as differing weights for various criteria are not being used in this competition; applications will be evaluated as a whole.

Based on experience with prior UTC Program competitions, OST-R anticipates that enough applications will be rated as Highly Recommended that selections will be made from among the applications rated at that level, though situations may arise (for example, for one or more Regional UTCs where a small number of applications are typically submitted) where applications rated as Recommended may be selected.  No application rated as Not Recommended will be selected.

The reviewers' ratings will be forwarded to a team comprised of the heads of the US DOT operating administrations and equivalent Secretarial offices as appropriate.  This team will recommend recipients for all available UTC grants, taking into consideration the statutory restrictions on receiving grants, and striving to achieve the desired balanced portfolio across the full group of grants (see **Section E.1 Criteria** above for a description of this desired balance).  The final selection of grant recipients will be made by the Secretary of Transportation.

OST-R anticipates that there will be instances where multiple applications under consideration for the same grant are rated as Highly Recommended.  In such cases, the recommendation team and the selecting official will prioritize selection of applications that:
- reviewers' comments noted most favorably under **Criterion One:  Research Activities and Capability** regarding climate change and sustainability; and/or
- reviewers' comments noted most favorably under **Criterion One:  Research Activities and Capability** and **Criterion Three:  Education and Workforce Development** regarding equity and barriers to opportunity; and/or
- propose a consortium that includes a minority institution as defined in 20 U.S.C. § 1067k (with supporting documentation included in Section **D.2.2.4 Required Appendices**) that reviewers' comments noted to be actively involved and beneficial to the fulfillment of the grant's purpose.

OST-R reserves the right to request from any or all applicants such additional information as it may deem necessary to complete its review of applications.  In conformance with the transparency requirements of 49 U.S.C. § 6503(b)(5), and in order to provide feedback for applicants' use on future applications, applicants may (upon request) receive copies of materials used in the evaluation of their applications after the conclusion of this competition.

### E.3        Risk Assessment

Federal awarding agencies must report information to the Federal Awardee Performance and

Integrity Information System (FAPIIS, http://www.fapiis.gov) about agreements with a non-Federal entity that involved material failure to comply with the award terms and conditions, suspension or debarment proceedings, or similar integrity or prior-performance issues. A non-Federal entity may submit comments in the record in FAPIIS about any information that Federal awarding agencies had reported to the system about that non-Federal entity, for consideration by the Federal awarding agency in making future Federal awards to the non-Federal entity.

Prior to making an award to a non-Federal entity, Federal agencies must determine whether that non-Federal entity is qualified to receive that particular award. In making a determination about any potential risk posed by an applicant being considered for a UTC grant, the UTC Program will review and take into consideration any information about the applicant that is in the System for Award Management (SAM) and the Federal Awardee Performance and Integrity Information System (FAPIIS).

## SECTION F          FEDERAL AWARD ADMINISTRATION INFORMATION

### F.1          Federal Award Notices

Only Federal Fiscal Year 2022 funding and authorization are available at this time for new UTC Program grants. Following an initial award of the FY2022 funds, OST-R expects to award four additional increments of funding from Federal Fiscal Years 2023 through 2026 funds at approximately one-year intervals, subject to availability of funds, the UTC Program's continued statutory authority, and the grantee's compliance with terms of the grant. All funding awarded under these UTC grants may be expended over an approximately six-year period, from the award date until November 30, 2028.

Under no circumstances may a public announcement of grant funding or awards (such as a press release) serve as an authorization to begin performance. The receipt of written documentation of a grant award bearing the signature of the Assistant Secretary of Research and Technology or delegate shall provide sole authorization to begin performance. See **Section D.5 Funding Restrictions** above regarding pre-award costs.

### F.2          Administrative and National Policy Requirements

All grants to UTCs will be administered in accordance with the UTC Program's statutory language in 49 U.S.C. § 5505; Federal grant regulations in 2 CFR Part 200; and other applicable Federal laws. For more information about this, please refer to documents related to the previous round of UTC grants that will be updated for use on the upcoming grant awards resulting from this competition: *General Provisions of Grants for University Transportation Centers* and *Grant Deliverables and Reporting Requirements for University Transportation Centers*, available at https://www.transportation.gov/utc/tools-grantees. OST-R will post the final versions for the new grants as soon as they are available.

Following are examples of two requirements that will be addressed in grant agreements issued to institutions selected to receive grants through this Notice of Funding Opportunity.

## Data Management Plans (DMPs)

In accordance with the *US DOT Plan to Increase Public Access to the Results of Federally Funded Scientific Research* (US DOT Public Access Plan), available at https://doi.org/10.21949/1520559, and the US DOT Departmental Data Release Policy ((DOT Order 1351.34, adopted March 28, 2011; available at https://www.transportation.gov/digitalstrategy/policyarchive/Departmental-Data-Release-Policy), each UTC grant recipient is required to create a **Data Management Plan (DMP)**. In the DMP, a UTC must propose program-level strategies to deposit Digital Data Sets resulting from US DOT-funded scientific research in a repository that enables and allows for public access and sharing. The DMP will be reviewed and must be approved by the Office of the Assistant Secretary for Research and Technology following the award of a grant.

## Civil Rights Act Compliance

Each UTC grant recipient must document that it has a plan for compliance with civil rights obligations and nondiscrimination laws, including Title VI of the Civil Rights Act of 1964 and accompanying regulations, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

## F.3        Reporting

For grant deliverables and reporting requirements, please refer to a document related to the previous round of UTC grants that will be updated for use on the upcoming grant awards resulting from this competition:  *Deliverables and Reporting Requirements for University Transportation Centers* available at https://www.transportation.gov/utc/tools-grantees.  OST-R will post a final version for the new grants as soon as it is available.  Applicants should integrate these deliverables and reports into their internal management plans and schedules.

## SECTION G        FEDERAL AWARDING AGENCY CONTACT

Until **4:00 PM EDT on MONDAY, AUGUST 22, 2022**, questions about this Notice of Funding Opportunity or the UTC Program in general may be directed to the following email address: UTCgrants@dot.gov.  Questions posed by applicants will be posted along with OST-R's responses on the Grant Competition tab of the UTC Program website  (available at https://www.transportation.gov/utc/current-competition), in order that all potential applicants may benefit equally from any additional information provided in the responses.

*NOTE:  Until a formal notice of award is issued, no communication by the government, either written or oral, shall be interpreted as a promise that an award will be made.*

**SECTION H          OTHER INFORMATION**

Under the Infrastructure Improvement and Jobs Act, the UTC Program and the grants to be awarded through this competition are authorized through Federal Fiscal Year 2026.
Aside from the current competition referenced in this Notice of Funding Opportunity, no information is available at this time about the possibility of, or timeline for, any future UTC Program competitions.

**ATTACHMENT A**

Center Budget Plan
11/15/2022 – 11/14/2023

| CATEGORY | Budgeted Amount from Federal Share | Budgeted Amount from Matching Funds | Explanatory Notes |
|---|---|---|---|
| Center Director Salary | | | |
| Faculty Salaries | | | |
| Administrative Staff Salaries | | | |
| Other Staff Salaries | | | |
| Student Salaries | | | |
| Staff Benefits | | | |
|    Total Salaries and Benefits | | | |
| Student Tuition | | | |
| Technology Transfer[1] | | | |
| Permanent Equipment[2] | | | |
| Expendable Property, Supplies, and Services[3] | | | |
| Domestic Travel | | | |
| Foreign Travel[4] | | | |
| Other Direct Costs (specify)[5] | | | |
|    Total Direct Costs | | | |
| F&A (Indirect) Costs | | | |
|    TOTAL COSTS | | | |

---

1 The UTC grant requires that each UTC spend at least 5% of its total (Federal and non-Federal) budget on technology transfer and commercialization.  Please report all  costs related to technology transfer and commercialization (including associated supplies, travel, etc.) on this line rather than in one of the other categories.

2 Permanent Equipment includes any item of equipment having a unit acquisition cost of $5,000 or more.  Per the grant's *General Provisions* document, written permission must be obtained from OST-R prior to the purchase of such equipment.

3 Expendable Property, Supplies, and Services include such tangible items as office and laboratory supplies and such intangible services as telecommunications.

4 Foreign Travel includes travel to or from any destination outside of the United States and its territories.  Per the grant's *General Provisions* document, written permission must be obtained from OST-R prior to the initiation of such travel, or such travel may not be funded under the grant.

5 Itemize other anticipated direct costs not mentioned above.



THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS

**PUBLIC INFORMATION ACT** *Handbook* 2024



## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

Dear Fellow Texans:

In 1888, James Bryce wrote that sunlight kills the germs of corruption that can infect a government, and his words remain true today. As Attorney General, I make it a priority to encourage open government and to enforce the laws that mandate it. The Texas Public Information Act assures that government entities give citizens access to information about the business government officials are conducting on their behalf—information that enables the people of Texas to observe how their government works and to hold their public officials accountable. Texas government does not belong to elected officials, but to the people.

This updated guide helps public officials and the people they serve understand and comply with the Texas Public Information Act. You can view the handbook by visiting www.texasattorneygeneral.gov/publicinfo_hb.pdf. Where further help is needed, my office's Open Government Hotline is available to answer questions about open government in Texas. The toll-free number is 877-OPEN TEX (877-673-6839).

Texans have the right to monitor their government's decision making, including spending tax dollars and exercising powers granted by the people. That knowledge is essential to preserving the rule of law, protecting the democratic process, and defending the liberty we all cherish. The Public Information Act is a critical protection for that right, and I am proud to offer this guide in service of that goal.

Best regards,

Ken Paxton
Attorney General of Texas

# TABLE OF CONTENTS

A PREFACE TO THE PUBLIC INFORMATION HANDBOOK .................................................................i

PART ONE: HOW THE PUBLIC INFORMATION ACT WORKS................................................1

I.    OVERVIEW ...................................................................................................................1
      A.    Historical Background ......................................................................1
      B.    Policy; Construction.........................................................................1
      C.    Attorney General to Maintain Uniformity in Application, Operation and
            Interpretation of the Act...................................................................2
      D.    Section 552.021 ...............................................................................2
      E.    Open Records Training .....................................................................3

II.   ENTITIES SUBJECT TO THE PUBLIC INFORMATION ACT ...........................................7
      A.    State and Local Governmental Bodies ..............................................8
      B.    Private Entities ................................................................................8
      C.    Certain Property Owners' Associations Subject to Act......................9
      D.    A Governmental Body Holding Records for Another Governmental Body............10
      E.    Private Entities Holding Records for Governmental Bodies.................10
      F.    Judiciary Excluded from the Public Information Act ..........................12

III.  INFORMATION SUBJECT TO THE PUBLIC INFORMATION ACT ....................................14
      A.    Public Information is Contained in Records of All Forms ..................14
      B.    Information Held by a Temporary Custodian .....................................15
      C.    Exclusion of Tangible Items.............................................................15
      D.    Exclusion of Protected Health Information.........................................16
      E.    Personal Notes and E-mail in Personal Accounts or Devices................16
      F.    Commercially Available Information.................................................18

IV.   PROCEDURES FOR ACCESS TO PUBLIC INFORMATION .............................................18
      A.    Informing the Public of Basic Rights and Responsibilities Under the Act..............18
      B.    The Request for Public Information ...................................................19
      C.    The Governmental Body's Duty to Produce Public Information Promptly............22
      D.    The Requestor's Right of Access.......................................................25
      E.    Computer and Electronic Information.................................................29

V.    DISCLOSURE TO SELECTED PERSONS .....................................................................30
      A.    General Rule: Under the Public Information Act, Public Information is
            Available to All Members of the Public.............................................30
      B.    Some Disclosures of Information to Selected Individuals or Entities Do Not
            Constitute Disclosures to the Public Under Section 552.007 ................31
            1.    Special Rights of Access: Exceptions to Disclosure Expressly
                  Inapplicable to a Specific Class of Persons.................................31
            2.    Intra- or Intergovernmental Transfers .........................................34
            3.    Other Limited Disclosures That Do Not Implicate Section 552.007..............35

**VI.**    **ATTORNEY GENERAL DETERMINES WHETHER INFORMATION IS SUBJECT TO AN EXCEPTION**................................................................................................**36**

     A.    Duties of the Governmental Body and of the Attorney General Under Subchapter G ..............................................................................................36

     B.    Items the Governmental Body Must Submit to the Attorney General .....................40

     C.    Section 552.302: Information Presumed Public if Submissions and Notification Required by Section 552.301 Are Not Timely ...................................43

     D.    Section 552.303: Attorney General Determination that Information in Addition to that Required by Section 552.301 Is Necessary to Render a Decision ...................................................................................................44

     E.    Section 552.3031: Electronic Submission of Request for Attorney General Decision ...................................................................................................45

     F.    Section 552.305: When the Requested Information Involves a Third Party's Privacy or Property Interests..................................................................................45

     G.    Section 552.3035: Attorney General Must Not Disclose Information at Issue ...................................................................................................47

     H.    Section 552.304: Submission of Public Comments .................................................48

     I.    Rendition of Attorney General Decision ................................................................48

     J.    Timeliness of Action................................................................................................48

     K.    Section 552.310: Searchable Database ...................................................................49

**VII.**    **COST OF COPIES AND ACCESS**................................................................................**50**

     A.    Charges for Copies of Paper Records and Electronic Records................................50

     B.    Charges for Inspection of Paper Records and Electronic Records ..........................52

     C.    Waivers or Reduction of Estimated Charges ..........................................................53

     D.    Providing a Statement of Estimated Charges as Required by Law .........................54

     E.    Cost Provisions Regarding Requests Requiring a Large Amount of Personnel Time.........................................................................................................56

     F.    Complaints Regarding Alleged Overcharges..........................................................57

     G.    Cost Provisions Outside the Public Information Act ...............................................58

**VIII.**    **PENALTIES AND REMEDIES**...................................................................................**58**

     A.    Informal Resolution of Complaints .........................................................................58

     B.    Training Requirement ..............................................................................................58

     C.    Criminal Penalties ...................................................................................................59

     D.    Civil Remedies ........................................................................................................59

         1.    Writ of Mandamus........................................................................................59

         2.    Violations of the Act: Declaratory Judgment or Injunctive Relief; Formal Complaints .....................................................................................60

         3.    Suits Over an Open Records Ruling..............................................................62

         4.    Discovery and Court's In Camera Review of Information Under Protective Order............................................................................................63

     E.    Assessment of Costs of Litigation and Reasonable Attorney's Fees ......................63

**IX.**    **PRESERVATION AND DESTRUCTION OF RECORDS**..................................................**64**

**X.**    **PUBLIC INFORMATION ACT DISTINGUISHED FROM CERTAIN OTHER STATUTES**............**65**

     A.    Authority of the Attorney General to Issue Attorney General Opinions.................65

B.     Texas Open Meetings Act..................................................................65

C.     Discovery Proceedings.....................................................................66

**PART TWO:**     **EXCEPTIONS TO DISCLOSURE** ..................................................................**67**

**I.**     **INFORMATION GENERALLY CONSIDERED TO BE PUBLIC** ..................................................**67**

A.     Section 552.022 Categories of Information.....................................67

    1.     Discovery Privileges.................................................................67

    2.     Court Order................................................................................68

B.     Certain Contracting Information.......................................................68

C.     Certain Investment Information........................................................70

D.     Other Kinds of Information that May Not Be Withheld...................71

**II.**     **EXCEPTIONS** .................................................................................................**72**

A.     Section 552.101: Confidential Information......................................72

    1.     Information Confidential Under Specific Statutes ...................73

    2.     Information Confidential by Judicial Decision........................75

B.     Section 552.102: Confidentiality of Certain Personnel Information .....................82

    1.     Dates of Birth of Public Employees .........................................82

    2.     Transcripts of Professional Public School Employees ...........83

C.     Section 552.103: Litigation or Settlement Negotiations Involving the State or a Political Subdivision ..................................................83

D.     Section 552.104: Information Relating to Competition or Bidding ........86

E.     Section 552.105: Information Related to Location or Price of Property.................88

F.     Section 552.106: Certain Legislative Documents ...........................88

G.     Section 552.107: Certain Legal Matters ..........................................90

    1.     Information Within the Attorney-Client Privilege ...................91

    2.     Information Protected by Court Order......................................93

H.     Section 552.108: Certain Law Enforcement, Corrections, and Prosecutorial Information ................................................................94

    1.     The Meaning of "Law Enforcement Agency" and the Applicability of Section 552.108 to Other Units of Government ...............................................96

    2.     Application of Section 552.108 ................................................98

    3.     Limitations on Scope of Section 552.108................................101

    4.     Application of Section 552.108 to Information Relating to Police Officers and Complaints Against Police Officers .......................102

    5.     Other Related Law Enforcement Records ...............................104

I.     Section 552.1081: Confidentiality of Certain Information Regarding Execution of Convict.....................................................................111

J.     Section 552.1085: Confidentiality of Sensitive Crime Scene Image .........112

K.     Section 552.109: Confidentiality of Certain Private Communications of an Elected Office Holder .......................................................114

L.     Section 552.110: Confidentiality of Trade Secrets and Confidentiality of Certain Commercial or Financial Information .........................................116

    1.     Trade Secrets .........................................................................116

    2.     Commercial or Financial Information ....................................117

M.     Section 552.1101: Confidentiality of Proprietary Information............117

N.      Section 552.111: Agency Memoranda ................................................... 118

    1.    Deliberative Process Privilege ................................................... 119

    2.    Work Product Privilege ............................................................. 120

O.      Section 552.112: Certain Information Relating to Regulation of Financial Institutions or Securities .................................................................... 121

P.       Section 552.113: Confidentiality of Geological or Geophysical Information ....... 123

Q.      Sections 552.026 and 552.114: Confidentiality of Student Records .................... 127

    1.    Family Educational Rights and Privacy Act of 1974 ................................. 127

    2.    Section 552.114: Confidentiality of Student Records ................................. 130

R.       Section 552.115: Confidentiality of Birth and Death Records ............................ 131

S.       Section 552.116: Audit Working Papers .............................................................. 134

T.       Section 552.117: Confidentiality of Certain Addresses, Telephone Numbers, Social Security Numbers, and Personal Family Information .................................. 135

U.      Section 552.1175: Confidentiality of Certain Personal Identifying Information of Peace Officers and Other Officials Performing Sensitive Governmental Functions .............................................................. 142

V.      Section 552.1176: Confidentiality of Certain Information Maintained by State Bar .............................................................................. 146

W.    Section 552.11765: Confidentiality of Certain Information Maintained by State Licensing Authority ......................................................... 147

X.       Section 552.1177: Confidentiality of Certain Information Related to Humane Disposition of Animal ................................................................ 148

Y.       Section 552.118: Confidentiality of Official Prescription Program Information ......................................................................... 149

Z.       Section 552.119: Confidentiality of Certain Photographs of Peace Officers ......... 149

AA.   Section 552.120: Confidentiality of Certain Rare Books and Original Manuscripts ........................................................................ 150

BB.   Section 552.121: Confidentiality of Certain Documents Held for Historical Research ........................................................................... 151

CC.   Section 552.122: Test Items ................................................................................. 151

DD.   Section 552.123: Confidentiality of Name of Applicant for Chief Executive Officer of Institution of Higher Education ............................. 152

EE.   Section 552.1235: Confidentiality of Identity of Private Donor to Institution of Higher Education ................................................... 152

FF.   Section 552.124: Confidentiality of Records of Library or Library System ......... 153

GG.  Section 552.125: Certain Audits ........................................................................ 154

HH.  Section 552.126: Confidentiality of Name of Applicant for Superintendent of Public School District ................................................ 154

II.      Section 552.127: Confidentiality of Personal Information Relating to Participants in Neighborhood Crime Watch Organization ................................... 155

JJ.     Section 552.128: Confidentiality of Certain Information Submitted by Potential Vendor or Contractor ........................................................................... 155

KK.  Section 552.129: Confidentiality of Certain Motor Vehicle Inspection Information ........................................................................... 156

LL.   Section 552.130: Confidentiality of Certain Motor Vehicle Records ................... 156

MM. Section 552.131: Confidentiality of Certain Economic Development Information ........................................................................... 158

NN. Section 552.1315: Confidentiality of Certain Crime Victim Records .................. 160

OO. Section 552.132: Confidentiality of Crime Victim or Claimant Information ........ 160

PP. Section 552.1325: Crime Victim Impact Statement: Certain Information Confidential .............................................................................................. 161

QQ. Section 552.133: Confidentiality of Public Power Utility Competitive Matters ................................................................................................... 162

RR. Section 552.1331: Certain Government-Operated Utility Customer Information ............................................................................................. 166

SS. Section 552.134: Confidentiality of Certain Information Relating to Inmate of Department of Criminal Justice .......................................................... 166

TT. Section 552.1345: Confidentiality of Certain Information Relating to Civilly Committed Sexually Violent Predators ..................................................... 168

UU. Section 552.135: Confidentiality of Certain Information Held by School District ................................................................................................... 168

VV. Section 552.136: Confidentiality of Credit Card, Debit Card, Charge Card, and Access Device Numbers .................................................................... 169

WW. Section 552.137: Confidentiality of Certain E-mail Addresses ........................... 171

XX. Section 552.138: Confidentiality of Family Violence Shelter Center, Victims of Trafficking Shelter Center, and Sexual Assault Program Information ............................................................................................. 172

YY. Section 552.139: Confidentiality of Government Information Related to Security or Infrastructure Issues for Computers ......................................... 175

ZZ. Section 552.140: Confidentiality of Military Discharge Records ......................... 176

AAA. Section 552.141: Confidentiality of Information in Application for Marriage License .................................................................................................. 177

BBB. Section 552.142: Confidentiality of Records Subject to Order of Nondisclosure ......................................................................................... 178

CCC. Section 552.1425: Civil Penalty: Dissemination of Certain Criminal History Information ................................................................................. 178

DDD. Section 552.143: Confidentiality of Certain Investment Information ................... 179

EEE. Section 552.144: Working Papers and Electronic Communications of Administrative Law Judges at State Office of Administrative Hearings .............. 180

FFF. Section 552.145: Confidentiality of Texas No-Call List .................................... 180

GGG. Section 552.146: Certain Communications with Assistant or Employee of Legislative Budget Board ....................................................................... 180

HHH. Section 552.147: Social Security Numbers .................................................... 181

III. Section 552.148: Confidentiality of Certain Personal Information Maintained by Municipality Pertaining to a Minor .................................... 182

JJJ. Section 552.149: Confidentiality of Records of Comptroller or Appraisal District Received from Private Entity ....................................................... 182

KKK. Section 552.150: Confidentiality of Information That Could Compromise Safety of Officer or Employee of Hospital District .................................... 184

LLL. Section 552.151: Confidentiality of Information Regarding Select Agents ........... 185

MMM. Section 552.152: Confidentiality of Information Concerning Public Employee or Officer Personal Safety ....................................................... 185

NNN. Section 552.153: Proprietary Records and Trade Secrets Involved in Certain Partnerships ............................................................................ 186

OOO. Section 552.154: Name of Applicant for Executive Director, Chief Investment Officer, or Chief Audit Executive of Teacher Retirement System of Texas ..................................................................................187

PPP. Section 552.155: Confidentiality of Certain Property Tax Appraisal Photographs ...........................................................................................187

QQQ. Section 552.156: Confidentiality of Continuity of Operations Plan......................188

RRR. Section 552.158: Confidentiality of Personal Information Regarding Applicant for Appointment by Governor ......................................................188

SSS. Section 552.159: Confidentiality of Certain Work Schedules...............................189

TTT. Section 552.160: Confidentiality of Personal Information of Applicant for Disaster Recovery Funds ...........................................................................189

UUU. Section 552.161: Certain Personal Information Obtained by Flood Control District ...........................................................................................190

VVV. Section 552.162: Confidentiality of Certain Information Provided by Out-of-State Health Care Provider.....................................................................190

WWW. Section 552.163: Confidentiality of Certain Attorney General Settlement Negotiations..............................................................................................190

**PART THREE: TEXT OF THE TEXAS PUBLIC INFORMATION ACT**....................................**192**

**PART FOUR: RULES PROMULGATED BY THE ATTORNEY GENERAL** ...........................................**304**

**PART FIVE: RULES OF JUDICIAL ADMINISTRATION** ................................................**330**

**PART SIX: PUBLIC INFORMATION ACT DEADLINES FOR GOVERNMENTAL BODIES**............**339**

**PART SEVEN: NOTICE STATEMENT TO PERSONS WHOSE PROPRIETARY INFORMATION IS REQUESTED** ................................................................**341**

**PART EIGHT: TEXAS GOVERNMENT CODE SECTION 552.024 PUBLIC ACCESS OPTION FORM** ..............................................................**344**

**PART NINE: TEXAS GOVERNMENT CODE SECTION 552.138 PUBLIC ACCESS NOTICE FORM** ..............................................................................**345**

# A PREFACE TO THE PUBLIC INFORMATION HANDBOOK

**The Act**. The Texas Public Information Act (the "Public Information Act" or the "Act") gives the public the right to request access to government information. Below is a description of the basic procedures, rights and responsibilities under the Act.

**Making a Request**. The Act is triggered when a person submits a written request to a governmental body. The request must ask for records or information already in existence. The Act does not require a governmental body to create new information, to do legal research, or to answer questions. In preparing a request, a person may want to ask the governmental body what information is available.

**Charges to the Requestor**. A person may ask to view the information, get copies of the information, or both. If a request is for copies of information, the governmental body may charge for the copies. If a request is only for an opportunity to inspect information, then usually the governmental body may not impose a charge on the requestor. However, under certain limited circumstances a governmental body may impose a charge for access to information. All charges imposed by a governmental body for copies or for access to information must comply with the rules prescribed by the Office of the Attorney General ("OAG"), unless another statute authorizes a governmental body to set its own charges.

**Exceptions to the Act**. Although the Act makes most government information available to the public, some exceptions exist. If an exception might apply and the governmental body wishes to withhold the information, the governmental body generally must, within ten business days of receiving the open records request, refer the matter to the OAG for a ruling on whether an exception applies. If the OAG rules that an exception applies, the governmental body will not release the information. If a governmental body improperly fails to release information, the Act authorizes the requestor or the OAG to file a civil lawsuit to compel the governmental body to release the information.

**Questions or Complaints**. To reach the OAG's Open Government Hotline, call toll-free (877) 673-6839 (877-OPEN TEX). Hotline staff can answer questions about the proper procedures for using and complying with the Act and can assist both governmental bodies and people requesting information from a governmental body. Hotline staff also review written complaints about alleged violations of the Act. If a complaint relates to charges, contact the OAG's Cost Hotline toll-free at (888) 672-6787 (888-ORCOSTS) or forward a written complaint. Certain violations of the Act may involve possible criminal penalties. Those violations must be reported to the appropriate county attorney or criminal district attorney.

**Federal Agencies**. The Act does not apply to the federal government or to any of its departments or agencies. If you are seeking information from the federal government, the appropriate law is the federal Freedom of Information Act ("FOIA"). FOIA's rules and procedures are different from those of the Public Information Act.

**Rights of Requestors**

All people who request public information have the right to:

- Receive treatment equal to all other requestors
- Receive a statement of estimated charges in advance
- Choose whether to inspect the requested information, receive a copy of the information, or both
- Be notified when the governmental body asks the OAG for a ruling on whether the information may or must be withheld
- Be copied on the governmental body's written comments to the OAG stating the reason why the stated exceptions apply
- Lodge a complaint with the OAG regarding any improper charges for responding to a public information request
- Lodge a complaint with the OAG or the county attorney or criminal district attorney, as appropriate, regarding any alleged violation of the Act

**Responsibilities of Requestors**

All people who request public information have the responsibility to:

- Submit a written request according to a governmental body's reasonable procedures
- Include enough description and detail of the requested information so the governmental body can accurately identify and locate the requested items
- Cooperate with the governmental body's reasonable requests to clarify the type or amount of information requested
- Respond promptly in writing to all written communications from the governmental body (including any written estimate of charges)
- Make a timely payment for all valid charges
- Keep all appointments for inspection of records or for pick-up of copies

**Rights of Governmental Bodies**

All governmental bodies responding to information requests have the right to:

- Establish reasonable procedures for inspecting or copying information
- Request and receive clarification of vague or overly broad requests
- Request an OAG ruling regarding whether any information may or must be withheld
- Receive timely payment for all copy charges or other charges
- Obtain payment of overdue balances exceeding $100 or obtain a security deposit before processing additional requests from the same requestor
- Request a bond, prepayment or deposit if estimated costs exceed $100 (or, if the governmental body has fewer than 16 employees, $50)

**Responsibilities of Governmental Bodies**

All governmental bodies responding to information requests have the responsibility to:

- Treat all requestors equally
- Complete open records training as required by law
- Be informed of open records laws and educate employees on the requirements of those laws
- Inform the requestor of cost estimates and any changes in the estimates
- Confirm the requestor agrees to pay the costs before incurring the costs
- Provide requested information promptly
- Inform the requestor if the information will not be provided within ten business days and give an estimated date on which it will be provided
- Cooperate with the requestor to schedule reasonable times for inspecting or copying information
- Follow attorney general rules on charges; do not overcharge on any items; do not bill for items that must be provided without charge
- Inform third parties if their proprietary information is being requested from the governmental body
- Inform the requestor when the OAG has been asked to rule on whether information may or must be withheld
- Copy the requestor on written comments submitted to the OAG stating the reasons why the stated exceptions apply
- Comply with any OAG ruling on whether an exception applies or file suit against the OAG within 30 days
- Respond in writing to all written communications from the OAG regarding complaints about violations of the Act

This *Handbook* is available on the OAG's website at www.texasattorneygeneral.gov/open-government/office-attorney-general-and-public-information-act. The website also provides access to the following:

- Attorney General Opinions dating from 1939 through the present;
- all formal Open Records Decisions (ORDs); and
- most informal Open Records letter rulings (ORLs) issued since January 1989.

Additional tools found on the site include the *Open Meetings Handbook*, the text of the Public Information and Open Meetings Acts, and other valuable publications and resources for governmental bodies and citizens.

The following is a list of telephone numbers that may be helpful to those needing answers to open government questions.

| | | |
|---|---|---|
| Open Government Hotline | TOLL-FREE | (877) OPEN TEX |
| *for questions regarding the Act and* | or | (512) 478-6736 |
| *the Texas Open Meetings Act* | | |
| | | |
| Cost Hotline | TOLL-FREE | (888) OR COSTS |
| *for questions regarding charges under the Act* | or | (512) 475-2497 |
| | | |
| Freedom of Information Foundation | | (800) 580-6651 |
| *for questions regarding FOIA* | | |
| | | |
| State Library and Archives Commission | | (512) 463-7610 |
| Records Management Assistance | | |
| *for records retention questions* | | |
| | | |
| U.S. Department of Education | | (800) 872-5327 |
| Family Policy Compliance Office | | |
| *for questions regarding FERPA and education records* | | |
| | | |
| U.S. Department of Health and Human Services | | (800) 368-1019 |
| Office for Civil Rights | | |
| *for questions regarding the Health Insurance Portability and* | | |
| *Accountability Act of 1996 (HIPAA) and protected health information* | | |

**Note on Terminology**

In previous publications and rulings, the OAG has referred to chapter 552 of the Government Code as the "Open Records Act." The OAG, in conformity with the statute, has adopted the term "Public Information Act" to refer to the provisions of chapter 552. However, the OAG will continue, in this *Handbook* and elsewhere, to use the term "open records" in other contexts, such as "open records request" and "open records decision."

The ★ symbol is used throughout the *Handbook* to indicate sections that discuss significant changes in the law that have occurred since publication of the 2022 *Handbook*.

# PART ONE: HOW THE PUBLIC INFORMATION ACT WORKS

## I. OVERVIEW

### A. Historical Background

The Texas Public Information Act (the "Public Information Act" or the "Act") was adopted in 1973 by the reform-minded 63rd Legislature.[1] The Sharpstown scandal, which occurred in 1969 and came to light in 1971, provided the motivation for several enactments opening up government to the people.[2]

The Act was initially codified as V.T.C.S. article 6252-17a, which was repealed in 1993[3] and replaced by the Public Information Act now codified in the Texas Government Code at chapter 552.[4] The codification of the Act was a nonsubstantive revision.[5]

### B. Policy; Construction

The preamble of the Public Information Act is codified at section 552.001 of the Government Code. It declares the basis for the policy of open government expressed in the Public Information Act. It finds that basis in "the American constitutional form of representative government" and "the principle that government is the servant and not the master of the people." It further explains this principle in terms of the need for an informed citizenry:

> **The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people**

---

[1]  Act of May 19, 1973, 63rd Leg., R.S., ch. 424, 1973 Tex. Gen. Laws 1112.

[2]  *See generally Mutscher v. State*, 514 S.W.2d 905 (Tex. Crim. App. 1974) (summarizing events of Sharpstown scandal); *see also* "Sharpstown Stock-Fraud Scandal," *Handbook of Texas Online*, published by the Texas State Historical Association, at http://www.tshaonline.org/handbook/entries/sharpstown-stock-fraud-scandal.

[3]  Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 46, 1993 Tex. Gen. Laws 583, 986.

[4]  Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 594-607.

[5]  Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 47, 1993 Tex. Gen. Laws 583, 986.

**insist on remaining informed so that they may retain control over the instruments they have created.**

The purpose of the Public Information Act is to maintain the people's control "over the instruments they have created." The Public Information Act requires the attorney general to construe the Act liberally in favor of open government.[6]

## C.     Attorney General to Maintain Uniformity in Application, Operation and Interpretation of the Act

Section 552.011 of the Government Code authorizes the attorney general to prepare, distribute and publish materials, including detailed and comprehensive written decisions and opinions, in order to maintain uniformity in the application, operation and interpretation of the Act.[7]

## D.     Section 552.021

Section 552.021 of the Government Code is the starting point for understanding the operation of the Public Information Act. It provides as follows:

> **Public information is available to the public at a minimum during the normal business hours of the governmental body.**

This provision tells us information in the possession of a governmental body is generally available to the public. Section 552.002(a) of the Government Code defines "public information" as:

> **[I]nformation that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business:**
>
> **(1) by a governmental body;**
>
> **(2) for a governmental body and the governmental body:**
>
> > **(A) owns the information;**
> >
> > **(B) has a right of access to the information; or**
> >
> > **(C) spends or contributes public money for the purpose of writing, producing, collecting, assembling, or maintaining the information; or**
>
> **(3) by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body.**

---

6    Gov't Code § 552.001(b); *see A & T Consultants v. Sharp*, 904 S.W.2d 668, 675 (Tex. 1995); *Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 118 (Tex. App.—Austin 2003, no pet.); *Thomas v. Cornyn*, 71 S.W.3d 473, 480 (Tex. App.—Austin 2002, no pet.).

7    Gov't Code § 552.011.

If the governmental body wishes to withhold information from a member of the public, it must show that the requested information is within at least one of the exceptions to required public disclosure.[8] Subchapter C of the Act, sections 552.101 through 552.163, lists the specific exceptions to required public disclosure; these exceptions are discussed in Part Two of this *Handbook*.

## E.     Open Records Training

The Act applies to every governmental body in Texas, yet prior to 2006 there was no uniform requirement or mechanism for public officials to receive training in how to comply with the law. The 79th Legislature enacted section 552.012 of the Government Code, which mandates public officials to receive training in the requirements of the Public Information Act. The 88th Legislature amended section 552.012, which provides:

(a) **This section applies to an elected or appointed public official who is:**

    (1) **a member of a multimember governmental body;**

    (2) **the governing officer of a governmental body that is headed by a single officer rather than by a multimember governing body; or**

    (3) **the officer for public information of a governmental body, without regard to whether the officer is elected or appointed to a specific term.**

(b) **Each public official shall complete a course of training of not less than one and not more than two hours regarding the responsibilities of the governmental body with which the official serves and its officers and employees under this chapter not later than the 90th day after the date the public official:**

    (1) **takes the oath of office, if the person is required to take an oath of office to assume the person's duties as a public official; or**

    (2) **otherwise assumes the person's duties as a public official, if the person is not required to take an oath of office to assume the person's duties.**

(b-1) **The attorney general may require each public official of a governmental body to complete the course of training if the attorney general determines that the governmental body has failed to comply with a requirement of this chapter. The attorney general must notify each public official in writing of the attorney general's determination and the requirement to complete the training. A public official who receives notice from the attorney general under this subsection must complete the training not later than the 60th day after the date the official receives the notice.**



(c) **A public official may designate a public information coordinator to satisfy the training requirements of this section for the public official if the public information**

---

[8]     Open Records Decision No. 363 (1983) (information is public unless it falls within specific exception).

coordinator is primarily responsible for administering the responsibilities of the public official or governmental body under this chapter. Designation of a public information coordinator under this subsection does not relieve a public official from the duty to comply with any other requirement of this chapter that applies to the public official. The designated public information coordinator shall complete the training course regarding the responsibilities of the governmental body with which the coordinator serves and of its officers and employees under this chapter not later than the 90th day after the date the coordinator assumes the person's duties as coordinator.

(d)   The attorney general shall ensure that the training is made available. The office of the attorney general may provide the training and may also approve any acceptable course of training offered by a governmental body or other entity. The attorney general shall ensure that at least one course of training approved or provided by the attorney general is available on videotape or a functionally similar and widely available medium at no cost. The training must include instruction in:

   (1)   the general background of the legal requirements for open records and public information;

   (2)   the applicability of this chapter to governmental bodies;

   (3)   procedures and requirements regarding complying with a request for information under this chapter;

   (4)   the role of the attorney general under this chapter; and

   (5)   penalties and other consequences for failure to comply with this chapter.

(e)   The office of the attorney general or other entity providing the training shall provide a certificate of course completion to persons who complete the training required by this section. A governmental body shall maintain and make available for public inspection the record of its public officials' or, if applicable, the public information coordinator's completion of the training.

(f)   Completing the required training as a public official of the governmental body satisfies the requirements of this section with regard to the public official's service on a committee or subcommittee of the governmental body and the public official's ex officio service on any other governmental body.

(g)   The training required by this section may be used to satisfy any corresponding training requirements concerning this chapter or open records required by law for a public official or public information coordinator. The attorney general shall attempt to coordinate the training required by this section with training required by other law to the extent practicable.

(h)   A certificate of course completion is admissible as evidence in a criminal prosecution under this chapter. However, evidence that a defendant completed a course of

**training offered under this section is not prima facie evidence that the defendant knowingly violated this chapter.**

**Minimum Training Requirement:**  The law requires elected and appointed officials to attend, at a minimum, a one-hour approved educational course on the Public Information Act.  This is a one-time-only training requirement; no refresher courses are required.

**Compliance Deadlines:**  Officials who are elected or appointed have 90 days within which to complete the required training.

**Who Must Obtain the Training:**  The requirement applies to all governmental bodies subject to the Act.  It requires the elected and appointed officials from governmental bodies subject to these laws to complete a training course on the Act.  Alternatively, public officials may designate a public information coordinator to attend training in their place so long as the designee is the person primarily responsible for the processing of public information requests for the governmental body. It is presumed most governmental bodies already have a designated public information coordinator; therefore, officials may choose to opt out of the training provided they designate their public information coordinator to receive the training in their place.  However, officials are encouraged to complete the required training, and designation of a public information coordinator to complete training on their behalf does not relieve public officials of the responsibility to comply with the law.

**May Not Opt Out of Training if Required by Other Law:**  Open government training is already required for the top officials of many state agencies under the Sunset Laws.  The opt-out provisions of the training requirement would not apply to officials who are already required by another law to receive open government training.

**Judicial Officials and Employees:**  Judicial officials and employees do not need to attend training regarding the Act because public access to information maintained by the judiciary is governed by Rule 12 of the Judicial Administration Rules of the Texas Supreme Court and by other applicable laws and rules.[9]

**Training Curriculum:**  The basic topics to be covered by the training include:

1. the general background of the legal requirements for open records and public information;
2. the applicability of the Act to governmental bodies;
3. procedures and requirements regarding complying with open records requests;
4. the role of the attorney general under the Act; and
5. penalties and other consequences for failure to comply with the Act.

**Training Options:**  The law contains provisions to ensure that training is widely available and free training courses are available so all officials in the state can have easy access to the training. The OAG provides a training video and live training courses.

---

[9]    Gov't Code § 552.0035.

**Governmental Entities May Provide Training:**  Governmental entities that already provide their own internal training on the Act may continue to do so provided the curriculum meets the minimum requirements set forth by section 552.012 and is reviewed and approved by the OAG.[10]

**Other Entities May Provide Training:**  Officials may obtain the required training from any entity that offers a training course that has been reviewed and approved by the OAG.[11]  This encompasses courses by various interest groups, professional organizations, and continuing education providers.

**Evidence of Course Completion:**  The trainer is required to provide the participant with a certificate of course completion.  The official or public information coordinator's governmental body is then required to maintain the certificate and make it available for public inspection.  The OAG does not maintain certificates for governmental bodies.

**No Penalty for Failure to Receive Training:**  The purpose of the law is to foster open government by making open government education a recognized obligation of public service.  The purpose is not to create a new civil or criminal violation, so there are no specific penalties for failure to comply with the mandatory training requirement.  Despite the lack of a penalty provision, officials should be cautioned that a deliberate failure to attend training may result in an increased risk of criminal conviction should they be accused of violating the Act.

**Training Requirements Will Be Harmonized:**  To avoid imposing duplicate training requirements on public officials, the attorney general is required to harmonize the training required by section 552.012 with any other statutory training requirements that may be imposed on public officials.

Please visit the attorney general's website at http://www.texasattorneygeneral.gov for more information on section 552.012.

---

[10]    Gov't Code § 552.012(d).

[11]    Gov't Code § 552.012(d).

## II. ENTITIES SUBJECT TO THE PUBLIC INFORMATION ACT

The Public Information Act applies to information of every "governmental body." "Governmental body" is defined in section 552.003(1)(A) of the Government Code to mean:

(i) **a board, commission, department, committee, institution, agency, or office that is within or is created by the executive or legislative branch of state government and that is directed by one or more elected or appointed members;**

(ii) **a county commissioners court in the state;**

(iii) **a municipal governing body in the state;**

(iv) **a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality;**

(v) **a school district board of trustees;**

(vi) **a county board of school trustees;**

(vii) **a county board of education;**

(viii) **the governing board of a special district;**

(ix) **the governing body of a nonprofit corporation organized under Chapter 67, Water Code, that provides a water supply or wastewater service, or both, and is exempt from ad valorem taxation under Section 11.30, Tax Code;**

(x) **a local workforce development board created under Section 2308.253;**

(xi) **a nonprofit corporation that is eligible to receive funds under the federal community services block grant program and that is authorized by this state to serve a geographic area of the state;**

(xii) **a confinement facility operated under a contract with any division of the Texas Department of Criminal Justice;**

(xiii) **a civil commitment housing facility owned, leased, or operated by a vendor under contract with the state as provided by Chapter 841, Health and Safety Code;**

(xiv) **an entity that receives public funds in the current or preceding state fiscal year to manage the daily operations or restoration of the Alamo, or an entity that oversees such an entity; and**

(xv) **the part, section, or portion of an organization, corporation, commission, committee, institution, or agency that spends or that is supported in whole or in part by public funds[.]**

The judiciary is expressly excluded from the definition of "governmental body."[12] The required public release of records of the judiciary is governed by Rule 12 of the Texas Rules of Judicial Administration.[13] In addition to the judiciary, specified economic development entities are also expressly excluded from the definition of "governmental body" pursuant to section 552.003(1)(B)(ii).[14]

An entity that does not believe it is a "governmental body" within this definition may make a timely request for a decision from the attorney general under Subchapter G of the Act if there has been no previous determination regarding this issue and it wishes to withhold the requested information.[15]

## A.      State and Local Governmental Bodies

The definition of the term "governmental body" encompasses all public entities in the executive and legislative branches of government at the state and local levels. Although a sheriff's office, for example, is not within the scope of section 552.003(1)(A)(i)–(xiv), it is supported by public funds and is therefore a "governmental body" within section 552.003(1)(A)(xv).[16]

## B.      Private Entities

### 1.      Private Entities Supported by Public Funds

An entity that is supported in whole or in part by public funds or that spends public funds is a governmental body under section 552.003(1)(A)(xv) of the Government Code. Public funds are "funds of the state or of a governmental subdivision of the state."[17] The Texas Supreme Court has defined "'supported in whole or part by public funds' to include only those private entities or their sub-parts sustained, at least in part, by public funds, meaning they could not perform the same or similar services without the public funds."[18] Thus, section 552.003(1)(A)(xv) encompasses only those private entities that are dependent on public funds to operate as a going concern,[19] and only those entities acting as the functional equivalent of the government.[20]

---

[12]   Gov't Code § 552.003(1)(B)(i).

[13]   Rule 12 of the Texas Rules of Judicial Administration is located in Part Five of this *Handbook*.

[14]   Gov't Code § 552.003(1)(B)(ii).

[15]   *See Blankenship v. Brazos Higher Educ. Auth., Inc.*, 975 S.W.2d 353, 362 (Tex. App.—Waco 1998, pet. denied) (entity does not admit it is governmental body by virtue of request for opinion from attorney general).

[16]   Open Records Decision No. 78 (1975) (discussing statutory predecessor to Gov't Code § 552.003(1)(A)(xv)); *see Permian Report v. Lacy*, 817 S.W.2d 175 (Tex. App.—El Paso 1991, writ denied) (suggesting county clerk's office is subject to Act as agency supported by public funds).

[17]   Gov't Code § 552.003(5).

[18]   *Greater Houston P'ship v. Paxton*, 468 S.W. 3d 51, 63 (Tex. 2015).

[19]   *Greater Houston P'ship v. Paxton*, 468 S.W. 3d 51, 61 (Tex. 2015).

[20]   *Greater Houston P'ship v. Paxton*, 468 S.W. 3d 51, 62 (Tex. 2015).

**2. Private Entities Deemed Governmental Bodies by Statute**

Section 51.212 of the Education Code provides:

> **(f) A campus police department of a private institution of higher education is a law enforcement agency and a governmental body for purposes of Chapter 552, Government Code, only with respect to information relating solely to law enforcement activities.[21]**

## C. Certain Property Owners' Associations Subject to Act

Section 552.0036 provides:

> **A property owners' association is subject to [the Act] in the same manner as a governmental body:**
>
> **(1) if:**
>
> > **(A) membership in the property owners' association is mandatory for owners or for a defined class of owners of private real property in a defined geographic area in a county with a population of 2.8 million or more or in a county adjacent to a county with a population of 2.8 million or more;**
> >
> > **(B) the property owners' association has the power to make mandatory special assessments for capital improvements or mandatory regular assessments; and**
> >
> > **(C) the amount of the mandatory special or regular assessments is or has ever been based in whole or in part on the value at which the state or a local governmental body assesses the property for purposes of ad valorem taxation under Section 20, Article VIII, Texas Constitution; or**
>
> **(2) if the property owners' association:**
>
> > **(A) provides maintenance, preservation, and architectural control of residential and commercial property within a defined geographic area in a county with a population of 2.8 million or more or in a county adjacent to a county with a population of 2.8 million or more; and**
> >
> > **(B) is a corporation that:**
> >
> > > **(i) is governed by a board of trustees who may employ a general manager to execute the association's bylaws and administer the business of the corporation;**
> > >
> > > **(ii) does not require membership in the corporation by the owners of the property within the defined area; and**

---

[21] Educ. Code § 51.212(f).

**(iii) was incorporated before January 1, 2006.**

The only county in Texas with a population of 2.8 million or more is Harris County. The counties adjoining Harris County are Waller, Fort Bend, Brazoria, Galveston, Chambers, Liberty, and Montgomery. Thus, property owners' associations located in those counties and otherwise within the parameters of section 552.0036 are considered to be governmental bodies for purposes of the Act.

## D.    A Governmental Body Holding Records for Another Governmental Body

One governmental body may hold information on behalf of another governmental body. For example, state agencies may transfer noncurrent records to the Records Management Division of the Texas State Library and Archives Commission for storage.[22] State agency records held by the state library under the state records management program should be requested from the originating state agency, not the state library. The governmental body by or for which information is collected, assembled, or maintained pursuant to section 552.002(a) retains ultimate responsibility for disclosing or withholding information in response to a request under the Public Information Act, even though another governmental body has physical custody of it.[23]

## E.    Private Entities Holding Records for Governmental Bodies

On occasion, when a governmental body has contracted with a private consultant to prepare information for the governmental body, the consultant keeps the report and data in the consultant's office, and the governmental body reviews it there. Although the information is not in the physical custody of the governmental body, the information is in the constructive custody of the governmental body and is therefore subject to the Act.[24] The private consultant is acting as the governmental body's agent in holding the records.

The definition of "public information" in section 552.002 of the Government Code reads as follows:

(a) **information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business:**

(1) **by a governmental body;**

(2) **for a governmental body and the governmental body:**

(A) **owns the information;**

(B) **has a right of access to the information; or**

---

[22]    Open Records Decision No. 617 (1993); *see* Open Records Decision No. 674 (2001).

[23]    Open Records Decision No. 576 (1990).

[24]    Open Records Decision No. 462 (1987).

**(C) spends or contributes public money for the purpose of writing, producing, collecting, assembling, or maintaining the information; or**

**(3) by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body.**

**(a-1) Information is in connection with the transaction of official business if the information is created by, transmitted to, received by, or maintained by an officer or employee of the governmental body in the officer's or employee's official capacity, or a person or entity performing official business or a governmental function on behalf of a governmental body, and pertains to official business of the governmental body.**

The following decisions recognize that various records held for governmental bodies by private entities are subject to the Act:

Open Records Decision No. 585 (1991) — the city manager may not contract away the right to inspect the list of applicants maintained by a private consultant for the city;

Open Records Decision No. 499 (1988) — the records held by a private attorney employed by a municipality that relate to legal services performed at the request of the municipality;

Open Records Decision No. 462 (1987) — the records regarding the investigation of a university football program prepared by a law firm on behalf of the university and kept at the law firm's office; and

Open Records Decision No. 437 (1986) — the records prepared by bond underwriters and attorneys for a utility district and kept in an attorney's office.[25]

Section 2252.907 of the Government Code contains specific requirements for a contract between a state governmental entity and a nongovernmental vendor involving the exchange or creation of public information.

Additionally, the 86th Legislature added subchapter J of the Act, sections 552.371 through 552.376. These sections are intended to make government contracting information public and require its disclosure. Subchapter J details the requirements of certain private entities that contract with a governmental body to provide contracting information to the governmental body in response to a request for information. Section 552.371 specifically applies to information related to contracts involving the expenditure of at least $1 million in public funds for the purchase of goods or services by the governmental body or that results in the expenditure of at least $1 million in public funds for the purchase of goods or services by the governmental body in a fiscal year of the governmental

---

[25] *See also Baytown Sun v. City of Mont Belvieu*, 145 S.W.3d 268 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (municipality had right of access to employee salary information of company it contracted with to manage recreational complex); Open Records Decision No. 585 (1991) (overruling Open Records Decision Nos. 499 (1988), 462 (1987), 437 (1986) to extent they suggest governmental body can waive its right of access to information gathered on its behalf).

body.[26] This section requires a governmental body that receives a request for contracting information pertaining to such a contract to obtain the responsive information from the contracting entity and sets out the procedural requirements for obtaining the information.[27] Further, section 552.372 establishes records retention and preservation requirements for the contracting entities.[28] Section 552.374 authorizes a governmental body to terminate a contract if a contracting entity does not provide contracting information pursuant to the requirements laid out in subchapter J.[29]

## F.    Judiciary Excluded from the Public Information Act

Section 552.003(1)(B)(i) of the Government Code excludes the judiciary from the Public Information Act. Section 552.0035 of the Government Code specifically provides that access to judicial records is governed by rules adopted by the Supreme Court of Texas or by other applicable laws and rules.[30] (*See* Part Five of this *Handbook* for Rule 12 of the Texas Rules of Judicial Administration.) This provision, however, expressly provides that it does not address whether particular records are judicial records.

The purposes and limits of section 552.003(1)(B)(i) were discussed in *Benavides v. Lee*.[31] At issue in that case were applications for the position of chief juvenile probation officer submitted to the Webb County Juvenile Board. The court determined that the board was not "an extension of the judiciary" for purposes of the Public Information Act, even though the board consisted of members of the judiciary and the county judge. The court stated as follows:

> The Board is not a court. A separate entity, the juvenile court, not the Board, exists to adjudicate matters concerning juveniles. Nor is the Board directly controlled or supervised by a court.
>
> Moreover, simply because the legislature chose judges as Board members, art. 5139JJJ, § 1, does not in itself indicate they perform on the Board as members of the judiciary. . . . [C]lassification of the Board as judicial or not depends on the functions of the Board, not on members' service elsewhere in government.[32]

The decisions made by the board were administrative, not judicial, and the selection of a probation officer was part of the board's administration of the juvenile probation system, not a judicial act by a judicial body. The court continued:

> The judiciary exception, § 2(1)(G) [now section 552.003(1)(B)(i) of the Government Code], is important to safeguard judicial proceedings and maintain the independence of the judicial

---

[26]    Gov't Code § 552.371(a).

[27]    Gov't Code § 552.371(b)-(e).

[28]    Gov't Code § 552.372(a)-(c).

[29]    Gov't Code §§ 552.373, .374.

[30]    Gov't Code § 552.0035; *see* R. Jud. Admin. 12; *see also, e.g.*, *Ashpole v. Millard*, 778 S.W.2d 169, 170 (Tex. App.—Houston [1st Dist.] 1989, no writ) (public has right to inspect and copy judicial records subject to court's inherent power to control public access to its records); Attorney General Opinion DM-166 (1992); Open Records Decision No. 25 (1974).

[31]    *Benavides v. Lee*, 665 S.W.2d 151 (Tex. App.—San Antonio 1983, no writ).

[32]    *Benavides v. Lee*, 665 S.W.2d 151, 151-52 (Tex. App.—San Antonio 1983, no writ) (footnote omitted).

branch of government, preserving statutory and case law already governing access to judicial records. But it must not be extended to every governmental entity having any connection with the judiciary.[33]

The Texas Supreme Court also addressed the judiciary exception in *Holmes v. Morales*.[34] In that case, the court found that "judicial power" as provided for in article V, section 1, of the Texas Constitution "embraces powers to hear facts, to decide issues of fact made by pleadings, to decide questions of law involved, to render and enter judgment on facts in accordance with law as determined by the court, and to execute judgment or sentence."[35] Because the court found the Harris County District Attorney did not perform these functions, it held the district attorney's office is not a member of the judiciary, but is a governmental body within the meaning of the Public Information Act.

In Open Records Decision No. 657 (1997), the attorney general concluded telephone billing records of the Supreme Court did not relate to the exercise of judicial powers but rather to routine administration and were not "records of the judiciary" for purposes of the Public Information Act. The Texas Supreme Court subsequently overruled Open Records Decision No. 657 (1997), finding the court was not a governmental body under the Act and its records were therefore not subject to the Act.[36]

The State Bar of Texas is a "public corporation and an administrative agency of the judicial department of government."[37] Section 81.033 of the Government Code provides that, with certain exceptions, all records of the State Bar are subject to the Public Information Act.[38]

The following decisions address the judiciary exclusion:

> Open Records Decision No. 671 (2001) — the information contained in the weekly index reports produced by the Ellis County District Clerk's office is derived from a case disposition database that is "collected, assembled, or maintained . . . for the judiciary." Gov't Code § 552.0035(a). Therefore, the information contained in weekly index reports is not public information under the Act;

> Open Records Decision No. 646 (1996) — a community supervision and corrections department is a governmental body and is not part of the judiciary for purposes of the Public Information Act. Administrative records such as personnel files and other records reflecting the day-to-day management of a community supervision and corrections department are

---

[33] *Benavides v. Lee*, 665 S.W.2d 151, 152 (Tex. App.—San Antonio 1983, no writ).

[34] *Holmes v. Morales*, 924 S.W.2d 920 (Tex. 1996).

[35] *Holmes v. Morales*, 924 S.W.2d 920, 923 (Tex. 1996).

[36] *Order and Opinion Denying Request Under Open Records Act*, No. 97-9141, 1997 WL 583726 (Tex. August 21, 1997) (not reported in S.W.2d).

[37] Gov't Code § 81.011(a); *see* Open Records Decision No. 47 (1974) (records of state bar grievance committee were confidential pursuant to Texas Supreme Court rule; not deciding whether state bar was part of judiciary).

[38] *Compare* Open Records Decision No. 604 (1992) (considering request for list of registrants for Professional Development Programs) *with In re Nolo Press/Folk Law, Inc.*, 991 S.W.2d 768 (Tex. 1999) (Unauthorized Practice of Law Committee of state bar is judicial agency and therefore subject to Rule 12 of Texas Rules of Judicial Administration).

subject to the Public Information Act.[39] On the other hand, specific records regarding individuals on probation and subject to the direct supervision of a court that are held by a community supervision and corrections department are not subject to the Public Information Act because such records are held on behalf of the judiciary;

Open Records Decision No. 610 (1992) — the books and records of an insurance company placed in receivership pursuant to article 21.28 of the Insurance Code are excluded from the Public Information Act as records of the judiciary;

Open Records Decision No. 572 (1990) — certain records of the Bexar County Personal Bond Program are within the judiciary exclusion;

Open Records Decision No. 513 (1988) — records held by a district attorney on behalf of a grand jury are in the grand jury's constructive possession and are not subject to the Public Information Act. However, records a district attorney collects, prepares, and submits to grand jury are not in the constructive possession of the grand jury when that information is held by the district attorney.

Open Records Decision No. 204 (1978) — information held by a county judge as a member of the county commissioners court is subject to the Public Information Act; and

Open Records Decision No. 25 (1974) — the records of a justice of the peace are not subject to the Public Information Act but may be inspected under statutory and common-law rights of access.

# III. INFORMATION SUBJECT TO THE PUBLIC INFORMATION ACT

## A. Public Information is Contained in Records of All Forms

Section 552.002(b) of the Government Code states the Public Information Act applies to recorded information in practically any medium, including: paper; film; a magnetic, optical, solid state or other device that can store an electronic signal; tape; Mylar; and any physical material on which information may be recorded, including linen, silk, and vellum.[40] Section 552.002(c) specifies that "[t]he general forms in which the media containing public information exist include a book, paper, letter, document, e-mail, Internet posting, text message, instant message, other electronic communication, printout, photograph, film, tape, microfiche, microfilm, photostat, sound recording, map, and drawing and a voice, data, or video representation held in computer memory."

---

[39] *But see* Gov't Code § 76.006(g) (document evaluating performance of officer of community supervision and corrections department who supervises defendants placed on community supervision is confidential).

[40] *See also* Open Records Decision Nos. 660 (1999) (Section 52(a) of article III of Texas Constitution does not prohibit Port of Corpus Christi Authority from releasing computer generated digital map), 492 (1988) (raw data collected by outside consultant, but accessed by comptroller through data link and stored on comptroller's computer system), 432 (1985) (photographic negatives), 413 (1984) (sketches), 364 (1983) (videotapes), 352 (1982) (computer tapes), 32 (1974) (tape recordings).

## B.     Information Held by a Temporary Custodian

The Public Information Act can also apply to information on a privately owned device of a current or former governmental body employee or official.  Section 552.203(4) of the Government Code requires each governmental body's officer for public information to make reasonable efforts to obtain public information from a temporary custodian.  Section 552.003(7) of the Government Code defines "temporary custodian" as a current or former governmental employee or official who maintains public information that has not been provided to a governmental body's officer for public information or the officer's agent.  Pursuant to section 552.203(4) of the Government Code, a governmental body's public information officer is required to obtain information from a temporary custodian if:

**(A)   the information has been requested from the governmental body;**

**(B)   the officer for public information is aware of facts sufficient to warrant a reasonable belief that the temporary custodian has possession, custody, or control of the information;**

**(C)   the officer for public information is unable to comply with the duties imposed by this chapter without obtaining the information from the temporary custodian; and**

**(D)   the temporary custodian has not provided the information to the officer for public information or the officer's agent.**

Section 552.233(a) states a current or former officer or employee of a governmental body does not have a personal or property right to public information created or received while acting in an official capacity.  Section 552.233(b) provides that a temporary custodian with possession, custody, or control of public information shall surrender the information to the governmental body no later than the 10th business day after the governmental body requests it from the temporary custodian.  Furthermore, pursuant to section 552.233(c), a temporary custodian's failure to surrender or return the information would be grounds for disciplinary action by the temporary custodian's employer or any other applicable penalties provided by the Act or other law.

## C.     Exclusion of Tangible Items

Despite the assumption in Open Records Decision No. 252 (1980) that the Public Information Act applies to physical evidence, the prevailing view is that tangible items such as a tool or a key are not "information" within the Act, even though they may be copied or analyzed to produce information.  In Open Records Decision No. 581 (1990), the attorney general dealt with a request for the source code, documentation, and computer program documentation standards of computer programs used by a state university.  The requested codes, documentation, and documentation standards contained security measures designed to prevent unauthorized access to student records. The attorney general noted the sole significance of the computer source code, documentation, and documentation standards was "as a tool for the storage, manipulation, and security of other information."[41]   While acknowledging the comprehensive scope of the term "information," the attorney general nevertheless determined the legislature could not have intended that the Public

---

[41]     Open Records Decision No. 581 at 6 (1990).

Information Act compromise the physical security of information management systems or other government property.[42] The attorney general concluded that information used solely as a tool to maintain, manipulate, or protect public property was not the kind of information made public by the statutory predecessor to section 552.021 of the Public Information Act.[43]

## D.    Exclusion of Protected Health Information

Section 552.002(d) of the Government Code specifically excludes protected health information, as defined by section 181.006 of the Health and Safety Code, from the requirements of the Act.[44] Section 181.006 of the Health and Safety Code defines protected health information as "any information that reflects that an individual received health care from [a] covered entity[.]"[45]

Furthermore, section 181.001(b)(2)(A) defines "covered entity" to include any person who:

> **(A) for commercial, financial, or professional gain, monetary fees, or dues, or on a cooperative, nonprofit, or pro bono basis, engages, in whole or in part, and with real or constructive knowledge, in the practice of assembling, collecting, analyzing, using, evaluating, storing, or transmitting protected health information. The term includes a business associate, health care payer, governmental unit, information or computer management entity, school, health researcher, health care facility, clinic, health care provider, or person who maintains an Internet site[.]**

Therefore, protected health information is not subject to disclosure under the Act.

## E.    Personal Notes and E-mail in Personal Accounts or Devices

A few early decisions of the attorney general found certain personal notes of public employees were not "information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business."[46] Thus, such personal notes were not considered subject to the Public Information Act.[47] Governmental bodies are advised to use caution in relying on early open records decisions that address "personal notes."

---

[42]    Open Records Decision No. 581 at 5-6 (1990) (drawing comparison to door key, whose sole significance as "information" is its utility as tool in matching internal mechanism of lock).

[43]    Open Records Decision No. 581 at 6 (1990) (overruling in part Open Records Decision No. 401 (1983), which had suggested implied exception to required public disclosure applied to requested computer programs); *see also* Attorney General Opinion DM-41 (1991) (formatting codes are not "information" subject to Act).

[44]    Gov't Code § 552.002(d).

[45]    Health & Safety Code § 181.006.

[46]    Open Records Decision No. 77 (1975) (quoting statutory predecessor to Gov't Code § 552.021).

[47]    *See* Open Records Decision No. 116 (1975) (portions of desk calendar kept by governor's aide comprising notes of private activities and aide's notes made solely for his own informational purposes are not public information); *see also* Open Records Decision No. 145 (1976) (handwritten notes on university president's calendar are not public information).

More recent decisions have concluded personal notes are not necessarily excluded from the definition of "public information" and may be subject to the Act.[48] The characterization of information as "public information" under the Act is not dependent on whether the requested records are in the possession of an individual, rather than a governmental body, or whether a governmental body has a particular policy or procedure that establishes a governmental body's access to the information.[49] If information was made, transmitted, maintained, or received in connection with a governmental body's official business, the mere fact that the governmental body does not possess the information does not take the information outside the scope of the Act.[50] In *Adkisson v. Paxton*, the court of appeals considered a request for correspondence related to a county commissioner's official capacity from his personal and county e-mail accounts. The court concluded the information in the commissioner's official-capacity e-mails is necessarily connected with the transaction of the county's official business, and the county owns the information regardless of whether the information is created or received in a personal e-mail account or an official county e-mail account. Thus, the court held the requested information is "public information" subject to the Act. This case construes a prior version section 552.002 of the Act, which the 83rd Legislature amended, along with section 552.003, in 2013.[51]

The amended definition of "public information" in section 552.002(a-2) now specifically includes:

> **any electronic communication created, transmitted, received, or maintained on any device if the communication is in connection with the transaction of official business.**

Section 552.002(a-1) further defines "information . . . in connection with the transaction of official business" as:

> **[I]nformation . . . created by, transmitted to, received by, or maintained by an officer or employee of the governmental body in the officer's or employee's official capacity, or a person or entity performing official business or a governmental function on behalf of a governmental body, and pertains to official business of the governmental body.**

Adopting the attorney general's long-standing interpretation, the definition of "public information" now takes into account the use of electronic devices and cellular phones by public employees and officials in the transaction of official business. The Act does not distinguish between personal or employer-issued devices, but rather focuses on the nature of the communication or document. If the information was created, transmitted, received, or maintained in connection with the

---

[48]   *See, e.g.*, Open Records Decision Nos. 635 (1995) (public official's or employee's appointment calendar, including personal entries, may be subject to Act), 626 (1994) (handwritten notes taken during oral interview by Texas Department of Public Safety promotion board members are subject to Act), 450 (1986) (handwritten notes taken by appraiser while observing teacher's classroom performance are subject to Act), 120 (1976) (faculty members' written evaluations of doctoral student's qualifying exam are subject to Act).

[49]   Open Records Decision No. 635 at 3-4 (1995) (information does not fall outside definition of "public information" in Act merely because individual member of governmental body possesses information rather than governmental body as whole); *see also* Open Records Decision No. 425 (1985) (information sent to individual school trustees' homes was public information because it related to official business of governmental body) (overruled on other grounds by Open Records Decision No. 439 (1986)).

[50]   *See* Open Records Decision No. 635 at 6-8 (1995) (information maintained on privately-owned medium and actually used in connection with transaction of official business would be subject to Act).

[51]   *Adkisson v. Paxton*, 459 S.W.3d 761 (Tex. App.—Austin 2015, no pet.).

transaction of "official business," meaning, "any matter over which a governmental body has any authority, administrative duties, or advisory duties[,]" the information constitutes public information subject to disclosure under the Act.[52]

There are no cases or formal decisions applying these amendments to section 552.002 or section 552.003.

## F.     Commercially Available Information

Section 552.027 provides:

> **(a)**   **A governmental body is not required under the Act to allow the inspection of or to provide a copy of information in a commercial book or publication purchased or acquired by the governmental body for research purposes if the book or publication is commercially available to the public.**

> **(b)**   **Although information in a book or publication may be made available to the public as a resource material, such as a library book, a governmental body is not required to make a copy of the information in response to a request for public information.**

> **(c)**   **A governmental body shall allow the inspection of information in a book or publication that is made part of, incorporated into, or referred to in a rule or policy of a governmental body.**

This section is designed to alleviate the burden of providing copies of commercially available books, publications, and resource materials maintained by governmental bodies, such as telephone directories, dictionaries, encyclopedias, statutes, and periodicals. Therefore, section 552.027 provides exemptions from the definition of "public information" under section 552.002 for commercially available research material. However, pursuant to subsection (c) of section 552.027, a governmental body must allow inspection of a publication that is made a part of, or referred to in, a rule or policy of the governmental body.

# IV.  PROCEDURES FOR ACCESS TO PUBLIC INFORMATION

## A.     Informing the Public of Basic Rights and Responsibilities Under the Act

Section 552.205 of the Government Code requires the officer for public information of a governmental body to display a sign, in the form required by the attorney general, that contains basic information about the rights of a requestor, the responsibilities of a governmental body, and the procedures for inspecting or obtaining a copy of public information under the Act.[53] The sign is to be displayed at one or more places in the administrative offices of the governmental body where it is plainly visible to members of the public requesting information and employees of the

---

[52]   Gov't Code § 552.003(2-a).

[53]   Gov't Code § 552.205.

governmental body whose duties involve receiving or responding to requests under the Act.[54] The sign's format as prescribed by the attorney general is available on the attorney general's website.

## B.     The Request for Public Information

A governmental body's duties under section 552.221(a) to produce information or under section 552.301(a) to request a ruling from the attorney general arise only after it receives a written request.[55] A governmental body that receives a verbal request for information may require the requestor to submit that request in writing. Sections 552.234 and 552.235 of the Government Code outline the proper methods to submit a request for public information. Section 552.234 reads:

(a) **A person may make a written request for public information under this chapter only by delivering the request by one of the following methods to the applicable officer for public information or a person designated by that officer:**

   (1) **United States mail;**

   (2) **electronic mail;**

   (3) **hand delivery; or**

   (4) **any other appropriate method approved by the governmental body, including:**

      (A) **facsimile transmission; and**

      (B) **electronic submission through the governmental body's Internet website.**

(b) **For the purpose of Subsection (a)(4), a governmental body is considered to have approved a method described by that subdivision only if the governmental body includes a statement that a request for public information may be made by that method on:**

   (1) **the sign required to be displayed by the governmental body under Section 552.205; or**

   (2) **the governmental body's internet website.**

(c) **A governmental body may designate one mailing address and one electronic mail address for receiving written requests for public information. The governmental body shall provide the designated mailing address and electronic mailing address to any person on request.**

(d) **A governmental body that posts the mailing address and electronic mail address designated by the governmental body under Subsection (c) on the governmental body's Internet website or that prints those addresses on the sign required to be displayed by**

---

[54]   Gov't Code § 552.205(a).

[55]   Open Records Decision No. 304 at 2 (1982).

> **the governmental body under Section 552.205 is not required to respond to a written request for public information unless the request is received:**
>
> **(1) at one of those addresses;**
>
> **(2) by hand delivery; or**
>
> **(3) by a method described by Subsection (a)(4) that has been approved by the governmental body.**

Requests for a state agency's records that are stored in the Texas State Library and Archives Commission's State and Local Records Management Division should be directed to the originating agency, rather than to the state library.[56]

Section 552.235 of the Government Code requires the attorney general to create a public information request form that provides a requestor the option of excluding information that the governmental body determines is confidential or is subject to an exception to disclosure.[57] This form can be found on the attorney general's website. A governmental body that chooses to use this form must post the form on its website if it maintains one.[58]

A governmental body must make a good faith effort to relate a request to information that it holds.[59] A governmental body may ask a requestor to clarify a request for information if the request is unclear.[60] Section 552.222(b) provides that if a large amount of information has been requested, the governmental body may discuss with the requestor how the scope of the request might be narrowed, but the governmental body may not inquire into the purpose for which information will be used.[61] Section 552.222 also provides that a request for information is considered withdrawn if the requestor does not respond in writing to a governmental body's written request for clarification or additional information within 61 days.[62] The governmental body's written request for clarification or additional information must include a statement as to the consequences of the failure by the requestor to timely respond.[63] If the requestor's original request for information was sent by electronic mail, a governmental body may consider the request for information withdrawn if the governmental body sends its request for clarification to the electronic mail address from which the original request was sent or another electronic mail address provided by the requestor, and the governmental body does not receive a timely written response or response by electronic mail from the requestor.[64] If the requestor's original request for information was not sent by electronic mail, a governmental body may consider the request for information withdrawn if the governmental body sent its request for clarification by certified mail to the requestor's

---

[56]    Open Records Decision No. 617 (1993).

[57]    Gov't Code § 552.235(a).

[58]    Gov't Code § 552.235(b).

[59]    Open Records Decision No. 561 at 8 (1990).

[60]    Gov't Code § 552.222(b).

[61]    Gov't Code § 552.222(b).

[62]    Gov't Code § 552.222(d).

[63]    Gov't Code § 552.222(e).

[64]    Gov't Code § 552.222(g).

physical or mailing address, and the governmental body does not receive a timely written response from the requestor.[65]

When a governmental body, acting in good faith, requests clarification or narrowing of an unclear or overbroad request, the ten business day period to request an attorney general ruling is measured from the date it receives the requestor's response to the request for clarification or narrowing.[66]  In addition, a governmental body may make inquiries of a requestor in order to establish proper identification.[67] A governmental body may also make certain inquiries of a requestor who seeks information relating to motor vehicle records to determine if the requestor is authorized to receive the information under the governing statute.[68]  Similarly, a governmental body may require a requestor seeking an interior photograph taken by an appraisal district for property tax appraisal purposes to provide additional information sufficient to determine whether the requestor is eligible to receive the photograph.[69]

It is implicit in several provisions of the Act that it applies only to information already in existence.[70]  Thus, the Act does not require a governmental body to prepare new information in response to a request.[71]  Furthermore, the Act does not require a governmental body to inform a requestor if the requested information comes into existence after the request has been made.[72] Consequently, a governmental body is not required to comply with a continuing request to supply information on a periodic basis as such information is prepared in the future.[73]  Moreover, the Act does not require a governmental body to prepare answers to questions or to do legal research.[74] Additionally, section 552.227 states that "[a]n officer for public information or the officer's agent is not required to perform general research within the reference and research archives and holdings of state libraries."[75]

Section 552.232 provides for the handling of repetitious or redundant requests.  Under this section, a governmental body that receives a request for information for which it determines it has already furnished or made copies available to the requestor upon payment of applicable charges under Subchapter F may respond to the request by certifying to the requestor that it has already made the information available to the person.  The certification must include a description of the information already made available; the date of the governmental body's receipt of the original request for the information; the date it furnished or made the information available; a certification that no changes

---

65  Gov't Code § 552.222(f).

66  *City of Dallas v. Abbott*, 304 S.W.3d 380, 387 (Tex. 2010).

67  Gov't Code § 552.222(a).

68  Gov't Code § 552.222(c) (referencing Transp. Code ch. 730).

69  Gov't Code § 552.155(b), .222(c-1).

70  *See* Gov't Code §§ 552.002, .021, .227, .351.

71  *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 676 (Tex. 1995); *Fish v. Dallas Indep. Sch. Dist.*, 31 S.W.3d 678, 681 (Tex. App.—Eastland 2000, pet. denied); Attorney General Opinion H-90 (1973); Open Records Decision Nos. 452 at 2-3 (1986), 342 at 3 (1982), 87 (1975).

72  Open Records Decision No. 452 at 3 (1986).

73  Attorney General Opinion JM-48 at 2 (1983); Open Records Decision Nos. 476 at 1 (1987), 465 at 1 (1987).

74  *See* Open Records Decision Nos. 563 at 8 (1990) (considering request for federal and state laws and regulations), 555 at 1-2 (1990) (considering request for answers to fact questions).

75  Gov't Code § 552.227.

have been made to the information; and the name, title, and signature of the officer for public information, or his agent, who makes the certification.[76]

Section 552.0055 provides that a *subpoena duces tecum* or request for discovery issued in compliance with a statute or rule of civil or criminal procedure is not considered to be a request for information under the Public Information Act.

## C.  The Governmental Body's Duty to Produce Public Information Promptly

In general, the officer for public information must protect public information and promptly make it available to the public for copying or inspecting.[77]  The Act designates the chief administrative officer and each elected county officer as the officer for public information for a governmental body.[78]  Section 552.221 specifies the duties of the officer for public information upon receiving a request for public information.  Section 552.221 reads in part:

(a)  **An officer for public information of a governmental body shall promptly produce public information for inspection, duplication, or both on application by any person to the officer.  In this subsection, "promptly" means as soon as possible under the circumstances, that is, within a reasonable time, without delay.**

(b)  **An officer for public information complies with Subsection (a) by:**

(1) **providing the public information for inspection or duplication in the offices of the governmental body; or**

(2) **sending copies of the public information by first class United States mail if the person requesting the information requests that copies be provided and pays the postage and any other applicable charges that the requestor has accrued under Subchapter F.**

(b-1)  **In addition to the methods of production described by Subsection (b), an officer for public information for a governmental body of this state complies with Subsection (a) by referring a requestor to an exact Internet location or uniform resource locator (URL) address on a website maintained by the governmental body and accessible to the public if the requested information is identifiable and readily available on that website.  If the person requesting the information prefers a manner other than access through the URL, the governmental body must supply the information in the manner required by Subsection (b).**

---

[76]   Gov't Code § 552.232(b).

[77]   *See* Gov't Code § 552.203 (listing general duties of officer for public information).

[78]   *See* Gov't Code §§ 552.201, .202 (designating officer for public information and identifying department heads as agents for that officer); *see also Keever v. Finlan*, 988 S.W.2d 300, 301 (Tex. App.—Dallas 1999, pet. dism'd) (school district superintendent, rather than school board member, is chief administrative officer and custodian of public records).

**(b-2)  If an officer for public information for a governmental body provides by e-mail an Internet location or uniform resource locator (URL) address as permitted by Subsection (b-1), the e-mail must contain a statement in a conspicuous font clearly indicating that the requestor may nonetheless access the requested information by inspection or duplication or by receipt through United States mail, as provided by Subsection (b).**

Thus, in order to comply with section 552.221, generally a governmental body must either provide the information for inspection, duplication, or both, in its offices or send copies of the information by first class United States mail.  A governmental body may also comply with section 552.221 by referring the requestor to an exact Internet location or URL address maintained by the governmental body and accessible to the public, if the requested information is identifiable and readily accessible on the website.[79]  If the governmental body uses e-mail to refer the requestor to an Internet location or URL address, the e-mail must contain a statement in a conspicuous font indicating the requestor may still choose to inspect the information or receive copies of the information.[80]  If the requestor prefers to inspect the information or receive copies instead of accessing the information on the governmental body's website, the governmental body must either provide the information for inspection or duplication in its offices or send copies of the information by first class mail.[81]  An officer for public information is not responsible for how a requestor uses public information or for the release of information after it is removed from a record as a result of an update, a correction, or a change of status of the person to whom the information pertains.[82]

The officer for public information must "promptly" produce public information in response to an open records request.[83]  "Promptly" means that a governmental body may take a reasonable amount of time to produce the information, but may not delay.[84]  It is a common misconception that a governmental body may wait ten business days before releasing the information.  In fact, as discussed above, the requirement is to produce information "promptly."  What constitutes a reasonable amount of time depends on the facts in each case.  The volume of information requested is highly relevant to what constitutes a reasonable period of time.[85]

If the request is to inspect the information, the Public Information Act requires only that the officer in charge of public information make it available for review within the "offices of the governmental body[.]"[86]  Temporarily transporting records outside the office for official use does not trigger a duty to make the records available to the public wherever they may be.[87]

---

[79]  Gov't Code § 552.221(b-1).

[80]  Gov't Code § 552.221 (b-2).

[81]  Gov't Code § 552.221(b-1).

[82]  Gov't Code § 552.204; Open Records Decision No. 660 at 4 (1999).

[83]  Gov't Code § 552.221(a); *see Dominguez v. Gilbert*, 48 S.W.3d 789, 792 (Tex. App.—Austin 2001, no pet.); Open Records Decision No. 665 (2000).

[84]  Gov't Code § 552.221(a); *see* Open Records Decision No. 467 at 6 (1987).

[85]  Open Records Decision No. 467 at 6 (1987).

[86]  Gov't Code § 552.221(b).

[87]  *Conely v. Peck*, 929 S.W.2d 630, 632 (Tex. App.—Austin 1996, no writ).

Subsection 552.221(c) states:

> **If the requested information is unavailable at the time of the request to examine because it is in active use or in storage, the officer for public information shall certify this fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available for inspection or duplication.**

The following decisions discuss when requested information is in "active use":

> Open Records Decision No. 225 (1979) — a secretary's handwritten notes are in active use while the secretary is typing minutes of a meeting from them;

> Open Records Decision No. 148 (1976) — a faculty member's file is not in active use the entire time the member's promotion is under consideration;

> Open Records Decision No. 96 (1975) — directory information about students is in active use while the notice required by the federal Family Educational Rights and Privacy Act of 1974 is being given; and

> Open Records Decision No. 57 (1974) — a file containing student names, addresses, and telephone numbers is in active use during registration.

If an officer for public information cannot produce public information for inspection or duplication within ten business days after the date the information is requested, section 552.221(d) requires the officer to "certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available for inspection or duplication."

Section 552.221(e) of the Government Code provides:

> **A request is considered to have been withdrawn if the requestor fails to inspect or duplicate the public information in the office of the governmental body on or before the 60th day after the date the information is made available or fails to pay the postage and any other applicable charges accrued under Subchapter F on or before the 60th day after the date the requestor is informed of the charges.**

A request may now be considered withdrawn if, after the 60th day, the requestor does not appear to inspect the information, fails to pick up the information, or fails to pay any applicable charges for the information.

The 87th Legislature redesignated the former section 552.233 that dealt with catastrophes as section 552.2325 of the Government Code. Section 552.2325 provides for the temporary suspension of the requirements of the Act when a governmental body is significantly impacted by a catastrophe.[88] A "catastrophe" means a condition or occurrence that directly interferes with the ability of a governmental body to comply with the requirements of the Act.[89] The 87th Legislature also added language clarifying that a "catastrophe" does not mean a period where staff is required

---

[88]    Gov't Code § 552.2325.

[89]    Gov't Code § 552.2325(a)(1).

to work remotely and can access information, even if the physical office is closed.[90] In order to suspend the requirements of the Act, a governmental body must provide notice to the OAG in accordance with subsections 552.2325(c) and 552.2325(e) of the Government Code.[91] A copy of the catastrophe notice form can be found on the OAG's website. A governmental body is allowed an initial suspension period of up to seven days that may begin up to two days prior to the submission of the notice.[92] A governmental body is also allowed one extension of the initial suspension period of seven consecutive days beginning on the day following the initial suspension period.[93] The 87th Legislature clarified that a governmental body may not suspend the requirements of the Act for more than fourteen consecutive calendar days for any single catastrophe.[94] Upon conclusion of any suspension period, a governmental body must immediately resume compliance with all requirements of the Act.[95]

The 87th Legislature also added section 552.2211 of the Government Code relating to the production of information when a governmental body's administrative offices are closed. Unless a governmental body has filed a catastrophe notice discussed above, if it closes its physical offices but requires staff to work, including remote work, it must make a good faith effort to continue responding to requests for information to the extent it has access to responsive information.[96] Failure to respond to requests in accordance with section 552.2211(a) may constitute a refusal to request an attorney general's decision as provided by Subchapter G of the Act or a refusal to supply information under Subchapter C of the Act.[97]

In addition, a chart outlining various deadlines to which governmental bodies are subject can be found in Part Six of this *Handbook*.

## D.     The Requestor's Right of Access

The Public Information Act prohibits a governmental body from inquiring into a requestor's reasons or motives for requesting information. In addition, a governmental body must treat all requests for information uniformly. Sections 552.222 and 552.223 of the Government Code provide as follows:

**§ 552.222.  Permissible Inquiry by Governmental Body to Requestor**

> **(a)  The officer for public information and the officer's agent may not make an inquiry of a requestor except to establish proper identification or except as provided by Subsection (b), (c), or (c-1).**

---

90    Gov't Code § 552.2325(a)(2).

91    Gov't Code §§ 552.2325(c), (e).

92    Gov't Code § 552.2325(d).

93    Gov't Code § 552.2325(e), (f).

94    Gov't Code § 552.2325(g).

95    Gov't Code § 552.2325(m).

96    Gov't Code § 552.2211(a).

97    Gov't Code § 552.2211(b).

**(b)** If what information is requested is unclear to the governmental body, the governmental body may ask the requestor to clarify the request. If a large amount of information has been requested, the governmental body may discuss with the requestor how the scope of a request might be narrowed, but the governmental body may not inquire into the purpose for which information will be used.

**(c)** If the information requested relates to a motor vehicle record, the officer for public information or the officer's agent may require the requestor to provide additional identifying information sufficient for the officer or the officer's agent to determine whether the requestor is eligible to receive the information under Chapter 730, Transportation Code. In this subsection, "motor vehicle record" has the meaning assigned that term by Section 730.003, Transportation Code.

**(c-1)** If the information requested includes a photograph described by Section 552.155(a), the officer for public information or the officer's agent may require the requestor to provide additional information sufficient for the officer or the officer's agent to determine whether the requestor is eligible to receive the information under Section 552.155(b).

**§ 552.223. Uniform Treatment of Requests for Information**

The officer for public information or the officer's agent shall treat all requests for information uniformly without regard to the position or occupation of the requestor, the person on whose behalf the request is made, or the status of the individual as a member of the media.

Although section 552.223 requires an officer for public information to treat all requests for information uniformly, section 552.028 provides as follows:

**(a)** A governmental body is not required to accept or comply with a request for information from:

(1) an individual who is imprisoned or confined in a correctional facility; or

(2) an agent of that individual, other than that individual's attorney when the attorney is requesting information that is subject to disclosure under this chapter.

**(b)** This section does not prohibit a governmental body from disclosing to an individual described by Subsection (a)(1), or that individual's agent, information held by the governmental body pertaining to that individual.

**(c)** In this section, "correctional facility" means:

(1) a secure correctional facility, as defined by Section 1.07, Penal Code;

(2) a secure correctional facility and a secure detention facility, as defined by Section 51.02, Family Code; and

**(3) a place designated by the law of this state, another state, or the federal government for the confinement of a person arrested for, charged with, or convicted of a criminal offense.**

Under section 552.028, a governmental body is not required to comply with a request for information from an inmate or the inmate's agent, other than the inmate's attorney, even if the requested information pertains to the inmate.[98] While subsection (b) does not prohibit a governmental body from complying with an inmate's request, it does not mandate compliance.[99]

Generally, a requestor may choose to inspect or copy public information, or to both inspect and copy public information.[100] In certain circumstances, a governmental body may charge the requestor for access to or copies of the requested information.

## 1. Right to Inspect

If a requestor chooses to inspect public information, the requestor must generally complete the inspection within ten business days after the date the governmental body makes the information available or the request will be withdrawn by operation of law.[101] However, a governmental body is required to extend the inspection period by an additional 10 business days upon receiving a written request for additional time from the requestor.[102] If the information is needed by the governmental body, the officer for public information may interrupt a requestor's inspection of public information.[103] When a governmental body interrupts a requestor's inspection of public information, the period of interruption is not part of the ten business day inspection period.[104] A governmental body may promulgate policies that are consistent with the Public Information Act for efficient, safe, and speedy inspection and copying of public information.[105]

## 2. Right to Obtain Copies

If a copy of public information is requested, a governmental body must provide "a suitable copy . . . within a reasonable time after the date on which the copy is requested."[106] However, the Act does not authorize the removal of an original copy of a public record from the office of a

---

[98] *See Harrison v. Vance*, 34 S.W.3d 660, 662-63 (Tex. App.—Dallas 2000, no pet.); *Hickman v. Moya*, 976 S.W.2d 360, 361 (Tex. App.—Waco 1998, pet. denied); *Moore v. Henry*, 960 S.W.2d 82, 84 (Tex. App.—Houston [1st Dist.] 1996, no writ).

[99] *Moore v. Henry*, 960 S.W.2d 82, 84 (Tex. App.—Houston [1st Dist.] 1996, no writ); Open Records Decision No. 656 at 3 (1997) (statutory predecessor to Gov't Code § 552.028 applies to request for voter registration information under Elec. Code § 18.008 when request is from incarcerated individual).

[100] Gov't Code §§ 552.221, .225, .228, .230.

[101] Gov't Code § 552.225(a); *see also* Open Records Decision No. 512 (1988) (statutory predecessor to Gov't Code § 552.225 did not apply to requests for copies of public information or authorize governmental body to deny repeated requests for copies of public records).

[102] Gov't Code § 552.225(b).

[103] Gov't Code § 552.225(c).

[104] Gov't Code § 552.225(c).

[105] Gov't Code § 552.230; *see* Attorney General Opinion JM-757 (1987) (governmental bodies may deny requests from a requestor to make their own copies when requests raise questions of safety or unreasonable disruption of business).

[106] Gov't Code § 552.228(a).

governmental body.[107] If the requested records are copyrighted, the governmental body must comply with federal copyright law.[108]

A governmental body may receive a request for a public record that contains both publicly available and excepted information. In a decision that involved a document that contained both publicly available information and information that was excepted from disclosure by the statutory predecessor to section 552.111, the attorney general determined the Act did not permit the governmental body to provide the requestor with a new document created in response to the request on which the publicly available information had been consolidated and retyped, unless the requestor agreed to receive a retyped document.[109] Rather, the attorney general concluded that the statutory predecessor to section 552.228 required the governmental body to make available to the public copies of the actual public records the governmental body had collected, assembled, or maintained, with the excepted information excised.[110]

The public's right to suitable copies of public information has been considered in the following decisions:

Attorney General Opinion JM-757 (1987) — a governmental body may refuse to allow members of the public to duplicate public records by means of portable copying equipment when it is unreasonably disruptive of working conditions, when the records contain confidential information, when it would cause safety hazards, or when it would interfere with other persons' rights to inspect and copy records;

Open Records Decision No. 660 (1999) — section 52(a) of article III of the Texas Constitution does not prohibit the Port of Corpus Christi Authority from releasing a computer generated digital map, created by the Port with public funds, in response to a request made under Chapter 552 of the Government Code;

Open Records Decision No. 633 (1995) — a governmental body does not comply with the Public Information Act by releasing to the requestor another record as a substitute for any specifically requested portions of an offense report that are not excepted from required public disclosure, unless the requestor agrees to the substitution;

Open Records Decision No. 571 (1990) — the Public Information Act does not give a member of the public a right to use a computer terminal to search for public records; and

Open Records Decision No. 243 (1980) — a governmental body is not required to compile or extract information if the information can be made available by giving the requestor access to the records themselves.[111]

---

[107] Gov't Code § 552.226.

[108] *See* Open Records Decision No. 660 at 5 (1999) (Federal Copyright Act "may not be used to deny access to or copies of the information sought by the requestor under the Public Information Act," but a governmental body may place reasonable restrictions on use of copyrighted information consistent with rights of copyright owner).

[109] Open Records Decision No. 606 at 2-3 (1992).

[110] Open Records Decision No. 606 at 2-3 (1992).

[111] *See also* Open Records Decision Nos. 512 (1988), 465 (1987), 144 (1976).

# E.  Computer and Electronic Information

Section 552.228(b) provides:

> **If public information exists in an electronic or magnetic medium, the requestor may request a copy in an electronic medium, such as on diskette or on magnetic tape. A governmental body shall provide a copy in the requested medium if:**
>
> > **(1) the governmental body has the technological ability to produce a copy of the requested information in the requested medium;**
> >
> > **(2) the governmental body is not required to purchase any software or hardware to accommodate the request; and**
> >
> > **(3) provision of a copy of the information in the requested medium will not violate the terms of any copyright agreement between the governmental body and a third party.**

If a governmental body is unable to provide the information in the requested medium for any of the reasons described by section 552.228(b), the governmental body shall provide the information in another medium that is acceptable to the requestor.[112]  A governmental body is not required to use material provided by a requestor, such as a diskette, but rather may use its own supplies to comply with a request.[113]

A request for public information that requires a governmental body to program or manipulate existing data is not considered a request for the creation of new information.[114]  If a request for public information requires "programming or manipulation of data,"[115] and "compliance with the request is not feasible or will result in substantial interference with its ongoing operations,"[116] or "the information could be made available in the requested form only at a cost that covers the programming and manipulation of data,"[117] a governmental body is required to provide the requestor with a written statement.  This statement must include a statement that the information is not available in the requested form, a description of the form in which the information is available, a description of what would be required to provide the information in the requested form, and a statement of the estimated cost and time to provide the information in the requested form.[118] The governmental body shall provide the statement to the requestor within twenty days after the date the governmental body received the request.[119]  If, however, the governmental body gives written notice within the twenty days that additional time is needed, the governmental body has an

---

[112]  Gov't Code § 552.228(c).

[113]  Gov't Code § 552.228(c).

[114]  *Fish v. Dallas Indep. Sch. Dist.*, 31 S.W.3d 678, 681-82 (Tex. App.—Eastland 2000, pet. denied); *see* Gov't Code § 552.231; Attorney General Opinion H-90 (1973); Open Records Decision Nos. 452 at 2-3 (1986), 87 (1975).

[115]  Gov't Code § 552.231(a)(1); *see* Gov't Code § 552.003(2), (4) (defining "manipulation" and "programming").

[116]  Gov't Code § 552.231(a)(2)(A).

[117]  Gov't Code § 552.231(a)(2)(B).

[118]  Gov't Code § 552.231(a), (b); *see Fish v. Dallas Indep. Sch. Dist.*, 31 S.W.3d 678, 682 (Tex. App.—Eastland 2000, pet. denied); Open Records Decision No. 661 at 6-8 (1999).

[119]  Gov't Code § 552.231(c).

additional ten days to provide the statement.[120] Once the governmental body provides the statement to the requestor, the governmental body has no obligation to provide the requested information in the requested form unless within thirty days the requestor responds to the governmental body in writing that the requestor wants the governmental body to provide the information in the requested form in accordance with the cost and time parameters agreed upon or wants the information in the form it is available.[121] If the requestor does not respond within thirty days, the request is considered withdrawn.[122]

# V.  DISCLOSURE TO SELECTED PERSONS

## A.  General Rule:  Under the Public Information Act, Public Information is Available to All Members of the Public

The Public Information Act states in several provisions that public information is available to "the people," "the public," and "any person."[123] Thus, the Act deals primarily with the general public's access to information; it does not, as a general matter, give an individual a "special right of access" to information concerning that individual that is not otherwise public information.[124] Information that a governmental body writes, produces, collects, assembles or maintains is, in general, either open to all members of the public or closed to all members of the public.

Additionally, section 552.007 prohibits a governmental body from selectively disclosing information that is not confidential by law but that a governmental body may withhold under an exception to disclosure.  Section 552.007 provides as follows:

(a) **This chapter does not prohibit a governmental body or its officer for public information from voluntarily making part or all of its information available to the public, unless the disclosure is expressly prohibited by law or the information is confidential under law.**

(b) **Public information made available under Subsection (a) must be made available to any person.**[125]

If, therefore, a governmental body releases to a member of the public nonconfidential information, then the governmental body must release the information to all members of the public who request it.  For example, in rendering an open records decision under section 552.306, the attorney general

---

[120] Gov't Code § 552.231(c).

[121] Gov't Code § 552.231(d); *see also Fish v. Dallas Indep. Sch. Dist.*, 31 S.W.3d 678, 682 (Tex. App.—Eastland 2000, pet. denied); Open Records Decision No. 661 (1999) (Gov't Code § 552.231 enables governmental body and requestor to reach agreement as to cost, time and other terms of responding to request requiring programming or manipulation of data).

[122] Gov't Code § 552.231(d-1).

[123] *See, e.g.*, Gov't Code §§ 552.001, .021, .221(a).  The Act does not require a requestor be a Texas resident or an American citizen.

[124] Open Records Decision No. 507 at 3 (1988); *see also* Attorney General Opinion JM-590 at 4 (1986); Open Records Decision No. 330 at 2 (1982).

[125] *See also* Open Records Decision No. 463 at 1-2 (1987).

would not consider a governmental body's claim that section 552.111 authorized the governmental body to withhold a report from a requestor when the governmental body had already disclosed the report to another member of the public.[126]

## B. Some Disclosures of Information to Selected Individuals or Entities Do Not Constitute Disclosures to the Public Under Section 552.007

As noted, the Public Information Act prohibits the selective disclosure of information to members of the public. A governmental body may, however, have authority to disclose records to certain persons or entities without those disclosures being voluntary disclosures to "the public" within the meaning of section 552.007 of the Government Code. In these cases, the governmental body normally does not waive applicable exceptions to disclosure by transferring or disclosing the records to these specific persons or entities.

### 1. Special Rights of Access: Exceptions to Disclosure Expressly Inapplicable to a Specific Class of Persons

### a. Special Rights of Access Under the Public Information Act

The following provisions in the Act provide an individual with special rights of access to certain information even though the information is unavailable to members of the general public: sections 552.008, 552.023, 552.026, and 552.114.

### i. Information for Legislative Use

Section 552.008 of the Government Code states in pertinent part:

> **(a)** **This chapter does not grant authority to withhold information from individual members, agencies, or committees of the legislature to use for legislative purposes.**
>
> **(b)** **A governmental body on request by an individual member, agency, or committee of the legislature shall provide public information, including confidential information, to the requesting member, agency, or committee for inspection or duplication in accordance with this chapter if the requesting member, agency, or committee states that the public information is requested under this chapter for legislative purposes.**

Section 552.008 provides that a governmental body shall provide copies of information, including confidential information, to an individual member, agency, or committee of the legislature if requested for legislative purposes.[127] The section provides that disclosure of excepted or confidential information to a legislator does not waive or affect the confidentiality of the

---

[126] *See* Open Records Decision No. 400 at 2 (1983) (construing statutory predecessor to Gov't Code § 552.111); *see also Cornyn v. City of Garland*, 994 S.W.2d 258, 265 (Tex. App.—Austin 1999, no pet.) (information released pursuant to discovery in litigation was not voluntarily released and thus was excepted from disclosure under Public Information Act).

[127] *See Tex. Comm'n on Envtl. Quality v. Abbott*, 311 S.W.3d 663 (Tex. App.—Austin 2010, pet. denied) (Gov't Code § 552.008 required commission to release to legislator for legislative purposes attorney-client privileged documents subject to confidentiality agreement).

information or the right to assert exceptions in the future regarding that information, and provides specific procedures relating to the confidential treatment of the information.[128] An individual who obtains confidential information under section 552.008 commits an offense if that person misuses the information or discloses it to an unauthorized person.[129]

Subsections (b-1) and (b-2) of section 552.008 provide:

**(b-1)** **A member, committee, or agency of the legislature required by a governmental body to sign a confidentiality agreement under Subsection (b) may seek a decision as provided by Subsection (b-2) about whether the information covered by the confidentiality agreement is confidential under law. A confidentiality agreement signed under Subsection (b) is void to the extent that the agreement covers information that is finally determined under Subsection (b-2) to not be confidential under law.**

**(b-2)** **The member, committee, or agency of the legislature may seek a decision from the attorney general about the matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the information covered by the confidentiality agreement is confidential under law, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court. A person may appeal a decision of the attorney general under this subsection to a Travis County district court if the person claims a proprietary interest in the information affected by the decision or a privacy interest in the information that a confidentiality law or judicial decision is designed to protect.[130]**

If a member of the legislature signs a confidentiality agreement but subsequently believes the information the governmental body has released pursuant to section 552.008 is not confidential, the member may request an attorney general decision regarding the confidentiality of the information.[131] If the attorney general determines the information is not confidential, any confidentiality agreement the member signed is void. The attorney general promulgated rules relating to its decisions under section 552.008(b-2).[132] These rules are available on the attorney general's website and in Part Four of this *Handbook*.

---

128    Gov't Code § 552.008(b).

129    Gov't Code § 552.352(a-1).

130    Gov't Code § 552.008(b-1), (b-2).

131    *See*, *e.g.*, Open Records Letter No. 2013-08637 (2013).

132    *See* 1 T.A.C. §§ 63.1-.6.

## ii.  Information About the Person Who Is Requesting the Information

Section 552.023 of the Government Code provides an individual with a limited special right of access to information about that individual.  It states in pertinent part:

**(a)**  **A person or a person's authorized representative has a special right of access, beyond the right of the general public, to information held by a governmental body that relates to the person and that is protected from public disclosure by laws intended to protect that person's privacy interests.**

**(b)**  **A governmental body may not deny access to information to the person, or the person's representative, to whom the information relates on the grounds that the information is considered confidential by privacy principles under this chapter but may assert as grounds for denial of access other provisions of this chapter or other law that are not intended to protect the person's privacy interests.**

Subsections (a) and (b) of section 552.023 prevent a governmental body from asserting an individual's own privacy as a reason for withholding records from that individual.  However, the individual's right of access to private information about that individual under section 552.023 does not override exceptions to disclosure in the Act or confidentiality laws protecting some interest other than that individual's privacy.[133]  The following decisions consider the statutory predecessor to section 552.023:

Open Records Decision No. 684 (2009) — when requestor is a person whose privacy interests are protected under section 552.130, concerning certain motor vehicle information, or section 552.136, concerning access device information, requestor has a right of access to the information under section 552.023;

Open Records Decision No. 587 (1991) — because former Family Code section 34.08, which made confidential reports, records, and working papers used or developed in an investigation of alleged child abuse, protected law enforcement interests as well as privacy interests, the statutory predecessor to section 552.023 did not provide the subject of the information a special right of access to the child abuse investigation file;

Open Records Decision No. 577 (1990) — under the Communicable Disease Prevention and Control Act, information in the possession of a local health authority relating to disease or health conditions is confidential but may be released with the consent of the person identified in the information; because this confidentiality provision is designed to protect the privacy of the subject of the information, the statutory predecessor to section 552.023 authorized a local

---

[133]  *See* Open Records Decision No. 556 (1990) (predecessor statute to section 552.111 applied to requestor's claim information); *see also Abbott v. Tex. State Bd. of Pharmacy*, 391 S.W.3d 253, 260 (Tex. App.—Austin 2012, no pet.) (because Pharmacy Act confidentiality provision protected integrity of board's regulatory process, board's withholding of requestor's records was based on law not intended solely to protect requestor's privacy interest); *Tex. State Bd. of Chiropractic Exam'rs v. Abbott*, 391 S.W.3d 343, 351 (Tex. App.—Austin 2013, no pet.) (because provision making board's investigation records confidential protected integrity of board's regulatory process rather than requestor's privacy interest, section 552.023 did not prevent board from denying access to requested information).

health authority to release to the subject medical or epidemiological information relating to the person who signed the consent.

### iii.       Information in a Student or Education Record

Section 552.114 of the Government Code, which defines "student record" and deems such records confidential, states a governmental body must make such information available if the information is requested by: 1) educational institution personnel; 2) the student involved or the student's parent, legal guardian, or spouse; or 3) a person conducting a child abuse investigation pursuant to Subchapter D of Chapter 261 of the Family Code.[134] Section 552.026 of the Government Code, which conforms the Act to the requirements of the federal Family Educational Rights and Privacy Act of 1974[135] ("FERPA"), also incorporates the rights of access established by that federal law.[136] To the extent FERPA conflicts with state law, the federal statute prevails.[137]

### b.       Special Rights of Access Created by Other Statutes

Statutes other than the Act grant specific entities or individuals a special right of access to specific information. For example, section 901.160 of the Occupations Code makes information about a licensee held by the Texas State Board of Public Accountancy available for inspection by the licensee. Exceptions in the Act cannot authorize the board to withhold this information from the licensee because the licensee has a statutory right to the specific information requested.[138] As is true for the right of access provided under section 552.023 of the Act, a statutory right of access does not affect the governmental body's authority to rely on applicable exceptions to disclosure when the information is requested by someone other than an individual with a special right of access.

### 2.       Intra- or Intergovernmental Transfers

The transfer of information within a governmental body or between governmental bodies is not necessarily a release to the public for purposes of the Act. For example, a member of a governmental body, acting in his or her official capacity, is not a member of the public for purposes of access to information in the governmental body's possession. Thus, an authorized official may review records of the governmental body without implicating the Act's prohibition against

---

[134]   Gov't Code § 552.114(a), (b), (c).

[135]   20 U.S.C. § 1232g.

[136]   Open Records Decision No. 431 at 2-3 (1985).

[137]   Open Records Decision No. 431 at 3 (1985).

[138]   Open Records Decision No. 451 at 4 (1986); *see also* Open Records Decision Nos. 500 at 4-5 (1988) (considering property owner's right of access to appraisal records under Tax Code), 478 at 3 (1987) (considering intoxilyzer test subject's right of access to test results under statutory predecessor to Transp. Code § 724.018).

selective disclosure.[139]  Additionally, a state agency may ordinarily transfer information to another state agency or to another governmental body subject to the Act without violating the confidentiality of the information or waiving exceptions to disclosure.[140]

On the other hand, a federal agency is subject to an open records law that differs from the Texas Public Information Act.  A state governmental body, therefore, should not transfer non-disclosable information to a federal agency unless some law requires or authorizes the state governmental body to do so.[141]  A federal agency may not maintain the state records with the "same eye towards confidentiality that state agencies would be bound to do under the laws of Texas."[142]

Where information is confidential by statute, the statute specifically enumerates the entities to which the information may be released, and the governmental body is not among those entities, the information may not be transferred to the governmental body.[143]

## 3. Other Limited Disclosures That Do Not Implicate Section 552.007

The attorney general has recognized other specific contexts in which a governmental body's limited release of information to certain persons does not constitute a release to "the public" under section 552.007:

Open Records Decision No. 579 at 7 (1990) — exchanging information among litigants in informal discovery was not a voluntary release under the statutory predecessor to section 552.007;

Open Records Decision No. 501 (1988) — while former article 9.39 of the Insurance Code prohibited the State Board of Insurance from releasing escrow reports to the public, the Board could release the report to the title company to which the report related;

Open Records Decision No. 454 at 2 (1986) — governmental body that disclosed information it reasonably concluded it had a constitutional obligation to do so could still invoke statutory predecessor to section 552.108; and

---

[139] *See* Attorney General Opinions JC-0283 at 3-4 (2000), JM-119 at 2 (1983); *see also* Open Records Decision Nos. 678 at 4 (2003) (transfer of county registrar's list of registered voters to secretary of state and election officials is not release to public prohibited by Gov't Code § 552.1175), 674 at 4 (2001) (information in archival state records that was confidential in custody of originating governmental body remains confidential upon transfer to commission), 666 at 4 (2000) (municipality's disclosure to municipally appointed citizen advisory board of information pertaining to municipally owned power utility does not constitute release to public as contemplated under Gov't Code § 552.007), 464 at 5 (1987) (distribution of evaluations by university faculty members among faculty members does not waive exceptions to disclosure with respect to general public).

[140] *See* Attorney General Opinions H-917 at 1 (1976), H-242 at 4 (1974); Open Records Decision Nos. 667 at 3-4 (2000), 661 at 3 (1999).  *But see* Attorney General Opinion JM-590 at 4-5 (1986) (comptroller's release to city prohibited where Tax Code made information confidential, enumerated entities to which information may be disclosed, and did not include city among enumerated entities).

[141] Open Records Decision No. 650 at 4 (1996); *see, e.g.*, Open Records Letter No. 2017-09880 (2017) (United States Army provided right of access under federal law to criminal history record information in certain city police records).

[142] Attorney General Opinion H-242 at 4 (1974); *accord* Attorney General Opinion MW-565 at 4 (1982); Open Records Decision No. 561 at 6 (1990) (quoting with approval Attorney General Opinion H-242 (1974)).

[143] *See generally* Attorney General Opinion JM-590 at 5 (1986); Open Records Decision Nos. 661 at 3 (1999), 655 at 8 (1997), 650 at 3 (1996).

Open Records Decision No. 400 (1983) — the prohibition against selective disclosure does not apply when a governmental body releases confidential information to the public.

# VI. ATTORNEY GENERAL DETERMINES WHETHER INFORMATION IS SUBJECT TO AN EXCEPTION

## A. Duties of the Governmental Body and of the Attorney General Under Subchapter G

Sections 552.301, 552.302, and 552.303 of the Government Code set out the duty of a governmental body to seek the attorney general's decision on whether information is excepted from disclosure to the public.

Section 552.301, subsections (a) and (b), provides that when a governmental body receives a written request for information the governmental body wishes to withhold, it must seek an attorney general decision within ten business days of its receipt of the request and state the exceptions to disclosure that it believes are applicable. Subsections (a) and (b) read:

**(a)** **A governmental body that receives a written request for information that it wishes to withhold from public disclosure and that it considers to be within one of the exceptions under Subchapter C must ask for a decision from the attorney general about whether the information is within that exception if there has not been a previous determination about whether the information falls within one of the exceptions.**

**. . .**

**(b)** **The governmental body must ask for the attorney general's decision and state the exceptions that apply within a reasonable time but not later than the 10th business day after the date of receiving the written request.**

Thus, a governmental body that wishes to withhold information from the public on the ground of an exception generally must seek the decision of the attorney general as to the applicability of that exception.[144] In addition, an entity contending that it is not subject to the Act may timely request a decision from the attorney general to avoid the consequences of noncompliance if the entity is determined to be subject to the Act.[145] Therefore, when requesting such a decision, the entity

---

[144] *Thomas v. Cornyn*, 71 S.W.3d 473, 480 (Tex. App.—Austin 2002, no pet.); *Dominguez v. Gilbert*, 48 S.W.3d 789, 792 (Tex. App.—Austin 2001, no pet.); Open Records Decision Nos. 452 at 4 (1986), 435 (1986) (referring specifically to statutory predecessors to Gov't Code §§ 552.103 and 552.111, respectively); *see Conely v. Peck*, 929 S.W.2d 630, 632 (Tex. App.—Austin 1996, no writ) (requirement to request open records decision within ten days comes into play when governmental body denies access to requested information or asserts exception to public disclosure of information).

[145] *See Blankenship v. Brazos Higher Educ. Auth., Inc.*, 975 S.W.2d 353, 362 (Tex. App.—Waco 1998, pet. denied) (entity does not admit it is governmental body by virtue of request for opinion from attorney general).

should not only present its arguments as to why it is not subject to the Act, but should also raise any exceptions to required disclosure it believes apply to the requested information.

A governmental body need not request an attorney general decision if there has been a previous determination that the requested material falls within one of the exceptions to disclosure.[146] What constitutes a "previous determination" is narrow in scope, and governmental bodies are cautioned against treating most published attorney general decisions as "previous determinations" to avoid the requirements of section 552.301(a). The attorney general has determined that there are two types of previous determinations.[147] The first and by far the most common instance of a previous determination pertains to specific information that is again requested from a governmental body when the attorney general has previously issued a decision that evaluates the public availability of the precise information or records at issue. This first instance of a previous determination does not apply to records that are substantially similar to records previously submitted to the attorney general for review, nor does it apply to information that may fall within the same category as any given records on which the attorney general has previously ruled. The first type of previous determination requires that all of the following criteria be met:

1.  the information at issue is precisely the same information that was previously submitted to the attorney general pursuant to section 552.301(e)(1)(D) of the Government Code;

2.  the governmental body that received the request for the information is the same governmental body that previously requested and received a ruling from the attorney general;

3.  the attorney general's prior ruling concluded the precise information is or is not excepted from disclosure under the Act; and

4.  the law, facts, and circumstances on which the prior attorney general ruling was based have not changed since the issuance of the ruling.[148]

Absent all four of the above criteria, and unless the second type of previous determination applies, a governmental body must ask for a decision from the attorney general if it wishes to withhold from the public information that is requested under the Act.

The second type of previous determination requires that all of the following criteria be met:

1.  the information at issue falls within a specific, clearly delineated category of information about which the attorney general has previously rendered a decision;

---

[146]   Gov't Code § 552.301(a); *Dominguez v. Gilbert*, 48 S.W.3d 789, 792-93 (Tex. App.—Austin 2001, no pet.).

[147]   Open Records Decision No. 673 (2001).

[148]   A governmental body should request a decision from the attorney general if it is unclear to the governmental body whether there has been a change in the law, facts or circumstances on which the prior decision was based.

2.  the previous decision is applicable to the particular governmental body or type of governmental body from which the information is requested;[149]

3.  the previous decision concludes the specific, clearly delineated category of information is or is not excepted from disclosure under the Act;

4.  the elements of law, fact, and circumstances are met to support the previous decision's conclusion that the requested records or information at issue is or is not excepted from required disclosure; and[150]

5.  the previous decision explicitly provides that the governmental body or bodies to which the decision applies may withhold the information without the necessity of again seeking a decision from the attorney general.

Absent all five of the above criteria, and unless the first type of previous determination applies, a governmental body must ask for a decision from the attorney general if it wishes to withhold requested information from the public under the Act.

An example of this second type of previous determination is found in Open Records Decision No. 670. In that decision, the attorney general determined that pursuant to the statutory predecessor of section 552.117(a)(2) of the Government Code, a governmental body may withhold the home address, home telephone number, personal cellular telephone number, personal pager number, social security number, and information that reveals whether the individual has family members, of any individual who meets the definition of "peace officer" without requesting a decision from the attorney general.

The governmental body may not unilaterally decide to withhold information on the basis of a prior open records decision merely because it believes the legal standard for an exception, as established in the prior decision, applies to the recently requested information.[151]

When in doubt, a governmental body should consult with the Open Records Division of the Office of the Attorney General prior to the ten business day deadline to determine whether requested information is subject to a previous determination.[152]

---

[149] Previous determinations of the second type can apply to all governmental bodies if the decision so provides. *See, e.g.*, Open Records Decision No. 670 (2001) (all governmental bodies may withhold information subject to predecessor of Gov't Code § 552.117(a)(2) without necessity of seeking attorney general decision). On the other hand, if the decision is addressed to a particular governmental body and does not explicitly provide that it also applies to other governmental bodies or to all governmental bodies of a certain type, then only the particular governmental body to which the decision is addressed may rely on the decision as a previous determination. *See, e.g.*, Open Records Decision No. 662 (1999) (constituting second type of previous determination but only with respect to information held by Texas Department of Health).

[150] Thus, in addition to the law remaining unchanged, the facts and circumstances must also have remained unchanged to the extent necessary for all of the requisite elements to be met. With respect to previous determinations of the second type, a governmental body should request a decision from the attorney general if it is unclear to the governmental body whether all of the elements on which the previous decision's conclusion was based have been met with respect to the requested records or information.

[151] Open Records Decision No. 511 (1988) (no unilateral withholding of information under litigation exception).

[152] *See* Open Records Decision No. 435 at 2-3 (1986) (attorney general has broad discretion to determine whether information is subject to previous determination).

A request for an open records decision pursuant to section 552.301 must come from the governmental body that has received a written request for information.[153] Otherwise, the attorney general does not have jurisdiction under the Act to determine whether the information is excepted from disclosure to the public.

Section 552.301(f) expressly prohibits a governmental body from seeking an attorney general decision where the attorney general or a court has already determined that the same information must be released. Among other things, this provision precludes a governmental body from asking for reconsideration of an attorney general decision that concluded the governmental body must release information. Subsection (f) provides:

**A governmental body must release the requested information and is prohibited from asking for a decision from the attorney general about whether information requested under this chapter is within an exception under Subchapter C if:**

> **(1) the governmental body has previously requested and received a determination from the attorney general concerning the precise information at issue in a pending request; and**

> **(2) the attorney general or a court determined that the information is public information under this chapter that is not excepted by Subchapter C.**

Section 552.301(g) authorizes a governmental body to ask for another attorney general decision if: (1) a suit challenging the prior decision was timely filed against the attorney general; (2) the attorney general determines that the requestor has voluntarily withdrawn the request for the information in writing or has abandoned the request; and (3) the parties agree to dismiss the lawsuit.[154]

Section 552.301(d) provides that if the governmental body seeks an attorney general decision as to whether it may withhold requested information, it must notify the requestor not later than the 10th business day after its receipt of the written request that it is seeking an attorney general decision. Section 552.301(d) reads:

> **(d) A governmental body that requests an attorney general decision under Subsection (a) must provide to the requestor within a reasonable time but not later than the 10th business day after the date of receiving the requestor's written request:**

> **(1) a written statement that the governmental body wishes to withhold the requested information and has asked for a decision from the attorney general about whether the information is within an exception to public disclosure; and**

> **(2) a copy of the governmental body's written communication to the attorney general asking for a decision or, if the governmental body's written communication to the**

---

[153]   Open Records Decision Nos. 542 at 3 (1990), 449 (1986).

[154]   Gov't Code § 552.301(g).

**attorney general discloses the requested information, a redacted copy of that written communication.**

The attorney general interprets subsection 552.301(d)(1) to mean that a governmental body substantially complies with subsection (d)(1) by sending the requestor a copy of the governmental body's written communication to the attorney general requesting a decision. Because governmental bodies may be required to submit evidence of their compliance with subsection (d), governmental bodies are encouraged to submit evidence of their compliance when seeking an attorney general decision. If a governmental body fails to comply with subsection (d), the requested information is presumed public pursuant to section 552.302.

## B.     Items the Governmental Body Must Submit to the Attorney General

Subsections 552.301(e) and (e-1) of the Government Code read:

**(e)  A governmental body that requests an attorney general decision under Subsection (a) must within a reasonable time but not later than the 15th business day after the date of receiving the written request:**

**(1)  submit to the attorney general:**

**(A)  written comments stating the reasons why the stated exceptions apply that would allow the information to be withheld;**

**(B)  a copy of the written request for information;**

**(C)  a signed statement as to the date on which the written request for information was received by the governmental body or evidence sufficient to establish that date; and**

**(D)  a copy of the specific information requested, or submit representative samples of the information if a voluminous amount of information was requested; and**

**(2)  label that copy of the specific information, or of the representative samples, to indicate which exceptions apply to which parts of the copy.**

**(e-1)  A governmental body that submits written comments to the attorney general under Subsection (e)(1)(A) shall send a copy of those comments to the person who requested the information from the governmental body not later than the 15th business day after the date of receiving the written request. If the written comments disclose or contain the substance of the information requested, the copy of the comments provided to the person must be a redacted copy.**

Thus, subsection (e) of section 552.301 requires a governmental body seeking an attorney general decision as to whether it may withhold requested information to submit to the attorney general, no later than the fifteenth business day after receiving the written request, written comments stating why the claimed exceptions apply, a copy of the written request, a signed statement as to the date of its receipt of the request or sufficient evidence of that date, and a copy of the specific information

it seeks to withhold, or representative samples thereof, labeled to indicate which exceptions are claimed to apply to which parts of the information. Within fifteen business days, a governmental body must also copy the requestor on those comments, redacting any portion of the comments that contains the substance of the requested information. Governmental bodies are cautioned against redacting more than that which would reveal the substance of the information requested from the comments sent to the requestor. A failure to comply with the requirements of section 552.301 can result in the information being presumed public under section 552.302 of the Government Code.

**1.      Written Communication from the Person Requesting the Information**

A person may make a written request for information by delivering the request by U.S. mail, electronic mail, hand delivery, or any appropriate method approved by the governmental body to the public information officer or the officer's designee.[155] A copy of the written request from the member of the public seeking access to the records lets the attorney general know what information was requested, permits the attorney general to determine whether the governmental body met its statutory deadlines in requesting a decision, and enables the attorney general to inform the requestor of the ruling.[156] These written communications are generally public information.[157]

**2.      Information Requested from the Governmental Body**

Section 552.303(a) provides:

> **A governmental body that requests an attorney general decision under this subchapter shall supply to the attorney general, in accordance with Section 552.301, the specific information requested. Unless the information requested is confidential by law, the governmental body may disclose the requested information to the public or to the requestor before the attorney general makes a final determination that the requested information is public or, if suit is filed under this chapter, before a final determination that the requested information is public has been made by the court with jurisdiction over the suit, except as otherwise provided by Section 552.322.**

Governmental bodies should submit a clean, legible copy of the information at issue. Original records should not be submitted. If the requested records are voluminous and repetitive, a governmental body may submit representative samples.[158] If, however, each document contains substantially different information, a copy of each and every requested document or all information must be submitted to the attorney general.[159] For example, it is not appropriate to submit a representative sample of information when the proprietary information of third parties is at issue. In that circumstance, it is necessary to submit the information of each third party with a potential proprietary interest rather than submitting the information of one third party as a representative

---

[155]   Gov't Code § 552.234(a).

[156]   *See* Gov't Code § 552.306(b); Open Records Decision No. 150 (1977).

[157]   *Cf.* Gov't Code § 552.301(d)(2), (e-1) (requiring governmental body to provide requestor copies of its written communications to attorney general); Open Records Decision No. 459 (1987) (considering public availability of governmental body's letter to attorney general).

[158]   Gov't Code § 552.301(e)(1)(D).

[159]   Open Records Decision Nos. 499 at 6 (1988), 497 at 4 (1988).

sample. The attorney general must not disclose the submitted information to the requestor or the public.[160]

### 3. Labeling Requested Information to Indicate Which Exceptions Apply to Which Parts of the Requested Information

When a governmental body raises an exception applicable to only part of the information, it must mark the records to identify the information it believes is subject to that exception. A general claim that an exception applies to an entire report or document, when the exception clearly does not apply to all information in that report or document, does not conform to the Act.[161] When labeling requested information, a governmental body should mark the records in such a way that all of the requested information remains visible for the attorney general's review. For obvious reasons, the attorney general cannot make a determination on information it cannot read.

### 4. Statement or Evidence as to Date Governmental Body Received Written Request

The governmental body, in its submission to the attorney general, must certify or provide sufficient evidence of the date it received the written request.[162] This will enable the attorney general to determine whether the governmental body has timely requested the attorney general's decision within ten business days of receiving the written request, as required by section 552.301(b), and timely submitted the other materials that are required by section 552.301(e) to be submitted by the fifteenth business day after receipt of the request. Section 552.301 provides that if a governmental body receives a written request by United States mail and cannot adequately establish the actual date on which the governmental body received the request, the written request is considered to have been received by the governmental body on the third business day after the date of the postmark on a properly addressed request.[163]



The attorney general only counts business days as provided by section 552.0031, which was added by the 88th Legislature.[164] A governmental body briefing the attorney general under section 552.301 should inform the attorney general in the briefing of any holiday observed by the governmental body.

### 5. Letter from the Governmental Body Stating Which Exceptions Apply and Why

The letter from the governmental body stating which exceptions apply to the information and why they apply is necessary because the Act presumes that governmental records are open to the public unless the records are within one of the exceptions set out in Subchapter C.[165] This presumption is based on the language of section 552.021, which makes virtually all information in the custody of a governmental body available to the public. This language places on the governmental body

---

[160]   Gov't Code § 552.3035.

[161]   Gov't Code § 552.301(e)(2); Open Records Decision Nos. 419 at 3 (1984), 252 at 3 (1980), 150 at 2 (1977).

[162]   Gov't Code § 552.301(e)(1)(c).

[163]   Gov't Code § 552.301(a-1).

[164]   Gov't Code § 552.0031.

[165]   *See* Attorney General Opinion H-436 (1974); Open Records Decision Nos. 363 (1983), 150 (1977), 91 (1975).

the burden of proving that an exception applies to the records requested from it.[166]  Thus, if the governmental body wishes to withhold particular information, it must establish that a particular exception applies to the information and must mark the records to identify the portion the governmental body believes is excepted from disclosure.  Conclusory assertions that a particular exception applies to requested information will not suffice.  The burden for establishing the applicability of each exception in the Act is discussed in detail in Part Two of this *Handbook*.  If a governmental body does not establish how and why an exception applies to the requested information, the attorney general has no basis on which to pronounce it protected.[167]

The governmental body must send to the requestor a copy of its letter to the attorney general stating why information is excepted from public disclosure.[168]  In order to explain how a particular exception applies to the information in dispute, the governmental body may find it necessary to reveal the content of the requested information in its letter to the attorney general.  In such cases, the governmental body must redact comments containing the substance of the requested information in the copy of its letter it sends to the requestor.[169]

## C.     Section 552.302:  Information Presumed Public if Submissions and Notification Required by Section 552.301 Are Not Timely

Section 552.302 of the Government Code provides:

> **If a governmental body does not request an attorney general decision as provided by Section 552.301 and provide the requestor with the information required by Sections 552.301(d) and (e-1), the information requested in writing is presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information.**

Section 552.301(b) establishes a deadline of ten business days for the governmental body to request a decision from the attorney general and state the exceptions that apply.[170]  Subsection (d) of section 552.301 requires that the governmental body notify the requestor within ten business days if it is seeking an attorney general decision as to whether the information may be withheld.  Section 552.301(e) establishes a deadline of fifteen business days for the governmental body to provide the other materials required under that subsection to the attorney general.  Subsection (e-1) of section 552.301 requires that the governmental body copy the requestor on its written comments, within fifteen business days, redacting any portion of the comments that contains the substance of the information requested.

Section 552.302 provides that if the governmental body does not make a timely request for a decision, notify and copy the requestor, and make the requisite submissions to the attorney general

---

[166]  *See Thomas v. Cornyn*, 71 S.W.3d 473, 480-81 (Tex. App.—Austin 2002, no pet.); Open Records Decision Nos. 542 at 2-3 (1990) (burden is placed on governmental body when it requests ruling pursuant to statutory predecessor to Gov't Code § 552.301), 532 at 1 (1989), 363 (1983), 197 at 1 (1978).

[167]  Open Records Decision No. 363 (1983).

[168]  Gov't Code § 552.301(e-1).

[169]  Gov't Code § 552.301(e-1).

[170]  *See also* Gov't Code §§ 552.308 (timeliness of action by United States mail, interagency mail, or common or contract carrier), .309 (timeliness of action by electronic submission).

as required by section 552.301, the requested information will be presumed to be open to the public, and only the demonstration of a "compelling reason" for withholding the information can overcome that presumption.[171] In the great majority of cases, the governmental body will not be able to overcome that presumption and must promptly release the requested information. Whether failure to meet the respective ten and fifteen business day deadlines, by submitting the requisite information within those deadlines, has the effect of requiring disclosure depends on whether the governmental body asserts a compelling reason that would overcome the presumption of openness arising from the governmental body's failure to meet the submission deadlines.

In *Paxton v. City of Dallas*, the Texas Supreme Court determined (1) the failure of a governmental body to timely seek a ruling from the attorney general to withhold information subject to the attorney-client privilege does not constitute a waiver of the privilege, and (2) the attorney-client privilege constitutes a compelling reason to withhold information under section 552.302 of the Government Code.[172]

The supreme court's decision overrules a long line of attorney general decisions discussing the burden a governmental body must meet in order to overcome the legal presumption that the requested information is public and must be released unless there is a compelling reason to withhold the information from disclosure. However, notwithstanding *Paxton v. City of Dallas*, the section 552.302 presumption of openness is triggered as soon as the governmental body fails to meet any of the requisite deadlines for submissions or notification set out in section 552.301. Governmental bodies should review the determination in *Paxton v. City of Dallas* when considering the consequences of failing to comply with the procedures set out in section 552.301.

## D. Section 552.303: Attorney General Determination that Information in Addition to that Required by Section 552.301 Is Necessary to Render a Decision

Section 552.303 of the Government Code provides for instances when the attorney general determines information other than that required to be submitted by section 552.301 is necessary to render a decision.[173] If the attorney general determines more information is necessary to render a decision, it must so notify the governmental body and the requestor.[174] If the additional material is not provided by the governmental body within seven *calendar* days of its receipt of the attorney general's notice, the information sought to be withheld is presumed public and must be disclosed unless a compelling reason for withholding the information is demonstrated.[175]

---

[171] Gov't Code § 552.302; *see Hancock v. State Bd. of Ins.*, 797 S.W.2d 379 (Tex. App.—Austin 1990, no writ); Open Records Decision Nos. 515 at 6 (1988), 452 (1986), 319 (1982); *see also Simmons v. Kuzmich*, 166 S.W.3d 342, 348-49 (Tex. App.—Fort Worth 2005, no pet.) (party seeking to withhold information has burden in trial court of proving exception from disclosure and presumably must comply with steps mandated by statute to seek and preserve such exception from disclosure); *Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 122 n.6 (Tex. App.—Austin 2003, no pet.) (court need not decide whether law enforcement exception applies because city never submitted any reasons or comments as to how exception applied, and issue was not before it because city failed to meet Act's procedural requirements).

[172] *Paxton v. City of Dallas*, 509 S.W.3d 247, 262, 271 (Tex. 2017).

[173] Gov't Code § 552.303(b)-(e).

[174] Gov't Code § 552.303(c).

[175] Gov't Code § 552.303(d)-(e).

## E. Section 552.3031: Electronic Submission of Request for Attorney General Decision



The 88th Legislature added section 552.3031 of the Government Code, which requires certain governmental bodies to use the attorney general's electronic filing system when seeking a request for an open records decision. This section does not apply to a governmental body with fewer than 16 full-time employees or located in a county with a population of less than 150,000.[176] Additionally, this section does not apply if the amount or format of the responsive information at issue in a particular request makes use of the attorney general's electronic filing system impractical or impossible.[177] Further, if the request is hand delivered to the office of the attorney general, section 552.3031 also does not apply.[178] A governmental body requesting an attorney general decision pursuant to section 552.3031 must use the attorney general's designated electronic filing system.[179]

Section 552.3031(c) authorizes the attorney general to promulgate rules necessary to implement this section, including rules regarding the type or size of files that make the use of the electronic-filing system impractical or impossible.[180] These rules will be available on the attorney general's website.

## F. Section 552.305: When the Requested Information Involves a Third Party's Privacy or Property Interests

Section 552.305 of the Government Code reads as follows:

**(a)  In a case in which information is requested under this chapter and a person's privacy or property interests may be involved, including a case under Section 552.101, 552.110, 552.1101, 552.114, 552.131, or 552.143, a governmental body may decline to release the information for the purpose of requesting an attorney general decision.**

**(b)  A person whose interests may be involved under Subsection (a), or any other person, may submit in writing to the attorney general the person's reasons why the information should be withheld or released.**

**(c)  The governmental body may, but is not required to, submit its reasons why the information should be withheld or released.**

**(d)  If release of a person's proprietary information may be subject to exception under Section 552.101, 552.110, 552.1101, 552.113, 552.131, or 552.143, the governmental**

---

[176]  Gov't Code § 552.3031(a)(1).
[177]  Gov't Code § 552.3031(a)(2).
[178]  Gov't Code § 552.3031(a)(3).
[179]  Gov't Code § 552.3031(b).
[180]  Gov't Code § 552.3031(c).

**body that requests an attorney general decision under Section 552.301 shall make a good faith attempt to notify that person of the request for the attorney general decision. Notice under this subsection must:**

**(1) be in writing and sent within a reasonable time not later than the 10th business day after the date the governmental body receives the request for the information; and**

**(2) include:**

    **(A) a copy of the written request for the information, if any, received by the governmental body; and**

    **(B) a statement, in the form prescribed by the attorney general, that the person is entitled to submit in writing to the attorney general within a reasonable time not later than the 10th business day after the date the person receives the notice:**

        **(i) each reason the person has as to why the information should be withheld; and**

        **(ii) a letter, memorandum, or brief in support of that reason.**

**(e) A person who submits a letter, memorandum, or brief to the attorney general under Subsection (d) shall send a copy of that letter, memorandum, or brief to the person who requested the information from the governmental body. If the letter, memorandum, or brief submitted to the attorney general contains the substance of the information requested, the copy of the letter, memorandum, or brief may be a redacted copy.**

Section 552.305 relieves the governmental body of its duty under section 552.301(b) to state which exceptions apply to the information and why they apply when (1) a third party's privacy or property interests may be implicated, (2) the governmental body has requested a ruling from the attorney general, and (3) the third party or any other party has submitted reasons for withholding or releasing the information.[181] However, section 552.305 does not relieve a governmental body of its duty to request a ruling within ten business days of receiving a request for information, notify the requestor in accordance with section 552.301(d), or provide the attorney general's office with the information required in section 552.301(e).[182] The language of section 552.305(b) is permissive and does not require a third party with a property or privacy interest to seek relief from the attorney general before filing suit against the attorney general under section 552.325. The opportunity to submit comments during the ruling process does not automatically provide access to the courts. A third party must still meet jurisdictional requirements for standing before it may file suit over a ruling that orders information to be disclosed.

---

[181]    Open Records Decision No. 542 at 3 (1990).

[182]    *See* Gov't Code §§ 552.301(a)-(b), (e), .305.

Section 552.305(d) requires the governmental body to make a good faith effort to notify a person whose proprietary interests may be implicated by a request for information where the information may be excepted from disclosure under section 552.101, 552.110, 552.1101, 552.113, 552.131, or 552.143. The governmental body is generally not required to notify a party whose privacy, as opposed to proprietary, interest is implicated by a release of information. The governmental body may itself argue that the privacy interests of a third party except the information from disclosure.

The required notice must be in writing and sent within ten business days of the governmental body's receipt of the request. It must include a copy of the written request for information and a statement that the person may, within ten business days of receiving the notice, submit to the attorney general reasons why the information in question should be withheld and explanations in support thereof. The form of the statement required by section 552.305(d)(2)(B), as prescribed by the attorney general, can be found in Part Seven of this *Handbook*. Subsection (e) of section 552.305 requires a person who submits reasons under subsection (d) for withholding information to send a copy of such communication to the requestor of the information, unless the communication reveals the substance of the information at issue, in which case the copy sent to the requestor may be redacted.

The following open records decisions have interpreted the statutory predecessor to section 552.305:

> Open Records Decision No. 652 (1997) — if a governmental body takes no position pursuant to section 552.305 of the Government Code or has determined that requested information is not protected under a specific confidentiality provision, the attorney general will issue a decision based on a review of the information at issue and on any other information provided to the attorney general by the governmental body or third parties;

> Open Records Decision No. 609 (1992) — the attorney general is unable to resolve a factual dispute when a governmental body and a third party disagree on whether information is excepted from disclosure based on the third party's property interests;

> Open Records Decision No. 575 (1990) — the Public Information Act does not require a third party to substantiate its claims of confidentiality at the time it submits material to a governmental body;

> Open Records Decision No. 552 (1990) — explanation of how the attorney general deals with a request when, pursuant to the statutory predecessor to section 552.305 of the Public Information Act, a governmental body takes no position on a third party's claim that information is excepted from public disclosure by the third party's property interests and when relevant facts are in dispute; and

> Open Records Decision No. 542 (1990) — the statutory predecessor to section 552.305 did not permit a third party to request a ruling from the attorney general.

## G. Section 552.3035: Attorney General Must Not Disclose Information at Issue

Section 552.3035 of the Government Code expressly prohibits the attorney general from disclosing information that is the subject of a request for an attorney general decision.

## H.    Section 552.304:  Submission of Public Comments

Section 552.304 of the Government Code permits any person to submit written comments as to why information at issue in a request for an attorney general decision should or should not be released.  In order to be considered, such comments must be received before the attorney general renders a decision under section 552.306, and must be submitted pursuant to sections 552.308 and 552.309, as discussed below.

## I.    Rendition of Attorney General Decision

Pursuant to section 552.306 of the Government Code the attorney general must render an open records decision "not later than the 45th business day after the date the attorney general received the request for a decision."[183]  If the attorney general cannot render a decision by the 45 day deadline, the attorney general may extend the deadline by ten business days by informing the governmental body and the requestor of the reason for the delay.[184]  The attorney general must provide a copy of the decision to the requestor.[185]  The attorney general addressed this section in Open Records Decision No. 687 (2011), concluding section 552.306 imposes a duty on the attorney general to rule on a claimed exception to disclosure when, prior to the issuance of the decision, a party has brought an action before a Texas court posing the same open records question.



The 88th Legislature amended section 552.306 by adding subsections (c) and (d), which require a governmental body, as soon as practicable but no later than 30 days after the attorney general issued an opinion on a public information request, to: provide the requestor an itemized estimate of charges for production of the information if applicable; produce the information if required; notify the requestor in writing that the governmental body is withholding the information as authorized by the opinion; or notify the requestor in writing that the governmental body has filed suit against the attorney general regarding the information.[186]

## J.    Timeliness of Action

Pursuant to section 552.308 of the Government Code, when the Act requires a request, notice or other document to be submitted or otherwise given to a person within a specified period, then, except as provided by section 552.3031, the requirement is met in a timely fashion if the document is sent by first class United States mail or common or contract carrier properly addressed with postage or handling charges prepaid and:  (1) bears a post office cancellation mark or a receipt mark of the carrier indicating a time within that period; or (2) the submitting person furnishes satisfactory proof the document was deposited in the mail or with the carrier within that period.[187]  Further, except as provided by section 552.3031, if a state agency is required to submit information to the attorney general, the timeliness requirement is met if the information is sent by interagency

---

[183]   Gov't Code § 552.306(a).

[184]   Gov't Code § 552.306(a).

[185]   Gov't Code § 552.306(b).

[186]   Gov't Code § 552.306(c)-(d).

[187]   Gov't Code § 552.308(a).

mail and the state agency provides sufficient evidence to establish the information was deposited within the proper period.[188]

The attorney general has established an electronic filing system that allows governmental bodies and interested third parties to submit information electronically for a fee.[189] Information submitted through this designated system will be considered timely if it is electronically submitted within the proper time period.[190] As previously noted, pursuant to section 552.3031, some governmental bodies are required to use the attorney general's electronic filing system when seeking a request for an Open Records decision. The attorney general will promulgate rules to administer the designated system.[191] These rules will be available on the attorney general's website. The creation of the electronic filing system does not affect the right of a person or governmental body to submit information to the attorney general under section 552.308.[192]

## K.    Section 552.310: Searchable Database

The 88th Legislature added section 552.310 of the Government Code, which provides:



(a)  **The office of the attorney general shall make available on the office's Internet website an easily accessible and searchable database consisting of:**

  (1)  **information identifying each request for an attorney general decision made under this subchapter; and**

  (2)  **the attorney general's opinion issued for the request.**

(b)  **The database at a minimum must allow a person to search for a request or opinion described by Subsection (a) by:**

  (1)  **the name of the governmental body making the request; and**

  (2)  **the exception under Subchapter C that a governmental body asserts in the request applies to its request to withhold information from public disclosure.**

(c)  **The database must allow a person to view the current status of a request described by Subsection (a)(1) and an estimated timeline indicating the date each stage of review of the request will be started and completed.**

The database required by section 552.310 is available on the attorney general's website.

---

[188]  Gov't Code § 552.308(b).

[189]  *See* Gov't Code § 402.006(d).

[190]  Gov't Code § 552.309(a).

[191]  1 T.A.C. §§ 63.21-.24.  These rules are available on the attorney general's website and in Part Four of this *Handbook*.

[192]  Gov't Code § 552.309(c).

# VII. COST OF COPIES AND ACCESS

Subchapter F of the Public Information Act, sections 552.261 through 552.275, generally provides for allowable charges for copies of and access to public information. All charges must be calculated in accordance with the rules promulgated by the attorney general under section 552.262.[193] The rules establish the charges, as well as methods of calculation for those charges. The rules also provide that a governmental body that is not a state agency may exceed the costs established by the rules of the attorney general by up to 25 percent.[194] The cost rules are available on the attorney general's website and in Part Four of this *Handbook*. Also available on the website is the Public Information Cost Estimate Model, a tool designed to assist the public and governmental bodies in estimating costs associated with public information requests.[195]

## A. Charges for Copies of Paper Records and Electronic Records

Section 552.261(a) of the Government Code allows a governmental body to recover costs related to reproducing public information. A request for copies may generally be assessed charges for labor, overhead (which is calculated as a percentage of the total labor), and materials.[196] However, if the request is for 50 or fewer pages of paper records, only the charge for the photocopy may be imposed.[197]

Requests that require programming and/or manipulation of data may be assessed charges for those tasks also, as well as computer time to process the request.[198] The law defines "programming" as "the process of producing a sequence of coded instructions that can be executed by a computer."[199] "Manipulation" of data is defined as "the process of modifying, reordering, or decoding of information with human intervention."[200] Finally, "processing" means "the execution of a sequence of coded instructions by a computer producing a result."[201] The amount allowed for computer processing depends on the type of computer used and the time needed for the computer to process the request. The time is calculated in CPU minutes for mainframe and mid-range computers, and in clock hours for client-servers, LAN, and PCs. Computer processing time is not charged for the same time that a governmental body is charging for labor or programming. The use of a computer during this time period is covered by the overhead charge.

Section 552.261 allows requests to be combined in some instances. Section 552.261(e) states:

> **(e) Except as otherwise provided by this subsection, all requests received in one calendar day from an individual may be treated as a single request for purposes of calculating**

---

[193] *See* 1 T.A.C. §§ 70.1-.13.

[194] Gov't Code § 552.262(a).

[195] https://www.texasattorneygeneral.gov/open-government/governmental-bodies/charges-public-information/public-information-cost-estimate-model.

[196] 1 T.A.C. § 70.3(d), (e), (i).

[197] Gov't Code § 552.261(a).

[198] 1 T.A.C. § 70.3(c), (d), (h).

[199] Gov't Code § 552.003(4).

[200] Gov't Code § 552.003(2).

[201] Gov't Code § 552.003(3).

**costs under this chapter. A governmental body may not combine multiple requests under this subsection from separate individuals who submit requests on behalf of an organization**.

Therefore, a governmental body may combine separate requests from one individual received within one calendar day when calculating costs.

## **Examples:**

1. A governmental body receives a request for copies of the last 12 months' worth of travel expenditures for employees, including reimbursements and backup documentation. The records are maintained in the governmental body's main office. The governmental body determines there are 120 pages, and it will take one and a half hours to locate and compile the requested information, redact confidential information and make copies. The total allowable charges for this request would be:

| | |
|---|---|
| Copies, 120 pages @ $.10/page | $12.00 |
| Labor, 1.5 hours @ $15.00/hour | $22.50 |
| Overhead, $22.50 x .20 | $4.50 |
| Total for copies & labor (paper records) | $39.00 |

2. In addition to the above request, the requestor sends a separate request for copies of all e-mails between two named employees and members of the public for the same 12-month period. The governmental body has determined that it will take half of an hour to locate the responsive e-mails and that the e-mails contain confidential information that must be redacted. The governmental body's e-mail system allows electronic redaction by writing a program, which will take the governmental body's programmer half of an hour to write. Once the program is written it will take half of an hour to execute. The requestor wants the e-mails on a CD, and it will take an additional half of an hour to copy the information onto the CD. The total charges for this request would be:

| | |
|---|---|
| Labor, .50 hours to locate responsive e-mails, @ $15.00/hour | $7.50 |
| Labor, .50 hours to write program to redact, @ $28.50/hour | $14.25 |
| Labor, .50 hours to copy to CD, @ $15.00/hour | $7.50 |
| Overhead, $29.25 ($7.50 +$14.50 +$7.50) x .20 | $5.85 |
| Client Server, .50 hours to execute program, @ $2.20/hour | $1.10 |
| Materials, 1 CD @ $1.00/each | $1.00 |
| Total for materials & labor (electronic redaction/electronic records) | $37.20 |

Postage charges may be added if the requestor requests the CD be sent by mail.

3. The requestor makes an additional request to a second governmental body whose system does not allow electronic redaction of e-mail addresses. To provide the requestor the records in electronic medium, the governmental body has determined that it will take half

of an hour to locate, compile and print the request e-mails  The governmental body has also determined that it will take half of an hour to manually redact confidential information, and an additional fifteen minutes to scan the redacted e-mails into an electronic file.  The governmental body may charge to print out and redact the e-mails that must be manually redacted and scanned.  The requestor wants the e-mails on a CD and the governmental body has determined that it will take three minutes for the computer to process this copy. The total charges for this request would be:

| | |
|---|---:|
| Printouts to be scanned, 80 pages, @ $.10/page | $8.00 |
| Labor, .50 hours to locate/compile/print responsive e-mails, @ $15.00/hour | $7.50 |
| Labor, .50 hours to redact, @ $15.00/hour | $7.50 |
| Labor, .25 hours to scan redacted copies, @ $15.00/hour | $3.75 |
| Overhead, $18.75 ($7.50 + $7.50 = $3.75) x .20 | $3.75 |
| Client Server, .05 hours to copy to CD, @ $2.20/hour | $0.18 |
| Materials, 1 CD @ $1.00/each | $1.00 |
| Total for materials and labor (manual redaction/electronic records) | $31.68 |

Postage charges may be added if the requestor requests the CD be sent by mail.

## B.    Charges for Inspection of Paper Records and Electronic Records

Charges for inspection of paper records are regulated by section 552.271 of the Government Code, and charges for inspection of electronic records are regulated in section 552.272 of the Government Code.  Section 552.271 allows charges for copies for any page that must be copied so that confidential information may be redacted to enable the requestor to inspect the information subject to release.[202]  No other charges are allowed unless[203] (a) the records to be inspected are older than five years, or (b) the records completely fill, or when assembled will completely fill, six or more archival boxes, and (c) the governmental body estimates it will require more than five hours to prepare the records for inspection.[204]  If a governmental body has fewer than 16 full-time employees, the criteria are reduced to allow additional charges when (a) the records are older than three years, or (b) the records fill, or when assembled will completely fill, three or more archival boxes, and (c) the governmental body estimates it will require more than two hours to prepare the records for inspection.[205]  An "archival box" is a box that measures approximately 12.5" W x 15.5" L x 10" H.[206]  Only records responsive to the request may be counted towards the number of boxes. Preparing records that fall under subsections 552.271(c) or (d) for inspection includes the time needed to locate and compile the records, redact the confidential information, and make copies of

---

[202]  Gov't Code § 552.271(b).

[203]  Gov't Code § 552.271(a).

[204]  Gov't Code § 552.271(c).

[205]  Gov't Code § 552.271(d).

[206]  1 T.A.C. § 70.2(10).

pages that require redaction. Overhead charges are not allowed on requests for inspection of paper records.[207]

Section 552.272 allows charges for labor when providing access to electronic information requires programming and/or manipulation of data, regardless of whether or not the information is available directly on-line to the requestor.[208] No other charges are allowed. Printing electronic records is neither programming nor manipulation of data. Overhead is not allowed on requests for inspection of electronic records.[209]

**Example:**

1. The requestor states she wants to inspect travel expenditure records from two years ago, and then decide whether or not she wants copies. The governmental body keeps the responsive information in paper files. Of the 120 pages that are responsive, 112 pages have confidential information that must be redacted before the requestor may inspect the records. The total allowable charges for this request would be:

   | | |
   |---|---|
   | Redacted copies, 112 @ $.10/page | $11.20 |
   | Labor & Overhead | $0.00 |
   | Total for inspection (redacted copies) | $11.20 |

2. The requestor makes a second request to view travel documents for the past year. The governmental body has these more recent documents in an electronic format. The governmental body maintains 100 responsive electronic documents. The governmental body also has the ability to redact this information electronically and estimates it will take 30 minutes to redact the confidential information. The total allowable charges would be:

   | | |
   |---|---|
   | Labor, Manipulation of Data to redact | $7.50 |
   | Total for inspection | $7.50 |

## C.    **Waivers or Reduction of Estimated Charges**

If a governmental body determines that producing the information requested is in the "public interest" because it will primarily benefit the general public, the governmental body shall waive or reduce the charges.[210] The determination of whether providing information is in the "public interest" rests solely with the governmental body whose records are requested.[211] Additionally,

---

[207]   Gov't Code § 552.271(c), (d).

[208]   Gov't Code § 552.272(a), (b).

[209]   Gov't Code § 552.272(a), (b).

[210]   Gov't Code § 552.267(a).

[211]   Gov't Code § 552.267(a).

the law allows a governmental body to waive charges if the cost of collecting the amount owed exceeds the actual amount charged.[212]

## D. Providing a Statement of Estimated Charges as Required by Law

If a governmental body estimates that charges will exceed $40.00, the governmental body is required to provide the requestor with a written itemized statement of estimated charges before work is undertaken.[213] The statement must advise the requestor they may contact the governmental body if there is a less costly method of viewing the records.[214] The statement must also contain a notice that the request will be considered automatically withdrawn if the requestor does not respond in writing within ten business days of the date of the statement that the requestor: (a) accepts the charges, (b) modifies the request in response to the estimate, or (c) has sent, or is sending, a complaint regarding the charges to the attorney general.[215] If the governmental body has the ability to communicate with the general public by electronic mail and/or facsimile, the statement must also advise the requestor that a response may be sent by either of those methods, as well as by regular mail or in person.[216]

Governmental bodies are cautioned that an itemized statement lacking any of the required elements is considered to be "deficient" because it does not comply with the law. The consequences of providing a deficient statement may result in (a) limiting the amount the governmental body may recover through charges,[217] and/or (b) preventing the governmental body from considering the request withdrawn by operation of law.[218]

If after receiving agreement from the requestor for the charges, but before completing the request, the governmental body determines the actual charges will exceed the agreed-upon charges by more than 20 percent, the governmental body must provide the requestor an updated statement of estimated charges.[219] This updated statement has the same requirements as the initial statement. If the governmental body fails to provide the updated statement of estimated charges, charges for the entire request are limited to the initial agreed-upon estimate plus 20 percent.[220] If the requestor does not respond to the updated statement, the request is considered withdrawn.[221]


The 88th Legislature amended the procedures a governmental body must follow after receiving a decision from the attorney general. If a governmental body determines that a cost estimate is necessary after receiving a decision pursuant to section 552.306, the cost estimate should be provided as soon as practicable but within a reasonable time.[222]

---

212  Gov't Code § 552.267(b).

213  Gov't Code § 552.2615(a); 1 T.A.C. § 70.7(a).

214  Gov't Code § 552.2615(a).

215  Gov't Code § 552.2615(b).

216  Gov't Code § 552.2615(a)(3).

217  1 T.A.C. § 70.7(a).

218  Gov't Code § 552.2615(a)(2).

219  Gov't Code § 552.2615(c).

220  Gov't Code § 552.2615(c).

221  Gov't Code § 552.2615(c).

222  Gov't Code § 552.306(c)(1).

If a request is estimated to exceed $100.00 ($50.00 if a governmental body has fewer than 16 full-time employees), a governmental body that provides the statement of estimated charges with all its required elements may also require that the requestor pay a deposit or bond.[223] If the request is for inspection of paper records, the deposit may not exceed 50 percent of the entire estimated amount.[224] Decisions about method of payment rest with the governmental body. A governmental body that requires a deposit or bond may consider the request withdrawn if payment is not made within ten business days of the date the governmental body requested the deposit or bond.[225] If the requestor makes payment within the required time, the request is considered received on the date the payment is made.[226] Additionally, a governmental body is not required to comply with a new request if a requestor owes more than $100.00 on unpaid charges for previous requests for which the requestor was provided, and accepted, an appropriate statement of estimated charges.[227] In such cases, the governmental body may require the requestor to pay the unpaid amounts before complying with that request. All unpaid charges must be duly documented.[228]

In addition to the statement of estimated charges required when a request will exceed $40.00, a governmental body is also required to provide a statement when it determines that a request will require programming and/or manipulation of data and (1) complying with the request is not feasible or will substantially interfere with the governmental body's ongoing operation, or (2) the request can only be fulfilled at a cost that covers the programming and/or manipulation of data.[229] Governmental bodies are cautioned that a statement under section 552.231, unlike section 552.2615, is not contingent on the charges being over a certain amount. Rather, the statement is mandated if the requisite conditions are present. The statement must state that the information is not available in the form requested. The statement must also include a description of the form in which the information is available, a description of any contracts or services needed to put the information in the form requested, the estimated charges calculated in accordance with the rules promulgated by the attorney general, and the estimated time of completion to provide the information in the form requested.[230] On provision of the statement, the governmental body is not required to provide the information in the form requested unless the requestor states, in writing, that the requestor agrees with the estimated charges and time parameters, or that the requestor will accept the information in the form that is currently available.[231] If the requestor fails to respond to the statement in writing within 30 days, the request is considered withdrawn.[232]

---

[223]  Gov't Code § 552.263(c); 1 T.A.C. § 70.7(d), (e).

[224]  1 T.A.C. § 70.7(e).

[225]  Gov't Code § 552.263(f).

[226]  Gov't Code § 552.263(e).

[227]  Gov't Code § 552.263(c); 1 T.A.C. § 70.7(f).

[228]  Gov't Code § 552.263(c); 1 T.A.C. § 70.7(f).

[229]  Gov't Code § 552.231(a).

[230]  Gov't Code § 552.231(b).

[231]  Gov't Code § 552.231(d).

[232]  Gov't Code § 552.231(d-1).

## E. Cost Provisions Regarding Requests Requiring a Large Amount of Personnel Time

Section 552.275 of the Government Code authorizes a governmental body to establish a reasonable limit, not less than 15 hours for a one month period or 36 hours in a 12 month period, on the amount of time that personnel are required to spend producing public information for inspection or copies to a requestor, without recovering the costs attributable to the personnel time related to that requestor.[233] If a governmental body chooses to establish a time limit under this section, a requestor will be required to compensate the governmental body for the costs incurred in satisfying subsequent requests once the time limit has been reached. Section 552.275 allows county officials who have designated the same officer for public information to calculate time for purposes of this section collectively.[234] A limit under this section does not apply if the requestor is an elected official of the United States, the State of Texas, or a political subdivision of the State of Texas; or an individual who, for a substantial portion of the individual's livelihood or for substantial financial gain is seeking the information for (a) dissemination by a new medium or communication service provider, or (b) creation or maintenance of an abstract plant as described by section 2501.004 of the Insurance Code.[235] Section 552.275 does not replace or supersede other sections, and it does not preclude a governmental body from charging labor for a request for inspection or copies for which a charge is authorized under other sections of this law.

On establishing the time limit, a governmental body must treat all requestors equally, except as provided by the exemptions of subsections (j), (k), and (l). A governmental body that avails itself of section 552.275 must provide a requestor with a statement detailing the time spent in complying with the instant request and the cumulative amount of time the requestor has accrued towards the established limit.[236] A governmental body may not charge for the time spent preparing the statement.[237] If a requestor meets or exceeds the established limit, the governmental body may assess charges for labor, overhead, and material for all subsequent requests. The governmental body is required to provide a written estimate within ten business days of receipt of the request, even if the estimated total will not exceed $40.00. All charges assessed under section 552.275 must be in compliance with the rules promulgated by the attorney general.[238] If a governmental body provides the requestor with a written statement under this section, and the time limits prescribed have been met, the governmental body is not required to respond unless the requestor submits payment.[239]



The 88th Legislature amended section 552.275 to add subsection (n) to allow a governmental body to request photo identification from a requestor in certain cases.[240] A governmental body may request the photo identification for the sole purpose of establishing that the request has not

---

[233]  Gov't Code §552.275(a), (b).

[234]  Gov't Code §552.275(a-1).

[235]  Gov't Code §552.275(j).

[236]  Gov't Code § 552.275(d).

[237]  Gov't Code § 552.275(d).

[238]  Gov't Code § 552.275(e).

[239]  Gov't Code §552.275(g).

[240]  Gov't Code §552.275(n).

exceeded a limit established under section 552.275(a) and concealed the requestor's identity.[241]  A request for photo identification must include a statement under subsection (e) and a statement that describes each specific reason why subsection (n) may apply to the requestor.[242]   The governmental body shall accept as proof of a requestor's identification physical presentment of photo identification or an image of the photo identification electronically or through the mail.[243] Further, a reqestor may decline to provide identification and obtain the information by paying the charges.[244]

If a requestor fails to provide identification or submit payment before the 10th day, the request is considered withdrawn.[245]



## F.      Complaints Regarding Alleged Overcharges

Estimates are, by their very nature, imperfect.  Therefore, governmental bodies are encouraged to run tests on sample data and to rely on the results of those tests in calculating future charges. However, even when a governmental body has taken steps to ensure that a charge is appropriate, a requestor may still believe that the charges are too high.  Section 552.269 of the Government Code states that a requestor who believes he or she has been overcharged may lodge a complaint with the attorney general.[246]  The attorney general reviews the complaint and any appropriate materials and makes determinations on complaints of overcharges.[247]  Complaints must be received within ten business days after the requestor knows of the alleged overcharge, and must include a copy of the original request, and any amendments thereto, as well as a copy of any correspondence from the governmental body stating the charges.[248]  If a complainant does not provide the required information within the established time frame, the complaint is dismissed.[249]

When a complaint is lodged against a governmental body, the attorney general will contact the governmental body by mail or e-mail, to ask questions related to how the charges were calculated, and the physical location and state of the records.[250]  The governmental body may also be asked to provide copies of invoices, contracts, and any other relevant documents.[251]  The attorney general may uphold the charges as presented to the requestor, require the issuance of an amended statement of estimated charges, or, if the requestor has already paid the charges, require the issuance of a refund for the difference between what was paid and the charges that are determined to be appropriate.[252]  A governmental body may be required to pay three times the difference if it is

---

[241]   Gov't Code §552.275(n).

[242]   Gov't Code §552.275(o).

[243]   Gov't Code §552.275(o).

[244]   Gov't Code §552.275(o).

[245]   Gov't Code §552.275(h).

[246]   Gov't Code § 552.269(a).

[247]   Gov't Code § 552.269(a); 1 T.A.C. § 70.8(c)-(g).

[248]   1 T.A.C. § 70.8(b).

[249]   1 T.A.C. § 70.8(b).

[250]   Gov't Code § 552.269(a); 1 T.A.C. § 70.8(c).

[251]   1 T.A.C. § 70.8(c), (d), (e).

[252]   1 T.A.C. § 70.8(f).

determined that a requestor overpaid because the governmental body refused or failed to follow the attorney general rules and the charges were not calculated in good faith.[253]

## G. Cost Provisions Outside the Public Information Act

The provisions of section 552.262 of the Government Code do not apply if charges for copies are established by another statute for specific kinds of information.[254] For example, section 550.065 of the Transportation Code establishes a charge of $6.00 for an accident report maintained by a governmental entity.[255] Section 118.011 of the Local Government Code establishes the charge for a non-certified copy of information obtained from the county clerk.[256] Section 118.144 of the Local Government Code also establishes a charge for copies obtained from the county treasurer.[257] Additionally, the attorney general has determined that section 191.008 of the Local Government Code prevails over section 552.272, by giving a county commissioners court the right to set charges regarding access to certain information held by the county.[258]

# VIII. PENALTIES AND REMEDIES

## A. Informal Resolution of Complaints

The attorney general maintains an Open Government Hotline staffed by personnel trained to answer questions about the Public Information Act. In addition to answering substantive and procedural questions posed by governmental bodies and requestors, the Hotline staff handles written, informal complaints concerning requests for information. While not meant as a substitute for the remedies provided in sections 552.321 and 552.3215, the Hotline provides an informal alternative for complaint resolution. In most cases, Hotline staff are able to resolve complaints and misunderstandings informally. The Hotline can be reached toll-free at (877) 673-6839 (877-OPEN TEX) or in the Austin area at (512) 478-6736 (512-478-OPEN). Questions concerning charges for providing public information should be directed to the attorney general's toll-free Cost Hotline at (888) 672-6787 (888-ORCOSTS) or in the Austin area at (512) 475-2497.

## B. Training Requirement



The 88th Legislature also added subsection 552.012(b-1), which allows the attorney general to require a course of training if it determines that a governmental body has failed to comply with the requirements of the Public Information Act. If training is required, the attorney general must notify each public official in writing of its determination and the requirement to complete training.[259] A

---

253 Gov't Code § 552.269(b); 1 T.A.C. § 70.8(h).

254 Gov't Code § 552.262(a).

255 Transp. Code § 550.065(d).

256 Local Gov't Code § 118.011(a)(4).

257 Local Gov't Code § 118.144.

258 Local Gov't Code § 191.008; Open Records Decision No. 668 at 9 (2000).

259 Gov't Code § 552.012(b)(1).

public official who receives notice must complete the training within 60 days after receiving the notice.[260]

## C.    Criminal Penalties

The Public Information Act establishes criminal penalties for both the release of information that must not be disclosed and the withholding of information that must be released.  Section 552.352(a) of the Government Code provides: "A person commits an offense if the person distributes information considered confidential under the terms of this chapter."  This section applies to information made confidential by law.[261]

Section 552.353(a) of the Government Code provides:

> **An officer for public information, or the officer's agent, commits an offense if, with criminal negligence, the officer or the officer's agent fails or refuses to give access to, or to permit or provide copying of, public information to a requestor as provided by this chapter.**

Subsections (b) through (d) of section 552.353 set out various affirmative defenses to prosecution under subsection (a), including, for example, that a timely request for a decision from the attorney general is pending or that the officer for public information is pursuing judicial relief from compliance with a decision of the attorney general pursuant to section 552.324.[262]  A violation of section 552.352 or section 552.353 constitutes official misconduct[263] and is a misdemeanor punishable by confinement in a county jail for not more than six months, a fine not to exceed $1,000, or both confinement and the fine.[264]

The Act also criminalizes the destruction, alteration or concealment of public records.  Section 552.351 provides that the willful destruction, mutilation, removal without permission, or alteration of public records is a misdemeanor punishable by confinement in a county jail for a minimum of three days and a maximum of three months, a fine of a minimum of $25.00 and a maximum of $4,000, or both confinement and the fine.[265]

## D.    Civil Remedies

### 1.    Writ of Mandamus

Section 552.321 of the Government Code provides for a suit for a writ of mandamus to compel a governmental body to release requested information.  A requestor or the attorney general may seek a writ of mandamus to compel a governmental body to release requested information if the

---

[260]   Gov't Code § 552.012(b)(1).

[261]   *See* Open Records Decision No. 490 (1988).

[262]   Gov't Code § 552.353(b)(2-3). *See generally Hubert v. Harte-Hanks Tex. Newspapers, Inc.*, 652 S.W.2d 546, 548-49 (Tex. App.—Austin 1983, writ ref'd n.r.e.).

[263]   Gov't Code §§ 552.352(c), .353(f).

[264]   Gov't Code §§ 552.352(b), .353(e).

[265]   Gov't Code §552.351(a); *see also* Penal Code § 37.10 (tampering with governmental record).

governmental body refuses to seek an attorney general decision, refuses to release public information or if the governmental body refuses to release information in accordance with an attorney general decision.[266] Section 552.321(b) provides that a mandamus action filed by a requestor under section 552.321 must be filed in a district court of the county in which the main offices of the governmental body are located. A mandamus suit filed by the attorney general under section 552.321 must be filed in a district court in Travis County, except if the suit is against a municipality with a population of 100,000 or less, in which case the suit must be filed in a district court of the county where the main offices of the municipality are located.[267]

Section 552.321 authorizes a mandamus suit to compel the release of information even if the attorney general has ruled such information is not subject to required public disclosure.[268] The courts have held a requestor may bring a mandamus action regardless of whether an attorney general decision has been requested.[269] Further, the Texas Supreme Court considered a requestor's mandamus action filed after the governmental body requested an attorney general decision, but prior to the attorney general's issuance of a decision.[270] The supreme court held a requestor is not required to defer a suit for mandamus until the attorney general issues a decision.[271] A requestor may counterclaim for mandamus as part of his or her intervention in a suit by a governmental body or third party over a ruling that orders information to be disclosed.[272]

Section 552.321(c) allows a requestor to file a writ of mandamus suit to compel a governmental body or an entity to comply with the requirements of Subchapter J of the Act. Subchapter J pertains to certain contracting information.

## 2.       Violations of the Act:     Declaratory Judgment or Injunctive Relief; Formal Complaints

Section 552.3215 of the Government Code provides for a suit for declaratory judgment or injunctive relief brought by a local prosecutor or the attorney general against a governmental body that violates the Act.

## a.       Venue and Proper Party to Bring Suit

An action against a governmental body located in only one county may be brought only in a district court in that county. The action may be brought either by the district or county attorney on behalf of that county, or by the attorney general on behalf of the state. If the governmental body is located in more than one county, such a suit must be brought in the county where the governmental body's

---

[266]   Gov't Code § 552.321(a); *see Thomas v. Cornyn*, 71 S.W.3d 473, 482 (Tex. App.—Austin 2002, no pet.).

[267]   Gov't Code § 552.321(b).

[268]   *Thomas v. Cornyn*, 71 S.W.3d 473, 483 (Tex. App.—Austin 2002, no pet.); *Tex. Dep't of Pub. Safety v. Gilbreath*, 842 S.W.2d 408, 411 (Tex. App.—Austin 1992, no writ).

[269]   *Thomas v. Cornyn*, 71 S.W.3d 473, 483 (Tex. App.—Austin 2002, no pet.); *Tex. Dep't of Pub. Safety v. Gilbreath*, 842 S.W.2d 408, 411 (Tex. App.—Austin 1992, no writ); *see* Open Records Decision No. 687 (2011) (attorney general will rule on claimed exceptions to disclosure when, prior to issuance of open records decision, party brings action before Texas court posing same open records question).

[270]   *Kallinen v. City of Houston*, 462 S.W. 3d 25 (Tex. 2015).

[271]   *Kallinen v. City of Houston*, 462 S.W. 3d 25 (Tex. 2015).

[272]   *Thomas v. Cornyn*, 71 S.W.3d 473, 482 (Tex. App.—Austin 2002, no pet.).

administrative offices are located.[273]  If the governmental body is a state agency, the Travis County district attorney or the attorney general may bring such suit only in a district court of Travis County.[274]

**b.      Suit Pursuant to Formal Complaint**

Before suit may be filed under section 552.3215, a person must first file a complaint alleging a violation of the Act.  The complaint must be filed with the district or county attorney of the county where the governmental body is located.  If the governmental body is located in more than one county, the complaint must be filed with the district or county attorney of the county where the governmental body's administrative offices are located.  If the governmental body is a state agency, the complaint may be filed with the Travis County district attorney.  If the governmental body is the district or county attorney, the complaint must be filed with the attorney general.[275]

**c.      Procedures for Formal Complaint**

A complaint must be in writing and signed by the complainant and include the name of the governmental body complained of, the time and place of the alleged violation, and a general description of the violation.[276]  The district or county attorney receiving a complaint must note on its face the date it was filed and must, before the 31st day after the complaint was filed, determine whether the alleged violation was committed, determine whether an action will be brought under the section, and notify the complainant in writing of those determinations.[277]  If the district or county attorney determines not to bring suit under the section, or determines that a conflict of interest exists that precludes his bringing suit, then he or she must include a statement giving the basis for such determination and return the complaint to the complainant by the 31st day after receipt of the complaint.[278]

If the county or district attorney decides not to bring an action in response to a complaint filed with that office, the complainant may, before the 31st day after the complaint is returned, file the complaint with the attorney general.  On receipt of the complaint, the attorney general within the same time frame must make the determinations and notification required of a district or county attorney.  The 85th Legislature amended section 552.3215 of the Government Code to also allow the complainant to file a complaint under this section with the attorney general if on or after the 90th day after the complainant files a complaint with the district or county attorney, the district or county attorney has not brought an action.[279]  If the attorney general decides to bring an action in response to a complaint against a governmental body located in only one county, the attorney general must file such action in a district court of that county.[280]

---

273   Gov't Code § 552.3215(c).

274   Gov't Code § 552.3215(d).

275   Gov't Code § 552.3215(e).

276   Gov't Code § 552.3215(e).

277   Gov't Code § 552.3215(f)-(g).

278   Gov't Code § 552.3215(h).

279   Gov't Code §552.3215(i).

280   Gov't Code § 552.3215(i).

**d.      Governmental Body Must Be Given Opportunity to Cure Violation**

Actions for declaratory judgment or injunctive relief under section 552.3215 may be brought only if the official proposing to bring the action notifies the governmental body in writing of the determination that the alleged violation was committed and the governmental body does not cure the violation before the fourth day after the date it receives the notice.[281]

**e.      Cumulative Remedy**

Actions for declaratory judgment or injunctive relief authorized under section 552.3215 are in addition to any other civil, administrative, or criminal actions authorized by law.[282]

**3.      Suits Over an Open Records Ruling**

The Act provides judicial remedies for a governmental body seeking to withhold requested information or a third party asserting a privacy or proprietary interest in requested information when the attorney general orders such information to be disclosed.[283]  The venue for these suits against the attorney general is Travis County.  The issue of whether the information is subject to disclosure is decided by the court anew.  The court is not bound by the ruling of the attorney general.  However, the only exceptions to disclosure a governmental body may raise before the court are exceptions that it properly raised in a request for an attorney general decision under section 552.301, unless the exception is one based on a requirement of federal law or one involving the property or privacy interests of another person.[284]

The court of appeals in *Morales v. Ellen* affirmed that the district court had jurisdiction to decide a declaratory judgment action brought against a governmental body by a third party which asserted privacy interests in documents the attorney general had ruled should be released.[285]  The court held the statutory predecessor to section 552.305(b)—which permitted a third party whose privacy or property interests would be implicated by the disclosure of the requested information to "submit in writing to the attorney general the party's reasons why the information should be withheld or released"—is permissive and does not require a third party with a property or privacy interest to exhaust this remedy before seeking relief in the courts. [286]  The legislature then enacted section 552.325 which recognizes the legal interests of third parties and their right to sue the attorney general to challenge a ruling that information must be released.

Sections 552.324 and 552.325 prohibit a governmental body, officer for public information, or other person or entity that wishes to withhold information from filing a lawsuit against a requestor. The only suit a governmental body or officer for public information may bring is one against the attorney general.[287]  Section 552.324(b) requires that a suit by a governmental body be brought no

---

[281]   Gov't Code § 552.3215(j).

[282]   Gov't Code § 552.3215(k).

[283]   Gov't Code §§ 552.324, .325.

[284]   Gov't Code § 552.326; *City of Dallas v. Abbott*, 304 S.W.3d 380, 392 (Tex. 2010); *Tex. Comptroller of Pub. Accounts v. Attorney General of Tex.*, 354 S.W.3d 336, 340 (Tex. 2010).

[285]   *Morales v. Ellen*, 840 S.W.2d 519, 523 (Tex. App.—El Paso 1992, writ denied).

[286]   *Morales v. Ellen*, 840 S.W.2d 519, 523 (Tex. App.—El Paso 1992, writ denied).

[287]   Gov't Code § 552.324(a).

later than the 30th calendar day after the governmental body receives the decision it seeks to challenge. If suit is not timely filed under the section, the governmental body must comply with the attorney general's decision. The deadline for filing suit under section 552.324 does not affect the earlier ten day deadline required of a governmental body to file suit in order to establish an affirmative defense to prosecution of a public information officer under section 552.353(b)(3).[288]

Section 552.325 provides that a requestor may intervene in a suit filed by a governmental body or another entity to prevent disclosure. The section includes procedures for notice to the requestor of the right to intervene and of any proposed settlement between the attorney general and a plaintiff by which the parties agree that the information should be withheld.

Sometimes during the pendency of a suit challenging a ruling, the requestor will voluntarily withdraw his or her request, or the requestor may no longer be found. Section 552.327 authorizes a court to dismiss a suit challenging an attorney general ruling if all parties to the suit agree to the dismissal and the attorney general determines and represents to the court that the requestor has voluntarily withdrawn the request for information in writing, or has abandoned the request.[289] In such cases, a governmental body will not be precluded from asking for another ruling on the same information at issue after the suit is dismissed by the court.[290]

### 4. Discovery and Court's In Camera Review of Information Under Protective Order

Section 552.322 of the Government Code authorizes a court to order that information at issue in a suit under the Act may be discovered only under a protective order until a final determination is made. When suit is filed challenging a ruling, the attorney general will seek access to the information at issue either informally or by way of this section, because the attorney general returns the information to the governmental body upon issuance of a ruling.

Section 552.3221 of the Government Code permits a party to file the information at issue with the court for in camera inspection as necessary for the adjudication of cases.[291] When the court receives the information for review, the court must enter an order that prevents access to the information by any person other than the court, a reviewing court of appeals or parties permitted to inspect the information pursuant to a protective order.[292] Information filed with the court under section 552.3221 does not constitute court records under Rule 76a of the Texas Rules of Civil Procedure and shall not be available by the clerk or any custodian of record for public disclosure.[293]

## E. Assessment of Costs of Litigation and Reasonable Attorney's Fees

Section 552.323 of the Government Code provides that in a suit for mandamus under section 552.321 or for declaratory judgment or injunctive relief under section 552.3215, the court shall assess costs of litigation and reasonable attorney's fees incurred by a plaintiff who substantially

---

[288]   Gov't Code § 552.324(b).

[289]   Gov't Code § 552.327.

[290]   Gov't Code § 552.327.

[291]   Gov't Code § 552.3221(a).

[292]   Gov't Code § 552.3221(b).

[293]   Gov't Code § 552.3221(d).

prevails.[294]   However, a court may not assess such costs and attorney's fees against the governmental body if the court finds that the governmental body acted in reasonable reliance on a judgment or order of a court applicable to that governmental body, the published opinion of an appellate court, or a written decision of the attorney general.[295]  In addition, a requestor who is an attorney representing himself in a suit to require a governmental body to disclose requested information under the Act is not entitled to attorney's fees because the requestor did not incur attorney's fees.[296]

The court may not assess attorney's fees and costs in a suit brought under section 552.324 by a governmental body against the attorney general challenging a ruling that ordered information to be disclosed unless the court finds the action or the defense of the action was groundless in fact or law.[297]

# IX.  PRESERVATION AND DESTRUCTION OF RECORDS

Subject to state laws governing the destruction of state and local government records, section 552.004 of the Government Code addresses the preservation period of noncurrent records. Section 552.004 requires that "A current or former officer or employee of a governmental body who maintains public information on a privately owned device shall:  (1) forward or transfer the public information to the governmental body or a governmental body server to be preserved as provided by Subsection (a); or (2) preserve the public information in its original form in a backup or archive and on the privately owned device for the time described under Subsection (a)."[298]  Sections 441.180 through 441.205 of the Government Code provide for the management, preservation, and destruction of state records under the guidance of the Texas State Library and Archives Commission.[299]  Provisions for the preservation, retention, and destruction of local government records under the oversight of the Texas State Library and Archives Commission are set out in chapters 201 through 205 of the Local Government Code.

Section 552.0215 of the Government Code provides that with the exception of information subject to section 552.147 or a confidentiality provision, information that is not confidential but merely excepted from required disclosure under the Act is public information and is available to the public on or after the 75th anniversary of the date the information was originally created or received by the governmental body.[300]  This section does not, however, limit the authority of a governmental body to establish retention periods for records under applicable law.[301]

Section 552.203 of the Government Code provides that the officer for public information, "subject to penalties provided in this chapter," has the duty to see that public records are protected from

---

[294]   Gov't Code § 552.323(a).

[295]   Gov't Code § 552.323(a).

[296]   *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 300 (Tex. 2011).

[297]   Gov't Code § 552.323(b).

[298]   Gov't Code § 552.004(b)(1), (2).

[299]   *See, e.g.*, Attorney General Opinions DM-181 at 3 (1992), JM-1013 at 2, 5-6 (1989), JM-229 at 5 (1984).

[300]   Gov't Code § 552.0215(a).

[301]   Gov't Code § 552.0215(b).

deterioration, alteration, mutilation, loss, or unlawful removal and that they are repaired as necessary.[302] Public records may be destroyed only as provided by statute.[303] A governmental body may not destroy records even pursuant to statutory authority while they are subject to an open records request.[304]

# X.  PUBLIC INFORMATION ACT DISTINGUISHED FROM CERTAIN OTHER STATUTES

## A.    Authority of the Attorney General to Issue Attorney General Opinions

The attorney general has authority pursuant to article IV, section 22, of the Texas Constitution and sections 402.041 through 402.045 of the Government Code to issue legal opinions to certain public officers.  These officers are identified in sections 402.042 and 402.043 of the Government Code. The attorney general may not give legal advice or a written opinion to any other person.[305]

On the other hand, the Act requires a governmental body to request a ruling from the attorney general if it receives a written request for records that it believes to be within an exception set out in subchapter C of the Act, sections 552.101 through 552.163 and there has not been a previous determination about whether the information falls within the exception.[306]  Thus, all governmental bodies have a duty to request a ruling from the attorney general under the circumstances set out in section 552.301.  A much smaller group of public officers has discretionary authority to request attorney general opinions pursuant to chapter 402 of the Government Code.  A school district, for example, is a governmental body that must request open records rulings as required by section 552.301 of the Act, but has no authority to seek legal advice on other matters from the attorney general.[307]

Additionally, the Act gives the attorney general the authority to issue written decisions and opinions in order to maintain uniformity in the application, operation, and interpretation of the Act.[308]

## B.    Texas Open Meetings Act

The Public Information Act and the Open Meetings Act, Government Code chapter 551, both serve the purpose of opening government to the people.  However, they operate differently, and each has a different set of exceptions.  The exceptions in the Public Information Act do not furnish a basis

---

[302]  *See also* Gov't Code § 552.351 (penalty for willful destruction, mutilation, removal without permission or alteration of public records).

[303]  *See generally* Attorney General Opinions DM-40 (1991) (deleting records), JM-830 (1987) (sealing records), MW-327 (1981) (expunging or altering public records).

[304]  Local Gov't Code § 202.002(b); Open Records Decision No. 505 at 4 (1988).

[305]  Gov't Code § 402.045.

[306]  Gov't Code § 552.301(a); *see* Open Records Decision No. 673 (2001) (defining previous determination).

[307]  *See generally* Attorney General Opinion DM-20 at 3-6 (1991).

[308]  Gov't Code § 552.011.

for holding executive session meetings to discuss confidential records.[309]  Furthermore, the mere fact that a document was discussed in an executive session does not make it confidential under the Public Information Act.[310]  Since the Open Meetings Act has no provision comparable to section 552.301 of the Act, the attorney general may address questions about the Open Meetings Act only when such questions are submitted by a public officer with authority to request attorney general opinions pursuant to chapter 402 of the Government Code.  (A companion volume to this *Handbook*, the *Open Meetings Act Handbook*, is also available from the Office of the Attorney General.)  In Open Records Decision No. 684 (2009), the attorney general issued a previous determination to all governmental bodies authorizing them to withhold certified agendas and tapes of closed meetings under section 552.101 in conjunction with section 551.104 of the Government Code, without the necessity of requesting an attorney general decision.[311]

## C.    Discovery Proceedings

The Public Information Act differs in purpose from statutes and procedural rules providing for discovery of documents in administrative and judicial proceedings.[312]  The Act's exceptions to required public disclosure do not create privileges from discovery of documents in administrative or judicial proceedings.[313]  Furthermore, information that might be privileged from discovery is not necessarily protected from required public disclosure under the Act.[314]

---

[309]  *See* Attorney General Opinion JM-595 at 4 (1986).

[310]  *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 367 (Tex. 2000); Open Records Decision No. 485 at 9-10 (1987); *see also* Open Records Decision No. 605 at 2-3 (1992).

[311]  Open Records Decision No. 684 at 5 (2009).

[312]  Attorney General Opinion JM-1048 at 2 (1989); Open Records Decision Nos. 551 at 4 (1990), 108 (1975).

[313]  Gov't Code § 552.005.

[314]  *See* Open Records Decision No. 575 at 2 (1990) (discovery privileges in Texas Rules of Evidence not confidentiality provisions for purpose of Gov't Code § 552.101).  *But see* Open Records Decision Nos. 677 (2002) (analyzing work product privilege in context of Act), 676 (2002) (analyzing attorney-client privilege in context of Act).

# PART TWO:   EXCEPTIONS TO DISCLOSURE

# I.   INFORMATION GENERALLY CONSIDERED TO BE PUBLIC

## A.   Section 552.022 Categories of Information

Section 552.022 of the Government Code provides that "[w]ithout limiting the amount or kind of information that is public information under this chapter, the following categories of information are public information and not excepted from required disclosure unless made confidential under this chapter or other law . . .."[315]  Section 552.022(a) then lists eighteen categories of information. Section 552.022(a) is not an exhaustive list of the types of information subject to the Act.[316]  Rather, it is a list of information that generally may be withheld only if it is expressly confidential by law.[317]  Thus, the Act's permissive exceptions to disclosure generally do not apply to the categories of information contained in section 552.022.[318]

### 1.   Discovery Privileges

The laws under which information may be considered confidential for the purpose of section 552.022 are not limited simply to statutes and judicial decisions that expressly make information confidential.[319]  The Texas Supreme Court has held that discovery privileges included in the Texas Rules of Civil Procedure and the Texas Rules of Evidence are also "other law" that may make information confidential for the purpose of section 552.022.[320]  Therefore, even if information is included in one of the eighteen categories of information listed in section 552.022(a), and as a result the information cannot be withheld under an exception listed in the Act, the information is still protected from disclosure if a governmental body can demonstrate that the information is privileged under the Texas Rules of Evidence or the Texas Rules of Civil Procedure.[321]

Accordingly, a governmental body claiming the attorney-client privilege for a document that is subject to section 552.022 of the Government Code should raise Texas Rule of Evidence 503 in order to withhold the information.  If the governmental body demonstrates that rule 503 applies to part of a communication, generally the entire communication will be protected.[322]  However, a fee bill is not excepted in its entirety if a governmental body demonstrates that a portion of the fee bill

---

[315]   Gov't Code § 552.022.

[316]   *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 359 (Tex. 2000).

[317]   Gov't Code § 552.022(a); *Thomas v. Cornyn*, 71 S.W.3d 473, 480 (Tex. App.—Austin 2002, no pet.).

[318]   *See In re City of Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001).  *But see* Gov't Code §§ 552.022(a)(1) (completed report, audit or evaluation may be withheld under Gov't Code § 552.108), .104(b) (except as provided by § 552.104(c), information subject to Gov't Code § 552.022 may be withheld under Gov't Code § 552.104(a)), .133(c) (information subject to Gov't Code § 552.022 may be withheld under Gov't Code § 552.133).

[319]   *See* Gov't Code § 552.022(a); *In re City of Georgetown*, 53 S.W.3d 328, 332-37 (Tex. 2001).

[320]   *In re City of Georgetown*, 53 S.W.3d 328, 337 (Tex. 2001); *see* Open Records Decision Nos. 677 at 9 (2002), 676 at 2 (2002); *see generally* TEX. R. EVID. 501-513; TEX. R. CIV. P. 192.5.

[321]   *In re City of Georgetown*, 53 S.W.3d 328, 333-34, 337 (Tex. 2001).

[322]   *See Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996) (privilege extends to entire communication, including facts contained therein); *In re Valero Energy Corp.*, 973 S.W.2d 453, 457 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (privilege attaches to complete communication, including factual information).

contains or consists of an attorney-client communication.[323] Rather, information in an attorney fee bill may only be withheld to the extent the particular information in the fee bill is demonstrated to be subject to the attorney-client privilege.[324]

Similarly, a governmental body claiming the work product privilege for a document that is subject to section 552.022 of the Government Code should raise Rule 192.5 of the Texas Rules of Civil Procedure in order to withhold the information.[325]

### 2.    Court Order

Section 552.022(b) prohibits a court in this state from ordering a governmental body to withhold from public disclosure information in the section 552.022 categories unless the information is confidential under the Act or other law.[326] Thus, although section 552.107(2) of the Act excepts from disclosure information that a court has ordered to be kept confidential, section 552.022 effectively limits the applicability of that subsection and the authority of a court to order confidentiality.[327]

## B.    Certain Contracting Information

Section 552.0222 of the Government Code provides that contracting information, as defined at section 552.003(7) of the Act, is public and must be released unless excepted from disclosure under the Act. Subsection (b) states that exceptions to disclosure provided by sections 552.110 and 552.1101 do not apply to certain types of contracting information, including information subject to sections 2261.253(a) of the Government Code and 322.020(c) of the Government Code, ten specified types of contract terms, and certain contract performance information. Section 552.0222 provides:

(a) **Contracting information is public and must be released unless excepted from disclosure under this chapter.**

(b) **The exceptions to disclosure provided by Sections 552.110 and 552.1101 do not apply to the following types of contracting information:**

(1) **a contract described by Section 2261.253(a), excluding any information that was properly redacted under Subsection (e) of that section;**

(2) **a contract described by Section 322.020(c), excluding any information that was properly redacted under Subsection (e) of that section;**

(3) **the following contract or offer terms or their functional equivalent:**

---

[323]  Open Records Decision No. 676 at 5 (2002).

[324]  Open Records Decision No. 676 at 5-6 (2002).

[325]  Open Records Decision No. 677 at 9 (2002).

[326]  Gov't Code § 552.022(b).

[327]  *See Ford v. City of Huntsville*, 242 F.3d 235, 241 (5th Cir. 2001).

    **(A)** **any term describing the overall or total price the governmental body will or could potentially pay, including overall or total value, maximum liability, and final price;**

    **(B)** **a description of the items or services to be delivered with the total price for each if a total price is identified for the item or service in the contract;**

    **(C)** **the delivery and service deadlines;**

    **(D)** **the remedies for breach of contract;**

    **(E)** **the identity of all parties to the contract;**

    **(F)** **the identity of all subcontractors in a contract;**

    **(G)** **the affiliate overall or total pricing for a vendor, contractor, potential vendor, or potential contractor;**

    **(H)** **the execution dates;**

    **(I)** **the effective dates; and**

    **(J)** **the contract duration terms, including any extension options; or**

**(4)** **information indicating whether a vendor, contractor, potential vendor, or potential contractor performed its duties under a contract, including information regarding:**

    **(A)** **a breach of contract;**

    **(B)** **a contract variance or exception;**

    **(C)** **a remedial action;**

    **(D)** **an amendment to a contract;**

    **(E)** **any assessed or paid liquidated damages;**

    **(F)** **a key measures report;**

    **(G)** **a progress report; and**

    **(H)** **a final payment checklist.**

**(c)** **Notwithstanding Subsection (b), information described by Subdivisions (3)(A) and (B) of that subsection that relates to a retail electricity contract may not be disclosed until the delivery start date.**

There are no cases or formal opinions interpreting this section.

## C. Certain Investment Information

Section 552.0225 of the Government Code provides that certain investment information is public and not excepted from disclosure under the Act. The section provides:

(a) **Under the fundamental philosophy of American government described by Section 552.001, it is the policy of this state that investments of government are investments of and for the people and the people are entitled to information regarding those investments. The provisions of this section shall be liberally construed to implement this policy.**

(b) **The following categories of information held by a governmental body relating to its investments are public information and not excepted from disclosure under this chapter:**

    (1) **the name of any fund or investment entity the governmental body is or has invested in;**

    (2) **the date that a fund or investment entity described by Subdivision (1) was established;**

    (3) **each date the governmental body invested in a fund or investment entity described by Subdivision (1);**

    (4) **the amount of money, expressed in dollars, the governmental body has committed to a fund or investment entity;**

    (5) **the amount of money, expressed in dollars, the governmental body is investing or has invested in any fund or investment entity;**

    (6) **the total amount of money, expressed in dollars, the governmental body received from any fund or investment entity in connection with an investment;**

    (7) **the internal rate of return or other standard used by a governmental body in connection with each fund or investment entity it is or has invested in and the date on which the return or other standard was calculated;**

    (8) **the remaining value of any fund or investment entity the governmental body is or has invested in;**

    (9) **the total amount of fees, including expenses, charges, and other compensation, assessed against the governmental body by, or paid by the governmental body to, any fund or investment entity or principal of any fund or investment entity in which the governmental body is or has invested;**

    (10) **the names of the principals responsible for managing any fund or investment entity in which the governmental body is or has invested;**

    **(11)** **each recusal filed by a member of the governing board in connection with a deliberation or action of the governmental body relating to an investment;**

    **(12)** **a description of all of the types of businesses a governmental body is or has invested in through a fund or investment entity;**

    **(13)** **the minutes and audio or video recordings of each open portion of a meeting of the governmental body at which an item described by this subsection was discussed;**

    **(14)** **the governmental body's percentage ownership interest in a fund or investment entity the governmental body is or has invested in;**

    **(15)** **any annual ethics disclosure report submitted to the governmental body by a fund or investment entity the governmental body is or has invested in; and**

    **(16)** **the cash-on-cash return realized by the governmental body for a fund or investment entity the governmental body is or has invested in.**

**(c)** **This section does not apply to the Texas Mutual Insurance Company or a successor to the company.**

**(d)** **This section does not apply to a private investment fund's investment in restricted securities, as defined in Section 552.143.**

There are no cases or formal opinions interpreting this section. Section 552.143 excepts certain investment information from disclosure that is not made public under section 552.0225.[328] The attorney general has determined in an informal letter ruling that section 552.143 is subject to the public disclosure requirements of section 552.0225.[329]

## D. Other Kinds of Information that May Not Be Withheld

As a general rule, a governmental body may not use one of the exceptions in the Act to withhold information that a statute other than the Act expressly makes public.[330] For example, a governmental body may not withhold the minutes of an open meeting under the Act's exceptions since such minutes are made public by statute.[331]

---

[328]  Gov't Code § 552.143.

[329]  Open Records Letter No. 2005-6095 (2005).

[330]  Open Records Decision No. 623 (1994); *see also* Open Records Decision Nos. 675 (2001) (federal statute requiring release of cost reports of nursing facilities prevails over claim that information is excepted from disclosure under Gov't Code § 552.110), 451 (1986) (specific statute that affirmatively requires release of information at issue prevails over litigation exception of Public Information Act); *cf. Houston Chronicle Publ'g Co. v. Woods*, 949 S.W.2d 492 (Tex. App.—Beaumont 1997, orig. proceeding) (concerning public disclosure of affidavits in support of executed search warrants).

[331]  Gov't Code § 551.022; *see* Open Records Decision No. 225 (1979).

# II. EXCEPTIONS

## A. Section 552.101: Confidential Information

Section 552.101 of the Government Code provides as follows:

> **Information is excepted from [required public disclosure] if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision.**

This section makes clear that the Act does not mandate the disclosure of information that other law requires be kept confidential. Section 552.352(a) states: "A person commits an offense if the person distributes information considered confidential under the terms of this chapter."[332] A violation under section 552.352 is a misdemeanor constituting official misconduct.[333] In its discretion, a governmental body may release to the public information protected under the Act's exceptions to disclosure but not deemed confidential by law.[334] On the other hand, a governmental body has no discretion to release information deemed confidential by law.[335] Because the Act prohibits the release of confidential information and because its improper release constitutes a misdemeanor, the attorney general may raise section 552.101 on behalf of a governmental body, although the attorney general ordinarily will not raise other exceptions that a governmental body has failed to claim.[336]

By providing that all information a governmental body collects, assembles, or maintains is public unless expressly excepted from disclosure, the Act prevents a governmental body from making an enforceable promise to keep information confidential unless the governmental body is authorized by law to do so.[337] Thus, a governmental body may rely on its promise of confidentiality to withhold information from disclosure only if the governmental body has specific statutory authority to make such a promise. Unless a governmental body is explicitly authorized to make an enforceable promise to keep information confidential, it may not make such a promise in a confidentiality agreement such as a contract[338] or a settlement agreement.[339] In addition, a governmental body may not pass an ordinance or rule purporting to make certain information confidential unless the governmental body is statutorily authorized to do so.[340]

---

[332] Gov't Code § 552.352(a).

[333] Gov't Code § 552.352(b), (c).

[334] Gov't Code § 552.007; *see Dominguez v. Gilbert*, 48 S.W.3d 789, 793 (Tex. App.—Austin 2001, no pet.).

[335] *See* Gov't Code § 552.007; *Dominguez v. Gilbert*, 48 S.W.3d 789, 793 (Tex. App.—Austin 2001, no pet.)*. But see* discussion of informer's privilege in Part Two, Section II, Subsection A.2.g of this *Handbook*.

[336] *See* Open Records Decision Nos. 455 at 3 (1987), 325 at 1 (1982).

[337] Attorney General Opinion H-258 at 3 (1974); *see* Attorney General Opinions JM-672 at 1-2 (1987), JM-37 at 2 (1983); Open Records Decision Nos. 585 at 2 (1991), 514 at 1 (1988), 55A at 2 (1975).

[338] *See* Attorney General Opinion JM-672 at 2 (1987); Open Records Decision No. 514 at 1 (1988).

[339] *See* Open Records Decision No. 114 at 1 (1975).

[340] *See Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 677 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977); *Envoy Med. Sys. v. State*, 108 S.W.3d 333, 337 (Tex. App.—Austin 2003, no pet.); Open Records Decision No. 594 at 3 (1991).

## 1.    Information Confidential Under Specific Statutes

Section 552.101 incorporates specific statutes that protect information from public disclosure.  The following points are important for the proper application of this aspect of section 552.101:

1)  The language of the relevant confidentiality statute controls the scope of the protection.[341]

2)  To fall within section 552.101, a statute must explicitly require confidentiality; a confidentiality requirement will not be inferred from the statutory structure.[342]

### a.    State Statutes

The attorney general must interpret numerous confidentiality statutes.  Examples of information made confidential by statute include the following noteworthy examples:

- medical records that a physician creates or maintains regarding the identity, diagnosis, evaluation, or treatment of a patient;[343]

- reports, records, and working papers used or developed in an investigation of alleged child abuse or neglect under Family Code chapter 261;[344]

- certain information relating to the provision of emergency medical services;[345]

- communications between a patient and a mental health professional and records of the identity, diagnosis, or treatment of a mental health patient created or maintained by a mental health professional;[346] and

- certain personal information in a government-operated utility customer's account records unless the customer requested that the utility disclose the information.[347]

In the following examples, the attorney general has interpreted the scope of confidentiality provided by Texas statutes under section 552.101:

---

[341]  *See* Open Records Decision No. 478 at 2 (1987).

[342]  *See, e.g.*, Open Records Decision No. 465 at 4-5 (1987).

[343]  Occ. Code § 159.002(b); *see Abbott v. Tex. State Bd. of Pharmacy*, 391 S.W.3d 253, 258 (Tex. App.—Austin 2012, no pet.) (Medical Practice Act does not provide patient general right of access to medical records from governmental body responding to request for information under Public Information Act); Open Records Decision No. 681 at 16-17 (2004).

[344]  Fam. Code § 261.201(a).

[345]  Health & Safety Code § 773.091; *see* Open Records Decision No. 681 at 17-18 (2004).

[346]  Health & Safety Code § 611.002.

[347]  Util. Code § 182.052(a).

Open Records Decision No. 658 (1998) — section 154.073 of the Civil Practice and Remedies Code does not make confidential a governmental body's mediated final settlement agreement;[348]

Open Records Decision No. 655 (1997) — concerning confidentiality of criminal history record information and permissible interagency transfer of such information;

Open Records Decision No. 649 (1996) — originating telephone numbers and addresses furnished on a call-by-call basis by a service supplier to a 9-1-1 emergency communication district established under subchapter D of chapter 772 of the Health and Safety Code are confidential under section 772.318 of the Health and Safety Code. Section 772.318 does not except from disclosure any other information contained on a computer-aided dispatch report that was obtained during a 9-1-1 call;

Open Records Decision No. 643 (1996) — section 21.355 of the Education Code makes confidential any document that evaluates, as that term is commonly understood, the performance of a teacher or administrator. The term "teacher," as used in section 21.355, means an individual who is required to hold and does hold a teaching certificate or school district teaching permit under subchapter B of chapter 21, and who is engaged in teaching at the time of the evaluation; an "administrator" is a person who is required to hold and does hold an administrator's certificate under subchapter B of chapter 21 and is performing the functions of an administrator at the time of the evaluation;

Open Records Decision No. 642 (1996) — section 143.1214(b) of the Local Government Code requires the City of Houston Police Department to withhold documents relating to an investigation of a City of Houston fire fighter conducted by the City of Houston Police Department's Public Integrity Review Group when the Public Integrity Review Group has concluded that the allegations were unfounded; and

Open Records Decision No. 640 (1996) (replacing Open Records Decision No. 637 (1996)) — the Texas Department of Insurance must withhold any information obtained from audit "work papers" that are "pertinent to the accountant's examination of the financial statements of an insurer" under former section 8 of article 1.15 of the Insurance Code; former section 9 of article 1.15 makes confidential the examination reports and related work papers obtained during the course of an examination of a carrier; section 9 of article 1.15 did not apply to examination reports and work papers of carriers under liquidation or receivership.

### b. Federal Statutes

Section 552.101 also incorporates the confidentiality provisions of federal statutes and regulations. In Open Records Decision No. 641 (1996), the attorney general ruled that information collected under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, from an applicant or

---

[348] The 76th Legislature amended section 154.073 of the Civil Practice and Remedies Code by adding subsection (d), which provides that a final written agreement to which a governmental body subject to the Act is a signatory and that was reached as a result of a dispute resolution procedure conducted under chapter 154 of that code is subject to or excepted from required disclosure in accordance with the Act. Act of May 30, 1999, 76th Leg., R.S., ch. 1352, § 6, 1999 Tex. Gen. Laws 4578, 4582; *see* Gov't Code § 552.022(a)(18) (settlement agreement to which governmental body is party may not be withheld unless it is confidential under the Act or other law).

employee concerning that individual's medical condition and medical history is confidential under section 552.101 of the Government Code, in conjunction with provisions of the Americans with Disabilities Act.  This type of information must be collected and maintained separately from other information and may be released only as provided by the Americans with Disabilities Act.

In Open Records Decision No. 681 (2004), the attorney general addressed whether the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the related Privacy Rule[349] adopted by the United States Department of Health and Human Services make information confidential for the purpose of section 552.101.  The attorney general determined that when a governmental body that is a "covered entity"[350] subject to the Privacy Rule, receives a request for "protected health information"[351] from a member of the public, it must evaluate the disclosure under the Act rather than the Privacy Rule.  The decision also determined that the Privacy Rule does not make information confidential for purposes of section 552.101 of the Government Code.  In *Abbott v. Tex. Dep't of Mental Health & Mental Retardation*, the Third Court of Appeals agreed with the attorney general's analysis of the interplay of the Act and the Privacy Rule.[352]

As a general rule, the mere fact that a governmental body in Texas holds certain information that is confidential under the federal Freedom of Information Act or the federal Privacy Act will not bring the information within the section 552.101 exception, as those acts govern disclosure only of information that federal agencies hold.[353]  However, if an agency of the federal government shares its information with a Texas governmental entity, the Texas entity must withhold the information that the federal agency determined to be confidential under federal law.[354]

## 2.  Information Confidential by Judicial Decision

### a.  Information Confidential Under Common Law

Section 552.101 also excepts from required public disclosure information held confidential under case law.  Pursuant to the Texas Supreme Court decision in *Indus. Found. v. Tex. Indus. Accident Bd.*,[355] section 552.101 applies to information when its disclosure would constitute the common-law tort of invasion of privacy through the disclosure of private facts.  To be within this common-law tort, the information must (1) contain highly intimate or embarrassing facts about a

---

[349]  The United States Department of Health and Human Services promulgated the Privacy Rule under HIPAA to implement HIPAA's privacy requirements for setting national privacy standards for health information. *See* 42 U.S.C. § 1320d-2; 45 C.F.R. pts. 160, 164.

[350]  The Privacy Rule only applies to a covered entity, that is, one of the following three entities defined in the Privacy Rule:  (1) a health plan; (2) a health care clearinghouse; and (3) a health care provider who transmits any health information in electronic form in connection with certain transactions covered by subchapter C, subtitle A of title 45 of the Code of Federal Regulations. *See* 42 U.S.C. § 1320d-1(a); 45 C.F.R. § 160.103.

[351]  *See* 45 C.F.R. § 160.103 (defining "protected health information"); Open Records Decision No. 681 at 5-7 (2004) (determination of whether requested information is protected health information subject to Privacy Rule requires consideration of definitions of three terms in rule).

[352]  *Abbott v. Tex. Dep't of Mental Health & Mental Retardation*, 212 S.W.3d 648 (Tex. App.—Austin 2006, no pet.).

[353]  Attorney General Opinion MW-95 at 2 (1979); Open Records Decision No. 124 at 1 (1976).

[354]  *See* Open Records Decision No. 561 at 6-7 (1990); *accord United States v. Napper*, 887 F.2d 1528, 1530 (11th Cir. 1989) (documents that Federal Bureau of Investigation lent to city police department remained property of Bureau and were subject to any restrictions on dissemination of Bureau-placed documents).

[355]  *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977).

person's private affairs such that its release would be highly objectionable to a reasonable person and (2) be of no legitimate concern to the public.[356] Because much of the information that a governmental body holds is of legitimate concern to the public, the doctrine of common-law privacy frequently will not exempt information that might be considered "private." For example, information about public employees' conduct on the job is generally not protected from disclosure.[357] The attorney general has found that the doctrine of common-law privacy does not protect the specific information at issue in the following decisions:

Open Records Decision No. 625 (1994) — a company's address and telephone number;

Open Records Decision No. 620 (1993) — a corporation's financial information;

Open Records Decision No. 616 (1993) — a "mug shot," unrelated to any active criminal investigation, taken in connection with an arrest for which an arrestee subsequently was convicted and is serving time;

Open Records Decision No. 611 (1992) — records held by law enforcement agencies regarding violence between family members unless the information is highly intimate and embarrassing and of no legitimate public interest;

Open Records Decision No. 594 (1991) — certain information regarding a city's drug testing program for employees; and

Open Records Decision No. 441 (1986) — job-related examination scores of public employees or applicants for public employment.

The attorney general has concluded that, with the exception of victims of sexual assault,[358] section 552.101 does not categorically except from required public disclosure, on common-law privacy grounds, the names of crime victims.[359]

In addition to the seminal Public Information Act privacy case of *Industrial Foundation,* courts in other cases have considered the common-law right to privacy in the context of section 552.101 of the Act. In two cases involving the *Fort Worth Star-Telegram* newspaper, the Texas Supreme Court weighed an individual's right to privacy against the right of the press to publish certain embarrassing information concerning an individual. In *Star-Telegram, Inc. v. Doe,*[360] a rape victim sued the newspaper, which had published articles disclosing the age of the victim, the relative location of her residence, the fact that she owned a home security system, that she took

---

[356] *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 685 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977); *see* Open Records Decision No. 659 (1999).

[357] *See* Open Records Decision No. 455 (1987).

[358] *See* Open Records Decision No. 339 at 2 (1982).

[359] Open Records Decision No. 409 at 2 (1984); *see also* Open Records Decision Nos. 628 (1994) (identities of juvenile victims of crime are not *per se* protected from disclosure by common-law privacy), 611 (1992) (determining whether records held by law-enforcement agency regarding violence between family members are confidential under doctrine of common-law privacy must be done on case-by-case basis). *But see* Gov't Code §§ 552.132 (excepting information about certain crime victims), .1325 (excepting information held by governmental body or files with court contained in victim impact statement or submitted for purpose of preparing such statement).

[360] *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471 (Tex. 1995).

medication, that she owned a 1984 black Jaguar automobile, and that she owned a travel agency. The newspaper did not reveal her actual identity. The court held that the newspaper in this case could not be held liable for invasion of privacy for public disclosure of embarrassing private facts because, although the information disclosed by the articles made the victim identifiable by her acquaintances, it could not be said that the articles disclosed facts which were not of legitimate public concern.

In *Star-Telegram, Inc. v. Walker*,[361] the court addressed another case involving the identity of a rape victim. In this case, the victim's true identity could be gleaned from the criminal court records and testimony. The court found that because trial proceedings are public information, the order entered by the criminal court closing the files and expunging the victim's true identity from the criminal records (more than three months following the criminal trial) could not retroactively abrogate the press's right to publish public information properly obtained from open records. Once information is in the public domain, the court stated, the law cannot recall the information. Therefore, the court found that the newspaper could not be held liable for invasion of privacy for publication of information appearing in public court documents.

In *Morales v. Ellen*,[362] the court of appeals considered whether the statements and names of witnesses to and victims of sexual harassment in an employment context were public information under the Act. In Open Records Decision No. 579 (1990), the attorney general had concluded that an investigative file concerning a sexual harassment complaint was not protected by common-law privacy. The decision in *Ellen* modified that interpretation. The *Ellen* court found that the names of witnesses and their detailed affidavits were "highly intimate or embarrassing." Furthermore, the court found that, because information pertinent to the sexual harassment charges and investigation already had been released to the public in summary form, the legitimate public interest in the matter had been satisfied. Therefore, the court determined that, in this instance, the public did not possess a legitimate interest in the names of witnesses to or victims of the sexual harassment, in their statements, or in any other information that would tend to identify them. The *Ellen* court did not protect from public disclosure the identity of the alleged perpetrator of the sexual harassment.

In *Abbott v. Dallas Area Rapid Transit*,[363] the court of appeals considered a request for the investigation report pertaining to a claim of racial discrimination. The court concluded this information is in no way intimate or embarrassing and is not comparable to the information at issue in *Morales v. Ellen*. The court of appeals determined the report was not protected by common-law privacy and must be released without redaction.

Governmental bodies frequently claim that financial information pertaining to an individual is protected under the doctrine of common-law privacy as incorporated into section 552.101. Resolution of these claims hinges upon the role the information plays in the relationship between the individual and the governmental body.

Information regarding a financial transaction between an individual and a governmental body is a matter of legitimate public interest; thus, the doctrine of common-law privacy does not generally

---

[361] *Star-Telegram, Inc. v. Walker*, 834 S.W.2d 54 (Tex. 1992).

[362] *Morales v. Ellen*, 840 S.W.2d 519, 524-25 (Tex. App.—El Paso 1992, writ denied).

[363] *Abbott v. Dallas Area Rapid Transit*, 410 S.W.3d 876 (Tex. App.—Austin 2013, no pet.).

protect from required public disclosure information regarding such a transaction.[364]  An example of a financial transaction between a person and a governmental body is a public employee's participation in an insurance program funded wholly or partially by his or her employer.[365]  In contrast, a public employee's participation in a voluntary investment program or deferred compensation plan that the employer offers but does not fund is not considered a financial transaction between the individual and the governmental body; information regarding such participation is considered intimate and of no legitimate public interest.[366]  Consequently, the doctrine of common-law privacy generally excepts such financial information from required public disclosure.

The doctrine of common-law privacy does not except from disclosure the basic facts concerning a financial transaction between an individual and a governmental body.[367]  On the other hand, common-law privacy generally protects the "background" financial information of the individual, that is, information about the individual's overall financial status and past financial history.[368]  However, certain circumstances may justify the public disclosure of background financial information; therefore, a determination of the availability of background financial information under the Act must be made on a case-by-case basis.[369]

### b. Information Confidential Under Constitutional Privacy

Section 552.101 also incorporates constitutional privacy.[370]  The United States Constitution protects two kinds of individual privacy interests:  (1) an individual's interest in independently making certain important personal decisions about matters that the United States Supreme Court has stated are within the "zones of privacy," as described in *Paul v. Davis*[371] and (2) an individual's interest in avoiding the disclosure of personal matters to the public or to the government.[372]  The "zones of privacy" implicated in the individual's interest in independently making certain kinds of decisions include matters related to marriage, procreation, contraception, family relationships, and child rearing and education.[373]

The second individual privacy interest that implicates constitutional privacy involves matters outside the "zones of privacy."  To determine whether the constitutional right of privacy protects particular information, the release of which implicates a person's interest in avoiding the disclosure

---

[364]  *See* Open Records Decision Nos. 590 at 3 (1991), 523 at 3-4 (1989).

[365]  *See* Open Records Decision No. 600 at 9 (1992).

[366]  *See* Open Records Decision No. 545 at 3-5 (1990).

[367]  *See, e.g.*, Open Records Decision Nos. 523 at 3-4 (1989), 385 at 2 (1983) (hospital's accounts receivable showing patients' names and amounts they owed were subject to public disclosure).

[368]  *See* Open Records Decision Nos. 523 at 3-4 (1989) (credit reports and financial statements of individual veterans participating in Veterans Land Program are protected from disclosure as "background" financial information), 373 at 3 (1983) (sources of income, salary, mortgage payments, assets, and credit history of applicant for housing rehabilitation grant are protected by common-law privacy).  *But see* Open Records Decision No. 620 at 4 (1993) (background financial information regarding corporation is not protected by privacy).

[369]  Open Records Decision No. 373 at 4 (1983).

[370]  *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 678 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977).

[371]  *Paul v. Davis*, 424 U.S. 693, 712-13 (1976).

[372]  Open Records Decision No. 600 at 4-5 (1992); *see also Whalen v. Roe*, 429 U.S. 589, 599-600 (1977).

[373]  *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 678, 679 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977).

of personal matters, the attorney general applies a balancing test that weighs the individual's interest in privacy against the public's right to know the information. Although such a test might appear more protective of privacy interests than the common-law test, the scope of information considered private under the constitutional doctrine is far narrower than that under the common law; the material must concern the "most intimate aspects of human affairs."[374]

### c.      Privacy Rights Lapse upon Death of the Subject

Common-law and constitutional privacy rights lapse upon the death of the subject.[375] Thus, common-law and constitutional privacy can be asserted on behalf of family members of a deceased individual only on the basis of their own privacy interests, not on the basis of the deceased individual's privacy.[376] If a governmental body believes that the release of information will implicate the privacy interests of the family members of a deceased individual, the governmental body should notify the deceased's family of their right to submit comments to the attorney general explaining how release will affect their privacy interests.[377] In this regard, governmental bodies should also be aware of section 552.1085 of the Government Code, which pertains to the confidentiality and release of sensitive crime scene images from closed criminal cases, as discussed more fully in Part Two, Section II, Subsection J of this *Handbook*.

### d.      False-Light Privacy

The Texas Supreme Court has held false-light privacy is not an actionable tort in Texas.[378] In addition, in Open Records Decision No. 579 (1990), the attorney general determined the statutory predecessor to section 552.101 did not incorporate the common-law tort of false-light privacy, overruling prior decisions to the contrary.[379] Thus, the truth or falsity of information is not relevant under the Public Information Act.

### e.      Special Circumstances

Through formal decisions, the attorney general developed the "special circumstances" test under common-law privacy to withhold certain information from disclosure.[380] "Special circumstances"

---

[374]   *See* Open Records Decision No. 455 at 5 (1987) (citing *Ramie v. City of Hedwig Village*, 765 F.2d 490, 492 (5th Cir. 1985)).

[375]   *Moore v. Charles B. Pierce Film Enters., Inc.*, 589 S.W.2d 489, 491 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *Justice v. Belo Broadcasting Corp.*, 472 F. Supp. 145, 146-47 (N.D. Tex. 1979) ("action for invasion of privacy can be maintained only by a living individual whose privacy is invaded") (quoting Restatement of Torts 2d); Attorney General Opinion H-917 at 3-4 (1976); Open Records Decision No. 272 at 1 (1981); *see United States v. Amalgamated Life Ins. Co.*, 534 F. Supp. 676, 679 (S.D.N.Y. 1982) (constitutional right to privacy terminates upon death and does not descend to heirs of deceased).

[376]   *Moore v. Charles B. Pierce Film Enters., Inc.*, 589 S.W.2d 489, 491 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *see also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004); *Justice v. Belo Broadcasting Corp.*, 472 F. Supp. 145, 146-47 (N.D. Tex. 1979); *United States v. Amalgamated Life Ins. Co.*, 534 F. Supp. 676, 679 (S.D.N.Y. 1982).

[377]   *See* Gov't Code § 552.304 (any interested person may submit comments explaining why records should or should not be released).

[378]   *Cain v. Hearst Corp.*, 878 S.W.2d 577, 579 (Tex. 1994).

[379]   Open Records Decision No. 579 at 3-8 (1990).

[380]   Open Records Decision Nos. 169 (1977), 123 (1976).

refers to a very narrow set of situations in which the release of information would likely cause someone to face "an imminent threat of physical danger."[381] Such "special circumstances" do not include "a generalized and speculative fear of harassment or retribution."[382] In *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P. & Hearst Newspapers, L.P.*, the Third Court of Appeals concluded it could not adopt the special circumstances analysis because it directly conflicts with the two-part test articulated in *Industrial Foundation*, which is the sole criteria for determining whether information is private under the common law.[383] The Texas Supreme Court, however, reversed the court of appeals' opinion.[384] The supreme court concluded freedom from physical harm is an independent interest protected under law, untethered to the right of privacy. Thus, the supreme court for the first time announced a common-law right of physical safety exception under the Act. The supreme court adopted the standard enunciated in section 552.152 requiring the withholding of information if disclosure would create a "substantial threat of physical harm."[385] As articulated by the court, "deference must be afforded" law enforcement experts regarding the probability of harm, but the new common-law exception requires more than vague assertions of potential harm.

In *Texas Department of Criminal Justice v. Levin*, the supreme court again addressed the common-law right of physical safety and determined that a substantial threat of physical harm can apply in cases even when the potential target is unknown.[386] Furthermore, the court emphasized that whether the requested information is protected by the common-law physical safety exception turns on whether the evidence provided establishes that disclosure would create a substantial threat of physical harm. The court also clarified that a "threat of physical harm" means physical harm to a person and does not contemplate physical harm to property. Potential loss of business or employment, harm to personal or real property, or other pecuniary considerations do not constitute a substantial threat of physical harm that would protect public information from disclosure.[387]

### f.      Dates of Birth of Members of the Public

Dates of birth of members of the public are contained in a wide variety of public records. The attorney general has historically concluded that dates of birth of members of the public are not protected under common-law privacy.[388] However, in *Paxton v. City of Dallas*,[389] the Third Court of Appeals concluded public citizens' dates of birth are protected by common-law privacy pursuant to section 552.101 of the Government Code. In its opinion, the court of appeals looked to the supreme court's rationale in *Texas Comptroller of Public Accounts v. Attorney General of*

---

[381]   Open Records Decision No. 169 at 6 (1977).

[382]   Open Records Decision No. 169 at 6 (1997).

[383]   *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P. & Hearst Newspapers, L.P.*, 287 S.W.3d 390, 394-95 (Tex. App.—Austin 2009), *rev'd*, 343 S.W.3d 112 (Tex. 2011).

[384]   *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P. & Hearst Newspapers, L.P.*, 343 S.W.3d 112 (Tex. 2011).

[385]   *See* Gov't Code § 552.152 (information in custody of governmental body that relates to employee or officer of governmental body is excepted from disclosure if, under circumstances pertaining to employee or officer, disclosure would subject employee or officer to substantial threat of physical harm).

[386]   *Texas Department of Criminal Justice v. Levin*, 572 S.W.3d 671, 679 (Tex. 2019).

[387]   *Texas Department of Criminal Justice v. Levin*, 572 S.W.3d 671, 679 (Tex. 2019).

[388]   *See* Open Records Decision No. 455 at 7 (1987).

[389]   *Paxton v. City of Dallas*, No. 03-13-00546-CV, 2015 WL 3394061, at *3 (Tex. App.—Austin May 22, 2015, pet. denied) (mem. op.).

*Texas*,[390] where the supreme court concluded public employees' dates of birth are private under section 552.102 of the Government Code because the employees' privacy interest substantially outweighed the negligible public interest in disclosure.[391]  Based on *Texas Comptroller*, the court of appeals concluded the privacy rights of public employees apply equally to public citizens, and thus, public citizens' dates of birth are also protected by common-law privacy.  Consequently, dates of birth of members of the public are generally protected under common-law privacy.

### g.    Informer's Privilege

As interpreted by the attorney general, section 552.101 of the Government Code incorporates the "informer's privilege."  In *Roviaro v. United States*,[392] the United States Supreme Court explained the rationale underlying the informer's privilege:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish *information of violations of law to officers charged with enforcement of that law.*  The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.[393]

In accordance with this policy, the attorney general has construed the informer's privilege aspect of section 552.101 as protecting the identity only of a person who (1) reports a violation or possible violation of the law (2) to officials charged with the duty of enforcing the particular law.  The informer's privilege facet of section 552.101 does not protect information about lawful conduct.[394]  The privilege protects information reported to administrative agency officials having a duty to enforce statutes with civil or criminal penalties, as well as to law enforcement officers.[395]

The informer's privilege protects not only the informer's identity, but also any portion of the informer's statement that might tend to reveal the informer's identity.[396]  Of course, protecting an informer's identity and any identifying information under the informer's privilege serves no purpose if the accused already knows the informer's identity.  The attorney general has held that the informer's privilege does not apply in such a situation.[397]

The informer's privilege facet of section 552.101 of the Government Code serves to protect the flow of information to a governmental body; it does not serve to protect a third person.[398]  Thus,

---

[390]    *Texas Comptroller of Public Accounts v. Attorney General of Texas*, 354 S.W.3d 336 (Tex. 2010).

[391]    *Texas Comptroller of Public Accounts v. Attorney General of Texas*, 354 S.W.3d 336, 347-348 (Tex. 2010).

[392]    *Roviaro v. United States*, 353 U.S. 53 (1957).

[393]    *Roviaro v. United States*, 353 U.S. 53, 59 (1957) (emphasis added) (citations omitted).

[394]    *See* Open Records Decision Nos. 515 at 4-5 (1988), 191 at 1 (1978).

[395]    *See* Open Records Decision No. 515 at 2 (1988).

[396]    Open Records Decision No. 515 at 2 (1988).

[397]    Open Records Decision No. 208 at 1-2 (1978).

[398]    Open Records Decision No. 549 at 5 (1990).

because it exists to protect the governmental body's interest, this privilege, unlike other section 552.101 claims, may be waived by the governmental body.[399]

# B. Section 552.102: Confidentiality of Certain Personnel Information

Section 552.102 of the Government Code provides as follows:

**(a) Information is excepted from [required public disclosure] if it is information in a personnel file, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, except that all information in the personnel file of an employee of a governmental body is to be made available to that employee or the employee's designated representative as public information is made available under this chapter. The exception to public disclosure created by this subsection is in addition to any exception created by Section 552.024. Public access to personnel information covered by Section 552.024 is denied to the extent provided by that section.**

**(b) Information is excepted from [required public disclosure] if it is a transcript from an institution of higher education maintained in the personnel file of a professional public school employee, except that this section does not exempt from disclosure the degree obtained or the curriculum on a transcript in the personnel file of the employee.**

## 1. Dates of Birth of Public Employees

In 1983, the Third Court of Appeals in *Hubert v. Harte-Hanks Tex. Newspapers, Inc.*[400] ruled the test to be applied under section 552.102 is the same as the test formulated by the Texas Supreme Court in *Industrial Foundation* for applying the doctrine of common-law privacy as incorporated by section 552.101. However, the Texas Supreme Court has held section 552.102(a) excepts from disclosure only the dates of birth of state employees in the payroll database of the Texas Comptroller of Public Accounts.[401] In light of the court's determination, a governmental body should not raise section 552.102(a) if it seeks to withhold its employees' personnel information under common-law privacy. The appropriate exception a governmental body should raise to protect its employees' personnel information under common-law privacy is section 552.101. Section 552.102(a) only excepts from disclosure a public employee's birth date that is contained in records maintained by the governmental body in an employment context.

Section 552.102 applies to former as well as current public employees.[402] However, section 552.102 does not apply to applicants for employment.[403] In addition, section 552.102 applies only to the personnel records of public employees, not the records of private employees.

---

[399] Open Records Decision No. 549 at 6 (1990).

[400] *Hubert v. Harte-Hanks Tex. Newspapers, Inc.*, 652 S.W.2d 546, 550 (Tex. App.—Austin 1983, writ ref'd n.r.e.).

[401] *Tex. Comptroller of Pub. Accounts v. Attorney General of Tex.*, 354 S.W. 3d 336 (Tex. 2010).

[402] Attorney General Opinion JM-229 at 2 (1984).

[403] Open Records Decision No. 455 at 8 (1987).

## 2.  Transcripts of Professional Public School Employees

Section 552.102 also protects from required public disclosure most information on a transcript from an institution of higher education maintained in the personnel files of professional public school employees.  Section 552.102(b) does not except from disclosure information on a transcript detailing the degree obtained and the curriculum pursued.[404]  Moreover, the attorney general has interpreted section 552.102(b) to apply only to the transcripts of employees of public schools providing public education under title 2 of the Education Code, not to employees of colleges and universities providing higher education under title 3 of the Education Code.[405]

# C.  Section 552.103: Litigation or Settlement Negotiations Involving the State or a Political Subdivision

Section 552.103(a) of the Government Code, commonly referred to as the "litigation exception," excepts from required public disclosure:

> **[I]nformation relating to litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party or to which an officer or employee of the state or a political subdivision, as a consequence of the person's office or employment, is or may be a party.**

Section 552.103(a) was intended to prevent the use of the Act as a method of avoiding the rules of discovery used in litigation.[406]  This exception enables a governmental body to protect its position in litigation "by forcing parties seeking information relating to that litigation to obtain it through discovery" procedures.[407]  Section 552.103 is a discretionary exception to disclosure and does not make information confidential under the Act.[408]  As such, section 552.103 does not make information confidential for the purposes of section 552.022.  Further, a governmental body waives section 552.103 by failing to comply with the procedural requirements of section 552.301.[409]

## 1.  Governmental Body's Burden

For information to be excepted from public disclosure by section 552.103(a), (1) litigation involving the governmental body must be pending or reasonably anticipated and (2) the information must relate to that litigation.[410]  Therefore, a governmental body that seeks an attorney general decision has the burden of clearly establishing both prongs of this test.

---

[404]  *See* Open Records Decision No. 526 (1989).

[405]  *See, e.g.*, Open Records Letter Nos. 2013-11312 (2013), 2009-18243 (2009), 2008-10363 (2008), 2008-08137 (2008).

[406]  *Thomas v. Cornyn*, 71 S.W.3d 473, 487 (Tex. App.—Austin 2002, no pet.); Attorney General Opinion JM-1048 at 4 (1989).

[407]  Open Records Decision No. 551 at 3 (1990).

[408]  *Dallas Area Rapid Transit v. Dallas Morning News*, 4 S.W.3d 469, 475-76 (Tex. App.—Dallas 1999, no pet.); Open Records Decision No. 665 at 2 n.5 (2000).

[409]  Open Records Decision Nos. 663 at 5 (1999), 542 at 4 (1990).

[410]  *Univ. of Tex. Law Sch. v. Tex. Legal Found.*, 958 S.W.2d 479, 481 (Tex. App.—Austin 1997, orig. proceeding); *Heard v. Houston Post Co.*, 684 S.W.2d 210, 212 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

For purposes of section 552.103(a), a contested case under the Administrative Procedure Act (APA), Government Code chapter 2001, constitutes "litigation."[411]  Questions remain regarding whether administrative proceedings not subject to the APA may be considered litigation within the meaning of section 552.103(a).[412]  In determining whether an administrative proceeding should be considered litigation for the purpose of section 552.103, the attorney general will consider the following factors:  (1) whether the dispute is, for all practical purposes, litigated in an administrative proceeding where (a) discovery takes place, (b) evidence is heard, (c) factual questions are resolved, and (d) a record is made; and (2) whether the proceeding is an adjudicative forum of first jurisdiction.[413]

Whether litigation is reasonably anticipated must be determined on a case-by-case basis.[414]  Section 552.103(a) requires concrete evidence that litigation is realistically contemplated; it must be more than conjecture.[415]  The mere chance of litigation is not sufficient to trigger section 552.103(a).[416]  The fact that a governmental body received a claim letter that it represents to the attorney general to be in compliance with the notice requirements of the Texas Tort Claims Act, Civil Practice and Remedies Code chapter 101, or applicable municipal ordinance, shows that litigation is reasonably anticipated.[417]  If a governmental body does not make this representation, the claim letter is a factor the attorney general will consider in determining from the totality of the circumstances presented whether the governmental body has established that litigation is reasonably anticipated.

In previous open records decisions, the attorney general had concluded that a governmental body could claim the litigation exception only if it established that withholding the information was necessary to protect the governmental body's strategy or position in litigation.[418]  However, Open Records Decision No. 551 (1990) significantly revised this test and concluded that the governmental body need only establish the relatedness of the information to the subject matter of the pending or anticipated litigation.[419]  Therefore, to meet its burden under section 552.103(a) in requesting an attorney general decision under the Act, the governmental body must identify the issues in the litigation and explain how the information relates to those issues.[420]  When the litigation is actually pending, the governmental body should also provide the attorney general a copy of the relevant pleadings.

## 2.      Only Circumstances Existing at the Time of the Request

Subsection (c) of section 552.103 provides as follows:

---

[411]   Open Records Decision No. 588 at 7 (1991) (construing statutory predecessor to APA).

[412]   Open Records Decision No. 588 at 6-7 (1991).

[413]   *See* Open Records Decision No. 588 (1991).

[414]   Open Records Decision No. 452 at 4 (1986).

[415]   Attorney General Opinion JM-266 at 4 (1984); Open Records Decision Nos. 677 at 3 (2002), 518 at 5 (1989), 328 at 2 (1982).

[416]   Open Records Decision Nos. 677 at 3 (2002), 518 at 5 (1989), 397 at 2 (1983), 361 at 2 (1983), 359 at 2 (1983).

[417]   Open Records Decision No. 638 at 4 (1996).

[418]   *See* Open Records Decision Nos. 518 at 5 (1989), 474 at 5 (1987).

[419]   Open Records Decision No. 551 at 5 (1990).

[420]   Open Records Decision No. 551 at 5 (1990).

**Information relating to litigation involving a governmental body or an officer or employee of a governmental body is excepted from disclosure under Subsection (a) only if the litigation is pending or reasonably anticipated on the date that the requestor applies to the officer for public information for access to or duplication of the information.**

Consequently, in determining whether a governmental body has met its burden under section 552.103, the attorney general or a court can only consider the circumstances that existed on the date the governmental body received the request for information, not information about occurrences after the date of the request for information.[421]

### 3. Temporal Nature of Section 552.103

Generally, when parties to litigation have inspected the records pursuant to court order, discovery, or through any other means, section 552.103(a) may no longer be invoked.[422]  In addition, once litigation is neither reasonably anticipated nor pending, section 552.103(a) is no longer applicable.[423]  Once a governmental body has disclosed information relating to litigation, the governmental body is ordinarily precluded from invoking section 552.103(a) to withhold the same information.  This is not the case, however, when a governmental body has disclosed information to a co-defendant in litigation, where the governmental body believes in good faith that it has a constitutional obligation to disclose it.[424]

### 4. Scope of Section 552.103

Section 552.103 applies to information that relates to pending or reasonably anticipated litigation, which is a very broad category of information.[425]  The protection of section 552.103 may overlap with that of other exceptions that encompass discovery privileges.  However, the standard for proving that section 552.103 applies to information is the same regardless of whether the information is also subject to a discovery privilege.

For example, information excepted from disclosure under the litigation exception may also be subject to the work product privilege.[426]  However, the standard for proving that the litigation exception applies is wholly distinct from the standard for proving that the work product privilege applies.[427]  The work product privilege is incorporated into the Act by section 552.111 of the Government Code, not section 552.103.[428]  If both section 552.103 and the work product privilege could apply to requested information, the governmental body has the discretion to choose to assert

---

[421]  Open Records Decision No. 677 at 2-3 (2002).

[422]  Open Records Decision No. 597 (1991) (statutory predecessor to Gov't Code § 552.103 did not except basic information in offense report that was previously disclosed to defendant in criminal litigation); *see* Open Records Decision Nos. 551 at 4 (1990), 511 at 5 (1988), 493 at 2 (1988), 349 (1982), 320 (1982).

[423]  Open Records Decision Nos. 551 at 4 (1990), 350 (1982); *see Thomas v. El Paso County Cmty. Coll. Dist.*, 68 S.W.3d 722, 726 (Tex. App.—El Paso 2001, no pet.).

[424]  Open Records Decision No. 454 at 3 (1986).

[425]  *Univ. of Tex. Law Sch. v. Tex. Legal Found.*, 958 S.W.2d 479, 483 (Tex. App.—Austin 1997, orig. proceeding).

[426]  *See* Open Records Decision No. 677 at 2 (2002).

[427]  *See* Open Records Decision No. 677 at 2 (2002).

[428]  *See* Open Records Decision No. 677 at 4 (2002).

either or both of the exceptions.[429]  However, the governmental body must meet distinct burdens depending on the exception it is asserting.[430]  Under section 552.103, the governmental body must demonstrate that the requested information relates to pending or reasonably anticipated litigation.[431]  Under the work product privilege, the governmental body must demonstrate that the requested information was created for trial or in anticipation of civil litigation by or for a party or a party's representative.[432]



The 88th Legislature added subsection (d) to section 552.103.  Pursuant to the newly enacted section 552.103(d), section 552.103 does not apply to requested information if the information relates to a general, primary, or special election, as those terms are defined by section 1.005 of the Election Code; the information is in the possession of certain governmental bodies that administer elections; and such governmental bodies are not a governmental body as described by section 552.003(1)(A)(I).

**5.      Duration of Section 552.103 for Criminal Litigation**

Subsection (b) of section 552.103 provides as follows:

> **For purposes of this section, the state or a political subdivision is considered to be a party to litigation of a criminal nature until the applicable statute of limitations has expired or until the defendant has exhausted all appellate and postconviction remedies in state and federal court.**

The attorney general has determined that section 552.103(b) is not a separate exception to disclosure; it merely provides a time frame within which the litigation exception excepts information from disclosure.[433]

# D.      Section 552.104: Information Relating to Competition or Bidding

Section 552.104 of the Government Code provides as follows:

> **(a)   Information is excepted from the requirements of Section 552.021 if a governmental body demonstrates that release of the information would harm its interests by providing an advantage to a competitor or bidder in a particular ongoing competitive situation or in a particular competitive situation where the governmental body establishes the situation at issue is set to reoccur or there is a specific and demonstrable intent to enter into the competitive situation again in the future.**

---

[429]  *See* Open Records Decision No. 677 at 2 (2002); Open Records Decision No. 647 at 3 (1996).

[430]  Open Records Decision No. 677 at 2 (2002).

[431]  *See* Open Records Decision No. 677 at 2 (2002); Gov't Code § 552.103; *Univ. of Tex. Law Sch. v. Tex. Legal Found.*, 958 S.W.2d 479, 481 (Tex. App.—Austin 1997, no pet.); *Heard v. Houston Post Co.*, 684 S.W.2d 210, 212 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

[432]  Open Records Decision No. 677 at 5-8 (2002).

[433]  Open Records Decision No. 518 at 5 (1989).

**(b)** **Except as provided by Subsection (c), the requirement of Section 552.022 that a category of information listed under Section 552.022(a) is public information and not excepted from required disclosure under this chapter unless expressly confidential under law does not apply to information that is excepted from required disclosure under this section.**

**(c)** **Subsection (b) does not apply to information described by Section 552.022(a) relating to the receipt or expenditure of public or other funds by a governmental body for a parade, concert, or other entertainment event paid for in whole or part with public funds. A person, including a governmental body, may not include a provision in a contract related to an event described by this subsection that prohibits or would otherwise prevent the disclosure of information described by this subsection. A contract provision that violates this subsection is void.**

Until January 1, 2020, subsection (a) of section 552.104 of the Government Code excepted from disclosure information that, if released, would give advantage to a competitor or bidder. The Texas Supreme Court considered this version of section 552.104 and held the "test under section 552.104 is whether knowing another bidder's [or competitor's information] would be an advantage, not whether it would be a decisive advantage."[434] The supreme court further held this version of section 552.104 protection is not limited to governmental bodies, and therefore a private third party may also invoke the exception.[435] However, the 86th Legislature amended subsection (a) which now specifies only governmental bodies will be permitted to raise subsection (a) and only for a particular ongoing competitive situation and a competitive situation where the governmental body can establish the situation is set to reoccur or there is a specific and demonstrable intent to enter into the competitive situation again in the future.[436]

The 86th Legislature also amended subsection (b) of section 552.104 and added subsection (c) to section 552.104. Subsection (b) provides that, except as provided by subsection (c), information excepted from disclosure under section 552.104 may be withheld even if it falls within one of the categories of information listed in section 552.022(a) of the Government Code.[437] Subsection (c) provides that subsection (b) does not apply to information that falls within one of the categories of information listed in section 552.022(a) if the information relates to the receipt or expenditure of public or other funds by a governmental body for a parade, concert, or other entertainment event paid for in whole or part with public funds.[438] Subsection (c) also provides that a person or governmental body may not include a contract provision that would prohibit or otherwise prevent the disclosure of information described by this subsection, and a contract provision that violates this subsection is void.[439]

---

[434] *Boeing Co. v. Paxton*, 466 S.W. 3d 831, 841 (Tex. 2015).

[435] *Boeing Co. v. Paxton,* 466 S.W. 3d 831, 841 (Tex. 2015).

[436] Gov't Code § 552.104(a).

[437] Gov't Code § 552.104(b).

[438] Gov't Code § 552.104(c).

[439] Gov't Code § 552.104(c).

## E. Section 552.105: Information Related to Location or Price of Property

Section 552.105 of the Government Code excepts from required public disclosure information relating to:

> **(1) the location of real or personal property for a public purpose prior to public announcement of the project; or**
>
> **(2) appraisals or purchase price of real or personal property for a public purpose prior to the formal award of contracts for the property.**

This exception protects a governmental body's planning and negotiating position with respect to particular real or personal property transactions,[440] and its protection is therefore limited in duration. The protection of section 552.105(1) expires upon the public announcement of the project for which the property is being acquired, while the protection of section 552.105(2) expires upon the governmental body's acquisition of the property in question.[441] Because section 552.105(2) extends to "information relating to" the appraisals and purchase price of property, it may protect more than just the purchase price or appraisal of a specific piece of property.[442] For example, the attorney general has held that appraisal information about parcels of land acquired in advance of others to be acquired for the same project could be withheld where this information would harm the governmental body's negotiating position with respect to the remaining parcels.[443] Similarly, the location of property to be purchased may be withheld under section 552.105(2) if releasing the location could affect the purchase price of the property. The exception for information pertaining to "purchase price" in section 552.105(2) also applies to information pertaining to a lease price.[444]

When a governmental body has made a good faith determination that the release of information would damage its negotiating position with respect to the acquisition of property, the attorney general in issuing a ruling under the Act will accept that determination, unless the records or other information show the contrary as a matter of law.[445]

## F. Section 552.106: Certain Legislative Documents

Section 552.106 of the Government Code provides as follows:

> **(a) A draft or working paper involved in the preparation of proposed legislation is excepted from [required public disclosure].**

---

[440]  Open Records Decision No. 357 at 3 (1982).

[441]  Gov't Code § 552.105; *see* Open Records Decision No. 222 at 1-2 (1979).

[442]  *See Heidenheimer v. Tex. Dep't of Transp.,* No. 03-02-00187-CV, 2003 WL 124248, at *2 (Tex. App.—Austin Jan. 16, 2003, pet. denied) (mem. op., not designated for publication); Open Records Decision No. 564 (1990) (construing statutory predecessor to Gov't Code § 552.105).

[443]  Open Records Decision No. 564 (1990).

[444]  Open Records Decision No. 348 (1982).

[445]  Open Records Decision No. 564 at 2 (1990).

**(b)** **An internal bill analysis or working paper prepared by the governor's office for the purpose of evaluating proposed legislation is excepted from [required public disclosure].**

Section 552.106(a) protects documents concerning the deliberative processes of a governmental body relevant to the enactment of legislation.[446] The purpose of this exception is to encourage frank discussion on policy matters between the subordinates or advisors of a legislative body and the legislative body.[447] However, section 552.106(a) does not protect purely factual material.[448] If a draft or working paper contains purely factual material that can be disclosed without revealing protected judgments or recommendations, such factual material must be disclosed unless another exception to disclosure applies.[449] Section 552.106(a) protects drafts of legislation that reflect policy judgments, recommendations, and proposals prepared by persons with some official responsibility to prepare them for the legislative body.[450] In addition to documents actually created by the legislature, the attorney general has construed the term "legislation" to include certain documents created by a city or a state agency.[451]

The following open records decisions have held certain information to be excepted from required public disclosure under the statutory predecessor to section 552.106(a):

Open Records Decision No. 460 (1987) — a city manager's proposed budget prior to its presentation to the city council, where the city charter directed the city manager to prepare such a proposal and the proposal was comprised of recommendations rather than facts;

Open Records Decision No. 367 (1983) — recommendations of the executive committee of the Texas State Board of Public Accountancy for amendments to the Public Accountancy Act; and

Open Records Decision No. 248 (1980) — drafts of a municipal ordinance and resolution that were prepared by a city staff study group for discussion purposes and that reflected policy judgments, recommendations, and proposals.

The following open records decisions have held information not to be excepted from required public disclosure under the statutory predecessor to section 552.106(a):

Open Records Decision No. 482 (1987) — drafts and working papers incorporated into materials that are disclosed to the public;

Open Records Decision No. 429 (1985) — documents relating to the Texas Turnpike Authority's efforts to persuade various cities to enact ordinances, as the agency had no official authority to do so and acted merely as an interested third party to the legislative process; and

---

[446] *See* Open Records Decision No. 429 at 5 (1985).

[447] Open Records Decision No. 460 at 2 (1987).

[448] Open Records Decision Nos. 460 at 2 (1987), 344 at 3-4 (1982), 197 at 3 (1978), 140 at 4 (1976).

[449] Open Records Decision No. 460 at 2 (1987).

[450] Open Records Decision No. 429 at 5 (1985).

[451] *See* Open Records Decision Nos. 460 at 2-3 (1987), 367 (1983), 248 (1980).

Open Records Decision No. 344 (1982) — certain information relating to the State Property Tax Board's biennial study of taxable property in each school district, for the reason that the nature of the requested information compiled by the board was factual.

Section 552.106(b) excepts from disclosure "[a]n internal bill analysis or working paper prepared by the governor's office for the purpose of evaluating proposed legislation[.]"[452]  The purpose of section 552.106(b) is also to encourage frank discussion on policy matters; however, this section applies to information created or used by employees of the governor's office for the purpose of evaluating proposed legislation.  Furthermore, like section 552.106(a), section 552.106(b) only protects policy judgments, advice, opinions, and recommendations involved in the preparation or evaluation of proposed legislation; it does not except purely factual information from public disclosure.[453]

Sections 552.106 and 552.111 were designed to achieve the same goals in different contexts.[454]  The purpose of section 552.111 is "to protect from public disclosure advice and opinions on policy matters and to encourage frank and open discussion within the agency in connection with its decision-making processes."[455]  Because the policies and objectives of each exception are the same, some decisions applying section 552.111 may be helpful in determining how section 552.106 should be construed.[456]  Although the provisions protect the same type of information, section 552.106 is narrower in scope because it applies specifically to the legislative process.[457]

## G.    Section 552.107: Certain Legal Matters

Section 552.107 of the Government Code states that information is excepted from required public disclosure if:

  (1)    **it is information that the attorney general or an attorney of a political subdivision is prohibited from disclosing because of a duty to the client under the Texas Rules of Evidence or the Texas Disciplinary Rules of Professional Conduct; or**

  (2)    **a court by order has prohibited disclosure of the information.**

This section has two distinct aspects:  subsection (1) protects information within the attorney-client privilege, and subsection (2) protects information a court has ordered to be kept confidential.

---

[452]   Gov't Code § 552.106(b).

[453]   *See* House Comm. on State Affairs, Public Hearing, May 6, 1997, H.B. 3157, 75th Leg. (1997) (protection given to legislative documents under Gov't Code § 552.106(a) is comparable with protection given to governor's legislative documents under Gov't Code § 552.106(b)).

[454]   Open Records Decision No. 482 at 9 (1987).

[455]   *Austin v. City of San Antonio*, 630 S.W.2d 391, 394 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.); Open Records Decision No. 222 (1979).

[456]   Open Records Decision No. 482 at 9 (1987).  *But see* Open Records Decision No. 615 at 5 (1993) (agency's policymaking functions protected by statutory predecessor to section 552.111 do not encompass routine internal administrative and personnel matters).

[457]   *See* Open Records Decision Nos. 460 at 3 (1987), 429 at 5 (1985).

## 1. Information Within the Attorney-Client Privilege

When seeking to withhold information not subject to section 552.022 of the Government Code based on the attorney-client privilege, a governmental body should assert section 552.107(1).[458] In Open Records Decision No. 676 (2002), the attorney general interpreted section 552.107 to protect the same information as protected under Texas Rule of Evidence 503.[459] Thus, the standard for demonstrating the attorney-client privilege under the Act is the same as the standard used in discovery under rule 503. In meeting this standard, a governmental body bears the burden of providing the necessary facts to demonstrate the elements of the attorney-client privilege.[460]

First, the governmental body must demonstrate that the information constitutes or documents a communication.[461] Second, the communication must have been made "to facilitate the rendition of professional legal services" to the client governmental body.[462] Third, the governmental body must demonstrate that the communication was between or among clients, client representatives, lawyers, and lawyer representatives.[463] Fourth, the governmental body must show that the communication was confidential; that is, the communication was "not intended to be disclosed to third persons other than those: to (A) whom disclosure is made to furtherance the rendition of professional legal services to the clients; or (B) reasonably necessary to transmit the communication."[464] Finally, because the client can waive the attorney-client privilege at any time, the governmental body must demonstrate that the communication has remained confidential.[465]

The privilege will not apply if the attorney or the attorney's representative was acting in a capacity "other than that of providing or facilitating professional legal services to the client."[466] In *Harlandale Indep. Sch. District v. Cornyn*,[467] the Third Court of Appeals addressed whether an attorney was working in her capacity as an attorney when she conducted a factual investigation, thus rendering factual information from the attorney's report excepted from public disclosure under section 552.107(1) of the Government Code. There, the Harlandale Independent School District hired an attorney to conduct an investigation into an alleged assault and render a legal analysis of the situation upon completion of the investigation.[468] The attorney produced a report that included a summary of the factual investigation as well as legal opinions.[469] While the court of appeals held the attorney-client privilege does not apply to communications between an attorney

---

[458] Open Records Decision Nos. 676 at 1-3 (2002), 574 at 2 (1990).

[459] Open Records Decision No. 676 at 4 (2002).

[460] Open Records Decision No. 676 at 6 (2002).

[461] Open Records Decision No. 676 at 7 (2002).

[462] Open Records Decision No. 676 at 7 (2002); TEX. R. EVID. 503(b)(1).

[463] TEX. R. EVID. 503(b)(1)(A)-(E); Open Records Decision No. 676 at 8-10 (2002).

[464] TEX. R. EVID. 503(a)(5); Open Records Decision No. 676 at 10 (2002); *see Osborne v. Johnson*, 954 S.W.2d 180, 184 (Tex. App.—Waco 1997, orig. proceeding) (whether communication was confidential depends on intent of parties involved at time information was communicated).

[465] Open Records Decision No. 676 at 10-11 (2002).

[466] Open Records Decision No. 676 at 7 (2002); *see also In re Tex. Farmers Ins. Exch.*, 990 S.W.2d 337, 340 (Tex. App.—Texarkana 1999, orig. proceeding) (attorney-client privilege does not apply if attorney acting in capacity other than that of attorney).

[467] *Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328 (Tex. App.—Austin 2000, pet. denied).

[468] *Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 330 (Tex. App.—Austin 2000, pet. denied).

[469] *Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 330-331 (Tex. App.—Austin 2000, pet. denied).

and a client "when the attorney is employed in a non-legal capacity, for instance as an accountant, escrow agency, negotiator, or notary public," the court also held the attorney in that case was acting in a legal capacity in gathering the facts because the ultimate purpose of her investigation was the rendition of legal advice.[470] Thus, when an attorney is hired to conduct an investigation in his or her capacity as an attorney, a report produced by an attorney containing both factual information and legal advice is excepted from disclosure in its entirety under section 552.107(1).

If a governmental body demonstrates that any portion of a communication is protected under the attorney-client privilege, then the entire communication will be generally excepted from disclosure under section 552.107.[471] However, section 552.107 does not apply to a non-privileged communication within a privileged communication, if the non-privileged communication is maintained by the governmental body separate and apart from the otherwise privileged communication. For example, if an e-mail string includes an e-mail or attachment that was received from or sent to a non-privileged party, and the e-mail or attachment that was received from or sent to the non-privileged party is separately responsive to the request for information when it is removed from the e-mail string and stands alone, the governmental body may not withhold the non-privileged e-mail or attachment under section 552.107.[472]

The scope of the attorney-client privilege and the work product privilege, which is encompassed by section 552.111 of the Government Code, are often confused. The attorney-client privilege covers certain communications made in furtherance of the rendition of professional legal services, while the work product privilege covers work prepared for the client's lawsuit.[473] For materials to be covered by the attorney-client privilege, they need not be prepared for litigation.

### a.      Attorney Fee Bills

Attorney fee bills are subject to section 552.022(a)(16) and thus may not be withheld under section 552.107. Nonetheless, information contained in attorney fee bills may be withheld if it is protected under the attorney-client privilege as defined in rule 503 of the Texas Rules of Evidence, or is made confidential under the Act or other law for the purpose of section 552.022.[474] Because the express language of section 552.022(a)(16) provides "information that is *in* a bill for attorney's fees" is not excepted from disclosure unless it is confidential under the Act or other law, the entirety of an attorney fee bill cannot be withheld on the basis that it contains or is an attorney-client communication.[475]

---

[470]   *Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 332-35 (Tex. App.—Austin 2000, pet. denied).

[471]   *See Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996) (privilege extends to entire communication, including facts contained therein); *In re Valero Energy Corp.*, 973 S.W.2d 453, 457 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (privilege attaches to complete communication, including factual information).

[472]   *See*, *e.g.*, Open Records Letter Nos. 2013-12509 (2013), 2013-12111 (2013).

[473]   *See Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 200 (Tex. 1993); *Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 750 (Tex. 1991).

[474]   *See In re City of Georgetown*, 53 S.W.3d 328, 337 (Tex. 2001); Open Records Decision No. 676 at 5-6 (2002).

[475]   Gov't Code §552.022(a)(16) (emphasis added); *see also* Open Records Decision Nos. 676 at 5 (2002) (attorney fee bill cannot be withheld in entirety on basis it contains or is attorney-client communication pursuant to language in section 552.022(a)(16)), 589 (1991) (information in attorney fee bill excepted only to extent information reveals client confidences or attorney's legal advice).

**b.      Information a Private Attorney Holds for the Governmental Body**

If a governmental body engages a private attorney to perform legal services, information in the attorney's possession relating to the legal services is subject to the Public Information Act.[476]

**c.      Waiver of the Attorney-Client Privilege**

Texas Rule of Evidence 511 provides that, except where a disclosure is itself privileged, the attorney-client privilege is waived if a holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter.[477]

In *Paxton v. City of Dallas*, the Texas Supreme Court determined (1) the failure of a governmental body to timely seek a ruling from the OAG to withhold information subject to the attorney-client privilege does not constitute a waiver of the privilege, and (2) the attorney-client privilege constitutes a compelling reason to withhold information under section 552.302 of the Government Code.[478]

**2.      Information Protected by Court Order**

Section 552.107(2) excepts from disclosure information a court has ordered a governmental body to keep confidential.  Prior to the amendment of section 552.022 in 1999, governmental bodies often relied on section 552.107(2) to withhold from disclosure the terms of a settlement agreement if a court had issued an order expressly prohibiting the parties to the settlement agreement or their attorneys from disclosing the terms of the agreement.[479]  Under the current version of section 552.022, however, a state court may not order a governmental body or an officer for public information to withhold from public disclosure any category of information listed in section 552.022 unless the information is confidential under the Act or other law.[480]  A settlement agreement to which a governmental body is a party is one category of information listed in section 552.022.[481]

With the exception of information subject to section 552.022, section 552.107(2) excepts from disclosure information that is subject to a protective order during the pendency of the litigation.[482]  As with any other exception to disclosure, a governmental body must request a ruling from the attorney general if it wishes to withhold information under section 552.107(2) and should submit a copy of the protective order for the attorney general's review.  A governmental body may not

---

[476]   Gov't Code § 552.002(a)(2), (a-1) (definition of public information includes information pertaining to official business of governmental body that was created by, transmitted to, received by, or is maintained by person or entity performing official business on behalf of governmental body); Open Records Decision Nos. 663 at 7-8 (1999), 499 at 5 (1988), 462 at 7 (1987).

[477]   TEX. R. EVID. 511(a)(1); *see also Jordan v. Court of Appeals for Fourth Supreme Judicial Dist.*, 701 S.W.2d 644, 649 (Tex. 1985) (if matter for which privilege is sought has been disclosed to third party, thus raising question of waiver of privilege, party asserting privilege has burden of proving no waiver has occurred).

[478]   *Paxton v. City of Dallas*, 509 S.W.3d 247, 262, 271 (Tex. 2017).

[479]   *See* Open Records Decision No. 415 at 2 (1984).

[480]   Gov't Code § 552.022(b).

[481]   Gov't Code § 552.022(a)(18).

[482]   Open Records Decision No. 143 at 1 (1976).

use a protective order as grounds for the exception once the court has dismissed the suit from which it arose.[483]

## H.  Section 552.108: Certain Law Enforcement, Corrections, and Prosecutorial Information

Section 552.108 of the Government Code, sometimes referred to as the "law enforcement" exception, provides as follows:

(a)  **Information held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime is excepted from the requirements of Section 552.021 if:**

   (1)  **release of the information would interfere with the detection, investigation, or prosecution of crime;**

   (2)  **it is information that deals with the detection, investigation, or prosecution of crime only in relation to an investigation that did not result in conviction or deferred adjudication;**

   (3)  **it is information relating to a threat against a peace officer or detention officer collected or disseminated under Section 411.048; or**

   (4)  **it is information that:**

      (A)  **is prepared by an attorney representing the state in anticipation of or in the course of preparing for criminal litigation; or**

      (B)  **reflects the mental impressions or legal reasoning of an attorney representing the state.**

(b)  **An internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution is excepted from the requirements of Section 552.021 if:**

   (1)  **release of the internal record or notation would interfere with law enforcement or prosecution;**

   (2)  **the internal record or notation relates to law enforcement only in relation to an investigation that did not result in conviction or deferred adjudication; or**

   (3)  **the internal record or notation:**

      (A)  **is prepared by an attorney representing the state in anticipation of or in the course of preparing for criminal litigation; or**

---

[483]  Open Records Decision No. 309 at 5 (1982).

        **(B)** reflects the mental impressions or legal reasoning of an attorney representing the state.

**(c)** This section does not except from the requirements of Section 552.021 information that is basic information about an arrested person, an arrest, or a crime. A governmental body shall promptly release basic information responsive to a request made under this chapter unless the governmental body seeks to withhold the information as provided by another provision of this chapter, and regardless of whether the governmental body requests an attorney general under Subchapter G regarding other information subject to the request.

**(d)** Notwithstanding other law, a prosecutor may permit a person to view the following evidence of a crime that resulted in the death of a person and that occurred in the prosecutor's jurisdiction:

    **(1)** a medical examiner's report, if the person viewing the report is a family member of the person who is the subject of the report and the person who is the subject of the report was a victim of the crime; and

    **(2)** video evidence of the crime, if the person viewing the video is a victim of the crime or a family member of a victim of the crime.

**(d)** The exception to disclosure provided by Subsection (a)(2) does not apply to information, records, or notations if:

    **(1)** a person who is described by or depicted in the information, record, or notation, other than a peace officer, is deceased or incapacitated; or

    **(2)** each person who is described by or depicted in the information, record, or notation, other than a person who is deceased or incapacitated, consents to the release of the information, record, or notation.

**(e)** A person permitted to view a medical examiner's report or video evidence under Subsection (d) may not duplicate, record, capture, or otherwise memorialize the information. A prosecutor may require a person to sign a confidentiality agreement before permitting the person to view the information.

**(f)** A permitted viewing of a medical examiner's report or video evidence under Subsection (d) is not a voluntary disclosure of information for purposes of Section 552.007(b). A governmental body, by providing information under Subsection (d) that is confidential or otherwise excepted from required disclosure under law, does not waive or affect the confidentiality of the information for purposes of state or federal law or waive the right to assert exceptions to required disclosure of the information in the future.

**(g)** Subsection (d) does not affect:

      **(1)**    **the right of a person to obtain a medical examiner's report or video evidence of a crime from a governmental body under other law;**

      **(2)**    **the procedures under which the information is obtained under other law; or**

      **(3)**    **the use that may be made of the information obtained under other law.**



**(h)**   **In this section:**

      **(1)**    **"Family member" means a person related to a victim of a crime within the first degree of consanguinity or affinity.**

      **(2)**    **"Medical examiner's report" means a report and the contents of such a report created by a medical examiner under Article 49.25, Code of Criminal Procedure, including an autopsy report and toxicology report. The term does not include a photograph or medical image contained in a report.**

      **(3)**    **"Victim" means an individual who suffered personal injury or death as a result of criminal conduct.**

**1.**     **The Meaning of "Law Enforcement Agency" and the Applicability of Section 552.108 to Other Units of Government**

Section 552.108 generally applies to the records created by an agency, or a portion of an agency, whose primary function is to investigate crimes and enforce the criminal laws.[484] It generally does not apply to the records created by an agency whose chief function is essentially regulatory in nature.[485] For example, an agency that employs peace officers to investigate crime and enforce criminal laws may claim that section 552.108 excepts portions of its records from required public disclosure. On the other hand, an agency involved primarily in licensing certain professionals or regulating a particular industry generally may not use section 552.108 to except its records from disclosure.[486] An agency that investigates both civil and criminal violations of law but lacks criminal enforcement authority is not a law enforcement agency for purposes of section 552.108.[487]

Entities that have been found to be law enforcement agencies for purposes of section 552.108 include: the Texas Department of Criminal Justice (formerly the Texas Department of Corrections);[488] the Texas National Guard;[489] the Attorney General's Organized Crime Task

---

[484] *See* Open Records Decision Nos. 493 at 2 (1988), 287 at 2 (1981).

[485] Open Records Decision No. 199 (1978).

[486] *See* Open Records Decision No. 199 (1978). *But see* Attorney General Opinion MW-575 at 1-2 (1982) (former Gov't Code § 552.108 may apply to information gathered by administrative agency when its release would unduly interfere with law enforcement); Open Records Decision No. 493 at 2 (1988).

[487] Open Records Letter No. 99-1907 (1999) (Medicaid Program Integrity Division of Health and Human Services Commission investigates both civil and criminal violations of Medicaid fraud laws and refers criminal violations to attorney general for criminal enforcement).

[488] Attorney General Opinion MW-381 at 3 (1981); Open Records Decision No. 413 at 1 (1984).

[489] Open Records Decision No. 320 at 1 (1982).

Force;[490] a fire department's arson investigation division;[491] the El Paso Special Commission on Crime; [492] the Texas Lottery Commission; [493] the Texas Alcoholic Beverage Commission's Enforcement Division;[494] and the Texas Comptroller of Public Accounts for purposes of enforcing the Tax Code.[495]

The following entities are not law enforcement agencies for purposes of section 552.108: the Texas Department of Agriculture;[496] the Texas Board of Private Investigators and Private Security Agencies;[497] the Texas Board of Pharmacy;[498] and the Texas Real Estate Commission.[499]

An agency that does not qualify as a law enforcement agency may, under limited circumstances, claim that section 552.108 excepts records in its possession from required public disclosure. For example, records that otherwise qualify for the section 552.108 exception, such as documentary evidence in a police file on a pending case, do not necessarily lose that status while in the custody of an agency not directly involved with law enforcement.[500] Where a non-law enforcement agency has in its custody information that would otherwise qualify for exception under section 552.108 as information relating to the pending case of a law enforcement agency, the custodian of the records may withhold the information if it provides the attorney general with a demonstration that the information relates to the pending case and a representation from the law enforcement entity that it wishes to withhold the information.[501]

Similarly, in construing the statutory predecessor to section 552.108, the attorney general concluded that if an investigation by an administrative agency reveals possible criminal conduct the agency intends to report to the appropriate law enforcement agency, then section 552.108 will apply to the information gathered by the administrative agency if the information relates to an open investigation or if the release would interfere with law enforcement.[502]

---

[490]   Open Records Decision Nos. 211 at 3 (1978), 126 at 5 (1976).

[491]   Open Records Decision No. 127 at 8 (1976).

[492]   Open Records Decision No. 129 (1976).

[493]   *See* Gov't Code §§ 466.019(b) (Lottery Commission is authorized to enforce violations of lottery laws and rules), .020(a)-(b) (Lottery Commission is authorized to maintain department of security staffed by commissioned peace officers or investigators).

[494]   *See* Alco. Bev. Code §§ 5.14 (Texas Alcoholic Beverage Commission may commission inspectors with police powers to enforce Alcoholic Beverage Code), .31 (powers and duties of commission), .36 (commission shall investigate violations of Alcoholic Beverage Code and other laws relating to alcoholic beverages), .361 (commission shall develop risk-based approach to enforcement).

[495]   *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 679 (Tex. 1995) (section 552.108 excepts records generated by comptroller in process of enforcing tax laws).

[496]   Attorney General Opinion MW-575 at 1 (1982).

[497]   Open Records Decision No. 199 (1978).

[498]   Open Records Decision No. 493 (1988).

[499]   Open Records Decision No. 80 at 2 (1975).

[500]   Open Records Decision Nos. 272 at 1-2 (1981), 183 at 5 (1978).

[501]   Open Records Decision No. 474 at 4-5 (1987).

[502]   *See* Attorney General Opinion MW-575 at 1-2 (1982) (construing statutory predecessor); Open Records Decision No. 493 at 2 (1988) (same).

**2.      Application of Section 552.108**

Section 552.108 excepts from required public disclosure four categories of information:

1)    information the release of which would interfere with the detection, investigation, or prosecution of crime or law enforcement;

2)    information relating to an investigation that did not result in a conviction or deferred adjudication;

3)    information relating to a threat against a peace officer or detention officer collected or disseminated under section 411.048; and

4)    information that is prepared by a prosecutor in anticipation or in preparation for criminal litigation or that reflects the prosecutor's mental impressions or legal reasoning.

**a.      Information Relating to the Detection, Investigation, or Prosecution of Crime**

In order to establish the applicability of sections 552.108(a)(1) and 552.108(b)(1) to a requested criminal file, a law enforcement agency should inform the attorney general how and why release of the information would interfere with law enforcement or prosecution.[503]  The law enforcement agency must inform our office of the status of the case the information concerns.  Information relating to a pending criminal investigation or prosecution is one example of information that is excepted under sections 552.108(a)(1) and 552.108(b)(1) because release of such information would presumptively interfere with the detection, investigation, or prosecution of crime.[504]

Section 552.108(b)(1) excepts from disclosure the internal records and notations of law enforcement agencies and prosecutors when their release would interfere with law enforcement or crime prevention.[505]  The attorney general has permitted the Department of Public Safety to withhold a list of stations that issue drivers' licenses and the corresponding code that designates each station on the drivers' licenses issued by that station.[506]  Although the information did not on its face suggest that its release would interfere with law enforcement, the Department of Public Safety explained that the codes are used by officers to determine whether a license is forged and argued that releasing the list of stations and codes would reduce the value of the codes for detecting forged drivers' licenses.[507]  The attorney general previously held that release of routine investigative procedures, techniques that are commonly known, and routine personnel information would not interfere with law enforcement and crime prevention.[508]

---

[503]    *See Ex parte Pruitt*, 551 S.W.2d 706, 710 (Tex. 1977).

[504]    *See Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177, 184-85 (Tex. Civ. App.—Houston [14th Dist.] 1975) (court delineates law enforcement interests that are present in active cases), *writ ref'd n.r.e. per curiam*, 536 S.W.2d 559 (Tex. 1976).

[505]    *See* Open Records Decision No. 531 at 2 (1989) (quoting *Ex parte Pruitt*, 551 S.W.2d 706 (Tex. 1977)).

[506]    Open Records Decision No. 341 at 2 (1982).

[507]    Open Records Decision No. 341 at 1-2 (1982).

[508]    *See* Open Records Decision Nos. 216 at 4 (1978), 133 at 3 (1976).

The Texas Supreme Court has addressed the applicability of former section 552.108 to the internal records and notations of the comptroller's office. In *A & T Consultants, Inc. v. Sharp*,[509] the supreme court stated that former section 552.108 has the same scope as section 552(b)(7) of the federal Freedom of Information Act,[510] which prevents the disclosure of investigatory records that would reveal law enforcement methods, techniques, and strategies, including those the Internal Revenue Service uses to collect federal taxes.[511] Some information, such as the date a taxpayer's name appeared on a generation list and the assignment date and codes in audits, is excepted from disclosure by former section 552.108 because it reflects the internal deliberations within the comptroller's office and would interfere with the comptroller's office's law enforcement efforts.[512] For audits that have been concluded, there is little harm in releasing some of this information.[513] The audit method and audit group remain excepted from disclosure before, during, and after the comptroller undertakes a taxpayer audit under former section 552.108.[514]

The attorney general also addressed whether internal records and notations could be withheld under the statutory predecessor to section 552.108 in the following decisions:

Open Records Decision No. 531 (1989) — detailed guidelines regarding a police department's use of force policy may be withheld, but not those portions of the procedures that restate generally known common-law rules, constitutional limitations, or Penal Code provisions; the release of the detailed guidelines would impair an officer's ability to arrest a suspect and would place individuals at an advantage in confrontations with police;

Open Records Decision No. 508 (1988) — the dates on which specific prisoners are to be transferred from a county jail to the Texas Department of Criminal Justice (formerly the Texas Department of Corrections) may be withheld prior to the transfer because release of this information could impair security, but these dates may not be withheld after the prisoner is transferred because the public has a legitimate interest in the information;

Open Records Decision No. 506 (1988) — the cellular telephone numbers assigned to county officials and employees with specific law enforcement duties may be withheld;

Open Records Decision No. 413 (1984) — a sketch showing the security measures that the Texas Department of Criminal Justice plans to use for its next scheduled execution may be withheld because its release may make crowd control unreasonably difficult;

Open Records Decision No. 394 (1983) — except for information regarding juveniles, a jail roster may not be withheld; a jail roster is an internal record that reveals information specifically made public in other forms, such as the names of persons arrested;

---

[509] *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668 (Tex. 1995).

[510] 5 U.S.C. § 552(b)(7).

[511] *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 678 (Tex. 1995).

[512] *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 679-81 (Tex. 1995).

[513] *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 678 (Tex. 1995) (pre-audit generation and assignment dates not excepted under Gov't Code § 552.108 once audit completed).

[514] *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 679 (Tex. 1995).

Open Records Decision No. 369 (1983) — notes recording a prosecutor's subjective comments about former jurors may be withheld; releasing these comments would tend to reveal future prosecutorial strategy; and

Open Records Decision Nos. 211 (1978), 143 (1976) — information that would reveal the identities of undercover agents or where employees travel on sensitive assignments may be withheld.

### b.    Information Relating to Concluded Cases

With regard to the second category of information, information relating to a criminal investigation or prosecution that ended in a result other than a conviction or deferred adjudication may be withheld under sections 552.108(a)(2) and 552.108(b)(2).    Sections 552.108(a)(2) and 552.108(b)(2) cannot apply to an open criminal file because the investigation or prosecution for such a file has not concluded.  If a case is still open and pending, either at the investigative or prosecution level, the sections that can apply are sections 552.108(a)(1) and 552.108(b)(1), not sections 552.108(a)(2) and 552.108(b)(2).



The 88th Legislature added subsection (d) to section 552.108.  Pursuant to the newly enacted section 552.108(d), section 552.108(a)(2) is not applicable to information, records, or notations if a person described or depicted by such information, other than a peace officer, is deceased or incapacitated, or if each person who is described or depicted in such information, other than the deceased or incapicated, consents to disclosure of such information.

To establish the applicability of sections 552.108(a)(2) and 552.108(b)(2), a governmental body must demonstrate that the requested information relates to a criminal investigation that concluded in a final result other than a conviction or deferred adjudication.

### c.    Information Relating to a Threat Against a Peace Officer or Detention Officer

The third category of information protected under section 552.108(a)(3) consists of information relating to a threat against a peace officer or detention officer that is collected or disseminated under section 411.048 of the Government Code.  Under section 411.048, the Department of Public Safety's Bureau of Identification and Records is required to create and maintain an index for the purpose of collecting and disseminating information regarding threats of serious bodily injury or death made against a peace officer.[515]  The attorney general determined in an informal letter ruling that information provided to the Bureau of Identification and Records for potential inclusion in its database regarding threats made against a peace officer was excepted from disclosure under section 552.108(a)(3).[516]

### d.    Prosecutor Information

Under the fourth category of information, sections 552.108(a)(4) and 552.108(b)(3) protect information, including an internal record or notation, prepared by a prosecutor in anticipation of or in the course of preparing for criminal litigation *or* information that reflects the prosecutor's

---

[515]   Gov't Code § 411.048(b).

[516]   Open Records Letter No. 2003-3988 (2003).

mental impressions or legal reasoning. When a governmental body asserts that the information reflects the prosecutor's mental impressions or legal reasoning, the governmental body should, in its request for a ruling, explain how the information does so.

## 3.    Limitations on Scope of Section 552.108

Section 552.108(c) provides that basic information about an arrested person, an arrest, or a crime may not be withheld under section 552.108.[517] Further, section 552.108(c) requires the prompt production of basic information unless the basic information is excepted from disclosure under another provision in the Act. The kinds of basic information not excepted from disclosure by section 552.108 are those that were deemed public in *Houston Chronicle Publ'g Co. v. City of Houston* and catalogued in Open Records Decision No. 127 (1976).[518] Basic information is information that ordinarily appears on the first page of an offense report, such as:

(a)    the name, age, address, race, sex, occupation, alias, social security number, police department identification number, and physical condition of the arrested person;

(b)    the date and time of the arrest;

(c)    the place of the arrest;

(d)    the offense charged and the court in which it is filed;

(e)    the details of the arrest;

(f)    booking information;

(g)    the notation of any release or transfer;

(h)    bonding information;

(i)    the location of the crime;

(j)    the identification and description of the complainant;

(k)    the premises involved;

(l)    the time of occurrence of the crime;

(m)   the property involved, if any;

(n)    the vehicles involved, if any;

(o)    a description of the weather;

---

[517]   Gov't Code § 552.108(c).

[518]   *Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177 (Tex. Civ. App.—Houston [14th Dist.] 1975), writ ref'd n.r.e. per curiam, 536 S.W.2d 559 (Tex. 1976).

(p)   a detailed description of the offense; and

(q)   the names of the arresting and investigating officers.[519]

Generally, the identity of the complainant may not be withheld from disclosure under section 552.108. However, the identity of the complainant may be withheld in certain instances under other provisions of the law. For example, where the complainant is also the victim of a serious sexual offense, the identity of the complainant must be withheld from public disclosure pursuant to section 552.101 in conjunction with common-law privacy.[520] The attorney general has also determined that, where the complainant is also an informer for purposes of the informer's privilege, the complainant's identity may be withheld under section 552.101 in conjunction with the common-law informer's privilege.[521]

Although basic information not excepted from disclosure by section 552.108 often is described by its location ("first-page offense report information"), the location of the information or the label placed on it is not determinative of its status under section 552.108. For example, basic information appearing in other records of law enforcement agencies, such as blotters, arrest sheets, and "show-up sheets," is not excepted from disclosure by section 552.108.[522]

Section 552.108 generally does not apply to information made public by statute or to information to which a statute grants certain individuals rights of access.[523] For example, even if an accident report completed pursuant to Chapter 550 of the Transportation Code relates to a pending criminal investigation, a law enforcement entity must release the accident report to a requestor given a statutory right of access to the report under section 550.065(c) of the Transportation Code.[524]

### 4.   Application of Section 552.108 to Information Relating to Police Officers and Complaints Against Police Officers

Because of their role in protecting the safety of the general public, law enforcement officers generally can expect a lesser degree of personal privacy than other public employees.[525] General information about a police officer usually is not excepted from required public disclosure by section 552.108. For example, a police officer's age, law enforcement background, and previous experience and employment usually are not excepted from disclosure by section 552.108.[526]

---

[519]   Open Records Decision No. 127 at 3-5 (1976).

[520]   *See* Open Records Decision Nos. 440 (1986), 393 (1983), 339 (1982).

[521]   *See* Open Records Letter No. 2004-8297 (2004).

[522]   *See* Open Records Decision No. 127 at 3-4 (1976).

[523]   Open Records Decision Nos. 161 (1977), 146 at 2 (1976); *see also* Open Records Decision Nos. 613 at 4 (1993), 451 at 4 (1986).

[524]   Transp. Code § 550.065(c).

[525]   *See Tex. State Employees Union v. Tex. Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 206 (Tex. 1987); Open Records Decision No. 562 at 9 n.2 (1990).

[526]   *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 326-28 (Tex. App.—Austin 2002, no pet.); Open Records Decision Nos. 562 at 10 (1990), 329 at 1 (1982).

Similarly, information about administrative complaints against police officers generally may not be withheld under section 552.108. For example, the names of complainants, the names of the officers who are the subjects of complaints, an officer's written response to a complaint, and the final disposition of a complaint generally are not excepted from disclosure by section 552.108.[527] Information about complaints against public officers may be withheld under section 552.108 if the police department can demonstrate release of the information will interfere with the detection, investigation, or prosecution of crime. However, section 552.108 is inapplicable where an administrative complaint against a law enforcement officer does not result in a criminal investigation or prosecution.[528]

### a.    Personnel Files of Police Officers Serving in Civil Service Cities

The disclosure of information from the personnel files of police officers serving in cities that have adopted chapter 143 of the Local Government Code (the fire fighters' and police officers' civil service law) is governed by section 143.089 of the Local Government Code.[529] Section 143.089 contemplates two different types of personnel files: (1) a police officer's civil service file that the civil service director is required to maintain pursuant to section 143.089(a) and (2) an internal file that the police department may maintain for its own use pursuant to section 143.089(g).[530] A police officer's civil service file must contain specified items, including commendations, documents relating to misconduct that resulted in disciplinary action and periodic evaluations by the officer's supervisor.[531] In cases in which a police department investigates a police officer's misconduct and takes disciplinary action[532] against a police officer, it is required by section 143.089(a)(2) to place all investigatory records relating to the investigation and disciplinary action, including background documents such as complaints, witness statements, and documents of like nature from individuals who were not in a supervisory capacity, in the police officer's civil service file maintained under section 143.089(a).[533] Records maintained in the police officer's civil service file are subject to release under chapter 552 of the Government Code.[534] Furthermore, pursuant to section 143.089(e), the police officer has a right of access to the records maintained in his civil service file.[535] Information maintained in a police department's internal file pursuant to section 143.089(g) is confidential and generally must not be released.[536] However, a hiring law

[527]   Open Records Decision Nos. 350 at 3 (1982), 342 at 2 (1982), 329 at 2 (1982).

[528]   *Morales v. Ellen*, 840 S.W.2d 519, 525-26 (Tex. App.—El Paso 1992, writ denied) (construing statutory predecessor).

[529]   Local Gov't Code § 143.089; *see City of San Antonio v. San Antonio Express-News*, 47 S.W.3d 556 (Tex. App.—San Antonio 2000, pet. denied); *City of San Antonio v. Tex. Attorney Gen.*, 851 S.W.2d 946 (Tex. App.—Austin 1993, writ denied).

[530]   Local Gov't Code § 143.089(a), (g).

[531]   Local Gov't Code § 143.089(a).

[532]   For the purpose of section 143.089 of the Local Government Code, the term "disciplinary action" includes removal, suspension, demotion, and uncompensated duty. Local Gov't Code §§ 143.051-.055. "Disciplinary action" does not include a written reprimand. *See* Attorney General Opinion JC-0257 at 5 (2000).

[533]   *Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 122 (Tex. App.—Austin 2003, no pet.).

[534]   *See* Local Gov't Code § 143.089(f); Open Records Decision No. 562 at 6 (1990).

[535]   Local Gov't Code § 143.089(e).

[536]   *See* Local Gov't Code § 143.089(g); *City of San Antonio v. Tex. Attorney Gen.*, 851 S.W.2d 946, 949 (Tex. App.—Austin 1993, writ denied).

enforcement agency is entitled to view an applicant officer's (g) file, in accordance with section 1701.451 of the Occupations Code.[537]

A city police department should refer a request for information in a police officer's personnel file to the civil service director or the director's designee.[538]

## 5.    Other Related Law Enforcement Records

### a.    Criminal History Information

Where an individual's criminal history information has been compiled or summarized by a governmental entity, the information takes on a character that implicates the individual's right of privacy in a manner that the same individual's records in an uncompiled state do not.[539] Thus, when a requestor asks for unspecified law enforcement records concerning a named individual and that individual is a suspect, arrestee, or criminal defendant in the information at issue, a law enforcement agency must withhold this information under section 552.101 of the Government Code as that individual's privacy right has been implicated.[540]

Federal law also imposes limitations on the dissemination of criminal history information obtained from the federal National Crime Information Center (NCIC) and its Texas counterpart, the Texas Crime Information Center (TCIC).[541] In essence, federal law requires each state to observe its own laws regarding the dissemination of criminal history information it generates, but requires a state to maintain as confidential any information from other states or the federal government that the state obtains by access to the Interstate Identification Index, a component of the NCIC.[542]

Chapter 411, subchapter F, of the Government Code contains the Texas statutes that govern the confidentiality and release of TCIC information obtained from the Texas Department of Public Safety. However, subchapter F "does not prohibit a criminal justice agency from disclosing to the public criminal history record information that is related to the offense for which a person is involved in the criminal justice system."[543] Moreover, the protection in subchapter F does not extend to driving record information maintained by the Department of Public Safety pursuant to subchapter C of chapter 521 of the Transportation Code.[544] Any person is entitled to obtain from

---

[537]    Local Gov't Code § 143.089(h); Occ. Code § 1701.454 (providing requirements for law enforcement agency to hire persons licensed under chapter 1701).

[538]    Local Gov't Code § 143.089(g).

[539]    *Cf. United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 764 (1989) (when considering prong regarding individual's privacy interest, court recognized distinction between public records found in courthouse files and local police stations and compiled summary of information and noted individual has significant privacy interest in compilation of one's criminal history).

[540]    *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 764 (1989); *cf.* Gov't Code § 411.083.

[541]    *See* Open Records Decision No. 655 (1997).

[542]    *See* 28 C.F.R. pt. 20; Open Records Decision No. 565 at 10-12 (1990).

[543]    Gov't Code § 411.081(b).

[544]    Gov't Code § 411.082(2)(B).

the Department of Public Safety information regarding convictions and deferred adjudications and the person's own criminal history information.[545]

### b.  Juvenile Law Enforcement Records

The relevant language of Family Code section 58.008(b) provides as follows:

> **(b)  Except as provided by Subsection (c), law enforcement records concerning a child and information concerning a child that are stored by electronic means or otherwise and from which a record could be generated may not be disclosed to the public and shall be:**
>
> > **(1)  if maintained on paper or microfilm, kept separate from adult records;**
> >
> > **(2)  if maintained electronically in the same computer system as adult records accessible only under controls that are separate and distinct from controls to access electronic data concerning adults; and**
> >
> > **(3)  maintained on a local basis only and not sent to a central state or federal depository, except as provided by Subsection C or Subchapters B, D, and E.[546]**

Section 58.008(b) applies only to the records of a child[547] who is alleged to have engaged in delinquent conduct or conduct indicating a need for supervision.[548]  Section 58.008 applies to records created before, on, or after September 1, 2017.[549] Section 58.008(b) does not apply where the information in question involves a juvenile as only a complainant, witness, or individual party and not a juvenile as a suspect or offender.  Section 58.008(b) applies to entire law enforcement records; therefore, a law enforcement entity is generally prohibited from releasing even basic information from an investigation file when section 58.008(b) applies.

However, subsections 58.008(d) and 58.008(e) provide:

> **(d)  Law enforcement records concerning a child may be inspected or copied by:**
>
> > **(1)  a juvenile justice agency, as defined by Section 58.101;**
> >
> > **(2)  a criminal justice agency as defined by Section 411.082, Government Code;**
> >
> > **(3)  the child;**

---

[545]  Gov't Code §§ 411.083(b)(3), .135(a)(2).

[546]  Fam. Code § 58.008(b).

[547]  Section 51.02 of the Family Code defines "child" as "a person who is: (A) ten years of age or older and under 17 years of age; or (B) seventeen years of age or older and under 18 years of age who is alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision as a result of acts committed before becoming 17 years of age."  Fam. Code § 51.02(2).

[548]  Fam. Code § 51.03(b); *see* Open Records Decision No. 680 (2003) (construing statutory predecessor).

[549]  *See* Act of May 28, 2017, 85th Leg. R.S., S.B. 1304, § 22.

> **(4) the child's parent or guardian; or**
>
> **(5) the chief executive officer or the officer's designee of a primary or secondary school where the child is enrolled only the purpose of conducting a threat assessment or preparing a safety plan related to the child.**
>
> . . .
>
> **(e) Before a child or a child's parent or guardian may inspect or copy a record concerning the child under Subsection (d), the custodian of the record shall redact:**
>
> **(1) any personally identifiable information about a juvenile suspect, offender, victim, or witness who is not the child; and**
>
> **(2) any information that is excepted from required disclosure under Chapter 552, Government Code, or any other law.**[550]

Pursuant to section 58.008(d), a governmental body may not withhold under section 58.008(b) a child's law enforcement records from the child's parent, guardian, the child, or in certain instances, the chief executive officer or the officer's designee of a primary or secondary school where the child is enrolled. However, pursuant to section 58.008(e)(2), a governmental body may raise other exceptions to disclosure. Also, pursuant to section 58.008(e)(1), personally identifiable information of a juvenile suspect, offender, witness, or victim who is not the child must be withheld. For purposes of section 58.008(e)(1), a juvenile victim or witness is a person under eighteen years of age.

## c. Child Abuse and Neglect Records

The relevant language of Family Code section 261.201(a) provides:

> **(a) Except as provided by Section 261.203, the following information is confidential, is not subject to public release under Chapter 552, Government Code, and may be disclosed only for purposes consistent with this code and applicable federal or state law or under rules adopted by an investigating agency:**
>
> **(1) a report of alleged or suspected abuse or neglect made under this chapter and the identity of the person making the report; and**
>
> **(2) except as otherwise provided in this section, the files, reports, records, communications, audiotapes, videotapes, and working papers used or developed in an investigation under this chapter or in providing services as a result of an investigation.**[551]

---

[550] Fam. Code § 58.008(d), (e).

[551] Fam. Code § 261.201(a).

*2024 Public Information Handbook • Office of the Attorney General*

106

Section 261.201(a) applies to a report of and information used or developed in an investigation of suspected abuse or neglect[552] of a child[553] and the identity of the individual who made the report of abuse or neglect.[554] Section 261.201(h), however, states section 261.201 does not apply to investigations of abuse or neglect in a home or facility regulated under chapter 42 of the Human Resources Code, such as a childcare facility.[555]

Moreover, sections 261.201(k) and 261.201(l) provide:

> **(k)** **Notwithstanding Subsection (a), an investigating agency, other than the [Texas Department of Family and Protective Services] or the Texas Juvenile Justice Department, on request, shall provide to the parent, managing conservator, or other legal representative of a child who is the subject of reported abuse or neglect, or to the child if the child is at least 18 years of age, information concerning the reported abuse or neglect that would otherwise be confidential under this section. The investigating agency shall withhold information under this subsection if the parent, managing conservator, or other legal representative of the child requesting the information is alleged to have committed the abuse or neglect.**

> **(l)** **Before a child or a parent, managing conservator, or other legal representative of a child may inspect or copy a record or file concerning the child under Subsection (k), the custodian of the record or file must redact:**

> **(1) any personally identifiable information about a victim or witness under 18 years of age unless that victim or witness is:**

> **(A) the child who is the subject of the report; or**

> **(B) another child of the parent, managing conservator, or other legal representative requesting the information;**

> **(2) any information that is excepted from required disclosure under Chapter 552, Government Code, or other law; and**

> **(3) the identity of the person who made the report.[556]**

Pursuant to section 261.201(k), a governmental body may not withhold child abuse or neglect records from the parent, managing conservator, or other legal representative of the child, if the parent, managing conservator, or other legal representative is not accused of committing the abuse or neglect, or from the child if the child is at least eighteen years of age. Pursuant to section 261.201(l)(2), a governmental body may raise other exceptions to disclosure for the child abuse or neglect records. Further, pursuant to sections 261.201(l)(1) and 261.201(l)(3), personally identifiable information of a victim or witness under eighteen years of age who is not the child or

---

[552] Fam. Code § 261.001(1), (4).

[553] *See* Fam. Code § 101.003(a) (defining "child" for section 261.201 purposes).

[554] Open Records Decision No. 440 (1986) (construing statutory predecessors).

[555] Fam. Code § 261.201(h).

[556] Fam. Code § 261.201(k)-(l).

another child of the parent, managing conservator, or other legal representative and the identity of the reporting party must be withheld.

### d.    Sex Offender Registration Information

Under article 62.005 of the Code of Criminal Procedure, all information contained in either an adult or juvenile sex offender registration form and subsequently entered into the Department of Public Safety database is public information and must be released upon written request, except for the registrant's social security number, driver's license number, home, work, or cellular telephone number, information described by article 62.051(c)(7) or required by the Department of Public Safety under article 62.051(c)(9), and any information that would reveal the victim's identity.[557]

Local law enforcement authorities are required under article 62.053(f) of the Code of Criminal Procedure to provide school officials with "any information the authority determines is necessary to protect the public" regarding sex offenders except the person's social security number, driver's license number, home, work, or cellular telephone number, and any information that would identify the victim of the offense.[558]

Neither a school district official nor the general public is authorized to receive from local law enforcement authorities sex offender registration information pertaining to individuals whose reportable convictions or adjudication occurred prior to September 1, 1970.[559]

### e.    Records of 9-1-1 Calls

Originating telephone numbers and addresses of 9-1-1 callers furnished on a call-by-call basis by a telephone service supplier to a 9-1-1 emergency communication district established under subchapter B, C, or D of chapter 772 of the Health and Safety Code are confidential under sections 772.118, 772.218, and 772.318 of the Health and Safety Code, respectively.[560] Chapter 772 does not except from disclosure any other information contained on a computer aided dispatch report that was obtained during a 9-1-1 call.[561] Subchapter E, which applies to counties with populations over 2 million, does not contain a similar confidentiality provision. Other exceptions to disclosure in the Public Information Act may apply to information not otherwise confidential under section 772.118, section 772.218, or section 772.318 of the Health and Safety Code.[562]

### f.    Certain Information Related to Terrorism and Homeland Security

Sections 418.176 through 418.182 of the Government Code, part of the Texas Homeland Security Act, make confidential certain information related to terrorism or related criminal activity. The fact that information may relate to a governmental body's security concerns does not make the information *per se* confidential under the Texas Homeland Security Act. As with any exception

---

[557]   Crim. Proc. Code art. 62.005(b); Open Records Decision No. 645 at 3 (1996) (construing statutory predecessor).

[558]   Crim. Proc. Code  art. 62.053(e), (f) (information must be released if restrictions under Crim. Proc. Code art. 62.054 are met).

[559]   *See* Crim. Proc. Code art. 62.002(a).

[560]   *See* Health and Safety Code §§ 772.118(c), .218(c), .318(c); Open Records Decision No. 649 at 2-3 (1996).

[561]   Open Records Decision No. 649 at 3 (1996).

[562]   Open Records Decision No. 649 at 4 (1996).

to disclosure, a governmental body asserting one of the confidentiality provisions of the Texas Homeland Security Act must explain how the responsive records fall within the scope of the claimed provision.[563]

In *Texas Department of Public Safety v. Abbott*, the Texas Department of Public Safety challenged the conclusion of the attorney general and the trial court that videos recorded by security cameras in a Texas Capitol hallway were not confidential under section 418.182 of the Government Code.[564] In reversing this conclusion, the Third Court of Appeals found the Texas Department of Public Safety demonstrated the videos relate to the specifications of the capitol security system used to protect public property from an act of terrorism or related criminal activity because the legislature's use of "relates to" is a plain legislative choice to broadly protect information regarding security systems designed to protect public property. Thus, the court concluded the recorded images necessarily relate to the specifications of the security system that recorded them.

Release of certain information about aviation and maritime security is governed by federal law.[565] The attorney general has determined in several informal letter rulings that the decision to withhold or release such information rests with the head of the federal Transportation Security Administration (the "TSA") or the Coast Guard and that requests for such information should be referred to the TSA or Coast Guard for their decision concerning disclosure of the information.[566]

### g. Voucher Information

Section 660.2035 of the Government Code provides:

> (a) **A voucher or other expense reimbursement form, and any receipt or other document supporting that voucher or other expense reimbursement form, that is submitted or to be submitted under Section 660.027 is confidential under Chapter 552 for a period of 18 months following the date of travel if the voucher or other expense reimbursement form is submitted or is to be submitted for payment or reimbursement of a travel expense incurred by a peace officer while assigned to provide protection for an elected official or a member of the elected official's family.**[567]

> (b) **At the expiration of the period provided by Subsection (a), the voucher or other expense reimbursement form and any supporting documents become subject to disclosure under Chapter 552 and are not excepted from public disclosure or confidential under that chapter or other law, [except for certain provisions of law.]**[568]

Subsection 660.2035(b) specifically lists seven exceptions in the Act that can apply to withhold information within a voucher, expense reimbursement form, and any supporting document after

---

[563]  *See* Gov't Code § 552.301(e)(1)(A) (governmental body must explain how claimed exception to disclosure applies).

[564]  *Tex. Dep't of Pub. Safety v. Abbott*, 310 S.W.3d 670 (Tex. App.—Austin 2010, no pet.).

[565]  49 U.S.C. § 114(r); 49 C.F.R. pt. 1520.

[566]  Open Records Letter Nos. 2013-09028 (2013), 2009-11201 (2009), 2005-07525 (2005).

[567]  Gov't Code § 660.2035(a).

[568]  Gov't Code § 660.2035(b).

the 18 month period expires.[569] In an informal letter ruling, the attorney general considered the Texas Department of Public Safety's claims that, after the expiration of the 18-month confidentiality period, sections 552.101 and 552.152 of the Government Code protected travel vouchers and supporting documentation submitted by agents of the Executive Protection Bureau for reimbursement of travel expenses.[570] Because section 552.101 is not one of the enumerated exceptions in subsection 660.2035(b), the attorney general determined section 552.101 did not apply to travel vouchers and supporting documentation.[571] However, as section 552.152 is an exception listed in subsection 660.2035(b), the attorney general considered the claim to withhold the information under section 552.152, and finding the claim had merit, concluded the travel vouchers and supporting documentation were excepted from disclosure under section 552.152.[572]

### h.     Body Worn Camera Program

Subchapter N of chapter 1701 of the Occupations Code pertains to body worn cameras. Subchapter N revises the procedures associated with public information requests for body worn camera recordings. Generally, requestors need not use "magic words" when making requests to governmental bodies; however, when requestors seek access to body worn camera recordings, requestors must provide:

(1) the date and approximate time of the recording;
(2) the specific location where the recording occurred; and
(3) the name of one or more persons known to be a subject of the recording.[573]

Failure to provide this information does not preclude a requestor from requesting the same information again.[574] When properly requested, chapter 1701 provides for the confidentiality of body worn camera recordings under certain circumstances. A body worn camera recording is confidential if it was not required to be made under a law or policy adopted by the relevant law enforcement agency.[575]

Section 1701.660 makes confidential any recording from a body-worn camera that documents the use of deadly force or that is related to an administrative or criminal investigation of an officer until all criminal matters are finally adjudicated and all administrative investigations completed.[576] However, a law enforcement agency may choose to release such information if doing so furthers a law enforcement interest.[577] Before a law enforcement agency releases a body-worn camera recording that was made in a private space or in connection with a fine-only misdemeanor, the agency must receive authorization from the person who is the subject of the recording, or if that

---

[569]   Gov't Code § 660.2035(b).

[570]   Open Records Letter No. 2014-02048 (2014).

[571]   Open Records Letter No. 2014-02048 at 3 (2014).

[572]   Open Records Letter No. 2014-02048 at 3-4 (2014).

[573]   Occ. Code § 1701.661(a).

[574]   Occ. Code § 1701.661(b).

[575]   Occ. Code § 1701.661(h).

[576]   Occ. Code § 1701.660(a).

[577]   Occ. Code § 1701.660(b).

person is deceased, from the person's authorized representative.[578]  A governmental body may continue to raise section 552.108 or any other applicable exception to disclosure or law for a body-worn camera recording.[579]

Section 1701.662 also extends the ten and fifteen business day deadlines associated with requesting a ruling from the attorney general to twenty and twenty-five business days, respectively.[580]  Additionally, a governmental body that receives a "voluminous request" for body-worn camera recordings is considered to have complied with the request if it provides the information no later than twenty-one business days after it receives the request.[581]

### i.  Video Recordings of Arrests for Intoxication Offenses

Article 2.1396 of the Code of Criminal Procedure provides as follows:

> **A person stopped or arrested on suspicion of an offense under Section 49.04, 49.045, 49.07, or 49.08, Penal Code, is entitled to receive from a law enforcement agency employing the peace officer who made the stop or arrest a copy of any video made by or at the direction of the officer that contains footage of:**
>
> **(1) the stop;**
>
> **(2) the arrest;**
>
> **(3) the conduct of the person stopped during any interaction with the officer, including during the administration of a field sobriety test; or**
>
> **(4) a procedure in which a specimen of the person's breath or blood is taken.[582]**

Article 2.1396 applies only to a recording of conduct that occurs on or after September 1, 2015.[583] A requestor's right of access to a video recording subject to article 2.1396 will generally prevail over the Act's general exceptions to disclosure.[584]

## I.  Section 552.1081: Confidentiality of Certain Information Regarding Execution of Convict

Section 552.1081 of the Government Code provides as follows:

---

[578]  Occ. Code § 1701.661(f).

[579]  Occ. Code § 1701.661(e).

[580]  Occ. Code § 1701.662.

[581]  Occ. Code § 1701.663.

[582]  Crim. Proc. Code art. 2.1396.

[583]  Act of May 30, 2015, 84th Leg., R.S., H.B. 3791, § 2, 2015 Tex. Gen. Laws 3804, 3805 redesignated by Act of May 30, 2017, 85th Leg., R.S., H.B. 245, § 4.

[584]  *See* Open Records Decision Nos. 613 at 4 (1993), 451 (1986).

**Information is excepted from the requirements of Section 552.021 if it contains identifying information under Article 43.14, Code of Criminal Procedure, including that of:**

**(1) any person who participates in an execution procedure, including a person who uses, supplies, or administers a substance during the execution; and**

**(2) any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution.**

Section 552.1081 protects the name, address, and other identifying information of persons who participate in an execution procedure or of persons or entities that manufacture, transport, procure, compound, prescribe, dispense, or provide a substance used in an execution.[585]

## J.  Section 552.1085: Confidentiality of Sensitive Crime Scene Image

Section 552.1085 of the Government Code provides as follows:

**(a) In this section:**

**(1)  "Deceased person's next of kin" means:**

**(A)  the surviving spouse of the deceased person;**

**(B)  if there is no surviving spouse of the deceased, an adult child of the deceased person; or**

**(C)  if there is no surviving spouse or adult child of the deceased, a parent of the deceased person.**

**(2)  "Defendant" means a person being prosecuted for the death of the deceased person or a person convicted of an offense in relation to that death and appealing that conviction.**

**(3)  "Expressive work" means:**

**(A)  a fictional or nonfictional entertainment, dramatic, literary, or musical work that is a play, book, article, musical composition, audiovisual work, radio or television program, work of art, or work of political, educational, or newsworthy value;**

**(B)  a work the primary function of which is the delivery of news, information, current events, or other matters of public interest or concern; or**

**(C)  an advertisement or commercial announcement of a work described by Paragraph (A) or (B).**

---

[585]  Gov't Code § 552.1081; Crim. Proc. Code art 43.14.

(4) "Local governmental entity" means a county, municipality, school district, charter school, junior college district, or other political subdivision of this state.

(5) "Public or private institution of higher education" means:

   (A) an institution of higher education, as defined by Section 61.003, Education Code; or

   (B) a private or independent institution of higher education, as defined by Section 61.003, Education Code.

(6) "Sensitive crime scene image" means a photograph or video recording taken at a crime scene, contained in or part of a closed criminal case, that depicts a deceased person in a state of dismemberment, decapitation, or similar mutilation or that depicts the deceased person's genitalia.

(7) "State agency" means a department, commission, board, office, or other agency that is a part of state government and that is created by the constitution or a statute of this state. The term includes an institution of higher education as defined by Section 61.003, Education Code.

(b) For purposes of this section, an Internet website, the primary function of which is not the delivery of news, information, current events, or other matters of public interest or concern, is not an expressive work.

(c) A sensitive crime scene image in the custody of a governmental body is confidential and excepted from the requirements of Section 552.021 and a governmental body may not permit a person to view or copy the image except as provided by this section. This section applies to any sensitive crime scene image regardless of the date that the image was taken or recorded.

(d) Notwithstanding Subsection (c) and subject to Subsection (e), the following persons may view or copy information that constitutes a sensitive crime scene image from a governmental body:

(1) the deceased person's next of kin;

(2) a person authorized in writing by the deceased person's next of kin;

(3) a defendant or the defendant's attorney;

(4) a person who establishes to the governmental body an interest in a sensitive crime scene image that is based on, connected with, or in support of the creation, in any medium, of an expressive work;

> **(5)  a person performing bona fide research sponsored by a public or private institution of higher education with approval of a supervisor of the research or a supervising faculty member;**
>
> **(6)  a state agency;**
>
> **(7)  an agency of the federal government; or**
>
> **(8)  a local governmental entity.**
>
> **(e) This section does not prohibit a governmental body from asserting an exception to disclosure of a sensitive crime scene image to a person identified in Subsection (d) on the grounds that the image is excepted from the requirements of Section 552.021 under another provision of this chapter or another law.**
>
> **(f) Not later than the 10th business day after the date a governmental body receives a request for a sensitive crime scene image from a person described by Subsection (d)(4) or (5), the governmental body shall notify the deceased person's next of kin of the request in writing.  The notice must be sent to the next of kin's last known address.**
>
> **(g) A governmental body that receives a request for information that constitutes a sensitive crime scene image shall allow a person described in Subsection (d) to view or copy the image not later than the 10th business day after the date the governmental body receives the request unless the governmental body files a request for an attorney general decision under Subchapter G regarding whether an exception to public disclosure applies to the information.**

There are no cases or formal opinions interpreting section 552.1085.  However, in an informal letter ruling, the attorney general determined a governmental body failed to establish the applicability of section 552.1085 to the information at issue because the governmental body stated the information pertained to unresolved criminal cases that were ongoing.[586]  In a separate letter ruling, the attorney general concluded the next of kin of the deceased person depicted in the photographs at issue would have a right to view or copy the photographs pursuant to section 552.1085(d)(1), because the governmental body may not use section 552.1085(c)(1) to withhold the photographs from the next of kin and raised no other exceptions to withhold the photographs.[587]

## K.    Section 552.109: Confidentiality of Certain Private Communications of an Elected Office Holder

Section 552.109 of the Government Code excepts from required public disclosure:

> **Private correspondence or communications of an elected office holder relating to matters the disclosure of which would constitute an invasion of privacy are excepted from the requirements of Section 552.021.**

---

[586]  Open Records Letter No. 2014-04454 at 13 (2014).
[587]  Open Records Letter No. 2013-21155 at 4 (2013).

The test to be applied to information under section 552.109 is the same as the common-law privacy standard under section 552.101 and decisions under section 552.109 and its statutory predecessor rely on the same tests applicable under section 552.101.[588] The common-law privacy standard is laid out in *Indus. Found. v. Tex. Indus. Accident Bd.*, and protects information if it (1) contains highly intimate or embarrassing facts, the publication of which would be highly objectionably to a reasonable person, and (2) is not of legitimate concern to the public.[589] Both prongs of this test must be established.[590] Section 552.109 only protects the privacy interests of elected office holders.[591] It does not protect the privacy interests of their correspondents.[592] Certain records of communications between citizens and members of the legislature or the lieutenant governor may not be subject to the Act.[593]

In the following open records decisions, the attorney general determined that certain information was not excepted from required public disclosure under the statutory predecessor to section 552.109:

Open Records Decision No. 506 (1988) — cellular telephone numbers of county officials where county paid for installation of service and for telephone bills, and which service was intended to be used by officials in conducting official public business, because public has a legitimate interest in the performance of official public duties;

Open Records Decision No. 473 (1987) — performance evaluations of city council appointees, because this section was intended to protect the privacy only of elected office holders; although city council members prepared the evaluations, the evaluations did not implicate their privacy interests;

Open Records Decision No. 332 (1982) — letters concerning a teacher's performance written by parents to school trustees, because nothing in the letters constituted an invasion of privacy of the trustees;

Open Records Decision No. 241 (1980) — correspondence of the governor regarding potential nominees for public office, because the material was not protected by a constitutional right of privacy; furthermore, the material was not protected by common-law right of privacy because it did not contain any highly embarrassing or intimate facts and there was a legitimate public interest in the appointment process;[594] and

Open Records Decision No. 40 (1974) — itemized list of long distance calls made by legislators and charged to their contingent expense accounts, because such a list is not a "communication."

---

[588]  Open Records Decision Nos. 506 at 3 (1988), 241 (1980), 212 (1978).

[589]  *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 685 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977).

[590]  *Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 681-685 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977).

[591]  Open Records Decision No. 473 at 3 (1987).

[592]  *See* Open Records Decision No. 332 at 2 (1982).

[593]  *See* Gov't Code §§ 306.003, .004; Open Records Decision No. 648 (1996); Open Records Letter Nos. 2012-14193 (2012), 2012-06238 (2012).

[594]  *See* Open Records Decision No. 212 at 4 (1978).

## L. Section 552.110: Confidentiality of Trade Secrets and Confidentiality of Certain Commercial or Financial Information

Section 552.110 of the Government Code provides as follows:

(a) **In this section, "trade secret" means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or however stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:**

(1) **the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and**

(2) **the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.**

(b) **Except as provided by Section 552.0222, information is excepted from the requirements of Section 552.021 if it is demonstrated based on specific factual evidence that the information is a trade secret.**

(c) **Except as provided by Section 552.0222, commercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause a substantial competitive harm to the person from whom the information was obtained is excepted from the requirements of Section 552.021.**

Section 552.110 refers to two types of information: (1) trade secrets and (2) confidential commercial or financial information obtained from a person. The Act requires a governmental body to make a good faith attempt to notify in writing a person whose proprietary information may be subject to section 552.110 within ten business days after receiving the request for the information.[595] A person so notified bears the burden of establishing the applicability of section 552.110.[596] A copy of the form the Act requires the governmental body to send to a person whose information may be subject to section 552.110, as well as section 552.101, section 552.1101, section 552.113, or section 552.131, can be found in Part Seven of this *Handbook*.

### 1. Trade Secrets

Section 552.110(b) excepts from disclosure trade secrets. Prior decisions of the attorney general use the definition of "trade secret" from the Restatement of Torts, section 757 (1939). However,

---

[595] Gov't Code § 552.305.

[596] Gov't Code § 552.305.

"trade secret" is now defined within section 552.110(a). Accordingly, analyses of section 552.110 must use the definition within section 552.110(a). Further, the withholding of trade secrets is limited by section 552.0222. Section 552.0222 provides for the release of contracting information as defined in section 552.0222(b). "Contracting information" may not be withheld as trade secrets under section 552.110(b). Open Records Decision No. 552 (1990), discussing the predecessor statute, noted that the attorney general is unable to resolve disputes of fact regarding the status of information as "trade secrets" and must rely upon the facts alleged or upon those facts that are discernible from the documents submitted for inspection. For this reason, the attorney general will accept a claim for exception as a trade secret when a prima facie case is made that the information in question constitutes a trade secret and no argument is made that rebuts that assertion as a matter of law. In Open Records Decision No. 609 (1992), there was a factual dispute between the governmental body and the proponent of the trade secret protection as to certain elements of a prima facie case. Because the attorney general cannot resolve such factual disputes, the matter was referred back to the governmental body for fact-finding.

**2.      Commercial or Financial Information**

Section 552.110(c) excepts from disclosure commercial and financial information and includes the standard for excepting such information. An interested person must demonstrate "based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained." Like section 552.110(b), the withholding of commercial and financial information under section 552.110(c) is also limited by section 552.0222. Contracting information may not be withheld as commercial and financial information under section 552.110(c).

# M.     Section 552.1101: Confidentiality of Proprietary Information

Section 552.1101 of the Government Code provides as follows:

(a) **Except as provided by Section 552.0222, information submitted to a governmental body by a vendor, contractor, potential vendor, or potential contractor in response to a request for a bid, proposal, or qualification is excepted from the requirements of Section 552.021 if the vendor, contract, potential vendor, or potential contractor that the information relates to demonstrates based on specific factual evidence that disclosure of the information would:**

(1)      **reveal an individual approach to:**

(A)      **work;**

(B)      **organizational structure;**

(C)      **staffing;**

(D)      **internal operations;**

(E)      **processes; or**

> **(F)** discounts, pricing methodology, pricing per kilowatt hour, cost data, or other pricing information that will be used in future solicitation or bid documents; and
>
> **(2)** give advantage to a competitor.
>
> **(b)** The exception to disclosure provided by Subsection (a) does not apply to:
>
> **(1)** information in a voucher or contract relating to the receipt or expenditure of public funds by a governmental body; or
>
> **(2)** communications and other information sent between a governmental body and a vendor or contractor related to the performance of a final contract with the governmental body or work performed on behalf of the governmental body.
>
> **(c)** The exception to disclosure provided by Subsection (a) may be asserted only by a vendor, contractor, potential vendor, or potential contractor in the manner described by Section 552.305(b) for the purpose of protecting the interests of the vendor, contractor, potential vendor, or potential contractor. A governmental body shall decline to release information as provided by Section 552.305(a) to the extent necessary to allow a vendor, contractor, potential vendor, or potential contractor to assert the exception to disclosure provided by Subsection (a).

## N.  Section 552.111: Agency Memoranda

Section 552.111 of the Government Code excepts from required public disclosure:

> **An interagency or intraagency memorandum or letter that would not be available by law to a party in litigation with the agency[.]**

To be protected under section 552.111, information must consist of interagency or intraagency communications. Although information protected by section 552.111 is most commonly generated by agency personnel, information created for an agency by outside consultants acting on behalf of the agency in an official capacity may be within section 552.111.[597] An agency's communications with other agencies and third parties, however, are not protected unless the agency demonstrates that the parties to the communications share a privity of interest.[598] For example, correspondence between a licensing agency and a licensee is not excepted under section 552.111.[599]

Also, to be protected under section 552.111, an interagency or intraagency communication must be privileged from discovery in civil litigation involving the agency.[600] The attorney general has

---

[597]  Open Records Decision No. 462 (1987) (construing statutory predecessor).

[598]  *See* Open Records Decision No. 561 at 9 (1990) (correspondence from Federal Bureau of Investigation officer to city was not protected by statutory predecessor to Gov't Code § 552.111, where no privity of interest or common deliberative process existed between federal agency and city).

[599]  Open Records Decision No. 474 at 5 (1987) (construing statutory predecessor).

[600]  Open Records Decision Nos. 677 at 4 (2002), 615 at 2-3 (1993).

interpreted section 552.111 to incorporate both the deliberative process privilege and the work product privilege.[601]

## 1.    Deliberative Process Privilege

Section 552.111 has been read to incorporate the deliberative process privilege into the Public Information Act for intraagency and interagency communications.[602]  The deliberative process privilege, as incorporated into the Public Information Act, protects from disclosure intraagency and interagency communications consisting of advice, opinion, or recommendations on policymaking matters of the governmental body at issue.[603] The purpose of withholding advice, opinion, or recommendations under section 552.111 is "to encourage frank and open discussion within the agency in connection with its decision-making processes" pertaining to policy matters. [604]   "An agency's policymaking functions do not encompass routine internal administrative and personnel matters; disclosure of information relating to such matters will not inhibit free discussion among agency personnel as to policy issues."[605]  An agency's policymaking functions do include, however, administrative and personnel matters of broad scope that affect the governmental body's policy mission.[606]  For example, because the information at issue in Open Records Decision No. 615 (1993) concerned the evaluation of a university professor's job performance, the statutory predecessor to section 552.111 did not except this information from required public disclosure.  On the other hand, the information at issue in Open Records Decision No. 631 (1995) was a report addressing allegations of systematic discrimination against African-American and Hispanic faculty members in the retention, tenure, and promotion process at a university.  Rather than pertaining solely to the internal administration of the university, the scope of the report was much broader and involved the university's educational mission.  Accordingly, section 552.111 excepted from required public disclosure the portions of the report that constituted advice, recommendations, or opinions.[607]

Even when an internal memorandum relates to a governmental body's policy functions, the deliberative process privilege excepts from disclosure only the advice, recommendations, and opinions found in that memorandum.  The deliberative process privilege does not except from

---

[601]   Open Records Decision Nos. 647 at 5-6 (1996), 615 at 5 (1993); *see City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 360 (Tex. 2000).

[602]   *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 360 (Tex. 2000); *Lett v. Klein Indep. Sch. Dist.,* 917 S.W.2d 455, 456 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *Tex. Dep't of Pub. Safety v. Gilbreath*, 842 S.W.2d 408, 412-13 (Tex. App.—Austin 1992, no writ); Open Records Decision No. 615 at 5 (1993).

[603]   *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 361, 364 (Tex. 2000); *Arlington Indep. Sch. Dist. v. Tex. Attorney Gen.*, 37 S.W.3d 152, 158 (Tex. App.—Austin 2001, no pet.); Open Records Decision No. 615 at 5 (1993).

[604]   *Austin v. City of San Antonio*, 630 S.W.2d 391, 394 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.); *see also City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 361 (Tex. 2000); *Lett v. Klein Indep. Sch. Dist.,* 917 S.W.2d 455, 456, 457 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *Tex. Dep't of Pub. Safety v. Gilbreath*, 842 S.W.2d 408, 412 (Tex. App.—Austin 1992, no writ).

[605]   Open Records Decision No. 615 at 5 (1993); *see City of Garland v. Dallas Morning News*, 22 S.W.3d 364 (Tex. 2000); *Lett v. Klein Indep. Sch. Dist.,* 917 S.W.2d 455, 456 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

[606]   Open Records Decision No. 631 at 3 (1995); *City of Garland v. Dallas Morning News*, 969 S.W.2d 548, 557 (Tex. App.—Dallas 1998), *aff'd*, 22 S.W.3d 351 (Tex. 2000).

[607]   Open Records Decision No. 631 at 3 (1995).

disclosure purely factual information that is severable from the opinion portions of the memorandum.[608]

Before June 29, 1993, the attorney general did not confine the application of the statutory predecessor to section 552.111 solely to communications relating to agencies' policymaking functions. Given the change in the interpretation of the scope of section 552.111, a governmental body that receives a request for information should exercise caution in relying on attorney general decisions regarding the applicability of this exception written before June 29, 1993. For example, in Open Records Decision No. 559 (1990), the attorney general held that the predecessor statute to section 552.111 also protects drafts of a document that has been or will be released in final form to the public and any comments or other notations on the drafts because they necessarily represent advice, opinion, and recommendations of the drafter as to the form and content of the final document. However, the rationale and scope of this open records decision have been modified implicitly to apply only to those records involving an agency's policy matters.

## 2. Work Product Privilege

The attorney general has also concluded that section 552.111 incorporates the privilege for work product found in Texas Rule of Civil Procedure 192.5.[609] Rule 192.5 defines work product as:

**(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or**

**(2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.[610]**

A governmental body raising the work product privilege under section 552.111 bears the burden of providing the relevant facts in each case to demonstrate the elements of the privilege.[611] One element of the work product test is that the information must have been made or developed for trial or in anticipation of litigation.[612] In order for the attorney general to conclude that information was created for trial or in anticipation of litigation, the governmental body must demonstrate that at the time the information was created or acquired:

a) a reasonable person would have concluded from the totality of the circumstances . . . that there was a substantial chance that litigation would ensue; and b) the party resisting discovery

---

[608] *See* Open Records Decision No. 615 at 4-5 (1993); *City of Garland v. Dallas Morning News*, 22 S.W.3d 351 (Tex. 2000).

[609] Open Records Decision No. 677 at 4-8 (2002).

[610] TEX. R. CIV. P. 192.5(a).

[611] *See* Open Records Decision No. 677 at 6 (2002).

[612] TEX. R. CIV. P. 192.5(a); Open Records Decision No. 677 at 6 (2002).

believed in good faith that there was a substantial chance that litigation would ensue and [created or obtained the information] for the purpose of preparing for such litigation.[613]

A "substantial chance" of litigation does not mean a statistical probability, but rather "that litigation is more than merely an abstract possibility or unwarranted fear."[614]

Also, as part of the work product test, material or a mental impression must have been prepared or developed by or for a party or a party's representatives.[615] Similarly, in the case of a communication, the communication must have been between a party and the party's representatives.[616] Thus, a governmental body claiming the work product privilege must identify the parties or potential parties to the litigation, the person or entity that prepared the information, and any individual with whom the information was shared.[617]

If a requestor seeks a governmental body's entire litigation file, the governmental body may assert the file is excepted from disclosure in its entirety because such a request implicates the attorney work product privilege.[618] In such an instance, if the governmental body demonstrates the file was created in anticipation of litigation or for trial, the attorney general will presume the entire file is within the scope of the privilege.[619]

## O. Section 552.112: Certain Information Relating to Regulation of Financial Institutions or Securities

Section 552.112 of the Government Code provides as follows:

(a) **Information is excepted from the requirements of Section 552.021 if it is information contained in or relating to examination, operating, or condition reports prepared by or for an agency responsible for the regulation or supervision of financial institutions or securities, or both.**

(b) **In this section, "securities" has the meaning assigned by The Securities Act (Title 12, Government Code).[620]**

---

[613] *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 207 (Tex. 1993); *In re Monsanto Co.*, 998 S.W.2d 917, 923-24 (Tex. App.—Waco 1999, orig. proceeding).

[614] *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 204, 207 (Tex. 1993); *see* Open Records Decision No. 677 at 7 (2002).

[615] Tex. R. Civ. P. 192.5(a)(1); Open Records Decision No. 677 at 7 (2002).

[616] Tex. R. Civ. P. 192.5(a)(2); Open Records Decision No. 677 at 7-8 (2002).

[617] Open Records Decision No. 677 at 8 (2002).

[618] Open Records Decision No. 677 at 5-6 (2002).

[619] *See* Open Records Decision No. 647 at 5 (1996) (citing *Nat'l Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 461 (Tex. 1993)) (organization of attorney's litigation file necessarily reflects attorney's thought processes); *see also Curry v. Walker*, 873 S.W.2d 379, 380 (Tex. 1994) ("the decision as to what to include in [the file] necessarily reveals the attorney's thought processes concerning the prosecution or defense of the case").

[620] The 86th Legislature amended the language of section 552.112(b), which took effect January 1, 2022. *See* Act of May 3, 2019, 86th Leg., R. S., H.B. 4171, § 2.19.

**(c)** **Information is excepted from the requirements of Section 552.021 if it is information submitted by an individual or other entity to the Texas Legislative Council, or to any state agency or department overseen by the Finance Commission of Texas and the information has been or will be sent to the Texas Legislative Council, for the purpose of performing a statistical or demographic analysis of information subject to Section 323.020. However, this subsection does not except from the requirements of Section 552.021 information that does not identify or tend to identify an individual or other entity and that is subject to required public disclosure under Section 323.020(e).**

This section protects specific examination, operating, or condition reports prepared or obtained by agencies in regulating or supervising financial institutions or securities or information that indirectly reveals the contents of such reports.[621] Such reports typically disclose the financial status and dealings of the institutions that file them. Section 552.112 does not protect general information about the overall condition of an industry if the information does not identify particular institutions under investigation or supervision.[622] An entity must be a "financial institution" for its examination, operating, or condition reports to be excepted by section 552.112; it is not sufficient that the entity is regulated by an agency that regulates or supervises financial institutions.[623] The attorney general has stated that the term "financial institution" means "any banking corporation or trust company, building and loan association, governmental agency, insurance company, or related corporation, partnership, foundation, or the other institutions engaged primarily in lending or investing funds."[624] Notably, a Texas appeals court decision, *Birnbaum v. Alliance of Am. Insurers*,[625] held that insurance companies are not "financial institutions" under section 552.112, overruling the determination in Open Records Decision No. 158 (1977) that insurance companies were "financial institutions" under the statutory predecessor to the section. Section 552.112 is a permissive exception that a governmental body may waive at its discretion.[626] Thus, section 552.112 only protects the interests of a governmental body, rather than the interests of third parties.

The following open records decisions have considered whether information is excepted from required public disclosure under section 552.112:

Open Records Decision No. 483 (1987) — Texas Savings and Loan Department report containing a general discussion of the condition of the industry that does not identify particular institutions under investigation or supervision is not excepted from disclosure;

Open Records Decision No. 392 (1983) — material collected by the Consumer Credit Commissioner in an investigation of loan transactions was not protected by the statutory predecessor to section 552.112 when the requested information did not consist of a detailed description of the complete financial status of the company being investigated but rather

---

[621]   *See generally* Open Records Decision Nos. 261 (1980), 29 (1974).

[622]   Open Records Decision No. 483 at 9 (1987).

[623]   Open Records Decision No. 158 at 4-5 (1977).

[624]   Open Records Decision No. 158 at 5 (1977); *see also* Open Records Decision No. 392 at 3 (1983).

[625]   *Birnbaum v. Alliance of Am. Insurers*, 994 S.W.2d 766 (Tex. App.—Austin 1999, pet. denied).

[626]   *Birnbaum v. Alliance of Am. Insurers*, 994 S.W.2d 766 (Tex. App.—Austin 1999, pet. denied).

consisted of the records of the company's particular transactions with persons filing consumer complaints;

Open Records Decision No. 261 (1980) — form acknowledgment by bank board of directors that Department of Banking examination report had been received is excepted from disclosure where acknowledgment would reveal the conclusions reached by the department;

Open Records Decision No. 194 (1978) — pawn shop license application that includes information about applicant's net assets to assess compliance with Texas Pawnshop Act is not excepted from disclosure because such information does not qualify as an examination, operating, or condition report;

Open Records Decision No. 187 (1978) — property development plans submitted by a credit union to the Credit Union Department were excepted from disclosure by the statutory predecessor to section 552.112 because submission included detailed presentation of credit union's conditions and operations and the particular proposed investment; and

Open Records Decision No. 130 (1976) — investigative file of the enforcement division of the State Securities Board is excepted from disclosure.

## P.    Section 552.113: Confidentiality of Geological or Geophysical Information

Section 552.113 of the Government Code makes confidential electric logs under Subchapter M, Chapter 91, of the Natural Resources Code, and geological or geophysical information or data, including maps concerning wells, except when filed in connection with an application or proceeding before an agency.  This exception also applies to geological, geophysical, and geochemical information, including electric logs, filed with the General Land Office, and includes provisions for the expiration of confidentiality of "confidential material," as that term is defined, and the use of such material in administrative proceedings before the General Land Office.

Section 552.113 of the Government Code provides as follows:

**(a) Information is excepted from the requirements of Section 552.021 if it is:**

**(1) an electric log confidential under Subchapter M, Chapter 91, Natural Resources Code;**

**(2) geological or geophysical information or data, including maps concerning wells, except information filed in connection with an application or proceeding before an agency; or**

**(3) confidential under Subsections (c) through (f).**

**(b) Information that is shown to or examined by an employee of the General Land Office, but not retained in the land office, is not considered to be filed with the land office.**

**(c) In this section:**

(1) "Confidential material" includes all well logs, geological, geophysical, geochemical, and other similar data, including maps and other interpretations of the material filed in the General Land Office:

    (A) in connection with any administrative application or proceeding before the land commissioner, the school land board, any board for lease, or the commissioner's or board's staff; or

    (B) in compliance with the requirements of any law, rule, lease, or agreement.

(2) "Electric logs" has the same meaning as it has in Chapter 91, Natural Resources Code.

(3) "Administrative applications" and "administrative proceedings" include applications for pooling or unitization, review of shut-in royalty payments, review of leases or other agreements to determine their validity, review of any plan of operations, review of the obligation to drill offset wells, or an application to pay compensatory royalty.

(d) Confidential material, except electric logs, filed in the General Land Office on or after September 1, 1985, is public information and is available to the public under Section 552.021 on and after the later of:

(1) five years from the filing date of the confidential material; or

(2) one year from the expiration, termination, or forfeiture of the lease in connection with which the confidential material was filed.

(e) Electric logs filed in the General Land Office on or after September 1, 1985, are either public information or confidential material to the same extent and for the same periods provided for the same logs by Chapter 91, Natural Resources Code. A person may request that an electric log that has been filed in the General Land Office be made confidential by filing with the land office a copy of the written request for confidentiality made to the Railroad Commission of Texas for the same log.

(f) The following are public information:

(1) electric logs filed in the General Land Office before September 1, 1985; and

(2) confidential material, except electric logs, filed in the General Land Office before September 1, 1985, provided, that Subsection (d) governs the disclosure of that confidential material filed in connection with a lease that is a valid and subsisting lease on September 1, 1995.

(g) Confidential material may be disclosed at any time if the person filing the material, or the person's successor in interest in the lease in connection with which the

**confidential material was filed, consents in writing to its release. A party consenting to the disclosure of confidential material may restrict the manner of disclosure and the person or persons to whom the disclosure may be made.**

**(h)    Notwithstanding the confidential nature of the material described in this section, the material may be used by the General Land Office in the enforcement, by administrative proceeding or litigation, of the laws governing the sale and lease of public lands and minerals, the regulations of the land office, the school land board, or of any board for lease, or the terms of any lease, pooling or unitization agreement, or any other agreement or grant.**

**(i)    An administrative hearings officer may order that confidential material introduced in an administrative proceeding remain confidential until the proceeding is finally concluded, or for the period provided in Subsection (d), whichever is later.**

**(j)    Confidential material examined by an administrative hearings officer during the course of an administrative proceeding for the purpose of determining its admissibility as evidence shall not be considered to have been filed in the General Land Office to the extent that the confidential material is not introduced into evidence at the proceeding.**

**(k)    This section does not prevent a person from asserting that any confidential material is exempt from disclosure as a trade secret or commercial information under Section 552.110 or under any other basis permitted by law.**

Open Records Decision No. 627 (1994) interpreted the predecessor to the current version of section 552.113 as follows:

[S]ection 552.113 excepts from required public disclosure all "geological or geophysical information or data including maps concerning wells," unless the information is filed in connection with an application or proceeding before an agency . . .. We interpret "geological or geophysical information" as section 552.113(2) uses the term to refer only to geological and geophysical information regarding the exploration or development of natural resources. [Footnote omitted] Furthermore, we reaffirm our prior determination that section 552.113 protects only geological and geophysical information that is commercially valuable. *See* Open Records Decision Nos. 504 (1988) at 2; 479 (1987) at 2. Thus, we conclude that section 552.113(2) protects from public disclosure only (i) geological and geophysical information regarding the exploration or development of natural resources that is (ii) commercially valuable.[627]

The decision explained that the phrase "information regarding the exploration or development of natural resources" signifies "information indicating the presence or absence of natural resources in a particular location, as well as information indicating the extent of a particular deposit or accumulation."[628]

---

[627]    Open Records Decision No. 627 at 3-4 (1994) (footnote omitted).

[628]    Open Records Decision No. 627 at 4 n.4 (1994).

Open Records Decision No. 627 (1994) overruled Open Records Decision No. 504 (1988) to the extent the two decisions are inconsistent. In Open Records Decision No. 504 (1988), the attorney general had interpreted the statutory predecessor to section 552.113 of the Government Code to require the application of a test similar to the test used at that time to determine whether the statutory predecessor to section 552.110 protected commercial information (including trade secrets) from required public disclosure. Under that test, commercial information was "confidential" for purposes of the exemption if disclosure of the information was likely to have either of the following effects: (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.[629]

Following the issuance of Open Records Decision No. 504 (1988), the attorney general articulated new tests for determining whether section 552.110 of the Government Code protects trade secret information and commercial and financial information from required public disclosure.[630] Thus, Open Records Decision No. 627 (1994) re-examined the attorney general's reliance upon the former tests for section 552.110 to determine the applicability of section 552.113. That decision noted that section 552.113, as the legislature originally enacted it, differed from its federal counterpart[631] in that the statutory predecessor to section 552.113 excepted from its scope "information filed in connection with an application or proceeding before any agency."[632] Thus, the state exception to required public disclosure exempted a more limited class of information than did the federal exemption.[633] Consequently, the decision determined that grafting the balancing test used to limit the scope of the federal exemption to the plain language of section 552.113 was unnecessary.[634] Since the current version of section 552.113 took effect on September 1, 1995, there have been no published court decisions interpreting the amended statute or the validity of Open Records Decision No. 627 (1994) in light of the amendments to the statute.

The attorney general, however, has interpreted the term "commercially valuable" in a subsequent decision. In Open Records Decision No. 669 (2000), the attorney general applied section 552.113 to digital mapping information supplied to the General Land Office by a third party. The specific information at issue was information that the third party allowed to be disclosed to the public.[635] The attorney general held that the information was not protected under section 552.113 because the information was publicly available and thus was not commercially valuable.[636] Therefore, in order to be commercially valuable for purposes of Open Records Decision No. 627 (1994) and section 552.113, information must not be publicly available.[637]

When a governmental body believes requested information of a third party may be excepted under this exception, the governmental body must notify the third party in accordance with

---

[629] Open Records Decision No. 504 at 4 (1988).

[630] *See* Open Records Decision Nos. 592 at 2-8 (1991), 552 at 2-5 (1990).

[631] 5 U.S.C. § 552(b)(9).

[632] Open Records Decision No. 627 at 2-3 (1994).

[633] Open Records Decision No. 627 at 2-3 (1994).

[634] Open Records Decision No. 627 at 2-3 (1994).

[635] Open Records Decision No. 669 at 6 (2000).

[636] Open Records Decision No. 669 at 6 (2000).

[637] Open Records Decision No. 627 at 2-3 (1994).

section 552.305. The notice the governmental body must send to the third party is found in Part Seven of this *Handbook*.

## Q. Sections 552.026 and 552.114: Confidentiality of Student Records

The Public Information Act includes two provisions relating to student records, sections 552.026 and 552.114 of the Government Code.

### 1. Family Educational Rights and Privacy Act of 1974

Section 552.026 incorporates into the Texas Public Information Act the federal Family Educational Rights and Privacy Act of 1974,[638] also known as "FERPA" or the "Buckley Amendment."[639] FERPA governs the availability of student records held by educational institutions or agencies that receive federal funds under programs administered by the federal government. It prohibits, in most circumstances, the release of personally identifiable information contained in a student's education records without a parent's written consent.[640] It also gives parents a right to inspect the education records of their children.[641] If a student has reached age 18 or is attending an institution of post-secondary education, the rights established by FERPA attach to the student rather than to the student's parents.[642] "Education records" for purposes of FERPA are records that contain information directly related to a student and that are maintained by an educational institution or agency.[643]

Information must be withheld from required public disclosure under FERPA only to the extent "reasonable and necessary to avoid personally identifying a particular student."[644] Personally identifying information is defined as including, but not limited to, the following information:

(a)   The student's name;

(b)   The name of the student's parent or other family members;

(c)   The address of the student or student's family;

(d)   A personal identifier, such as the student's social security number, student number, or biometric record;

(e)   Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name;

---

[638]   20 U.S.C. § 1232g.

[639]   *See* Open Records Decision No. 72 (1975) (compliance with federal law was required before enactment of statutory predecessor to Gov't Code § 552.026).

[640]   20 U.S.C. § 1232g(b)(1).

[641]   20 U.S.C. § 1232g(a)(1).

[642]   20 U.S.C. § 1232g(d).

[643]   20 U.S.C. § 1232g(a)(4)(A).

[644]   Open Records Decision Nos. 332 (1982), 206 (1978).

(f)    Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or

(g)    Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.[645]

An educational institution or agency may, however, release "directory information" to the public if the educational institution or agency complies with certain procedures.[646]  Directory information includes, but is not limited to, the following information:  "the student's name; address; telephone listing; electronic mail address; photograph; date and place of birth; major field of study; grade level; enrollment status (*e.g.*, undergraduate or graduate, full-time or part-time); dates of attendance;  participation in officially recognized activities and sports; weight and height of members of athletic teams; degrees, honors, and awards received; and the most recent educational agency or institution attended."[647]  The attorney general has determined that marital status and expected date of graduation also constitute directory information.[648]

University police department records concerning students previously were held to be education records for the purposes of FERPA.[649]  However, FERPA was amended, effective July 23, 1992, to provide that the term "education records" does not include "records maintained by a law enforcement unit of the educational agency or institution that were created by that law enforcement unit for the purpose of law enforcement."[650]  On the basis of this provision, records created by a campus police department are not excepted from required public disclosure by section 552.026 of the Government Code.[651]

FERPA applies only to records at educational institutions or agencies receiving federal funds and does not govern access to records in the custody of governmental bodies that are not educational institutions or agencies.[652]  An "educational agency or institution" is "any public or private agency or institution" that receives federal funds under an applicable program.[653]  Thus, an agency or institution need not instruct students in order to qualify as an educational agency or institution under FERPA.  If education records are transferred by a school district or state institution of higher education to a state administrative agency concerned with education, federal regulations provide that the education records in the administrative agency's possession are subject to FERPA.[654]

---

[645]    34 C.F.R. § 99.3.

[646]    *See* 20 U.S.C. § 1232g(a)(5)(B).

[647]    34 C.F.R. § 99.3.

[648]    Open Records Decision No. 96 (1975); *see also* Open Records Decision Nos. 244 (1980) (student rosters public), 242 (1980) (student parking permit information public), 193 (1978) (report of accident insurance claims paid to identifiable students not public).

[649]    *See* Open Records Decision Nos. 342 at 2-3 (1982), 205 at 2 (1978).

[650]    20 U.S.C. § 1232g(a)(4)(B)(ii).

[651]    Open Records Decision No. 612 at 2 (1992) (campus police department records were not excepted by statutory predecessor to Gov't Code § 552.101, incorporating FERPA, or statutory predecessor to Gov't Code § 552.114).

[652]    *See* Open Records Decision No. 390 at 3 (1983) (City of Fort Worth is not "educational agency" within FERPA).

[653]    20 U.S.C. § 1232g(a)(3).

[654]    20 U.S.C. § 1232g(b)(1)(E), (b)(4)(B); 34 C.F.R. §§ 99.31, .33, .35.

If there is a conflict between the provisions of the state Public Information Act and FERPA, the federal statute prevails.[655] However, the attorney general has been informed by the Family Policy Compliance Office of the United States Department of Education that parents' rights to information about their children under FERPA do not prevail over school districts' rights to assert the attorney-client and work product privileges.[656] As a general rule, however, exceptions to disclosure under the Public Information Act do not apply to a request by a student or parent for the student's own education records pursuant to FERPA.[657]

In Open Records Decision No. 634 (1995), the attorney general stated that an educational agency or institution that seeks a ruling under the Public Information Act should, before submitting "education records" to the attorney general, either obtain parental consent to the disclosure of personally identifiable nondirectory information in the records or edit the records to make sure that they contain no personally identifiable nondirectory information. Subsequent correspondence from the United States Department of Education advised that educational agencies and institutions may submit personally identifiable information subject to FERPA to the attorney general for purposes of obtaining rulings as to whether information contained therein must be withheld under FERPA or state law.[658] In 2006, however, the United States Department of Education Family Policy Compliance Office informed the attorney general that FERPA does not permit state and local educational authorities to disclose to the attorney general, without parental consent, unredacted, personally identifiable information contained in education records for the purpose of our review in the open records ruling process under the Public Information Act.[659] Consequently, state and local educational authorities that receive a request for education records from a member of the public under the Public Information Act must not submit education records to the attorney general in unredacted form, that is, in a form in which "personally identifiable information" is disclosed.[660] Because the attorney general is prohibited from reviewing these education records to determine whether appropriate redactions under FERPA have been made, the attorney general will not address the applicability of FERPA to any records submitted as part of a request for decision. Such determinations under FERPA must be made by the educational authority in possession of the education records.[661] Questions about FERPA should be directed to the following agency:

> Family Policy Compliance Office
> U.S. Department of Education
> 400 Maryland Ave., S.W.
> Washington, D.C. 20202-5920
> 1-800-USA-LEARN (1-800-872-5327)

---

[655] Open Records Decision No. 431 (1985).

[656] Letter from LeRoy S. Rooker, Director, Family Policy Compliance Office, United States Dep't of Educ., to Keith B. Kyle (July 1999) (on file with the Open Records Division, Office of the Attorney General).

[657] Open Records Decision No. 431 at 3 (1985).

[658] *See* Letter from LeRoy S. Rooker, Director, Family Policy Compliance Office, United States Dep't of Educ., to David Anderson, Chief Counsel, Tex. Educ. Agency (April 29, 1998) (on file with the Open Records Division, Office of the Attorney General).

[659] This letter is available on the attorney general's website at https://www.texasattorneygeneral.gov/files/og/20060725usdoe.pdf.

[660] *See* 34 C.F.R. § 99.3 (defining "personally identifiable information").

[661] In the future, if an educational authority does obtain parental consent to submit unredacted education records and the educational authority seeks a ruling from the attorney general on the proper redaction of those education records in compliance with FERPA, we will rule accordingly.

**2.**     **Section 552.114: Confidentiality of Student Records**

(a)   **In this section, "student record" means:**

(1) **information that constitutes education records as that term is defined by the Family Educational Rights and Privacy Act of 1974 (20 U.S.C. Section 1232g(a)(4)); or**

(2) **information in a record of an applicant for admission to an educational institution, including a transfer applicant.**

(b)   **Information is confidential and excepted from the requirements of Section 552.021 if it is information in a student record at an educational institution funded wholly or partly by state revenue.  This subsection does not prohibit the disclosure or provision of information included in an education record if the disclosure or provision is authorized by 20 U.S.C. Section 1232g or other federal law.**

(c)   **A record covered by Subsection (b) shall be made available on the request of:**

(1) **educational institution personnel;**

(2) **the student involved or the student's parent, legal guardian, or spouse; or**

(3) **a person conducting a child abuse investigation required by Subchapter D, Chapter 261, Family Code.**

(d)   **Except as provided by Subsection (e), an educational institution may redact information covered under Subsection (b) from information disclosed under Section 552.021 without requesting a decision from the attorney general.**

(e)   **If an applicant for admission to an educational institution described by Subsection (b) or a parent or legal guardian of a minor applicant to an educational institution described by Subsection (b) requests information in the record of the applicant, the educational institution shall disclose any information that:**

(1) **is related to the applicant's application for admission; and**

(2) **was provided to the educational institution by the applicant.**

"Student record" means both information that constitutes an education record under FERPA and information in the record of an applicant for admission to an educational institution, including a transfer applicant.[662]  Section 552.114(b) deems information in a student record confidential and states subsection (b) does not prohibit the release of an education record authorized by FERPA or other federal law.[663]  Section 552.114(c) recognizes a right of access to student records for certain

---

[662]   Gov't Code § 552.114(a).

[663]   Gov't Code § 552.114(b).

enumerated individuals.[664]  Subsection (d) permits an educational institution to redact information in a student record without requesting an attorney general decision.[665]  Subsection (e) gives an applicant for admission, or the parent or legal guardian of a minor applicant, a right of access to information that is related to the applicant's admission application and was provided to the educational institution by the applicant.[666]

## R.      Section 552.115: Confidentiality of Birth and Death Records

Section 552.115 of the Government Code provides as follows:

(a)   **A birth or death record maintained by the vital statistics unit of the Texas Department of State Health Services or a local registration official is excepted from [required public disclosure], except that:**

(1) **a birth record is public information and available to the public on and after the 75th anniversary of the date of birth as shown on the record filed with the vital statistics unit or local registration official;**

(2) **a death record is public information and available to the public on and after the 25th anniversary of the date of death as shown on the record filed with the vital statistics unit or local registration official, except that if the decedent is unidentified, the death record is public information and available to the public on and after the first anniversary of the date of death;**

(3) **a general birth index or a general death index established or maintained by the vital statistics unit or a local registration official is public information and available to the public to the extent the index relates to a birth record or death record that is public information and available to the public under Subdivision (1) or (2);**

(4) **a summary birth index or a summary death index prepared or maintained by the vital statistics unit or a local registration official is public information and available to the public; and**

(5) **a birth or death record is available to the chief executive officer of a home-rule municipality or the officer's designee if:**

(A)   **the record is used only to identify a property owner or other person to whom the municipality is required to give notice when enforcing a state statute or an ordinance;**

(B)   **the municipality has exercised due diligence in the manner described by Section 54.035(e), Local Government Code, to identify the person; and**

---

[664]   Gov't Code § 552.114(c).

[665]   Gov't Code § 552.114(d).

[666]   Gov't Code § 552.114(e).

(C)  the officer or designee signs a confidentiality agreement that requires that:

(i)  the information not be disclosed outside the office of the officer or designee, or within the office for a purpose other than the purpose described by Paragraph (A);

(ii)  the information be labeled as confidential;

(iii)  the information be kept securely; and

(iv)  the number of copies made of the information or the notes taken from the information that implicate the confidential nature of the information be controlled, with all copies or notes that are not destroyed or returned remaining confidential and subject to the confidentiality agreement.

(b)  Notwithstanding Subsection (a), a general birth index or a summary birth index is not public information and is not available to the public if:

(1)  the fact of an adoption or paternity determination can be revealed by the index; or

(2)  the index contains specific identifying information relating to the parents of a child who is the subject of an adoption placement.

(c)  Subsection (a)(1) does not apply to the microfilming agreement entered into by the Genealogical Society of Utah, a nonprofit corporation organized under the laws of the State of Utah, and the Archives and Information Services Division of the Texas State Library and Archives Commission.

(d)  For the purposes of fulfilling the terms of the agreement in Subsection (c), the Genealogical Society of Utah shall have access to birth records on and after the 50th anniversary of the date of birth as shown on the record filed with the bureau of vital statistics or local registration official, but such birth records shall not be made available to the public until the 75th anniversary of the date of birth as shown on the record.

Section 552.115 specifically applies to birth and death records of a local registration official as well as to those of the Texas Department of State Health Services.[667]  This section does not apply to birth or death records maintained by other governmental bodies.[668]  Until the time limits set out above have passed, a birth or death record may be obtained from the Vital Statistics Unit (the "Unit") of the Texas Department of State Health Services only in accordance with chapter 192 of the Health and Safety Code.[669]  While birth records over seventy-five years old and death records over twenty-five years old are not excepted from disclosure under the Public Information Act, a

---

[667]  Gov't Code § 552.115(a).

[668]  *See* Open Records Decision No. 338 (1982).

[669]  *See generally* Open Records Decision No. 596 (1991) (regarding availability of adoption records).

local registrar of the Unit[670] is required by title 3 of the Health and Safety Code and rules promulgated thereunder to deny physical access to these records and to provide copies of them for a certain fee.[671] These specific provisions prevail over the more general provisions in the Act regarding inspection and copying of public records.[672]

Section 552.115 specifically makes public a summary birth index and summary death index and also makes public a general birth index or general death index to the extent that it relates to birth or death records that would be public information under the section.[673] However, a general or summary birth index is not public information if it reveals the fact of an adoption or paternity determination or contains identifying information relating to the parents of a child who is the subject of an adoption placement.[674] Although the Act contains no language that defines the categories of information that comprise each type of index, the Texas Department of State Health Services has promulgated administrative rules that define each type of index.[675] In pertinent part, the current rule, which took effect August 11, 2013, provides as follows:

**(b) Birth indexes.**

**(1) General birth indexes maintained or established by the Vital Statistics Unit or a local registration official shall be prepared by event year, in alphabetical order by surname of the registrant, followed by any given names or initials, the date of the event, the county of occurrence, the state or local file number, the name of the father, the maiden name of the mother, and sex of the registrant.**

**(2) A general birth index is public information and available to the public to the extent the index relates to a birth record that is public on or after the 75th anniversary of the date of birth as shown on the record unless the fact of an adoption or paternity determination can be revealed or broken or if the index contains specific identifying information relating to the parents of the child who is the subject of an adoption placement. The Vital Statistics Unit and local registration officials shall expunge or delete any state or local file numbers included in any general birth index made available to the public because such file numbers may be used to discover information concerning specific adoptions, paternity determinations, or the identity of the parents of children who are the subjects of adoption placements.**

---

[670] *See* Health & Safety Code § 191.022(c), (f).

[671] *See* Attorney General Opinion DM-146 at 2 (1992); *see also* Attorney General Opinion MW-163 (1980).

[672] Attorney General Opinion DM-146 at 5 (1992).

[673] Gov't Code § 552.115(a).

[674] Gov't Code § 552.115(b).

[675] Absent specific authority, a governmental body may not generally promulgate a rule that makes information confidential so as to except the information from required public disclosure pursuant to section 552.101 of the Act. *See* Gov't Code § 552.101; *see also* Open Records Decision Nos. 484 (1987), 392 (1983), 216 (1978). In the instant case, however, the attorney general has found the predecessor agency to the Texas Department of State Health Services has been granted specific authority by the legislature to promulgate administrative rules that dictate the public availability of information contained in and derived from vital records. *See* Open Records Decision No. 596 (1991).

**(3) A summary birth index maintained or established by the Vital Statistics Unit or a local registration official shall be prepared by event year, in alphabetical order by surname of the registrant, followed by any given names or initials, the date of the event, the county of occurrence, and sex of the registrant. A summary birth index or any listings of birth records are not available to the public for searching or inspection if the fact of adoption or paternity determination can be revealed from specific identifying information.**

**(c) Death indexes.**

**(1) A general death index maintained or established by the Vital Statistics Unit or a local registration official shall be prepared by event year, in alphabetical order by surname of the registrant, followed by any given names or initials; the date of the event; the county of occurrence; the registrant's social security number, sex, and marital status; the name of the registrant's spouse, if applicable; and the state or local file number.**

**(2) A general death index is public information and available to the public to the extent the index relates to a death record that is public on or after the 25th anniversary of the date of death as shown on the record.**

**(3) A summary death index maintained or established by the Vital Statistics Unit or a local registration official shall be prepared by event year, in alphabetical order by surname of the registrant, followed by any given names or initials, the date of the event, the county of occurrence, and sex of the registrant.[676]**

Thus, the term "summary birth index" as used in section 552.115 refers to a list in alphabetical order by surname of the child, and its contents are limited to the child's name, date of birth, county of birth, and sex. Additionally, the term "general birth index" refers to a list containing only those categories of information that comprise a "summary birth index," with the additional categories of the file number and the parents' names. The term "summary death index" as used in section 552.115 refers to a list in alphabetical order by surname of the deceased, and its contents are limited to the deceased's name or initials, date of death, county of death, and sex. Furthermore, the term "general death index" refers to the same categories of information that comprise a "summary death index," with the additional categories of marital status, name of the deceased's spouse, if applicable, and file number.

Section 552.115 also provides that a birth or death record may be made available in certain circumstances to the chief executive officer of a home rule municipality to aid in the identification of a property owner.[677]

## S. Section 552.116: Audit Working Papers

Section 552.116 of the Government Code provides as follows:

---

[676] 25 T.A.C. § 181.23(b)-(c).
[677] Gov't Code § 552.115(a).

(a) An audit working paper of an audit of the state auditor or the auditor of a state agency, an institution of higher education as defined by Section 61.003, Education Code, a county, a municipality, a school district, a hospital district, or a joint board operating under Section 22.074, Transportation Code, including any audit relating to the criminal history background check of a public school employee, is excepted from the requirements of Section 552.021. If information in an audit working paper is also maintained in another record, that other record is not excepted from the requirements of Section 552.021 by this section.

(b) In this section:

   (1) "Audit" means an audit authorized or required by a statute of this state or the United States, the charter or an ordinance of a municipality, an order of the commissioners court of a county, the bylaws adopted by or other action of the governing board of a hospital district, a resolution or other action of a board of trustees of a school district, including an audit by the district relating to the criminal history background check of a public school employee, or a resolution or other action of a joint board described by Subsection (a) and includes an investigation.

   (2) "Audit working paper" includes all information, documentary or otherwise, prepared or maintained in conducting an audit or preparing an audit report, including:

      (A) intra-agency and interagency communications; and

      (B) drafts of the audit report or portions of those drafts.

"Audit working paper" is defined as including all information prepared or maintained in conducting an audit or preparing an audit report including intra-agency or interagency communications and drafts of audit reports.[678] A governmental body that invokes section 552.116 must demonstrate the audit working papers are from an audit authorized or required by an authority mentioned in section 552.116(b)(1) and must identify that authority. To the extent information in an audit working paper is also maintained in another record, such other record is not excepted by section 552.116, although such other record may be withheld from public disclosure under the Act's other exceptions.[679] There are no cases or formal opinions interpreting the current version of section 552.116.

## T. Section 552.117: Confidentiality of Certain Addresses, Telephone Numbers, Social Security Numbers, and Personal Family Information

The 88th Legislature passed two bills, Senate Bill 870 and House Bill 4504, amending section 552.117 of the Government Code. Section 552.117 excepts from required public disclosure:



---

[678] Gov't Code § 552.116(b).

[679] Gov't Code § 552.116(a).

(a)  **[I]nformation that relates to the home address, home telephone number, emergency contact information, or social security number of the following person or that reveals whether the person has family members:**

    **(1)**  **a current or former official or employee of a governmental body, except as otherwise provided by Section 552.024;**

    **(2)**  **a current or honorably retired peace officer as defined by Article 2.12, Code of Criminal Procedure, or a current or honorably retired security officer commissioned under Section 51.212, Education Code, regardless of whether the officer complies with Section 552.024 or 552.1175, as applicable;**

    **(3)**  **a current or former employee of the Texas Department of Criminal Justice or of the predecessor in function of the department or any division of the department, regardless of whether the current or former employee complies with Section 552.1175;**

    **(4)**  **a peace officer as defined by Article 2.12, Code of Criminal Procedure, or other law, a reserve law enforcement officer, a commissioned deputy game warden, or a corrections officer in a municipal, county, or state penal institution in this state who was killed in the line of duty, regardless of whether the deceased complied with Section 552.024 or 552.1175;**

    **(5)**  **a commissioned security officer as defined by Section 1702.002, Occupations Code, regardless of whether the officer complies with Section 552.024 or 552.1175, as applicable;**

    **(6)**  **an officer or employee of a community supervision and corrections department established under Chapter 76 who performs a duty described by Section 76.004(b), regardless of whether the officer or employee complies with Section 552.024 or 552.1175;**



    **(7)**  **a current or former employee of the office of the attorney general who is or was assigned to a division of that office the duties of which involve law enforcement or are performed under Chapter 231, Family Code, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;**

    **(8)**  **a current or former employee of the Texas Juvenile Justice Department or of the predecessors in function of the department, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;**

    **(9)**  **a current or former juvenile probation or supervision officer certified by the Texas Juvenile Justice Department, or the predecessors in function of the department, under Title 12, Human Resources Code, regardless of whether the current or former officer complies with Section 552.024 or 552.1175;**

**(10)** a current or former employee of a juvenile justice program or facility, as those terms are defined by Section 261.405, Family Code, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

**(11)** a current or former member of the United States Army, Navy, Air Force, Coast Guard, or Marine Corps, an auxiliary service of one of those branches of the armed forces, or the Texas military forces, as that term is defined by Section 437.001;

**(12)** a current or former district attorney, criminal district attorney, or county or municipal attorney whose jurisdiction includes any criminal law or child protective services matters, regardless of whether the current or former attorney complies with Section 552.024 or 552.1175;

**(13)** a current or former employee of a district attorney, criminal district attorney, or county or municipal attorney whose jurisdiction includes any criminal law or child protective services matters, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

**(14)** a current or former employee of the Texas Civil Commitment Office or of the predecessor in function of the office or a division of the office, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

**(15)** a current or former federal judge or state judge, as those terms are defined by Section 1.005, Election Code, a federal bankruptcy judge, a marshal of the United States Marshal Service, a United States attorney, or a family member of a current or former federal judge, including a federal bankruptcy judge, a marshal of the United States Marshal Service, a United States attorney, or a state judge;

**(16)** a current or former child protective services caseworker, adult protective services caseworker, or investigator for the Department of Family and Protective Services, regardless of whether the caseworker or investigator complies with Section 552.024 or 552.1175, a current or former employee of a department contractor performing child protective services caseworker, adult protective services caseworker, or investigator functions for the contractor on behalf of the department;

**(17)** an elected public officer, regardless of whether the officer complies with Section 552.024 or 552.1175;

**(18)** a current or former United States attorney, assistant United States attorney, federal public defender and the spouse or child of the current or former attorney or public defender, regardless of whether the person complies with Section 552.024 or 552.1175; or

(19) **a firefighter or volunteer firefighter or emergency medical services personnel as defined by Section 773.003, Health and Safety Code, regardless of whether the firefighter or volunteer firefighter or emergency medical services personnel comply with Section 552.024 or 552.1175, as applicable.**

(b) **All documents filed with a county clerk and all documents filed with a district clerk are exempt from this section.**

(c) **In this section, "family member" has the meaning assigned by Section 31.006, Finance Code.**



Additionally, the amendments to subsections 552.117(a)(2) and (a)(4) made by Senate Bill 4504 become effective January 1, 2025, and provide information of the following persons are excepted from disclosure under section 552.117:

(2) **a current or honorably retired peace officer as defined by Article 2A.001, Code of Criminal Procedure, or a current or honorably retired security officer commissioned under Section 51.212, Education Code, regardless of whether the officer complies with Section 552.024 or 552.1175, as applicable; [or]**

. . .

(4) **a peace officer as defined by Article 2A.001, Code of Criminal Procedure, or other law, a reserve law enforcement officer, a commissioned deputy game warden, or a corrections officer in a municipal, county, or state penal institution in this state who was killed in the line of duty, regardless of whether the deceased complied with Section 552.024 or 552.1175[.]**

Section 552.117 excepts from public disclosure a listed person's home address, home telephone number, emergency contact information, social security number, and information that reveals whether the person has family members.[680] Generally, a governmental body may not invoke section 552.117 as a basis for withholding an official's or an employee's home address and telephone number if another law, such as a state statute expressly authorizing child support enforcement officials to obtain information to locate absent parents, requires the release of such information.[681] Because the subsections of section 552.117 deal with different categories of officials and employees and differ in their application, they are discussed separately below.

**Subsection (a)(1): Public Officials and Employees**

**1. Section 552.117(a)(1) must be read together with section 552.024.**

Section 552.024 of the Government Code provides as follows:

(a) **Except as provided by Subsection (a-1), each employee or official of a governmental body and each former employee or official of a governmental body shall choose**

---

[680] *See* Gov't Code § 552.117(c) ("family member" has the meaning assigned by section 31.006 of the Finance Code).

[681] *See* Open Records Decision No. 516 at 3 (1989).

**whether to allow public access to the information in the custody of the governmental body that relates to the person's home address, home telephone number, emergency contact information, or social security number, or that reveals whether the person has family members.**

**(a-1) A school district may not require an employee or former employee of the district to choose whether to allow public access to the employee's or former employee's social security number.**

**(b) Each employee and official and each former employee and official shall state that person's choice under Subsection (a) to the main personnel officer of the governmental body in a signed writing not later than the 14th day after the date on which:**

**(1) the employee begins employment with the governmental body;**

**(2) the official is elected or appointed; or**

**(3) the former employee or official ends service with the governmental body.**

**(c) If the employee or official or former employee or official chooses not to allow public access to the information:**

**(1) the information is protected under Subchapter C; and**

**(2) the governmental body may redact the information from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.**

**(c-1) If, under Subsection (c)(2), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision from the attorney general about the matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.**

**(c-2) A governmental body that redacts or withholds information under Subsection (c)(2) shall provide the following information to the requestor on a form prescribed by the attorney general:**

**(1) a description of the redacted or withheld information;**

**(2) a citation to this section; and**

**(3) instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure.**

**(d) If an employee or official or a former employee or official fails to state the person's choice within the period established by this section, the information is subject to public access.**

**(e) An employee or official or former employee or official of a governmental body who wishes to close or open public access to the information may request in writing that the main personnel officer of the governmental body close or open access.**

**(f) This section does not apply to a person to whom Section 552.1175 applies.**

Subsection (a)(1) pertains to a current or former official or employee of a governmental body. To obtain the protection of section 552.117(a), an individual identified in subsection (a)(1) must comply with section 552.024(c). If such an individual elects to withhold the individual's home address, home telephone number, emergency contact information, social security number, and information that reveals whether the individual has family members, the governmental body may redact such information without the necessity of requesting an attorney general decision. If a governmental body chooses to redact this information without requesting an attorney general decision, it must notify the requestor as prescribed section 552.024(c-2) on the form created by the attorney general. The notice must include instructions regarding how the requestor may seek an attorney general's review of the governmental body's redactions. The form for notifying the requestor is published on the attorney general's website. The legislation enacting these provisions authorized the attorney general to promulgate rules establishing procedures for review under section 552.024(c-1). These rules were promulgated in Subchapter B of chapter 63 of title 1 of the Texas Administrative Code.[682] These rules are available on the attorney general's website and in Part Four of this *Handbook*.

In conjunction with section 552.024(a-1), section 552.147 of the Government Code makes social security numbers of school district employees confidential. Thus, the social security number of an employee of a school district is confidential in the custody of the school district even if the employee does not elect confidentiality under section 552.024.

Significant decisions of the attorney general regarding sections 552.024 and 552.117 prior to the recent amendments include the following:

---

[682]   *See* 1 T.A.C. §§ 63.11-.16.

Open Records Decision No. 622 (1994) — statutory predecessor to section 552.117(a)(1) excepts employees' former home addresses and telephone numbers from required public disclosure;

Open Records Decision No. 530 (1989) — addressing the time at which an employee may exercise the options under the statutory predecessor to section 552.024;

Open Records Decision No. 506 (1988) — these provisions do not apply to telephone numbers of mobile telephones that are provided to employees by a governmental body for work purposes; and

Open Records Decision No. 455 (1987) — statutory predecessor to section 552.117(a)(1) continued to except an employee's home address and telephone number from required public disclosure after the employment relationship ends; it did not except, as a general rule, applicants' or other private citizens' home addresses and telephone numbers.

In addition, the attorney general has determined in informal rulings that section 552.117 can apply to personal cellular telephone numbers of government employees as well as telephone numbers that provide access to personal home facsimile machines of government employees.[683] The attorney general has also determined that section 552.117 does not protect a post office box number.[684]

## 2. Subsections (a)(2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), and (19): Other Categories of Officers and Employees

As noted above, to obtain the protection of section 552.117, subsection (a)(1), an individual identified in subsection (a)(1) must comply with the provisions of section 552.024. No action is necessary, however, on the part of the personnel listed in subsections (a)(2)[685], (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), and (19).

In Open Records Decision No. 670 (2001), the attorney general determined that all governmental bodies may withhold the home address, home telephone number, personal cellular phone number, personal pager number, social security number, and information that reveals whether the individual has family members, of any individual who is subject to section 552.117(a)(2), without the necessity of requesting an attorney general decision as to whether the exception under section 552.117(a)(2) applies. This decision may be relied on as a "previous determination" for the listed information.

Subsection (a)(11), in part, pertains to a current or former member of the Texas military forces, which are defined as the Texas National Guard, the Texas State Guard, and any other military forces organized under state law.[686] In addition, section 437.232 of the Government Code protects

---

[683] *See, e.g.*, Open Records Letter Nos. 2002-1488 (2002), 2001-0050 (2001).

[684] *See* Open Records Decision No. 622 at 6 (1994) (legislative history makes clear that purpose of section 552.117 is to protect public employees from being harassed at *home*) (citing House Comm. on State Affairs, Bill Analysis, H.B. 1979, 69th Leg. (1985) (emphasis added)).

[685] *See* Gov't Code § 552.003(1-b) (defining "honorably retired" for purposes of the Act).

[686] Gov't Code § 437.001(14).



certain information pertaining to service members.[687]  The 88th Legislature passed House Bill 4615, which amended section 437.232 and provides as follows:

(a)  **In this section, "military personnel information" means a service member's name, Department of Defense identification number, home address, rank, official title, pay rate or grade, state active duty orders, deployment locations, military duty addresses, awards and decorations, length of military service, and medical records.**

(b)  **A service member's military personnel information is confidential and not subject to disclosure under Chapter 552.**

## U.  Section 552.1175: Confidentiality of Certain Personal Identifying Information of Peace Officers and Other Officials Performing Sensitive Governmental Functions



The 88th Legislature passed two bills, Senate Bill 870 and House Bill 4504, amending section 552.1175 of the Government Code.  Section 552.1175 provides as follows:

(a)  **This section applies only to:**

(1)  **current or honorably retired peace officers as defined by Article 2.12, Code of Criminal Procedure, or special investigators as described by Article 2.122, Code of Criminal Procedure;**

(2)  **current or honorably retired county jailers as defined by Section 1701.001, Occupations Code;**

(3)  **current or former employees of the Texas Department of Criminal Justice or of the predecessor in function of the department or any division of the department;**

(4)  **commissioned security officers as defined by Section 1702.002, Occupations Code;**

(5)  **a current or former district attorney, criminal district attorney, or county or municipal attorney whose jurisdiction includes any criminal law or child protective services matters;**

(5-a)  **a current or former employee of a district attorney, criminal district attorney, or county or municipal attorney whose jurisdiction includes any criminal law or child protective services matters;**

(6)  **officers and employees of a community supervision and corrections department established under Chapter 76 who perform a duty described by Section 76.004(b);**

---

687  *See* Gov't Code § 437.001(8) (defining "service member" for purposes of chapter 437 of the Government Code).

(7)   criminal investigators of the United States as described by Article 2.122(a), Code of Criminal Procedure;

(8)   current or honorably retired police officers and inspectors of the United States Federal Protective Service;

(9)   current and former employees of the office of the attorney general who are or were assigned to a division of that office the duties of which involve law enforcement or are performed under Chapter 231, Family Code;



(10)  current or former juvenile probation and detention officers certified by the Texas Juvenile Justice Department, or the predecessors in function of the department, under Title 12, Human Resources Code;

(11)  current or former employees of a juvenile justice program or facility, as those terms are defined by Section 261.405, Family Code;

(12)  current or former employees of the Texas Juvenile Justice Department or the predecessors in function of the department;

(13)  federal judges and state judges as defined by Section 1.005, Election Code;

(14)  current or former employees of the Texas Civil Commitment Office or of the predecessor in function of the office or a division of the office;

(15)  a current or former member of the United States Army, Navy, Air Force, Coast Guard, or Marine Corps, an auxiliary service of one of those branches of the armed forces, or the Texas military forces, as that term is defined by Section 437.001;[688]

(16)  a current or former child protective services caseworker, adult protective services caseworker, or investigator for the Department of Family and Protective Services or a current or former employee of a department contractor performing child protective services caseworker, adult protective services caseworker, or investigator functions for the contractor on behalf of the department;

(17)  an elected public officer; and

(18)  a firefighter or volunteer firefighter or emergency medical services personnel as defined by Section 773.003, Health and Safety Code.

(19)  a current or former United States attorney, assistant United States attorney, federal public defender, deputy federal public defender, or assistant federal public defender.

---

[688] *See* Gov't Code § 437.001(14) (defining "Texas military forces" for purposes of chapter 437 of the Government Code).

**(b)** Information that relates to the home address, home telephone number, emergency contact information, date of birth, or social security number of an individual to whom this section applies, or that reveals whether the individual has family members is confidential and may not be disclosed to the public under this chapter if the individual to whom the information relates:

    **(1)** chooses to restrict public access to the information; and

    **(2)** notifies the governmental body of the individual's choice on a form provided by the governmental body, accompanied by evidence of the individual's status.

**(c)** A choice made under Subsection (b) remains valid until rescinded in writing by the individual.

**(d)** This section does not apply to information in the tax appraisal records of an appraisal district to which Section 25.025, Tax Code, applies.

**(e)** All documents filed with a county clerk and all documents filed with a district clerk are exempt from this section.

**(f)** A governmental body may redact information that must be withheld under Subsection (b) from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.

**(g)** If, under Subsection (f), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision from the attorney general about the matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.

**(h)** A governmental body that redacts or withholds information under Subsection (f) shall provide the following information to the requestor on a form prescribed by the attorney general:

    **(1)** a description of the redacted or withheld information;

**(2)    a citation to this section; and**

**(3)    instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure.**

Additionally, the amendments to subsections 552.1175(a)(1) and (a)(7) made by Senate Bill 4504 become effective January 1, 2025, and provide section 552.1175 applies to:



**(1)    current or honorably retired peace officers as defined by Article 2A.001, Code of Criminal Procedure, or special investigators as described by Article 2A.002, Code of Criminal Procedure; [and]**

**. . .**

**(7)    criminal investigators of the United States as described by Article 2A.002(a), Code of Criminal Procedure[.]**

Section 552.1175 excepts from public disclosure a listed person's home address, home telephone number, emergency contact information, date of birth, social security number, and information that reveals whether the person has family members.[689] The attorney general has stated in numerous informal rulings that the protection of section 552.117 only applies to information a governmental body holds in its capacity as an employer.[690] On the other hand, section 552.1175 affords the listed persons the opportunity to withhold personal information contained in records maintained by any governmental body in any capacity.[691] However, these individuals may not elect under section 552.1175 to withhold personal information contained in records maintained by county and district clerks or tax appraisal records of an appraisal district subject to section 25.025 of the Tax Code.[692] With respect to subsections 552.1175(a)(1), (2), and (8), section 552.003(1-b) of the Government Codedefines the term "honorably retired" for purposes of the Act.

In Open Records Decision No. 678 (2003), the attorney general determined that notification provided to a governmental body under section 552.1175 "imparts confidentiality to information only in the possession of the notified governmental body."[693] If the information is transferred to another governmental body, the individual must provide a separate notification to the receiving governmental body in order for the information in its hands to remain confidential.[694]

---

[689]    *Cf.* Gov't Code § 552.117(c) ("family member" has meaning assigned by section 31.006 of the Finance Code); *see* Fin. Code § 31.006(d) (defining "family member" as "a person's: (1) spouse; (2) minor child; or (3) adult child who resides in the person's home").

[690]    *See, e.g.*, Open Records Letter Nos. 99-3302 (1999), 96-2452 (1996).

[691]    *See, e.g.*, Open Records Letter No. 2002-6335 (2002).

[692]    Gov't Code § 552.1175(d)-(e).

[693]    Open Records Decision No. 678 at 4 (2003).

[694]    Open Records Decision No. 678 at 4-5 (2003).

Also, unlike the requirement under section 552.117(a)(1) that an election to keep information confidential be made before a governmental body receives the request for information,[695] an election under section 552.1175 can be made after a governmental body's receipt of the request for information.

Subsection (f) allows a governmental body to redact, without the necessity of requesting an attorney general decision, the home address, home telephone number, emergency contact information, date of birth, social security number, and family member information of a person described in section 552.1175(a). Subsection (h) states if a governmental body redacts in accordance with subsection (f), it must provide the requestor with certain information on the form prescribed by the attorney general, including instructions regarding how the requestor may seek an attorney general review of the governmental body's redactions. The form for notifying the requestor is located on the attorney general's website. The legislation enacting these provisions authorized the attorney general to promulgate rules establishing procedures for its review under section 552.1175(g). These rules are available on the attorney general's website and in Part Four of this *Handbook*.[696]

## V. Section 552.1176: Confidentiality of Certain Information Maintained by State Bar



The 88th Legislature passed Senate Bill 510, amending section 552.1176(a) of the Government Code. Section 552.1176 provides as follows:

**(a) Information maintained under Chapter 81 [of the Government Code] is confidential and may not be disclosed to the public under this chapter if the information:**

    **(1) is a license application; or**

    **(2) relates to the home address, home telephone number, electronic mail address, social security number, date of birth, driver's license number, state identification number, passport number, emergency contact information, or payment information of an individual licensed to practice law in this state.**

**(b) repealed**

**(c) All documents filed with a county clerk and all documents filed with a district clerk are exempt from this section.**

**(d) Subsection (a) does not make confidential or except from required public disclosure the name, state bar identification number, membership class, or eligibility to practice law of an applicant for a license, a license holder, or an individual who previously held a license.**

---

[695] Open Records Decision No. 530 at 5 (1989).

[696] *See* 1 T.A.C. §§ 63.11-.16.

**(e)** **To the extent of any conflict, this section prevails over another law that authorizes or requires the release of information maintained by the State Bar of Texas.**

The protections of section 552.1176 only apply to records maintained by the State Bar.[697]

## W. Section 552.11765: Confidentiality of Certain Information Maintained by State Licensing Authority

The 88th Legislature passed Senate Bill 510, adding section 552.11765 of the Government Code, which provides as follows:



**(a)** **In this section, "license" means a license, certificate, registration, permit, or other authorization that:**

**(1)** **is issued by a governmental body described by Section 552.003(1)(A)(i); and**

**(2)** **an individual must obtain to practice or engage in a particular business, occupation, or profession.**

**(b)** **Except as provided by Subsections (c) and (d), information maintained by a governmental body described by Section 552.003(1)(A)(i) is confidential and excepted from the requirements of Section 552.021 if the information:**

**(1)** **is a license application; or**

**(2)** **relates to the home address, home telephone number, electronic mail address, social security number, date of birth, driver's license number, state identification number, passport, emergency contact information, or payment information of:**

**(A) an applicant for a license issued by the governmental body;**

**(B) an individual who holds a license issued by the governmental body; or**

**(C) an individual who previously held a license issued by the governmental body.**

**(c)** **Subsection (b) does not make confidential or except from required public disclosure the name, license number, or license status of an applicant for a license, a license holder, or an individual who previously held a license.**

**(d)** **For a license issued under Chapter 42, 43, 103, or 161, Human Resources Code, or Chapter 142, 242, 247, 248A, 250, or 252, Health and Safety Code, Subsection (b) does not prohibit the disclosure of:**

---

697 Open Records Letter No. 2022-00464 (2022).

(1)    **the last four digits of the social security number of a license holder in connection with a verification of employability or an employee misconduct registry search provided by the Health and Human Services Commission;**

(2)    **a home address where activity regulated by the licensing authority occurs; or**

(3)    **an e-mail address or phone number associated with activity regulated by the licensing authority.**

(e)    **To the extent of any conflict, this section prevails over another law that authorizes or requires the release of information maintained by a governmental body.**

There are no cases or formal opinions interpreting this exception.

## X.    Section 552.1177: Confidentiality of Certain Information Related to Humane Disposition of Animal

Section 552.1177 of the Government Code provides as follows:

(a) **Except as provided by Subsection (b), information is confidential and excepted from the requirements of Section 552.021 if the information relates to the name, address, telephone number, e-mail address, driver's license number, social security number, or other personally identifying information of a person who obtains ownership or control of an animal from a municipality or county making a humane disposition of the animal under a municipal ordinance or an order of the commissioners court.**

(b) **A governmental body may disclose information made confidential by Subsection (a) to a governmental entity, or to a person who under a contract with a governmental entity provides animal control services, animal registration services, or related services to the governmental entity, for purposes related to the protection of public health and safety.**

(c) **A governmental entity or other person that receives information under Subsection (b):**

(1) **must maintain the confidentiality of the information;**

(2) **may not disclose the information under this chapter; and**

(3) **may not use the information for a purpose that does not directly relate to the protection of public health and safety.**

(d) **A governmental body, by providing public information under Subsection (b) that is confidential or otherwise excepted from required disclosure under law, does not waive or affect the confidentiality of the information for purposes of state or federal law or waive the right to assert exceptions to required disclosure of the information in the future.**

Section 552.1177 protects the identity of an individual who adopts an animal from a municipal or county animal shelter. There are no cases or formal opinions interpreting this exception.

## Y.    Section 552.118: Confidentiality of Official Prescription Program Information

Section 552.118 of the Government Code excepts from required public disclosure the following:

> **(1)    information on or derived from an official prescription form filed with the Texas State Board of Pharmacy under section 481.0755, Health and Safety Code, or an electronic prescription record filed with the Texas State Board of Pharmacy under Section 481.075, Health and Safety Code; or**

> **(2)    other information collected under Section 481.075 or 481.0755 of that code.**

Under the Official Prescription Program, health practitioners who prescribe certain controlled substances must record certain information about the prescription on the official prescription form.[698]  The dispensing pharmacist is also required to provide certain information about the prescription to the Texas State Board of Pharmacy.[699]  Section 481.076 of the Health and Safety Code provides the Texas State Board of Pharmacy may release this information only to certain parties. Section 552.118 excepts from public disclosure the following: (1) copies of the prescription forms or electronic prescription records filed with the Texas State Board of Pharmacy; (2) any information derived from the prescription forms or electronic prescription records; and (3) any other information collected under section 481.075 or 481.0755 of the Health and Safety Code. The confidentiality provided by section 552.118 is co-extensive with that provided by section 481.076 of the Health and Safety Code.[700]

## Z.    Section 552.119: Confidentiality of Certain Photographs of Peace Officers

Section 552.119 of the Government Code provides as follows:

> **(a)    A photograph that depicts a peace officer as defined by Article 2.12, Code of Criminal Procedure, the release of which would endanger the life or physical safety of the officer, is excepted from the requirements of Section 552.021 unless:**

> **(1) the officer is under indictment or charged with an offense by information;**

> **(2) the officer is a party in a civil service hearing or a case in arbitration; or**

> **(3) the photograph is introduced as evidence in a judicial proceeding.**

---

[698]    Health & Safety Code §§ 481.075(a), (e), .0755(e).

[699]    Health & Safety Code §§ 481.075(i), .0755(n).

[700]    *See* Health & Safety Coden § 481.076(e).

(b) **A photograph excepted from disclosure under Subsection (a) may be made public only if the peace officer gives written consent to the disclosure.**

 The 88th Legislature passed House Bill 4504, amending section 552.119 of the Government Code. The amendment to subsection 552.119(a) becomes effective January 1, 2025, and provides in part:

(a) **A photograph that depicts a peace officer as defined by Article 2A.001, Code of Criminal Procedure, the release of which would endanger the life or physical safety of the officer, is excepted from the requirements of Section 552.021 unless:**

   (1) **the officer is under indictment or charged with an offense by information;**

   (2) **the officer is a party in a civil service hearing or a case in arbitration; or**

   (3) **the photograph is introduced as evidence in a judicial proceeding.**

In Open Records Decision No. 502 (1988), the attorney general held the statutory predecessor to section 552.119(a) did not require a threshold determination that release of a photograph of an officer would endanger an officer to withhold the photograph under the former section 552.119(a).[701] However, in 2003, the attorney general re-evaluated its interpretation of this provision and determined in order to withhold an officer's photograph under section 552.119, a governmental body must demonstrate release of the photograph would endanger the life or physical safety of the officer.[702]

Under section 552.119, a photograph of a peace officer cannot be withheld if (1) the officer is under indictment or charged with an offense by information; (2) the officer is a party in a civil service hearing or a case in arbitration; (3) the photograph is introduced as evidence in a judicial proceeding; or (4) the officer gives written consent to the disclosure. Furthermore, in Open Records Decision No. 536 (1989), the attorney general concluded the statutory predecessor to section 552.119 did not apply to photographs of officers who are deceased.[703]

## AA. Section 552.120: Confidentiality of Certain Rare Books and Original Manuscripts

Section 552.120 of the Government Code provides as follows:

**A rare book or original manuscript that was not created or maintained in the conduct of official business of a governmental body and that is held by a private or public archival and manuscript repository for the purpose of historical research is excepted from the requirements of Section 552.021.**

---

701 Open Records Decision No. 502 at 4-6 (1988).
702 Open Records Letter Nos. 2003-8009 (2003), 2003-8002 (2003).
703 Open Records Decision No. 536 at 2 (1989).

The attorney general has not issued an open records decision on this provision. A similar provision applicable to state institutions of higher education is found in section 51.910(b) of the Education Code.

## BB. Section 552.121: Confidentiality of Certain Documents Held for Historical Research

Section 552.121 of the Government Code provides as follows:

> **An oral history interview, personal paper, unpublished letter, or organizational record of a nongovernmental entity that was not created or maintained in the conduct of official business of a governmental body and that is held by a private or public archival and manuscript repository for the purpose of historical research is excepted from the requirements of Section 552.021 to the extent that the archival and manuscript repository and the donor of the interview, paper, letter, or record agree to limit disclosure of the item.**

The attorney general has not issued an open records decision on this provision. A similar provision applicable to state institutions of higher education is found in section 51.910(a) of the Education Code.

Attorney general opinion JM-37 (1983) states the Public Information Act prevents an institution of higher education from agreeing to keep oral history information confidential unless the institution has specific authority under law to make such agreements.[704]

## CC. Section 552.122: Test Items

Section 552.122 of the Government Code provides as follows:

> (a) **A test item developed by an educational institution that is funded wholly or in part by state revenue is excepted from the requirements of Section 552.021.**
>
> (b) **A test item developed by a licensing agency or governmental body is excepted from the requirements of Section 552.021.**

The attorney general considered the scope of the phrase "test items" in Open Records Decision No. 626 (1994). "Test item" generally includes "any standard means by which an individual's or group's knowledge or ability in a particular area is evaluated."[705] The opinion held the evaluations of an applicant for promotion and the answers to questions asked of the applicant by the promotion board in evaluating the applicant were not "test items" and such a determination under section 552.122 had to be made on a case-by-case basis.[706]

---

[704] Attorney General Opinion JM-37 at 2 (1983).

[705] Open Records Decision No. 626 at 6 (1994).

[706] Open Records Decision No. 626 at 6-8 (1994).

## DD. Section 552.123: Confidentiality of Name of Applicant for Chief Executive Officer of Institution of Higher Education

Section 552.123 of the Government Code provides as follows:

> **The name of an applicant for the position of chief executive officer of an institution of higher education, and other information that would tend to identify the applicant, is excepted from the requirements of Section 552.021, except that the governing body of the institution must give public notice of the name or names of the finalists being considered for the position at least 21 days before the date of the meeting at which final action or vote is to be taken on the employment of the person.**

Section 552.123 is only applicable to applicants for the position of university president.[707] Section 552.123 expressly requires the withholding of any identifying information about candidates, not just their names.[708] The exception protects the identities of all applicants for the position of university president regardless of whether they apply on their own initiative or are nominated.[709] Section 552.123 does not protect the names of finalists for a university president position.

## EE. Section 552.1235: Confidentiality of Identity of Private Donor to Institution of Higher Education

Section 552.1235 of the Government Code provides as follows:

> **(a)  The name or other information that would tend to disclose the identity of a person, other than a governmental body, who makes a gift, grant, or donation of money or property to an institution of higher education or to another person with the intent that the money or property be transferred to an institution of higher education is excepted from the requirements of Section 552.021.**
>
> **(b)  Subsection (a) does not except from required disclosure other information relating to gifts, grants, and donations described by Subsection (a), including the amount or value of an individual gift, grant, or donation.**
>
> **(c)  In this section, "institution of higher education" has the meaning assigned by Section 61.003, Education Code.**

There are no cases or formal opinions interpreting this exception. However, in an informal ruling, the attorney general interpreted the term "person," as used in this exception, to include a corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity.[710]

---

[707]  *See generally* Open Records Decision No. 585 (1991) (names of applicants for position of city manager not excepted from release under statutory predecessor to Gov't Code § 552.123).

[708]  *See, e.g.*, Gov't Code § 552.123; *see also* Open Records Decision No. 540 at 3-4 (1990) (construing statutory predecessor to Gov't Code § 552.123).

[709]  *See* Open Records Decision No. 540 at 5 (1990).

[710]  Open Records Letter No. 2003-8748 (2003) (citing to Gov't Code § 311.005(2)).

# FF. Section 552.124: Confidentiality of Records of Library or Library System

Section 552.124 of the Government Code provides as follows:

(a) **A record of a library or library system, supported in whole or in part by public funds, that identifies or serves to identify a person who requested, obtained, or used a library material or service is excepted from the requirements of Section 552.021 unless the record is disclosed:**

    (1) **because the library or library system determines that disclosure is reasonably necessary for the operation of the library or library system and the record is not confidential under other state or federal law;**

    (2) **under Section 552.023; or**

    (3) **to a law enforcement agency or a prosecutor under a court order or subpoena obtained after a showing to a district court that:**

        (1) **disclosure of the record is necessary to protect the public safety; or**

        (2) **the record is evidence of an offense or constitutes evidence that a particular person committed an offense.**

(b) **A record of a library or library system that is excepted from required disclosure under this section is confidential.**

In Open Records Decision No. 100 (1975), the attorney general determined the identities of libraries patrons were confidential under constitutional law if release of the library materials they were examining would reveal their identities.[711] The legislative history of section 552.124 suggests its purpose is to codify, clarify, and extend that prior decision of the attorney general.[712] This section protects the identity of the individual library user while allowing law enforcement officials access to such information by court order or subpoena. There are no cases or formal opinions interpreting this exception. However, in an informal ruling, the attorney general interpreted section 552.124 to except from disclosure any information that specifically identifies library patrons.[713] In a separate informal ruling, the attorney general determined section 552.124 does not except from disclosure information identifying library employees or other persons not requesting, obtaining, or using a library material or service.[714] In another informal ruling, the attorney general concluded section 552.124 is designed to protect individual privacy.[715] Thus, an individual has a special right of access under section 552.023 of the Government Code to library records that relate

---

[711] Open Records Decision No. 100 (1975).

[712] *See* Senate Comm. on State Affairs, Bill Analysis, S.B. 360, 73rd Leg., R.S. (1993).

[713] Open Records Letter No. 99-1566 (1999).

[714] Open Records Letter No. 2000-3201 (2000).

[715] Open Records Letter No. 2014-13140 at 4 (2014).

to that individual. In addition, because the right to privacy lapses at death, identifying information that pertains solely to a deceased person may not be withheld under section 552.124.[716]

## GG. Section 552.125: Certain Audits

Section 552.125 of the Government Code provides as follows:

> **Any documents or information privileged under Chapter 1101, Health and Safety Code, are excepted from the requirements of Section 552.021.**

Information considered privileged under chapter 1101 of the Health and Safety Code includes audit reports.[717] Section 1101.051(a) describes an audit report as "a report that includes each document and communication . . . produced from an environmental or health and safety audit."[718] Section 1101.003(a)(3) defines an environmental or health and safety audit as follows:

> **a systematic voluntary evaluation, review, or assessment of compliance with environmental or health and safety laws or with any permit issued under an environmental or health and safety law conducted by an owner or operator, an employee of an owner or operator, a person, including an employee or independent contractor of the person, that is considering the acquisition of a regulated facility or operation, or an independent contractor of:**
>
> **(A) a . . . facility or operation [regulated under an environmental or health and safety law]; or**
>
> **(B) an activity at a . . . facility or operation [regulated under an environmental or health and safety law].[719]**

## HH. Section 552.126: Confidentiality of Name of Applicant for Superintendent of Public School District

Section 552.126 of the Government Code provides as follows:

> **The name of an applicant for the position of superintendent of a public school district is excepted from the requirements of Section 552.021, except that the board of trustees must give public notice of the name or names of the finalists being considered for the position at least 21 days before the date of the meeting at which a final action or vote is to be taken on the employment of the person.**

There are no cases or formal opinions interpreting this exception. However, in an informal ruling, the attorney general determined section 552.126 protects all identifying information about

---

[716]   Open Records Letter No. 2014-13140 at 4 (2014).

[717]   Health and Safety Code § 1101.101(a).

[718]   Health and Safety Code § 1101.051(a).

[719]   Health and Safety Code § 1101.003(a)(3).

superintendent applicants, and not just their names.[720]  Section 552.126 does not protect the names of the finalists for a superintendent position.

## II.    Section 552.127: Confidentiality of Personal Information Relating to Participants in Neighborhood Crime Watch Organization

Section 552.127 of the Government Code provides as follows:

   (a)    **Information is excepted from the requirements of Section 552.021 if the information identifies a person as a participant in a neighborhood crime watch organization and relates to the name, home address, business address, home telephone number, or business telephone number of the person.**

   (b)    **In this section, "neighborhood crime watch organization" means a group of residents of a neighborhood or part of a neighborhood that is formed in affiliation or association with a law enforcement agency in this state to observe activities within the neighborhood or part of a neighborhood and to take other actions intended to reduce crime in that area.**

There are no cases or formal opinions interpreting this exception.  However, in an informal ruling, the attorney general found section 552.127 excepts from disclosure the name, home address, business address, home telephone number, or business telephone number of a participant in a neighborhood crime watch program.[721]  The attorney general also found the name, address, or contact information of an organization participating in the neighborhood crime watch program is not protected under section 552.127 unless the information relates to or identifies an individual participant's name, home or business address, or home or business telephone number.[722]

## JJ.    Section 552.128: Confidentiality of Certain Information Submitted by Potential Vendor or Contractor

Section 552.128 of the Government Code provides as follows:

   (a)    **Information submitted by a potential vendor or contractor to a governmental body in connection with an application for certification as a historically underutilized or disadvantaged business under a local, state, or federal certification program is excepted from the requirements of Section 552.021, except as provided by this section.**

   (b)    **Notwithstanding Section 552.007 and except as provided by Subsection (c), the information may be disclosed only:**

      **(1) to a state or local governmental entity in this state, and the state or local governmental entity may use the information only:**

---

[720]   Open Records Letter No. 99-2495 (1999).

[721]   Open Records Letter No. 99-2830 (1999).

[722]   Open Records Letter No. 99-2830 (1999).

**(A)** **for purposes related to verifying an applicant's status as a historically underutilized or disadvantaged business; or**

**(B)** **for the purpose of conducting a study of a public purchasing program established under state law for historically underutilized or disadvantaged businesses; or**

**(2) with the express written permission of the applicant or the applicant's agent.**

**(c)** **Information submitted by a vendor or contractor or a potential vendor or contractor to a governmental body in connection with a specific proposed contractual relationship, a specific contract, or an application to be placed on a bidders list, including information that may also have been submitted in connection with an application for certification as a historically underutilized or disadvantaged business, is subject to required disclosure, excepted from required disclosure, or confidential in accordance with other law.**

There are no cases or formal opinions interpreting this exception. However, in informal rulings, the attorney general has determined the exception does not apply to documents created by a governmental body.[723] Subsection (c) provides bid proposals are not confidential under section 552.128.[724]

## KK. Section 552.129: Confidentiality of Certain Motor Vehicle Inspection Information

Section 552.129 of the Government Code provides as follows:

**A record created during a motor vehicle emissions inspection under Subchapter F, Chapter 548, Transportation Code, that relates to an individual vehicle or owner of an individual vehicle is excepted from the requirements of Section 552.021.**

There are no cases or formal opinions interpreting this exception.

## LL. Section 552.130: Confidentiality of Certain Motor Vehicle Records

Section 552.130 of the Government Code provides as follows:

**(a)** **Information is excepted from the requirements of Section 552.021 if the information relates to:**

**(1) a motor vehicle operator's or driver's license or permit issued by an agency of this state or another state or country;**

---

[723] Open Records Letter Nos. 99-0565 (1999), 98-0782 (1998).

[724] Open Records Letter No. 99-1511 (1999).

    **(2) a motor vehicle title or registration issued by an agency of this state or another state or country; or**

    **(3) a personal identification document issued by an agency of this state or another state or country or a local agency authorized to issue an identification document.**

**(b)**    **Information described by Subsection (a) may be released only if, and in the manner, authorized by Chapter 730, Transportation Code.**

**(c)**    **Subject to Chapter 730, Transportation Code, a governmental body may redact information described by Subsection (a) from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.**

**(d)**    **If, under Subsection (c), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision from the attorney general about the matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.**

**(e)**    **A governmental body that redacts or withholds information under Subsection (c) shall provide the following information to the requestor on a form prescribed by the attorney general:**

    **(1) a description of the redacted or withheld information;**

    **(2) a citation to this section; and**

    **(3) instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure**.

Section 552.130 protects information relating to a license, title, or registration issued by this state, a state other than Texas, or another country. Examples of information made confidential under section 552.130(a)(1) include the license number, issuing state, class, restrictions, and expiration

date of a driver's license.[725]    Examples of information made confidential under section 552.130(a)(2) include a vehicle identification number and license plate number.[726]

Section 552.130 does not apply to motor vehicle record information found in a CR-3 collision report form.  Access to a CR-3 collision report is specifically governed by section 550.065 of the Transportation Code, not section 552.130 of the Government Code.[727]

Because section 552.130 protects privacy interests, an individual or the individual's authorized representative has a special right of access to the individual's motor vehicle record information, and such information may not be withheld from that individual under section 552.130.[728] Furthermore, information protected under section 552.130 may be released if the governmental body is authorized to do so under chapter 730 of the Transportation Code.  A deceased person's interest under section 552.130 lapses upon the person's death, but section 552.130 protects the interest of a living person who co-owns or inherits a deceased individual's vehicle.[729]

Section 552.130(c) provides a governmental body may redact information subject to section 552.130(a) without the necessity of requesting an attorney general decision. If a governmental body chooses to redact this information without requesting an attorney general decision, it must notify the requestor as prescribed by section 552.130(e) on the form created by the attorney general. The notice must include instructions regarding how the requestor may seek an attorney general's review of the governmental body's redactions.  The form for notifying the requestor is located on the attorney general's website.  Pursuant to section 552.130(d), the attorney general promulgated rules establishing procedures for review of a governmental body's redactions.[730]  These rules are available on the attorney general's website and in Part Four of this *Handbook*.

If a governmental body lacks the technological capability to redact the motor vehicle record information from a requested video, it must seek a ruling from the attorney general if it wishes to withhold the video recording in its entirety under section 552.130.

## MM. Section 552.131: Confidentiality of Certain Economic Development Information

Section 552.131 of the Government Code reads as follows:

>   (a)   **Information is excepted from the requirements of Section 552.021 if the information relates to economic development negotiations involving a governmental body and a**

---

[725]   *See, e.g.*, Open Records Letter Nos. 2002-7018 (2002), 2001-3659 (2001).

[726]   *See, e.g.*, Open Records Letter Nos. 2000-4847 (2000), 2000-1083 (2000).

[727]   *See* Trans. Code § 550.065.

[728]   *See* Gov't Code § 552.023; Open Records Decision Nos. 684 at 12-13 (2009), 481 at 4 (1987) (privacy theories not implicated when individuals request information concerning themselves).

[729]   Open Records Decision No. 684 at 13 (2009).  *See generally Moore v. Charles B. Pierce Film Enters., Inc.*, 589 S.W.2d 489, 491 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *Justice v. Belo Broad. Corp.*, 472 F. Supp. 145, 146-47 (N.D. Tex. 1979); Attorney General Opinions JM-229 at 3 (1984), H-917 at 2-3(1976); Open Records Decision No. 272 at 1 (1981) (privacy rights lapse upon death).

[730]   *See* 1 T.A.C. §§ 63.11 - .16.

> **business prospect that the governmental body seeks to have locate, stay, or expand in or near the territory of the governmental body and the information relates to:**
>
> **(1) a trade secret of the business prospect; or**
>
> **(2) commercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained.**
>
> **(b)   Unless and until an agreement is made with the business prospect, information about a financial or other incentive being offered to the business prospect by the governmental body or by another person is excepted from the requirements of Section 552.021.**
>
> **(b-1)   An economic development entity whose mission or purpose is to develop and promote the economic growth of a state agency or political subdivision with which the entity contracts may assert the exceptions under this section in the manner described by Section 552.305(b) with respect to information that is in the economic development entity's custody or control.[731]**
>
> **(c)   After an agreement is made with the business prospect, this section does not except from the requirements of Section 552.021 information about a financial or other incentive being offered to the business prospect:**
>
> **(1) by the governmental body; or**
>
> **(2) by another person, if the financial or other incentive may directly or indirectly result in the expenditure of public funds by a governmental body or a reduction in revenue received by a governmental body from any source.**

Section 552.131(a) applies to the same two types of information excepted from disclosure under section 552.110: (1) trade secrets; and (2) commercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained. However, unlike section 552.110, section 552.131(a) applies only to information that relates to economic development negotiations between a governmental body and a business prospect. Section 552.131(b) excepts from public disclosure any information relating to a financial or other incentive that a governmental body or another person offers to a business prospect that seeks to have locate, stay, or expand in or near the territory of the governmental body. After the governmental body reaches an agreement with the business prospect, information about a financial or other incentive offered the business prospect is no longer excepted under section 552.131. Section 552.131(b-1) allows certain economic development entities to raise the exceptions in section 552.131 in the manner described by section 552.305(b) for information that is in the custody or control of the entities. There are no formal cases or opinions interpreting this exception.

---

[731]   Gov't Code § 552.131(b-1).

When a governmental body believes requested information of a third party may be excepted under this exception, the governmental body must notify the third party in accordance with section 552.305. The notice the governmental body must send to the third party is found in Part Seven of this *Handbook*.

## NN. Section 552.1315: Confidentiality of Certain Crime Victim Records

Section 552.1315 of the Government Code provides as follows:

>   (a) **Information is confidential and excepted from the requirements of Section 552.021 if the information identifies an individual as:**
>
>   (1) **a victim of:**
>
>>   (A)   **an offense under Section 20A.02, 20A.03, 21.02, 21.11. 22.011, 22.021, 43.05, or 43.25, Penal Code; or**
>>
>>   (B)   **an offense that is part of the same criminal episode, as defined by Section 3.01, Penal Code, as an offense described by Paragraph (A); or**
>
> **(2) a victim of any criminal offense, if the victim was younger than 18 years of age when any element of the offense was committed.**
>
>   (b) **Notwithstanding Subsection (a), information under this section may be disclosed:**
>
>   (1) **to any victim identified by the information, or to the parent or guardian of a victim described by Subsection (a)(2) who is identified by the information;**
>
>   (2) **to a law enforcement agency for investigative purposes; or**
>
>   (3) **in accordance with a court order requiring the disclosure.**

There are no cases or formal opinions interpreting this exception.

## OO. Section 552.132: Confidentiality of Crime Victim or Claimant Information

Section 552.132 of the Government Code provides as follows:

>   (a)   **Except as provided by Subsection (d), in this section, "crime victim or claimant" means a victim or claimant under Chapter 56B, Code of Criminal Procedure, who has filed an application for compensation under that chapter.**
>
>   (b)   **The following information held by the crime victim's compensation division of the attorney general's office is confidential:**

    **(1) the name, social security number, address, or telephone number of a crime victim or claimant; or**

    **(2) any other information the disclosure of which would identify or tend to identify the crime victim or claimant.**

**(c)    If the crime victim or claimant is awarded compensation under Article 56B.103 or 56B.104, Code of Crimial Procedure, as of the date of the award of compensation, the name of the crime victim or claimant and the amount of compensation awarded to that crime victim or claimant are public information and are not excepted from the requirements of Section 552.021.**

**(d)    An employee of a governmental body who is also a victim under Chapter 56B, Code of Criminal Procedure, regardless of whether the employee has filed an application for compensation under that chapter, may elect whether to allow public access to information held by the attorney general's office or other governmental body that would identify or tend to identify the victim, including a photograph or other visual representation of the victim. An election under this subsection must be made in writing on a form developed by the governmental body, be signed by the employee, and be filed with the governmental body before the third anniversary of the latest to occur of one of the following:**

    **(1) the date the crime was committed;**

    **(2) the date employment begins; or**

    **(3) the date the governmental body develops the form and provides it to employees.**

**(e)    If the employee fails to make an election under Subsection (d), the identifying information is excepted from disclosure until the third anniversary of the date the crime was committed. In case of disability, impairment, or other incapacity of the employee, the election may be made by the guardian of the employee or former employee.**

Section 552.132 makes both the victim's and claimant's identifying information confidential without either party having to submit an election for non-disclosure to the Crime Victims' Compensation Division of the Office of the Attorney General. The attorney general has found that crime victims have a special right of access to their own information under section 552.023 of the Government Code.[732] There are no cases or formal opinions interpreting this exception.

## PP.   Section 552.1325: Crime Victim Impact Statement: Certain Information Confidential

Section 552.1325 of the Government Code provides as follows:

---

[732]   Open Records Letter No. 2001-0821 (2001).

(a)   In this section:

(1) "Crime victim" means a person who is a victim as defined by Article 56B.003, Code of Criminal Procedure.

(2) "Victim impact statement" means a victim impact statement under Subchapter D, Chapter 56A, Code of Criminal Procedure.

(b)   The following information that is held by a governmental body or filed with a court and that is contained in a victim impact statement or was submitted for purposes of preparing a victim impact statement is confidential:

(1) the name, social security number, address, and telephone number of a crime victim; and

(2) any other information the disclosure of which would identify or tend to identify the crime victim.

The attorney general has found that crime victims have a special right of access to their own crime victim impact statement information under section 552.023 of the Government Code.  There are no cases or formal opinions interpreting this exception.



## QQ.  Section 552.133: Confidentiality of Public Power Utility Competitive Matters

Section 552.133 of the Government Code provides as follows:

(a)   In this section:

(1) "Broadband service" has the meaning assigned by Section 181.048, Utilities Code.

(2) "Public power utility" means an entity providing electric or gas utility services that is subject to the provisions of this chapter.

(a-1)   For purposes of this section, "competitive matter" means a utility-related matter, including for an entity described by Subdivision(2) a cable, Internet, or broadband service matter, that is related to the public power utility's competitive activity, including commercial information, and would, if disclosed, give advantage to competitors or prospective competitors.  The term:

(1) means a matter that is reasonably related to the following categories of information:

(A)   generation unit specific and portfolio fixed and variable costs, including forecasts of those costs, capital improvement plans for generation units, and generation unit operating characteristics and outage scheduling;

**(B)** bidding and pricing information for purchased power, generation and fuel, and Electric Reliability Council of Texas bids, prices, offers, and related services and strategies;

**(C)** effective fuel and purchased power agreements and fuel transportation arrangements and contracts;

**(D)** risk management information, contracts, and strategies, including fuel hedging and storage;

**(E)** plans, studies, proposals, and analyses for system improvements, additions, or sales, other than transmission and distribution system improvements inside the service area for which the public power utility is the sole certificated retail provider; and

**(F)** customer billing, contract, and usage information, electric power pricing information, system load characteristics, and electric power marketing analyses and strategies;

**(2)** means a matter reasonably related to information involving the provision of cable, Internet, or broadband services by a municipally owned utility that provided electricity services and cable, Internet, or broadband services on or before January 1, 2003, including:

**(A)** a capital improvement plan;

**(B)** an expense related to the installation of a facility to provide those services;

**(C)** bidding and pricing information for installation of the facility;

**(D)** risk management information, contracts, and strategies;

**(E)** plans, studies, proposals, and analyses for:

    **(i)** system improvements, additions, or sales; or

    **(ii)** establishing pricing for providing those services; and

**(F)** customer billing, contract, and usage information; and

**(3)** does not include the following categories of information:

**(A)** information relating to the provision of distribution access service, including the terms and conditions of the service and the rates charged for the service but not including information concerning utility-related services or products that are competitive;

**(B)** information relating to the provision of transmission service that is required to be filed with the Public Utility Commission of Texas, subject to any confidentiality provided for under the rules of the commission;

**(C)** information for the distribution system pertaining to reliability and continuity of service, to the extent not security-sensitive, that relates to emergency management, identification of critical loads such as hospitals and police, records of interruption, and distribution feeder standards;

**(D)** any substantive rule or tariff of general applicability regarding rates, service offerings, service regulation, customer protections, or customer service adopted by the public power utility as authorized by law;

**(E)** aggregate information reflecting receipts or expenditures of funds of the public power utility, of the type that would be included in audited financial statements;

**(F)** information relating to equal employment opportunities for minority groups, as filed with local, state, or federal agencies;

**(G)** information relating to the public power utility's performance in contracting with minority business entities;

**(H)** information relating to nuclear decommissioning trust agreements, of the type required to be included in audited financial statements;

**(I)** information relating to the amount and timing of any transfer to an owning city's general fund;

**(J)** information relating to environmental compliance as required to be filed with any local, state, or national environmental authority, subject to any confidentiality provided under the rules of those authorities;

**(K)** names of public officers of the public power utility and the voting records of those officers for all matters other than those within the scope of a competitive resolution provided for by this section;

**(L)** a description of the public power utility's central and field organization, including the established places at which the public may obtain information, submit information and requests, or obtain decisions and the identification of employees from whom the public may obtain information, submit information or requests, or obtain decisions;

**(M)** information identifying the general course and method by which the public power utility's functions are channeled and determined, including the nature and requirements of all formal and informal policies and procedures;

    **(N)**   **salaries and total compensation of all employees of a public power utility; or**

    **(O)**   **information publicly released by the Electric Reliability Council of Texas in accordance with a law, rule, or protocol generally applicable to similarly situated market participants;**

    **(P)**   **information related to a chilled water program, as defined by Section 11.003, Utilities Code; or**

    **(Q)**   **information included in the separate books and records required to be kept by an entity described by Subdivision (2) as required by Section 552.915, Local Government Code.**

  **(b)**   **Information or records are excepted from the requirements of Section 552.021 if the information or records are reasonably related to a competitive matter, as defined in this section. Information or records of a municipally owned utility that are reasonably related to a competitive matter are not subject to disclosure under this chapter, whether or not, under the Utilities Code, the municipally owned utility has adopted customer choice or serves in a multiply certificated service area. This section does not limit the right of a public power utility governing body to withhold from disclosure information deemed to be within the scope of any other exception provided for in this chapter, subject to the provisions of this chapter.**

  **(b-1)**   **Notwithstanding any contrary provision of Subsection (b), information or records of a municipally owned utility or municipality that operates a chilled water program are subject to disclosure under this chapter if the information or records are reasonably related to:**

    **(1) a municipally owned utility's rate review process;**

    **(2) the method a municipality or municipally owned utility uses to set rates for retail electricity service; or**

    **(3) the method a municipality or municipally owned utility uses to set rates for a chilled water program described by Subsection (a-1)(3)(P).**

  **(c)**   **The requirement of Section 552.022 that a category of information listed under Section 552.022(a) is public information and not excepted from required disclosure under this chapter unless expressly confidential under law does not apply to information that is excepted from required disclosure under this section.**

Section 552.133 excepts from disclosure a public power utility's information related to a competitive matter. The exception defines "competitive matter" as a utility-related matter that is related to the public power utility's competitive activity. In order to be "utility-related," the matter must relate to the six enumerated categories of information. Section 552.133 lists seventeen categories of information that may not be deemed competitive matters. In Open Records Decision No. 666 (2000), the attorney general determined that a municipality may disclose information

pertaining to a municipally-owned power utility to a municipally-appointed citizen advisory board without waiving its right thereafter to assert an exception under the Act in response to a future public request for information.[733]

## RR.  Section 552.1331: Certain Government-Operated Utility Customer Information

Section 552.1331 of the Government Code provides as follows:

(a)  **In this section:**

(1) **"Advanced metering system" means a utility metering system that collects data at regular intervals through the use of an automated wireless radio network.**

(2) **"Government-operated utility" has the meaning assigned by Section 182.951, Utilities Code.**

(b)  **Except as provided provided by Subsection (c) of this section and Section 182.052, Utilities Code, information maintained by a government-operated utility is excepted from the requirements of Section 552.021 if it is information that:**

(1) **is collected as part of an advanced metering system for usage, services, and billing, including amounts billed or collected for utility usage; or**

(2) **reveals whether:**

(A) **an account is delinquent or eligible for disconnection; or**

(B) **services has been discontinued by the government-operated utility.**

(c)  **A government-operated utility must disclose information described by Subsection (b)(1) to a customer of the utility or a representative of the customer if the information directly relates to utility services provided to the customer and is not confidential under law.**

The 87th Legislature added section 552.1331, which makes confidential information maintained by a government-operated utility that is collected as part of an advanced metering system for usage, services, and billing.  Information that reveals whether an account is delinquent or eligible for disconnection or reveals services have been discontinued by the government-operated utility are confidential.  Subsection (c) and section 182.052 of the Utilities Code provide that certain information must be released to a utility customer or a customer's representative.

## SS.  Section 552.134: Confidentiality of Certain Information Relating to Inmate of Department of Criminal Justice

---

[733]  Open Records Decision No. 666 at 4 (2000).

Section 552.134 of the Government Code provides as follows:

(a) **Except as provided by Subsection (b) or by Section 552.029, information obtained or maintained by the Texas Department of Criminal Justice is excepted from the requirements of Section 552.021 if it is information about an inmate who is confined in a facility operated by or under a contract with the department.**

(b) **Subsection (a) does not apply to:**

   (1) **statistical or other aggregated information relating to inmates confined in one or more facilities operated by or under a contract with the department; or**

   (2) **information about an inmate sentenced to death.**

(c) **This section does not affect whether information is considered confidential or privileged under Section 508.313.**

(d) **A release of information described by Subsection (a) to an eligible entity, as defined by Section 508.313(d), for a purpose related to law enforcement, prosecution, corrections, clemency, or treatment is not considered a release of information to the public for purposes of Section 552.007 and does not waive the right to assert in the future that the information is excepted from required disclosure under this section or other law.**

This section should be read with two other provisions concerning the required public disclosure of Texas Department of Criminal Justice information, sections 552.029 and 508.313 of the Government Code. Section 508.313 of the Government Code generally makes confidential all information the Texas Department of Criminal Justice obtains and maintains about certain classes of inmates, including an inmate of the institutional division subject to release on parole, release to mandatory supervision, or executive clemency. Section 508.313 also applies to information about a releasee and a person directly identified in any proposed plan of release for an inmate. Section 508.313 requires the release of the information it covers to the governor, a member of the Board of Pardons and Paroles, the Criminal Justice Policy Council, or an eligible entity requesting information for a law enforcement, prosecutorial, correctional, clemency, or treatment purpose.[734] Thus, both sections 552.134 and 508.313 make certain information confidential.

On the other hand, section 552.029 of the Government Code provides that certain specified information cannot be withheld under sections 552.134 and 508.313.

Section 552.029 of the Government Code reads as follows:

**Notwithstanding Section 508.313 or 552.134, the following information about an inmate who is confined in a facility operated by or under a contract with the Texas Department of Criminal Justice is subject to required disclosure under Section 552.021:**

---

[734] Gov't Code § 508.313(c).

(1)   the inmate's name, identification number, age, birthplace, department photograph, physical description, or general state of health or the nature of an injury to or critical illness suffered by the inmate;

(2)   the inmate's assigned unit or the date on which the unit received the inmate, unless disclosure of the information would violate federal law relating to the confidentiality of substance abuse treatment;

(3)   the offense for which the inmate was convicted or the judgment and sentence for that offense;

(4)   the county and court in which the inmate was convicted;

(5)   the inmate's earliest or latest possible release dates;

(6)   the inmate's parole date or earliest possible parole date;

(7)   any prior confinement of the inmate by the Texas Department of Criminal Justice or its predecessor; or

(8)   basic information regarding the death of an inmate in custody, an incident involving the use of force, or an alleged crime involving the inmate.

The Texas Department of Criminal Justice has the discretion to release information otherwise protected under section 552.134 to voter registrars for the purpose of maintaining accurate voter registration lists.[735]



## TT.   Section 552.1345: Confidentiality of Certain Information Relating to Civilly Committed Sexually Violent Predators

Section 552.1345 of the Government Code provides as follows:

(a)   Except as provided by Subsection (b), information obtained or maintained by the Texas Civil Commitment Office is excepted from the requirements of Section 552.021 if it is information about a person who is civilly committed as a sexually violent predator under Chapter 841, Health and Safety Code.

(b)   Subsection (a) does not apply to statistical or other aggregated information relating to persons civilly committed to one or more facilities operated by or under a contract with the office.

## UU.   Section 552.135:   Confidentiality of Certain Information Held by School District

Section 552.135 of the Government Code provides as follows:

---

[735]   Open Records Decision No. 667 at 4 (2000).

(a) **"Informer" means a student or a former student or an employee or former employee of a school district who has furnished a report of another person's possible violation of criminal, civil, or regulatory law to the school district or the proper regulatory enforcement authority.**

(b) **An informer's name or information that would substantially reveal the identity of an informer is excepted from the requirements of Section 552.021.**

(c) **Subsection (b) does not apply:**

   (1) **if the informer is a student or former student, and the student or former student, or the legal guardian, or spouse of the student or former student consents to disclosure of the student's or former student's name; or**

   (2) **if the informer is an employee or former employee who consents to disclosure of the employee's or former employee's name; or**

   (3) **if the informer planned, initiated, or participated in the possible violation.**

(d) **Information excepted under Subsection (b) may be made available to a law enforcement agency or prosecutor for official purposes of the agency or prosecutor upon proper request made in compliance with applicable law and procedure.**

(e) **This section does not infringe on or impair the confidentiality of information considered to be confidential by law, whether it be constitutional, statutory, or by judicial decision, including information excepted from the requirements of Section 552.021.**

A school district that seeks to withhold information under this exception must clearly identify to the attorney general's office the specific civil, criminal, or regulatory law that is alleged to have been violated. The school district must also identify the individual who reported the alleged violation of the law. There are no cases or formal opinions interpreting this exception.

## VV. Section 552.136: Confidentiality of Credit Card, Debit Card, Charge Card, and Access Device Numbers

Section 552.136 of the Government Code provides as follows:

(a) **In this section, "access device" means a card, plate, code, account number, personal identification number, electronic serial number, mobile identification number, or other telecommunications service, equipment, or instrument identifier or means of account access that alone or in conjunction with another access device may be used to:**

   (1) **obtain money, goods, services, or another thing of value; or**

(2) **initiate a transfer of funds other than a transfer originated solely by paper instrument.**

(b) **Notwithstanding any other provision of this chapter, a credit card, debit card, charge card, or access device number that is collected, assembled, or maintained by or for a governmental body is confidential.**

(c) **A governmental body may redact information that must be withheld under Subsection (b) from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.**

(d) **If, under Subsection (c), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision from the attorney general about the matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.**

(e) **A governmental body that redacts or withholds information under Subsection (c) shall provide the following information to the requestor on a form prescribed by the attorney general:**

(1) **a description of the redacted or withheld information;**

(2) **a citation to this section; and**

(3) **instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure.**

A governmental body that raises section 552.136 must demonstrate how the "access device number" it seeks to withhold is used alone or in combination to obtain money, goods, services, or another thing of value or initiate a transfer of funds. The attorney general has interpreted this exception to include bank account and routing numbers, full and partial credit card numbers and their expiration dates, and insurance policy numbers.[736] Because section 552.136 protects privacy interests, a

---

[736]   Open Records Decision No. 684 at 9 (2009).

governmental body may not invoke this exception to withhold an access device from the person to whom the device belongs or that person's authorized representative.[737]

Pursuant to section 552.136(c), a governmental body may redact without the necessity of requesting an attorney general decision information that is subject to section 552.136. If a governmental body chooses to redact this information without requesting an attorney general decision, it must notify the requestor as prescribed by section 552.136(e) on the form created by the attorney general. The notice must include instructions regarding how the requestor may seek an attorney general's review of the governmental body's redactions. The form for notifying the requestor is located on the attorney general's website. The legislation enacting this provision authorized the attorney general to promulgate rules establishing procedures for review under section 552.136(d). These rules were promulgated in subchapter B of chapter 63 of title 1 of the Texas Administrative Code.[738] These rules are available on the attorney general's website and in Part Four of this *Handbook*.

## WW. Section 552.137: Confidentiality of Certain E-mail Addresses

Section 552.137 of the Government Code provides as follows:

(a) **Except as otherwise provided by this section, an e-mail address of a member of the public that is provided for the purpose of communicating electronically with a governmental body is confidential and not subject to disclosure under this chapter.**

(b) **Confidential information described by this section that relates to a member of the public may be disclosed if the member of the public affirmatively consents to its release.**

(c) **Subsection (a) does not apply to an e-mail address:**

(1) **provided to a governmental body by a person who has a contractual relationship with the governmental body or by the contractor's agent;**

(2) **provided to a governmental body by a vendor who seeks to contract with the governmental body or by the vendor's agent;**

(3) **contained in a response to a request for bids or proposals, contained in a response to similar invitations soliciting offers or information relating to a potential contract, or provided to a governmental body in the course of negotiating the terms of a contract or potential contract;**

(4) **provided to a governmental body on a letterhead, cover sheet, printed document, or other document made available to the public; or**

(5) **provided to a governmental body for the purpose of providing public comment on or receiving notices related to an application for a license as defined by**

---

[737] Open Records Decision No. 684 at 12 (2009); *see* Gov't Code § 552.023.

[738] *See* 1 T.A.C. §§ 63.11-.16

**Section 2001.003(2) of this code, or receiving orders or decisions from a governmental body.**

**(d)  Subsection (a) does not prevent a governmental body from disclosing an e-mail address for any reason to another governmental body or to a federal agency.**

In addition to the exceptions found in amended section 552.137(c), the attorney general has determined that section 552.137 does not protect a government employee's work e-mail address or an institutional e-mail address or website address.[739]  Further, this section does not apply to the private e-mail addresses of government officials who use their private e-mail addresses to conduct official government business.[740]  Because a person may consent to the disclosure of his or her e-mail address under the statute, the person has a right to his or her own e-mail address.[741]  The attorney general issued Open Records Decision No. 684 (2009), a previous determination to all governmental bodies authorizing them to withhold an e-mail address of a member of the public without the necessity of requesting an attorney general decision.[742]

## XX.  Section 552.138: Confidentiality of Family Violence Shelter Center, Victims of Trafficking Shelter Center, and Sexual Assault Program Information

Section 552.138 of the Government Code provides as follows:

**(a)  In this section:**

> **(1) "Family violence shelter center" has the meaning assigned by Section 51.002, Human Resources Code.**



> **(1-a) "License" means a license, certificate, registration, permit, or other authorization that:**
>
> > **(A) is issued by a governmental body; and**
> >
> > **(B) a person must obtain to practice or engage in a particular business, occupation, or profession.**
>
> **(2) "Sexual assault program" has the meaning assigned by Section 420.003.**
>
> **(3) "Victims of trafficking shelter center" means:**
>
> > **(A)  a program that:**
> >
> > > **(i)  is operated by a public or private nonprofit organization; and**

---

[739]  Open Records Decision No. 684 at 10 (2009).
[740]  *Austin Bulldog v. Leffingwell*, 490 S.W.3d 240 (Tex. App.—Austin 2016, no pet.).
[741]  Open Records Decision No. 684 at 10 (2009).
[742]  Open Records Decision No. 684 at 10 (2009).

> > > **(ii) provides comprehensive residential and nonresidential services to persons who are victims of trafficking under Section 20A.02, Penal Code; or**
> >
> > **(B) a child-placing agency, as defined by Section 42.002, Human Resources Code, that provides services to persons who are victims of trafficking under Section 20A.02, Penal Code.**

**(b) Information maintained by a family violence shelter center, victims of trafficking shelter center, or sexual assault program is excepted from the requirements of Section 552.021 if it is information that relates to:**

> **(1) the home address, home telephone number, or social security number of an employee or a volunteer worker of a family violence shelter center, victims of trafficking shelter center, or sexual assault program, regardless of whether the employee or worker complies with Section 552.024;**
>
> **(2) the name, home address, home telephone number, or numeric identifier of a current or former client of a family violence shelter center, victims of trafficking shelter center, or sexual assault program;**
>
> **(3) the provision of services, including counseling and sheltering, to a current or former client of a family violence shelter center, victims of trafficking shelter center, or sexual assault program;**
>
> **(4) the name, home address, or home telephone number of a private donor to a family violence shelter center, victims of trafficking shelter center, or sexual assault program; or**
>
> **(5) the home address or home telephone number of a member of the board of directors or the board of trustees of a family violence shelter center, victims of trafficking shelter center, or sexual assault program, regardless of whether the board member complies with Section 552.024.**

**(b-1) Information that relates to the location or physical layout of a family violence shelter center or victims of trafficking shelter center is confidential.**

**(c) A governmental body may redact information maintained by a family violence shelter center, victims of trafficking shelter center, or sexual assault program that may be withheld under Subsection (b)(1) or (5) or that is confidential under Subsection (b-1) from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.**

**(d) If, under Subsection (c), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision**

from the attorney general about the matter.  The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person.  The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection.  The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter.  The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.

(e)   A governmental body that redacts or withholds information under Subsection (c) shall provide the following information to the requestor on a form prescribed by the attorney general:

(1) a description of the redacted or withheld information;

(2) a citation to this section; and

(3) instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure.



(f)   Notwithstanding any other law, a governmental body may not sell or otherwise release the name, home or business address, place of employment, telephone number, electronic mail address, social security number, date of birth, driver's license or state identification number, passport number, emergency contact information, or numeric identifier of a person who:

(1) holds, previously held, or is an applicant for a license issued by the governmental body; and

(2) notifies the governmental body on a form provided by the office of the attorney general or the governmental body that the person:

(A) is a current or former client of a family violence shelter center, victims of trafficking shelter center, or sexual assault program or is a survivor of family violence, domestic violence, or sexual assault; and

(B) chooses to restrict public access to the information.

(g)   A governmental body may redact information described by Subsection (f) from a response to a request for a list or directory of license holders, former license holders, or license applicants without the necessity of requesting a decision from the attorney general under Subchapter G.

Section 552.138 allows a governmental body to redact the following information maintained by a family violence shelter center, victims of trafficking shelter center, or sexual assault program without the necessity of requesting an attorney general decision:  the home address, home telephone number, or social security number of an employee or volunteer worker.  Section 552.138 also allows the redaction of the home address or telephone number of a member of the board of directors or the board of trustees without the necessity of requesting an attorney general decision. Section 552.138 allows a governmental body to redact information that relates to the location or physical layout of a family violence shelter center or a victims of trafficking shelter center without requesting an attorney general decision.  If a governmental body chooses to redact this information without requesting an attorney general decision, it must notify the requestor as prescribed section 552.138(e) on the form created by the attorney general.  The notice must include instructions regarding how the requestor may seek an attorney general's review of the governmental body's redactions.  The form for notifying the requestor is published on the attorney general's website. The legislation enacting these provisions authorized the attorney general to promulgate rules establishing procedures for review under section 552.138(d).  These rules are available on the attorney general's website and in Part Four of this *Handbook*.[743]  Section 552.138 also makes confidential the name, home or business address, place of employment, telephone number, electronic mail address, social security number, date of birth, driver's license or state identification number, passport number, emergency contact information, or numeric identifier of applicants for and former or current holders of licenses issued by the governmental body who received the request.  The governmental body may withhold this information from a request for a list or directory of these individuals without requesting a decision from this office.

## YY.  Section 552.139: Confidentiality of Government Information Related to Security or Infrastructure Issues for Computers

Section 552.139 of the Government Code provides as follows:

(a)  **Information is excepted from the requirements of Section 552.021 if it is information that relates to computer network security, to restricted information under Section 2059.055, or to the design, operation, or defense of a computer network.**

(b)  **The following information is confidential:**

**(1) a computer network vulnerability report;**

**(2) any other assessment of the extent to which data processing operations, a computer, a computer program, network, system, or system interface, or software of a governmental body or of a contractor of a governmental body is vulnerable to unauthorized access or harm, including an assessment of the extent to which the governmental body's or contractor's electronically stored information containing sensitive or critical information is vulnerable to alteration, damage, erasure, or inappropriate use;**

---

[743]  *See* 1 T.A.C. §§ 63.11-.16.

(3) **a photocopy or other copy of an identification badge issued to an official or employee of a governmental body; and**

(4) **information directly arising from a governmental body's routine efforts to prevent, detect, investigate, or mitigate a computer security incident, including information contained in or derived from an information security log.**

(b-1) **Subsection (b)(4) does not affect the notification requirements related to a breach of system security as defined by Section 521.053, Business & Commerce Code.**

(c) **Notwithstanding the confidential nature of the information described in this section, the information may be disclosed to a bidder if the governmental body determines that providing the information is necessary for the bidder to provide an accurate bid. A disclosure under this subsection is not a voluntary disclosure for purposes of Section 552.007.**

(d) **A state agency shall redact from a contract posted on the agency's Internet website under Section 2261.253 information that is made confidential by, or excepted from required public disclosure under, this section. The redaction of information under this subsection does not exempt the information from the requirements of Section 552.021 or 552.221.**

## ZZ. Section 552.140: Confidentiality of Military Discharge Records

Section 552.140 of the Government Code provides as follows:

(a) **This section applies only to a military veteran's Department of Defense Form DD-214 or other military discharge record that is first recorded with or that otherwise first comes into the possession of a governmental body on or after September 1, 2003.**

(b) **The record is confidential for the 75 years following the date it is recorded with or otherwise first comes into the possession of a governmental body. During that period the governmental body may permit inspection or copying of the record or disclose information contained in the record only in accordance with this section or in accordance with a court order.**

(c) **On request and the presentation of proper identification, the following persons may inspect the military discharge record or obtain from the governmental body free of charge a copy or certified copy of the record:**

(1) **the veteran who is the subject of the record;**

(2) **the legal guardian of the veteran;**

(3) **the spouse or a child or parent of the veteran or, if there is no living spouse, child, or parent, the nearest living relative of the veteran;**

**(4) the personal representative of the estate of the veteran;**

**(5) the person named by the veteran, or by a person described by Subdivision (2), (3), or (4), in an appropriate power of attorney executed in accordance with Subchapters A and B, Chapter 752, Estates Code;**

**(6) another governmental body; or**

**(7) an authorized representative of the funeral home that assists with the burial of the veteran.**

**(d)    A court that orders the release of information under this section shall limit the further disclosure of the information and the purposes for which the information may be used.**

**(e)    A governmental body that obtains information from the record shall limit the governmental body's use and disclosure of the information to the purpose for which the information was obtained.**

In Open Records Decision No. 684 (2009), the attorney general issued a previous determination to all governmental bodies authorizing them to withhold, a Form DD-214 or other military discharge record that is first recorded with or that otherwise first comes into the possession of the governmental body on or after September 1, 2003, under section 552.140 of the Government Code, without the necessity of requesting an attorney general decision.[744]

## AAA.    Section 552.141: Confidentiality of Information in Application for Marriage License

Section 552.141 of the Government Code provides as follows:

**(a)    Information that relates to the social security number of an individual that is maintained by a county clerk and that is on an application for a marriage license, including information in an application on behalf of an absent applicant and the affidavit of an absent applicant, or is on a document submitted with an application for a marriage license is confidential and may not be disclosed by the county clerk to the public under this chapter.**

**(b)    If the county clerk receives a request to make information in a marriage license application available under this chapter, the county clerk shall redact the portion of the application that contains an individual's social security number and release the remainder of the information in the application.**

This exception applies only to an application for a marriage license that is filed on or after September 1, 2003.[745]

---

[744]    Open Records Decision No. 684 at 11 (2009).

[745]    *See* Act of May 21, 2003, 78th Leg., R.S., ch. 804, § 2, 2003 Tex. Gen. Laws 2356.

## BBB. Section 552.142: Confidentiality of Records Subject to Order of Nondisclosure

Section 552.142 of the Government Code provides as follows:

(a) **Information is excepted from the requirements of Section 552.021 if an order of nondisclosure of criminal history record information with respect to the information has been issued under Subchapter E-1, Chapter 411.**

(b) **A person who is the subject of information that is excepted from the requirements of Section 552.021 under this section may deny the occurrence of the criminal proceeding to which the information relates and the exception of the information under this section, unless the information is being used against the person in a subsequent criminal proceeding.**

## CCC. Section 552.1425: Civil Penalty: Dissemination of Certain Criminal History Information

Section 552.1425 of the Government Code provides as follows:

(a) **A private entity that compiles and disseminates for compensation criminal history record information may not compile or disseminate information with respect to which the entity has received notice that:**

    (1) **an order of expunction has been issued under Article 55.02, Code of Criminal Procedure; or**

    (2) **an order of nondisclosure of criminal history record information has been issued under Subchapter E-1, Chapter 411.**

(b) **A district court may issue a warning to a private entity for a first violation of Subsection (a). After receiving a warning for the first violation, the private entity is liable to the state for a civil penalty not to exceed $1,000 for each subsequent violation.**

(c) **The attorney general or an appropriate prosecuting attorney may sue to collect a civil penalty under this section.**

(d) **A civil penalty collected under this section shall be deposited in the state treasury to the credit of the general revenue fund.**

 The 88th Legislature passed House Bill 4504, amending section 552.1425 of the Government Code . The amendment to subsection 552.1425(a) becomes effective January 1, 2025, and provides in part:

(a)  **A private entity that compiles and disseminates for compensation criminal history record information may not compile or disseminate information with respect to which the entity has received notice that:**

  (1)  **an order of expunction has been issued under Subchapter E or F, Chapter 55A, Code of Criminal Procedure; or**

## DDD.  Section 552.143: Confidentiality of Certain Investment Information

Section 552.143 of the Government Code provides as follows:

(a)  **All information prepared or provided by a private investment fund and held by a governmental body that is not listed in Section 552.0225(b) is confidential and excepted from the requirements of Section 552.021.**

(b)  **Unless the information has been publicly released, pre-investment and post-investment diligence information, including reviews and analyses, prepared or maintained by a governmental body or a private investment fund is confidential and excepted from the requirements of Section 552.021, except to the extent it is subject to disclosure under Subsection (c).**

(c)  **All information regarding a governmental body's direct purchase, holding, or disposal of restricted securities that is not listed in Section 552.0225(b)(2)–(9), (11), or (13)–(16) is confidential and excepted from the requirements of Section 552.021. This subsection does not apply to a governmental body's purchase, holding, or disposal of restricted securities for the purpose of reinvestment nor does it apply to a private investment fund's investment in restricted securities. This subsection applies to information regarding a direct purchase, holding, or disposal of restricted securities by the Texas growth fund, created under Section 70, Article XVI, Texas Constitution, that is not listed in Section 552.0225(b).**

(d)  **For the purposes of this chapter:**

  (1)  **"Private investment fund" means an entity, other than a governmental body, that issues restricted securities to a governmental body to evidence the investment of public funds for the purpose of reinvestment.**

  (2)  **"Reinvestment" means investment in a person that makes or will make other investments.**

  (3)  **"Restricted securities" has the meaning assigned by 17 C.F.R. Section 230.144(a)(3).**

(e)  **Repealed by Acts 2011, 82nd Leg., 1st C.S., ch. 4 (S.B. 1), § 17.05(1)**

(f)  **This section does not apply to the Texas Mutual Insurance Company or a successor to the company.**

Section 552.0225 makes public certain investment information. The attorney general has determined in an informal letter ruling that section 552.143 is subject to the public disclosure requirements of section 552.0225.[746]

## EEE. Section 552.144: Working Papers and Electronic Communications of Administrative Law Judges at State Office of Administrative Hearings

Section 552.144 of the Government Code provides as follows:

**The following working papers and electronic communications of an administrative law judge at the State Office of Administrative Hearings are excepted from the requirements of Section 552.021:**

> **(1) notes and electronic communications recording the observations, thoughts, questions, deliberations, or impressions of an administrative law judge;**
>
> **(2) drafts of a proposal for decision;**
>
> **(3) drafts of orders made in connection with conducting contested case hearings; and**
>
> **(4) drafts of orders made in connection with conducting alternative dispute resolution procedures.**

## FFF. Section 552.145: Confidentiality of Texas No-Call List

Section 552.145 of the Government Code provides as follows:

**The Texas no-call list created under Subchapter B, Chapter 304, Business & Commerce Code, and any information provided to or received from the administrator of the national do-not-call registry maintained by the United States government, as provided by Sections 304.051 and 304.56, Business & Commerce Code, are excepted from the requirements of Section 552.021.**

Section 552.145 applies specifically to the no-call list and information provided to or removed from the administrator of the do-not-call registry.[747]

## GGG. Section 552.146: Certain Communications with Assistant or Employee of Legislative Budget Board

Section 552.146 of the Government Code provides as follows:

> **(a) All written or otherwise recorded communications, including conversations, correspondence, and electronic communications, between a member of the**

---

[746] Open Records Letter No. 2005-6095 (2005).

[747] *See, e.g.*, Open Records Letter Nos. 2009-10649 (2009), 2009-07316 (2009).

**legislature or the lieutenant governor and an assistant or employee of the Legislative Budget Board are excepted from the requirements of Section 552.021.**

(b) **Memoranda of a communication between a member of the legislature or the lieutenant governor and an assistant or employee of the Legislative Budget Board are excepted from the requirements of Section 552.021 without regard to the method used to store or maintain the memoranda.**

(c) **This section does not except from required disclosure a record or memoranda of a communication that occurs in public during an open meeting or public hearing conducted by the Legislative Budget Board.**

## HHH. Section 552.147: Social Security Numbers

Section 552.147 of the Government Code provides as follows:

(a) **Except as provided by Subsection (a-1), the social security number of a living person is excepted from the requirements of Section 552.021, but is not confidential under this section and this section does not make the social security number of a living person confidential under another provision of this chapter or other law.**

(a-1) **The social security number of an employee of a school district in the custody of the district is confidential.**

(b) **A governmental body may redact the social security number of a living person from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.**

(c) **Notwithstanding any other law, a county or district clerk may disclose in the ordinary course of business a social security number that is contained in information held by the clerk's office, and that disclosure is not official misconduct and does not subject the clerk to civil or criminal liability of any kind under the law of this state, including any claim for damages in a lawsuit or the criminal penalty imposed by Section 552.352.**

(d) **Unless another law requires a social security number to be maintained in a government document, on written request from an individual or the individual's representative the clerk shall redact within a reasonable amount of time all but the last four digits of the individual's social security number from information maintained in the clerk's official public records, including electronically stored information maintained by or under the control of the clerk. The individual or the individual's representative must identify, using a form provided by the clerk, the specific document or documents from which the partial social security number shall be redacted.**

In an informal letter ruling, the attorney general has determined section 552.147(a-1) makes confidential the social security numbers of both current and former school district employees.[748]

## III.  Section 552.148: Confidentiality of Certain Personal Information Maintained by Municipality Pertaining to a Minor

Section 552.148 of the Government Code provides as follows:

(a)  **In this section, "minor" means a person younger than 18 years of age.**

(b)  **The following information maintained by a municipality for purposes related to the participation by a minor in a recreational program or activity is excepted from the requirements of Section 552.021:**

   (1)  **the name, age, home address, home telephone number, or social security number of the minor;**

   (2)  **a photograph of the minor; and**

   (3)  **the name of the minor's parent or legal guardian.**

## JJJ.  Section 552.149: Confidentiality of Records of Comptroller or Appraisal District Received from Private Entity

Section 552.149 of the Government Code provides as follows:

(a)  **Information relating to real property sales prices, descriptions, characteristics, and other related information received from a private entity by the comptroller or the chief appraiser of an appraisal district under Chapter 6, Tax Code, is excepted from the requirements of Section 552.021.**

(b)  **Notwithstanding Subsection (a), the property owner or the owner's agent may, on request, obtain from the chief appraiser of the applicable appraisal district a copy of each item of information described by Section 41.461(a)(2), Tax Code, and a copy of each item of information that the chief appraiser took into consideration but does not plan to introduce at the hearing on the protest.  In addition, the property owner or agent may, on request, obtain from the chief appraiser comparable sales data from a reasonable number of sales that is relevant to any matter to be determined by the appraisal review board at the hearing on the property owner's protest or by the arbitrator at the hearing on the property owner's appeal under Chapter 41A, Tax Code, of the appraisal review board's order determining the protest. Information obtained under this subsection:**

   (1)  **remains confidential in the possession of the property owner or agent; and**

---

[748]  Open Records Letter No. 2013-18655 at 6 (2013).

(2) may not be disclosed or used for any purpose except as evidence or argument at the hearing on:

(A) the protest; or

(B) the appeal under Chapter 41A, Tax Code.

(c) Notwithstanding Subsection (a) or Section 403.304, so as to assist a property owner or an appraisal district in a protest filed under Section 403.303, the property owner, the district, or an agent of the property owner or district may, on request, obtain from the comptroller any information, including confidential information, obtained by the comptroller in connection with the comptroller's finding that is being protested. Confidential information obtained by a property owner, an appraisal district, or an agent of the property owner or district under this subsection:

(1) remains confidential in the possession of the property owner, district, or agent; and

(2) may not be disclosed to a person who is not authorized to receive or inspect the information.

(d) Notwithstanding Subsection (a) or Section 403.304, so as to assist a school district in the preparation of a protest filed or to be filed under Section 403.303, the school district or an agent of the school district may, on request, obtain from the comptroller or the appraisal district any information, including confidential information, obtained by the comptroller or the appraisal district that relates to the appraisal of property involved in the comptroller's finding that is being protested. Confidential information obtained by a school district or an agent of the school district under this subsection:

(1) remains confidential in the possession of the school district or agent; and

(2) may not be disclosed to a person who is not authorized to receive or inspect the information.

In *Harris County Appraisal Dist. v. Integrity Title Co., LLC*, the First Court of Appeals addressed, in relevant part, whether otherwise public information provided to a governmental body by a private entity is excepted from disclosure under section 552.149.[749] The Harris County Appraisal District sought to withhold deed document numbers and filing dates received from a private entity under section 552.149; however, the private entity had obtained this information from the Harris County Clerk.[750] The court found section 552.149 protects privately-generated information sold to a governmental body that is not otherwise publicly available and concluded section 552.149 did

---

[749] *Harris County Appraisal Dist. v. Integrity Title Co., LLC*, 483 S.W.3d 62, 71 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

[750] *Harris County Appraisal Dist. v. Integrity Title Co., LLC*, 483 S.W.3d 62, 70 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

not except from disclosure the otherwise public information the private entity received from the Harris County Clerk.[751]

## KKK. Section 552.150: Confidentiality of Information That Could Compromise Safety of Officer or Employee of Hospital District

Section 552.150 of the Government Code provides as follows:

(a) **Information in the custody of a hospital district that relates to an employee or officer of the hospital district is excepted from the requirements of Section 552.021 if:**

    (1) **it is information that, if disclosed under the specific circumstances pertaining to the individual, could reasonably be expected to compromise the safety of the individual, such as information that describes or depicts the likeness of the individual, information stating the times that the individual arrives at or departs from work, a description of the individual's automobile, or the location where the individual works or parks; and**

    (2) **the employee or officer applies in writing to the hospital district's officer for public information to have the information withheld from public disclosure under this section and includes in the application:**

        (A) **a description of the information; and**

        (B) **the specific circumstances pertaining to the individual that demonstrate why disclosure of the information could reasonably be expected to compromise the safety of the individual.**

(b) **On receiving a written request for information described in an application submitted under Subsection (a)(2), the officer for public information shall:**

    (1) **request a decision from the attorney general in accordance with Section 552.301 regarding withholding the information; and**

    (2) **include a copy of the application submitted under Subsection (a)(2) with the request for the decision.**

(c) **Repealed by Acts 2011, 82nd Leg., ch. 609 (S.B. 470), § 1.**

In an informal letter ruling, the attorney general has determined Section 552.150 does not apply to former employees of a hospital district.[752]

---

[751] *Harris County Appraisal Dist. v. Integrity Title Co., LLC*, 483 S.W.3d 62, 71 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

[752] Open Records Letter No. 2014-15073A at 8 (2014).

## LLL. Section 552.151: Confidentiality of Information Regarding Select Agents

Section 552.151 of the Government Code provides as follows:

(a) **The following information that pertains to a biological agent or toxin identified or listed as a select agent under federal law, including under the Public Health Security and Bioterrorism Preparedness and Response Act of 2002 (Pub. L. No. 107-188) and regulations adopted under that Act, is excepted from the requirements of Section 552.021:**

   (1) **the specific location of a select agent within an approved facility;**

   (2) **personal identifying information of an individual whose name appears in documentation relating to the chain of custody of select agents, including a materials transfer agreement; and**

   (3) **the identity of an individual authorized to possess, use, or access a select agent.**

(b) **This section does not except from disclosure the identity of the select agents present at a facility.**

(c) **This section does not except from disclosure the identity of an individual faculty member or employee whose name appears or will appear on published research.**

(d) **This section does not except from disclosure otherwise public information relating to contracts of a governmental body.**

(e) **If a resident of another state is present in Texas and is authorized to possess, use, or access a select agent in conducting research or other work at a Texas facility, information relating to the identity of that individual is subject to disclosure under this chapter only to the extent the information would be subject to disclosure under the laws of the state of which the person is a resident.**

## MMM. Section 552.152: Confidentiality of Information Concerning Public Employee or Officer Personal Safety

Section 552.152 of the Government Code provides as follows:

**Information in the custody of a governmental body that relates to an employee or officer of the governmental body is excepted from the requirements of Section 552.021 if, under the specific circumstances pertaining to the employee or officer, disclosure of the information would subject the employee or officer to a substantial threat of physical harm.**

In an informal letter ruling, the attorney general considered a request to the Texas Department of Public Safety for information pertaining to travel expenses incurred by the Governor's security

detail.[753] The Texas Department of Public Safety claimed section 552.152 of the Government Code excepted from disclosure travel vouchers and supporting documentation submitted by agents of the Executive Protection Bureau for reimbursement of travel expenses. [754] Relying on representations the Texas Department of Public Safety made about protecting the Governor and his family from physical harm, the attorney general concluded release of the travel vouchers and supporting documentation would subject the Governor and the agents to a substantial threat of physical harm, and therefore, the information must be withheld from disclosure under section 552.152.[755]

## NNN. Section 552.153: Proprietary Records and Trade Secrets Involved in Certain Partnerships

Section 552.153 of the Government Code provides as follows:

(a) In this section, "affected jurisdiction," "comprehensive agreement," "contracting person," "interim agreement," "qualifying project," and "responsible governmental entity" have the meanings assigned those terms by Section 2267.001.

(b) Information in the custody of a responsible governmental entity that relates to a proposal for a qualifying project authorized under Chapter 2267 is excepted from the requirements of Section 552.021 if:

(1) the information consists of memoranda, staff evaluations, or other records prepared by the responsible governmental entity, its staff, outside advisors, or consultants exclusively for the evaluation and negotiation of proposals filed under Chapter 2267 for which:

(A) disclosure to the public before or after the execution of an interim or comprehensive agreement would adversely affect the financial interest or bargaining position of the responsible governmental entity; and

(B) the basis for the determination under Paragraph (A) is documented in writing by the responsible governmental entity; or

(2) the records are provided by a proposer to a responsible governmental entity or affected jurisdiction under Chapter 2267 and contain:

(A) trade secrets of the proposer;

(B) financial records of the proposer, including balance sheets and financial statements, that are not generally available to the public through regulatory disclosure or other means; or

---

[753] Open Records Letter No. 2014-02048 (2014).

[754] Open Records Letter No. 2014-02048 at 1 (2014).

[755] Open Records Letter No. 2014-02048 at 3-4 (2014).

    **(C)**    **work product related to a competitive bid or proposal submitted by the proposer that, if made public before the execution of an interim or comprehensive agreement, would provide a competing proposer an unjust advantage or adversely affect the financial interest or bargaining position of the responsible governmental entity or the proposer.**

**(c)**    **Except as specifically provided by Subsection (b), this section does not authorize the withholding of information concerning:**

    **(1)**    **the terms of any interim or comprehensive agreement, service contract, lease, partnership, or agreement of any kind entered into by the responsible governmental entity and the contracting person or the terms of any financing arrangement that involves the use of any public money; or**

    **(2)**    **the performance of any person developing or operating a qualifying project under Chapter 2267.**

**(d)**    **In this section, "proposer" has the meaning assigned by Section 2267.001.**

## OOO. Section 552.154: Name of Applicant for Executive Director, Chief Investment Officer, or Chief Audit Executive of Teacher Retirement System of Texas

Section 552.154 of the Government Code provides as follows:

**The name of an applicant for the position of executive director, chief investment officer, or chief audit executive of the Teacher Retirement System of Texas is excepted from the requirements of Section 552.021, except that the board of trustees of the Teacher Retirement System of Texas must give public notice of the names of three finalists being considered for one of those positions at least 21 days before the date of the meeting at which the final action or vote is to be taken on choosing a finalist for employment.**

## PPP. Section 552.155: Confidentiality of Certain Property Tax Appraisal Photographs

Section 552.155 of the Government Code provides as follows:

**(a)**    **Except as provided by Subsection (b) or (c), a photograph that is taken by the chief appraiser of an appraisal district or the chief appraiser's authorized representative for property tax appraisal purposes and that shows the interior of an improvement to property is confidential and excepted from the requirements of Section 552.021.**

**(b)**    **A governmental body shall disclose a photograph described by Subsection (a) to a requestor who had an ownership interest in the improvement to property shown in the photograph on the date the photograph was taken.**

(c)     A photograph described by Subsection (a) may be used as evidence in and provided to the parties to a protest under Chapter 41, Tax Code, or an appeal of a determination by the appraisal review board under Chapter 42, Tax Code, if it is relevant to the determination of a matter protested or appealed.  A photograph that is used as evidence:

(1)   remains confidential in the possession of the person to whom it is disclosed; and

(2)   may not be disclosed or used for any other purpose.

(c-1) Notwithstanding any other law, a photograph described by Subsection (a) may be used to ascertain the location of equipment used to produce or transmit oil and gas for purposes of taxation if that equipment is located on January 1 in the appraisal district that appraises property for the equipment for the preceding 365 consecutive days.

## QQQ.  Section 552.156: Confidentiality of Continuity of Operations Plan

Section 552.156 of the Government Code provides as follows:

(a)     Except as otherwise provided by this section, the following information is excepted from disclosure under this chapter:

(1)   a continuity of operations plan developed under Section 412.054, Labor Code; and

(2)   all records written, produced, collected, assembled, or maintained as part of the development or review of a continuity of operations plan developed under Section 412.054, Labor Code.

(b)     Forms, standards, and other instructional, informational, or planning materials adopted by the office to provide guidance or assistance to a state agency in developing a continuity of operations plan under Section 412.054, Labor Code, are public information subject to disclosure under this chapter.

(c)     A governmental body may disclose or make available information that is confidential under this section to another governmental body or a federal agency.

(d)     Disclosing information to another governmental body or a federal agency under this section does not waive or affect the confidentiality of that information.

## RRR.  Section 552.158: Confidentiality of Personal Information Regarding Applicant for Appointment by Governor

Section 552.158 of the Government Code provides as follows:

**The following information obtained by the governor or senate in connection with an applicant for an appointment by the governor is excepted from the requirements of Section 552.021:**

**(1) the applicant's home address;**

**(2) the applicant's home telephone number; and**

**(3) the applicant's social security number.**

## SSS. Section 552.159: Confidentiality of Certain Work Schedules

Section 552.159 of the Government Code provides as follows:

**A work schedule or a time sheet of a firefighter or volunteer firefighter or emergency medical services personnel as defined by Section 773.003, Health and Safety Code, is confidential and excepted from the requirements of Section 552.021.**

## TTT. Section 552.160: Confidentiality of Personal Information of Applicant for Disaster Recovery Funds

Section 552.160 of the Government Code provides as follows:

**(a)  In this section, "disaster" has the meaning assigned by Section 418.004.**

**(b)  Except as provided by Subsection (c), the following information maintained by a governmental body is confidential:**

**(1)  the name, social security number, house number, street name, and telephone number of an individual or household that applies for state or federal disaster recovery funds;**

**(2)  the name, tax identification number, address, and telephone number of a business entity or an owner of a business entity that applies for state or federal disaster recovery funds; and**

**(3)  any other information the disclosure of which would identify or tend to identify a person or household that applies for state or federal disaster recovery funds.**

**(c)  The street name and census block group of and the amount of disaster recovery funds awarded to a person or household are not confidential after the date on which disaster recovery funds are awarded to the person or household.**

"Disaster" means the occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural or man-made cause, including fire, flood, earthquake, wind, storm, wave action, oil spill or other water contamination, volcanic activity, epidemic, air contanmination, blight, drought, infestation, explosion, riot, hostile military or

paramilitary action, extreme heat, cybersecurity event, other public calamity requiring emergency action, or energy emergency.[756]

## UUU. Section 552.161: Certain Personal Information Obtained by Flood Control District

Section 552.161 of the Government Code provides as follows:

**The following information obtained by a flood control district located in a county with a population of 3.3 million or more in connection with operations related to a declared disaster or flooding is excepted from the requirements of Section 552.021:**

**(1)     a person's name**

**(2)     a home address;**

**(3)     a business address;**

**(4)     a home telephone number;**

**(5)     a mobile telephone number;**

**(6)     an electronic mail address;**

**(7)     social media account information; and**

**(8)     a social security number.**

## VVV. Section 552.162: Confidentiality of Certain Information Provided by Out-of-State Health Care Provider

Section 552.162 of the Government Code provides as follows:

**Information obtained by a governmental body that was provided by an out-of-state health care provider in connection with a quality management, peer review, or best practices program that the out-of-state health care provider pays for is confidential and excepted from the requirements of Section 552.021.**



## WWW. Section 552.163: Confidentiality of Certain Attorney General Settlement Negotiations

Section 552.163 of the Government Code provides as follows:

---

[756]   Gov't Code § 418.004

(a)    In this section, "attorney general settlement communication" means documentary materials or information collected, assembled, drafted, developed, used, received, or maintained by or on behalf of the attorney general with respect to an investigation or litigation conducted under Subchapter E, Chapter 17, Business & Commerce Code, and that reflects or is regarding negotiations made for the purpose of achieving a resolution of a matter without the need for continuing with litigation or trial.

(b)    An attorney general settlement communication is privileged and not subject to disclosure under this chapter from the date the attorney general's investigation begins, as indicated in the attorney general's case management records, until the earlier of:

(1)    the 90th day after the date settlement discussions are terminated; or

(2)    the earliest of the date:

(A)    the case is reported closed in the attorney general's case management records;

(B)    the final judgment, assurance of voluntary compliance, or other settlement agreement is entered by the court, and the period for filing a notice of appeal has passed;

(C)    the settlement documents are executed by all parties, if the documents are not filed in court;

(D)    the order of dismissal or nonsuit disposing of all parties is entered by the court; or

(E)    all appeals are finalized.

(c)    For the purpose of this section, a settlement communication does not include a document attached to or referenced in a delivered settlement proposal that is subject to disclosure under this chapter.

# PART THREE: TEXT OF THE TEXAS PUBLIC INFORMATION ACT

# GOVERNMENT CODE CHAPTER 552. PUBLIC INFORMATION

**SUBCHAPTER A. GENERAL PROVISIONS**

**§ 552.001. Policy; Construction**

(a) Under the fundamental philosophy of the American constitutional form of representative government that adheres to the principle that government is the servant and not the master of the people, it is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. The provisions of this chapter shall be liberally construed to implement this policy.

(b) This chapter shall be liberally construed in favor of granting a request for information.

**§ 552.002. Definition of Public Information; Media Containing Public Information**

(a) In this chapter, "public information" means information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business:

(1) by a governmental body;

(2) for a governmental body and the governmental body:

    (A) owns the information;

    (B) has a right of access to the information; or

    (C) spends or contributes public money for the purpose of writing, producing, collecting, assembling, or maintaining the information; or

(3) by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body.

(a-1) Information is in connection with the transaction of official business if the information is created by, transmitted to, received by, or maintained by an officer or employee of the governmental body in the officer's or employee's official capacity, or a person or entity performing official business or a governmental function on behalf of a governmental body, and pertains to official business of the governmental body.

(a-2) The definition of "public information" provided by Subsection (a) applies to and includes any electronic communication created, transmitted, received, or maintained on any device if the communication is in connection with the transaction of official business.

(b) The media on which public information is recorded include:

    (1)   paper;

    (2)   film;

    (3)   a magnetic, optical, solid state, or other device that can store an electronic signal;

    (4)   tape;

    (5)   Mylar; and

    (6)   any physical material on which information may be recorded, including linen, silk, and vellum.

(c) The general forms in which the media containing public information exist include a book, paper, letter, document, e-mail, Internet posting, text message, instant message, other electronic communication, printout, photograph, film, tape, microfiche, microfilm, photostat, sound recording, map, and drawing and a voice, data, or video representation held in computer memory.

(d) "Protected health information" as defined by Section 181.006, Health and Safety Code, is not public information and is not subject to disclosure under this chapter.

## § 552.003.  Definitions

In this chapter:

(1)   "Governmental body":

    (A)  means:

        (i)   a board, commission, department, committee, institution, agency, or office that is within or is created by the executive or legislative branch of state government and that is directed by one or more elected or appointed members;

        (ii)  a county commissioners court in the state;

        (iii) a municipal governing body in the state;

        (iv) a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality;

(v)   a school district board of trustees;

(vi)   a county board of school trustees;

(vii)  a county board of education;

(viii) the governing board of a special district;

(ix)   the governing body of a nonprofit corporation organized under Chapter 67, Water Code, that provides a water supply or wastewater service, or both, and is exempt from ad valorem taxation under Section 11.30, Tax Code;

(x)   a local workforce development board created under Section 2308.253;

(xi)   a nonprofit corporation that is eligible to receive funds under the federal community services block grant program and that is authorized by this state to serve a geographic area of the state;

(xii)  a confinement facility operated under a contract with any division of the Texas Department of Criminal Justice;

(xiii) a civil commitment housing facility owned, leased, or operated by a vendor under contract with the state as provided by Chapter 841, Health and Safety Code;

(xiv) an entity that receives public funds in the current or preceding state fiscal year to manage the daily operations or restoration of the Alamo, or an entity that oversees such an entity; and

(xv)  the part, section, or portion of an organization, corporation, commission, committee, institution, or agency that spends or that is supported in whole or in part by public funds; and

(B)   does not include:

(i) the judiciary; or

(ii) an economic development entity whose mission or purpose is to develop and promote the economic growth of a state agency or political subdivision with which the entity contracts if:

(a) the entity does not receive $1 million or more in public funds from a single state agency or political subdivision in the current or preceding state fiscal year; or

(b) the entity:

(1)  either:

(A) does not have the authority to make decisions or recommendations on behalf of a state agency or political subdivision regarding tax abatements or tax incentives; or

(B) does not require an officer of the state agency or political subdivision to hold office as a member of the board of directors of the entity;

(2) does not use staff or office space of the state agency or political subdivision for no or nominal consideration, unless the space is available to the public;

(3) to a reasonable degree, tracks the entity's receipt and expenditure of public funds separately from the entity's receipt and expenditure of private funds; and

(4) provides at least quarterly public reports to the state agency or political subdivision regarding work performed on behalf of the state agency or political subdivision.

(1-a) "Contracting information" means the following information maintained by a governmental body or sent between a governmental body and a vendor, contractor, potential vendor, or potential contractor:

(A) information in a voucher or contract relating to the receipt or expenditure of public funds by a governmental body;

(B) solicitation or bid documents relating to a contract with a governmental body;

(C) communications sent between a governmental body and a vendor, contractor, potential vendor, or potential contractor during the solicitation, evaluation, or negotiation of a contract;

(D) documents, including bid tabulations, showing the criteria by which a governmental body evaluates each vendor, contractor, potential vendor, or potential contractor responding to a solicitation and, if applicable, an explanation of why the vendor or contractor was selected; and

(E) communications and other information sent between a governmental body and a vendor or contractor related to the performance of a final contract with the governmental body or work performed on behalf of the governmental body.

(1-b) "Honorably retired" means, with respect to a position, an individual who:

(A) previously served but is not currently serving in the position;

(B) did not retire in lieu of any disciplinary action;

    (C)   was eligible to retire from the position or was ineligible to retire only as a result of an injury received in the course o the individual's employment in the position; and

    (D)   is eligible to receive a pension or annuity for service in the position or is ineligible to receive a pension or annuity only because the entity that employed the individual does not offer a pension or annuity to its employees.

(2)   "Manipulation" means the process of modifying, reordering, or decoding of information with human intervention.

(2-a) "Official business" means any matter over which a governmental body has any authority, administrative duties, or advisory duties.

(3)   "Processing" means the execution of a sequence of coded instructions by a computer producing a result.

(4)   "Programming" means the process of producing a sequence of coded instructions that can be executed by a computer.

(5)   "Public funds" means funds of the state or of a governmental subdivision of the state.

(6)   "Requestor" means a person who submits a request to a governmental body for inspection or copies of public information.

(7)   "Temporary custodian" means an officer or employee of a governmental body who, in the transaction of official business, creates or receives public information that the officer or employee has not provided to the officer for public information of the governmental body or the officer's agent.  The term includes a former officer or employee of a governmental body who created or received public information in the officer's or employee's official capacity that has not been provided to the officer for public information of the governmental body or the officer's agent.

## § 552.0031.  Business Days

(a) Except as provided by this section, in this chapter "business day" means a day other than:

    (1) a Saturday or Sunday;

    (2) a national holiday under Section 662.003(a); or

    (3) a state holiday under Section 662.003(b).

(b) The fact that an employee works from an alternative work site does not affect whether a day is considered a business day under this chapter.

(c) An optional holiday under Section 662.003(c) is not a business day of a governmental body if the officer for public information of the governmental body observes the optional holiday.

(d) A holiday established by the governing body of an institution of higher education under Section 662.011(a) is not a business day of the institution of higher education.

(e) The Friday before or Monday after a holiday described by Subsection (a)(2) or (3) is not a business day of a governmental body if the holiday occurs on a Saturday or Sunday and the governmental body observes the holiday on that Friday or Monday.

(f) Subject to the requirements of this subsection, a governmental body may designate a day on which the governmental body's administrative offices are closed or operating with minimum staffing as a nonbusiness day. The designation of a nonbusiness day for an independent school district must be made by the board of trustees. The designation of a nonbusiness day for a governmental body other than an independent school district must be made by the executive director or other chief administrative officer. A governmental body may designate not more than 10 nonbusiness days under this subsection each calendar year.

## § 552.0035. Access to Information of Judiciary

(a) Access to information collected, assembled, or maintained by or for the judiciary is governed by rules adopted by the Supreme Court of Texas or by other applicable laws and rules.

(b) This section does not address whether information is considered to be information collected, assembled, or maintained by or for the judiciary.

## § 552.0036. Certain Property Owners' Associations Subject to Law

A property owners' association is subject to this chapter in the same manner as a governmental body:

(1) if:

   (A) membership in the property owners' association is mandatory for owners or for a defined class of owners of private real property in a defined geographic area in a county with a population of 2.8 million or more or in a county adjacent to a county with a population of 2.8 million or more;

   (B) the property owners' association has the power to make mandatory special assessments for capital improvements or mandatory regular assessments; and

   (C) the amount of the mandatory special or regular assessments is or has ever been based in whole or in part on the value at which the state or a local governmental body assesses the property for purposes of ad valorem taxation under Section 20, Article VIII, Texas Constitution; or

(2) if the property owners' association:

   (A) provides maintenance, preservation, and architectural control of residential and commercial property within a defined geographic area in a county with a population of

2.8 million or more or in a county adjacent to a county with a population of 2.8 million or more; and

(B)  is a corporation that:

   (i)   is governed by a board of trustees who may employ a general manager to execute the association's bylaws and administer the business of the corporation;

   (ii)  does not require membership in the corporation by the owners of the property within the defined area; and

   (iii) was incorporated before January 1, 2006.

## § 552.0038.  Public Retirement Systems Subject to Law

(a)  In this section, "governing body of a public retirement system" and "public retirement system" have the meanings assigned those terms by Section 802.001.

(b)  Except as provided by Subsections (c) through (i), the governing body of a public retirement system is subject to this chapter in the same manner as a governmental body.

(c)  Records of individual members, annuitants, retirees, beneficiaries, alternate payees, program participants, or persons eligible for benefits from a retirement system under a retirement plan or program administered by the retirement system that are in the custody of the system or in the custody of an administering firm, a carrier, or another governmental agency, including the comptroller, acting in cooperation with or on behalf of the retirement system are confidential and not subject to public disclosure.  The retirement system, administering firm, carrier, or governmental agency is not required to accept or comply with a request for a record or information about a record or to seek an opinion from the attorney general because the records are exempt from the provisions of this chapter, except as otherwise provided by this section.

(d)  Records may be released to a member, annuitant, retiree, beneficiary, alternate payee, program participant, or person eligible for benefits from the retirement system or to an authorized attorney, family member, or representative acting on behalf of the member, annuitant, retiree, beneficiary, alternate payee, program participant, or person eligible for benefits.  The retirement system may release the records to:

   (1)   an administering firm, carrier, or agent or attorney acting on behalf of the retirement system;

   (2)   another governmental entity having a legitimate need for the information to perform the purposes of the retirement system; or

   (3)   a party in response to a subpoena issued under applicable law.

(e)  A record released or received by the retirement system under this section may be transmitted electronically, including through the use of an electronic signature or certification in a form

acceptable to the retirement system. An unintentional disclosure to, or unauthorized access by, a third party related to the transmission or receipt of information under this section is not a violation by the retirement system of any law, including a law or rule relating to the protection of confidential information.

(f) The records of an individual member, annuitant, retiree, beneficiary, alternate payee, program participant, or person eligible for benefits from the retirement system remain confidential after release to a person as authorized by this section. The records may become part of the public record of an administrative or judicial proceeding related to a contested case, and the member, annuitant, retiree, beneficiary, alternate payee, program participant, or person eligible for benefits waives the confidentiality of the records, including medical records, unless the records are closed to public access by a protective order issued under applicable law.

(g) The retirement system may require a person to provide the person's social security number as the system considers necessary to ensure the proper administration of all services, benefits, plans, and programs under the retirement system's administration, oversight, or participation or as otherwise required by state or federal law.

(h) The retirement system has sole discretion in determining whether a record is subject to this section. For purposes of this section, a record includes any identifying information about a person, living or deceased, who is or was a member, annuitant, retiree, beneficiary, alternate payee, program participant, or person eligible for benefits from the retirement system under any retirement plan or program administered by the retirement system.

(i) To the extent of a conflict between this section and any other law with respect to the confidential information held by a public retirement system or other entity described by Subsection (c) concerning an individual member, annuitant, retiree, beneficiary, alternate payee, program participant, or person eligible for benefits from the retirement system, the prevailing provision is the provision that provides the greater substantive and procedural protection for the privacy of information concerning that individual member, annuitant, retiree, beneficiary, alternate payee, program participant, or person eligible for benefits.

## § 552.004. Preservation of Information

(a) A governmental body or, for information of an elective county office, the elected county officer, may determine a time for which information that is not currently in use will be preserved, subject to Subsection (b) and to any applicable rule or law governing the destruction and other disposition of state and local government records or public information.

(b) A current or former officer or employee of a governmental body who maintains public information on a privately owned device shall:

(1) forward or transfer the public information to the governmental body or a governmental body server to be preserved as provided by Subsection (a); or

(2) preserve the public information in its original form in a backup or archive and on the privately owned device for the time described under Subsection (a).

(c) The provisions of Chapter 441 of this code and Title 6, Local Government Code, governing the preservation, destruction, or other disposition of records or public information apply to records and public information held by a temporary custodian.

### § 552.005.   Effect of Chapter on Scope of Civil Discovery

(a)   This chapter does not affect the scope of civil discovery under the Texas Rules of Civil Procedure.

(b)   Exceptions from disclosure under this chapter do not create new privileges from discovery.

### § 552.0055.  Subpoena Duces Tecum or Discovery Request

A subpoena duces tecum or a request for discovery that is issued in compliance with a statute or a rule of civil or criminal procedure is not considered to be a request for information under this chapter.

### § 552.006.   Effect of Chapter on Withholding Public Information

This chapter does not authorize the withholding of public information or limit the availability of public information to the public, except as expressly provided by this chapter.

### § 552.007.   Voluntary Disclosure of Certain Information When Disclosure Not Required

(a)   This chapter does not prohibit a governmental body or its officer for public information from voluntarily making part or all of its information available to the public, unless the disclosure is expressly prohibited by law or the information is confidential under law.

(b)   Public information made available under Subsection (a) must be made available to any person.

### § 552.008.   Information for Legislative Purposes

(a)   This chapter does not grant authority to withhold information from individual members, agencies, or committees of the legislature to use for legislative purposes.

(b)   A governmental body on request by an individual member, agency, or committee of the legislature shall provide public information, including confidential information, to the requesting member, agency, or committee for inspection or duplication in accordance with this chapter if the requesting member, agency, or committee states that the public information is requested under this chapter for legislative purposes.  A governmental body, by providing public information under this section that is confidential or otherwise excepted from required disclosure under law, does not waive or affect the confidentiality of the information for purposes of state or federal law or waive the right to assert exceptions to required disclosure of the information in the future.  The governmental body may require the requesting individual member of the legislature, the requesting legislative agency or committee, or the members or employees of the requesting entity who will view or handle information that is

received under this section and that is confidential under law to sign a confidentiality agreement that covers the information and requires that:

(1)　the information not be disclosed outside the requesting entity, or within the requesting entity for purposes other than the purpose for which it was received;

(2)　the information be labeled as confidential;

(3)　the information be kept securely; or

(4)　the number of copies made of the information or the notes taken from the information that implicate the confidential nature of the information be controlled, with all copies or notes that are not destroyed or returned to the governmental body remaining confidential and subject to the confidentiality agreement.

(b-1) A member, committee, or agency of the legislature required by a governmental body to sign a confidentiality agreement under Subsection (b) may seek a decision as provided by Subsection (b-2) about whether the information covered by the confidentiality agreement is confidential under law.  A confidentiality agreement signed under Subsection (b) is void to the extent that the agreement covers information that is finally determined under Subsection (b-2) to not be confidential under law.

(b-2) The member, committee, or agency of the legislature may seek a decision from the attorney general about the matter.  The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person.  The attorney general shall promptly render a decision requested under this subsection, determining whether the information covered by the confidentiality agreement is confidential under law, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection.  The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter.  The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.  A person may appeal a decision of the attorney general under this subsection to a Travis County district court if the person claims a proprietary interest in the information affected by the decision or a privacy interest in the information that a confidentiality law or judicial decision is designed to protect.

(c)　This section does not affect:

(1)　the right of an individual member, agency, or committee of the legislature to obtain information from a governmental body under other law, including under the rules of either house of the legislature;

(2)　the procedures under which the information is obtained under other law; or

(3)　the use that may be made of the information obtained under other law.

**§ 552.009.   Open Records Steering Committee:   Advice to Attorney General; Electronic Availability of Public Information**

(a)   The open records steering committee is composed of two representatives of the attorney general's office and:

    (1)   a representative of each of the following, appointed by its governing entity:

        (A)   the comptroller's office;

        (B)   the Department of Public Safety;

        (C)   the Department of Information Resources; and

        (D)   the Texas State Library and Archives Commission;

    (2)   five public members, appointed by the attorney general; and

    (3)   a representative of each of the following types of local governments, appointed by the attorney general:

        (A)   a municipality;

        (B)   a county; and

        (C)   a school district.

(b)   The representative of the attorney general designated by the attorney general is the presiding officer of the committee.  The committee shall meet as prescribed by committee procedures or at the call of the presiding officer.

(c)   The committee shall advise the attorney general regarding the office of the attorney general's performance of its duties under Sections 552.010, 552.205, 552.262, 552.269, and 552.274.

(d)   The members of the committee who represent state governmental bodies and the public members of the committee shall periodically study and determine the types of public information for which it would be useful to the public or cost-effective for the government if the type of information were made available by state governmental bodies by means of the Internet or another electronic format.  The committee shall report its findings and recommendations to the governor, the presiding officer of each house of the legislature, and the budget committee and state affairs committee of each house of the legislature.

(e)   Chapter 2110 does not apply to the size, composition, or duration of the committee.  Chapter 2110 applies to the reimbursement of a public member's expenses related to service on the committee.  Any reimbursement of the expenses of a member who represents a state or local governmental body may be paid only from funds available to the state or local governmental body the member represents.

### § 552.010.   State Governmental Bodies:  Fiscal and Other Information Relating to Making Information Accessible

(a)   Each state governmental body shall report to the attorney general the information the attorney general requires regarding:

  (1)   the number and nature of requests for information the state governmental body processes under this chapter in the period covered by the report; and

  (2)   the cost to the state governmental body in that period in terms of capital expenditures and personnel time of:

    (A)   responding to requests for information under this chapter; and

    (B)   making information available to the public by means of the Internet or another electronic format.

(b)   The attorney general shall design and phase in the reporting requirements in a way that:

  (1)   minimizes the reporting burden on state governmental bodies; and

  (2)   allows the legislature and state governmental bodies to estimate the extent to which it is cost-effective for state government, and if possible the extent to which it is cost-effective or useful for members of the public, to make information available to the public by means of the Internet or another electronic format as a supplement or alternative to publicizing the information only in other ways or making the information available only in response to requests made under this chapter.

(c)   The attorney general shall share the information reported under this section with the open records steering committee.

### § 552.011.   Uniformity

The attorney general shall maintain uniformity in the application, operation, and interpretation of this chapter.  To perform this duty, the attorney general may prepare, distribute, and publish any materials, including detailed and comprehensive written decisions and opinions, that relate to or are based on this chapter.

### § 552.012.   Open Records Training

(a)   This section applies to an elected or appointed public official who is:

  (1)   a member of a multimember governmental body;

  (2)   the governing officer of a governmental body that is headed by a single officer rather than by a multimember governing body; or

(3)     the officer for public information of a governmental body, without regard to whether the officer is elected or appointed to a specific term.

(b)     Each public official shall complete a course of training of not less than one and not more than two hours regarding the responsibilities of the governmental body with which the official serves and its officers and employees under this chapter not later than the 90th day after the date the public official:

(1)     takes the oath of office, if the person is required to take an oath of office to assume the person's duties as a public official; or

(2)     otherwise assumes the person's duties as a public official, if the person is not required to take an oath of office to assume the person's duties.

(b-1) The attorney general may require each public official of a governmental body to complete the course of training if the attorney general determines that the governmental body has failed to comply with a requirement of this chapter. The attorney general must notify each public official in writing of the attorney general's determination and the requirement to complete the training. A public official who receives notice from the attorney general under this subsection must complete the training not later than the 60th day after the date the official receives the notice.

(c)     A public official may designate a public information coordinator to satisfy the training requirements of this section for the public official if the public information coordinator is primarily responsible for administering the responsibilities of the public official or governmental body under this chapter. Designation of a public information coordinator under this subsection does not relieve a public official from the duty to comply with any other requirement of this chapter that applies to the public official. The designated public information coordinator shall complete the training course regarding the responsibilities of the governmental body with which the coordinator serves and of its officers and employees under this chapter not later than the 90th day after the date the coordinator assumes the person's duties as coordinator.

(d)     The attorney general shall ensure that the training is made available. The office of the attorney general may provide the training and may also approve any acceptable course of training offered by a governmental body or other entity. The attorney general shall ensure that at least one course of training approved or provided by the attorney general is available on videotape or a functionally similar and widely available medium at no cost. The training must include instruction in:

(1)     the general background of the legal requirements for open records and public information;

(2)     the applicability of this chapter to governmental bodies;

(3)     procedures and requirements regarding complying with a request for information under this chapter;

(4)    the role of the attorney general under this chapter; and

(5)    penalties and other consequences for failure to comply with this chapter.

(e)    The office of the attorney general or other entity providing the training shall provide a certificate of course completion to persons who complete the training required by this section. A governmental body shall maintain and make available for public inspection the record of its public officials' or, if applicable, the public information coordinator's completion of the training.

(f)    Completing the required training as a public official of the governmental body satisfies the requirements of this section with regard to the public official's service on a committee or subcommittee of the governmental body and the public official's ex officio service on any other governmental body.

(g)    The training required by this section may be used to satisfy any corresponding training requirements concerning this chapter or open records required by law for a public official or public information coordinator. The attorney general shall attempt to coordinate the training required by this section with training required by other law to the extent practicable.

(h)    A certificate of course completion is admissible as evidence in a criminal prosecution under this chapter. However, evidence that a defendant completed a course of training offered under this section is not prima facie evidence that the defendant knowingly violated this chapter.

## SUBCHAPTER B.  RIGHT OF ACCESS TO PUBLIC INFORMATION

### § 552.021.    Availability of Public Information

Public information is available to the public at a minimum during the normal business hours of the governmental body.

### § 552.0215.  Right of Access to Certain Information After 75 Years

(a)    Except as provided by Section 552.147, the confidentiality provisions of this chapter, or other law, information that is not confidential but is excepted from required disclosure under Subchapter C is public information and is available to the public on or after the 75th anniversary of the date the information was originally created or received by the governmental body.

(b)    This section does not limit the authority of a governmental body to establish retention periods for records under applicable law.

### § 552.022.    Categories of Public Information; Examples

(a)    Without limiting the amount or kind of information that is public information under this chapter, the following categories of information are public information and not excepted from required disclosure unless made confidential under this chapter or other law:

(1)    a completed report, audit, evaluation, or investigation made of, for, or by a governmental body, except as provided by Section 552.108;

(2)    the name, sex, ethnicity, salary, title, and dates of employment of each employee and officer of a governmental body;

(3)    information in an account, voucher, or contract relating to the receipt or expenditure of public or other funds by a governmental body;

(4)    the name of each official and the final record of voting on all proceedings in a governmental body;

(5)    all working papers, research material, and information used to estimate the need for or expenditure of public funds or taxes by a governmental body, on completion of the estimate;

(6)    the name, place of business, and the name of the municipality to which local sales and use taxes are credited, if any, for the named person, of a person reporting or paying sales and use taxes under Chapter 151, Tax Code;

(7)    a description of an agency's central and field organizations, including:

    (A)    the established places at which the public may obtain information, submit information or requests, or obtain decisions;

    (B)    the employees from whom the public may obtain information, submit information or requests, or obtain decisions;

    (C)    in the case of a uniformed service, the members from whom the public may obtain information, submit information or requests, or obtain decisions; and

    (D)    the methods by which the public may obtain information, submit information or requests, or obtain decisions;

(8)    a statement of the general course and method by which an agency's functions are channeled and determined, including the nature and requirements of all formal and informal policies and procedures;

(9)    a rule of procedure, a description of forms available or the places at which forms may be obtained, and instructions relating to the scope and content of all papers, reports, or examinations;

(10)   a substantive rule of general applicability adopted or issued by an agency as authorized by law, and a statement of general policy or interpretation of general applicability formulated and adopted by an agency;

(11)   each amendment, revision, or repeal of information described by Subdivisions (7)–(10);

(12) final opinions, including concurring and dissenting opinions, and orders issued in the adjudication of cases;

(13) a policy statement or interpretation that has been adopted or issued by an agency;

(14) administrative staff manuals and instructions to staff that affect a member of the public;

(15) information regarded as open to the public under an agency's policies;

(16) information that is in a bill for attorney's fees and that is not privileged under the attorney-client privilege;

(17) information that is also contained in a public court record; and

(18) a settlement agreement to which a governmental body is a party.

(b) A court in this state may not order a governmental body or an officer for public information to withhold from public inspection any category of public information described by Subsection (a) or to not produce the category of public information for inspection or duplication, unless the category of information is confidential under this chapter or other law.

## § 552.0221.  Employee or Trustee of Public Employee Pension System

(a) Information concerning the employment of an employee of a public employee pension system is public information under the terms of this chapter, including information concerning the income, salary, benefits, and bonuses received from the pension system by the employee in the person's capacity as an employee of the system, and is not removed from the application of this chapter, made confidential, or otherwise excepted from the requirements of Section 552.021 by any statute intended to protect the records of persons as members, beneficiaries, or retirees of a public employee pension system in their capacity as such.

(b) Information concerning the service of a trustee of a public employee pension system is public information under the terms of this chapter, including information concerning the income, salary, benefits, and bonuses received from the pension system by the trustee in the person's capacity as a trustee of the system, and is not removed from the application of this chapter, made confidential, or otherwise excepted from the requirements of Section 552.021 by any statute intended to protect the records of persons as members, beneficiaries, or retirees of a public employee pension system in their capacity as such.

(c) Information subject to Subsections (a) and (b) must be released only to the extent the information is not excepted from required disclosure under this subchapter or Subchapter C.

(d) For purposes of this section, "benefits" does not include pension benefits provided to an individual by a pension system under the statutory plan covering the individual as a member, beneficiary, or retiree of the pension system.

## § 552.0222.  Disclosure of Contracting Information

(a)  Contracting information is public and must be released unless excepted from disclosure under this chapter.

(b)  The exceptions to disclosure provided by Sections 552.110 and 552.1101 do not apply to the following types of contracting information:

(1)  a contract described by Section 2261.253(a), excluding any information that was properly redacted under Subsection (e) of that section;

(2)  a contract described by Section 322.020(c), excluding any information that was properly redacted under Subsection (d) of that section;

(3)  the following contract or offer terms or their functional equivalent:

(A)  any term describing the overall or total price the governmental body will or could potentially pay, including overall or total value, maximum liability, and final price;

(B)  a description of the items or services to be delivered with the total price for each if a total price is identified for the item or service in the contract;

(C)  the delivery and service deadlines;

(D)  the remedies for breach of contract;

(E)  the identity of all parties to the contract;

(F)  the identity of all subcontractors in a contract;

(G)  the affiliate overall or total pricing for a vendor, contractor potential vendor, or potential contractor;

(H)  the execution dates;

(I)  the effective dates; and

(J)  the contract duration terms, including any extension options; or

(4)  information indicating whether a vendor, contractor, potential vendor, or potential contractor performed its duties under a contract, including information regarding:

(A)  a breach of contract;

(B)  a contract variance or exception;

(C)  a remedial action;

   (D) an amendment to a contract;

   (E) any assessed or paid liquidated damages;

   (F) a key measures report;

   (G) a progress report; and

   (H) a final payment checklist.

(c) Notwithstanding Subsection (b), information described by Subdivisions (3)(A) and (B) of that subsection that relates to a retail electricity contract may not be disclosed until the delivery start date.

## § 552.0225.  Right of Access to Investment Information

(a) Under the fundamental philosophy of American government described by Section 552.001, it is the policy of this state that investments of government are investments of and for the people and the people are entitled to information regarding those investments. The provisions of this section shall be liberally construed to implement this policy.

(b) The following categories of information held by a governmental body relating to its investments are public information and not excepted from disclosure under this chapter:

  (1) the name of any fund or investment entity the governmental body is or has invested in;

  (2) the date that a fund or investment entity described by Subdivision (1) was established;

  (3) each date the governmental body invested in a fund or investment entity described by Subdivision (1);

  (4) the amount of money, expressed in dollars, the governmental body has committed to a fund or investment entity;

  (5) the amount of money, expressed in dollars, the governmental body is investing or has invested in any fund or investment entity;

  (6) the total amount of money, expressed in dollars, the governmental body received from any fund or investment entity in connection with an investment;

  (7) the internal rate of return or other standard used by a governmental body in connection with each fund or investment entity it is or has invested in and the date on which the return or other standard was calculated;

  (8) the remaining value of any fund or investment entity the governmental body is or has invested in;

(9)    the total amount of fees, including expenses, charges, and other compensation, assessed against the governmental body by, or paid by the governmental body to, any fund or investment entity or principal of any fund or investment entity in which the governmental body is or has invested;

(10)    the names of the principals responsible for managing any fund or investment entity in which the governmental body is or has invested;

(11)    each recusal filed by a member of the governing board in connection with a deliberation or action of the governmental body relating to an investment;

(12)    a description of all of the types of businesses a governmental body is or has invested in through a fund or investment entity;

(13)    the minutes and audio or video recordings of each open portion of a meeting of the governmental body at which an item described by this subsection was discussed;

(14)    the governmental body's percentage ownership interest in a fund or investment entity the governmental body is or has invested in;

(15)    any annual ethics disclosure report submitted to the governmental body by a fund or investment entity the governmental body is or has invested in; and

(16)    the cash-on-cash return realized by the governmental body for a fund or investment entity the governmental body is or has invested in.

(c)    This section does not apply to the Texas Mutual Insurance Company or a successor to the company.

(d)    This section does not apply to a private investment fund's investment in restricted securities, as defined in Section 552.143.

## § 552.023.   Special Right of Access to Confidential Information

(a)    A person or a person's authorized representative has a special right of access, beyond the right of the general public, to information held by a governmental body that relates to the person and that is protected from public disclosure by laws intended to protect that person's privacy interests.

(b)    A governmental body may not deny access to information to the person, or the person's representative, to whom the information relates on the grounds that the information is considered confidential by privacy principles under this chapter but may assert as grounds for denial of access other provisions of this chapter or other law that are not intended to protect the person's privacy interests.

(c)    A release of information under Subsections (a) and (b) is not an offense under Section 552.352.

(d) A person who receives information under this section may disclose the information to others only to the extent consistent with the authorized purposes for which consent to release the information was obtained.

(e) Access to information under this section shall be provided in the manner prescribed by Sections 552.229 and 552.307.

### § 552.024. Electing to Disclose Address and Telephone Number

(a) Except as provided by Subsection (a-1), each employee or official of a governmental body and each former employee or official of a governmental body shall choose whether to allow public access to the information in the custody of the governmental body that relates to the person's home address, home telephone number, emergency contact information, or social security number, or that reveals whether the person has family members.

(a-1) A school district may not require an employee or former employee of the district to choose whether to allow public access to the employee's or former employee's social security number.

(b) Each employee and official and each former employee and official shall state that person's choice under Subsection (a) to the main personnel officer of the governmental body in a signed writing not later than the 14th day after the date on which:

(1) the employee begins employment with the governmental body;

(2) the official is elected or appointed; or

(3) the former employee or official ends service with the governmental body.

(c) If the employee or official or former employee or official chooses not to allow public access to the information:

(1) the information is protected under Subchapter C; and

(2) the governmental body may redact the information from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.

(c-1) If, under Subsection (c)(2), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision from the attorney general about the matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and

provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.

(c-2) A governmental body that redacts or withholds information under Subsection (c)(2) shall provide the following information to the requestor on a form prescribed by the attorney general:

   (1)   a description of the redacted or withheld information;

   (2)   a citation to this section; and

   (3)   instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure.

(d)   If an employee or official or a former employee or official fails to state the person's choice within the period established by this section, the information is subject to public access.

(e)   An employee or official or former employee or official of a governmental body who wishes to close or open public access to the information may request in writing that the main personnel officer of the governmental body close or open access.

(f)   This section does not apply to a person to whom Section 552.1175 applies.

## § 552.025.   Tax Rulings and Opinions

(a)   A governmental body with taxing authority that issues a written determination letter, technical advice memorandum, or ruling that concerns a tax matter shall index the letter, memorandum, or ruling by subject matter.

(b)   On request, the governmental body shall make the index prepared under Subsection (a) and the document itself available to the public, subject to the provisions of this chapter.

(c)   Subchapter C does not authorize withholding from the public or limiting the availability to the public of a written determination letter, technical advice memorandum, or ruling that concerns a tax matter and that is issued by a governmental body with taxing authority.

## § 552.026.   Education Records

This chapter does not require the release of information contained in education records of an educational agency or institution, except in conformity with the Family Educational Rights and Privacy Act of 1974, Sec. 513, Pub. L. No. 93-380, 20 U.S.C. Sec. 1232g.

### § 552.027.  Exception:  Information Available Commercially; Resource Material

(a)    A governmental body is not required under this chapter to allow the inspection of or to provide a copy of information in a commercial book or publication purchased or acquired by the governmental body for research purposes if the book or publication is commercially available to the public.

(b)    Although information in a book or publication may be made available to the public as a resource material, such as a library book, a governmental body is not required to make a copy of the information in response to a request for public information.

(c)    A governmental body shall allow the inspection of information in a book or publication that is made part of, incorporated into, or referred to in a rule or policy of a governmental body.

### § 552.028.  Request for Information from Incarcerated Individual

(a)    A governmental body is not required to accept or comply with a request for information from:

   (1)    an individual who is imprisoned or confined in a correctional facility; or

   (2)    an agent of that individual, other than that individual's attorney when the attorney is requesting information that is subject to disclosure under this chapter.

(b)    This section does not prohibit a governmental body from disclosing to an individual described by Subsection (a)(1), or that individual's agent, information held by the governmental body pertaining to that individual.

(c)    In this section, "correctional facility" means:

   (1)    a secure correctional facility, as defined by Section 1.07, Penal Code;

   (2)    a secure correctional facility and a secure detention facility, as defined by Section 51.02, Family Code; and

   (3)    a place designated by the law of this state, another state, or the federal government for the confinement of a person arrested for, charged with, or convicted of a criminal offense.

### § 552.029.  Right of Access to Certain Information Relating to Inmate of Department of Criminal Justice

Notwithstanding Section 508.313 or 552.134, the following information about an inmate who is confined in a facility operated by or under a contract with the Texas Department of Criminal Justice is subject to required disclosure under Section 552.021:

   (1)    the inmate's name, identification number, age, birthplace, department photograph, physical description, or general state of health or the nature of an injury to or critical illness suffered by the inmate;

(2)     the inmate's assigned unit or the date on which the unit received the inmate, unless disclosure of the information would violate federal law relating to the confidentiality of substance abuse treatment;

(3)     the offense for which the inmate was convicted or the judgment and sentence for that offense;

(4)     the county and court in which the inmate was convicted;

(5)     the inmate's earliest or latest possible release dates;

(6)     the inmate's parole date or earliest possible parole date;

(7)     any prior confinement of the inmate by the Texas Department of Criminal Justice or its predecessor; or

(8)     basic information regarding the death of an inmate in custody, an incident involving the use of force, or an alleged crime involving the inmate.

## SUBCHAPTER C.  INFORMATION EXCEPTED FROM REQUIRED DISCLOSURE

### § 552.101.    Exception:  Confidential Information

Information is excepted from the requirements of Section 552.021 if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision.

### § 552.102.    Exception: Confidentiality of Certain Personnel Information

(a)    Information is excepted from the requirements of Section 552.021 if it is information in a personnel file, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, except that all information in the personnel file of an employee of a governmental body is to be made available to that employee or the employee's designated representative as public information is made available under this chapter.  The exception to public disclosure created by this subsection is in addition to any exception created by Section 552.024.  Public access to personnel information covered by Section 552.024 is denied to the extent provided by that section.

(b)    Information is excepted from the requirements of Section 552.021 if it is a transcript from an institution of higher education maintained in the personnel file of a professional public school employee, except that this section does not exempt from disclosure the degree obtained or the curriculum on a transcript in the personnel file of the employee.

### § 552.103.    Exception:  Litigation or Settlement Negotiations Involving the State or a Political Subdivision

(a)    Information is excepted from the requirements of Section 552.021 if it is information relating to litigation of a civil or criminal nature to which the state or a political subdivision is or may

be a party or to which an officer or employee of the state or a political subdivision, as a consequence of the person's office or employment, is or may be a party.

(b)     For purposes of this section, the state or a political subdivision is considered to be a party to litigation of a criminal nature until the applicable statute of limitations has expired or until the defendant has exhausted all appellate and postconviction remedies in state and federal court.

(c)     Information relating to litigation involving a governmental body or an officer or employee of a governmental body is excepted from disclosure under Subsection (a) only if the litigation is pending or reasonably anticipated on the date that the requestor applies to the officer for public information for access to or duplication of the information.

(d)     The exception to disclosure provided by this section does not apply to information requested under this chapter if:

    (1)     the information relates to a general, primary, or special election, as those terms are defined by Section 1.005, Election Code;
    (2)     the information is in the possession of a governmental body that administers elections described by Subdivision (1); and
    (3)     the governmental body described by Subdivision (2) is not a governmental body described by Section 552.003(1)(A)(i).

## § 552.104.    Exception:  Information Related to Competition or Bidding

(a)     Information is excepted from the requirements of Section 552.021 if a governmental body demonstrates that release of the information would harm its interests by providing an advantage to a competitor or bidder in a particular ongoing competitive situation or in a particular competitive situation where the governmental body establishes the situation at issue is set to reoccur or there is a specific and demonstrable intent to enter into the competitive situation again in the future.

(b)     Except as provided by Subsection (c), the requirement of Section 552.022 that a category of information listed under Section 552.022(a) is public information and not excepted from required disclosure under this chapter unless expressly confidential under law does not apply to information that is excepted from required disclosure under this section.

(c)     Subsection (b) does not apply to information described by Section 552.022(a) relating to the receipt or expenditure of public or other funds by a governmental body for a parade, concert, or other entertainment event paid for in whole or part with public funds. A person, including a governmental body, may not include a provision in a contract related to an event described by this subsection that prohibits or would otherwise prevent the disclosure of information described by this subsection. A contract provision that violates this subsection is void.

## § 552.105.    Exception:  Information Related to Location or Price of Property

Information is excepted from the requirements of Section 552.021 if it is information relating to:

(1) the location of real or personal property for a public purpose prior to public announcement of the project; or

(2) appraisals or purchase price of real or personal property for a public purpose prior to the formal award of contracts for the property.

## § 552.106.   Exception:  Certain Legislative Documents

(a) A draft or working paper involved in the preparation of proposed legislation is excepted from the requirements of Section 552.021.

(b) An internal bill analysis or working paper prepared by the governor's office for the purpose of evaluating proposed legislation is excepted from the requirements of Section 552.021.

## § 552.107.   Exception:  Certain Legal Matters

Information is excepted from the requirements of Section 552.021 if:

(1) it is information that the attorney general or an attorney of a political subdivision is prohibited from disclosing because of a duty to the client under the Texas Rules of Evidence or the Texas Disciplinary Rules of Professional Conduct; or

(2) a court by order has prohibited disclosure of the information.

## § 552.108.   Exception:   Certain Law Enforcement, Corrections, and Prosecutorial Information

(a) Information held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime is excepted from the requirements of Section 552.021 if:

(1) release of the information would interfere with the detection, investigation, or prosecution of crime;

(2) it is information that deals with the detection, investigation, or prosecution of crime only in relation to an investigation that did not result in conviction or deferred adjudication;

(3) it is information relating to a threat against a peace officer or detention officer collected or disseminated under Section 411.048; or

(4) it is information that:

(A) is prepared by an attorney representing the state in anticipation of or in the course of preparing for criminal litigation; or

(B) reflects the mental impressions or legal reasoning of an attorney representing the state.

(b)   An internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution is excepted from the requirements of Section 552.021 if:

(1)   release of the internal record or notation would interfere with law enforcement or prosecution;

(2)   the internal record or notation relates to law enforcement only in relation to an investigation that did not result in conviction or deferred adjudication; or

(3)   the internal record or notation:

(A)   is prepared by an attorney representing the state in anticipation of or in the course of preparing for criminal litigation; or

(B)   reflects the mental impressions or legal reasoning of an attorney representing the state.

(c)   This section does not except from the requirements of Section 552.021 information that is basic information about an arrested person, an arrest, or a crime. A governmental body shall promptly release basic information responsive to a request made under this chapter unless the governmental body seeks to withhold the information as provided by another provision of this chapter, and regardless of whether the governmental body requests an attorney general decision under Subchapter G regarding other information subject to the request.

(d)   Notwithstanding other law, a prosecutor may permit a person to view the following evidence of a crime that resulted in the death of a person and that occurred in the prosecutor's jurisdiction:

(1)   a medical examiner's report, if the person viewing the report is a family member of the person who is the subject of the report and the person who is the subject of the report was a victim of the crime; and

(2)   video evidence of the crime, if the person viewing the video is a victim of the crime or a family member of a victim of the crime.

(d)   The exception to disclosure provided by Subsection (a)(2) does not apply to information, records, or notations if:

(1)   a person who is described by or depicted in the information, record, or notation, other than a peace officer, is deceased or incapacitated; or

(2)   each person who is described by or depicted in the information, record, or notation, other than a person who is deceased or incapacitated, consents to the release of the information, record, or notation.

(e)     A person permitted to view a medical examiner's report or video evidence under Subsection (d) may not duplicate, record, capture, or otherwise memorialize the information. A prosecutor may require a person to sign a confidentiality agreement before permitting the person to view the information.

(f)     A permitted viewing of a medical examiner's report or video evidence under Subsection (d) is not a voluntary disclosure of information for purposes of Section 552.007(b). A governmental body, by providing information under Subsection (d) that is confidential or otherwise excepted from required disclosure under law, does not waive or affect the confidentiality of the information for purposes of state or federal law or waive the right to assert exceptions to required disclosure of the information in the future.

(g)     Subsection (d) does not affect:

   (1)     the right of a person to obtain a medical examiner's report or video evidence of a crime from a governmental body under other law;

   (2)     the procedures under which the information is obtained under other law; or

   (3)     the use that may be made of the information obtained under other law.

(h)    In this section:

   (1)     "Family member" means a person related to a victim of a crime within the first degree of consanguinity or affinity.

   (2)     "Medical examiner's report" means a report and the contents of such a report created by a medical examiner under Article 49.25, Code of Criminal Procedure, including an autopsy report and toxicology report. The term does not include a photograph or medical image contained in a report.

   (3)     "Victim" means an individual who suffered personal injury or death as a result of criminal conduct.

## § 552.1081.  Exception:  Confidentiality of Certain Information Regarding Execution of Convict

Information is excepted from the requirements of Section 552.021 if it contains identifying information under Article 43.14, Code of Criminal Procedure, including that of:

   (1)     any person who participates in an execution procedure, including a person who uses, supplies, or administers a substance during the execution; and

   (2)     any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution.

### § 552.1085.  Confidentiality of Sensitive Crime Scene Image

(a)    In this section:

(1)    "Deceased person's next of kin" means:

(A)   the surviving spouse of the deceased person;

(B)   if there is no surviving spouse of the deceased, an adult child of the deceased person; or

(C)   if there is no surviving spouse or adult child of the deceased, a parent of the deceased person.

(2)    "Defendant" means a person being prosecuted for the death of the deceased person or a person convicted of an offense in relation to that death and appealing that conviction.

(3)    "Expressive work" means:

(A)   a fictional or nonfictional entertainment, dramatic, literary, or musical work that is a play, book, article, musical composition, audiovisual work, radio or television program, work of art, or work of political, educational, or newsworthy value;

(B)   a work the primary function of which is the delivery of news, information, current events, or other matters of public interest or concern; or

(C)   an advertisement or commercial announcement of a work described by Paragraph (A) or (B).

(4)    "Local governmental entity" means a county, municipality, school district, charter school, junior college district, or other political subdivision of this state.

(5)    "Public or private institution of higher education" means:

(A)   an institution of higher education, as defined by Section 61.003, Education Code; or

(B)   a private or independent institution of higher education, as defined by Section 61.003, Education Code.

(6)    "Sensitive crime scene image" means a photograph or video recording taken at a crime scene, contained in or part of a closed criminal case, that depicts a deceased person in a state of dismemberment, decapitation, or similar mutilation or that depicts the deceased person's genitalia.

(7)    "State agency" means a department, commission, board, office, or other agency that is a part of state government and that is created by the constitution or a statute of this state.

The term includes an institution of higher education as defined by Section 61.003, Education Code.

(b)  For purposes of this section, an Internet website, the primary function of which is not the delivery of news, information, current events, or other matters of public interest or concern, is not an expressive work.

(c)  A sensitive crime scene image in the custody of a governmental body is confidential and excepted from the requirements of Section 552.021 and a governmental body may not permit a person to view or copy the image except as provided by this section. This section applies to any sensitive crime scene image regardless of the date that the image was taken or recorded.

(d)  Notwithstanding Subsection (c) and subject to Subsection (e), the following persons may view or copy information that constitutes a sensitive crime scene image from a governmental body:

(1)  the deceased person's next of kin;

(2)  a person authorized in writing by the deceased person's next of kin;

(3)  a defendant or the defendant's attorney;

(4)  a person who establishes to the governmental body an interest in a sensitive crime scene image that is based on, connected with, or in support of the creation, in any medium, of an expressive work;

(5)  a person performing bona fide research sponsored by a public or private institution of higher education with approval of a supervisor of the research or a supervising faculty member;

(6)  a state agency;

(7)  an agency of the federal government; or

(8)  a local governmental entity.

(e)  This section does not prohibit a governmental body from asserting an exception to disclosure of a sensitive crime scene image to a person identified in Subsection (d) on the grounds that the image is excepted from the requirements of Section 552.021 under another provision of this chapter or another law.

(f)  Not later than the 10th business day after the date a governmental body receives a request for a sensitive crime scene image from a person described by Subsection (d)(4) or (5), the governmental body shall notify the deceased person's next of kin of the request in writing. The notice must be sent to the next of kin's last known address.

(g)  A governmental body that receives a request for information that constitutes a sensitive crime scene image shall allow a person described in Subsection (d) to view or copy the image not

later than the 10th business day after the date the governmental body receives the request unless the governmental body files a request for an attorney general decision under Subchapter G regarding whether an exception to public disclosure applies to the information.

### § 552.109. Exception: Confidentiality of Certain Private Communications of an Elected Office Holder

Private correspondence or communications of an elected office holder relating to matters the disclosure of which would constitute an invasion of privacy are excepted from the requirements of Section 552.021.

### § 552.110. Exception: Confidentiality of Trade Secrets; Confidentiality of Certain Commercial or Financial Information

(a)  In this section, "trade secret" means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or however stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

(1) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

(2) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

(b)  Except as provided by Section 552.0222, information is excepted from the requirements of Section 552.021 if it is demonstrated based on specific factual evidence that the information is a trade secret.

(c)  Except as provided by Section 552.0222, commercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained is excepted from the requirements of Section 552.021.

### § 552.1101. Exception: Confidentiality of Proprietary Information

(a)  Except as provided by Section 552.0222, information submitted to a governmental body by a vendor, contractor, potential vendor, or potential contractor in response to a request for a bid, proposal, or qualification is excepted from the requirements of Section 552.021 if the vendor, contractor, potential vendor, or potential contractor that the information relates to demonstrates based on specific factual evidence that disclosure of the information would:

(1)   reveal an individual approach to:

(A)  work;

      (B)   organizational structure;

      (C)   staffing;

      (D)   internal operations;

      (E)   processes; or

      (F)   discounts, pricing methodology, pricing per kilowatt hour, cost data, or other pricing information that will be used in future solicitation or bid documents; and

   (2)   give advantage to a competitor.

(b)   The exception to disclosure provided by Subsection (a) does not apply to:

   (1)   information in a voucher or contract relating to the receipt or expenditure of public funds by a governmental body; or

   (2)   communications and other information sent between a governmental body and a vendor or contractor related to the performance of a final contract with the governmental body or work performed on behalf of the governmental body.

(c)   The exception to disclosure provided by Subsection (a) may be asserted only by a vendor, contractor, potential vendor, or potential contractor in the manner described by Section 552.305(b) for the purpose of protecting the interests of the vendor, contractor, potential vendor, or potential contractor. A governmental body shall decline to release information as provided by Section 552.305(a) to the extent necessary to allow a vendor, contractor, potential vendor, or potential contractor to assert the exception to disclosure provided by Subsection (a).

## § 552.111.   Exception:  Agency Memoranda

An interagency or intraagency memorandum or letter that would not be available by law to a party in litigation with the agency is excepted from the requirements of Section 552.021.

## § 552.112.   Exception: Certain Information Relating to Regulation of Financial Institutions or Securities

(a)   Information is excepted from the requirements of Section 552.021 if it is information contained in or relating to examination, operating, or condition reports prepared by or for an agency responsible for the regulation or supervision of financial institutions or securities, or both.

(b)   In this section, "securities" has the meaning assigned by The Securities Act (Title 12, Government Code).

(c)     Information is excepted from the requirements of Section 552.021 if it is information submitted by an individual or other entity to the Texas Legislative Council, or to any state agency or department overseen by the Finance Commission of Texas and the information has been or will be sent to the Texas Legislative Council, for the purpose of performing a statistical or demographic analysis of information subject to Section 323.020. However, this subsection does not except from the requirements of Section 552.021 information that does not identify or tend to identify an individual or other entity and that is subject to required public disclosure under Section 323.020(e).

## § 552.113.   Exception:  Confidentiality of Geological or Geophysical Information

(a)     Information is excepted from the requirements of Section 552.021 if it is:

(1)     an electric log confidential under Subchapter M, Chapter 91, Natural Resources Code;

(2)     geological or geophysical information or data, including maps concerning wells, except information filed in connection with an application or proceeding before an agency; or

(3)     confidential under Subsections (c) through (f).

(b)     Information that is shown to or examined by an employee of the General Land Office, but not retained in the land office, is not considered to be filed with the land office.

(c)     In this section:

(1)     "Confidential material" includes all well logs, geological, geophysical, geochemical, and other similar data, including maps and other interpretations of the material filed in the General Land Office:

(A)     in connection with any administrative application or proceeding before the land commissioner, the school land board, any board for lease, or the commissioner's or board's staff; or

(B)     in compliance with the requirements of any law, rule, lease, or agreement.

(2)     "Electric logs" has the same meaning as it has in Chapter 91, Natural Resources Code.

(3)     "Administrative applications" and "administrative proceedings" include applications for pooling or unitization, review of shut-in royalty payments, review of leases or other agreements to determine their validity, review of any plan of operations, review of the obligation to drill offset wells, or an application to pay compensatory royalty.

(d)     Confidential material, except electric logs, filed in the General Land Office on or after September 1, 1985, is public information and is available to the public under Section 552.021 on and after the later of:

(1)     five years from the filing date of the confidential material; or

(2)   one year from the expiration, termination, or forfeiture of the lease in connection with which the confidential material was filed.

(e)   Electric logs filed in the General Land Office on or after September 1, 1985, are either public information or confidential material to the same extent and for the same periods provided for the same logs by Chapter 91, Natural Resources Code.  A person may request that an electric log that has been filed in the General Land Office be made confidential by filing with the land office a copy of the written request for confidentiality made to the Railroad Commission of Texas for the same log.

(f)   The following are public information:

(1)   electric logs filed in the General Land Office before September 1, 1985; and

(2)   confidential material, except electric logs, filed in the General Land Office before September 1, 1985, provided, that Subsection (d) governs the disclosure of that confidential material filed in connection with a lease that is a valid and subsisting lease on September 1, 1995.

(g)   Confidential material may be disclosed at any time if the person filing the material, or the person's successor in interest in the lease in connection with which the confidential material was filed, consents in writing to its release.  A party consenting to the disclosure of confidential material may restrict the manner of disclosure and the person or persons to whom the disclosure may be made.

(h)   Notwithstanding the confidential nature of the material described in this section, the material may be used by the General Land Office in the enforcement, by administrative proceeding or litigation, of the laws governing the sale and lease of public lands and minerals, the regulations of the land office, the school land board, or of any board for lease, or the terms of any lease, pooling or unitization agreement, or any other agreement or grant.

(i)   An administrative hearings officer may order that confidential material introduced in an administrative proceeding remain confidential until the proceeding is finally concluded, or for the period provided in Subsection (d), whichever is later.

(j)   Confidential material examined by an administrative hearings officer during the course of an administrative proceeding for the purpose of determining its admissibility as evidence shall not be considered to have been filed in the General Land Office to the extent that the confidential material is not introduced into evidence at the proceeding.

(k)   This section does not prevent a person from asserting that any confidential material is exempt from disclosure as a trade secret or commercial information under Section 552.110 or under any other basis permitted by law.

## § 552.114.   Exception:  Confidentiality of Student Records

(a)   In this section, "student record" means:

(1)   information that constitutes education records as that term is defined by the Family Educational Rights and Privacy Act of 1974 (20 U.S.C. Section 1232g(a)(4)); or

(2)   information in a record of an applicant for admission to an educational institution, including a transfer applicant.

(b)   Information is confidential and excepted from the requirements of Section 552.021 if it is information in a student record at an educational institution funded wholly or partly by state revenue.  This subsection does not prohibit the disclosure or provision of information included in an education record if the disclosure or provision is authorized by 20 U.S.C. Section 1232g or other federal law.

(c)   A record covered by Subsection (b) shall be made available on the request of:

(1)   educational institution personnel;

(2)   the student involved or the student's parent, legal guardian, or spouse; or

(3)   a person conducting a child abuse investigation required by Subchapter D, Chapter 261, Family Code.

(d)   Except as provided by Subsection (e), an educational institution may redact information covered under Subsection (b) from information disclosed under Section 552.021 without requesting a decision from the attorney general.

(e)   If an applicant for admission to an educational institution described by Subsection (b) or a parent or legal guardian of a minor applicant to an educational institution described by Subsection (b) requests information in the record of the applicant, the educational institution shall disclose any information that:

(1)   is related to the applicant's application for admission; and

(2)   was provided to the educational institution by the applicant.

## § 552.115.   Exception:  Confidentiality of Birth and Death Records

(a)   A birth or death record maintained by the vital statistics unit of the Department of State Health Services or a local registration official is excepted from the requirements of Section 552.021, except that:

(1)   a birth record is public information and available to the public on and after the 75th anniversary of the date of birth as shown on the record filed with the vital statistics unit or local registration official;

(2)   a death record is public information and available to the public on and after the 25th anniversary of the date of death as shown on the record filed with the vital statistics unit or local registration official, except that if the decedent is unidentified, the death

record is public information and available to the public on and after the first anniversary of the date of death;

(3)  a general birth index or a general death index established or maintained by the vital statistics unit or a local registration official is public information and available to the public to the extent the index relates to a birth record or death record that is public information and available to the public under Subdivision (1) or (2);

(4)  a summary birth index or a summary death index prepared or maintained by the vital statistics unit or a local registration official is public information and available to the public; and

(5)  a birth or death record is available to the chief executive officer of a home-rule municipality or the officer's designee if:

   (A)  the record is used only to identify a property owner or other person to whom the municipality is required to give notice when enforcing a state statute or an ordinance;

   (B)  the municipality has exercised due diligence in the manner described by Section 54.035(e), Local Government Code, to identify the person; and

   (C)  the officer or designee signs a confidentiality agreement that requires that:

      (i)  the information not be disclosed outside the office of the officer or designee, or within the office for a purpose other than the purpose described by Paragraph (A);

      (ii)  the information be labeled as confidential;

      (iii)  the information be kept securely; and

      (iv)  the number of copies made of the information or the notes taken from the information that implicate the confidential nature of the information be controlled, with all copies or notes that are not destroyed or returned remaining confidential and subject to the confidentiality agreement.

(b)  Notwithstanding Subsection (a), a general birth index or a summary birth index is not public information and is not available to the public if:

   (1)  the fact of an adoption or paternity determination can be revealed by the index; or

   (2)  the index contains specific identifying information relating to the parents of a child who is the subject of an adoption placement.

(c)  Subsection (a)(1) does not apply to the microfilming agreement entered into by the Genealogical Society of Utah, a nonprofit corporation organized under the laws of the State

of Utah, and the Archives and Information Services Division of the Texas State Library and Archives Commission.

(d)   For the purposes of fulfilling the terms of the agreement in Subsection (c), the Genealogical Society of Utah shall have access to birth records on and after the 50th anniversary of the date of birth as shown on the record filed with the bureau of vital statistics or local registration official, but such birth records shall not be made available to the public until the 75th anniversary of the date of birth as shown on the record.

## § 552.116.   Exception:  Audit Working Papers

(a) An audit working paper of an audit of the state auditor or the auditor of a state agency, an institution of higher education as defined by Section 61.003, Education Code, a county, a municipality, a school district, a hospital district, or a joint board operating under Section 22.074, Transportation Code, including any audit relating to the criminal history background check of a public school employee, is excepted from the requirements of Section 552.021.  If information in an audit working paper is also maintained in another record, that other record is not excepted from the requirements of Section 552.021 by this section.

(b) In this section:

   (1)   "Audit" means an audit authorized or required by a statute of this state or the United States, the charter or an ordinance of a municipality, an order of the commissioners court of a county, the bylaws adopted by or other action of the governing board of a hospital district, a resolution or other action of a board of trustees of a school district, including an audit by the district relating to the criminal history background check of a public school employee, or a resolution or other action of a joint board described by Subsection (a) and includes an investigation.

   (2)   "Audit working paper" includes all information, documentary or otherwise, prepared or maintained in conducting an audit or preparing an audit report, including:

      (A)   intra-agency and interagency communications; and

      (B)   drafts of the audit report or portions of those drafts.

## § 552.117.   Exception:  Confidentiality of Certain Addresses, Telephone Numbers, Social Security Numbers, and Personal Family Information

(a) Information is excepted from the requirements of Section 552.021 if it is information that relates to the home address, home telephone number, emergency contact information, or social security number of the following person or that reveals whether the person has family members:

   (1)   a current or former official or employee of a governmental body, except as otherwise provided by Section 552.024;

   (2)   a current or honorably retired peace officer as defined by Article 2.12, Code of Criminal Procedure, or a current or honorably retired security officer commissioned under Section

51.212, Education Code, regardless of whether the officer complies with Section 552.024 or 552.1175, as applicable;

(3)   a current or former employee of the Texas Department of Criminal Justice or of the predecessor in function of the department or any division of the department, regardless of whether the current or former employee complies with Section 552.1175;

(4)   a peace officer as defined by Article 2.12, Code of Criminal Procedure, or other law, a reserve law enforcement officer, a commissioned deputy game warden, or a corrections officer in a municipal, county, or state penal institution in this state who was killed in the line of duty, regardless of whether the deceased complied with Section 552.024 or 552.1175;

(5)   a commissioned security officer as defined by Section 1702.002, Occupations Code, regardless of whether the officer complies with Section 552.024 or 552.1175, as applicable;

(6)   an officer or employee of a community supervision and corrections department established under Chapter 76 who performs a duty described by Section 76.004(b), regardless of whether the officer or employee complies with Section 552.024 or 552.1175;

(7)   a current or former employee of the office of the attorney general who is or was assigned to a division of that office the duties of which involve law enforcement or are performed under Chapter 231, Family Code, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

(8)   a current or former employee of the Texas Juvenile Justice Department or of the predecessors in function of the department, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

(9)   a current or former juvenile probation or supervision officer certified by the Texas Juvenile Justice Department, or the predecessors in function of the department, under Title 12, Human Resources Code, regardless of whether the current or former officer complies with Section 552.024 or 552.1175;

(10)  a current or former employee of a juvenile justice program or facility, as those terms are defined by Section 261.405, Family Code, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

(11)  a current or former member of the United States Army, Navy, Air Force, Coast Guard, or Marine Corps, an auxiliary service of one of those branches of the armed forces, or the Texas military forces, as that term is defined by Section 437.001;

(12)  a current or former district attorney, criminal district attorney, or county or municipal attorney whose jurisdiction includes any criminal law or child protectice services matters, regardless of whether the current or former attorney complies with Section 552.024 or 552.1175;

(13) a current or former employee of a district attorney, criminal district attorney, or county or municipal attorney whose jurisdiction includes any criminal law or child protective services matters, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

(14) a current or former employee of the Texas Civil Commitment Office or of the predecessor in function of the office or a division of the office, regardless of whether the current or former employee complies with Section 552.024 or 552.1175;

(15) a current or former federal judge or state judge, as those terms are defined by Section 1.005, Election Code, a federal bankruptcy judge, a marshal of the United States Marshals Service, a United States attorney, or a family member of a current or former federal judge, including a federal bankruptcy judge, a marshal of the United States Marshals Service, a United States attorney, or a state judge;

(16 a current or former child protective services caseworker, adult protective services caseworker, or investigator for the Department of Family and Protectice Services, regardless of whether the caseworker or investigator complies with Section 552.024 or 552.1175, or a current or former employee of a department contractor performing child protective services caseworker, adult protective services caseworker, or investigator functions for the contractor on behalf of the department;

(17) an elected public officer, regardless of whether the officer complies with Section 552.024 or 552.1175;

(18) a current or former United States attorney, assistant United States attorney, federal public defender, deputy federal public defender, or assistant federal public defender and the spouse or child of the current or former attorney or public defender, regardless of whether the person complies with Section 552.024 or 552.1175; or

(19) a firefighter or volunteer firefighter or emergency medical services personnel as defined by Section 773.003, Health and Safety Code, regardless of whether the firefighter or volunteer firefighter or emergency medical services personnel comply with Section 552.024 or 552.1175, as applicable.

(b) All documents filed with a county clerk and all documents filed with a district clerk are exempt from this section.

(c) In this section, "family member" has the meaning assigned by Section 31.006, Finance Code.

### <Amendment to section 552.117(a) effective January 1, 2025>

(2) a current or honorably retired peace officer as defined by Article 2A.001, Code of Criminal Procedure, or a current or honorably retired security officer commissioned under Section 51.212, Education Code, regardless of whether the officer complies with Section 552.024 or 552.1175, as applicable; [or]

. . .

(4)     a peace officer as defined by Article 2A.001, Code of Criminal Procedure, or other law, a reserve law enforcement officer, a commissioned deputy game warden, or a corrections officer in a municipal, county, or state penal institution in this state who was killed in the line of duty, regardless of whether the deceased complied with Section 552.024 or 552.1175[.]

## § 552.1175.  Exception: Confidentiality of Certain Personal Identifying Information of Peace Officers and Other Officials Performing Sensitive Governmental Functions

(a)  This section applies only to:

(1)     current or honorably retired peace officers as defined by Article 2.12, Code of Criminal Procedure, or special investigators as described by Article 2.122, Code of Criminal Procedure;

(2)     current or honorably retired county jailers as defined by Section 1701.001, Occupations Code;

(3)     current or former employees of the Texas Department of Criminal Justice or of the predecessor in function of the department or any division of the department;

(4)     commissioned security officers as defined by Section 1702.002, Occupations Code;

(5)     a current or former district attorney, criminal district attorney, or county or municipal attorney whose jurisdiction includes any criminal law or child protective services matters;

(5-a) a current or former employee of a district attorney, criminal district attorney, or county or municipal attorney whose jurisdiction includes any criminal law or child protective services matters;

(6)     officers and employees of a community supervision and corrections department established under Chapter 76 who perform a duty described by Section 76.004(b);

(7)     criminal investigators of the United States as described by Article 2.122(a), Code of Criminal Procedure;

(8)     current or honorably retired police officers and inspectors of the United States Federal Protective Service;

(9)     current and former employees of the office of the attorney general who are or were assigned to a division of that office the duties of which involve law enforcement or are performed under Chapter 231, Family Code;

(10) current or former juvenile probation and detention officers certified by the Texas Juvenile Justice Department, or the predecessors in function of the department, under Title 12, Human Resources Code;

    (11)  current or former employees of a juvenile justice program or facility, as those terms are defined by Section 261.405, Family Code;

    (12)  current or former employees of the Texas Juvenile Justice Department or the predecessors in function of the department;

    (13)  federal judges and state judges as defined by Section 1.005, Election Code;

    (14)  current or former employees of the Texas Civil Commitment Office or of the predecessor in function of the office or a division of the office;

    (15)  a current or former member of the United States Army, Navy, Air Force, Coast Guard, or Marine Corps, an auxiliary service of one of those branches of the armed forces, or the Texas military forces, as that term is defined by Section 437.001;

    (16)  a current or former child protective services caseworker, adult protective services caseworker, or investigator for the Department of Family and Protective Services or a current or former employee of a department contractor performing child protective services caseworker, adult protective services caseworker, or investigator functions for the contractor on behalf of the department;

    (17)  an elected public officer;

    (18)  a firefighter or volunteer firefighter or emergency medical services personnel as defined by Section 773.003, Health and Safety Code; and

    (19)  a current or former United States attorney, assistant United States attorney, federal public defender, deputy federal public defender, or assistant federal public defender.

(b)  Information that relates to the home address, home telephone number, emergency contact information, date of birth, or social security number of an individual to whom this section applies, or that reveals whether the individual has family members is confidential and may not be disclosed to the public under this chapter if the individual to whom the information relates:

    (1)  chooses to restrict public access to the information; and

    (2)  notifies the governmental body of the individual's choice on a form provided by the governmental body, accompanied by evidence of the individual's status.

(c)  A choice made under Subsection (b) remains valid until rescinded in writing by the individual.

(d)  This section does not apply to information in the tax appraisal records of an appraisal district to which Section 25.025, Tax Code, applies.

(e)  All documents filed with a county clerk and all documents filed with a district clerk are exempt from this section.

(f) A governmental body may redact information that must be withheld under Subsection (b) from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.

(g) If, under Subsection (f), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision from the attorney general about the matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.

(h) A governmental body that redacts or withholds information under Subsection (f) shall provide the following information to the requestor on a form prescribed by the attorney general:

(1) a description of the redacted or withheld information;

(2) a citation to this section; and

(3) instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure.

**<Amendment to section 552.1175(a) effective January 1, 2025>**

(1) current or honorably retired peace officers as defined by Article 2A.001, Code of Criminal Procedure, or special investigators as described by Article 2A.002, Code of Criminal Procedure; [and]

. . .

(7) criminal investigators of the United States as described by Article 2A.002(a), Code of Criminal Procedure[.]

## § 552.1176. Confidentiality of Certain Information Maintained by State Bar

(a) Information maintained under Chapter 81 is confidential and may not be disclosed to the public under this chapter if the information:

(1) is a license application; or

(2)   relates to the home address, home telephone number, electronic mail address, social security number, date of birth, driver's license number, state identification number, passport number, emergency contact information, or payment information of an individual licensed to practice law in this state.

(b)  Repealed by Acts 2023, 88th Leg., ch. 73 (S.B. 510), § 4.

(c)  All documents filed with a county clerk and all documents filed with a district clerk are exempt from this section.

(d)  Subsection (a) does not make confidential or except from required public disclosure the name, state bar identification number, membership class, or eligibility to practice law of an applicant for a license, a license holder, or an individual who previously held a license.

(e)  To the extent of any conflict, this section prevails over another law that authorizes or requires the release of information maintained by the State Bar of Texas.

## § 552.11765.  Confidentiality of Certain Information Maintained by State Licensing Authority

(a)  In this section, "license" means a license, certificate, registration, permit, or other authorization that:

(1)   is issued by a governmental body described by Section 552.003(1)(A)(i); and

(2)   an individual must obtain to practice or engage in a particular business, occupation, or profession.

(b)  Except as provided by Subsections (c) and (d), information maintained by a governmental body described by Section 552.003(1)(A)(i) is confidential and excepted from the requirements of Section 552.021 if the information:

(1)   is a license application; or

(2)   Relates to the home address, home telephone number, electronic mail address, social security number, date of birth, driver's license number, state identification number, passport number, emergency contact information, or payment information of:

    (A)  an applicant for a license issued by the governmental body;

    (B)  an individual who holds a license issued by the governmental body; or

    (C)  an individual who previously held a license issued by a governmental body.

(c)  Subsection (b) does not make confidential or except from required public disclosure the name, license number, or license status of an applicant for a license, a license holder, or an individual who previously held a license.

(d) For a license issued under Chapter 42, 43, 103, or 161, Human Resources Code, or Chapter 142, 242, 247, 248A, 250, or 252, Health and Safety Code, Subsection (b) does not prohibit the disclosure of:

    (1)    the last four digits of the social security number of a license holder in connection with a verification of employability or an employee misconduct registry search provided by the Health and Human Services Commission;

    (2)    a home address where activity regulated by the licensing authority occurs; or

    (3)    an e-mail address or phone number associated with activity regulated by the licensing authority.

(e) To the extent of any conflict, this section prevails over another law that authorizes or requires the release of information maintained by a governmental body.

### § 552.1177. Exception: Confidentiality of Certain Information Related to Humane Disposition of Animal

(a) Except as provided by Subsection (b), information is confidential and excepted from the requirements of Section 552.021 if the information relates to the name, address, telephone number, e-mail address, driver's license number, social security number, or other personally identifying information of a person who obtains ownership or control of an animal from a municipality or county making a humane disposition of the animal under a municipal ordinance or an order of the commissioners court.

(b) A governmental body may disclose information made confidential by Subsection (a) to a governmental entity, or to a person who under a contract with a governmental entity provides animal control services, animal registration services, or related services to the governmental entity, for purposes related to the protection of public health and safety.

(c) A governmental entity or other person that receives information under Subsection (b):

    (1)    must maintain the confidentiality of the information;

    (2)    may not disclose the information under this chapter; and

    (3)    may not use the information for a purpose that does not directly relate to the protection of public health and safety.

(d) A governmental body, by providing public information under Subsection (b) that is confidential or otherwise excepted from required disclosure under law, does not waive or affect the confidentiality of the information for purposes of state or federal law or waive the right to assert exceptions to required disclosure of the information in the future.

### § 552.118. Exception: Confidentiality of Official Prescription Program Information

Information is excepted from the requirements of Section 552.021 if it is:

(1)   information on or derived from an official prescription form filed with the Texas State Board of Pharmacy under Section 481.0755, Health and Safety Code, or an electronic prescription record filed with the Texas State Board of Pharmacy under Section 481.075, Health and Safety Code; or

(2)   other information collected under Section 481.075 or 481.0755 of that code.

## § 552.119.   Exception: Confidentiality of Certain Photographs of Peace Officers

(a) A photograph that depicts a peace officer as defined by Article 2.12, Code of Criminal Procedure, the release of which would endanger the life or physical safety of the officer, is excepted from the requirements of Section 552.021 unless:

(1)   the officer is under indictment or charged with an offense by information;

(2)   the officer is a party in a civil service hearing or a case in arbitration; or

(3)   the photograph is introduced as evidence in a judicial proceeding.

(b) A photograph excepted from disclosure under Subsection (a) may be made public only if the peace officer gives written consent to the disclosure.

### <Amendment to section 552.119(a) effective January 1, 2025>

(a) A photograph that depicts a peace officer as defined by Article 2A.001, Code of Criminal Procedure, the release of which would endanger the life or physical safety of the officer, is excepted from the requirements of Section 552.021 unless:

(1)   the officer is under indictment or charged with an offense by information;

(2)   the officer is a party in a civil service hearing or a case in arbitration; or

(3)   the photograph is introduced as evidence in a judicial proceeding.

## § 552.120.   Exception: Confidentiality of Certain Rare Books and Original Manuscripts

A rare book or original manuscript that was not created or maintained in the conduct of official business of a governmental body and that is held by a private or public archival and manuscript repository for the purpose of historical research is excepted from the requirements of Section 552.021.

## § 552.121.   Exception: Confidentiality of Certain Documents Held for Historical Research

An oral history interview, personal paper, unpublished letter, or organizational record of a nongovernmental entity that was not created or maintained in the conduct of official business of a governmental body and that is held by a private or public archival and manuscript repository for the purpose of historical research is excepted from the requirements of Section 552.021 to the

extent that the archival and manuscript repository and the donor of the interview, paper, letter, or record agree to limit disclosure of the item.

### § 552.122.   Exception:  Test Items

(a) A test item developed by an educational institution that is funded wholly or in part by state revenue is excepted from the requirements of Section 552.021.

(b) A test item developed by a licensing agency or governmental body is excepted from the requirements of Section 552.021.

### § 552.123.   Exception:  Confidentiality of Name of Applicant for Chief Executive Officer of Institution of Higher Education

The name of an applicant for the position of chief executive officer of an institution of higher education, and other information that would tend to identify the applicant, is excepted from the requirements of Section 552.021, except that the governing body of the institution must give public notice of the name or names of the finalists being considered for the position at least 21 days before the date of the meeting at which final action or vote is to be taken on the employment of the person.

### § 552.1235.  Exception:  Confidentiality of Identity of Private Donor to Institution of Higher Education

(a) The name or other information that would tend to disclose the identity of a person, other than a governmental body, who makes a gift, grant, or donation of money or property to an institution of higher education or to another person with the intent that the money or property be transferred to an institution of higher education is excepted from the requirements of Section 552.021.

(b) Subsection (a) does not except from required disclosure other information relating to gifts, grants, and donations described by Subsection (a), including the amount or value of an individual gift, grant, or donation.

(c) In this section, "institution of higher education" has the meaning assigned by Section 61.003, Education Code.

### § 552.124.   Exception:  Confidentiality of Records of Library or Library System

(a) A record of a library or library system, supported in whole or in part by public funds, that identifies or serves to identify a person who requested, obtained, or used a library material or service is excepted from the requirements of Section 552.021 unless the record is disclosed:

   (1)   because the library or library system determines that disclosure is reasonably necessary for the operation of the library or library system and the record is not confidential under other state or federal law;

   (2)   under Section 552.023; or

(3)   to a law enforcement agency or a prosecutor under a court order or subpoena obtained after a showing to a district court that:

(A) disclosure of the record is necessary to protect the public safety; or

(B) the record is evidence of an offense or constitutes evidence that a particular person committed an offense.

(b) A record of a library or library system that is excepted from required disclosure under this section is confidential.

## § 552.125.   Exception:  Certain Audits

Any documents or information privileged under Chapter 1101, Health and Safety Code, are excepted from the requirements of Section 552.021.

## § 552.126.   Exception:  Confidentiality of Name of Applicant for Superintendent of Public School District

The name of an applicant for the position of superintendent of a public school district is excepted from the requirements of Section 552.021, except that the board of trustees must give public notice of the name or names of the finalists being considered for the position at least 21 days before the date of the meeting at which a final action or vote is to be taken on the employment of the person.

## § 552.127.   Exception:  Confidentiality of Personal Information Relating to Participants in Neighborhood Crime Watch Organization

(a) Information is excepted from the requirements of Section 552.021 if the information identifies a person as a participant in a neighborhood crime watch organization and relates to the name, home address, business address, home telephone number, or business telephone number of the person.

(b) In this section, "neighborhood crime watch organization" means a group of residents of a neighborhood or part of a neighborhood that is formed in affiliation or association with a law enforcement agency in this state to observe activities within the neighborhood or part of a neighborhood and to take other actions intended to reduce crime in that area.

## § 552.128.   Exception:  Confidentiality of Certain Information Submitted by Potential Vendor or Contractor

(a) Information submitted by a potential vendor or contractor to a governmental body in connection with an application for certification as a historically underutilized or disadvantaged business under a local, state, or federal certification program is excepted from the requirements of Section 552.021, except as provided by this section.

(b) Notwithstanding Section 552.007 and except as provided by Subsection (c), the information may be disclosed only:

    (1)    to a state or local governmental entity in this state, and the state or local governmental entity may use the information only:

        (A)    for purposes related to verifying an applicant's status as a historically underutilized or disadvantaged business; or

        (B)    for the purpose of conducting a study of a public purchasing program established under state law for historically underutilized or disadvantaged businesses; or

    (2)    with the express written permission of the applicant or the applicant's agent.

(c) Information submitted by a vendor or contractor or a potential vendor or contractor to a governmental body in connection with a specific proposed contractual relationship, a specific contract, or an application to be placed on a bidders list, including information that may also have been submitted in connection with an application for certification as a historically underutilized or disadvantaged business, is subject to required disclosure, excepted from required disclosure, or confidential in accordance with other law.

## § 552.129. Confidentiality of Certain Motor Vehicle Inspection Information

A record created during a motor vehicle emissions inspection under Subchapter F, Chapter 548, Transportation Code, that relates to an individual vehicle or owner of an individual vehicle is excepted from the requirements of Section 552.021.

## § 552.130. Exception: Confidentiality of Certain Motor Vehicle Records

(a) Information is excepted from the requirements of Section 552.021 if the information relates to:

    (1)    a motor vehicle operator's or driver's license or permit issued by an agency of this state or another state or country;

    (2)    a motor vehicle title or registration issued by an agency of this state or another state or country; or

    (3)    a personal identification document issued by an agency of this state or another state or country or a local agency authorized to issue an identification document.

(b) Information described by Subsection (a) may be released only if, and in the manner, authorized by Chapter 730, Transportation Code.

(c) Subject to Chapter 730, Transportation Code, a governmental body may redact information described by Subsection (a) from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.

(d) If, under Subsection (c), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision from the attorney general about the

matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.

(e) A governmental body that redacts or withholds information under Subsection (c) shall provide the following information to the requestor on a form prescribed by the attorney general:

   (1)   a description of the redacted or withheld information;

   (2)   a citation to this section; and

   (3)   instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure.

## § 552.131.   Exception:  Confidentiality of Certain Economic Development Information

(a) Information is excepted from the requirements of Section 552.021 if the information relates to economic development negotiations involving a governmental body and a business prospect that the governmental body seeks to have locate, stay, or expand in or near the territory of the governmental body and the information relates to:

   (1)   a trade secret of the business prospect; or

   (2)   commercial or financial information for which it is demonstrated based on specific factual evidence that disclosure would cause substantial competitive harm to the person from whom the information was obtained.

(b) Unless and until an agreement is made with the business prospect, information about a financial or other incentive being offered to the business prospect by the governmental body or by another person is excepted from the requirements of Section 552.021.

(b-1) An economic development entity whose mission or purpose is to develop and promote the economic growth of a state agency or political subdivision with which the entity contracts may assert the exceptions under this section in the manner described by Section 552.305(b) with respect to  information that is in the economic development entity's custody or control.

(c) After an agreement is made with the business prospect, this section does not except from the requirements of Section 552.021 information about a financial or other incentive being offered to the business prospect:

(1)    by the governmental body; or

(2)    by another person, if the financial or other incentive may directly or indirectly result in the expenditure of public funds by a governmental body or a reduction in revenue received by a governmental body from any source.

## § 552.1315.  Exception:  Confidentiality of Certain Crime Victim Records

(a) Information is confidential and excepted from the requirements of Section 552.021 if the information identifies an individual as:

(1)    a victim of:

(A)    an offense under Section 20A.02, 20A.03, 21.02, 21.11, 22.011, 22.021, 43.05, or 43.25, Penal Code; or

(B)    an offense that is part of the same criminal episode, as defined by Section 3.01, Penal Code, as an offense described by Paragraph (A); or

(2)    a victim of any criminal offense, if the victim was younger than 18 years of age when any element of the offense was committed.

(b) Notwithstanding Subsection (a), information under this section may be disclosed:

(1)    to any victim identified by the information, or to the parent or guardian of a victim described by Subsection (a)(2) who is identified by the information;

(2)    to a law enforcement agency for investigative purposes; or

(3)    in accordance with a court order requiring the disclosure.

## § 552.132.    Confidentiality of Crime Victim or Claimant Information

(a) Except as provided by Subsection (d), in this section, "crime victim or claimant" means a victim or claimant under Chapter 56B, Code of Criminal Procedure, who has filed an application for compensation under that chapter.

(b) The following information held by the crime victim's compensation division of the attorney general's office is confidential:

(1)    the name, social security number, address, or telephone number of a crime victim or claimant; or

(2)    any other information the disclosure of which would identify or tend to identify the crime victim or claimant.

(c) If the crime victim or claimant is awarded compensation under Article 56B.103 or 56B.104, Code of Criminal Procedure, as of the date of the award of compensation, the name of the crime victim or claimant and the amount of compensation awarded to that crime victim or claimant are public information and are not excepted from the requirements of Section 552.021.

(d) An employee of a governmental body who is also a victim under Chapter 56B, Code of Criminal Procedure, regardless of whether the employee has filed an application for compensation under that subchapter, may elect whether to allow public access to information held by the attorney general's office or other governmental body that would identify or tend to identify the victim, including a photograph or other visual representation of the victim. An election under this subsection must be made in writing on a form developed by the governmental body, be signed by the employee, and be filed with the governmental body before the third anniversary of the latest to occur of one of the following:

   (1)   the date the crime was committed;

   (2)   the date employment begins; or

   (3)   the date the governmental body develops the form and provides it to employees.

(e) If the employee fails to make an election under Subsection (d), the identifying information is excepted from disclosure until the third anniversary of the date the crime was committed. In case of disability, impairment, or other incapacity of the employee, the election may be made by the guardian of the employee or former employee.

## § 552.1325.  Crime Victim Impact Statement: Certain Information Confidential

(a)   In this section:

   (1) "Crime victim" means a person who is a victim as defined by Article 56B.003, Code of Criminal Procedure.

   (2) "Victim impact statement" means a victim impact statement under Subchapter D, Chapter 56A, Code of Criminal Procedure.

(b) The following information that is held by a governmental body or filed with a court and that is contained in a victim impact statement or was submitted for purposes of preparing a victim impact statement is confidential:

   (1) the name, social security number, address, and telephone number of a crime victim; and

   (2) any other information the disclosure of which would identify or tend to identify the crime victim.

## § 552.133.   Exception:  Confidentiality of Public Power Utility Competitive Matters

(a) In this section:

(1) "Broadband service" has the meaning assigned by Section 181.048, Utilities Code.

(2) "Public power utility" means an entity providing electric or gas utility services that is subject to the provisions of this chapter.

(a-1) For purposes of this section, "competitive matter" means a utility-related matter, including for an entity described by Subdivision(2) a cable, Internet, or broadband service matter, that is related to the public power utility's competitive activity, including commercial information, and would, if disclosed, give advantage to competitors or prospective competitors. The term:

(1) means a matter that is reasonably related to the following categories of information:

(A) generation unit specific and portfolio fixed and variable costs, including forecasts of those costs, capital improvement plans for generation units, and generation unit operating characteristics and outage scheduling;

(B) bidding and pricing information for purchased power, generation and fuel, and Electric Reliability Council of Texas bids, prices, offers, and related services and strategies;

(C) effective fuel and purchased power agreements and fuel transportation arrangements and contracts;

(D) risk management information, contracts, and strategies, including fuel hedging and storage;

(E) plans, studies, proposals, and analyses for system improvements, additions, or sales, other than transmission and distribution system improvements inside the service area for which the public power utility is the sole certificated retail provider; and

(F) customer billing, contract, and usage information, electric power pricing information, system load characteristics, and electric power marketing analyses and strategies;

(2) means a matter reasonably related to information involving the provision of cable, Internet, or broadband services by a municipally owned utility that provided electricity services and cable, Internet, or broadband services on or before January 1, 2003, including:

(A) a capital improvement plan;

(B) an expense related to the installation of a facility to provide those services;

(C) bidding and pricing information for installation of the facility;

(D) risk management information, contracts, and strategies;

(E) plans, studies, proposals, and analyses for:

      (i) system improvements, additions, or sales; or

      (ii) establishing pricing for providing those services; and

    (F) customer billing, contract, and usage information; and

(3) does not include the following categories of information:

    (A) information relating to the provision of distribution access service, including the terms and conditions of the service and the rates charged for the service but not including information concerning utility-related services or products that are competitive;

    (B) information relating to the provision of transmission service that is required to be filed with the Public Utility Commission of Texas, subject to any confidentiality provided for under the rules of the commission;

    (C) information for the distribution system pertaining to reliability and continuity of service, to the extent not security-sensitive, that relates to emergency management, identification of critical loads such as hospitals and police, records of interruption, and distribution feeder standards;

    (D) any substantive rule or tariff of general applicability regarding rates, service offerings, service regulation, customer protections, or customer service adopted by the public power utility as authorized by law;

    (E) aggregate information reflecting receipts or expenditures of funds of the public power utility, of the type that would be included in audited financial statements;

    (F) information relating to equal employment opportunities for minority groups, as filed with local, state, or federal agencies;

    (G) information relating to the public power utility's performance in contracting with minority business entities;

    (H) information relating to nuclear decommissioning trust agreements, of the type required to be included in audited financial statements;

    (I)   information relating to the amount and timing of any transfer to an owning city's general fund;

    (J)   information relating to environmental compliance as required to be filed with any local, state, or national environmental authority, subject to any confidentiality provided under the rules of those authorities;

    (K) names of public officers of the public power utility and the voting records of those officers for all matters other than those within the scope of a competitive resolution provided for by this section;

(L)  a description of the public power utility's central and field organization, including the established places at which the public may obtain information, submit information and requests, or obtain decisions and the identification of employees from whom the public may obtain information, submit information or requests, or obtain decisions;

(M)  information identifying the general course and method by which the public power utility's functions are channeled and determined, including the nature and requirements of all formal and informal policies and procedures;

(N)  salaries and total compensation of all employees of a public power utility; or

(O)  information publicly released by the Electric Reliability Council of Texas in accordance with a law, rule, or protocol generally applicable to similarly situated market participants;

(P)  information related to a chilled water program, as defined by Section 11.003, Utilities Code; or

(Q)  information included in the separate books and records required to be kept by an entity described by Subdivision (2) as required by Section 552.915, Local Government Code.

(b)  Information or records are excepted from the requirements of Section 552.021 if the information or records are reasonably related to a competitive matter, as defined in this section.  Information or records of a municipally owned utility that are reasonably related to a competitive matter are not subject to disclosure under this chapter, whether or not, under the Utilities Code, the municipally owned utility has adopted customer choice or serves in a multiply certificated service area.  This section does not limit the right of a public power utility governing body to withhold from disclosure information deemed to be within the scope of any other exception provided for in this chapter, subject to the provisions of this chapter.

(b-1) Notwithstanding any contrary provision of Subsection (b), information or records of a municipally owned utility or municipality that operates a chilled water program are subject to disclosure under this chapter if the information or records are reasonably related to:

(1) a municipally owned utility's rate review process;

(2) the method a municipality or municipally owned utility uses to set rates for retail electricity service; or

(3) the method a municipality or municipally owned utility uses to set rates for a chilled water program described by Subsection (a-1)(3)(P).

(c)  The requirement of Section 552.022 that a category of information listed under Section 552.022(a) is public information and not excepted from required disclosure under this

chapter unless expressly confidential under law does not apply to information that is excepted from required disclosure under this section.

## § 552.1331.  Exception:  Certain Government-Operated Utility Customer Information

(a)  In this section:

(1) "Advanced metering system" means a utility metering system that collects data at regular intervals through the use of an automated wireless or radio network.

(2) "Government-operated utility" has the meaning assigned by Section 182.051, Utilities Code.

(b) Except as provided by Subsection (c) of this section and Section 182.052, Utilities Code, information maintained by a government-operated utility is excepted from the requirements of Section 552.021 if it is information that:

(1) is collected as part of an advanced metering system for usage, services, and billing, including amounts billed or collected for utility usage; or

(2) reveals whether:

(A) an account is delinquent or eligible for disconnection; or

(B) services have been discontinued by the government-operated utility.

(c) A government-operated utility must disclose information described by Subsection (b)(1) to a customer of the utility or a representative of the customer if the information directly relates to utility services provided to the customer and is not confidential under law.

## § 552.134.  Exception:  Confidentiality of Certain Information Relating to Inmate of Department of Criminal Justice

(a) Except as provided by Subsection (b) or by Section 552.029, information obtained or maintained by the Texas Department of Criminal Justice is excepted from the requirements of Section 552.021 if it is information about an inmate who is confined in a facility operated by or under a contract with the department.

(b) Subsection (a) does not apply to:

(1)  statistical or other aggregated information relating to inmates confined in one or more facilities operated by or under a contract with the department; or

(2)  information about an inmate sentenced to death.

(c) This section does not affect whether information is considered confidential or privileged under Section 508.313.

(d) A release of information described by Subsection (a) to an eligible entity, as defined by Section 508.313(d), for a purpose related to law enforcement, prosecution, corrections, clemency, or treatment is not considered a release of information to the public for purposes of Section 552.007 and does not waive the right to assert in the future that the information is excepted from required disclosure under this section or other law.

### § 552.1345. Exception: Confidentiality of CertainInformation Relating to Civilly Committed Sexually Violent Predators

(a) Except as provided by Subsection (b), information obtained or maintained by the Texas Civil Commitment Office is excepted from the requirements of Section 552.021 if it is information about a person who is civilly committed as a sexually violent predator under Chapter 841, Health and Safety Code.

(b) Subsection (a) does not apply to statistical or other aggregated information relating to persons civilly committed to one or more facilities operated by or under a contract with the office.

### § 552.135.   Exception: Confidentiality of Certain Information Held by School District

(a) "Informer" means a student or a former student or an employee or former employee of a school district who has furnished a report of another person's possible violation of criminal, civil, or regulatory law to the school district or the proper regulatory enforcement authority.

(b) An informer's name or information that would substantially reveal the identity of an informer is excepted from the requirements of Section 552.021.

(c) Subsection (b) does not apply:

   (1)   if the informer is a student or former student, and the student or former student, or the legal guardian, or spouse of the student or former student consents to disclosure of the student's or former student's name; or

   (2)   if the informer is an employee or former employee who consents to disclosure of the employee's or former employee's name; or

   (3)   if the informer planned, initiated, or participated in the possible violation.

(d) Information excepted under Subsection (b) may be made available to a law enforcement agency or prosecutor for official purposes of the agency or prosecutor upon proper request made in compliance with applicable law and procedure.

(e) This section does not infringe on or impair the confidentiality of information considered to be confidential by law, whether it be constitutional, statutory, or by judicial decision, including information excepted from the requirements of Section 552.021.

## § 552.136. Confidentiality of Credit Card, Debit Card, Charge Card, and Access Device Numbers

(a) In this section, "access device" means a card, plate, code, account number, personal identification number, electronic serial number, mobile identification number, or other telecommunications service, equipment, or instrument identifier or means of account access that alone or in conjunction with another access device may be used to:

   (1)  obtain money, goods, services, or another thing of value; or

   (2)  initiate a transfer of funds other than a transfer originated solely by paper instrument.

(b) Notwithstanding any other provision of this chapter, a credit card, debit card, charge card, or access device number that is collected, assembled, or maintained by or for a governmental body is confidential.

(c) A governmental body may redact information that must be withheld under Subsection (b) from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.

(d) If, under Subsection (c), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision from the attorney general about the matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.

(e) A governmental body that redacts or withholds information under Subsection (c) shall provide the following information to the requestor on a form prescribed by the attorney general:

   (1)  a description of the redacted or withheld information;

   (2)  a citation to this section; and

   (3)  instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure.

### § 552.137.    Confidentiality of Certain E-Mail Addresses

(a) Except as otherwise provided by this section, an e-mail address of a member of the public that is provided for the purpose of communicating electronically with a governmental body is confidential and not subject to disclosure under this chapter.

(b) Confidential information described by this section that relates to a member of the public may be disclosed if the member of the public affirmatively consents to its release.

(c) Subsection (a) does not apply to an e-mail address:

   (1)   provided to a governmental body by a person who has a contractual relationship with the governmental body or by the contractor's agent;

   (2)   provided to a governmental body by a vendor who seeks to contract with the governmental body or by the vendor's agent;

   (3)   contained in a response to a request for bids or proposals, contained in a response to similar invitations soliciting offers or information relating to a potential contract, or provided to a governmental body in the course of negotiating the terms of a contract or potential contract;

   (4)   provided to a governmental body on a letterhead, coversheet, printed document, or other document made available to the public; or

   (5)   provided to a governmental body for the purpose of providing public comment on or receiving notices related to an application for a license as defined by Section 2001.003(2) of this code, or receiving orders or decisions from a governmental body.

(d) Subsection (a) does not prevent a governmental body from disclosing an e-mail address for any reason to another governmental body or to a federal agency.

### § 552.138.    Exception:   Confidentiality of Family Violence Shelter Center, Victims of Trafficking Shelter Center, and Sexual Assault Program Information

(a) In this section:

   (1)   "Family violence shelter center" has the meaning assigned by Section 51.002, Human Resources Code.

   (1-a) "License" means a license, certificate, registration, permit, or other authorization that:

      (A) is issued by a governmental body; and

      (B) a person must obtain to practice or engage in a particular business, occupation, or profession.

   (2)   "Sexual assault program" has the meaning assigned by Section 420.003.

(3) "Victims of trafficking shelter center" means:

 (A) a program that:

  (i) is operated by a public or private nonprofit organization; and

  (ii) provides comprehensive residential and nonresidential services to persons who are victims of trafficking under Section 20A.02, Penal Code; or

 (B) a child-placing agency, as defined by Section 42.002, Human Resources Code, that provides services to persons who are victims of trafficking under Section 20A.02, Penal Code.

(b) Information maintained by a family violence shelter center, victims of trafficking shelter center, or sexual assault program is excepted from the requirements of Section 552.021 if it is information that relates to:

(1) the home address, home telephone number, or social security number of an employee or a volunteer worker of a family violence shelter center, victims of trafficking shelter center, or sexual assault program, regardless of whether the employee or worker complies with Section 552.024;

(2) the name, home address, home telephone number, or numeric identifier of a current or former client of a family violence shelter center, victims of trafficking shelter center, or sexual assault program;

(3) the provision of services, including counseling and sheltering, to a current or former client of a family violence shelter center, victims of trafficking shelter center, or sexual assault program;

(4) the name, home address, or home telephone number of a private donor to a family violence shelter center, victims of trafficking shelter center, or sexual assault program; or

(5) the home address or home telephone number of a member of the board of directors or the board of trustees of a family violence shelter center, victims of trafficking shelter center, or sexual assault program, regardless of whether the board member complies with Section 552.024.

(b-1) Information that relates to the location or physical layout of a family violence shelter center or victims of trafficking shelter center is confidential.

(c) A governmental body may redact information maintained by a family violence shelter center, victims of trafficking shelter center, or sexual assault program that may be withheld under Subsection (b)(1) or (5) or that is confidential under Subsection (b-1) from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.

(d) If, under Subsection (c), a governmental body redacts or withholds information without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor is entitled to seek a decision from the attorney general about the matter. The attorney general by rule shall establish procedures and deadlines for receiving information necessary to decide the matter and briefs from the requestor, the governmental body, and any other interested person. The attorney general shall promptly render a decision requested under this subsection, determining whether the redacted or withheld information was excepted from required disclosure to the requestor, not later than the 45th business day after the date the attorney general received the request for a decision under this subsection. The attorney general shall issue a written decision on the matter and provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter. The requestor or the governmental body may appeal a decision of the attorney general under this subsection to a Travis County district court.

(e) A governmental body that redacts or withholds information under Subsection (c) shall provide the following information to the requestor on a form prescribed by the attorney general:

(1) a description of the redacted or withheld information;

(2) a citation to this section; and

(3) instructions regarding how the requestor may seek a decision from the attorney general regarding whether the redacted or withheld information is excepted from required disclosure.

(f) Notwithstanding any other law, a governmental body may not sell or otherwise release the name, home or business address, place of employment, telephone number, electronic mail address, social security number, date of birth, driver's license or state identification number, passport number, emergency contact information, or numeric identifier of a person who:

(1) holds, previously held, or is an applicant for a license issued by the governmental body; and

(2) notifies the governmental body on a form provided by the office of the attorney general or the governmental body that the person:

(A) is a current or former client of a family violence shelter center, victims of trafficking shelter center, or sexual assault program or is a survivor of family violence, domestic violence, or sexual assault; and

(B) chooses to restrict public access to the information.

(g) A governmental body may redact information described by Subsection (f) from a response to a request for a list or directory of license holders, former license holders, or license applicants without the necessity of requesting a decision from the attorney general under Subchapter G.

**§ 552.139. Exception: Confidentiality of Government Information Related to Security or Infrastructure Issues for Computers**

(a) Information is excepted from the requirements of Section 552.021 if it is information that relates to computer network security, to restricted information under Section 2059.055, or to the design, operation, or defense of a computer network.

(b) The following information is confidential:

   (1)   a computer network vulnerability report;

   (2)   any other assessment of the extent to which data processing operations, a computer, a computer program, network, system, or system interface, or software of a governmental body or of a contractor of a governmental body is vulnerable to unauthorized access or harm, including an assessment of the extent to which the governmental body's or contractor's electronically stored information containing sensitive or critical information is vulnerable to alteration, damage, erasure, or inappropriate use;

   (3)   a photocopy or other copy of an identification badge issued to an official or employee of a governmental body; and

   (4)   information directly arising from a governmental body's routine efforts to prevent, detect, investigate, or mitigate a computer security incident, including information contained in or derived from an information security log.

(b-1) Subsection (b)(4) does not affect the notification requirements related to a breach of system security as defined by Section 521.053, Business & Commerce Code.

(c) Notwithstanding the confidential nature of the information described in this section, the information may be disclosed to a bidder if the governmental body determines that providing the information is necessary for the bidder to provide an accurate bid. A disclosure under this subsection is not a voluntary disclosure for purposes of Section 552.007.

(d) A state agency shall redact from a contract posted on the agency's Internet website under Section 2261.253 information that is made confidential by, or excepted from required public disclosure under, this section. The redaction of information under this subsection does not exempt the information from the requirements of Section 552.021 or 552.221.

**§ 552.140. Exception: Confidentiality of Military Discharge Records**

(a) This section applies only to a military veteran's Department of Defense Form DD-214 or other military discharge record that is first recorded with or that otherwise first comes into the possession of a governmental body on or after September 1, 2003.

(b) The record is confidential for the 75 years following the date it is recorded with or otherwise first comes into the possession of a governmental body. During that period the governmental body may permit inspection or copying of the record or disclose information contained in the record only in accordance with this section or in accordance with a court order.

(c) On request and the presentation of proper identification, the following persons may inspect the military discharge record or obtain from the governmental body free of charge a copy or certified copy of the record:

    (1)    the veteran who is the subject of the record;

    (2)    the legal guardian of the veteran;

    (3)    the spouse or a child or parent of the veteran or, if there is no living spouse, child, or parent, the nearest living relative of the veteran;

    (4)    the personal representative of the estate of the veteran;

    (5)    the person named by the veteran, or by a person described by Subdivision (2), (3), or (4), in an appropriate power of attorney executed in accordance with Subchapters A and B, Chapter 752, Estates Code;

    (6)    another governmental body; or

    (7)    an authorized representative of the funeral home that assists with the burial of the veteran.

(d) A court that orders the release of information under this section shall limit the further disclosure of the information and the purposes for which the information may be used.

(e) A governmental body that obtains information from the record shall limit the governmental body's use and disclosure of the information to the purpose for which the information was obtained.

## § 552.141.   Confidentiality of Information in Application for Marriage License

(a) Information that relates to the social security number of an individual that is maintained by a county clerk and that is on an application for a marriage license, including information in an application on behalf of an absent applicant and the affidavit of an absent applicant, or is on a document submitted with an application for a marriage license is confidential and may not be disclosed by the county clerk to the public under this chapter.

(b) If the county clerk receives a request to make information in a marriage license application available under this chapter, the county clerk shall redact the portion of the application that contains an individual's social security number and release the remainder of the information in the application.

## § 552.142.   Exception:  Confidentiality of Records Subject to Order of Nondisclosure

(a) Information is excepted from the requirements of Section 552.021 if an order of nondisclosure of criminal history record information with respect to the information has been issued under Subchapter E-1, Chapter 411.

(b) A person who is the subject of information that is excepted from the requirements of Section 552.021 under this section may deny the occurrence of the criminal proceeding to which the information relates and the exception of the information under this section, unless the information is being used against the person in a subsequent criminal proceeding.

## § 552.1425.  Civil Penalty:  Dissemination of Certain Criminal History Information

(a) A private entity that compiles and disseminates for compensation criminal history record information may not compile or disseminate information with respect to which the entity has received notice that:

   (1)   an order of expunction has been issued under Article 55.02, Code of Criminal Procedure; or

   (2)   an order of nondisclosure of criminal history record information has been issued under Subchapter E-1, Chapter 411.

(b) A district court may issue a warning to a private entity for a first violation of Subsection (a). After receiving a warning for the first violation, the private entity is liable to the state for a civil penalty not to exceed $1,000 for each subsequent violation.

(c) The attorney general or an appropriate prosecuting attorney may sue to collect a civil penalty under this section.

(d) A civil penalty collected under this section shall be deposited in the state treasury to the credit of the general revenue fund.

### <Amendment to section 552.1425(a) effective January 1, 2025>

(a) A private entity that compiles and disseminates for compensation criminal history record information may not compile or disseminate information with respect to which the entity has received notice that:

   (1)  an order of expunction has been issued under Subchapter E or F, Chapter 55A, Code of Criminal Procedure; or

   (2)  an order of nondisclosure of criminal history record information has been issued under Subchapter E-1, Chapter 411.

## § 552.143.   Confidentiality of Certain Investment Information

(a) All information prepared or provided by a private investment fund and held by a governmental body that is not listed in Section 552.0225(b) is confidential and excepted from the requirements of Section 552.021.

(b) Unless the information has been publicly released, pre-investment and post-investment diligence information, including reviews and analyses, prepared or maintained by a governmental body or a private investment fund is confidential and excepted from the

requirements of Section 552.021, except to the extent it is subject to disclosure under Subsection (c).

(c) All information regarding a governmental body's direct purchase, holding, or disposal of restricted securities that is not listed in Section 552.0225(b)(2)–(9), (11), or (13)–(16) is confidential and excepted from the requirements of Section 552.021. This subsection does not apply to a governmental body's purchase, holding, or disposal of restricted securities for the purpose of reinvestment nor does it apply to a private investment fund's investment in restricted securities. This subsection applies to information regarding a direct purchase, holding, or disposal of restricted securities by the Texas growth fund, created under Section 70, Article XVI, Texas Constitution, that is not listed in Section 552.0225(b).

(d) For the purposes of this chapter:

(1) "Private investment fund" means an entity, other than a governmental body, that issues restricted securities to a governmental body to evidence the investment of public funds for the purpose of reinvestment.

(2) "Reinvestment" means investment in a person that makes or will make other investments.

(3) "Restricted securities" has the meaning assigned by 17 C.F.R. Section 230.144(a)(3).

(e) Repealed by Acts 2011, 82nd Leg., 1st C.S., ch. 4 (S.B. 1), § 17.05(1).

(f) This section does not apply to the Texas Mutual Insurance Company or a successor to the company.

### § 552.144.   Exception:  Working Papers and Electronic Communications of Administrative Law Judges at State Office of Administrative Hearings

The following working papers and electronic communications of an administrative law judge at the State Office of Administrative Hearings are excepted from the requirements of Section 552.021:

(1) notes and electronic communications recording the observations, thoughts, questions, deliberations, or impressions of an administrative law judge;

(2) drafts of a proposal for decision;

(3) drafts of orders made in connection with conducting contested case hearings; and

(4) drafts of orders made in connection with conducting alternative dispute resolution procedures.

### § 552.145.   Exception:  Confidentiality of Texas No-Call List

The Texas no-call list created under Subchapter B, Chapter 304, Business & Commerce Code, and any information provided to or received from the administrator of the national do-not-call registry

maintained by the United States government, as provided by Sections 304.051 and 304.56, Business & Commerce Code, are excepted from the requirements of Section 552.021.

### § 552.146.   Exception:  Certain Communications with Assistant or Employee of Legislative Budget Board

(a) All written or otherwise recorded communications, including conversations, correspondence, and electronic communications, between a member of the legislature or the lieutenant governor and an assistant or employee of the Legislative Budget Board are excepted from the requirements of Section 552.021.

(b) Memoranda of a communication between a member of the legislature or the lieutenant governor and an assistant or employee of the Legislative Budget Board are excepted from the requirements of Section 552.021 without regard to the method used to store or maintain the memoranda.

(c) This section does not except from required disclosure a record or memoranda of a communication that occurs in public during an open meeting or public hearing conducted by the Legislative Budget Board.

### § 552.147.  Social Security Numbers

(a) Except as provided by Subsection (a-1), the social security number of a living person is excepted from the requirements of Section 552.021, but is not confidential under this section and this section does not make the social security number of a living person confidential under another provision of this chapter or other law.

(a-1) The social security number of an employee of a school district in the custody of the district is confidential.

(b) A governmental body may redact the social security number of a living person from any information the governmental body discloses under Section 552.021 without the necessity of requesting a decision from the attorney general under Subchapter G.

(c) Notwithstanding any other law, a county or district clerk may disclose in the ordinary course of business a social security number that is contained in information held by the clerk's office, and that disclosure is not official misconduct and does not subject the clerk to civil or criminal liability of any kind under the law of this state, including any claim for damages in a lawsuit or the criminal penalty imposed by Section 552.352.

(d) Unless another law requires a social security number to be maintained in a government document, on written request from an individual or the individual's representative the clerk shall redact within a reasonable amount of time all but the last four digits of the individual's social security number from information maintained in the clerk's official public records, including electronically stored information maintained by or under the control of the clerk. The individual or the individual's representative must identify, using a form provided by the clerk, the specific document or documents from which the partial social security number shall be redacted.

**§ 552.148.   Exception:   Confidentiality of Certain Personal Information Maintained by Municipality Pertaining to a Minor**

(a) In this section, "minor" means a person younger than 18 years of age.

(b) The following information maintained by a municipality for purposes related to the participation by a minor in a recreational program or activity is excepted from the requirements of Section 552.021:

   (1)   the name, age, home address, home telephone number, or social security number of the minor;

   (2)   a photograph of the minor; and

   (3)   the name of the minor's parent or legal guardian.

**§ 552.149.   Exception:   Confidentiality of Records of Comptroller or Appraisal District Received from Private Entity**

(a) Information relating to real property sales prices, descriptions, characteristics, and other related information received from a private entity by the comptroller or the chief appraiser of an appraisal district under Chapter 6, Tax Code, is excepted from the requirements of Section 552.021.

(b) Notwithstanding Subsection (a), the property owner or the owner's agent may, on request, obtain from the chief appraiser of the applicable appraisal district a copy of each item of information described by Section 41.461(a)(2), Tax Code, and a copy of each item of information that the chief appraiser took into consideration but does not plan to introduce at the hearing on the protest. In addition, the property owner or agent may, on request, obtain from the chief appraiser comparable sales data from a reasonable number of sales that is relevant to any matter to be determined by the appraisal review board at the hearing on the property owner's protest or by the arbitrator at the hearing on the property owner's appeal under Chapter 41A, Tax Code, of the appraisal review board's order determining the protest. Information obtained under this subsection:

   (1)   remains confidential in the possession of the property owner or agent; and

   (2)   may not be disclosed or used for any purpose except as evidence or argument at the hearing on:

      (A) the protest; or

      (B) the appeal under Chapter 41A, Tax Code.

(c) Notwithstanding Subsection (a) or Section 403.304, so as to assist a property owner or an appraisal district in a protest filed under Section 403.303, the property owner, the district, or an agent of the property owner or district may, on request, obtain from the comptroller any

information, including confidential information, obtained by the comptroller in connection with the comptroller's finding that is being protested. Confidential information obtained by a property owner, an appraisal district, or an agent of the property owner or district under the subsection:

(1) remains confidential in the possession of the property owner, district, or agent; and

(2) may not be disclosed to a person who is not authorized to receive or inspect the information.

(d) Notwithstanding Subsection (a) or Section 403.304, so as to assist a school district in the preparation of a protest filed or to be filed under Section 403.303, the school district or an agent of the school district may, on request, obtain from the comptroller or the appraisal district any information, including confidential information, obtained by the comptroller or the appraisal district that relates to the appraisal of property involved in the comptroller's finding that is being protested. Confidential information obtained by a school district or an agent of the school district under this subsection:

(1) remains confidential in the possession of the school district or agent; and

(2) may not be disclosed to a person who is not authorized to receive or inspect the information.

(e) Repealed by Acts 2021, 87th Leg, ch. 557 (S.B.334), § 2.

## § 552.150. Exception: Confidentiality of Information That Could Compromise Safety of Officer or Employee of Hospital District

(a) Information in the custody of a hospital district that relates to an employee or officer of the hospital district is excepted from the requirements of Section 552.021 if:

(1) it is information that, if disclosed under the specific circumstances pertaining to the individual, could reasonably be expected to compromise the safety of the individual, such as information that describes or depicts the likeness of the individual, information stating the times that the individual arrives at or departs from work, a description of the individual's automobile, or the location where the individual works or parks; and

(2) the employee or officer applies in writing to the hospital district's officer for public information to have the information withheld from public disclosure under this section and includes in the application:

(C) a description of the information; and

(B) the specific circumstances pertaining to the individual that demonstrate why disclosure of the information could reasonably be expected to compromise the safety of the individual.

(b) On receiving a written request for information described in an application submitted under Subsection (a)(2), the officer for public information shall:

    (1)   request a decision from the attorney general in accordance with Section 552.301 regarding withholding the information; and

    (2)   include a copy of the application submitted under Subsection (a)(2) with the request for the decision.

(c) Repealed by Acts 2011, 82nd Leg., ch. 609 (S.B. 470), § 1.

### § 552.151.   Exception:  Confidentiality of Information Concerning Information Regarding Select Agents

(a) The following information that pertains to a biological agent or toxin identified or listed as a select agent under federal law, including under the Public Health Security and Bioterrorism Preparedness and Response Act of 2002 (Pub. L. No. 107-188) and regulations adopted under that Act, is excepted from the requirements of Section 552.021:

    (1)   the specific location of a select agent within an approved facility;

    (2)   personal identifying information of an individual whose name appears in documentation relating to the chain of custody of select agents, including a materials transfer agreement; and

    (3)   the identity of an individual authorized to possess, use, or access a select agent.

(b) This section does not except from disclosure the identity of the select agents present at a facility.

(c) This section does not except from disclosure the identity of an individual faculty member or employee whose name appears or will appear on published research.

(d) This section does not except from disclosure otherwise public information relating to contracts of a governmental body.

(e) If a resident of another state is present in Texas and is authorized to possess, use, or access a select agent in conducting research or other work at a Texas facility, information relating to the identity of that individual is subject to disclosure under this chapter only to the extent the information would be subject to disclosure under the laws of the state of which the person is a resident.

### § 552.152.   Exception:  Confidentiality of Information Concerning Public Employee or Officer Personal Safety

Information in the custody of a governmental body that relates to an employee or officer of the governmental body is excepted from the requirements of Section 552.021 if, under the specific circumstances pertaining to the employee or officer, disclosure of the information would subject the employee or officer to a substantial threat of physical harm.

## § 552.153.    Proprietary Records and Trade Secrets Involved in Certain Partnerships

(a) In this section, "affected jurisdiction," "comprehensive agreement," "contracting person," "interim agreement," "qualifying project," and "responsible governmental entity" have the meanings assigned those terms by Section 2267.001.

(b) Information in the custody of a responsible governmental entity that relates to a proposal for a qualifying project authorized under Chapter 2267 is excepted from the requirements of Section 552.021 if:

   (1)   the information consists of memoranda, staff evaluations, or other records prepared by the responsible governmental entity, its staff, outside advisors, or consultants exclusively for the evaluation and negotiation of proposals filed under Chapter 2267 for which:

      (A)   disclosure to the public before or after the execution of an interim or comprehensive agreement would adversely affect the financial interest or bargaining position of the responsible governmental entity; and

      (B)   the basis for the determination under Paragraph (A) is documented in writing by the responsible governmental entity; or

   (2)   the records are provided by a proposer to a responsible governmental entity or affected jurisdiction under Chapter 2267 and contain:

      (A)   trade secrets of the proposer;

      (B)   financial records of the proposer, including balance sheets and financial statements, that are not generally available to the public through regulatory disclosure or other means; or

      (C)   work product related to a competitive bid or proposal submitted by the proposer that, if made public before the execution of an interim or comprehensive agreement, would provide a competing proposer an unjust advantage or adversely affect the financial interest or bargaining position of the responsible governmental entity or the proposer.

(c) Except as specifically provided by Subsection (b), this section does not authorize the withholding of information concerning:

   (1)   the terms of any interim or comprehensive agreement, service contract, lease, partnership, or agreement of any kind entered into by the responsible governmental entity and the contracting person or the terms of any financing arrangement that involves the use of any public money; or

   (2)   the performance of any person developing or operating a qualifying project under Chapter 2267.

(d) In this section, "proposer" has the meaning assigned by Section 2267.001.

## § 552.154.  Exception:  Name of Applicant for Executive Director, Chief Investment Officer, or Chief Audit Executive of Teacher Retirement System of Texas

The name of an applicant for  the position of executive director, chief investment officer, or chief audit executive of the Teacher Retirement System of Texas is excepted from the requirements of Section 552.021, except that the board of trustees of the Teacher Retirement System of Texas must give public notice of the names of three finalists being considered for one of those positions at least 21 days before the date of the meeting at which the final action or vote is to be taken on choosing a finalist for employment.

## § 552.155.   Exception:  Confidentiality of Certain Property Tax Appraisal Photographs

(a) Except as provided by Subsection (b) or (c), a photograph that is taken by the chief appraiser of an appraisal district or the chief appraiser's authorized representative for property tax appraisal purposes and that shows the interior of an improvement to property is confidential and excepted from the requirements of Section 552.021.

(b) A governmental body shall disclose a photograph described by Subsection (a) to a requestor who had an ownership interest in the improvement to property shown in the photograph on the date the photograph was taken.

(c) A photograph described by Subsection (a) may be used as evidence in and provided to the parties to a protest under Chapter 41, Tax Code, or an appeal of a determination by the appraisal review board under Chapter 42, Tax Code, if it is relevant to the determination of a matter protested or appealed.  A photograph that is used as evidence:

   (1)    remains confidential in the possession of the person to whom it is disclosed; and

   (2)    may not be disclosed or used for any other purpose.

(c-1) Notwithstanding any other law, a photograph described by Subsection (a) may be used to ascertain the location of equipment used to produce or transmit oil and gas for purposes of taxation if that equipment is located on January 1 in the appraisal district that appraises property for the equipment for the preceding 365 consecutive days.

## § 552.156.   Exception:  Confidentiality of Continuity of Operations Plan

(a) Except as otherwise provided by this section, the following information is excepted from disclosure under this chapter:

   (1)    a continuity of operations plan developed under Section 412.054, Labor Code; and

   (2)    all records written, produced, collected, assembled, or maintained as part of the development or review of a continuity of operations plan developed under Section 412.054, Labor Code.

(b) Forms, standards, and other instructional, informational, or planning materials adopted by the office to provide guidance or assistance to a state agency in developing a continuity of operations plan under Section 412.054, Labor Code, are public information subject to disclosure under this chapter.

(c) A governmental body may disclose or make available information that is confidential under this section to another governmental body or a federal agency.

(d) Disclosing information to another governmental body or a federal agency under this section does not waive or affect the confidentiality of that information.

### § 552.158.  Exception:  Confidentiality of Personal Information Regarding Applicant for Appointment by Governor

The following information obtained by the governor or senate in connection with an applicant for an appointment by the governor is excepted from the requirements of Section 552.021:

(1)  the applicant's home address;

(2)  the applicant's home telephone number; and

(3)  the applicant's social security number.

### § 552.159.     Exception:  Confidentiality of Certain Work Schedules

A work schedule or a time sheet of a firefighter or volunteer firefighter or emergency medical services personnel as defined by Section 773.003, Health and Safety Code, is confidential and excepted from the requirements of Section 552.021.

### § 552.160.    Confidentiality of Personal Information of Applicant for Disaster Recovery Funds

(a)     In this section, "disaster" has the meaning assigned by Section 418.004.

(b)     Except as provided by Subsection (c), the following information maintained by a governmental body is confidential:

(1)     the name, social security number, house number, street name, and telephone number of an individual or household that applies for state or federal disaster recovery funds;

(2)     the name, tax identification number, address, and telephone number of a business entity or an owner of a business entity that applies for state or federal disaster recovery funds; and

(3)     any other information the disclosure of which would identify or tend to identify a person or household that applies for state or federal disaster recovery funds.

(c)     The street name and census block group of and the amount of disaster recovery funds awarded to a person or household are not confidential after the date on which disaster recovery funds are awarded to the person or household.

## § 552.161.   Exception:  Certain Personal Information Obtained by Flood Control District

The following information obtained by a flood control district located in a county with a population of 3.3 million or more in connection with operations related to a declared disaster or flooding is excepted from the requirements of Section 552.021:

(1) a person's name;

(2) a home address;

(3) a business address;

(4) a home telephone number;

(5) a mobile telephone number;

(6) an electronic mail address;

(7) social media account information; and

(8) a social security number.

## § 552.162.   Exception:  Confidentiality of Certain Information Provided by Out-of-State Health Care Provider

Information obtained by a governmental body that was provided by an out-of-state health care provider in connection with a quality management, peer review, or best practices program that the out-of-state health care provider pays for is confidential and excepted from the requirements of Section 552.021.

## § 552.163.   Exception:   Confidentiality of Certain Attorney General Settlement Negotiations

(a) In this section, "attorney general settlement communication" means documentary materials or information collected, assembled, drafted, developed, used, received, or maintained by or on behalf of the attorney general with respect to an investigation or litigation conducted under Subchapter E, Chapter 17, Business & Commerce Code, and that reflects or is regarding negotiations made for the purpose of achieving a resolution of a matter without the need for continuing with litigation or trial.

(b) An attorney general settlement communication is privileged and not subject to disclosure under this chapter from the date the attorney general's investigation begins, as indicated in the attorney general's case management records, until the earlier of:

(1) the 90th day after the date settlement discussions are terminated; or

(2) the earliest of the date:

    (A) the case is reported closed in the attorney general's case management records;

    (B) the final judgment, assurance of voluntary compliance, or other settlement agreement is entered by the court, and the period for filing a notice of appeal has passed;

    (C) the settlement documents are executed by all parties, if the documents are not filed in court;

    (D) the order of dismissal or nonsuit disposing of all parties is entered by the court; or

    (E) all appeals are finalized.

(c) For the purpose of this section, a settlement communication does not include a document attached to or referenced in a delivered settlement proposal that is subject to disclosure under this chapter.

## SUBCHAPTER D.  OFFICER FOR PUBLIC INFORMATION

### § 552.201.  Identity of Officer for Public Information

(a) The chief administrative officer of a governmental body is the officer for public information, except as provided by Subsection (b).

(b) Each elected county officer is the officer for public information and the custodian, as defined by Section 201.003, Local Government Code, of the information created or received by that county officer's office.

### § 552.202.  Department Heads

Each department head is an agent of the officer for public information for the purposes of complying with this chapter.

### § 552.203.  General Duties of Officer for Public Information

Each officer for public information, subject to penalties provided in this chapter, shall:

(1)   make public information available for public inspection and copying;

(2)   carefully protect public information from deterioration, alteration, mutilation, loss, or unlawful removal;

(3)   repair, renovate, or rebind public information as necessary to maintain it properly; and

(4)    make reasonable efforts to obtain public information from a temporary custodian if:

    (A) the information has been requested from the governmental body;

    (B) the officer for public information is aware of facts sufficient to warrant a reasonable belief that the temporary custodian has possession, custody, or control of the information;

    (C) the officer for public information is unable to comply with the duties imposed by this chapter without obtaining the information from the temporary custodian; and

    (D) the temporary custodian has not provided the information to the officer for public information or the officer's agent.

## § 552.204.    Scope of Responsibility of Officer for Public Information

An officer for public information is responsible for the release of public information as required by this chapter.  The officer is not responsible for:

(1)    the use made of the information by the requestor; or

(2)    the release of information after it is removed from a record as a result of an update, a correction, or a change of status of the person to whom the information pertains.

## § 552.205.    Informing Public of Basic Rights and Responsibilities Under this Chapter

(a) An officer for public information shall prominently display a sign in the form prescribed by the attorney general that contains basic information about the rights of a requestor, the responsibilities of a governmental body, and the procedures for inspecting or obtaining a copy of public information under this chapter.  The officer shall display the sign at one or more places in the administrative offices of the governmental body where it is plainly visible to:

(1)    members of the public who request public information in person under this chapter; and

(2)    employees of the governmental body whose duties include receiving or responding to requests under this chapter.

(b) The attorney general by rule shall prescribe the content of the sign and the size, shape, and other physical characteristics of the sign.  In prescribing the content of the sign, the attorney general shall include plainly written basic information about the rights of a requestor, the responsibilities of a governmental body, and the procedures for inspecting or obtaining a copy of public information under this chapter that, in the opinion of the attorney general, is most useful for requestors to know and for employees of governmental bodies who receive or respond to requests for public information to know.

**SUBCHAPTER E.  PROCEDURES RELATED TO ACCESS**

**§ 552.221.  Application for Public Information; Production of Public Information**

(a) An officer for public information of a governmental body shall promptly produce public information for inspection, duplication, or both on application by any person to the officer.  In this subsection, "promptly" means as soon as possible under the circumstances, that is, within a reasonable time, without delay.

(b) An officer for public information complies with Subsection (a) by:

(1)  providing the public information for inspection or duplication in the offices of the governmental body; or

(2)  sending copies of the public information by first class United States mail if the person requesting the information requests that copies be provided and pays the postage and any other applicable charges that the requestor has accrued under Subchapter F.

(b-1) In addition to the methods of production described by Subsection (b), an officer for public information for a governmental body complies with Subsection (a) by referring a requestor to an exact Internet location or uniform resource locator (URL) address on a website maintained by the governmental body and accessible to the public if the requested information is identifiable and readily available on that website.  If the person requesting the information prefers a manner other than access through the URL, the governmental body must supply the information in the manner required by Subsection (b).

(b-2) If an officer for public information for a governmental body provides by e-mail an Internet location or uniform resource locator (URL) address as permitted by Subsection (b-1), the e-mail must contain a statement in a conspicuous font clearly indicating that the requestor may nonetheless access the requested information by inspection or duplication or by receipt through United States mail, as provided by Subsection (b).

(c) If the requested information is unavailable at the time of the request to examine because it is in active use or in storage, the officer for public information shall certify this fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available for inspection or duplication.

(d) If an officer for public information cannot produce public information for inspection or duplication within 10 business days after the date the information is requested under Subsection (a), the officer shall certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available for inspection or duplication.

(e) A request is considered to have been withdrawn if the requestor fails to inspect or duplicate the public information in the offices of the governmental body on or before the 60th day after the date the information is made available or fails to pay the postage and any other applicable charges accrued under Subchapter F on or before the 60th day after the date the requestor is informed of the charges.

## § 552.2211. Production of Public Information When Administrative Offices Closed

(a) Except as provided by Section 552.233, if a governmental body closes its physical offices, but requires staff to work, including remotely, then the governmental body shall make a good faith effort to continue responding to applications for public information, to the extent staff have access to public information responsive to an application, pursuant to this chapter while its administrative offices are closed.

(b) Failure to respond to requests in accordance with Subsection (a) may constitute a refusal to request an attorney general's decision as provided by Subchapter G or a refusal to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure under Subchapter C as described by Section 552.321(a).

## § 552.222. Permissible Inquiry by Governmental Body to Requestor

(a) The officer for public information and the officer's agent may not make an inquiry of a requestor except to establish proper identification or except as provided by Subsection (b), (c), or (c-1).

(b) If what information is requested is unclear to the governmental body, the governmental body may ask the requestor to clarify the request. If a large amount of information has been requested, the governmental body may discuss with the requestor how the scope of a request might be narrowed, but the governmental body may not inquire into the purpose for which information will be used.

(c) If the information requested relates to a motor vehicle record, the officer for public information or the officer's agent may require the requestor to provide additional identifying information sufficient for the officer or the officer's agent to determine whether the requestor is eligible to receive the information under Chapter 730, Transportation Code. In this subsection, "motor vehicle record" has the meaning assigned that term by Section 730.003, Transportation Code.

(c-1) If the information requested includes a photograph described by Section 552.155(a), the officer for public information or the officer's agent may require the requestor to provide additional information sufficient for the officer or the officer's agent to determine whether the requestor is eligible to receive the information under Section 552.155(b).

(d) If by the 61st day after the date a governmental body sends a written request for clarification or discussion under Subsection (b) or an officer for public information or agent sends a written request for additional information under Subsection (c) the governmental body, officer for public information, or agent, as applicable, does not receive a written response from the requestor, the underlying request for public information is considered to have been withdrawn by the requestor.

(e) A written request for clarification or discussion under Subsection (b) or a written request for additional information under Subsection (c) must include a statement as to the consequences of the failure by the requestor to timely respond to the request for clarification, discussion, or additional information.

(f) Except as provided by Subsection (g), if the requestor's request for public information included the requestor's physical or mailing address, the request may not be considered to have been withdrawn under Subsection (d) unless the governmental body, officer for public information, or agent, as applicable, sends the request for clarification or discussion under Subsection (b) or the written request for additional information under Subsection (c) to that address by certified mail.

(g) If the requestor's request for public information was sent by electronic mail, the request may be considered to have been withdrawn under Subsection (d) if:

(1) the governmental body, officer for public information, or agent, as applicable, sends the request for clarification or discussion under Subsection (b) or the written request for additional information under Subsection (c) by electronic mail to the same electronic mail address from which the original request was sent or to another electronic mail address provided by the requestor; and

(2) the governmental body, officer for public information, or agent, as applicable, does not receive from the requestor a written response or response by electronic mail within the period described by Subsection (d).

### § 552.223.    Uniform Treatment of Requests for Information

The officer for public information or the officer's agent shall treat all requests for information uniformly without regard to the position or occupation of the requestor, the person on whose behalf the request is made, or the status of the individual as a member of the media.

### § 552.224.    Comfort and Facility

The officer for public information or the officer's agent shall give to a requestor all reasonable comfort and facility for the full exercise of the right granted by this chapter.

### § 552.225.    Time for Examination

(a) A requestor must complete the examination of the information not later than the 10th business day after the date the custodian of the information makes it available. If the requestor does not complete the examination of the information within 10 business days after the date the custodian of the information makes the information available and does not file a request for additional time under Subsection (b), the requestor is considered to have withdrawn the request.

(b) The officer for public information shall extend the initial examination period by an additional 10 business days if, within the initial period, the requestor files with the officer for public information a written request for additional time. The officer for public information shall extend an additional examination period by another 10 business days if, within the additional period, the requestor files with the officer for public information a written request for more additional time.

(c) The time during which a person may examine information may be interrupted by the officer for public information if the information is needed for use by the governmental body. The period of interruption is not considered to be a part of the time during which the person may examine the information.

## § 552.226. Removal of Original Record

This chapter does not authorize a requestor to remove an original copy of a public record from the office of a governmental body.

## § 552.227. Research of State Library Holdings Not Required

An officer for public information or the officer's agent is not required to perform general research within the reference and research archives and holdings of state libraries.

## § 552.228. Providing Suitable Copy of Public Information Within Reasonable Time

(a) It shall be a policy of a governmental body to provide a suitable copy of public information within a reasonable time after the date on which the copy is requested.

(b) If public information exists in an electronic or magnetic medium, the requestor may request a copy in an electronic medium, such as on diskette or on magnetic tape. A governmental body shall provide a copy in the requested medium if:

  (1) the governmental body has the technological ability to produce a copy of the requested information in the requested medium;

  (2) the governmental body is not required to purchase any software or hardware to accommodate the request; and

  (3) provision of a copy of the information in the requested medium will not violate the terms of any copyright agreement between the governmental body and a third party.

(c) If a governmental body is unable to comply with a request to produce a copy of information in a requested medium for any of the reasons described by this section, the governmental body shall provide a copy in another medium that is acceptable to the requestor. A governmental body is not required to copy information onto a diskette or other material provided by the requestor but may use its own supplies.

## § 552.229. Consent to Release Information Under Special Right of Access

(a) Consent for the release of information excepted from disclosure to the general public but available to a specific person under Sections 552.023 and 552.307 must be in writing and signed by the specific person or the person's authorized representative.

(b) An individual under 18 years of age may consent to the release of information under this section only with the additional written authorization of the individual's parent or guardian.

(c) An individual who has been adjudicated incompetent to manage the individual's personal affairs or for whom an attorney ad litem has been appointed may consent to the release of information under this section only by the written authorization of the designated legal guardian or attorney ad litem.

## § 552.230.   Rules of Procedure for Inspection and Copying of Public Information

(a) A governmental body may promulgate reasonable rules of procedure under which public information may be inspected and copied efficiently, safely, and without delay.

(b) A rule promulgated under Subsection (a) may not be inconsistent with any provision of this chapter.

## § 552.231.   Responding to Requests for Information That Require Programming or Manipulation of Data

(a) A governmental body shall provide to a requestor the written statement described by Subsection (b) if the governmental body determines:

(1)   that responding to a request for public information will require programming or manipulation of data; and

(2)   that:

(A)   compliance with the request is not feasible or will result in substantial interference with its ongoing operations; or

(B)   the information could be made available in the requested form only at a cost that covers the programming and manipulation of data.

(b) The written statement must include:

(1)   a statement that the information is not available in the requested form;

(2)   a description of the form in which the information is available;

(3)   a description of any contract or services that would be required to provide the information in the requested form;

(4)   a statement of the estimated cost of providing the information in the requested form, as determined in accordance with the rules established by the attorney general under Section 552.262; and

(5)   a statement of the anticipated time required to provide the information in the requested form.

(c) The governmental body shall provide the written statement to the requestor within 20 days after the date of the governmental body's receipt of the request.  The governmental body has

an additional 10 days to provide the statement if the governmental body gives written notice to the requestor, within 20 days after the date of receipt of the request, that the additional time is needed.

(d) On providing the written statement to the requestor as required by this section, the governmental body does not have any further obligation to provide the information in the requested form or in the form in which it is available unless within 30 days the requestor states in writing to the governmental body that the requestor:

   (1) wants the governmental body to provide the information in the requested form according to the cost and time parameters set out in the statement or according to other terms to which the requestor and the governmental body agree; or

   (2) wants the information in the form in which it is available.

(d-1) If a requestor does not make a timely written statement under Subsection (d), the requestor is considered to have withdrawn the request for information.

(e) The officer for public information of a governmental body shall establish policies that assure the expeditious and accurate processing of requests for information that require programming or manipulation of data. A governmental body shall maintain a file containing all written statements issued under this section in a readily accessible location.

## § 552.232. Responding to Repetitious or Redundant Requests

(a) A governmental body that determines that a requestor has made a request for information for which the governmental body has previously furnished copies to the requestor or made copies available to the requestor on payment of applicable charges under Subchapter F, shall respond to the request, in relation to the information for which copies have been already furnished or made available, in accordance with this section, except that:

   (1) this section does not prohibit the governmental body from furnishing the information or making the information available to the requestor again in accordance with the request; and

   (2) the governmental body is not required to comply with this section in relation to information that the governmental body simply furnishes or makes available to the requestor again in accordance with the request.

(b) The governmental body shall certify to the requestor that copies of all or part of the requested information, as applicable, were previously furnished to the requestor or made available to the requestor on payment of applicable charges under Subchapter F. The certification must include:

   (1) a description of the information for which copies have been previously furnished or made available to the requestor;

   (2) the date that the governmental body received the requestor's original request for that information;

(3) the date that the governmental body previously furnished copies of or made available copies of the information to the requestor;

(4) a certification that no subsequent additions, deletions, or corrections have been made to that information; and

(5) the name, title, and signature of the officer for public information or the officer's agent making the certification.

(c) A charge may not be imposed for making and furnishing a certification required under Subsection (b).

(d) This section does not apply to information for which the governmental body has not previously furnished copies to the requestor or made copies available to the requestor on payment of applicable charges under Subchapter F. A request by the requestor for information for which copies have not previously been furnished or made available to the requestor, including information for which copies were not furnished or made available because the information was redacted from other information that was furnished or made available or because the information did not yet exist at the time of an earlier request, shall be treated in the same manner as any other request for information under this chapter.

### § 552.2325. Temporary Suspension of Requirements for Governmental Body Impacted by Catastrophe

(a) In this section:

(1) "Catastrophe" means a condition or occurrence that directly interferes with the ability of a governmental body to comply with the requirements of this chapter, including:

(A) fire, flood, earthquake, hurricane, tornado, or wind, rain, or snow storm;

(B) power failure, transportation failure, or interruption of communications facilities;

(C) epidemic; or

(D) riot, civil disturbance, enemy attack, or other actual or threatened act of lawlessness or violence.

(2) "Catastrophe" does not mean a period when staff is required to work remotely and can access information responsive to an application for information electronically, but the physical office of the governmental body is closed.

(3) "Suspension period" means the period of time during which a governmental body may suspend the applicability of the requirements of this chapter to the governmental body under this section.

(b) The requirements of this chapter do not apply to a governmental body during the suspension period determined by the governmental body under Subsections (d) and (e) if the governmental body:

    (1)   is currently significantly impacted by a catastrophe such that the catastrophe directly causes the inability of a governmental body to comply with the requirements of this chapter; and

    (2)   complies with the requirements of this section.

(c) A governmental body that elects to suspend the applicability of the requirements of this chapter to the governmental body must submit notice to the office of the attorney general that the governmental body is currently impacted by a catastrophe and has elected to suspend the applicability of those requirements during the initial suspension period determined under Subsection (d). The notice must be on the form prescribed by the office of the attorney general under Subsection (j).

(d) A governmental body may suspend the applicability of the requirements of this chapter to the governmental body for an initial suspension period. The governmental body may suspend the applicability of the requirements of this chapter under this subsection only once for each catastrophe. The initial suspension period may not exceed seven consecutive days and must occur during the period that:

    (1)   begins not earlier than the second day before the date the governmental body submits notice to the office of the attorney general under Subsection (c); and

    (2)   ends not later than the seventh day after the date the governmental body submits that notice.

(e) A governmental body may extend an initial suspension period if the governing body determines that the governing body is still impacted by the catastrophe on which the initial suspension period was based. The initial suspension period may be extended one time for not more than seven consecutive days that begin on the day following the day the initial suspension period ends. The governing body must submit notice of the extension to the office of the attorney general on the form prescribed by the office under Subsection (l).

(f) A governmental body that initiates a suspension period under Subsection (d) may not initiate another suspension period related to the same catastrophe, except for a single extension period as prescribed in Subsection (e).

(g) The combined suspension period for a governmental body filing under Subsections (d) and (e) may not exceed a total of 14 consecutive calendar days with respect to any single catastrophe.

(h) A governmental body that suspends the applicability of the requirements of this chapter to the governmental body under this section must provide notice to the public of the suspension in a place readily accessible to the public and in each other location the governmental body is required to post a notice under Subchapter C, Chapter 551. The governmental body must maintain the notice of the suspension during the suspension period.

(i) Notwithstanding another provision of this chapter, a request for public information received by a governmental body during a suspension period determined by the governmental body is considered to have been received by the governmental body on the first business day after the date the suspension period ends.

(j) The requirements of this chapter related to a request for public information received by a governmental body before the date an initial suspension period determined by the governmental body begins are tolled until the first business day after the date the suspension period ends.

(k) The office of the attorney general shall continuously post on the Internet website of the office each notice submitted to the office under this section from the date the office receives the notice until the first anniversary of that date.

(l) The office of the attorney general shall prescribe the form of the notice that a governmental body must submit to the office under Subsections (c) and (e). The notice must require the governmental body to:

    (1) identify and describe the catastrophe that the governmental body is currently impacted by;

    (2) state the date the initial suspension period determined by the governmental body under Subsection (d) begins and the date that period ends;

    (3) if the governmental body has determined to extend the initial suspension period under Subsection (e):

        (A) state that the governmental body continues to be impacted by the catastrophe identified in Subdivision (1); and

        (B) state the date the extension to the initial suspension period begins and the date the period ends; and

    (4) provide any other information the office of the attorney general determines necessary.

(m) Upon conclusion of any suspension period initiated pursuant to Subsections (d) or (e), the governmental body shall immediately resume compliance with all requirements of this chapter.

## § 552.233. Ownership of Public Information

(a) A current or former officer or employee of a governmental body does not have, by virtue of the officer's or employee's position or former position, a personal or property right to public information the officer or employee created or received while acting in an official capacity.

(b) A temporary custodian with possession, custody, or control of public information shall surrender or return the information to the governmental body not later than the 10th day after

the date the officer for public information of the governmental body or the officer's agent requests the temporary custodian to surrender or return the information.

(c)     A temporary custodian's failure to surrender or return public information as required by Subsection (b) is grounds for disciplinary action by the governmental body that employs the temporary custodian or any other applicable penalties provided by this chapter or other law.

(d)     For purposes of the application of Subchapter G to information surrendered or returned to a governmental body by a temporary custodian under Subsection (b), the governmental body is considered to receive the request for that information on the date the information is surrendered or returned to the governmental body.

## § 552.234.    Method of Making Written Request for Public Information

(a)     A person may make a written request for public information under this chapter only by delivering the request by one of the following methods to the applicable officer for public information or a person designated by that officer:

(1) United States mail;

(2) electronic mail;

(3) hand delivery; or

(4) any other appropriate method approved by the governmental body, including:

(A) facsimile transmission; and

(B) electronic submission through the governmental body's Internet website.

(b)     For the purpose of Subsection (a)(4), a governmental body is considered to have approved a method described by that subdivision only if the governmental body includes a statement that a request for public information may be made by that method on:

(1) the sign required to be displayed by the governmental body under Section 552.205; or

(2) the governmental body's Internet website.

(c) A governmental body may designate one mailing address and one electronic mail address for receiving written requests for public information. The governmental body shall provide the designated mailing address and electronic mailing address to any person on request.

(d) A governmental body that posts the mailing address and electronic mail address designated by the governmental body under Subsection (c) on the governmental body's Internet website or that prints those addresses on the sign required to be displayed by the governmental body under Section 552.205 is not required to respond to a written request for public information unless the request is received:

(1) at one of those addresses;

(2) by hand delivery; or

(3) by a method described by Subsection (a)(4) that has been approved by the governmental body.

## § 552.235.  Public Information Request Form

(a)  The attorney general shall create a public information request form that provides a requestor the option of excluding from a request information that the governmental body determines is:

(1) confidential; or

(2) subject to an exception to disclosure that the governmental body would assert if the information were subject to the request.

(b)  A governmental body that allows requestors to use the form described by Subsection (a) and maintains an Internet website shall post the form on its website.

## SUBCHAPTER F.  CHARGES FOR PROVIDING COPIES OF PUBLIC INFORMATION

## § 552.261.  Charge for Providing Copies of Public Information

(a) The charge for providing a copy of public information shall be an amount that reasonably includes all costs related to reproducing the public information, including costs of materials, labor, and overhead.  If a request is for 50 or fewer pages of paper records, the charge for providing the copy of the public information may not include costs of materials, labor, or overhead, but shall be limited to the charge for each page of the paper record that is photocopied, unless the pages to be photocopied are located in:

(1)  two or more separate buildings that are not physically connected with each other; or

(2)  a remote storage facility.

(b) If the charge for providing a copy of public information includes costs of labor, the requestor may require the governmental body's officer for public information or the officer's agent to provide the requestor with a written statement as to the amount of time that was required to produce and provide the copy.  The statement must be signed by the officer for public information or the officer's agent and the officer's or the agent's name must be typed or legibly printed below the signature.  A charge may not be imposed for providing the written statement to the requestor.

(c) For purposes of Subsection (a), a connection of two buildings by a covered or open sidewalk, an elevated or underground passageway, or a similar facility is insufficient to cause the buildings to be considered separate buildings.

(d) Charges for providing a copy of public information are considered to accrue at the time the governmental body advises the requestor that the copy is available on payment of the applicable charges.

(e) Except as otherwise provided by this subsection, all requests received in one calendar day from an individual may be treated as a single request for purposes of calculating costs under this chapter. A governmental body may not combine multiple requests under this subsection from separate individuals who submit requests on behalf of an organization.

### § 552.2615. Required Itemized Estimate of Charges

(a) If a request for a copy of public information will result in the imposition of a charge under this subchapter that exceeds $40, or a request to inspect a paper record will result in the imposition of a charge under Section 552.271 that exceeds $40, the governmental body shall provide the requestor with a written itemized statement that details all estimated charges that will be imposed, including any allowable charges for labor or personnel costs. If an alternative less costly method of viewing the records is available, the statement must include a notice that the requestor may contact the governmental body regarding the alternative method. The governmental body must inform the requestor of the responsibilities imposed on the requestor by this section and of the rights granted by this entire section and give the requestor the information needed to respond, including:

  (1) that the requestor must provide the governmental body with a mailing, facsimile transmission, or electronic mail address to receive the itemized statement and that it is the requestor's choice which type of address to provide;

  (2) that the request is considered automatically withdrawn if the requestor does not respond in writing to the itemized statement and any updated itemized statement in the time and manner required by this section; and

  (3) that the requestor may respond to the statement by delivering the written response to the governmental body by mail, in person, by facsimile transmission if the governmental body is capable of receiving documents transmitted in that manner, or by electronic mail if the governmental body has an electronic mail address.

(b) A request described by Subsection (a) is considered to have been withdrawn by the requestor if the requestor does not respond in writing to the itemized statement by informing the governmental body within 10 business days after the date the statement is sent to the requestor that:

  (1) the requestor will accept the estimated charges;

  (2) the requestor is modifying the request in response to the itemized statement; or

  (3) the requestor has sent to the attorney general a complaint alleging that the requestor has been overcharged for being provided with a copy of the public information.

(c) If the governmental body later determines, but before it makes the copy or the paper record available, that the estimated charges will exceed the charges detailed in the written itemized statement by 20 percent or more, the governmental body shall send to the requestor a written updated itemized statement that details all estimated charges that will be imposed, including any allowable charges for labor or personnel costs. If the requestor does not respond in writing to the updated estimate in the time and manner described by Subsection (b), the request is considered to have been withdrawn by the requestor.

(d) If the actual charges that a governmental body imposes for a copy of public information, or for inspecting a paper record under Section 552.271, exceeds $40, the charges may not exceed:

   (1)   the amount estimated in the updated itemized statement; or

   (2)   if an updated itemized statement is not sent to the requestor, an amount that exceeds by 20 percent or more the amount estimated in the itemized statement.

(e) An itemized statement or updated itemized statement is considered to have been sent by the governmental body to the requestor on the date that:

   (1)   the statement is delivered to the requestor in person;

   (2)   the governmental body deposits the properly addressed statement in the United States mail; or

   (3)   the governmental body transmits the properly addressed statement by electronic mail or facsimile transmission, if the requestor agrees to receive the statement by electronic mail or facsimile transmission, as applicable.

(f) A requestor is considered to have responded to the itemized statement or the updated itemized statement on the date that:

   (1)   the response is delivered to the governmental body in person;

   (2)   the requestor deposits the properly addressed response in the United States mail; or

   (3)   the requestor transmits the properly addressed response to the governmental body by electronic mail or facsimile transmission.

(g) The time deadlines imposed by this section do not affect the application of a time deadline imposed on a governmental body under Subchapter G.

## § 552.262.   Rules of the Attorney General

(a) The attorney general shall adopt rules for use by each governmental body in determining charges for providing copies of public information under this subchapter and in determining the charge, deposit, or bond required for making public information that exists in a paper record available for inspection as authorized by Sections 552.271(c) and (d). The rules adopted by the attorney general shall be used by each governmental body in determining charges for

providing copies of public information and in determining the charge, deposit, or bond required for making public information that exists in a paper record available for inspection, except to the extent that other law provides for charges for specific kinds of public information. The charges for providing copies of public information may not be excessive and may not exceed the actual cost of producing the information or for making public information that exists in a paper record available for inspection. A governmental body, other than an agency of state government, may determine its own charges for providing copies of public information and its own charge, deposit, or bond for making public information that exists in a paper record available for inspection but may not charge an amount that is greater than 25 percent more than the amount established by the attorney general unless the governmental body requests an exemption under Subsection (c).

(b) The rules of the attorney general shall prescribe the methods for computing the charges for providing copies of public information in paper, electronic, and other kinds of media and the charge, deposit, or bond required for making public information that exists in a paper record available for inspection. The rules shall establish costs for various components of charges for providing copies of public information that shall be used by each governmental body in providing copies of public information or making public information that exists in a paper record available for inspection.

(c) A governmental body may request that it be exempt from part or all of the rules adopted by the attorney general for determining charges for providing copies of public information or the charge, deposit, or bond required for making public information that exists in a paper record available for inspection. The request must be made in writing to the attorney general and must state the reason for the exemption. If the attorney general determines that good cause exists for exempting a governmental body from a part or all of the rules, the attorney general shall give written notice of the determination to the governmental body within 90 days of the request. On receipt of the determination, the governmental body may amend its charges for providing copies of public information or its charge, deposit, or bond required for making public information that exists in a paper record available for inspection according to the determination of the attorney general.

(d) The attorney general shall publish annually in the Texas Register a list of the governmental bodies that have authorization from the attorney general to adopt any modified rules for determining the cost of providing copies of public information or making public information that exists in a paper record available for inspection.

(e) The rules of the attorney general do not apply to a state governmental body that is not a state agency for purposes of Subtitle D, Title 10.

### § 552.263. Bond for Payment of Costs or Cash Prepayment for Preparation of Copy of Public Information

(a) An officer for public information or the officer's agent may require a deposit or bond for payment of anticipated costs for the preparation of a copy of public information if:

(1)　the officer for public information or the officer's agent has provided the requestor with the written itemized statement required under Section 552.2615 detailing the estimated charge for providing the copy; and

(2)　the charge for providing the copy of the public information specifically requested by the requestor is estimated by the governmental body to exceed:

(A)　$100, if the governmental body has more than 15 full-time employees; or

(B)　$50, if the governmental body has fewer than 16 full-time employees.

(b)　The officer for public information or the officer's agent may not require a deposit or bond be paid under Subsection (a) as a down payment for copies of public information that the requestor may request in the future.

(c)　An officer for public information or the officer's agent may require a deposit or bond for payment of unpaid amounts owing to the governmental body in relation to previous requests that the requestor has made under this chapter before preparing a copy of public information in response to a new request if those unpaid amounts exceed $100. The officer for public information or the officer's agent may not seek payment of those unpaid amounts through any other means.

(d)　The governmental body must fully document the existence and amount of those unpaid amounts or the amount of any anticipated costs, as applicable, before requiring a deposit or bond under this section. The documentation is subject to required public disclosure under this chapter.

(e)　For purposes of Subchapters F and G, a request for a copy of public information is considered to have been received by a governmental body on the date the governmental body receives the deposit or bond for payment of anticipated costs or unpaid amounts if the governmental body's officer for public information or the officer's agent requires a deposit or bond in accordance with this section.

(e-1)　If a requestor modifies the request in response to the requirement of a deposit or bond authorized by this section, the modified request is considered a separate request for the purposes of this chapter and is considered received on the date the governmental body receives the written modified request.

(f)　A requestor who fails to make a deposit or post a bond required under Subsection (a) before the 10th business day after the date the deposit or bond is required is considered to have withdrawn the request for the copy of the public information that precipitated the requirement of the deposit or bond.

## § 552.264.　Copy of Public Information Requested by Member of Legislature

One copy of public information that is requested from a state agency by a member, agency, or committee of the legislature under Section 552.008 shall be provided without charge.

**§ 552.265.   Charge For Paper Copy Provided by District or County Clerk**

The charge for providing a paper copy made by a district or county clerk's office shall be the charge provided by Chapter 51 of this code, Chapter 118, Local Government Code, or other applicable law.

**§ 552.266.   Charge For Copy of Public Information Provided by Municipal Court Clerk**

The charge for providing a copy made by a municipal court clerk shall be the charge provided by municipal ordinance.

**§ 552.2661.  Charge for Copy of Public Information Provided by School District**

A school district that receives a request to produce public information for inspection or publication or to produce copies of public information in response to a requestor who, within the preceding 180 days, has accepted but failed to pay written itemized statements of estimated charges from the district as provided under Section 552.261(b) may require the requestor to pay the estimated charges for the request before the request is fulfilled.

**§ 552.267.   Waiver or Reduction of Charge for Providing Copy of Public Information**

(a) A governmental body shall provide a copy of public information without charge or at a reduced charge if the governmental body determines that waiver or reduction of the charge is in the public interest because providing the copy of the information primarily benefits the general public.

(b) If the cost to a governmental body of processing the collection of a charge for providing a copy of public information will exceed the amount of the charge, the governmental body may waive the charge.

**§ 552.268.   Efficient Use of Public Resources**

A governmental body shall make reasonably efficient use of supplies and other resources to avoid excessive reproduction costs.

**§ 552.269.   Overcharge or Overpayment for Copy of Public Information**

(a) A person who believes the person has been overcharged for being provided with a copy of public information may complain to the attorney general in writing of the alleged overcharge, setting forth the reasons why the person believes the charges are excessive.  The attorney general shall review the complaint and make a determination in writing as to the appropriate charge for providing the copy of the requested information.  The governmental body shall respond to the attorney general to any written questions asked of the governmental body by the attorney general regarding the charges for providing the copy of the public information. The response must be made to the attorney general within 10 business days after the date the questions are received by the governmental body.  If the attorney general determines that a governmental body has overcharged for providing the copy of requested public information,

the governmental body shall promptly adjust its charges in accordance with the determination of the attorney general.

(b) A person who overpays for a copy of public information because a governmental body refuses or fails to follow the rules for charges adopted by the attorney general is entitled to recover three times the amount of the overcharge if the governmental body did not act in good faith in computing the costs.

### § 552.270.  Charge for Government Publication

(a) This subchapter does not apply to a publication that is compiled and printed by or for a governmental body for public dissemination.  If the cost of the publication is not determined by state law, a governmental body may determine the charge for providing the publication.

(b) This section does not prohibit a governmental body from providing a publication free of charge if state law does not require that a certain charge be made.

### § 552.271.  Inspection of Public Information in Paper Record if Copy Not Requested

(a) If the requestor does not request a copy of public information, a charge may not be imposed for making available for inspection any public information that exists in a paper record, except as provided by this section.

(b) If a requested page contains confidential information that must be edited from the record before the information can be made available for inspection, the governmental body may charge for the cost of making a photocopy of the page from which confidential information must be edited. No charge other than the cost of the photocopy may be imposed under this subsection.

(c) Except as provided by Subsection (d), an officer for public information or the officer's agent may require a requestor to pay, or to make a deposit or post a bond for the payment of, anticipated personnel costs for making available for inspection public information that exists in paper records only if:

   (1)   the public information specifically requested by the requestor:

      (A)   is older than five years; or

      (B)   completely fills, or when assembled will completely fill, six or more archival boxes; and

   (2)   the officer for public information or the officer's agent estimates that more than five hours will be required to make the public information available for inspection.

(d) If the governmental body has fewer than 16 full-time employees, the payment, the deposit, or the bond authorized by Subsection (c) may be required only if:

   (1)   the public information specifically requested by the requestor:

    (A)   is older than three years; or

    (B)   completely fills, or when assembled will completely fill, three or more archival boxes; and

  (2)   the officer for public information or the officer's agent estimates that more than two hours will be required to make the public information available for inspection.

(e)  A requestor who has exceeded a limit established by a governmental body under Section 552.275 may not inspect public information on behalf of another requestor unless the requestor who exceeded the limit has paid each statement issued by the governmental body under Section 552.275(e).

## § 552.272.   Inspection of Electronic Record if Copy Not Requested

(a)  In response to a request to inspect information that exists in an electronic medium and that is not available directly on-line to the requestor, a charge may not be imposed for access to the information, unless complying with the request will require programming or manipulation of data.  If programming or manipulation of data is required, the governmental body shall notify the requestor before assembling the information and provide the requestor with an estimate of charges that will be imposed to make the information available.  A charge under this section must be assessed in accordance with this subchapter.

(b)  If public information exists in an electronic form on a computer owned or leased by a governmental body and if the public has direct access to that computer through a computer network or other means, the electronic form of the information may be electronically copied from that computer without charge if accessing the information does not require processing, programming, or manipulation on the government-owned or government-leased computer before the information is copied.

(c)  If public information exists in an electronic form on a computer owned or leased by a governmental body and if the public has direct access to that computer through a computer network or other means and the information requires processing, programming, or manipulation before it can be electronically copied, a governmental body may impose charges in accordance with this subchapter.

(d)  If information is created or kept in an electronic form, a governmental body is encouraged to explore options to separate out confidential information and to make public information available to the public through electronic access through a computer network or by other means.

(e)  The provisions of this section that prohibit a governmental entity from imposing a charge for access to information that exists in an electronic medium do not apply to the collection of a fee set by the supreme court after consultation with the Judicial Committee on Information Technology as authorized by Section 77.031 for the use of a computerized electronic judicial information system.

(f)  A requestor who has exceeded a limit established by a governmental body under Section 552.275 may not inspect public information on behalf of another requestor unless the requestor

who exceeded the limit has paid each statement issued by the governmental body under Section 552.275(e).

### § 552.274.    Report by Attorney General on Cost of Copies

(a)  The attorney general shall:

  (1)   biennially update a report prepared by the attorney general about the charges made by state agencies for providing copies of public information; and

  (2)   provide a copy of the updated report on the attorney general's open records page on the Internet not later than March 1 of each even-numbered year.

(b)  Repealed by Acts 2011, 82nd Leg., ch. 1083 (S.B. 1179), § 25(62).

(c)  In this section, "state agency" has the meaning assigned by Sections 2151.002(2)(A) and (C).

### § 552.275.    Requests That Require Large Amounts of Employee or Personnel Time

(a)  A governmental body may establish reasonable monthly and yearly limits on the amount of time that personnel of the governmental body are required to spend producing public information for inspection or duplication by a requestor, or providing copies of public information to a requestor, without recovering its costs attributable to that personnel time.

(a-1)  For the purposes of this section, all county officials who have designated the same officer for public information may calculate the amount of time that personnel are required to spend collectively for purposes of the monthly or yearly limit.

(b)  A yearly time limit established under Subsection (a) may not be less than 36 hours for a requestor during the 12-month period that corresponds to the fiscal year of the governmental body.  A monthly time limit established under Subsection (a) may not be less than 15 hours for a requestor for a one-month period.

(c)  In determining whether a time limit established under Subsection (a) applies, any time spent complying with a request for public information submitted in the name of a minor, as defined by Section 101.003(a), Family Code, is to be included in the calculation of the cumulative amount of time spent complying with a request for public information by a parent, guardian, or other person who has control of the minor under a court order and with whom the minor resides, unless that parent, guardian, or other person establishes that another person submitted that request in the name of the minor.

(d)  If a governmental body establishes a time limit under Subsection (a), each time the governmental body complies with a request for public information, the governmental body shall provide the requestor with a written statement of the amount of personnel time spent complying with that request and the cumulative amount of time spent complying with requests for public information from that requestor during the applicable monthly or yearly period. The amount of time spent preparing the written statement may not be included in the amount of

time included in the statement provided to the requestor under this subsection unless the requestor's time limit for the period has been exceeded.

(e) Subject to Subsection (e-1), if in connection with a request for public information, the cumulative amount of personnel time spent complying with requests for public information from the same requestor equals or exceeds the limit established by the governmental body under Subsection (a), the governmental body shall provide the requestor with a written estimate of the total cost, including materials, personnel time, and overhead expenses, necessary to comply with the request. The written estimate must be provided to the requestor on or before the 10th day after the date on which the public information was requested. The amount of this charge relating to the cost of locating, compiling, and producing the public information shall be established by rules prescribed by the attorney general under Sections 552.262(a) and (b).

(e-1) This subsection applies only to a request made by a requestor who has made a previous request to a governmental body that has not been withdrawn, for which the governmental body has located and compiled documents in response, and for which the governmental body has issued a statement under Subsection (e) that remains unpaid on the date the requestor submits the new request. A governmental body is not required to locate, compile, produce, or provide copies of documents or prepare a statement under Subsection (e) in response to a new request described by this subsection until the date the requestor pays each unpaid statement issued under Subsection (e) in connection with a previous request or withdraws the previous request to which the statement applies.

(f) If the governmental body determines that additional time is required to prepare the written estimate under Subsection (e) and provides the requestor with a written statement of that determination, the governmental body must provide the written statement under that subsection as soon as practicable, but on or before the 10th day after the date the governmental body provided the statement under this subsection.

(g) If a governmental body provides a requestor with a written statement under Subsection (e) or (o) and the time limits prescribed by Subsection (a) regarding the requestor have been exceeded, the governmental body is not required to produce public information for inspection or duplication or to provide copies of public information in response to the requestor's request unless on or before the 10th day after the date the governmental body provided the written statement under that subsection, the requestor submits a payment of the amount stated in the written statement provided under Subsection (e) or provides identification or submits payment as required by Subsection (o), as applicable.

(h) If the requestor fails or refuses to provide identification or submit payment under Subsection (g), the requestor is considered to have withdrawn the requestor's pending request for public information.

(i) This section does not prohibit a governmental body from providing a copy of public information without charge or at a reduced rate under Section 552.267 or from waiving a charge for providing a copy of public information under that section.

(j) This section does not apply if the requestor is and individual who, for a substantial portion of the individual's livelihood or for substantial financial gain, gathers, compiles, prepares,

collects, photographs, records, writes, edits, reports, investigates, processes, or publishes news or information for and is seeking the information for:

(1)   dissemination by a new medium or communications service provider, including:

   (A)   an individual who supervises or assists in gathering, preparing, and disseminating the news or information; or

   (B)   an individual who is or was a journalist, scholar, or researcher employed by an institution of higher education at the time the person made the request for information; or

(2)   creation or maintenance of an abstract plant as described by Section 2501.004, Insurance Code.

(k)  This section does not apply if the requestor is an elected official of the United States, this state, or a political subdivision of this state.

(l)  This section does not apply if the requestor is a representative of a publicly funded legal services organization that is exempt from federal income taxation under Section 501(a), Internal Revenue Code of 1986, as amended, by being listed as an exempt entity under Section 501(c)(3) of that code.

(m) In this section"

   (1)   "Communication service provider" has the meaning assigned by Section 22.021, Civil Practice and Remedies Code.

   (2)   "News Medium" means a newspaper, magazine or periodical, a book publisher, a news agency, a wire service, an FCC-licensed radio or television station or network of such stations, a cable, satellite, or other transmission system or carrier or channel, or a channel or programming service for a station, network, system, or carrier, or an audio or audiovisual production company or Internet company or provider, or the parent, subsidiary, division, or affiliate of that entity, that disseminates news or information to the public by any means, including:

   (A)  print;

   (B)  television;

   (C)  radio;

   (D)  photographic;

   (E)  mechanical;

   (F)  electronic; and

(G) other means, known or unknown, that are accessible to the public.

(n) A governmental body may request photo identification from a requestor for the sole purpose of establishing that the requestor has not:

(1) exceeded a limit established by the governmental body under Subsection (a); and

(2) concealed the requestor's identity.

(o) A request for photo identification under Subsection (n) must include a statement under Subsection (e) applicable to the requestor who has exceeded a limit established by the governmental body and a statement that describes each specific reason why Subsection (n) may apply to the requestor. The governmental body shall accept as proof of a requestor's identification physical presentment of photo identification or an image of the photo identification that is transmitted electronically or through the mail. A requestor from whom a governmental body has requested photo identification under Subsection (n) may decline to provide identification and obtain the requested information by paying the charge assessed in the statement.

## SUBCHAPTER G.  ATTORNEY GENERAL DECISIONS

### § 552.301.  Request for Attorney General Decision

(a) A governmental body that receives a written request for information that it wishes to withhold from public disclosure and that it considers to be within one of the exceptions under Subchapter C must ask for a decision from the attorney general about whether the information is within that exception if there has not been a previous determination about whether the information falls within one of the exceptions.

(a-1) For the purposes of this subchapter, if a governmental body receives a written request by United States mail and cannot adequately establish the actual date on which the governmental body received the request, the written request is considered to have been received by the governmental body on the third business day after the date of the postmark on a properly addressed request.

(b) The governmental body must ask for the attorney general's decision and state the exceptions that apply within a reasonable time but not later than the 10th business day after the date of receiving the written request.

(c) Repealed by Acts 2019, 86th Leg., ch. 1340 (S.B. 944), § 7.

(d) A governmental body that requests an attorney general decision under Subsection (a) must provide to the requestor within a reasonable time but not later than the 10th business day after the date of receiving the requestor's written request:

(1) a written statement that the governmental body wishes to withhold the requested information and has asked for a decision from the attorney general about whether the information is within an exception to public disclosure; and

 (2) a copy of the governmental body's written communication to the attorney general asking for the decision or, if the governmental body's written communication to the attorney general discloses the requested information, a redacted copy of that written communication.

(e) A governmental body that requests an attorney general decision under Subsection (a) must within a reasonable time but not later than the 15th business day after the date of receiving the written request:

 (1) submit to the attorney general:

  (A) written comments stating the reasons why the stated exceptions apply that would allow the information to be withheld;

  (B) a copy of the written request for information;

  (C) a signed statement as to the date on which the written request for information was received by the governmental body or evidence sufficient to establish that date; and

  (D) a copy of the specific information requested, or submit representative samples of the information if a voluminous amount of information was requested; and

 (2) label that copy of the specific information, or of the representative samples, to indicate which exceptions apply to which parts of the copy.

(e-1) A governmental body that submits written comments to the attorney general under Subsection (e)(1)(A) shall send a copy of those comments to the person who requested the information from the governmental body not later than the 15th business day after the date of receiving the written request. If the written comments disclose or contain the substance of the information requested, the copy of the comments provided to the person must be a redacted copy.

(f) A governmental body must release the requested information and is prohibited from asking for a decision from the attorney general about whether information requested under this chapter is within an exception under Subchapter C if:

 (1) the governmental body has previously requested and received a determination from the attorney general concerning the precise information at issue in a pending request; and

 (2) the attorney general or a court determined that the information is public information under this chapter that is not excepted by Subchapter C.

(g) A governmental body may ask for another decision from the attorney general concerning the precise information that was at issue in a prior decision made by the attorney general under this subchapter if:

 (1) a suit challenging the prior decision was timely filed against the attorney general in accordance with this chapter concerning the precise information at issue;

(2)    the attorney general determines that the requestor has voluntarily withdrawn the request for the information in writing or has abandoned the request; and

(3)    the parties agree to dismiss the lawsuit.

**§ 552.302.    Failure to Make Timely Request for Attorney General Decision; Presumption that Information Is Public**

If a governmental body does not request an attorney general decision as provided by Section 552.301 and provide the requestor with the information required by Sections 552.301(d) and (e-1), the information requested in writing is presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information.

**§ 552.303.    Delivery of Requested Information to Attorney General; Disclosure of Requested Information; Attorney General Request for Submission of Additional Information**

(a) A governmental body that requests an attorney general decision under this subchapter shall supply to the attorney general, in accordance with Section 552.301, the specific information requested.  Unless the information requested is confidential by law, the governmental body may disclose the requested information to the public or to the requestor before the attorney general makes a final determination that the requested information is public or, if suit is filed under this chapter, before a final determination that the requested information is public has been made by the court with jurisdiction over the suit, except as otherwise provided by Section 552.322.

(b) The attorney general may determine whether a governmental body's submission of information to the attorney general under Section 552.301 is sufficient to render a decision.

(c) If the attorney general determines that information in addition to that required by Section 552.301 is necessary to render a decision, the attorney general shall give written notice of that fact to the governmental body and the requestor.

(d) A governmental body notified under Subsection (c) shall submit the necessary additional information to the attorney general not later than the seventh calendar day after the date the notice is received.

(e) If a governmental body does not comply with Subsection (d), the information that is the subject of a person's request to the governmental body and regarding which the governmental body fails to comply with Subsection (d) is presumed to be subject to required public disclosure and must be released unless there exists a compelling reason to withhold the information.

**§ 552.3031.    Electronic Submission of Request for Attorney General Decision**

(a) This section does not apply to a request for an attorney general decision made under this subchapter if:

(1) the governmental body requesting the decision:

(A) has fewer than 16 full-time employees; or

(B) is located in a county with a population of less than 150,000;

(2) the amount or format of responsive information at issue in a particular request makes use of the attorney general's electronic filing system impractical or impossible; or

(3) the request is hand delivered to the office of the attorney general.

(b) A governmental body that requests an attorney general decision under this subchapter must submit the request through the attorney general's designated electronic filing system.

(c) The attorney general may adopt rules necessary to implement this section, including rules that define the amount or type of formatting of information described by Subsection (a)(2) that makes use of the electronic filing system impractical or impossible.

### § 552.3035.  Disclosure of Requested Information by Attorney General

The attorney general may not disclose to the requestor or the public any information submitted to the attorney general under Section 552.301(e)(1)(D).

### § 552.304.  Submission of Public Comments

(a) A person may submit written comments stating reasons why the information at issue in a request for an attorney general decision should or should not be released.

(b) A person who submits written comments to the attorney general under Subsection (a) shall send a copy of those comments to both the person who requested the information from the governmental body and the governmental body. If the written comments submitted to the attorney general disclose or contain the substance of the information requested from the governmental body, the copy of the comments sent to the person who requested the information must be a redacted copy.

(c) In this section, "written comments" includes a letter, a memorandum, or a brief.

### § 552.305.  Information Involving Privacy or Property Interests of Third Party

(a) In a case in which information is requested under this chapter and a person's privacy or property interests may be involved, including a case under Section 552.101, 552.110, 552.1101, 552.114, 552.131. or 552.143, a governmental body may decline to release the information for the purpose of requesting an attorney general decision.

(b) A person whose interests may be involved under Subsection (a), or any other person, may submit in writing to the attorney general the person's reasons why the information should be withheld or released.

(c) The governmental body may, but is not required to, submit its reasons why the information should be withheld or released.

(d) If release of a person's proprietary information may be subject to exception under Section 552.101, 552.110, 552.1101, 552.113, 552.131, or 552.143, the governmental body that requests an attorney general decision under Section 552.301 shall make a good faith attempt to notify that person of the request for the attorney general decision. Notice under this subsection must:

    (1) be in writing and sent within a reasonable time not later than the 10th business day after the date the governmental body receives the request for the information; and

    (2) include:

        (A) a copy of the written request for the information, if any, received by the governmental body; and

        (B) a statement, in the form prescribed by the attorney general, that the person is entitled to submit in writing to the attorney general within a reasonable time not later than the 10th business day after the date the person receives the notice:

            (i) each reason the person has as to why the information should be withheld; and

            (ii) a letter, memorandum, or brief in support of that reason.

(e) A person who submits a letter, memorandum, or brief to the attorney general under Subsection (d) shall send a copy of that letter, memorandum, or brief to the person who requested the information from the governmental body. If the letter, memorandum, or brief submitted to the attorney general contains the substance of the information requested, the copy of the letter, memorandum, or brief may be a redacted copy.

## § 552.306. Rendition of Attorney General Decision; Issuance of Written Opinion

(a) Except as provided by Section 552.011, the attorney general shall promptly render a decision requested under this subchapter, consistent with the standards of due process, determining whether the requested information is within one of the exceptions of Subchapter C. The attorney general shall render the decision not later than the 45th business day after the date the attorney general received the request for a decision. If the attorney general is unable to issue the decision within the 45-day period, the attorney general may extend the period for issuing the decision by an additional 10 business days by informing the governmental body and the requestor, during the original 45-day period, of the reason for the delay.

(b) The attorney general shall issue a written opinion of the determination and shall provide a copy of the opinion to the requestor.

(c) A governmental body shall as soon as practicable but within a reasonable period of time after the date the attorney general issues an opinion under Subsection (b) regarding information requested under this chapter:

(1) provide the requestor of the information an itemized estimate of charges for production of the information if the estimate is required by Section 552.2615;

(2) if the requested information is voluminous:

(A) take the following actions if the governmental body determines that it is able to disclose the information in a single batch:

(i) provide a written certified notice to the requestor and the attorney general that it is impractical or impossible for the governmental body to produce the information within a reasonable period of time;

(ii) include in the notice the date and hour that the governmental body will disclose the information to the requestor, which may not be later than the 15th business day after the date the governmental body provides the notice; and

(iii) produce the information at the date and time included in the notice; or

(B) take the following actions if the governmental body determines that it is unable to disclose the information in a single batch:

(i) provide a written certified notice to the requestor and the attorney general that it is impractical or impossible for the governmental body to produce the information within a reasonable period of time and in a single batch;

(ii) include in the notice the date and hour that the governmental body will disclose the first batch of information to the requestor, which may not be later than the 15th business day after the date the governmental body provides the notice;

(iii) provide a written certified notice to the requestor and the attorney general when each subsequent batch of information is disclosed to the requestor of the date and hour that the governmental body will disclose the next batch of information to the requestor, which may not be later than the 15th business day after the date the governmental body provides the notice; and

(iv) produce the requested information at each date and time included in a notice;

(3) produce the information if it is required to be produced;

(4) notify the requestor in writing that the governmental body is withholding the information as authorized by the opinion; or

(5) notify the requestor in writing that the governmental body has filed suit against the attorney general under Section 552.324 regarding the information.

(d) A governmental body is presumed to have complied with the requirements of Subsection (c) if the governmental body takes an action under that subsection regarding information that is

the subject of an opinion issued by the attorney general not later than the 30th day after the date the attorney general issues the opinion.

### § 552.307.  Special Right of Access; Attorney General Decisions

(a) If a governmental body determines that information subject to a special right of access under Section 552.023 is exempt from disclosure under an exception of Subchapter C, other than an exception intended to protect the privacy interest of the requestor or the person whom the requestor is authorized to represent, the governmental body shall, before disclosing the information, submit a written request for a decision to the attorney general under the procedures of this subchapter.

(b) If a decision is not requested under Subsection (a), the governmental body shall release the information to the person with a special right of access under Section 552.023 not later than the 10th business day after the date of receiving the request for information.

### § 552.308.  Timeliness of Action by United States Mail, Interagency Mail, or Common Contract Carrier

(a) Except as provided by Section 552.3031, when this subchapter requires a request, notice, or other document to be submitted or otherwise given to a person within a specified period, the requirement is met in a timely fashion if the document is sent to the person by first class United States mail or common or contract carrier properly addressed with postage or handling charges prepaid and:

(1) it bears a post office cancellation mark or a receipt mark of a common or contract carrier indicating a time within that period; or

(2) the person required to submit or otherwise give the document furnishes satisfactory proof that it was deposited in the mail or with a common or contract carrier within that period.

(b) Except as provided by Section 552.3031, when this subchapter requires an agency of this state to submit or otherwise give to the attorney general within a specified period a request, notice, or other writing, the requirement is met in a timely fashion if:

(1) the request, notice, or other writing is sent to the attorney general by interagency mail; and

(2) the agency provides evidence sufficient to establish that the request, notice, or other writing was deposited in the interagency mail within that period.

### § 552.309.  Timeliness of Action by Electronic Submission

(a) When this subchapter requires a request, notice, or other document to be submitted or otherwise given to the attorney general within a specified period, the requirement is met in a timely fashion if the document is submitted to the attorney general through the attorney general's designated electronic filing system within that period.

(b) The attorney general may electronically transmit a notice, decision, or other document. When this subchapter requires the attorney general to deliver a notice, decision, or other document within a specified period, the requirement is met in a timely fashion if the document is electronically transmitted by the attorney general within that period.

(c) This section does not affect the right of a person or governmental body to submit information to the attorney general under Section 552.308.

## § 552.310.  Searchable Database

(a) The office of the attorney general shall make available on the office's Internet website an easily accessible and searchable database consisting of:

(1) information identifying each request for an attorney general decision made under this subchapter; and

(2) the attorney general's opinion issued for the request.

(b) The database at a minimum must allow a person to search for a request or opinion described by Subsection (a) by:

(1) the name of the governmental body making the request; and

(2) the exception under Subchapter C that a governmental body asserts in the request applies to its request to withhold information from public disclosure.

(c) The database must allow a person to view the current status of a request described by Subsection (a)(1) and an estimated timeline indicating the date each stage of review of the request will be started and completed.

## SUBCHAPTER H.  CIVIL ENFORCEMENT

## § 552.321.   Suit for Writ of Mandamus

(a) A requestor or the attorney general may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to request an attorney general's decision as provided by Subchapter G or refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure under Subchapter C.

(b) A suit filed by a requestor under this section must be filed in a district court for the county in which the main offices of the governmental body are located. A suit filed by the attorney general under this section must be filed in a district court of Travis County, except that a suit against a municipality with a population of 100,000 or less must be filed in a district court for the county in which the main offices of the municipality are located.

(c) A requestor may file suit for a writ of mandamus compelling a governmental body or an entity to comply with the requirements of Subchapter J.

## § 552.3215. Declaratory Judgment or Injunctive Relief

(a) In this section:

(1) "Complainant" means a person who claims to be the victim of a violation of this chapter.

(2) "State agency" means a board, commission, department, office, or other agency that:

(A) is in the executive branch of state government;

(B) was created by the constitution or a statute of this state; and

(C) has statewide jurisdiction.

(b) An action for a declaratory judgment or injunctive relief may be brought in accordance with this section against a governmental body that violates this chapter.

(c) The district or county attorney for the county in which a governmental body other than a state agency is located or the attorney general may bring the action in the name of the state only in a district court for that county. If the governmental body extends into more than one county, the action may be brought only in the county in which the administrative offices of the governmental body are located.

(d) If the governmental body is a state agency, the Travis County district attorney or the attorney general may bring the action in the name of the state only in a district court of Travis County.

(e) A complainant may file a complaint alleging a violation of this chapter. The complaint must be filed with the district or county attorney of the county in which the governmental body is located unless the governmental body is the district or county attorney. If the governmental body extends into more than one county, the complaint must be filed with the district or county attorney of the county in which the administrative offices of the governmental body are located. If the governmental body is a state agency, the complaint may be filed with the Travis County district attorney. If the governmental body is the district or county attorney, the complaint must be filed with the attorney general. To be valid, a complaint must:

(1) be in writing and signed by the complainant;

(2) state the name of the governmental body that allegedly committed the violation, as accurately as can be done by the complainant;

(3) state the time and place of the alleged commission of the violation, as definitely as can be done by the complainant; and

(4) in general terms, describe the violation.

(f) A district or county attorney with whom the complaint is filed shall indicate on the face of the written complaint the date the complaint is filed.

(g) Before the 31st day after the date a complaint is filed under Subsection (e), the district or county attorney shall:

    (1)    determine whether:

        (A)   the violation alleged in the complaint was committed; and

        (B)   an action will be brought against the governmental body under this section; and

    (2)    notify the complainant in writing of those determinations.

(h) Notwithstanding Subsection (g)(1), if the district or county attorney believes that that official has a conflict of interest that would preclude that official from bringing an action under this section against the governmental body complained of, before the 31st day after the date the complaint was filed the county or district attorney shall inform the complainant of that official's belief and of the complainant's right to file the complaint with the attorney general. If the district or county attorney determines not to bring an action under this section, the district or county attorney shall:

    (1)    include a statement of the basis for that determination; and

    (2)    return the complaint to the complainant.

(i) If the district or county attorney determines not to bring an action under this section, the complainant is entitled to file the complaint with the attorney general before the 31st day after the date the complaint is returned to the complainant. A complainant is entitled to file a complaint with the attorney general on or after the 90th day after the date the complainant files the complaint with the district or county attorney if the district or county attorney has not brought an action under this section. On receipt of the written complaint, the attorney general shall comply with each requirement in Subsections (g) and (h) in the time required by those subsections. If the attorney general decides to bring an action under this section against a governmental body located only in one county in response to the complaint, the attorney general must comply with Subsection (c).

(j) An action may be brought under this section only if the official proposing to bring the action notifies the governmental body in writing of the official's determination that the alleged violation was committed and the governmental body does not cure the violation before the fourth day after the date the governmental body receives the notice.

(k) An action authorized by this section is in addition to any other civil, administrative, or criminal action provided by this chapter or another law.

## § 552.322.   Discovery of Information Under Protective Order Pending Final Determination

In a suit filed under this chapter, the court may order that the information at issue may be discovered only under a protective order until a final determination is made.

**§ 552.3221.  In Camera Inspection of Information**

(a) In any suit filed under this chapter, the information at issue may be filed with the court for in camera inspection as is necessary for the adjudication of the case.

(b) Upon receipt of the information at issue for in camera inspection, the court shall enter an order that prevents release to or access by any person other than the court, a reviewing court of appeals, or parties permitted to inspect the information pursuant to a protective order.  The order shall further note the filing date and time.

(c) The information at issue filed with the court for in camera inspection shall be:

(1)  appended to the order and transmitted by the court to the clerk for filing as "information at issue";

(2)  maintained in a sealed envelope or in a manner that precludes disclosure of the information; and

(3)  transmitted by the clerk to any court of appeal as part of the clerk's record.

(d) Information filed with the court under this section does not constitute "court records" within the meaning of Rule 76a, Texas Rules of Civil Procedure, and shall not be made available by the clerk or any custodian of record for public inspection.

(e) For purposes of this section, "information at issue" is defined as information held by a governmental body that forms the basis of a suit under this chapter.

**§ 552.323.  Assessment of Costs of Litigation and Reasonable Attorney Fees**

(a) In an action brought under Section 552.321 or 552.3215, the court shall assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails, except that the court may not assess those costs and fees against a governmental body if the court finds that the governmental body acted in reasonable reliance on:

(1)  a judgment or an order of a court applicable to the governmental body;

(2)  the published opinion of an appellate court; or

(3)  a written decision of the attorney general, including a decision issued under Subchapter G or an opinion issued under Section 402.042.

(b) In an action brought under Section 552.324, the court may not assess costs of litigation or reasonable attorney's fees incurred by a plaintiff or defendant who substantially prevails unless the court finds the action or the defense of the action was groundless in fact or law.  In exercising its discretion under this subsection, the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith.

## § 552.324.   Suit by Governmental Body

(a) The only suit a governmental body may file seeking to withhold information from a requestor is a suit that:

   (1)   is filed in a Travis County district court against the attorney general in accordance with Section 552.325 and

   (2)   seeks declaratory relief from compliance with a decision by the attorney general issued under Subchapter G.

(b) The governmental body must bring the suit not later than the 30th calendar day after the date the governmental body receives the decision of the attorney general determining that the requested information must be disclosed to the requestor.  If the governmental body does not bring suit within that period, the governmental body shall comply with the decision of the attorney general.  If a governmental body wishes to preserve an affirmative defense for its officer of public information as provided in Section 552.353(b)(3), a suit must be filed within the deadline provided in Section 552.353(b)(3).

## § 552.325.   Parties to Suit Seeking to Withhold Information

(a) A governmental body, officer for public information, or other person or entity that files a suit seeking to withhold information from a requestor may not file suit against the person requesting the information.  The requestor is entitled to intervene in the suit.

(b) The governmental body, officer for public information, or other person or entity that files the suit shall demonstrate to the court that the governmental body, officer for public information, or other person or entity made a timely good faith effort to inform the requestor, by certified mail or by another written method of notice that requires the return of a receipt, of:

   (1)   the existence of the suit, including the subject matter and cause number of the suit and the court in which the suit is filed;

   (2)   the requestor's right to intervene in the suit or to choose to not participate in the suit;

   (3)   the fact that the suit is against the attorney general in Travis County district court; and

   (4)   the address and phone number of the office of the attorney general.

(c) If the attorney general enters into a proposed settlement that all or part of the information that is the subject of the suit should be withheld, the attorney general shall notify the requestor of that decision and, if the requestor has not intervened in the suit, of the requestor's right to intervene to contest the withholding.  The attorney general shall notify the requestor:

   (1)   in the manner required by the Texas Rules of Civil Procedure, if the requestor has intervened in the suit; or

(2)   by certified mail or by another written method of notice that requires the return of a receipt, if the requestor has not intervened in the suit.

(d) The court shall allow the requestor a reasonable period to intervene after the attorney general attempts to give notice under Subsection (c)(2).

## § 552.326.   Failure to Raise Exceptions Before Attorney General

(a) Except as provided by Subsection (b), the only exceptions to required disclosure within Subchapter C that a governmental body may raise in a suit filed under this chapter are exceptions that the governmental body properly raised before the attorney general in connection with its request for a decision regarding the matter under Subchapter G.

(b) Subsection (a) does not prohibit a governmental body from raising an exception:

(1)   based on a requirement of federal law; or

(2)   involving the property or privacy interests of another person.

## § 552.327.   Dismissal of Suit Due to Requestor's Withdrawal or Abandonment of Request

A court may dismiss a suit challenging a decision of the attorney general brought in accordance with this chapter if:

(1)   all parties to the suit agree to the dismissal; and

(2)   the attorney general determines and represents to the court that the requestor has voluntarily withdrawn the request for information in writing or has abandoned the request.

## SUBCHAPTER I.  CRIMINAL VIOLATIONS

## § 552.351.   Destruction, Removal, or Alteration of Public Information

(a) A person commits an offense if the person willfully destroys, mutilates, removes without permission as provided by this chapter, or alters public information.

(b) An offense under this section is a misdemeanor punishable by:

(1)   a fine of not less than $25 or more than $4,000;

(2)   confinement in the county jail for not less than three days or more than three months; or

(3)   both the fine and confinement.

(c) It is an exception to the application of Subsection (a) that the public information was transferred under Section 441.204.

**§ 552.352.   Distribution or Misuse of Confidential Information**

(a) A person commits an offense if the person distributes information considered confidential under the terms of this chapter.

(a-1) An officer or employee of a governmental body who obtains access to confidential information under Section 552.008 commits an offense if the officer or employee knowingly:

   (1)   uses the confidential information for a purpose other than the purpose for which the information was received or for a purpose unrelated to the law that permitted the officer or employee to obtain access to the information, including solicitation of political contributions or solicitation of clients;

   (2)   permits inspection of the confidential information by a person who is not authorized to inspect the information; or

   (3)   discloses the confidential information to a person who is not authorized to receive the information.

(a-2) For purposes of Subsection (a-1), a member of an advisory committee to a governmental body who obtains access to confidential information in that capacity is considered to be an officer or employee of the governmental body.

(b) An offense under this section is a misdemeanor punishable by:

   (1)   a fine of not more than $1,000;

   (2)   confinement in the county jail for not more than six months; or

   (3)   both the fine and confinement.

(c) A violation under this section constitutes official misconduct.

**§ 552.353.   Failure or Refusal of Officer for Public Information to Provide Access to or Copying of Public Information**

(a) An officer for public information, or the officer's agent, commits an offense if, with criminal negligence, the officer or the officer's agent fails or refuses to give access to, or to permit or provide copying of, public information to a requestor as provided by this chapter.

(b) It is an affirmative defense to prosecution under Subsection (a) that the officer for public information reasonably believed that public access to the requested information was not required and that:

   (1)   the officer acted in reasonable reliance on a court order or a written interpretation of this chapter contained in an opinion of a court of record or of the attorney general issued under Subchapter G;

(2)    the officer requested a decision from the attorney general in accordance with Subchapter G, and the decision is pending; or

(3)    not later than the 10th calendar day after the date of receipt of a decision by the attorney general that the information is public, the officer or the governmental body for whom the defendant is the officer for public information filed a petition for a declaratory judgment against the attorney general in a Travis County district court seeking relief from compliance with the decision of the attorney general, as provided by Section 552.324, and the cause is pending.

(c) It is an affirmative defense to prosecution under Subsection (a) that a person or entity has, not later than the 10th calendar day after the date of receipt by a governmental body of a decision by the attorney general that the information is public, filed a cause of action seeking relief from compliance with the decision of the attorney general, as provided by Section 552.325, and the cause is pending.

(d) It is an affirmative defense to prosecution under Subsection (a) that the defendant is the agent of an officer for public information and that the agent reasonably relied on the written instruction of the officer for public information not to disclose the public information requested.

(e) An offense under this section is a misdemeanor punishable by:

(1)    a fine of not more than $1,000;

(2)    confinement in the county jail for not more than six months; or

(3)    both the fine and confinement.

(f) A violation under this section constitutes official misconduct.

## SUBCHAPTER J.    ADDITIONAL PROVISIONS RELATED TO CONTRACTING INFORMATION

### § 552.371.    Certain Entities Required to Provide Contracting Information to Governmental Body in Connection with Request

(a) This section applies to an entity that is not a governmental body that executes a contract with a governmental body that:

(1) has a stated expenditure of at least $1 million in public funds for the purchase of goods or services by the governmental body; or

(2) results in the expenditure of at least $1 million in public funds for the purchase of goods or services by the governmental body in a fiscal year of the governmental body.

(b) This section applies to a written request for public information received by a governmental body that is a party to a contract described by Subsection (a) for contracting information related

to the contract that is in the custody or possession of the entity and not maintained by the governmental body.

(c) A governmental body that receives a written request for information described by Subsection (b) shall request that the entity provide the information to the governmental body. The governmental body must send the request in writing to the entity not later than the third business day after the date the governmental body receives the written request described by Subsection (b).

(d) Notwithstanding Section 552.301:

(1) a request for an attorney gens decision under Section 552.301(b) to determine whether contracting information subject to a written request described by Subsection (b) falls within an exception to disclosure under this chapter is considered timely if made not later than the 13th business day after the date the governmental body receives the written request described by Subsection (b);

(2) the statement and copy described by Section 552.301(d) is considered timely if provided to the requestor not later than the 13th business day after the date the governmental body receives the written request described by Subsection (b);

(3) a submission described by Section 552.301(e) is considered timely if submitted to the attorney general not later than the 18th business day after the date the governmental body receives the written request described by Subsection (b); and

(4) a copy described by Section 552.301(e–1) is considered timely if sent to the requestor not later than the 18th business day after the date the governmental body receives the written request described by Subsection (b).

(e) Section 552.302 does not apply to information described by Subsection (b) if the governmental body:

(1) complies with the requirements of Subsection (c) in a good faith effort to obtain the information from the contracting entity;

(2) is unable to meet a deadline described by Subsection (d) because the contracting entity failed to provide the information to the governmental body not later than the 13th business day after the date the governmental body received the written request for the information; and

(3) if applicable and notwithstanding the deadlines prescribed by Sections 552.301(b), (d), (e), and (e–1), complies with the requirements of those subsections not later than the eighth business day after the date the governmental body receives the information from the contracting entity.

(f) Nothing in this section affects the deadlines or duties of a governmental body under Section 552.301 regarding information the governmental body maintains, including contracting information.

## § 552.372.    Bids and Contracts

(a) A contract described by Section 552.371 must require a contracting entity to:

   (1) preserve all contracting information related to the contract as provided by the records retention requirements applicable to the governmental body for the duration of the contract;

   (2) promptly provide to the governmental body any contracting information related to the contract that is in the custody or possession of the entity on request of the governmental body; and

   (3) on completion of the contract, either:

       (A) provide at no cost to the governmental body all contracting information related to the contract that is in the custody or possession of the entity; or

       (B) preserve the contracting information related to the contract as provided by the records retention requirements applicable to the governmental body.

   (b) Unless Section 552.374(c) applies, a bid for a contract described by Section 552.371 and the contract must include the following statement: "The requirements of Subchapter J, Chapter 552, Government Code, may apply to this (include "bid" or "contract" as applicable) and the contractor or vendor agrees that the contract can be terminated if the contractor or vendor knowingly or intentionally fails to comply with a requirement of that subchapter."

   (c) A governmental body may not accept a bid for a contract described by Section 552.371 or award the contract to an entity that the governmental body has determined has knowingly or intentionally failed to comply with this subchapter in a previous bid or contract described by that section unless the governmental body determines and documents that the entity has taken adequate steps to ensure future compliance with the requirements of this subchapter.

## § 552.373.    Noncompliance with Provision of Subchapter

A governmental body that is the party to a contract described by Section 552.371 shall provide notice to the entity that is a party to the contract if the entity fails to comply with a requirement of this subchapter applicable to the entity. The notice must:

   (1) be in writing;

   (2) state the requirement of this subchapter that the entity has violated; and

   (3) unless Section 552.374(c) applies, advise the entity that the governmental body may terminate the contract without further obligation to the entity if the entity does not cure the violation on or before the 10th business day after the date the governmental body provides the notice.

## § 552.374.    Termination of Contract for Noncompliance

(a) Subject to Subsection (c), a governmental body may terminate a contract described by Section 552.371 if:

   (1) the governmental body provides notice under Section 552.373 to the entity that is party to the contract;

   (2) the contracting entity does not cure the violation in the period prescribed by Section 552.373;

   (3) the governmental body determines that the contracting entity has intentionally or knowingly failed to comply with a requirement of this subchapter; and

   (4) the governmental body determines that the entity has not taken adequate steps to ensure future compliance with the requirements of this subchapter.

(b) For the purpose of Subsection (a), an entity has taken adequate steps to ensure future compliance with this subchapter if:

   (1) the entity produces contracting information requested by the governmental body that is in the custody or possession of the entity not later than the 10th business day after the date the governmental body makes the request; and

   (2) the entity establishes a records management program to enable the entity to comply with this subchapter.

(c) A governmental body may not terminate a contract under this section if the contract is related to the purchase or underwriting of a public security, the contract is or may be used as collateral on a loan, or the contract's proceeds are used to pay debt service of a public security or loan.

## § 552.375.    Other Contract Provisions

Nothing in this subchapter prevents a governmental body from including and enforcing more stringent requirements in a contract to increase accountability or transparency.


## § 552.376.    Cause of Action Not Created

This subchapter does not create a cause of action to contest a bid for or the award of a contract with a governmental body.

# PART FOUR: RULES PROMULGATED BY THE ATTORNEY GENERAL

# TEXAS ADMINISTRATIVE CODE, TITLE 1, CHAPTER 63

## Subchapter A. Confidentiality of Information Requested for Legislative Purposes

### § 63.1. Definition, Purpose, and Application

(a) In this subchapter, "legislative requestor" means an individual member, agency, or committee of the legislature.

(b) This subchapter governs the procedures by which the attorney general shall render a decision sought by a legislative requestor under Texas Government Code § 552.008(b-2).

(c) Texas Government Code §§ 552.308 and 552.309 apply to all deadlines established in this subchapter.

### § 63.2. Request for Attorney General Decision Regarding Confidentiality

(a) If a governmental body that receives a written request for information from a legislative requestor under Texas Government Code § 552.008 determines the requested information is confidential and requires the legislative requestor to sign a confidentiality agreement, the legislative requestor may ask for an attorney general decision about whether the information covered by the confidentiality agreement is confidential under law.

(b) A request for an attorney general decision must:

(1) be in writing and signed by the legislative requestor;

(2) state the name of the governmental body to whom the original request for information was made; and

(3) state the date the original request was made.

(c) The legislative requestor must submit a copy of the original request with the request for a decision. If the legislative requestor is unable to do so, the legislative requestor must include a written description of the original request in the request for a decision.

(d) The legislative requestor may submit written comments to the attorney general stating reasons why the requested information should not be considered confidential by law. The written comments must be labeled to indicate whether any portion of the comments

discloses or contains the substance of the specific information deemed confidential by the governmental body. A legislative requestor who submits written comments to the attorney general shall send a copy of those comments to the governmental body.

(e)   The deadlines in § 63.3 and § 63.6 of this subchapter commence on the date on which the attorney general receives from the legislative requestor all of the information required by subsections (b) and (c) of this section.

## § 63.3.   Notice

(a)   The attorney general shall notify the governmental body in writing of a request for a decision and provide the governmental body a copy of the request for a decision within a reasonable time but not later than the 5th business day after the date of receiving the request for a decision.

(b)   The attorney general shall provide the legislative requestor a copy of the written notice to the governmental body, excluding a copy of the request for a decision, within a reasonable time but not later than the 5th business day after the date of receiving the request for a decision.

## § 63.4.   Submission of Documents and Comments

(a)   Within a reasonable time but not later than the 10th business day after the date of receiving the attorney general's written notice of the request for a decision, a governmental body shall:

   (1)   submit to the attorney general:

       (A)   written comments stating the law that deems the requested information confidential and the reasons why the stated law applies to the information;

       (B)   a copy of the written request for information; and

       (C)   a copy of the specific information deemed confidential by the governmental body, or representative samples of the information if a voluminous amount of information was requested; and

   (2)   label the copy of the specific information, or the representative samples, to indicate which laws apply to which parts of the copy; and

   (3)   label the written comments to indicate whether any portion of the comments discloses or contains the substance of the specific information deemed confidential by the governmental body.

(b)   A governmental body that submits written comments to the attorney general shall send a copy of those comments to the legislative requestor within a reasonable time but not later than the 10th business day after the date of receiving the attorney general's written notice of the request for a decision.

(c)    If a governmental body determines a person may have a property interest in the requested information, the governmental body shall notify that person in accordance with Texas Government Code § 552.305(d). The governmental body shall notify the affected person not later than the 10th business day after receiving written notice of the request for a decision.

(d)    If a person notified in accordance with Texas Government Code § 552.305 decides to submit written comments to the attorney general, the person must do so not later than the 10th business day after receiving the notice. The written comments must be labeled to indicate whether any portion of the comments discloses or contains the substance of the specific information deemed confidential by the governmental body.

(e)    Any interested person may submit written comments to the attorney general stating why the requested information is or is not confidential. The written comments must be labeled to indicate whether any portion of the comments discloses or contains the substance of the specific information deemed confidential by the governmental body.

(f)    A person who submits written comments under subsection (d) or (e) of this section shall send a copy of those comments to both the legislative requestor and the governmental body.

## § 63.5.   Additional Information

(a)    The attorney general may determine whether a governmental body's submission of information under § 63.4(a) of this subchapter is sufficient to render a decision.

(b)    If the attorney general determines that information in addition to that required by § 63.4(a) of this subchapter is necessary to render a decision, the attorney general shall give written notice of that fact to the governmental body and the legislative requestor.

(c)    A governmental body notified under subsection (b) of this section shall submit the necessary additional information to the attorney general not later than the seventh calendar day after the date the notice is received.

## § 63.6.   Rendition of Attorney General Decision; Issuance of Written Decision

(a)    The attorney general shall promptly render a decision requested under this subchapter, not later than the 45th business day after the date of receiving the request for a decision.

(b)    The attorney general shall issue a written decision and shall provide a copy of the decision to the legislative requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter.

## Subchapter B.  Review of Public Information Redactions

### § 63.11.  Purpose and Application

(a)  This subchapter governs the procedures by which the attorney general shall render a decision sought by a requestor under Texas Government Code §§ 552.024(c-1), 552.1175(g), 552.130(d), 552.136(d), or 552.138(d).

(b)  Texas Government Code § 552.308 and § 552.309 apply to all deadlines established in this subchapter.

### § 63.12.  Request for Review by the Attorney General

(a)  If a governmental body redacts or withholds information under Texas Government Code §§ 552.024(c)(2), 552.1175(f), 552.130(c), 552.136(c), or 552.138(c) without requesting a decision from the attorney general about whether the information may be redacted or withheld, the requestor may ask the attorney general to review the governmental body's determination that the information at issue is excepted from required disclosure.

(b)  A request for review by the attorney general must:

(1)  be in writing and signed by the requestor;

(2)  state the name of the governmental body to whom the original request for information was made; and

(3)  state the date the original request was made.

(c)  The requestor must submit a copy of the original request with the request for review. If the requestor is unable to do so, the requestor must include a written description of the original request in the request for review.

(d)  The requestor may submit written comments to the attorney general stating reasons why the information at issue should be released.

(e)  The deadlines in § 63.13 and § 63.16 of this subchapter commence on the date on which the attorney general receives from the requestor all of the information required by subsections (b) and (c) of this section.

### § 63.13.  Notice

(a)  The attorney general shall notify the governmental body in writing of a request for review and provide the governmental body a copy of the request for review not later than the 5th business day after the date of receiving the request for review.

(b)  The attorney general shall provide the requestor a copy of the written notice to the governmental body, excluding a copy of the request for review, not later than the 5th business day after the date of receiving the request for review.

**§ 63.14. Submission of Documents and Comments**

(a)   A governmental body shall provide to the attorney general within a reasonable time but not later than the 10th business day after the date of receiving the attorney general's written notice of the request for review:

   (1)   an unredacted copy of the specific information requested, or representative samples of the information if a voluminous amount of information was requested;

   (2)   a copy of the specific information requested, or representative samples of the information if a voluminous amount of information was requested, illustrating the information redacted or withheld;

   (3)   written comments stating the reasons why the information at issue was redacted or withheld;

   (4)   a copy of the written request for information; and

   (5)   a copy of the form letter the governmental body provided to the requestor as required by Texas Government Code §§ 552.024(c-2), 552.1175(h), 552.130(e), 552.136(e), and 552.138(e).

(b)   A governmental body that submits written comments to the attorney general shall send a copy of those comments to the requestor within a reasonable time but not later than the 10th business day after the date of receiving the attorney general's written notice of the request for review. If the written comments disclose or contain the substance of the information at issue, the copy of the comments provided to the requestor must be a redacted copy.

(c)   A person may submit written comments to the attorney general stating why the information at issue in a request for review should or should not be released.

(d)   A person who submits written comments under subsection (c) of this section shall send a copy of those comments to both the requestor and the governmental body. If the written comments disclose or contain the substance of the information at issue, the copy of the comments sent to the requestor must be a redacted copy.

**§ 63.15. Additional Information**

(a)   The attorney general may determine whether a governmental body's submission of information under § 63.14(a) of this subchapter is sufficient to render a decision.

(b)   If the attorney general determines that information in addition to that required by § 63.14(a) of this subchapter is necessary to render a decision, the attorney general shall give written notice of that fact to the governmental body and the requestor.

(c)   A governmental body notified under subsection (b) of this section shall submit the necessary additional information to the attorney general not later than the 7th calendar day after the date the notice is received.

### § 63.16.  Rendition of Attorney General Decision; Issuance of Written Decision

(a)   The attorney general shall promptly render a decision requested under this subchapter, not later than the 45th business day after the date of receiving the request for review.

(b)   The attorney general shall issue a written decision and shall provide a copy of the decision to the requestor, the governmental body, and any interested person who submitted necessary information or a brief to the attorney general about the matter.

## Subchapter C.  Electronic Submission of Request for Attorney General Open Records Decision

### § 63.21.  Definitions

The following words and terms, when used in this subchapter, shall have the following meanings:

(1)   "Governmental body" means a governmental body as defined in Texas Government Code § 552.003(1).

(2)   "Request for decision" means a request for an attorney general open records decision made by a governmental body pursuant to Texas Government Code § 552.301 and  § 552.309.

(3)   "Requestor" means a requestor as defined in Texas Government Code § 552.003(6).

(4)   "Interested Third Party" means any third party who wishes to submit comments, documents, or other materials for consideration in the attorney general's open records decision process under Texas Government Code § 552.304 or § 552.305.

(5)   "Attorney General's Designated Electronic Filing System" means the online, electronic filing system designated by the attorney general as the system for submitting documents and other materials to the attorney general under Texas Government Code § 552.309.

### § 63.22.  Electronic Submission of Request for Attorney General Decision

(a)   A governmental body that requests a decision from the attorney general under Texas Government Code § 552.301 about whether requested public information is excepted from public disclosure may submit that request for decision to the attorney general through the attorney general's designated electronic filing system.

(b)   The governmental body's request for decision must comply with the requirements of Texas Government Code § 552.301.

(c)     The deadlines in Texas Government Code § 552.301 and § 552.303 are met if the governmental body timely submits the required documents and other materials through the attorney general's designated electronic filing system within the time prescribed.

(d)     The governmental body must comply with the requirements of Texas Government Code § 552.301 (d) and (e-1), and § 552.305 regardless of whether the request for attorney general decision is submitted electronically or through another permissible method of submission.

(e)     To use the attorney general's designated electronic filing system, the governmental body must agree to and comply with the terms and conditions of use as outlined on the attorney general's designated electronic filing system website.

(f)     The confidentiality of Texas Government Code § 552.3035 applies to information submitted under Texas Government Code § 552.301(e)(1)(D) through the attorney general's designated electronic filing system.

## § 63.23.  Electronic Submission of Documents or other Materials by Interested Third Party

(a)     An interested third party may submit, through the attorney general's designated electronic filing system, the reasons why the requested public information should be withheld or released along with any necessary supporting documentation for consideration in the attorney general's open records decision process.

(b)     The deadline in Texas Government Code § 552.305(d)(2)(B) is met if the interested third party timely submits the reasons why the requested public information should be withheld or released along with any necessary supporting documentation through the attorney general's designated electronic filing system within the time prescribed.

(c)     The interested third party must comply with the requirements of Texas Government Code § 552.305(e) regardless of whether the interested third party submits materials electronically or through another permissible method of submission.

(d)     To use the attorney general's designated electronic filing system, the interested third party must agree to and comply with the terms and conditions of use as outlined on the attorney general's designated electronic filing system website.

# TEXAS ADMINISTRATIVE CODE, TITLE 1, CHAPTER 70

## Chapter 70.    Cost of Copies of Public Information

### § 70.1.    Purpose

(a)    The Office of the Attorney General (the "Attorney General") must:

   (1)    Adopt rules for use by each governmental body in determining charges under Texas Government Code, Chapter 552 (Public Information) Subchapter F (Charges for Providing Copies of Public Information);

   (2)    Prescribe the methods for computing the charges for copies of public information in paper, electronic, and other kinds of media; and

   (3)    Establish costs for various components of charges for public information that shall be used by each governmental body in providing copies of public information.

(b)    Governmental bodies must use the charges established by these rules, unless:

   (1)    Other law provides for charges for specific kinds of public information;

   (2)    They are a governmental body other than a state agency, and their charges are within a 25 percent variance above the charges established by the Attorney General;

   (3)    They request and receive an exemption because their actual costs are higher; or

   (4)    In accordance with Chapter 552 of the Texas Government Code (also known as the Public Information Act), the governmental body may grant a waiver or reduction for charges for providing copies of public information pursuant to § 552.267 of the Texas Government Code.

      (A)    A governmental body shall furnish a copy of public information without charge or at a reduced charge if the governmental body determines that waiver or reduction of the fee is in the public interest because furnishing the information primarily benefits the general public; or

      (B)    If the cost to the governmental body of processing the collection of a charge for a copy of public information will exceed the amount of the charge, the governmental body may waive the charge.

## § 70.2.   Definitions

The following words and terms, when used in these sections, shall have the following meanings, unless the context clearly indicates otherwise.

(1)   Actual cost—The sum of all direct costs plus a proportional share of overhead or indirect costs.   Actual cost should be determined in accordance with generally accepted methodologies.

(2)   Client/Server System—A combination of two or more computers that serve a particular application through sharing processing, data storage, and end-user interface presentation. PCs located in a LAN environment containing file servers fall into this category as do applications running in an X-window environment where the server is a UNIX based system.

(3)   Attorney General—The Office of the Attorney General of Texas.

(4)   Governmental Body—An entity as defined by § 552.003 of the Texas Government Code.

(5)   Mainframe Computer—A computer located in a controlled environment and serving large applications and/or large numbers of users.  These machines usually serve an entire organization or some group of organizations.   These machines usually require an operating staff.  IBM and UNISYS mainframes, and large Digital VAX 9000 and VAX Clusters fall into this category.

(6)   Midsize Computer—A computer smaller than a Mainframe Computer that is not necessarily located in a controlled environment.  It usually serves a smaller organization or a sub-unit of an organization.   IBM AS/400 and Digital VAX/VMS multi-user single-processor systems fall into this category.

(7)   Nonstandard copy—Under § 70.1 through § 70.11 of this title, a copy of public information that is made available to a requestor in any format other than a standard paper copy.  Microfiche, microfilm, diskettes, magnetic tapes, CD-ROM are examples of nonstandard copies.  Paper copies larger than 8 1/2 by 14 inches (legal size) are also considered nonstandard copies.

(8)   PC—An IBM compatible PC, Macintosh or Power PC based computer system operated without a connection to a network.

(9)   Standard paper copy—Under § 70.1 through § 70.11 of this title, a copy of public information that is a printed impression on one side of a piece of paper that measures up to 8 1/2 by 14 inches.  Each side of a piece of paper on which information is recorded is counted as a single copy.  A piece of paper that has information recorded on both sides is counted as two copies.

(10)   Archival box—A carton box measuring approximately 12.5" width x 15.5" length x 10" height, or able to contain approximately 1.5 cubic feet in volume.

**§ 70.3. Charges for Providing Copies of Public Information**

(a)   The charges in this section to recover costs associated with providing copies of public information are based on estimated average costs to governmental bodies across the state. When actual costs are 25% higher than those used in these rules, governmental bodies other than agencies of the state, may request an exemption in accordance with § 70.4 of this title (relating to Requesting an Exemption).

(b)   Copy charge.

    (1)   Standard paper copy. The charge for standard paper copies reproduced by means of an office machine copier or a computer printer is $.10 per page or part of a page. Each side that has recorded information is considered a page.

    (2)   Nonstandard copy. The charges in this subsection are to cover the materials onto which information is copied and do not reflect any additional charges, including labor, that may be associated with a particular request. The charges for nonstandard copies are:

        (A)   Diskette—$1.00;

        (B)   Magnetic tape—actual cost

        (C)   Data cartridge—actual cost;

        (D)   Tape cartridge—actual cost;

        (E)   Rewritable CD (CD-RW)—$1.00;

        (F)   Non-rewritable CD (CD-R)—$1.00;

        (G)   Digital video disc (DVD)—$3.00;

        (H)   JAZ drive—actual cost;

        (I)   Other electronic media—actual cost;

        (J)   VHS video cassette—$2.50;

        (K)   Audio cassette—$1.00;

        (L)   Oversize paper copy (e.g.: 11 inches by 17 inches, greenbar, bluebar, not including maps and photographs using specialty paper—See also § 70.9 of this title)—$.50;

        (M)   Specialty paper (e.g.: Mylar, blueprint, blueline, map, photographic—actual cost).

(c) Labor charge for programming. If a particular request requires the services of a programmer in order to execute an existing program or to create a new program so that requested information may be accessed and copied, the governmental body may charge for the programmer's time.

  (1) The hourly charge for a programmer is $28.50 an hour. Only programming services shall be charged at this hourly rate.

  (2) Governmental bodies that do not have in-house programming capabilities shall comply with requests in accordance with § 552.231 of the Texas Government Code.

  (3) If the charge for providing a copy of public information includes costs of labor, a governmental body shall comply with the requirements of § 552.261(b) of the Texas Government Code.

(d) Labor charge for locating, compiling, manipulating data, and reproducing public information.

  (1) The charge for labor costs incurred in processing a request for public information is $15 an hour. The labor charge includes the actual time to locate, compile, manipulate data, and reproduce the requested information.

  (2) A labor charge shall not be billed in connection with complying with requests that are for 50 or fewer pages of paper records, unless the documents to be copied are located in:

    (A) Two or more separate buildings that are not physically connected with each other; or

    (B) A remote storage facility.

  (3) A labor charge shall not be recovered for any time spent by an attorney, legal assistant, or any other person who reviews the requested information:

    (A) To determine whether the governmental body will raise any exceptions to disclosure of the requested information under the Texas Government Code, Subchapter C, Chapter 552; or

    (B) To research or prepare a request for a ruling by the attorney general's office pursuant to § 552.301 of the Texas Government Code.

  (4) When confidential information pursuant to a mandatory exception of the Act is mixed with public information in the same page, a labor charge may be recovered for time spent to redact, blackout, or otherwise obscure confidential information in order to release the public information. A labor charge shall not be made for redacting confidential information for requests of 50 or fewer pages, unless the request also qualifies for a labor charge pursuant to Texas Government Code, § 552.261(a)(1) or (2).

(5) If the charge for providing a copy of public information includes costs of labor, a governmental body shall comply with the requirements of Texas Government Code, Chapter 552, § 552.261(b).

(6) For purposes of paragraph (2)(A) of this subsection, two buildings connected by a covered or open sidewalk, an elevated or underground passageway, or a similar facility, are not considered to be separate buildings.

(e) Overhead charge.

(1) Whenever any labor charge is applicable to a request, a governmental body may include in the charges direct and indirect costs, in addition to the specific labor charge. This overhead charge would cover such costs as depreciation of capital assets, rent, maintenance and repair, utilities, and administrative overhead. If a governmental body chooses to recover such costs, a charge shall be made in accordance with the methodology described in paragraph (3) of this subsection. Although an exact calculation of costs will vary, the use of a standard charge will avoid complication in calculating such costs and will provide uniformity for charges made statewide.

(2) An overhead charge shall not be made for requests for copies of 50 or fewer pages of standard paper records unless the request also qualifies for a labor charge pursuant to Texas Government Code, § 552.261(a)(1) or (2).

(3) The overhead charge shall be computed at 20% of the charge made to cover any labor costs associated with a particular request. Example: if one hour of labor is used for a particular request, the formula would be as follows: Labor charge for locating, compiling, and reproducing, $15.00 x .20 = $3.00; or Programming labor charge, $28.50 x .20 = $5.70. If a request requires one hour of labor charge for locating, compiling, and reproducing information ($15.00 per hour); and one hour of programming labor charge ($28.50 per hour), the combined overhead would be: $15.00 + $28.50 = $43.50 x .20 = $8.70.

(f) Microfiche and microfilm charge.

(1) If a governmental body already has information that exists on microfiche or microfilm and has copies available for sale or distribution, the charge for a copy must not exceed the cost of its reproduction. If no copies of the requested microfiche or microfilm are available and the information on the microfiche or microfilm can be released in its entirety, the governmental body should make a copy of the microfiche or microfilm. The charge for a copy shall not exceed the cost of its reproduction. The Texas State Library and Archives Commission has the capacity to reproduce microfiche and microfilm for governmental bodies. Governmental bodies that do not have in-house capability to reproduce microfiche or microfilm are encouraged to contact the Texas State Library before having the reproduction made commercially.

(2)     If only a master copy of information in microfilm is maintained, the charge is $.10 per page for standard size paper copies, plus any applicable labor and overhead charge for more than 50 copies.

(g)   Remote document retrieval charge.

(1)     Due to limited on-site capacity of storage documents, it is frequently necessary to store information that is not in current use in remote storage locations.  Every effort should be made by governmental bodies to store current records on-site.  State agencies are encouraged to store inactive or non-current records with the Texas State Library and Archives Commission.  To the extent that the retrieval of documents results in a charge to comply with a request, it is permissible to recover costs of such services for requests that qualify for labor charges under current law.

(2)     If a governmental body has a contract with a commercial records storage company, whereby the private company charges a fee to locate, retrieve, deliver, and return to storage the needed record(s), no additional labor charge shall be factored in for time spent locating documents at the storage location by the private company's personnel.  If after delivery to the governmental body, the boxes must still be searched for records that are responsive to the request, a labor charge is allowed according to subsection (d)(1) of this section.

(h)   Computer resource charge.

(1)     The computer resource charge is a utilization charge for computers based on the amortized cost of acquisition, lease, operation, and maintenance of computer resources, which might include, but is not limited to, some or all of the following: central processing units (CPUs), servers, disk drives, local area networks (LANs), printers, tape drives, other peripheral devices, communications devices, software, and system utilities.

(2)     These computer resource charges are not intended to substitute for cost recovery methodologies or charges made for purposes other than responding to public information requests.

(3)     The charges in this subsection are averages based on a survey of governmental bodies with a broad range of computer capabilities.  Each governmental body using this cost recovery charge shall determine which category(ies) of computer system(s) used to fulfill the public information request most closely fits its existing system(s), and set its charge accordingly.  Type of System—Rate:  mainframe—$10 per CPU minute; Midsize—$1.50 per CPU minute; Client/Server—$2.20 per clock hour; PC or LAN—$1.00 per clock hour.

(4)     The charge made to recover the computer utilization cost is the actual time the computer takes to execute a particular program times the applicable rate.  The CPU charge is not meant to apply to programming or printing time; rather it is solely to recover costs associated with the actual time required by the computer to execute a program.  This time, called CPU time, can be read directly from the CPU clock,

and most frequently will be a matter of seconds.  If programming is required to comply with a particular request, the appropriate charge that may be recovered for programming time is set forth in subsection (d) of this section.  No charge should be made for computer print-out time.  Example:  If a mainframe computer is used, and the processing time is 20 seconds, the charges would be as follows:  $10 / 3 = $3.33; or $10 / 60 x 20 = $3.33.

(5)  A governmental body that does not have in-house computer capabilities shall comply with requests in accordance with the § 552.231 of the Texas Government Code.

(i)  Miscellaneous supplies.  The actual cost of miscellaneous supplies, such as labels, boxes, and other supplies used to produce the requested information, may be added to the total charge for public information.

(j)  Postal and shipping charges.  Governmental bodies may add any related postal or shipping expenses which are necessary to transmit the reproduced information to the requesting party.

(k)  Sales tax.  Pursuant to Office of the Comptroller of Public Accounts' rules sales tax shall not be added on charges for public information (34 TAC, Part 1, Chapter 3, Subchapter O, § 3.341 and § 3.342).

(l)  Miscellaneous charges:  A governmental body that accepts payment by credit card for copies of public information and that is charged a "transaction fee" by the credit card company may recover that fee.

(m)  These charges are subject to periodic reevaluation and update.

## § 70.4.  Requesting an Exemption

(a)  Pursuant to § 552.262(c) of the Public Information Act, a governmental body may request that it be exempt from part or all of these rules.

(b)  State agencies must request an exemption if their charges to recover costs are higher than those established by these rules.

(c)  Governmental bodies, other than agencies of the state, must request an exemption before seeking to recover costs that are more than 25% higher than the charges established by these rules.

(d)  an exemption request must be made in writing, and must contain the following elements:

(1)  A statement identifying the subsection(s) of these rules for which an exemption is sought;

(2)  The reason(s) the exemption is requested;

(3) A copy of the proposed charges;

(4) The methodology and figures used to calculate/compute the proposed charges;

(5) Any supporting documentation, such as invoices, contracts, etc.; and

(6) The name, title, work address, and phone number of a contact person at the governmental body.

(e) The contact person shall provide sufficient information and answer in writing any questions necessary to process the request for exemption.

(f) If there is good cause to grant the exemption, because the request is duly documented, reasonable, and in accordance with generally accepted accounting principles, the exemption shall be granted. The name of the governmental body shall be added to a list to be published annually in the *Texas Register*.

(g) If the request is not duly documented and/or the charges are beyond cost recovery, the request for exemption shall be denied. The letter of denial shall:

(1) Explain the reason(s) the exemption cannot be granted; and

(2) Whenever possible, propose alternative charges.

(h) All determinations to grant or deny a request for exemption shall be completed promptly, but shall not exceed 90 days from receipt of the request by the Attorney General.

## § 70.5. Access to Information Where Copies Are Not Requested

(a) Access to information in standard paper form. A governmental body shall not charge for making available for inspection information maintained in standard paper form. Charges are permitted only where the governmental body is asked to provide, for inspection, information that contains mandatory confidential information and public information. When such is the case, the governmental body may charge to make a copy of the page from which information must be edited. No other charges are allowed except as follows:

(1) The governmental body has 16 or more employees and the information requested takes more than five hours to prepare the public information for inspection; and

(A) Is older than five years; or

(B) Completely fills, or when assembled will completely fill, six or more archival boxes.

(2) The governmental body has 15 or fewer full-time employees and the information requested takes more than two hours to prepare the public information for inspection; and

(A) Is older than three years; or

(B) Completely fills, or when assembled will completely fill, three or more archival boxes.

(3) A governmental body may charge pursuant to paragraphs (1)(A) and (2)(A) of this subsection only for the production of those documents that qualify under those paragraphs.

(b) Access to information in other than standard form. In response to requests for access, for purposes of inspection only, to information that is maintained in other than standard form, a governmental body may not charge the requesting party the cost of preparing and making available such information, unless complying with the request will require programming or manipulation of data.

## § 70.6. Format for Copies of Public Information

(a) If a requesting party asks that information be provided on computer-compatible media of a particular kind, and the requested information is electronically stored and the governmental body has the capability of providing it in that format and it is able to provide it at no greater expense or time, the governmental body shall provide the information in the requested format.

(b) The extent to which a requestor can be accommodated will depend largely on the technological capability of the governmental body to which the request is made.

(c) A governmental body is not required to purchase any hardware, software or programming capabilities that it does not already possess to accommodate a particular kind of request.

(d) Provision of a copy of public information in the requested medium shall not violate the terms of any copyright agreement between the governmental body and a third party.

(e) if the governmental body does not have the required technological capabilities to comply with the request in the format preferred by the requestor, the governmental body shall proceed in accordance with § 552.228(c) of the Public Information Act.

(f) If a governmental body receives a request requiring programming or manipulation of data, the governmental body should proceed in accordance with § 552.231 of the Public Information Act. Manipulation of data under § 552.231 applies only to information stored in electronic format.

## § 70.7. Estimates and Waivers of Public Information Charges

(a) A governmental body is required to provide a requestor with an itemized statement of estimated charges if charges for copies of public information will exceed $40, or if a charge in accordance with § 70.5 of this title (relating to Access to Information Where Copies Are Not Requested) will exceed $40 for making public information available for inspection. The itemized statement of estimated charges is to be provided before copies

are made to enable requestors to make the choices allowed by the Act. A governmental body that fails to provide the required statement may not collect more than $40. The itemized statement must be provided free of charge and shall contain the following information:

(1) The itemized estimated charges, including any allowable charges for labor, overhead, copies, etc.;

(2) Whether a less costly or no-cost way of viewing the information is available;

(3) A statement that the requestor must respond in writing by mail, in person, by facsimile if the governmental body is capable of receiving such transmissions, or by electronic mail, if the governmental body has an electronic mail address;

(4) A statement that the request will be considered to have been automatically withdrawn by the requestor if a written response from the requestor is not received within ten business days after the date the statement was sent, in which the requestor states that the requestor:

    (A) Will accept the estimated charges;

    (B) Is modifying the request in response to the itemized statement; or

    (C) Has sent to the Attorney General a complaint alleging that the requestor has been overcharged for being provided with a copy of the public information.

(b) If after starting the work, but before making the copies available, the governmental body determines that the initially accepted estimated statement will be exceeded by 20% or more, an updated statement must be sent. If the requestor does not respond to the updated statement, the request is considered to have been withdrawn by the requestor.

(c) If the actual charges exceed $40, the charges may not exceed:

(1) The amount estimated on the updated statement; or

(2) An amount that exceeds by more than 20% the amount in the initial statement, if an updated statement was not sent.

(d) A governmental body that provides a requestor with the statement mentioned in subsection (a) of this section, may require a deposit or bond as follows:

(1) The governmental body has 16 or more full-time employees and the estimated charges are $100 or more; or

(2) The governmental body has 15 or fewer full-time employees and the estimated charges are $50 or more.

(e)   If a request for the inspection of paper records will qualify for a deposit or a bond as detailed in subsection (d) of this section, a governmental body may request:

(1)   A bond for the entire estimated amount; or

(2)   A deposit not to exceed 50 percent of the entire estimated amount.

(f)   A governmental body may require payment of overdue and unpaid balances before preparing a copy in response to a new request if:

(1)   The governmental body provided, and the requestor accepted, the required itemized statements for previous requests that remain unpaid; and

(2)   The aggregated unpaid amount exceeds $100.

(g)   A governmental body may not seek payment of said unpaid amounts through any other means.

(h)   A governmental body that cannot produce the public information for inspection and/or duplication within 10 business days after the date the written response from the requestor has been received, shall certify to that fact in writing, and set a date and hour within a reasonable time when the information will be available.

## § 70.8.   Processing Complaints of Overcharges

(a)   Pursuant to § 552.269(a) of the Texas Government Code, requestors who believe they have been overcharged for a copy of public information may complain to the Attorney General.

(b)   The complaint must be in writing, and must:

(1)   Set forth the reason(s) the person believes the charges are excessive;

(2)   Provide a copy of the original request and a copy of any correspondence from the governmental body stating the proposed charges; and

(3)   Be received by the Attorney General within 10 business days after the person knows of the occurrence of the alleged overcharge.

(4)   Failure to provide the information listed within the stated timeframe will result in the complaint being dismissed.

(c)   The Attorney General shall address written questions to the governmental body, regarding the methodology and figures used in the calculation of the charges which are the subject of the complaint.

(d)   The governmental body shall respond in writing to the questions within 10 business days from receipt of the questions.

(e)     The Attorney General may use tests, consultations with records managers and technical personnel at the Attorney General and other agencies, and any other reasonable resources to determine appropriate charges.

(f)     If the Attorney General determines that the governmental body overcharged for requested public information, the governmental body shall adjust its charges in accordance with the determination, and shall refund the difference between what was charged and what was determined to be appropriate charges.

(g)     The Attorney General shall send a copy of the determination to the complainant and to the governmental body.

(h)     Pursuant to § 552.269(b) of the Texas Government Code, a requestor who overpays because a governmental body refuses or fails to follow the charges established by the Attorney General, is entitled to recover three times the amount of the overcharge if the governmental body did not act in good faith in computing the charges.

## § 70.9.   Examples of Charges for Copies of Public Information

The following tables present a few examples of the calculations of charges for information:

(1) TABLE 1 (Fewer than 50 pages of paper records):  $.10 per copy x number of copies (standard-size paper copies); + Labor charge (if applicable); + Overhead charge (if applicable); + Document retrieval charge (if applicable); + Postage and shipping (if applicable) = $ TOTAL CHARGE.

(2) TABLE 2 (More than 50 pages of paper records or nonstandard copies):  $.10 per copy x number of copies (standard-size paper copies), or cost of nonstandard copy (e.g., diskette, oversized paper, etc.); + Labor charge (if applicable); + Overhead charge (if applicable); + Document retrieval charge (if applicable); + Actual cost of miscellaneous supplies (if applicable); + Postage and shipping (if applicable) = $ TOTAL CHARGE.

(3) TABLE 3 (Information that Requires Programming or Manipulation of Data):  Cost of copy (standard or nonstandard, whichever applies); + Labor charge; + Overhead charge; + Computer resource charge; + Programming time (if applicable); + Document retrieval charge (if applicable); + Actual cost of miscellaneous supplies (if applicable); + Postage and shipping (if applicable) = $ TOTAL CHARGE.

(4) TABLE 4 (Maps):  Cost of paper (Cost of Roll/Avg. # of Maps); + Cost of Toner (Black or Color, # of Maps per Toner Cartridge); + Labor charge (if applicable); + Overhead charge (if applicable) + Plotter/Computer resource Charge; + Actual cost of miscellaneous supplies (if applicable); + Postage and shipping (if applicable) = $ TOTAL CHARGE.

(5) TABLE 5 (Photographs):  Cost of Paper (Cost of Sheet of Photographic Paper/Avg. # of Photographs per Sheet); + Developing/Fixing Chemicals (if applicable); + Labor charge (if applicable); + Overhead charge (if applicable); + Postage and shipping (if applicable) = $ TOTAL CHARGE.

**§ 70.10. The Attorney General Charge Schedule**

The following is a summary of the charges for copies of public information that have been adopted by the Attorney General.

(1)  Standard paper copy—$.10 per page.

(2)  Nonstandard-size copy:

    (A)  Diskette:  $1.00;

    (B)  Magnetic tape:  actual cost;

    (C)  Data cartridge:  actual cost;

    (D)  Tape cartridge:  actual cost;

    (E)  Rewritable CD (CD-RW)—$1.00;

    (F)  Non-rewritable CD (CD-R)—$1.00;

    (G)  Digital video disc (DVD)—$3.00;

    (H)  JAZ drive—actual cost;

    (I)  Other electronic media—actual cost;

    (J)  VHS video cassette—$2.50;

    (K)  Audio cassette—$1.00;

    (L)  Oversize paper copy (e.g.:  11 inches by 17 inches, greenbar, bluebar, not including maps and photographs using specialty paper)—$.50;

    (M)  Specialty paper (e.g.:  Mylar, blueprint, blueline, map, photographic)—actual cost.

(3)  Labor charge:

    (A)  For programming—$28.50 per hour;

    (B)  For locating, compiling, and reproducing—$15 per hour.

(4)  Overhead charge—20% of labor charge.

(5)  Microfiche or microfilm charge:

    (A)  Paper copy—$.10 per page;

(B)   Fiche or film copy—Actual cost.

(6)   Remote document retrieval charge—Actual cost.

(7)   Computer resource charge:

(A)   mainframe—$10 per CPU minute;

(B)   Midsize—$1.50 per CPU minute;

(C)   Client/Server system—$2.20 per clock hour;

(D)   PC or LAN—$1.00 per clock hour.

(8)   Miscellaneous supplies—Actual cost.

(9)   Postage and shipping charge—Actual cost.

(10)  Photographs—Actual cost as calculated in accordance with § 70.9(5) of this title.

(11)  Maps—Actual cost as calculated in accordance with § 70.9(4) of this title.

(12)  Other costs—Actual cost.

(13)  Outsourced/Contracted Services—Actual cost for the copy.  May not include development costs.

(14)  No Sales Tax—No Sales Tax shall be applied to copies of public information.

## § 70.11. Informing the Public of Basic Rights and Responsibilities Under the Public Information Act

(a)   Pursuant to Texas Government Code, Chapter 552, Subchapter D, § 552.205, an officer for public information shall prominently display a sign in the form prescribed by the Attorney General.

(b)   The sign shall contain basic information about the rights of requestors and responsibilities of governmental bodies that are subject to Chapter 552, as well as the procedures for inspecting or obtaining a copy of public information under said chapter.

(c)   The sign shall have the minimum following characteristics:

(1)   Be printed on plain paper.

(2)   Be no less than 8 1/2 inches by 14 inches in total size, exclusive of framing.

(3)   The sign may be laminated to prevent alterations.

(d)   The sign will contain the following wording:

(1)   The Public Information Act. Texas Government Code, Chapter 552, gives you the right to access government records; and an officer for public information and the officer's agent may not ask why you want them.  All government information is presumed to be available to the public.  Certain exceptions may apply to the disclosure of the information. Governmental bodies shall promptly release requested information that is not confidential by law, either constitutional, statutory, or by judicial decision, or information for which an exception to disclosure has not been sought.

(2)   Rights of Requestors.  You have the right to:

(A)   Prompt access to information that is not confidential or otherwise protected;

(B)   Receive treatment equal to all other requestors, including accommodation in accordance with the Americans with Disabilities Act (ADA) requirements;

(C)   Receive certain kinds of information without exceptions, like the voting record of public officials, and other information;

(D)   Receive a written itemized statement of estimated charges, when charges will exceed $40, in advance of work being started and opportunity to modify the request in response to the itemized statement;

(E)   Choose whether to inspect the requested information (most often at no charge), receive copies of the information, or both;

(F)   A waiver or reduction of charges if the governmental body determines that access to the information primarily benefits the general public;

(G)   Receive a copy of the communication from the governmental body asking the Attorney General for a ruling on whether the information can be withheld under one of the accepted exceptions, or if the communication discloses the requested information, a redacted copy;

(H)   Lodge a written complaint about overcharges for public information with the Attorney General.  Complaints of other possible violations may be filed with the county or district attorney of the county where the governmental body, other than a state agency, is located.  If the complaint is against the county or district attorney, the complaint must be filed with the Attorney General.

(3)   Responsibilities of Governmental Bodies.  All governmental bodies responding to information requests have the responsibility to:

(A)   Establish reasonable procedures for inspecting or copying public information and inform requestors of these procedures;

(B) Treat all requestors uniformly and shall give to the requestor all reasonable comfort and facility, including accommodation in accordance with ADA requirement;

(C) Be informed about open records laws and educate employees on the requirements of those laws;

(D) Inform requestors of the estimated charges greater than $40 and any changes in the estimates above 20 percent of the original estimate, and confirm that the requestor accepts the charges, has amended the request, or has sent a complaint of overcharges to the Attorney General, in writing before finalizing the request;

(E) Inform the requestor if the information cannot be provided promptly and set a date and time to provide it within a reasonable time;

(F) Request a ruling from the Attorney General regarding any information the governmental body wishes to withhold, and send a copy of the request for ruling, or a redacted copy, to the requestor;

(G) Segregate public information from information that may be withheld and provide that public information promptly;

(H) Make a good faith attempt to inform third parties when their proprietary information is being requested from the governmental body;

(I) Respond in writing to all written communications from the Attorney General regarding complaints about the charges for the information and other alleged violations of the Act.

(4) Procedures to Obtain Information

(A) Submit a request by mail, fax, email or in person, according to a governmental body's reasonable procedures.

(B) Include enough description and detail about the information requested to enable the governmental body to accurately identify and locate the information requested.

(C) Cooperate with the governmental body's reasonable efforts to clarify the type or amount of information requested.

(5) Information to be released.

(A) You may review it promptly, and if it cannot be produced within 10 business days the public information officer will notify you in writing of the reasonable date and time when it will be available;

(B)   Keep all appointments to inspect records and to pick up copies.  Failure to keep appointments may result in losing the opportunity to inspect the information at the time requested;

(C)   Cost of Records.

   (i)   You must respond to any written estimate of charges within 10 business days of the date the governmental body sent it or the request is considered automatically withdrawn;

   (ii)   If estimated costs exceed $100.00 (or $50.00 if a governmental body has fewer than 16 full time employees) the governmental body may require a bond, prepayment or deposit;

   (iii)   You may ask the governmental body to determine whether providing the information primarily benefits the general public, resulting in a waiver or reduction of charges;

   (iv)   Make timely payment for all mutually agreed charges.  A governmental body can demand payment of overdue balances exceeding $100.00, or obtain a security deposit, before processing additional requests from you.

(6)   Information that may be withheld due to an exception.

(A)   By the 10th business day after a governmental body receives your written request, a governmental body must:

   (i)   Request an Attorney General Opinion and state which exception apply;

   (ii)   Notify the requestor of the referral to the Attorney General; and

   (iii)   Notify third parties if the request involves their proprietary information;

(B)   Failure to request an Attorney General opinion and to notify the requestor within 10 business days will result in a presumption that the information is open unless there is a compelling reason to withhold it.

(C)   Requestors may send a letter to the Attorney General arguing for release, and may review arguments made by the governmental body.  If the arguments disclose the requested information, the requestor may obtain a redacted copy.

(D)   The Attorney General must issue a decision no later than the 45th business day after the Attorney General received the request for a decision.  The Attorney General may request an additional 10 business days extension.

(E)   Governmental bodies may not ask the Attorney General to "reconsider" an opinion.

(7)  Additional Information on Sign.

    (A)  The sign must contain information of the governmental body's officer for public information, or the officer's agent, as well as the mailing address, phone and fax numbers, and email address, if any, where requestors may send a request for information to the officer or the officer's agent. The sign must also contain the physical address at which requestors may request information in person.

    (B)  The sign must contain information of the local county attorney or district attorney where requestors may submit a complaint of alleged violations of the Act, as well as the contact information for the Attorney General.

    (C)  The sign must also contain contact information of the person or persons with whom a requestor may make special arrangements for accommodation pursuant to the American with Disabilities Act.

(e)  A governmental body may comply with Texas Government Code, § 552.205 and this rule by posting the sign provided by the Attorney General.

## § 70.12.  Allowable Charges Under Section 552.275 of the Texas Government Code

(a)  A governmental body shall utilize the methods established in 1 TAC § 70.3(c) - (e) when calculating allowable charges under Section 552.275 of the Texas Government Code.

(b)  When calculating the amount of time spent complying with an individual's public information request(s) pursuant to Section 552.275 of the Texas Government Code, a governmental body may not include time spent on:

(1)  Determining the meaning and/or scope of the request(s);

(2)  Requesting a clarification from the requestor;

(3)  Comparing records gathered from different sources;

(4)  Determining which exceptions to disclosure under Chapter 552 of the Texas Government Code, if any, may apply to information that is responsive to the request(s);

(5)  Preparing the information and/or correspondence required under Sections 552.301, 552.303, and 552.305 of the Government Code;

(6)  Reordering, reorganizing, or in any other way bringing information into compliance with well established and generally accepted information management practices; or

(7)    Providing instruction to, or learning by, employees or agents of the governmental body of new practices, rules, and/or procedures, including the management of electronic records.

## § 70.13.  Fee for Obtaining Copy of Body Worn Camera Recording

(a)    This section provides the fee for obtaining a copy of body worn camera recording pursuant to § 1701.661 of the Government Code.

(1)    Section 1701.661 of the Government Code is the sole authority under which a copy of a body worn camera recording may be obtained from a law enforcement agency under the Public Information Act, Chapter 552 of the Government Code, and no fee for obtaining a copy of a body worn camera recording from a law enforcement agency may be charged unless authorized by this section.

(2)    This section does not apply to a request, or portions of a request, seeking to obtain information other than a copy of a body worn camera recording. Portions of a request seeking information other than a copy of a body worn camera recording are subject to the charges listed in § 70.3 of this chapter.

(b)    The charge for obtaining a copy of a body worn camera recording shall be:

(1)    $10.00 per recording responsive to the request for information; and

(2)    $1.00 per full minute of body worn camera video or audio footage responsive to the request for information, if identical information has not already been obtained by a member of the public in response to a request for information.

(c)    A law enforcement agency may provide a copy without charge, or at a reduced charge, if the agency determines waiver or reduction of the charge is in the public interest.

(d)    If the requestor is not permitted to obtain a copy of a requested body worn camera recording under § 1701.661 of the Government Code or an exception in the Public Information Act, Chapter 552 of the Government Code, the law enforcement agency may not charge the requestor under this section.

# PART FIVE: RULES OF JUDICIAL ADMINISTRATION

## Rule 12.  Public Access to Judicial Records

**12.1    Policy.**  The purpose of this rule is to provide public access to information in the judiciary consistent with the mandates of the Texas Constitution that the public interests are best served by open courts and by an independent judiciary.  The rule should be liberally construed to achieve its purpose.

**12.2    Definitions.**  In this rule:

(a)    *Judge* means a regularly appointed or elected judge or justice.

(b)    *Judicial agency* means an office, board, commission, or other similar entity that is in the Judicial Department and that serves an administrative function for a court.  A task force or committee created by a court or judge is a "judicial agency".

(c)    *Judicial officer* means a judge, former or retired visiting judge, referee, commissioner, special master, court-appointed arbitrator, or other person exercising adjudicatory powers in the judiciary.  A mediator or other provider of non-binding dispute resolution services is not a "judicial officer".

(d)    *Judicial record* means a record made or maintained by or for a court or judicial agency in its regular course of business but not pertaining to its adjudicative function, regardless of whether that function relates to a specific case.  A record of any nature created, produced, or filed in connection with any matter that is or has been before a court is not a judicial record.  A record is a document, paper, letter, map, book, tape, photograph, film, recording, or other material, regardless of electronic or physical form, characteristics, or means of transmission.

(e)    *Records custodian* means the person with custody of a judicial record determined as follows:

(1)    The judicial records of a court with only one judge, such as any trial court, are in the custody of that judge.  Judicial records pertaining to the joint administration of a number of those courts, such as the district courts in a particular county or region, are in the custody of the judge who presides over the joint administration, such as the local or regional administrative judge.

(2)    The judicial records of a court with more than one judge, such as any appellate court, are in the custody of the chief justice or presiding judge, who must act under this rule in accordance with the vote of a majority of the judges of the court.  But the judicial records relating specifically to the service of one such judge or that judge's own staff are in the custody of that judge.

(3)     The judicial records of a judicial officer not covered by subparagraphs (1) and (2) are in the custody of that officer.

(4)     The judicial records of a judicial agency are in the custody of its presiding officer, who must act under this rule in accordance with agency policy or the vote of a majority of the members of the agency.

**12.3     Applicability.**  This rule does not apply to:

(a)     records or information to which access is controlled by:

(1)     a state or federal court rule, including:

(A)     a rule of civil or criminal procedure, including Rule 76a, Texas Rules of Civil Procedure;

(B)     a rule of appellate procedure;

(C)     a rule of evidence;

(D)     a rule of administration;

(2)     a state or federal court order not issued merely to thwart the purpose of this rule;

(3)     the Code of Judicial Conduct;

(4)     Chapter 552, Government Code, or another statute or provision of law;

(b)     records or information to which Chapter 552, Government Code, is made inapplicable by statute, rule, or other provision of law, other than Section 552.003(1)(B);

(c)     records or information relating to an arrest or search warrant or a supporting affidavit, access to which is controlled by:

(1)     a state or federal court rule, including a rule of civil or criminal procedure, appellate procedure, or evidence; or

(2)     common law, court order, judicial decision, or another provision of law

(d)     elected officials other than judges.

**12.4     Access to Judicial Records.**

**(a)     *Generally.*** Judicial records other than those covered by Rules 12.3 and 12.5 are open to the general public for inspection and copying during regular business hours.  But this rule does not require a court, judicial agency, or records custodian to:

(1)     create a record, other than to print information stored in a computer;

(2)     retain a judicial record for a specific period of time;

(3)     allow the inspection of or provide a copy of information in a book or publication commercially available to the public; or

(4)     respond to or comply with a request for a judicial record from or on behalf of an individual who is imprisoned or confined in a correctional facility as defined in Section 1.07(a), Penal Code, or in any other such facility in any state, federal, or foreign jurisdiction.

**(b)**     *Voluntary Disclosure*.  A records custodian may voluntarily make part or all of the information in a judicial record available to the public, subject to Rules 12.2(e)(2) and 12.2(e)(4), unless the disclosure is expressly prohibited by law or exempt under this rule, or the information is confidential under law.  Information voluntarily disclosed must be made available to any person who requests it.

**12.5     Exemptions from Disclosure.**  The following records are exempt from disclosure under this rule:

**(a)**     *Judicial Work Product and Drafts*.  Any record that relates to a judicial officer's adjudicative decision-making process prepared by that judicial officer, by another judicial officer, or by court staff, an intern, or any other person acting on behalf of or at the direction of the judicial officer.

**(b)**     *Security Plans*.  Any record, including a security plan or code, the release of which would jeopardize the security of an individual against physical injury or jeopardize information or property against theft, tampering, improper use, illegal disclosure, trespass, unauthorized access, or physical injury.

**(c)**     *Personnel Information*.  Any personnel record that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy.

**(d)**     *Home Address and Family Information*.  Any record reflecting any person's home address, home or personal telephone number, social security number, or family members.

**(e)**     *Applicants for Employment or Volunteer Services*.  Any records relating to an applicant for employment or volunteer services.

**(f)**     *Internal Deliberations on Court or Judicial Administration Matters*.  Any record relating to internal deliberations of a court or judicial agency, or among judicial officers or members of a judicial agency, on matters of court or judicial administration.

**(g)**     *Court Law Library Information*.  Any record in a law library that links a patron's name with the materials requested or borrowed by that patron.

**(h)**     *Judicial Calendar Information*.  Any record that reflects a judicial officer's appointments or engagements that are in the future or that constitute an invasion of personal privacy.

**(i)** ***Information Confidential Under Other Law.*** Any record that is confidential or exempt from disclosure under a state or federal constitutional provision, statute or common law, including information that relates to:

> **(1)** a complaint alleging misconduct against a judicial officer, if the complaint is exempt from disclosure under Chapter 33, Government Code, or other law;
>
> **(2)** a complaint alleging misconduct against a person who is licensed or regulated by the courts, if the information is confidential under applicable law; or
>
> **(3)** a trade secret or commercial or financial information made privileged or confidential by statute or judicial decision.

**(j)** ***Litigation or Settlement Negotiations.*** Any judicial record relating to civil or criminal litigation or settlement negotiations:

> **(1)** in which a court or judicial agency is or may be a party; or
>
> **(2)** in which a judicial officer or member of a judicial agency is or may be a party as a consequence of the person's office or employment.

**(k)** ***Investigations of Character or Conduct.*** Any record relating to an investigation of any person's character or conduct, unless:

> **(1)** the record is requested by the person being investigated; and
>
> **(2)** release of the record, in the judgment of the records custodian, would not impair the investigation.

**(l)** ***Examinations.*** Any record relating to an examination administered to any person, unless requested by the person after the examination is concluded.

## 12.6 Procedures for Obtaining Access to Judicial Records.

**(a)** ***Request.*** A request to inspect or copy a judicial record must be in writing and must include sufficient information to reasonably identify the record requested. The request must be sent to the records custodian and not to a court clerk or other agent for the records custodian. A requestor need not have detailed knowledge of the records custodian's filing system or procedures in order to obtain the information.

**(b)** ***Time for Inspection and Delivery of Copies.*** As soon as practicable—and not more than 14 days—after actual receipt of a request to inspect or copy a judicial record, if the record is available, the records custodian must either:

> **(1)** allow the requestor to inspect the record and provide a copy if one is requested; or

(2)     send written notice to the requestor stating that the record cannot within the prescribed period be produced or a copy provided, as applicable, and setting a reasonable date and time when the document will be produced or a copy provided, as applicable.

**(c)**     *Place for Inspection.*  A records custodian must produce a requested judicial record at a convenient, public area.

**(d)**     *Part of Record Subject to Disclosure.*  If part of a requested record is subject to disclosure under this rule and part is not, the records custodian must redact the portion of the record that is not subject to disclosure, permit the remainder of the record to be inspected, and provide a copy if requested.

**(e)**     *Copying; Mailing.*  The records custodian may deliver the record to a court clerk for copying.  The records custodian may mail the copy to a requestor who has prepaid the postage.

**(f)**     *Recipient of Request not Custodian of Record.*  A judicial officer or a presiding officer of a judicial agency who receives a request for a judicial record not in his or her custody as defined by this rule must promptly attempt to ascertain who the custodian of the record is.  If the recipient of the request can ascertain who the custodian of the requested record is, the recipient must promptly refer the request to that person and notify the requestor in writing of the referral.  The time for response prescribed in Rule 12.6(b) does not begin to run until the referral is actually received by the records custodian.  If the recipient cannot ascertain who the custodian of the requested record is, the recipient must promptly notify the requestor in writing that the recipient is not the custodian of the record and cannot ascertain who the custodian of the record is.

**(g)**     *Inquiry to Requestor.*  A person requesting a judicial record may not be asked to disclose the purpose of the request as a condition of obtaining the judicial record.  But a records custodian may make inquiry to establish the proper identification of the requestor or to clarify the nature or scope of a request.

**(h)**     *Uniform Treatment of Requests.*  A records custodian must treat all requests for information uniformly without regard to the position or occupation of the requestor or the person on whose behalf a request is made, including whether the requestor or such person is a member of the media.

**12.7     Costs for Copies of Judicial Records; Appeal of Assessment.**

**(a)**     *Cost.*  The cost for a copy of a judicial record is either:

(1)     the cost prescribed by statute, or

(2)     if no statute prescribes the cost, the cost the Office of the Attorney General prescribes by rule in the Texas Administrative Code.

**(b)**     *Waiver or Reduction of Cost Assessment by Records Custodian*.  A records custodian may reduce or waive the charge for a copy of a judicial record if:

(1)     doing so is in the public interest because providing the copy of the record primarily benefits the general public, or

(2)     the cost of processing collection of a charge will exceed the amount of the charge.

**(c)     *Appeal of Cost Assessment.*** A person who believes that a charge for a copy of a judicial record is excessive may appeal the overcharge in the manner prescribed by Rule 12.9 for the appeal of the denial of access to a judicial record.

**(d)     *Records Custodian Not Personally Responsible for Cost.*** A records custodian is not required to incur personal expense in furnishing a copy of a judicial record.

**12.8     Denial of Access to a Judicial Record.**

**(a)     *When Request May be Denied.*** A records custodian may deny a request for a judicial record under this rule only if the records custodian:

(1)     reasonably determines that the requested judicial record is exempt from required disclosure under this rule; or

(2)     makes specific, non-conclusory findings that compliance with the request would substantially and unreasonably impede the routine operation of the court or judicial agency.

**(b)     *Time to Deny.*** A records custodian who denies access to a judicial record must notifythe person requesting the record of the denial within a reasonable time—not to exceed 14 days—after receipt of the request, or before the deadline for responding to the request extended under Rule 12.6(b)(2).

**(c)     *Contents of Notice of Denial.*** A notice of denial must be in writing and must:

(1)     state the reason for the denial;

(2)     inform the person of the right of appeal provided by Rule 12.9; and

(3)     include the name and address of the Administrative Director of the Office of Court Administration.

**12.9     Relief from Denial of Access to Judicial Records.**

**(a)     *Appeal*.** A person who is denied access to a judicial record may appeal the denial by filing a petition for review with the Administrative Director of the Office of Court Administration.

**(b)     *Contents of Petition for Review*.** The petition for review:

(1)     must include a copy of the request to the record custodian and the records custodian's notice of denial;

(2)     may include any supporting facts, arguments, and authorities that the petitioner believes to be relevant; and

(3)     may contain a request for expedited review, the grounds for which must be stated.

**(c)     *Time for Filing*.**  The petition must be filed not later than 30 days after the date that the petitioner receives notice of a denial of access to the judicial record.

**(d)     *Notification of Records Custodian and Presiding Judges*.**  Upon receipt of the petition for review, the Administrative Director must promptly notify the records custodian who denied access to the judicial record and the presiding judge of each administrative judicial region of the filing of the petition.

**(e)     *Response*.**  A records custodian who denies access to a judicial record and against whom relief is sought under this section may—within 14 days of receipt of notice from the Administrative Director—submit a written response to the petition for review and include supporting facts and authorities in the response.  The records custodian must mail a copy of the response to the petitioner.  The records custodian may also submit for in camera inspection any record, or a sample of records, to which access has been denied.

**(f)     *Formation of Special Committee*.**  Upon receiving notice under Rule 12.9(d), the presiding judges must refer the petition to a special committee of not less than five of the presiding judges for review.  The presiding judges must notify the Administrative Director, the petitioner, and the records custodian of the names of the judges selected to serve on the committee.

**(g)     *Procedure for Review*.**  The special committee must review the petition and the records custodian's response and determine whether the requested judicial record should be made available under this rule to the petitioner.  The special committee may request the records custodian to submit for in camera inspection a record, or a sample of records, to which access has been denied.  The records custodian may respond to the request in whole or in part but it not required to do so.

**(h)     *Considerations*.**  When determining whether the requested judicial record should be made available under this rule to petition, the special committee must consider:

(1)     the text and policy of this Rule;

(2)     any supporting and controverting facts, arguments, and authorities in the petition and the response; and

(3)     prior applications of this Rule by other special committees or by courts.

**(i)     *Expedited Review*.**  On request of the petitioner, and for good cause shown, the special committee may schedule an expedited review of the petition.

**(j)**     *Decision.*  The special committee's determination must be supported by a written decision that must:

> **(1)**     issue within 60 days of the date that the Administrative Director received the petition for review;

> **(2)**     either grant the petition in whole or in part or sustain the denial of access to the requested judicial record;

> **(3)**     state the reasons for the decision, including appropriate citations to this rule; and

> **(4)**     identify the record or portions of the record to which access is ordered or denied, but only if the description does not disclose confidential information.

**(k)**     *Notice of Decision.*  The special committee must send the decision to the Administrative Director.  On receipt of the decision from the special committee, the Administrative Director must:

> **(1)**     immediately notify the petitioner and the records custodian of the decision and include a copy of the decision with the notice; and

> **(2)**     maintain a copy of the special committee's decision in the Administrative Director's office for public inspection.

**(l)**     *Publication of Decisions.*  The Administrative Director must publish periodically to the judiciary and the general public the special committees' decisions.

**(m)**     *Final Decision.*  A decision of a special committee under this rule is not appealable but is subject to review by mandamus.

**(n)**     *Appeal to Special Committee Not Exclusive Remedy.*  The right of review provided under this subdivision is not exclusive and does not preclude relief by mandamus.

**12.10   Sanctions.**  A records custodian who fails to comply with this rule, knowing that the failure to comply is in violation of the rule, is subject to sanctions under the Code of Judicial Conduct.

### Comments

1.     Although the definition of "judicial agency" in Rule 12.2(b) is comprehensive, applicability of the rule is restricted by Rule 12.3.  The rule does not apply to judicial agencies whose records are expressly made subject to disclosure by statute, rule, or law.  An example is the State Bar ("an administrative agency of the judicial department", Tex. Gov't Code § 81.011(a)), which is subject to the Public Information Act.  Tex. Gov't Code § 81.033.  Thus, no judicial agency must comply with both the Act and this rule; at most one can apply.  Nor does the rule apply to judicial agencies expressly excepted from the Act by statute (other than by the general judiciary exception in section 552.003(b) of the Act), rule, or law.  Examples are the Board of Legal Specialization, Tex. Gov't Code § 81.033, and the Board of Disciplinary Appeals, Tex. R.

Disciplinary App. 7.12. Because these boards are expressly excepted from the Act, their records are not subject to disclosure under this rule, even though no law affirmatively makes their records confidential. The Board of Law Examiners is partly subject to the Act and partly exempt, Tex. Gov't Code § 82.003, and therefore this rule is inapplicable to it. An example of a judicial agency subject to the rule is the Supreme Court Advisory Committee, which is neither subject to nor expressly excepted from the Act, and whose records are not made confidential by any law.

2.      As stated in Rule 12.4, this rule does not require the creation or retention of records, but neither does it permit the destruction of records that are required to be maintained by statute or other law, such as Tex. Gov't Code §§ 441.158-.167, .180-.203; Tex. Local Gov't Code ch. 203; and 13 Tex. Admin. Code § 7.122.

3.      Rule 12.8 allows a records custodian to deny a record request that would substantially and unreasonably impede the routine operation of the court or judicial agency. As an illustration, and not by way of limitation, a request for "all judicial records" that is submitted every day or even every few days by the same person or persons acting in concert could substantially and unreasonably impede the operations of a court or judicial agency that lacked the staff to respond to such repeated requests.

# PART SIX: PUBLIC INFORMATION ACT DEADLINES FOR GOVERNMENTAL BODIES

| Step | Action | Section | Deadline | Due | Done |
|---|---|---|---|---|---|
| 1 | Governmental body must either release requested public information promptly, or if not within ten days of receipt of request, its Public Information Officer ("PIO") must certify fact that governmental body cannot produce the information within ten days and state date and hour within reasonable time when the information will be available. | 552.221(a) | Promptly; Within ten business days of receipt of request for information make public information available, **or** | | |
| | | 552.221(d) | Certify to requestor date and hour when public information will be available. | | |
| 2 | Governmental body seeking to withhold information based on one or more of the exceptions under Subchapter C must request an attorney general decision stating all exceptions that apply, if there has not been a previous determination. | 552.301(b) | Within a reasonable time, but not later than the tenth business day after receipt of the request for information. | | |
| 3 | Governmental body must provide notice to the requestor of the request for attorney general decision and a copy of the governmental body's request for an attorney general decision. | 552.301(d) | Within a reasonable time, but not later than the tenth business day after receipt of the request for information. | | |
| 4 | Governmental body must submit to the attorney general comments explaining why the exceptions raised in Step 2 apply. | 552.301(e) | Within a reasonable time, but not later than the fifteenth business day after receipt of the request for information. | | |
| 5 | Governmental body must submit to attorney general copy of written request for information. | 552.301(e) | Within a reasonable time, but not later than the fifteenth business day after receipt of the request for information. | | |
| 6 | Governmental body must submit to attorney general signed statement as to date on which written request for information was received. | 552.301(e) | Within a reasonable time, but not later than the fifteenth business day after receipt of the request for information. | | |
| 7 | Governmental body must submit to attorney general copy of information requested or representative sample if voluminous amount of information is requested. | 552.301(e) | Within a reasonable time, but not later than the fifteenth business day after receipt of the request for information. | | |
| 8 | Governmental body must copy the requestor on written comments submitted to the attorney general in Step 4. | 552.301(e-1) | Within a reasonable time, but not later than the fifteenth business day after receipt of the request for information. | | |
| 9 | a) Governmental body makes a good faith attempt to notify person whose proprietary information may be protected from disclosure under sections 552.101, 552.110, 552.1101, 552.113, 552.131, or 552.143. Notification includes: 1) copy of written request; 2) letter, in the form prescribed by the attorney general, stating that the third party may submit to the attorney general reasons requested information should be withheld. | 552.305(d) | Within a reasonable time, but not later than the tenth business day after date governmental body receives request for information. | | |
| | b) Third party may submit brief to attorney general. | 552.305(d) | Within a reasonable time, but not later than the tenth business day of receiving notice from governmental body. | | |
| 10 | Governmental body must submit to attorney general additional information if requested by attorney general. | 552.303(d) | Not later than the seventh calendar day after date governmental body received written notice of attorney general's need for additional information. | | |

| Step | Action | Section | Deadline | Due | Done |
|------|--------|---------|----------|-----|------|
| 11 | Governmental body desires attorney general reconsideration of attorney general decision. | 552.301(f) | Public Information Act prohibits a governmental body from seeking the attorney general's reconsideration of an open records ruling. | | |
| 12 | Governmental body complies with attorney general decision within a reasonable period. | 552.306(c) | Within a reasonable time period after the attorney general decision is issued, governmental body must release information, provide cost estimate, or provide required notices. | | |
| 13 | Governmental body files suit challenging the attorney general decision. | 552.324 | Within thirty calendar days after the date governmental body receives attorney general decision. | | |
| 14 | Governmental body files suit against the attorney general challenging the attorney general decision to preserve an affirmative defense to prosecution for failing to produce requested information. | 552.353(b) | Within ten calendar days after governmental body receives attorney general's decision that information is public. | | |

# PART SEVEN:   NOTICE STATEMENT TO PERSONS WHOSE PROPRIETARY INFORMATION IS REQUESTED

(A governmental body must provide this notice to a person whose proprietary interests may be affected by release of information within ten business days after receipt of the written request for information.)


[NOTE*:* This notice is updated periodically.  Please check the OAG website http://www.texasattorneygeneral.gov/open-government for the latest version.]


Date


Third Party Address

Dear M:

We have received a formal request to inspect or copy some of our files.  A copy of the request for information is enclosed.  The requested files include records we received from you or from your company.  The Office of the Attorney General is reviewing this matter, and they will issue a decision on whether Texas law requires us to release your records.  Generally, the Public Information Act (the "Act") requires the release of requested information, but there are exceptions.  As described below, you have the right to object to the release of your records by submitting written arguments to the attorney general that one or more exceptions apply to your records.  You are not required to submit arguments to the attorney general, but if you decide not to submit arguments, the Office of the Attorney General will presume that you have no interest in withholding your records from disclosure.  In other words, if you fail to take timely action, the attorney general will more than likely rule that your records must be released to the public.  If you decide to submit arguments, **you must do so not later than the tenth business day after the date you receive this notice.**

If you submit arguments to the attorney general, you must:

a) identify the legal exceptions that apply,

b)   identify the specific parts of each document that are covered by each exception, and

c) explain why each exception applies.

Gov't Code § 552.305(d).  A claim that an exception applies without further explanation will not suffice.  Attorney General Opinion H-436 (1974).  You may contact this office to review the information at issue in order to make your arguments.  We will provide the attorney general with a copy of the request for information and a copy of the requested information, along with other material required by the Act.  The attorney general is generally required to issue a decision within 45 business days.

Please send your written comments to the Office of the Attorney General at the following address:

> Office of the Attorney General
> Open Records Division
> P.O. Box 12548
> Austin, Texas 78711-2548

If you wish to submit your written comments electronically, you may only do so via the Office of the Attorney General's eFiling System. An administrative convenience charge will be assessed for use of the eFiling System. No other method of electronic submission is available. Please visit the attorney general's website at http://www.texasattorneygeneral.gov/open-government for more information.

**In addition, you are required to provide the requestor with a copy of your communication to the Office of the Attorney General**. Gov't Code § 552.305(e). You may redact the requestor's copy of your communication to the extent it contains the substance of the requested information. Gov't Code § 552.305(e). You may provide a copy of your communication to the governmental body who received the request and sent the notice.

**Commonly Raised Exceptions**

In order for a governmental body to withhold requested information, specific tests or factors for the applicability of a claimed exception must be met. Failure to meet these tests may result in the release of requested information. We have listed the most commonly claimed exceptions in the Government Code concerning proprietary information and the leading cases or decisions discussing them. This listing is not intended to limit any exceptions or statutes you may raise.

**Section 552.101: Information Made Confidential by Law**

> Open Records Decision No. 652 (1997).

**Section 552.110: Confidentiality of Trade Secrets and Commercial or Financial Information**

> Trade Secrets

> Commercial or Financial Information:

> > *Birnbaum v. Alliance of Am. Insurers*, 994 S.W.2d 766 (Tex. App.—Austin 1999, pet. filed) (construing previous version of section 552.110), *abrogated by In re Bass*, 113 S.W.3d 735 (Tex. 2003).
> > Open Records Decision No. 639 (1996).
> > Open Records Decision No. 661 (1999).

**Section 552.1101:  Confidentiality of Proprietary Information**

**Section 552.113:  Confidentiality of Geological or Geophysical Information**

Open Records Decision No. 627 (1994).

**Section 552.131:  Confidentiality of Certain Economic Development Negotiation Information**

If you have questions about this notice or release of information under the Act, please refer to the *Public Information Handbook* published by the Office of the Attorney General, or contact the attorney general's Open Government Hotline at (512) 478-OPEN (6736) or toll-free at (877) 673-6839 (877-OPEN TEX).  To access the *Public Information Handbook* or Attorney General Opinions, including those listed above, please visit the attorney general's website at http://www.texasattorneygeneral.gov/open-government.

Sincerely,

Officer for Public Information or Designee
Name of Governmental Body

Enclosure:  Copy of request for information

cc:    Requestor
       Address
       (w/o enclosures)

       Open Records Division
       Office of the Attorney General
       P.O. Box 12548
       Austin, Texas 78711-2548
       (w/o enclosures)

# PART EIGHT: TEXAS GOVERNMENT CODE SECTION 552.024 PUBLIC ACCESS OPTION FORM

[Note: This form should be completed and signed by the employee no later than the 14th day after the date the employee begins employment, the public official is elected or appointed, or a former employee or official ends employment or service.]

_____
(Name)

The Public Information Act allows employees, public officials and former employees and officials to elect whether to keep certain information about them confidential. Unless you choose to keep it confidential, the following information about you may be subject to public release if requested under the Texas Public Information Act. Therefore, please indicate whether you wish to allow public release of the following information.

| PUBLIC ACCESS? | NO | YES |
|---|---|---|
| Home Address | | |
| Home Telephone Number | | |
| Social Security Number | | |
| Emergency Contact Information | | |
| Information that reveals whether you have family members | | |

_____
(Signature)

_____
(Date)

344

# PART NINE: TEXAS GOVERNMENT CODE SECTION 552.138 PUBLIC ACCESS NOTICE FORM

[Note: This form should be completed and signed by a person who seeks to restrict access to personal information under Government Code section 552.138(f). The person must then notify the licensing governmental body by providing a completed copy of this form to the governmental body.]

Name of Person Who Chooses to Restrict Access: _____

Governmental Body to be Notified: _____

The Public Information Act allows a person who holds, has previously held, or is an applicant for a license to restrict access to certain information about the person maintained by a licensing governmental body if the person meets certain criteria set forth at law. *See* Texas Government Code § 552.138(f). Such a person must notify the licensing governmental body, on a form provided by the Office of the Attorney General or the governmental body at issue, that the person meets the criteria set forth in Government Code section 552.138(f)(2)(A) and chooses to restrict public access to the information. The Office of the Attorney General has promulgated this form to satisfy this requirement.

Pursuant to the preceding authority, the above-named governmental body is notified that the above-named person holds, previously held, or is an applicant for a license; meets the criteria under Government Code section 552.138(f)(2)(A); and chooses to restrict access to the following information pursuant to Government Code section 552.138(f): (Note: Select 'YES' to prohibit release)

| RESTRICT PUBLIC ACCESS? | NO | YES |
|---|---|---|
| Name | | |
| Home Address | | |
| Business Address | | |
| Place of Employment | | |
| Telephone Number | | |
| Electronic Mail Address | | |
| Social Security Number | | |
| Date of Birth | | |
| Driver's License | | |
| State Identification Number | | |
| Passport Number | | |
| Emergency Contact Information | | |
| Numeric Identifier | | |

_____
(Signature)

_____
(Date)

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 104828554
Filing Code Description: Brief Requesting Oral Argument
Filing Description: amended_appellants_brief
Status as of 8/26/2025 9:47 AM CST

Associated Case Party: The University of Texas at Austin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Zachary Rhines | 24116957 | zachary.rhines@oag.texas.gov | 8/25/2025 7:25:45 PM | SENT |
| Martin Cohick | 24134042 | martin.cohick@oag.texas.gov | 8/25/2025 7:25:45 PM | SENT |
| Rachel Behrendt | 24130871 | rachel.behrendt@oag.texas.gov | 8/25/2025 7:25:45 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Wolfgang P.Hirczy de Mino | | wphdmphd@gmail.com | 8/25/2025 7:25:45 PM | SENT |